# EXHIBIT 12

| From: | Jeffrey Schaffer <JSchaffer@spectrumgp.com> |
|---|---|
| Sent: | Wednesday, March 21, 2012 2:08 PM |
| To: | Rich Ehrlich |
| Cc: | Solmaria Velez |
| Subject: | FW: Allied Holdings - Black Diamond |
| | |
| Importance: | High |

Rich,

See below trail. Looks like Brad Schaefer from BD and Tim Dable from Winston have been unresponsive for about 5 weeks. In any case, they are saying that we have to pay 75% of any transfer fee, which is not OK, it should be split equally. But on all of our other trades there has been no fee, so not sure why there would even be one here. And they are saying that you won't agree to mutual more expansive big boy language than what is in the normal Ista, which also doesn't make sense given how much knowledge we each have. Please get this closed this week. We cannot file an involuntary without it done. Ive ccd: Solmaria, our closer so that you can let he know when you have been able to get the logjam moving at BD

Thanks,

Jeff

_____

**\*PLEASE NOTE OUR NEW FLOOR**

**Jeffrey A. Schaffer**
Sᴘᴇᴄᴛʀᴜᴍ Gʀᴏᴜᴘ Mᴀɴᴀɢᴇᴍᴇɴᴛ
1250 Broadway, 19th Floor*
New York, NY 10001
Phone: 212-687-9555
Fax: 212-983-2322
Email: jschaffer@spectrumgp.com

**From:** Solmaria Velez
**Sent:** Wednesday, March 21, 2012 1:11 PM
**To:** Jeffrey Schaffer
**Subject:** FW: Allied Holdings - Black Diamond
**Importance:** High

Below is the email trail containing the back and forth on the Allied trade documents with Black Diamond.

............................................

**\*PLEASE NOTE OUR NEW FLOOR AND
PERSONAL PHONE EXTENSION**

**Solmaria Velez**
Director of Operations & Controller
Sᴘᴇᴄᴛʀᴜᴍ Gʀᴏᴜᴘ Mᴀɴᴀɢᴇᴍᴇɴᴛ

1

BDCM0003456

1250 Broadway, 19th Floor*
New York, NY 10001
Phone: 212-687-9555 x402*
Fax: 212-983-2322
Cell: 602-540-0653
Email: svelez@spectrumgp.com

**From:** Solmaria Velez
**Sent:** Monday, March 12, 2012 10:26 AM
**To:** 'Dable, Tim'
**Cc:** 'Brad Schaefer'
**Subject:** RE: Allied Holdings - Black Diamond
**Importance:** High

I haven't heard back from either of you on this.  What is the hold up?

**\*PLEASE NOTE OUR NEW FLOOR AND
PERSONAL PHONE EXTENSION**

**Solmaria Velez**
Director of Operations & Controller
SPECTRUM GROUP MANAGEMENT
1250 Broadway, 19th Floor*
New York, NY 10001
Phone: 212-687-9555 x402*
Fax: 212-983-2322
Cell: 602-540-0653
Email: svelez@spectrumgp.com

**From:** Solmaria Velez
**Sent:** Friday, March 09, 2012 11:40 AM
**To:** 'Dable, Tim'
**Cc:** 'Brad Schaefer'
**Subject:** RE: Allied Holdings - Black Diamond

Any update on this?

**\*PLEASE NOTE OUR NEW FLOOR AND
PERSONAL PHONE EXTENSION**

**Solmaria Velez**
Director of Operations & Controller
SPECTRUM GROUP MANAGEMENT
1250 Broadway, 19th Floor*
New York, NY 10001
Phone: 212-687-9555 x402*
Fax: 212-983-2322
Cell: 602-540-0653
Email: svelez@spectrumgp.com

2

BDCM0003457

**From:** Solmaria Velez
**Sent:** Friday, March 02, 2012 6:05 PM
**To:** 'Dable, Tim'
**Cc:** 'Brad Schaefer'
**Subject:** RE: Allied Holdings - Black Diamond

Hi,

Just following up on status of the updated docs.  Please advise.

Thanks

Sol

------------------------------------

**\*PLEASE NOTE OUR NEW FLOOR AND
PERSONAL PHONE EXTENSION**

**Solmaria Velez**
Director of Operations & Controller
SPECTRUM GROUP MANAGEMENT
1250 Broadway, 19th Floor\*
New York, NY 10001
Phone: 212-687-9555 x402\*
Fax: 212-983-2322
Cell:  602-540-0653
Email: svelez@spectrumgp.com

------------------------------------

**From:** Dable, Tim [mailto:TDable@winston.com]
**Sent:** Tuesday, February 21, 2012 11:31 AM
**To:** Solmaria Velez
**Cc:** 'Brad Schaefer'
**Subject:** RE: Allied Holdings - Black Diamond

Sol:

Thanks for your comments.

Transfer fee- We will revise the PSAs to reflect that there is no assignment fee.  Please note however that in the event that CIT as agent declines to waive the transfer fee, we have to change the language back.

Wire instructions/notice addresses- We will fix.

Big boy language- The big boy language is included in the standard terms incorporated by reference into the trade confirm and also in the standard terms incorporated by reference into the PSA.  Please see attached standard terms from the LSTA website (see paragraph 24 for trade confirm terms and paragraph 4.1(n) for PSA terms).

Thanks,

3

BDCM0003458

**Tim Dable**
D: +1 (312) 558-6369
www.winston.com

WINSTON
&STRAWN
LLP

---

**From:** Solmaria Velez [mailto:SVelez@spectrumgp.com]
**Sent:** Friday, February 17, 2012 2:45 PM
**To:** Dable, Tim
**Cc:** 'Brad Schaefer'
**Subject:** RE: Allied Holdings - Black Diamond

Below are Spectrum's initial comments:

Transfer Fee (p6 of PSA) – should be none; we haven't paid any transfer fees on any prior trades

Wire Instructions/Addresses for notices etc (p6/7 of PSA) – re-sending our admin details (please note we've moved to 19th floor)

Also, my long standing question on the trade confirms is with regard to big boy language.  New question is whether we'll be receiving updated trade confirms to reflect the revised trade amounts.

Thanks

Sol

---

**\*PLEASE NOTE OUR NEW FLOOR AND
PERSONAL PHONE EXTENSION**

**Solmaria Velez**
Director of Operations & Controller
SPECTRUM GROUP MANAGEMENT
1250 Broadway, 19th Floor*
New York, NY 10001
Phone: 212-687-9555 x402*
Fax: 212-983-2322
Cell: 602-540-0653
Email: svelez@spectrumgp.com

---

**From:** Dable, Tim [mailto:TDable@winston.com]
**Sent:** Wednesday, February 01, 2012 4:40 PM
**To:** Solmaria Velez
**Cc:** 'Brad Schaefer'
**Subject:** RE: Allied Holdings - Black Diamond

Attached for your review are draft transfer documents (PSA and AA) for each trade, together with closed upstream documents.  Please do not hesitate to contact me with any questions.

Best regards,

4

Confidential

BDCM0003459

**Tim Dable**
D: +1 (312) 558-6369
www.winston.com

WINSTON
&STRAWN
LLP

**From:** Solmaria Velez [mailto:SVelez@spectrumgp.com]
**Sent:** Wednesday, January 18, 2012 12:49 PM
**To:** 'Brad Schaefer'
**Cc:** 'Closers'; Dable, Tim
**Subject:** RE: Allied Holdings - Black Diamond
**Importance:** High

Where are we with this language and I believe the trade amounts were updated so those changes need to flow through to these documents as well.

Solmaria Velez
Controller
SPECTRUM GROUP MANAGEMENT
1250 Broadway, Suite 810
New York, NY 10001
Phone: 212-687-9555 x17
Fax: 212-983-2322
Cell:  602-540-0653
Email: svelez@spectrumgp.com

**From:** Solmaria Velez
**Sent:** Thursday, December 22, 2011 6:17 PM
**To:** 'Brad Schaefer'
**Cc:** 'Closers'; 'Dable, Tim'
**Subject:** RE: Allied Holdings - Black Diamond

I need to get an update on this language asap.

**From:** Solmaria Velez
**Sent:** Wednesday, November 30, 2011 9:34 AM
**To:** Brad Schaefer
**Cc:** Closers; Dable, Tim
**Subject:** RE: Allied Holdings - Black Diamond

Any update on this language?

Solmaria Velez
Controller
SPECTRUM GROUP MANAGEMENT

5

Confidential

BDCM0003460

1250 Broadway, Suite 810
New York, NY 10001
Phone: 212-687-9555 x17
Fax: 212-983-2322
Cell:  602-540-0653
Email: svelez@spectrumgp.com

**From:** Solmaria Velez
**Sent:** Friday, November 18, 2011 1:32 PM
**To:** 'Brad Schaefer'
**Cc:** Closers; Dable, Tim
**Subject:** RE: Allied Holdings - Black Diamond

Is there any  update on this from your side?

**Solmaria Velez**
Controller
SPECTRUM GROUP MANAGEMENT
1250 Broadway, Suite 810
New York, NY 10001
Phone: 212-687-9555 x17
Fax: 212-983-2322
Cell:  602-540-0653
Email: svelez@spectrumgp.com

**From:** Brad Schaefer [mailto:bschaefer@bdcm.com]
**Sent:** Tuesday, October 25, 2011 11:20 AM
**To:** Solmaria Velez
**Cc:** Closers; Dable, Tim
**Subject:** RE: Allied Holdings - Black Diamond

Sol,

I was not aware that Big Boy language had been agreed to at time of the trade.

Brad Schaefer
Black Diamond Capital Management
Trade Operations
P: 203-347-7842
bschaefer@bdcm.com

**Confidentiality Notice:** The information contained in this e-mail (and any attachments) is confidential and may be privileged. It is intended for the named recipient(s) only. If you are not the named recipient, you are hereby notified that any use, dissemination, distribution, retention or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by return e-mail and permanently delete the e-mail and any attachments. Thank you for your cooperation.

6

Confidential

BDCM0003461

**From:** Solmaria Velez [mailto:SVelez@spectrumgp.com]
**Sent:** Tuesday, October 25, 2011 9:46 AM
**To:** Brad Schaefer
**Cc:** Closers; Dable, Tim
**Subject:** RE: Allied Holdings - Black Diamond

Hi,

I just read through these quickly.  I was told there would be big boy language on this trade.  Is there a separate side letter for that?  Please confirm either way.

Thanks

Sol

--------------------------------------

**Solmaria Velez**
Controller
**SPECTRUM GROUP MANAGEMENT**
1250 Broadway, Suite 810
New York, NY 10001
Phone: 212-687-9555 x17
Fax: 212-983-2322
Cell: 602-540-0653
Email: svelez@spectrumgp.com

.................................

**From:** Brad Schaefer [mailto:bschaefer@bdcm.com]
**Sent:** Tuesday, October 25, 2011 9:10 AM
**To:** Solmaria Velez
**Cc:** Closers; Dable, Tim
**Subject:** Allied Holdings - Black Diamond
**Importance:** High

Sol,

Allied Trade confirms are attached for you review.
Please have them signed and returned to me at your earliest convenience.

Call or email me with any questions.

Thank you

_____

Brad Schaefer
Black Diamond Capital Management
Trade Operations
P: 203-347-7842
bschaefer@bdcm.com

**Confidentiality Notice:** The information contained in this e-mail (and any attachments) is confidential and may be privileged. It is intended for the named recipient(s) only. If you are not

7

BDCM0003462

the named recipient, you are hereby notified that any use, dissemination, distribution, retention or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by return e-mail and permanently delete the e-mail and any attachments. Thank you for your cooperation.

**From:** Solmaria Velez [mailto:SVelez@spectrumgp.com]
**Sent:** Monday, October 17, 2011 5:34 PM
**To:** Brad Schaefer
**Subject:** RE: Allied Holdings - Black Diamond

Hi,

Below are allocations (admin details attached):

SIPI Master Ltd = 62%
Khroma Special Situations Master SPC Ltd – Class A-1 = 38%

I was informed on Friday that we'd be using your counsel, please let me know if that is an issue.

Please let me know if you have any questions or need anything else from us in order to move forward.

Thanks

Sol

---

**Solmaria Velez**
Controller
SPECTRUM GROUP MANAGEMENT
1250 Broadway, Suite 810
New York, NY 10001
Phone: 212-687-9555 x17
Fax: 212-983-2322
Cell: 602-540-0653
Email: svelez@spectrumgp.com

**From:** Brad Schaefer [mailto:bschaefer@bdcm.com]
**Sent:** Monday, October 17, 2011 3:28 PM
**To:** Solmaria Velez
**Cc:** Solmaria Velez
**Subject:** RE: Allied Holdings - Black Diamond
**Importance:** High

Solmaria,

Please send me your Allied allocation along with your Counsels information and I will draft a Trade Confirm.

Thank you

---

Brad Schaefer
Black Diamond Capital Management

Confidential

BDCM0003463

Trade Operations
P: 203-347-7842
bschaefer@bdcm.com

**Confidentiality Notice:** The information contained in this e-mail (and any attachments) is confidential and may be privileged. It is intended for the named recipient(s) only. If you are not the named recipient, you are hereby notified that any use, dissemination, distribution, retention or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by return e-mail and permanently delete the e-mail and any attachments. Thank you for your cooperation.

**From:** Jeffrey Schaffer [mailto:JSchaffer@spectrumgp.com]
**Sent:** Monday, October 17, 2011 3:18 PM
**To:** Brad Schaefer
**Cc:** Solmaria Velez
**Subject:** RE: Allied Holdings - Black Diamond

Solmaria Velez, cc:d here

Jeffrey A. Schaffer
SPECTRUM GROUP MANAGEMENT
1250 Broadway, Suite 810
New York, NY 10001
Phone: 212-687-9555
Fax: 212-983-2322
Email: jschaffer@spectrumgp.com

**From:** Brad Schaefer [mailto:bschaefer@bdcm.com]
**Sent:** Monday, October 17, 2011 3:14 PM
**To:** Jeffrey Schaffer
**Subject:** Allied Holdings - Black Diamond
**Importance:** High

Good afternoon Jeffrey,

Who will be the Closers from Spectrum on this Allied trade?
Please send me their contact information and I will get a Trade Confirm drafted and sent over.

Thank you

Brad Schaefer
Black Diamond Capital Management
Trade Operations
P: 203-347-7842
bschaefer@bdcm.com

9

BDCM0003464

**Confidentiality Notice:** The information contained in this e-mail (and any attachments) is confidential and may be privileged. It is intended for the named recipient(s) only. If you are not the named recipient, you are hereby notified that any use, dissemination, distribution, retention or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by return e-mail and permanently delete the e-mail and any attachments. Thank you for your cooperation.

The information contained in this email and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this email and any attachments is strictly prohibited. If you received this email in error, please notify the sender and permanently delete the email and any attachments immediately. You should not retain, copy or use this email or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Spectrum Group Management LLC and its related entities reserve the right to monitor all email communications through their networks.

The information contained in this email and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this email and any attachments is strictly prohibited. If you received this email in error, please notify the sender and permanently delete the email and any attachments immediately. You should not retain, copy or use this email or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Spectrum Group Management LLC and its related entities reserve the right to monitor all email communications through their networks.

The information contained in this email and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this email and any attachments is strictly prohibited. If you received this email in error, please notify the sender and permanently delete the email and any attachments immediately. You should not retain, copy or use this email or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Spectrum Group Management LLC and its related entities reserve the right to monitor all email communications through their networks.

The information contained in this email and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this email and any attachments is strictly prohibited. If you received this email in error, please notify the sender and permanently delete the email and any attachments immediately. You should not retain, copy or use this email or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Spectrum Group Management LLC and its related entities reserve the right to monitor all email communications through their networks.

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
*************************************************************************** Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

The information contained in this email and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this email and any attachments is strictly prohibited. If you received this email in error, please notify the sender and permanently delete the email and any attachments immediately. You should not retain, copy or use this email or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Spectrum Group Management LLC and its related entities reserve the right to monitor all email communications through their networks.

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
************************************************************************* Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

Confidential

BDCM0003465

The information contained in this email and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this email and any attachments is strictly prohibited. If you received this email in error, please notify the sender and permanently delete the email and any attachments immediately. You should not retain, copy or use this email or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Spectrum Group Management LLC and its related entities reserve the right to monitor all email communications through their networks.

Confidential

BDCM0003466

# EXHIBIT 13

## Filed Under Seal

# EXHIBIT 14

## Filed Under Seal

# EXHIBIT 15

For Discussion Purposes Only

TERM SHEET FOR ACQUIRING FIRST AND SECOND LIEN SECURED DEBT
CLAIMS WITH RESPECT TO ALLIED SYSTEMS HOLDINGS, INC. AND CONSUMMATING 363 SALE
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

This term sheet (this "Term Sheet") outlines the parties nonbinding present
intentions with respect to certain material terms of the following proposed
transactions (the "Proposed Transactions"): (a) the purchase by Jack Cooper
Transport Company, Inc. ("Jack Cooper") either directly or through one or more
designated affiliates to be determined ("JCT Affiliate") of certain first and
second lien secured debt claims (the "Purchased Debt") against Allied Systems
Holdings, Inc. and its subsidiaries and other affiliates (collectively, "Allied")
(the "Debt Purchase Transaction"); and (b) the purchase of substantially all of
the assets and the assumption of designated liabilities of Allied through a sale
under Section 363 of Title 11 of the United States Code (the "Bankruptcy Code")
pursuant to a credit bid of the first and/or second lien secured debt claims
against Allied (the "363 Sale").  The terms and conditions summarized herein are
provided for discussion purposes only, and are not enforceable or binding on any
parties hereto, and do not contain all of the contemplated terms and conditions of
the Proposed Transactions.  In addition, the Term Sheet constitutes confidential
settlement negotiations under Federal Rule of Evidence 408 (and comparable state
law) and cannot be used in any proceeding for any purpose.  The consummation of
the Proposed Transactions shall be subject to, among other things, the negotiation
and execution of definitive agreements that are mutually acceptable to Jack
Cooper, Yucaipa (as hereinafter defined), and Allied and the satisfaction of
customary and specific conditions precedent.


Debt Purchase Transaction Specific Terms

Seller:     The Yucaipa Companies, LLC, Yucaipa American Alliance Fund I, LP,
Yucaipa American Alliance (Parallel) Fund I, LP, and all other funds managed by or
related to the foregoing entities and their general partners (collectively,
"Yucaipa").

Buyer(s):   Jack Cooper and/or JCT Affiliate

Purchased Debt:    1.  All claims held by Yucaipa at closing under that certain
Amended and Restated First Lien Secured Super Priority Debtor-in-Possession and
Exit Credit and Guaranty Agreement, dated May 15, 2007, by and among, inter alia,
Allied Systems Holdings, Inc. (f/k/a Allied Holdings, Inc.) and Allied Systems,
Ltd. (L.P.) (collectively, the "Allied Borrowers"), certain subsidiaries of Allied
Borrowers as guarantors (the "Allied Guarantors"), the Lenders party thereto from
time to time, and The CIT Group/Business Credit, Inc. ("CIT"), as administrative
and collateral agent (as amended and modified, the "First Lien Credit Agreement").


       2.  All claims held by Yucaipa at closing under that certain Second Lien
Secured Super Priority Debtor-in-Possession and Exit Credit and Guaranty
Agreement, dated May 15, 2007, by and among, inter alia, the Allied Borrowers, the
Allied Guarantors, and Goldman Sachs Credit Partners, L.P., as sole lead arranger,
sole book runner, and sole lead administrative agent (as amended and modified, the
"Second Lien Credit Agreement"; and, together with the First Lien Credit
Agreement, the "Credit Agreements").

Amount of Purchased Debt:     1.  First Lien Credit Agreement term loans –
approximately [$114,700,000] of principal, plus all accrued and unpaid interest,
fees, charges, and expenses.

       2.  First Lien Credit Agreement synthetic letter of credit usage loans –

approximately [$20,100,000] of principal, plus all accrued and unpaid interest, fees, charges, and expenses.

     3.  Second Lien Credit Agreement term loans – approximately [$20,000,000] of principal, plus all accrued and unpaid interest, fees, charges, and expenses.

Purchased Debt Purchase Price: 1.  First Lien Credit Agreement claims – $150 million as hereinafter described.

     2.  Second Lien Credit Agreement claims – $1.00.

Form of Purchase:  Direct assignment by Yucaipa to Buyer.

Documentation:    Mutually acceptable to Buyer and Yucaipa, but to be based on "distressed trade" form documents published by The Loan Syndications and Trading Association, as amended or modified to accommodate the Debt Purchase Transaction.

Closing Date:    TBD

Assignment Fee under the Credit Agreements: Would be shared equally between Buyer and Yucaipa, unless waived by CIT.

Payment of Purchased Debt Purchase Price:   The $150 million Purchased Debt Purchase Price would be paid as follows:

  1.  At closing (i.e., within three (3) business days of receipt of HSR Clearance (as hereinafter defined)), Buyer would pay Yucaipa $75 million of the Purchased Debt Purchase Price in form of notes identical in all material respects (except as otherwise provided herein) to those issued under Jack Cooper's 12 ¾% Senior Secured Notes Due 2015 (the "Jack Cooper Notes").

  2.  Within ten (10) business days of the consummation of the 363 Sale (i.e., the entry of a final non-appealable order of the Bankruptcy Court approving the 363 Sale in a form acceptable to Buyer in its sole and absolute discretion and to be attached to the Cooperation Agreements (as hereinafter defined)), Buyer would pay Yucaipa the remaining $75 million of the Purchase Debt Purchase Price in cash.

Conditions Precedent to Signing Definitive Agreements for Debt Purchase Transaction:    1.  Allied and/or Yucaipa to provide to Jack Cooper the following due diligence items prior to signing definitive agreements:

  Full and complete copies of all documents relating to the Credit Agreements (collectively, the "Loan Documents"), including, without limitation, those documents set forth on Schedule 1 attached hereto.

  Proof of the total amount of claims outstanding under the Credit Agreements.

  Corporate structure charts and summary of shareholders and their ownership to the extent available.

  Summary of certain material terms (to be agreed upon) of Ford customer contract, including, without limitation, revenue provisions, bankruptcy provisions, and evidence of the contract being a "no cut" contract.

  Access to information regarding the rigs and real estate owned by Allied to allow Jack Cooper to confirm: (i) numbers and locations of such rigs and real estate; (ii) the age and condition of such rigs and general condition of such real estate; (iii) that Allied has clear title to such rigs and real estate; and (iv) that such rigs and real estate are not encumbered by claims (such as financing liens, operating or capital lease claims, and mortgages), other than collateral interests granted pursuant to the Credit Agreements.  For purposes of this Term Sheet, "access" shall be defined to include an opportunity to inspect all rigs owned or

leased by Allied.

Access to complete lease agreements regarding the rigs and real estate leased by Allied.

Information identifying Allied's tax basis in its tangible assets.

Access to such financial, operational, and other information concerning Allied (including, without limitation, estimated current run-rate revenues and terminal contribution margins by terminal based on current customer contracts) as agreed to between Robert Griffin, CEO of Jack Cooper, and Mark Gendregske, CEO of Allied.

    2.  Jack Cooper would complete its review and due diligence of the items listed in item 1 above within 15 business days of receipt thereof from Allied and/or Yucaipa.

    3.  As of the signing date, Allied shall have the following:

    (a) average cash book balance of not less than $4,000,000 over a 10-day period prior to the signing date; and
    (b) average accounts receivable, net of contras, of not less than $9,000,000 over a 10-day period prior to the signing date.

    4.  Settlement and dismissal with prejudice of all claims and counterclaims in that certain lawsuit styled as Allied Systems Holdings, Inc. vs. T. Michael Riggs, IEP Carhaul LLC, Jack Cooper Transport Company, Inc., and Active Carhaul Acquisition, Inc. vs. The Yucaipa Companies, LLC and Mark J. Gendregske; in the Superior Court of Cobb County, Georgia, Civil Action File No. CV-09-1-10536-48.

Conditions Precedent to Closing Debt Purchase Transaction:    The following conditions precedent would have to be satisfied or waived prior to closing the Debt Purchase Transaction:

    1.  Jack Cooper would obtain the consent of its lenders and investors to consummate the Proposed Transactions (the "Lenders Consent").  [CTD: Jack Cooper needs signed definitive agreements to obtain consent from lenders and investors.]

    2.  Within three (3) business days of Jack Cooper obtaining the Lenders Consent, Jack Cooper and Yucaipa would (and/or Yucaipa would cause Allied to) make a Hart-Scott-Rodino filing for the completion of the Debt Purchase Transaction and 363 Sale.

    3.  In the event the other conditions precedent to closing have been satisfied or waived, then the Debt Purchase Transaction would close within three (3) business days of the expiration or termination of any applicable waiting periods under the Hart-Scott-Rodino Act applicable to the purchase of the Purchased Debt and the completion of the 363 Sale described below (the "HSR Clearance").

    4.  All commitments to make advances or issue new letters of credit under the First Lien Credit Agreement would be terminated.

    5.  Proof of Yucaipa, Allied, and CIT delivering evidence of releases of certain claims against each other in that certain lawsuit styled as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I., LP and Yucaipa American Alliance (Parallel) Fund I, LP vs. The CIT Group/Business Credit, Inc., In the Superior Court of Fulton County, Georgia, Case No. 2009CF177574 (J. Goger).

    6.  As part of Buyer purchasing all the claims under the Credit Agreements held by CIT, Black Diamond, and Spectrum:

There would be a settlement and dismissal with prejudice of all claims and counterclaims in that certain lawsuit styled as BDCM Opportunity Fund II, LP,

Black Diamond CLO 2005-1 LTD, and Spectrum Investment Partners, L.P. vs. Yucaipa American Alliance Fund I., LP and Yucaipa American Alliance (Parallel) Fund I, LP, in the Supreme Court of the State of New York, New York County, Index No. _____ (filed on or about January 18, 2012).

CIT, Black Diamond, and Spectrum would affirm Amendment No. 4 to Credit Agreement, dated August 21, 2009.

The Loan Documents would be amended to provide that Buyer may acquire claims under the Loan Documents as an "Eligible Assignee" and become the "Requisite Lender" with all rights associated therewith, including, but not limited to, the right to vote its acquired claims and to direct that actions be undertaken as may be allowed pursuant to the Loan Documents.

CIT as the Administrative Agent under the First Lien Credit Agreement (on behalf of itself and its successors) would not contest that Yucaipa holds claims constituting "Requisite Lenders" and Buyer (or its designee) would be an Eligible Assignee and would hold claims constituting Requisite Lenders under the First Lien Credit Agreement upon purchasing all of the claims against Allied under the First Lien Credit Agreement held by Yucaipa.

7. As of the Closing Date: (a) the total outstanding principal amount under the First Lien Credit Agreement would not exceed $265,000,000 less the amount of any commitments that have been terminated before the Closing Date; (b) the total outstanding principal amount under the Second Lien Credit Agreement would not exceed $30,000,000; and (c) Yucaipa would hold a majority of the voting shares of Allied and would have the power to elect the majority of the members of the Board of Directors of Allied.

8. Yucaipa (in its capacity as equity holder) and Allied would enter into one or more cooperation and support agreements with respect to the Allied bankruptcy filings and the 363 Sale as further described below (the "Cooperation Agreements").

9. Proof reasonably satisfactory to Jack Cooper that Allied has prepared all documents and taken all steps necessary to file its bankruptcy cases in the Bankruptcy Court.

Jack Cooper Notes: 1. Jack Cooper Holdings Corp. would have the right and option at any time to purchase or satisfy any or all obligations under any or all Jack Cooper Notes held by Yucaipa at par, with no premium or penalty payment.

2. Yucaipa would agree to not purchase any Jack Cooper Notes (other than the notes part of the Purchased Debt Purchase Price) for two (2) years after the closing, except if the Jack Cooper Notes trade below a certain price to be agreed.

Restrictive Covenants:   Yucaipa would agree to a three (3)-year restrictive covenant covering the provision of car haul delivery, brokerage, and related services (to be agreed upon) in the United States, Canada, and Mexico providing for (a) non-competition, (b) non-solicitation of customers, vendors, and senior employees, and (c) mutual confidentiality and mutual non-disparagement restrictions - in each case subject to customary exceptions to be agreed upon.

Consent to Acquisition:  In its capacity as a holder of Jack Cooper Notes, Yucaipa would agree, through December 31, 2012, to vote its Jack Cooper Notes in favor of any acquisition of Allied, United Road Services Inc., and/or Cassens Transport Company, whether pursuant to a customary acquisition, a Section 363 Sale, or otherwise.

HSR Approval:    If and upon Jack Cooper obtaining the Lenders Consent, Jack Cooper, Allied, and Yucaipa each would use its reasonable best efforts to obtain HSR approval for the completion of the Debt Purchase Transaction and 363 Sale.

Specific procedures and mutual covenants regarding HSR to be mutually agreed.  If after each of Buyer, Allied, and Yucaipa has used its reasonable best efforts and has satisfied the other procedures and covenants, there is entered a final non-appealable order prohibiting the completion of the Debt Purchase Transaction and/or the 363 Sale due to HSR issues, then Jack Cooper would  be obligated to promptly issue to Yucaipa Jack Cooper Notes in the initial principal amount of $10 million and any definitive agreements executed hereafter to consummate the Proposed Transactions would be terminated.

363 Sale Specific Terms

Structure of 363 Sale:    Buyer anticipates purchasing substantially all of the assets of Allied, free and clear of all liens, claims, and other encumbrances, pursuant to a sale under Section 363 of the Bankruptcy Code (the "Bankruptcy Process").  In addition, Buyer would expect to have Allied assume and assign certain customer contracts, supply agreements, leases, license agreements, and other executory contracts, which executory contracts would be designated by Buyer in its sole and absolute discretion.  Except as specifically agreed upon and designated by Buyer in the Cooperation Agreements that would be executed by Yucaipa, Allied and Buyer, Buyer would not assume or otherwise be responsible for any indebtedness, trade payables, or other liabilities or obligations of Allied or its bankruptcy estate whatsoever, contingent or otherwise.

363 Sale Purchase Price: Credit bid of all claims against Allied under the Credit Agreements.

Signing and Closing 363 Sale:
      The Cooperation Agreements among Yucaipa, Allied, and Buyer would be signed simultaneous with the signing of the Debt Purchase Transaction.

 The Bankruptcy Process would be expected to take no longer than ninety (90) days, subject to any delays occasioned by the Bankruptcy Court's calendar.

Bankruptcy and HSR Filings:    Within three (3) business days of Jack Cooper obtaining the Lenders Consent, Yucaipa (and Yucaipa would cause Allied to) and Buyer would make a Hart-Scott-Rodino filing for the purchase of the Purchased Debt and for the completion of the 363 Sale.  Allied would file, on the date HSR Clearance is obtained, a motion and form of order, both in form and substance acceptable to Buyer in its sole and absolute discretion, seeking approval of the 363 Sale, a customary break-up fee, and certain other bid protections, including, but not limited to, a minimum overbid and minimum bidding increments, acceptable to Buyer in its sole and absolute discretion (collectively, the "Bid Protections"), pursuant to Section 363 of the Bankruptcy Code.  Pursuant to the Cooperation Agreements, Allied and Yucaipa would seek to promptly obtain approval by the Bankruptcy Court of the Bid Protections and the 363 Sale.

General Terms

Transaction Costs: Each party shall be responsible for its own individual costs and expenses, specifically including costs and expenses of legal counsel and other advisors, to negotiate, document, and implement the Proposed Transactions.

Nonbinding Provisions:    Each party acknowledges and agrees that the provisions of this Term Sheet do not create or constitute any legally binding obligations among the parties.  The parties do not intend to be bound by the provisions of this Term Sheet, and no party shall have any liability to the other parties hereto with respect to the terms of this Term Sheet.  No party may reasonably rely on any promises inconsistent with this paragraph.

*****

☐
Schedule 1

List of Loan Documents

     1. First Lien Credit Agreement Documents (all as amended and restated, including all amendments and restatements thereto)

Credit Agreement
Pledge and Security Agreement
Intellectual Property Security Agreements
Notes
Mortgages
Guaranties
Intercreditor Agreements
Canadian Pledge and Security Agreement
Affirmation Agreement
Any and all waiver letters or agreements
Any and all forbearance agreements
Evidence of the right of Requisite Lenders to accelerate the obligations under the First Lien Credit Agreement

     2. Second Lien Credit Agreement Documents (all as amended and restated, including all amendments and restatements thereto)

Credit Agreement
Pledge and Security Agreement
Intellectual Property Security Agreements
Notes
Mortgages
Guaranties
Intercreditor Agreements
Canadian Pledge and Security Agreement
Affirmation Agreement
Any and all waiver letters or agreements
Any and all forbearance agreements

*****

9 -

CONFIDENTIAL DRAFT –
Jack Cooper Revised Draft 02/28/2012

# EXHIBIT 16

B 5 (Official Form 5) (12/07)

| **UNITED STATES BANKRUPTCY COURT**<br>District of Delaware | **INVOLUNTARY PETITION** |
|---|---|

| IN RE (Name of Debtor – If Individual: Last, First, Middle)<br><br>Allied Systems Holdings, Inc. | ALL OTHER NAMES used by debtor in the last 8 years<br>(Include married, maiden, and trade names.)<br><br>Allied Holdings, Inc. |
|---|---|

| Last four digits of Social-Security or other Individual's Tax-I.D. No./Complete EIN<br>(If more than one, state all.):<br>58-0360550 | |
|---|---|

| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code)<br><br>2711 Centerville Road, Suite 400<br>Wilmington, Delaware 19808 | MAILING ADDRESS OF DEBTOR (If different from street address)<br><br>2302 Parklake Drive, Building 15<br>Suite 600, Atlanta, GA 30345 |
|---|---|
| COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS<br>New Castle                    ZIP CODE<br>                                19808 |                                ZIP CODE<br>                                30345 |

| LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR  (If different from previously listed addresses) |
|---|

| CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED<br><br>☐ Chapter 7     ☑ Chapter 11 |
|---|

| INFORMATION REGARDING DEBTOR (Check applicable boxes) |
|---|

| Nature of Debts<br>(Check one box.)<br><br>Petitioners believe:<br><br>☐ Debts are primarily consumer debts<br>☑ Debts are primarily business debts | Type of Debtor<br>(Form of Organization)<br><br>☐ Individual (Includes Joint Debtor)<br>☑ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.)<br><br>_____ | Nature of Business<br>(Check one box.)<br><br>☐ Health Care Business<br>☐ Single Asset Real Estate as defined in<br>   11 U.S.C. § 101(51)(B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☑ Other |
|---|---|---|

| VENUE | FILING FEE (Check one box) |
|---|---|
| ☑ Debtor has been domiciled or has had a residence, principal<br>place of business, or principal assets in the District for 180<br>days immediately preceding the date of this petition or for<br>a longer part of such 180 days than in any other District.<br><br>☐ A bankruptcy case concerning debtor's affiliate, general<br>partner or partnership is pending in this District. | ☑ Full Filing Fee attached<br><br>☐ Petitioner is a child support creditor or its representative, and the form<br>specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached.<br>*[If a child support creditor or its representative is a petitioner, and if the<br>petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of<br>1994, no fee is required.]* |

| PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER<br>OR AFFILIATE OF THIS DEBTOR (Report information for any additional cases on attached sheets.) | |
|---|---|
| Name of Debtor | Case Number | Date |
| Relationship | District | Judge |

| ALLEGATIONS<br>(Check applicable boxes) | COURT USE ONLY |
|---|---|
| 1.   ☑ Petitioner (s) are eligible to file this petition pursuant to 11 U.S.C. § 303 (b).<br>2.   ☑ The debtor is a person against whom an order for relief may be entered under title 11 of the United<br>       States Code.<br>3.a. ☑ The debtor is generally not paying such debtor's debts as they become due, unless such debts are<br>       the subject of a bona fide dispute as to liability or amount;<br>                                                    or<br>   b. ☐ Within 120 days preceding the filing of this petition, a custodian, other than a trustee receiver, or<br>       agent appointed or authorized to take charge of less than substantially all of the property of the<br>       debtor for the purpose of enforcing a lien against such property, was appointed or took possession. | |

B 5 (Official Form 5) (12/07) – Page 2

Name of Debtor  Allied Systems Holdings, Inc.

Case No._____

| TRANSFER OF CLAIM |
|---|
| ☑ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a). |

| REQUEST FOR RELIEF |
|---|
| Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached. |

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| x _____ | x _____ 5/17/12 |
|---|---|
| Signature of Petitioner or Representative (State title) | Signature of Attorney                    Date |
| BDCM Opportunity Fund II, LP              KKC | Landis Rath & Cobb LLP By Kerri K. Mumford (DE 4186) |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) |
| Stephen H. Deckoff, Managing Principal | 919 Market St., Suite 1800 Wilmington, DE 19801 |
| Name & Mailing        BDCM Opportunity Fund II, LP | Address |
| Address of Individual  By: BDCM Opportunity Fund II, Adviser, L.L.C. | (302) 467-4400 |
| Signing in Representative      One Sound Shore Drive | |
| Capacity                Suite 200 | Telephone No. |
|                         Greenwich, CT 06830 | |

| x _____ | x _____ 5/17/12 |
|---|---|
| Signature of Petitioner or Representative (State title) | Signature of Attorney                    Date |
| Black Diamond CLO 2005-1 Ltd.            KKC | Landis Rath & Cobb LLP |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) |
| Stephen H. Deckoff, Managing Principal | 919 Market St., Suite 1800 Wilmington, DE 19801 |
| Name & Mailing        Black Diamond CLO 2005-1 Ltd. | Address |
| Address of Individual  By: Black Diamond CLO 2005-1 Adviser, L.L.C. | (302) 467-4400 |
| Signing in Representative      One Sound Shore Drive | |
| Capacity                Suite 200 | Telephone No. |
|                         Greenwich, CT 06830 | |

| x _____ | x _____ |
|---|---|
| Signature of Petitioner or Representative (State title) | Signature of Attorney                    Date |
| Spectrum Investment Partners LP | Landis Rath & Cobb LLP |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) |
| Jeffrey A. Schaffer, Managing Member | 919 Market St., Suite 1800 Wilmington, DE 19801 |
| Name & Mailing        Spectrum Investment Partners LP | Address |
| Address of Individual  By: Spectrum Group Management LLC | (302) 467-4400 |
| Signing in Representative      1250 Broadway, 19th Floor | |
| Capacity                New York, NY 10001 | Telephone No. |

| PETITIONING CREDITORS | | |
|---|---|---|
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| BDCM Opportunity Fund II, LP | Bus. debt - loan default | At Least $26.8 million |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Black Diamond CLO 2005-1 Ltd. | Bus. debt - loan default | At Least $4.5 million |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Spectrum Investment Partners LP | Bus. debt - loan default | At Least $21.5 million |
| Note:   If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioners' Claims    At Least $52.8 million |

0   continuation sheets attached

B 5 (Official Form 5) (12/07) – Page 2

Name of Debtor  Allied Systems Holdings, Inc.

Case No. _____

| TRANSFER OF CLAIM | |
|---|---|
| ☑ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner.  Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a). | |

| REQUEST FOR RELIEF | |
|---|---|
| Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition.  If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached. | |

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| x _____ Signature of Petitioner or Representative (State title) **BDCM  Opportunity Fund II, LP** | x _____ Date Signature of Attorney **Landis Rath & Cobb LLP By Kerri K. Mumford (DE 4186)** |
|---|---|
| Name of Petitioner | Name of Attorney Firm (If any) |
| Name & Mailing Address of Individual Signing in Representative Capacity | Date Signed Stephen H. Deckoff, Managing Principal BDCM Opportunity Fund II, LP By: BDCM Opportunity Fund II, Adviser, L.L.C. One Sound Shore Drive Suite 200 Greenwich, CT 06830 | **919 Market St., Suite 1800 Wilmington, DE 19801** Address **(302) 467-4400** Telephone No. |

| x _____ Signature of Petitioner or Representative (State title) **Black Diamond CLO 2005-1 Ltd.** | x _____ Date Signature of Attorney **Landis Rath & Cobb LLP** |
|---|---|
| Name of Petitioner | Name of Attorney Firm (If any) |
| Name & Mailing Address of Individual Signing in Representative Capacity | Date Signed Stephen H. Deckoff, Managing Principal Black Diamond CLO 2005-1 Ltd. By: Black Diamond CLO 2005-1 Adviser, L.L.C. One Sound Shore Drive Suite 200 Greenwich, CT 06830 | **919 Market St., Suite 1800 Wilmington, DE 19801** Address **(302) 467-4400** Telephone No. |

| x _____ Signature of Petitioner or Representative (State title) **Spectrum Investment Partners LP** | x _____ Date Signature of Attorney **Landis Rath & Cobb LLP** |
|---|---|
| Name of Petitioner | Name of Attorney Firm (If any) |
| Name & Mailing Address of Individual Signing in Representative Capacity | Date Signed Jeffrey A. Schaffer, Managing Member Spectrum Investment Partners LP By: Spectrum Group Management LLC 1250 Broadway, 19th Floor New York, NY 10001 | **919 Market St., Suite 1800 Wilmington, DE 19801** Address **(302) 467-4400** Telephone No. |

| PETITIONING CREDITORS | | |
|---|---|---|
| Name and Address of Petitioner **BDCM Opportunity Fund II, LP** | Nature of Claim Bus. debt - loan default | Amount of Claim At Least $26.8 million |
| Name and Address of Petitioner Black Diamond CLO 2005-1 Ltd. | Nature of Claim Bus. debt - loan default | Amount of Claim At Least $4.5 million |
| Name and Address of Petitioner Spectrum Investment Partners LP | Nature of Claim Bus. debt - loan default | Amount of Claim At Least $21.5 million |
| Note:  If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioners' Claims At Least $52.8 million |

0   continuation sheets attached

# EXHIBIT 17

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x

In re:                                        :

ALLIED SYSTEMS HOLDINGS, INC.,                :    Chapter 11

        Alleged Debtor.                      :    Case No. 11-[_____] ([___])

                                               :

-------------------------------------------------------x

In re:                                        :

ALLIED SYSTEMS, LTD. (L.P.),                  :    Chapter 11

        Alleged Debtor.                      :    Case No. 11-[_____] ([___])

                                               :

-------------------------------------------------------x

## AFFIDAVIT OF RICHARD EHRLICH ON BEHALF OF
## BDCM OPPORTUNITY FUND II, LP PURSUANT
## TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 1003

STATE OF CONNECTICUT  )
                      ) ss:
COUNTY OF FAIRFIELD    )

        Richard Ehrlich being duly sworn, deposes and states:

    1.      I make this affidavit on behalf of BDCM Opportunity Fund II, LP ("BDCM"), a petitioning creditor in the above-captioned involuntary chapter 11 cases (the "Bankruptcy Cases") filed by BDCM and other petitioning creditors against (i) Allied Systems Holdings, Inc., and (ii) Allied Systems, Ltd. (L.P.) (together, the "Debtors"). I am fully familiar with the facts set forth herein either through my own personal knowledge or through a review of documents related to BCDM's claims against the Debtors. If called to testify in connection with the Bankruptcy Cases, the following would constitute my testimony.

2.      I am a Managing Director of Black Diamond Capital Management, L.L.C., which
through its affiliated entities is the investment manager for BDCM.  BDCM has its principal
place of business at 1 Sound Shore Drive, Suite 200, Greenwich, Connecticut 06830.  BDCM is
a creditor of the Debtors based upon its status as a lender under that certain Amended and
Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty
Agreement dated as of March 30, 2007 by and among Allied Holdings, Inc. and Allied Systems,
Ltd. (L.P.), as borrowers, certain subsidiaries of borrowers, as subsidiary guarantors, various
lenders, Goldman Sachs Credit Partners L.P., as lead arranger and syndication agent, and The
CIT Group/Business Credit, Inc., as administrative and collateral agent (as amended, restated,
modified, or supplemented from time to time, the "First Lien Credit Agreement").

### The First Lien Credit Agreement

3.      Pursuant to the First Lien Credit Agreement, various lenders committed to extend
term loans, revolving loans, and synthetic letters of credit to the Debtors in the amount of
$315 million.  Due to the accrual of interest and fees, the current outstanding aggregate amount
of the Obligations (as defined in the First Lien Credit Agreement) is approximately $296.4
million.  A copy of the First Lien Credit Agreement will be annexed to a declaration in support
of a statement contemporaneously filed by the petitioning creditors.

4.      Pursuant to the First Lien Credit Agreement, the lenders' commitments under
term loans, revolving loans, and synthetic letters of credit were evidenced by promissory notes.
The claims of BDCM and other petitioning creditors derive from these notes.

5.      The Obligations are secured by first priority liens in substantially all of the
Debtors' assets, including, but not limited to accounts, chattel paper, general intangibles, goods,
instruments, insurance, intellectual property, investment related property, letter of credit rights,

2

money, receivables, and commercial tort claims.  The Obligations are guaranteed by affiliates of the Debtors.

### The Assignments

6.    By virtue of the execution of several assignment and assumption agreements, BDCM received an unconditional transfer and assignment of certain amounts of loans owed by the Debtors under the First Lien Credit Agreement (the "Assigned Claims").  Redacted copies of the assignment documentation are attached as **Exhibit A**.

7.    The Assigned Claims were not assigned to BDCM for the purposes of commencing the Bankruptcy Cases.

8.    As of the date hereof, BDCM holds Obligations in the aggregate principal amount of at least $26.8 million, together with all accrued and unpaid interest (including default interest), fees and expenses calculated in accordance with the Credit Agreement.

Dated: May 11th, 2012
      Greenwich, Connecticut

                                  RICHARD EHRLICH

Sworn to and subscribed before me
This 11th day of May, 2012

      Notary Public

Subscribed and sworn to before me
this 11th day of May, 2012

Notary Public

Date Commission Expires: 10/31/2014

3

# EXHIBIT A



## PURCHASE AND SALE AGREEMENT ███████████

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT FOR ███████████████ is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the LSTA Standard Terms and Conditions for Purchase and Sale Agreement for ██████████████ published by the LSTA as of ████████████████ (the "Standard Terms").  The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below.  The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement for ███████████████ governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | |
| Agreement Date: | |
| Seller: | |
| Seller MEI: | |
| Buyer: | |
| Buyer MEI: | |
| Credit Agreement: | Amended and Restated First Lien Secured Super-Priority Debtor In Possession and Exit Credit and Guaranty Agreement dated as of March 30, 2007, and amended and restated as of May 15, 2007, among Allied Systems Holdings, Inc. (as successor by merger to Allied Holdings, Inc.), Allied Systems, Ltd. (L.P.), certain Subsidiaries of Holdings and Systems, as Guarantors, the Lenders parties thereto from time to time, Goldman Sachs Credit Partners L.P., as Lead Arranger and Syndication Agent, The CIT Group/Business Credit, Inc., as Administrative Agent and Collateral Agent and the other agents parties thereto |
| Borrower: | Allied Systems Holdings, Inc., Allied Systems, Ltd. (L.P.) |
| Purchase Amount(s): | (1) ████████ principal amount of LC Deposits |
| | (2) ████████ principal amount of Term Loans |
| Tranche(s): | (1 ██████ |
| | (2 ██████ |
| CUSIP Number(s), if available: | Not Applicable |
| Pre-Settlement Date Accruals Treatment: | ☐ Settled Without Accrued Interest<br>☒ Trades Flat |
| Type of Assignment: | ☒ Original Assignment |

LSTA EFFECTIVE September 9, 2011     Copyright © LSTA 2011. All rights reserved.

| | | | |
|---|---|---|---|
| | ☐ Secondary Assignment | | |
| Borrower in Bankruptcy: | Yes ☐ | No ☒ | |
| Delivery of Credit Documents: | Yes ☐ | No ☒ | |
| Netting Arrangements: | Yes ☒ | No ☐ | |
| Flip Representations: | Yes ☐ | No ☒ | |
| Step-Up Provisions: | Yes ☐ | No ☒ | |
| | Shift Date: | Not Applicable | |
| Transfer Notice | Yes ☐ | No ☒ | |

<u>DEFINITIONS</u>

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement. Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement. Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement. If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"<u>Agent</u>" means THE CIT GROUP / Business Credit, Inc. as Administrative Agent under the Credit Agreement.

"<u>Assignment</u>" means an Assignment and Assumption Agreement that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"<u>Bankruptcy Case</u>" select one:
    ☒ none.
    ☐ means [the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, in re _____, No. _____].

"<u>Bankruptcy Court</u>" select one:
    ☒ none.
    ☐ means [the United States Bankruptcy Court for the _____ District of _____ (and, if appropriate, the United States District Court for that District)].

"<u>Bar Date</u>" select one:
    ☒ not applicable.
    ☐ none has been set.
    ☐ means [specify applicable date, if any].

"<u>Buyer Purchase Price</u>" select one:
    ☐ not applicable.
    ☒ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
    ☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
☒ none.
☐ means [identify applicable commitment tranche(s) using Credit Agreement definitions] in the principal amount of $/£/€_____ [in each case specify the aggregate amount of the Loans, the Unfunded Commitments and the portion, if any, of the Commitments that is irrevocably "frozen" (i.e., that is not subject to future drawing)].

"Covered Prior Seller" select one:
☒ not applicable.
☐ means each Prior Seller that transferred the Loans and Commitments (if any) on or after the Shift Date [but prior to the transfer pursuant to which _____ transferred such Loans and Commitments (if any) on a distressed documentation basis pursuant to the Purchase and Sale Agreement for Distressed Trades dated as of _____, as set forth in the Annex].

"Filing Date" select one:
☒ none.
☐ means [identify date on which Borrower filed Bankruptcy Case].

"Loans" means (i) LC Deposits in the outstanding principal amount of ████████ and (ii) Term Loans in the outstanding principal amount of ████████.

"Netting Letter" select one:
☐ not applicable.
☒ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer and Original Buyer.

"Original Buyer" select one:
☐ not applicable.
☒ means ████████.

"Penultimate Buyer" select one:
☐ not applicable.
☒ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
☐ means [_____].

"Required Consents" means notice to the Borrowers and the Agent and the acceptance and recordation of the Assignment by the Agent.

"Seller Purchase Price" select one:
☐ not applicable.
☒ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" ████████

"Unfunded Commitments" means none.

3

SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)

The following specified terms shall apply to the sections referenced in this Section B:

| | Fiat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
   If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

   "(k) [intentionally omitted]."

4

Section 4.1(r) (Predecessor Transfer Agreements).
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.
☒ Not applicable.

Section 4.1(u) (Other Documents).
☒ None.
☐ The following: _____.

Section 4.1(v) (Proof of Claim).
☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
    ☐ the Agent on behalf of the Lenders.
    ☐ Seller or a Prior Seller.
☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☒ Not applicable.

## SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

Section 5.1(n) (Buyer Status).

    ☐ Buyer is not a Lender.
    ☒ Buyer is a Lender.
    ☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
    ☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## SECTION 6 (INDEMNIFICATION)

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

    (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's Indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

    (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's Indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

## SECTION 7 (COSTS AND EXPENSES)

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
    ☐ one-half thereof.
    ☐ other relevant fraction or percentage, _____, thereof.

5

☐    The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
      ☐ one-half thereof.
      ☐ other relevant fraction or percentage, _____ thereof.
☒    The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☐    The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.
☐    There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)**

Section 8.2 (<u>Distributions</u>); <u>Step-Up Distributions Covenant</u>.

     (i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

     (ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

Section 8.4 (<u>Wire Instructions</u>).

<u>Seller's Wire Instructions:</u>

Bank Name: The Bank of New York

<u>Buyer's Wire Instructions:</u>

Bank:  JP Morgan Chase Bank

**SECTION 9 (NOTICES)**

<u>Seller's Address for Notices and Delivery:</u>

<u>**Credit Contact:**</u> *(Financials, Credit Agreements, Amendments, Intralinks and Syntrax Access))*

6

_Trade Closing Contact: ( Confirms, Assignments, Funding Memo's)_



Operations Contact
_(Funding Notices, Borrowings, Paydowns, Interest, Fees, etc.)_



Buyer's Address for Notices and Delivery:

All Notices Sent To

BDCM OPPORTUNITY FUND II, L.P.
C/O Black Diamond Capital Management, L.L.C.
Attn: Loan Administrator



Email: <br>
PH: ████████        Fax: ████████

Legal Documentation:

Send To:
BDCM OPPORTUNITY FUND II, L.P.
c/o Black Diamond Capital Management L.L.C.
Attn: Loan Administrator



PH: ████████
Fax: ████████

Credit Communications

All Credit Information Sent To:
Black Diamond Capital Management, L.L.C.



7

PH: ██████████        Fax: ██████████

**H.      SECTION 27 (ADDITIONAL PROVISIONS)**

The following additional provisions, including any modifications to existing provisions, shall apply:

   None

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

SELLER

By:_____

    Name:

    Title:

BUYER

**BDCM OPPORTUNITY FUND II, L.P.**
by BDCM Opportunity Fund II Adviser, L.L.C.
its Investment Manager



By:_____

    Name:

    Title:

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

SELLER



BUYER

BDCM OPPORTUNITY FUND II, L.P.
by BDCM Opportunity Fund II Adviser, L.L.C.
its Investment Manager

By:_____
        Name:
        Title:

9

ANNEX TO PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

1.   If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

Not Applicable

2.   List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

None.

3.   Description of Proof of Claim (if any).

Not applicable.

4.   Description of Adequate Protection Order (if any).

Not applicable.

5.   List any exceptions to Section 4.1(w) (Notice of Impairment).

None.

6.   The amount of any PIK Interest that accreted to the principal amount of the Loans on or after the Trade Date but on or prior to the Settlement Date is ▮▮▮▮▮▮▮▮

Annex-1

ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ████████████ (the "Assignor") and BDCM Opportunity Fund II, L.P. (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Amended and Restated First Lien Senior Secured Super-Priority Debtor-in-Possession and Exit Credit and Guaranty Agreement identified below (as it may be amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters of credit, LC Deposits and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1. Assignor:            ████████████████

2. Assignee:            BDCM Opportunity Fund II, L.P.

3. Borrower(s):         Allied Systems Holdings, Inc., Allied Systems, LTD (L.P.)

4. Administrative Agent: The CIT Group / Business Credit, Inc., as the administrative agent under the Credit Agreement

5. Credit Agreement:    Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement dated as of March 30, 2007, and amended and restated as of May 15, 2007, among Allied Systems Holdings, Inc. (as successor by merger to Allied Holdings, Inc.), Allied Systems, Ltd. (L.P.), certain Subsidiaries of Holdings and Systems, as Guarantors, the Lenders parties thereto from time to time, Goldman Sachs Credit Partners L.P., as Lead Arranger and Syndication Agent, The CIT Group/Business Credit, Inc., as Administrative Agent and Collateral Agent and the other agents parties thereto

6.     Assigned Interest:



| Facility     Assigned | Aggregate Amount of Commitment/Loans/LC Deposits for all Lenders | Amount of Commitment/Loans/LC Deposits Assigned | Percentage Assigned of Commitment/Loans/LC Deposits |
|---|---|---|---|
| LC Deposits | USD ███████████ | ███████ USD | ██████████ % |
| Term Loans | USD ███████████ | ████████ USD | ████████████ % |

Effective Date: ███████████████

7.  Notice and Wire Instructions: See Attached

3

Wire Instructions:                    Wire Instructions: See Attached

4

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR



By:_____
    Name:
    Title:

ASSIGNEE

BDCM Opportunity Fund II, L.P., as Assignee
By BDCM Opportunity Fund II Adviser, L.L.C.
Its Investment Manager

By:_____
    Name:
    Title:

5

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR



ASSIGNEE

BDCM Opportunity Fund II, L.P., as Assignee
By BDCM Opportunity Fund II Adviser, L.L.C.
Its Investment Manager

By:_____
   Name:
   Title:

5

Consented to and Accepted:

THE CIT GROUP / BUSINESS CREDIT, INC., as Administrative Agent

By: _____

Name: Michael Alibaxtz

Title: Senior Vice President

Consented to:

ALLIED HOLDINGS, INC.

By: _____

Name: _____

Title: _____

ALLIED SYSTEMS, LTD (L.P.)

By: _____

Name: _____

Title: _____

6

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

1.    Representations and Warranties.

1.1    Assignor.  The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements (as defined herein), warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant hereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2    Assignee.  The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, and (v) it it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent, the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

2.    Payments.  All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1    With respect to Assigned Interests for Term Loans, unless notice to the contrary is delivered to the Lender from the Administrative Agent, payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date.  On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

2.2    With respect to Assigned Interests for Revolving Loans and LC Commitments and LC Deposits, from and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.

7

3.    General Provisions.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment.  This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

8



PURCHASE AND SALE AGREEMENT ███████████

---

## TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT ████████████████████s dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the LSTA Standard Terms and Conditions for Purchase and Sale Agreement███ ████████████published by the LSTA as of ███████████ (the "Standard Terms"). The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement ████████████████governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | █████████████████████ |
| Agreement Date: | |
| Seller: | |
| Seller MEI: | |
| Buyer: | |
| Buyer MEI: | |
| Credit Agreement: | **Amended and Restated First Lien Secured Super-Priority Debtor In Possession and Exit Credit and Guaranty Agreement dated as of March 30, 2007, and amended and restated as of May 15, 2007, among Allied Systems Holdings, Inc. (as successor by merger to Allied Holdings, Inc.), Allied Systems, Ltd. (L.P.), certain Subsidiaries of Holdings and Systems, as Guarantors, the Lenders parties thereto from time to time, Goldman Sachs Credit Partners L.P., as Lead Arranger and Syndication Agent, The CIT Group/Business Credit, Inc., as Administrative Agent and Collateral Agent and the other agents parties thereto** |
| Borrower: | **Allied Systems Holdings, Inc., Allied Systems, Ltd. (L.P.)** |
| Purchase Amount(s): | (1) ██████████principal amount of LC Deposits<br>(2) ████████████principal amount of Term Loans |
| Tranche(s): | (1) ████████████<br>(2) ███████████ |
| CUSIP Number(s), if available: | Not Applicable |
| Pre-Settlement Date Accruals Treatment: | ☐ Settled Without Accrued Interest<br>☒ Trades Flat |
| Type of Assignment: | ☒ Original Assignment |

LSTA EFFECTIVE September 9, 2011     Copyright © LSTA 2011. All rights reserved.

| | Secondary Assignment | |
|---|---|---|
| Borrower in Bankruptcy: | Yes ☐ | No ☒ |
| Delivery of Credit Documents: | Yes ☐ | No ☒ |
| Netting Arrangements: | Yes ☒ | No ☐ |
| Flip Representations: | Yes ☐ | No ☒ |
| Step-Up Provisions: | Yes ☐ | No ☒ |
| | Shift Date: | Not Applicable |
| Transfer Notice | Yes ☐ | No ☒ |

<u>DEFINITIONS</u>

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement. Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement. Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement. If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"<u>Agent</u>" means THE CIT GROUP / Business Credit, Inc. as Administrative Agent under the Credit Agreement.

"<u>Assignment</u>" means an Assignment and Assumption Agreement that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"<u>Bankruptcy Case</u>" select one:
☒ none.
☐ means [the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re _____, No. _____].

"<u>Bankruptcy Court</u>" select one:
☒ none.
☐ means [the United States Bankruptcy Court for the _____ District of _____ (and, if appropriate, the United States District Court for that District)].

"<u>Bar Date</u>" select one:
☒ not applicable.
☐ none has been set.
☐ means [specify applicable date, if any].

"<u>Buyer Purchase Price</u>" select one:
☐ not applicable.
☒ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

2

"Commitments" select one:
- ☒ none.
- ☐ means [identify applicable commitment tranche(s) using Credit Agreement definitions] in the principal amount of $/£/€_____ [in each case specify the aggregate amount of the Loans, the Unfunded Commitments and the portion, if any, of the Commitments that is irrevocably "frozen" (i.e., that is not subject to future drawing)].

"Covered Prior Seller" select one:
- ☒ not applicable.
- ☐ means each Prior Seller that transferred the Loans and Commitments (if any) on or after the Shift Date [but prior to the transfer pursuant to which _____ transferred such Loans and Commitments (if any) on a distressed documentation basis pursuant to the Purchase and Sale Agreement for Distressed Trades dated as of _____, as set forth in the Annex].

"Filing Date" select one:
- ☒ none.
- ☐ means [identify date on which Borrower filed Bankruptcy Case].

"Loans" means (i) LC Deposits in the outstanding principal amount of ████████ and (ii) Term Loans in the outstanding principal amount of ████████.

"Netting Letter" select one:
- ☐ not applicable.
- ☒ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer and Original Buyer.

"Original Buyer" select one:
- ☐ not applicable.
- ☒ means ████████

"Penultimate Buyer" select one:
- ☐ not applicable.
- ☒ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
- ☐ means [_____].

"Required Consents" means notice to the Borrowers and the Agent and the acceptance and recordation of the Assignment by the Agent.

"Seller Purchase Price" select one:
- ☐ not applicable.
- ☒ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" ████████

"Unfunded Commitments" means none.

3

## SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)

The following specified terms shall apply to the sections referenced in this Section B:

| | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
    If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

        "(k) [intentionally omitted]."

4

Section 4.1(r) (Predecessor Transfer Agreements).
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.
☒ Not applicable.

Section 4.1(u) (Other Documents).
☒ None.
☐ The following: _____.

Section 4.1(v) (Proof of Claim).
☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
  ☐ the Agent on behalf of the Lenders.
  ☐ Seller or a Prior Seller.
☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☒ Not applicable.

## SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

Section 5.1(n) (Buyer Status).

☐ Buyer is not a Lender.
☒ Buyer is a Lender.
☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## SECTION 6 (INDEMNIFICATION)

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

(i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

## SECTION 7 (COSTS AND EXPENSES)

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
  ☐ one-half thereof.
  ☐ other relevant fraction or percentage, _____, thereof.

5

☐    The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the
Purchase Price equal to
    ☐    one-half thereof.
    ☐    other relevant fraction or percentage, _____, thereof.
☒    The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☐    The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase
Price shall be made in respect thereof.
☐    There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in
respect thereof.

### SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)

Section 8.2 (Distributions); Step-Up Distributions Covenant.

(i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's
covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section
8.2(a) shall not apply).

(ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's
covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section
8.2(b) shall not apply).

Section 8.4 (Wire Instructions).

Seller's Wire Instructions:

Bank Name: The Bank of New York

Buyer's Wire Instructions:

Bank:  JP Morgan Chase Bank

### SECTION 9 (NOTICES)

Seller's Address for Notices and Delivery:

*Credit Contact:* (Financials, Credit Agreements, Amendments, Intralinks and Syntrax Access))

6

_Trade Closing Contact:_ ( _Confirms, Assignments, Funding Memo's_ )



_Operations_ _Contact_
_(Funding Notices, Borrowings, Paydowns, Interest, Fees, etc.)_



Buyer's Address for Notices and Delivery:

All Notices Sent To

BDCM OPPORTUNITY FUND II, L.P.
C/O Black Diamond Capital Management, L.L.C.
Attn: Loan Administrator



Email: ▮▮▮▮▮▮▮▮▮
PH: ▮▮▮▮▮▮▮▮        Fax ▮▮▮▮▮▮▮▮▮▮

Legal Documentation:

Send To:
BDCM OPPORTUNITY FUND II, L.P.
c/o Black Diamond Capital Management L.L.C.
Attn: Loan Administrator



PH: ▮▮▮▮▮▮▮▮
Fax: ▮▮▮▮▮▮▮

Credit Communications

All Credit Information Sent To:
Black Diamond Capital Management, L.L.C.



PH: ███████████        Fax: ███████████

H. _____ SECTION 27 (ADDITIONAL PROVISIONS)

The following additional provisions, including any modifications to existing provisions, shall apply:

None

8

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

SELLER

By:_____
    Name:
    Title:


BUYER

BDCM OPPORTUNITY FUND II, L.P.
by BDCM Opportunity Fund II Adviser, L.L.C.
its Investment Manager

By:_____
    Name:
    Title:

9

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

SELLER



BUYER

BDCM OPPORTUNITY FUND II, L.P.
by BDCM Opportunity Fund II Adviser, L.L.C.
its Investment Manager


By: _____
    Name:
    Title:

9

### ANNEX TO PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

1.  If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

    Not Applicable

2.  List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

    None.

3.  Description of Proof of Claim (if any).

    Not applicable.

4.  Description of Adequate Protection Order (if any).

    Not applicable.

5.  List any exceptions to Section 4.1(w) (Notice of Impairment).

    None.

6.  The amount of any PIK Interest that accreted to the principal amount of the Loans on or after the Trade Date but on or prior to the Settlement Date is ████████

Annex-1

ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ▮▮▮▮▮▮▮▮▮▮▮ (the "Assignor") and BDCM Opportunity Fund II, L.P. (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Amended and Restated First Lien Senior Secured Super-Priority Debtor-in-Possession and Exit Credit and Guaranty Agreement identified below (as it may be amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters of credit, LC Deposits and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1. Assignor:              ▮▮▮▮▮▮▮▮▮▮▮▮▮

2. Assignee:              BDCM Opportunity Fund II, L.P.

3. Borrower(s):           Allied Systems Holdings, Inc., Allied Systems, LTD (L.P.)

4. Administrative Agent:  The CIT Group / Business Credit, Inc., as the administrative agent under the Credit Agreement

5. Credit Agreement:      Amended and Restated First Lien Secured Super-Priority Debtor In Possession and Exit Credit and Guaranty Agreement dated as of March 30, 2007, and amended and restated as of May 15, 2007, among Allied Systems Holdings, Inc. (as successor by merger to Allied Holdings, Inc.), Allied Systems, Ltd. (L.P.), certain Subsidiaries of Holdings and Systems, as Guarantors, the Lenders parties thereto from time to time, Goldman Sachs Credit Partners L.P., as Lead Arranger and Syndication Agent, The CIT Group/Business Credit, Inc., as Administrative Agent and Collateral Agent and the other agents parties thereto

6.    Assigned Interest:

| Facility    Assigned | Aggregate Amount of Commitment/Loans/LC Deposits for all Lenders | Amount of Commitment/Loans/LC Deposits Assigned | Percentage Assigned of Commitment/Loans/LC Deposits |
|---|---|---|---|
| LC Deposits | USD  | USD | % |
| Term Loans | USD | USD | % |

Effective Date

2

7. Notice and Wire Instructions: See Attached

Wire Instructions:                    Wire Instructions: See Attached

4

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR



By:_____
      Name:
      Title:

ASSIGNEE

**BDCM Opportunity Fund II, L.P., as Assignee**
By BDCM Opportunity Fund II Adviser, L.L.C.
Its Investment Manager

By:_____
      Name:
      Title:

5

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR

ASSIGNEE

BDCM Opportunity Fund II, L.P., as Assignee
By BDCM Opportunity Fund II Adviser, L.L.C.
Its Investment Manager

By:_____
       Name:
       Title:

5

Consented to and Accepted:

THE CIT GROUP / BUSINESS CREDIT, INC., as Administrative Agent

By: _Michael Caliberti_

Name: Michael Aliberto

Title: Senior Vice President

Consented to:

ALLIED HOLDINGS, INC.

By: _____

Name:

Title:

ALLIED SYSTEMS, LTD (L.P.)

By: _____

Name:

Title:

6

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

1.      Representations and Warranties.

1.1      Assignor. The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements (as defined herein), warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2      Assignee. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, and (v) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent, the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

2.      Payments. All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1      With respect to Assigned Interests for Term Loans, unless notice to the contrary is delivered to the Lender from the Administrative Agent, payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date. On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

2.2      With respect to Assigned Interests for Revolving Loans and LC Commitments and LC Deposits, from and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.

7

3.     General Provisions.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment.  This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

8



PURCHASE AND SALE AGREEMENT FOR ▮▮▮▮▮▮▮▮▮▮▮▮▮

---

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT FOR ▮▮▮▮▮▮▮▮▮▮▮▮ is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the LSTA Standard Terms and Conditions for Purchase and Sale Agreement for ▮▮▮▮▮▮▮▮▮▮ published by the LSTA as of ▮▮▮▮▮▮▮▮ (the "Standard Terms").  The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below.  The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement for ▮▮▮▮▮▮▮▮ governing the Transaction.  With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | |
| Agreement Date: | |
| Seller: | |
| Seller MEI: | |
| Buyer: | |
| Buyer MEI: | |
| Credit Agreement: | Amended and Restated First Lien Secured Super-Priority Debtor In Possession and Exit Credit and Guaranty Agreement dated as of March 30, 2007, and amended and restated as of May 15, 2007, among Allied Systems Holdings, Inc. (as successor by merger to Allied Holdings, Inc.), Allied Systems, Ltd. (L.P.), certain Subsidiaries of Holdings and Systems, as Guarantors, the Lenders parties thereto from time to time, Goldman Sachs Credit Partners L.P., as Lead Arranger and Syndication Agent, The CIT Group/Business Credit, Inc., as Administrative Agent and Collateral Agent and the other agents parties thereto |
| Borrower: | Allied Systems Holdings, Inc., Allied Systems, Ltd. (L.P.) |
| Purchase Amount(s): | (1) ▮▮▮▮▮ principal amount of LC Deposits<br>(2) ▮▮▮▮▮ principal amount of Term Loans |
| Tranche(s): | (1) ▮▮▮▮▮▮▮▮<br>(2) ▮▮▮▮▮▮▮▮ |
| CUSIP Number(s), if available: | Not Applicable |
| Pre-Settlement Date Accruals Treatment: | ☐ Settled Without Accrued Interest<br>☒ Trades Flat |
| Type of Assignment: | ☒ Original Assignment |

LSTA EFFECTIVE September 9, 2011    Copyright © LSTA 2011. All rights reserved.

|  | ☐ Secondary Assignment | |
|---|---|---|
| Borrower in Bankruptcy: | Yes ☐ | No ☒ |
| Delivery of Credit Documents: | Yes ☐ | No ☒ |
| Netting Arrangements: | Yes ☒ | No ☐ |
| Flip Representations: | Yes ☒ | No ☒ |
| Step-Up Provisions: | Yes ☐ | No ☒ |
|  | Shift Date: | Not Applicable |
| Transfer Notice | Yes ☐ | No ☒ |

## DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.  Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means THE CIT GROUP / Business Credit, Inc. as Administrative Agent under the Credit Agreement.

"Assignment" means an Assignment and Assumption Agreement that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
    ☒ none.
    ☐ means [the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re _____, No. _____].

"Bankruptcy Court" select one:
    ☒ none.
    ☐ means [the United States Bankruptcy Court for the _____ District of _____ (and, if appropriate, the United States District Court for that District)].

"Bar Date" select one:
    ☒ not applicable.
    ☐ none has been set.
    ☐ means [specify applicable date, if any].

"Buyer Purchase Price" select one:
    ☐ not applicable.
    ☒ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
    ☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

2

"Commitments" select one:

☒ none.

☐ means [identify applicable commitment tranche(s) using Credit Agreement definitions] in the principal amount of $/£/€_____ [in each case specify the aggregate amount of the Loans, the Unfunded Commitments and the portion, if any, of the Commitments that is irrevocably "frozen" (i.e., that is not subject to future drawing)].

"Covered Prior Seller" select one:

☒ not applicable.

☐ means each Prior Seller that transferred the Loans and Commitments (if any) on or after the Shift Date [but prior to the transfer pursuant to which _____ transferred such Loans and Commitments (if any) on a distressed documentation basis pursuant to the Purchase and Sale Agreement for Distressed Trades dated as of _____, as set forth in the Annex].

"Filing Date" select one:

☒ none.

☐ means [identify date on which Borrower filed Bankruptcy Case].

"Loans" means (i) LC Deposits in the outstanding principal amount of ▮▮▮▮▮▮▮▮ and (ii) Term Loans in the outstanding principal of ▮▮▮▮▮▮▮▮.

"Netting Letter" select one:

☐ not applicable.

☒ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer and Original Buyer.

"Original Buyer" select one:

☐ not applicable.

☒ means ▮▮▮▮▮▮▮▮▮▮▮

"Penultimate Buyer" select one:

☐ not applicable.

☒ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).

☐ means [_____].

"Required Consents" means notice to the Borrowers and the Agent and the acceptance and recordation of the Assignment by the Agent.

"Seller Purchase Price" select one:

☐ not applicable.

☒ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means none.

"Unfunded Commitments" ▮▮▮▮▮▮▮▮▮▮

3

SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)

The following specified terms shall apply to the sections referenced in this Section B:

| | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
     If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

          "(k) [intentionally omitted]."

4

Section 4.1(r) (Predecessor Transfer Agreements).
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.
☒ Not applicable.

Section 4.1(u) (Other Documents).
☒ None.
☐ The following: _____.

Section 4.1(v) (Proof of Claim).
☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
   ☐ the Agent on behalf of the Lenders.
   ☐ Seller or a Prior Seller.
☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☒ Not applicable.

## SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

Section 5.1(n) (Buyer Status).

☐ Buyer is not a Lender.
☒ Buyer is a Lender.
☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## SECTION 6 (INDEMNIFICATION)

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

(i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

## SECTION 7 (COSTS AND EXPENSES)

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
   ☐ one-half thereof.
   ☐ other relevant fraction or percentage, _____, thereof.

5

☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
  ☐ one-half thereof.
  ☐ other relevant fraction or percentage, _____, thereof.
☒ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.
☐ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.
☐ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

### SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)

Section 8.2 (Distributions); Step-Up Distributions Covenant.

(i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

(ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

Section 8.4 (Wire Instructions).

Seller's Wire Instructions:

Bank Name: The Bank of New York

Buyer's Wire Instructions:

Bank:  JP Morgan Chase Bank

### SECTION 9 (NOTICES)

Seller's Address for Notices and Delivery:

*Credit Contact:* (Financials, Credit Agreements, Amendments, Intralinks and Syntrax Access))

6

*Trade Closing Contact:* ( *Confirms, Assignments, Funding Memo's* )



Operations Contact
*(Funding Notices, Borrowings, Paydowns, Interest, Fees, etc.)*



Buyer's Address for Notices and Delivery:

All Notices Sent To

BDCM OPPORTUNITY FUND II, L.P.
C/O Black Diamond Capital Management, L.L.C.
Attn: Loan Administrator



Email: ▌▌▌▌▌▌▌▌▌▌▌▌
PH: ▌▌▌▌▌▌▌▌▌▌▌▌                Fax: ▌▌▌▌▌▌▌▌▌▌

Legal Documentation:

Send To:
BDCM OPPORTUNITY FUND II, L.P.
c/o Black Diamond Capital Management L.L.C.
Attn: Loan Administrator



PH: ▌▌▌▌▌▌▌▌▌▌▌
Fax: ▌▌▌▌▌▌▌▌▌▌

Credit Communications

All Credit Information Sent To:
Black Diamond Capital Management, L.L.C.

7

PH: ███████████        Fax: ███████████

H.    SECTION 27 (ADDITIONAL PROVISIONS)

The following additional provisions, including any modifications to existing provisions, shall apply:

    None

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

By:_____
    Name:
    Title:


**BUYER**

**BDCM OPPORTUNITY FUND II, L.P.**
by BDCM Opportunity Fund II Adviser, L.L.C.
its Investment Manager



By:_____
    Name:
    Title:

9

IN WITNESS WHEREOF, Seller and Buyer have executed this Agreement by their duly
authorized officers or representatives as of the Agreement Date.

SELLER



BUYER

BDCM OPPORTUNITY FUND II, L.P.
by BDCM Opportunity Fund II Adviser, L.L.C.
its Investment Manager


By:_____
    Name:
    Title:

9

ANNEX TO PURCHASE AND SALE AGREEMENT FOR DISTRESSED TRADES

1.   If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

     Not Applicable

2.   List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

     None.

3.   Description of Proof of Claim (if any).

     Not applicable.

4.   Description of Adequate Protection Order (if any).

     Not applicable.

5.   List any exceptions to Section 4.1(w) (Notice of Impairment).

     None.

6.   The amount of any PIK Interest that accreted to the principal amount of the Loans on or after the Trade Date but on or prior to the Settlement Date is ███████████

Annex-1

ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ████████████████ (the "Assignor") and BDCM Opportunity Fund II, L.P. (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Amended and Restated First Lien Senior Secured Super-Priority Debtor-in-Possession and Exit Credit and Guaranty Agreement identified below (as it may be amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters of credit, LC Deposits and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1.  Assignor:                         ████████

2.  Assignee:                         BDCM Opportunity Fund II, L.P.

3.  Borrower(s):                      Allied Systems Holdings, Inc., Allied Systems, LTD (L.P.)

4.  Administrative Agent:             The CIT Group / Business Credit, Inc., as the administrative agent under the Credit Agreement

5.  Credit Agreement:                 Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement dated as of March 30, 2007, and amended and restated as of May 15, 2007, among Allied Systems Holdings, Inc. (as successor by merger to Allied Holdings, Inc.), Allied Systems, Ltd. (L.P.), certain Subsidiaries of Holdings and Systems, as Guarantors, the Lenders parties thereto from time to time, Goldman Sachs Credit Partners L.P., as Lead Arranger and Syndication Agent, The CIT Group/Business Credit, Inc., as Administrative Agent and Collateral Agent and the other agents parties thereto

6.    Assigned Interest:



| Facility    Assigned | Aggregate Amount of Commitment/Loans/LC Deposits for all Lenders | Amount of Commitment/Loans/LC Deposits Assigned | Percentage Assigned of Commitment/Loans/LC Deposits |
|---|---|---|---|
| LC Deposits | USD ▮▮▮▮▮ | ▮▮▮▮▮USD | ▮▮▮▮▮% |
| Term Loans | USD ▮▮▮▮▮ | ▮▮▮▮▮USD | ▮▮▮▮▮% |

Effective Date: ▮▮▮▮▮▮▮

2

7. Notice and Wire Instructions: See Attached

3

Wire Instructions:                    Wire Instructions: See Attached

4

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR

By:_____
    Name:
    Title:

ASSIGNEE

**BDCM Opportunity Fund II, L.P., as Assignee**
**By BDCM Opportunity Fund II Adviser, L.L.C.**
**Its Investment Manager**

By:_____
    Name:
    Title:

5

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR



ASSIGNEE

BDCM Opportunity Fund II, L.P., as Assignee
By BDCM Opportunity Fund II Adviser, L.L.C.
Its Investment Manager


By:_____
    Name:
    Title:

5

Consented to and Accepted:

THE CIT GROUP / BUSINESS CREDIT, INC., as Administrative Agent

By: _Michael Aliberta (signature)_

Name: _Michael Aliberta_

Title: _Senior Vice President_

Consented to:

ALLIED HOLDINGS, INC.

By: _____

Name:

Title:

ALLIED SYSTEMS, LTD (L.P.)

By: _____

Name:

Title:

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

1.    Representations and Warranties.

1.1    Assignor.  The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements (as defined herein), warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2    Assignee.  The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, and (v) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent, the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

2.    Payments.  All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1    With respect to Assigned Interests for Term Loans, unless notice to the contrary is delivered to the Lender from the Administrative Agent, payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date. On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

2.2    With respect to Assigned Interests for Revolving Loans and LC Commitments and LC Deposits, from and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.

7

3.    General Provisions.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment.  This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.



## PURCHASE AND SALE AGREEMENT FOR ▇▇▇▇▇▇▇▇▇▇▇

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

EXECUTION COPY

### TRANSACTION SUMMARY

| | |
|---|---|
| Trade Date: | |
| Agreement Date: | |
| Seller: | |
| Buyer: | |
| Credit Agreement: | Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement dated as of March 30, 2007 as amended and restated as of May 15, 2007 among Allied Holdings, Inc. ("Holdings"), Allied Systems, Ltd. (L.P.) ("Systems"), certain Subsidiaries of Holdings and Systems, as Subsidiary Guarantors, the Lenders party thereto, Goldman Sachs Credit Partners L.P., as Syndication Agent, The CIT Group / Business Credit, Inc., as Administrative Agent and Collateral Agent |
| Borrower: | Allied Holdings, Inc. and Allied Systems, Ltd. (L.P.) |
| Purchase Amount(s): | (i) ▇▇▇▇▇▇ principal amount<br>(ii) ▇▇▇▇▇▇ principal amount |
| Tranche(s): | (i) ▇▇▇▇▇▇▇▇▇▇<br>(ii ▇▇▇▇▇▇▇▇▇▇ |
| CUSIP Number(s), if available: | N/A |
| Pre-Settlement Date Accruals Treatment: | ☒ Settled Without Accrued Interest<br>☐ Trades Flat |
| Type of Assignment: | ☐ Original Assignment<br>☒ Secondary Assignment |
| Immediate Prior Sellers: | |

LSTA EFFECTIVE DECEMBER 2006        Copyright © LSTA 2006. All rights reserved.

463-055/AGR/1939464.1

|  | TRANSACTION SUMMARY | |
|---|---|---|
| Borrower in Bankruptcy: | Yes ☐ | No ☒ |
| Delivery of Credit Documents: | Yes ☐ | No ☒ |
| Netting Arrangements: | Yes ☐ | No ☒ |
| Flip Representations: | Yes ☐[1] | No ☒ |
| Step-Up Provisions: | Yes ☐[1] | No ☒ |
| | Shift Date[2]: | Not Applicable |
| Transfer Notice: | Yes ☐[3] | No ☒ |

A.    **DEFINITIONS**

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement. Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement. Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement. If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means The CIT Group / Business Credit, Inc., as Administrative Agent under the Credit Agreement.

"Assignment" means the Assignment and Assumption Agreement that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
☒ none.
☐ means [the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re _____, No. _____].

"Bankruptcy Court" select one:
☒ none.
☐ means [the United States Bankruptcy Court for the _____District of _____ (and, if appropriate, the United States District Court for that District)].

---

[1] The Parties cannot specify "Yes" to both "Flip Representations" and "Step-Up Provisions" unless they set forth appropriate modifications in Section H. Neither "Flip Representations" nor "Step-Up Provisions" applies to original assignments.

[2] Specify a Shift Date only if "Yes" is specified opposite "Step-Up Provisions" and if the second box is selected in the definition of Covered Prior Seller. The Shift Date is the date that the Parties agree is the closest possible

approximation for when the market convention for transferring the Loans and Commitments (if any) shifted from a par/near par documentation basis to a distressed documentation basis. In consulting as to the appropriate date, the Parties may refer to published results of an anonymous LSTA poll of disinterested dealers as to such dealers' views regarding the Shift Date or, if results have not been published with respect to the Credit Agreement, either Party may request in writing that the LSTA endeavor to conduct such a poll. To initiate a poll, send a request that includes the name of Borrower and either the CUSIP number (if available) or the name and date of the Credit Agreement to the LSTA at lstashiftdatepolls@lsta.org. The results of such LSTA polls are available to facilitate discussions between the Parties and have no binding effect.

[3] "Yes" can be elected only if "Yes" is specified opposite "Borrower in Bankruptcy" in the Transaction Summary.

453-055/AGR/1939464.1

"Bar Date" select one:
☒ not applicable.
☐ none has been set.
☐ means [specify applicable date, if any].

"Buyer Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
☐ none.
☒ means LC Commitment in the principal amount of ▮▮▮▮▮▮▮▮ all of which is funded as an LC Deposit.

"Covered Prior Seller" select one:
☒ not applicable.
☐ means each Prior Seller that transferred the Loans and Commitments (if any)[4] on or after the Shift Date [but prior to the date on which _____[5] transferred such Loans and Commitments (if any)].[6]

"Filing Date" select one:
☒ none.
☐ means [identify date on which Borrower filed Bankruptcy Case].

"Loans" means collectively, Term Loans in the outstanding principal amount of ▮▮▮▮▮▮▮▮ and LC Deposits in the principal amount of ▮▮▮▮▮▮▮▮.

"Netting Letter" select one:
☒ not applicable.
☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
☒ not applicable.
☐ means [specify original buyer in the netting arrangement].

"Penultimate Buyer" select one:
☒ not applicable.
☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
☐ means [_____].

"Required Consents" means notice to the Borrower and acceptance and recordation of the Assignment by the Agent.

"Seller Purchase Price" select one:

---

[4] If applicable to only a portion of the Loans and Commitments (if any), specify the portion that applies, _e.g._, "each Prior Seller that transferred the [Name of applicable Covered Prior Seller] Loans (as defined in Section 1 of the Annex)."

[5] Specify the first Entity that transferred the Loans and Commitments (if any) on a distressed documentation basis on or after the Shift Date.

[6] The bracketed language applies where the relevant Predecessor Transfer Documents include a distressed trade that settled after the par/near par trade which settled on or after the Shift Date.

☒ not applicable.

☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means the ███████ transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" means none.

**B.    SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

| | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(ii) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(ii) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(ii) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

Section 4.1(k) (Purchase Price); Netting Arrangements.
     If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

          "(k) [intentionally omitted]."[7]

---

[7] Seller should add, and Buyer should cause Original Buyer or Penultimate Buyer, as applicable, to add, a comparable representation to the Netting Letter in lieu of this representation.

453-055/AGR/1939464.1

Section 4.1(r) (Predecessor Transfer Agreements).
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.
☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.
☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).
☒ None.
☐ The following: _____.

Section 4.1(v) (Proof of Claim).   N/A
☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
  ☐ the Agent on behalf of the Lenders.
  ☐ Seller or a Prior Seller.
☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.
☐ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

**C.**   **SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

**C.1**   Section 5.1(n) (Buyer Status).   [Specify Buyer's status for purposes of determining Required Consents, minimum assignment amount requirements or Transfer Fee requirements.]

☐ Buyer is not a Lender.
☒ Buyer is a Lender.
☐ Buyer is an Affiliate [substitute Credit Agreement defined term if different] (as defined in the Credit Agreement) of a Lender.
☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

**C.2**   If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

**D.**   **SECTION 6 (INDEMNIFICATION)**

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

(i)   If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii)   If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

**E.**   **SECTION 7 (COSTS AND EXPENSES)**

☐ The Transfer Fee shall be paid by Seller to the Agent and the Purchase Price shall be increased by an amount equal to
  ☐ one-half thereof.
  ☐ other relevant fraction or percentage, _____, thereof.
☐ The Transfer Fee shall be paid by Buyer to the Agent and Buyer shall receive a credit to the Purchase Price equal to
  ☐ one-half thereof.
  ☐ other relevant fraction or percentage, _____, thereof.

☐ The Transfer Fee shall be paid and allocated in the manner specified in the Netting Letter.

☐ The Transfer Fee has been waived by the Agent and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

☒ There is no Transfer Fee and, accordingly, no adjustment to the Purchase Price shall be made in respect thereof.

**F.**     <u>SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS)</u>

**F.1**     Section 8.2 (<u>Distributions</u>); <u>Step-Up Distributions Covenant</u>.

      (i)      If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(b) shall apply (and the alternate covenants contained in Section 8.2(a) shall not apply).

      (ii)      If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's covenants contained in Section 8.2(a) shall apply (and the alternate covenants contained in Section 8.2(b) shall not apply).

**F.2**     Section 8.4 (<u>Wire Instructions</u>).

<u>Buyer's Wire Instructions</u>:

JP Morgan Chase Bank



<u>Seller's Wire Instructions</u>:

Bank of New York

**G.**     <u>SECTION 9 (NOTICES)</u>

<u>Buyer's Address for Notices and Delivery</u>:

BDCM OPPORTUNITY FUND II, L.P.
C/O Black Diamond Capital Management, L.L.C.
Attn: Loan Administrator



Email:
PH:
Fax

**Credit Communications**
Black Diamond Capital Management, L.L.C.



PH:
Fax:

Seller's Address for Notices and Delivery:

Primary Credit Contact                                    Secondary Credit Contact

Name:
Company:
Title:
Address:                              

Telephone:
Facsimile:
E-Mail Address:

H.    **SECTION 26 (FURTHER PROVISIONS)**

None.

IN WITNESS WHEREOF, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**



**BUYER**

**BDCM OPPORTUNITY FUND II, LP**

by:  BDCM Opportunity Fund II Adviser, LLC
its Investment Manager

By:_____
       Name:
       Title:

IN WITNESS WHEREOF, Seller and Buyer have executed this Purchase and Sale Agreement by their duly authorized officers or representatives as of the Agreement Date.

SELLER

By:_____
        Name:
        Title:


BUYER

BDCM OPPORTUNITY FUND II, LP

by:  BDCM Opportunity Fund II Adviser, LLC
its Investment Manager

By: 

## ANNEX TO PURCHASE AND SALE AGREEMENT

1.    If "Secondary Assignment" is specified opposite "Type of Assignment" in the Transaction Summary, list of Predecessor Transfer Agreements[1] and principal amount, as of the settlement date with respect thereto, of the portion of the Loans and Commitments (if any) thereunder assigned hereby for purposes of Section 4.1(r) and Section 5.1(k)(i) hereof, and designation as to whether such Predecessor Transfer Agreements relate to par/near par loans or distressed loans.

**With respect to** █████████ **principal amount of Term Loans and** █████████ **principal amount of LC Deposits:**

That certain Purchase and Sale Agreement and Assignment and Assumption Agreement, each dated ██████████ between ████████████ as seller, and ████████████ as buyer.

That certain Assignment and Assumption Agreement dated ██████████ between ███████████ as assignor, and ████████████ as assignee. [par/near par loans]

**With respect to** █████████ **principal amount of Term Loans and** █████████ **principal amount of LC Deposits:**

That certain Purchase and Sale Agreement and Assignment and Assumption Agreement, each dated ██████████ between ████████████ as seller, and ████████████ as buyer.

That certain Assignment and Assumption Agreement dated ██████████ between ███████████ as assignor, and ████████████ as assignee. [par/near par loans]

**With respect to** █████████ **principal amount of Term Loans and** █████████ **principal amount of LC Deposits:**

That certain Purchase and Sale Agreement and Assignment and Assumption Agreement, each dated ██████████ between ████████████ as seller, and ████████████ as buyer.

That certain Assignment and Assumption Agreement dated ██████████ between ███████████ as assignor, and ████████████ as assignee. [par/near par loans]

**With respect to** █████████ **principal amount of Term Loans and** █████████ **principal amount of LC Deposits:**

That certain Purchase and Sale Agreement and Assignment and Assumption Agreement, each dated ██████████ between ████████████ as seller, and ████████████ as buyer.

---

[1]  List (i) any Predecessor Transfer Agreement to which Seller is a party, (ii) any Predecessor Transfer Agreement of Prior Sellers relating to distressed loans delivered to Seller by Immediate Prior Seller and (iii) any Predecessor Transfer Agreement of Prior Sellers relating to par loans listed in any Predecessor Transfer Agreement described in the preceding clause (ii).

That certain Assignment and Assumption Agreement dated ▮▮▮▮ between ▮▮▮▮ as assignor, and ▮▮▮▮ as assignee. [par/near par loans]

**With respect to** ▮▮▮▮ **principal amount of Term Loans and** ▮▮▮▮ **principal amount of LC Deposits:**

That certain Purchase and Sale Agreement and Assignment and Assumption Agreement, each dated ▮▮▮▮ between ▮▮▮▮ as seller, and ▮▮▮▮ as buyer. ▮▮▮▮

That certain Assignment and Assumption Agreement dated ▮▮▮▮ between ▮▮▮▮ as assignor, and ▮▮▮▮ as assignee. [par/near par loans]

**With respect to** ▮▮▮▮ **principal amount of Term Loans and** ▮▮▮▮ **principal amount of LC Deposits:**

That certain Purchase and Sale Agreement and Assignment and Assumption Agreement, each dated ▮▮▮▮ between ▮▮▮▮ as seller, and ▮▮▮▮ as buyer. ▮▮▮▮

That certain Assignment and Assumption Agreement dated ▮▮▮▮ between ▮▮▮▮ as assignor, and ▮▮▮▮ as assignee. [par/near par loans]

2.    List of Credit Agreement and any other Credit Documents delivered pursuant to Section 4.1(s) hereof.

    None.

3.    Description of Proof of Claim (if any).

    N/A

4.    Description of Adequate Protection Order (if any).

    N/A

5.    List any exceptions to Section 4.1(w) (Notice of Impairment).

    None.

6.    The amount of any PIK Interest that accreted to the principal amount of the Loans after the Trade Date but on or prior to the Settlement Date is ▮▮▮▮

ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ████████████████ (the "Assignor") and BDCM Opportunity Fund II, LP (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Amended and Restated First Lien Senior Secured Super-Priority Debtor-in-Possession and Exit Credit and Guaranty Agreement identified below (as it may be amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters of credit, LC Deposits and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1. Assignor:                    ███████████████████████

2. Assignee:                    BDCM Opportunity Fund II, LP

3. Borrower(s):                 Allied Holdings, Inc., Allied Systems, LTD (L.P.)

4. Administrative Agent:        The CIT Group / Business Credit, Inc., as the administrative agent under the Credit Agreement

5. Credit Agreement:            Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement dated as of March 30, 2007, as amended and restated as of May 15, 2007 among Allied Holdings, Inc. ("Holdings"), Allied Systems, Ltd. (L.P.) ("Systems"), certain Subsidiaries of Holdings and Systems, as Subsidiary Guarantors, the Lenders parties thereto, Goldman Sachs Credit Partners L.P., as Syndication Agent, The CIT Group/Business Credit, Inc., as Administrative Agent and Collateral Agent

6.     Assigned Interest:



| Facility Assigned | Aggregate Amount of Commitment/Loans/LC Deposits for all Lenders | Amount of Commitment/Loans/LC Deposits Assigned | Percentage Assigned of Commitment/Loans/LC Deposits |
|---|---|---|---|
| Synthetic LC Commitment | USD ███████ | USD ██████ | ██████ % |
| Term Loan | USD ███████ | ████████ | ██████ % |

Effective Date: ██████████

453-055/CERTS/1939455 1

2

7. Notice and Wire Instructions:

ASSIGNOR:                              ASSIGNEE:

Closing Contact:                       Black Diamond Capital Management, L.L.C.

                   

Wire Instructions:                     Wire Instructions:

Bank of New York                       JPMorgan Chase Bank

                   

Reference: Allied Holdings/BDCM

453-055/CERTS/1936455.1

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR



ASSIGNEE

BDCM OPPORTUNITY FUND II, LP, as
Assignee

by:  BDCM Opportunity Fund II Adviser,
LLC its Investment Manager

By: _____
    Name:
    Title:

453-055/CSRTS/1959455 1                          4

The terms and conditions in this Assignment are hereby agreed to:

ASSIGNOR



By:
   Name:
   Title:

ASSIGNEE

BDCM OPPORTUNITY FUND II, LP, as
Assignee

by:  BDCM Opportunity Fund II Adviser.
LLC its Investment Manager

Consented to and Accepted:

THE CIT GROUP / BUSINESS CREDIT, INC., as Administrative Agent

By: _____
    Name: Michael Abbott
    Title: Vice President

Consented to:

ALLIED HOLDINGS, INC.

By: _____ N/A _____
    Name:
    Title

ALLIED SYSTEMS, LTD (L.P.)

By: _____ N/A _____
    Name:
    Title

353-085/CERTS/1930455.1

5

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

1.    Representations and Warranties.

1.1    Assignor.  The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements (as defined herein), warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2    Assignee.  The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, and (v) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent, the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

2.    Payments.  All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1    With respect to Assigned Interests for Term Loans, unless notice to the contrary is delivered to the Lender from the Administrative Agent, payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date.  On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

2.2    With respect to Assigned Interests for Revolving Loans and LC Commitments and LC Deposits, from and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.

3.    General Provisions.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment.  This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

653-055/CERTS/1939455 1

ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment") is dated as of the Effective Date set forth below and is entered into by and between ████████████████ (the "Assignor") and ████████████████████████ (the "Assignee"). Capitalized terms used but not defined herein shall have the meanings given to them in the Amended and Restated First Lien Senior Secured Super-Priority Debtor-in-Possession and Exit Credit and Guaranty Agreement identified below (as it may be amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Credit Agreement, as of the Effective Date inserted by the Administrative Agent as contemplated below, the interest in and to all of the Assignor's rights and obligations under the Credit Agreement and any other documents or instruments delivered pursuant thereto that represents the amount and percentage interest identified below of all of the Assignor's outstanding rights and obligations under the respective facilities identified below (including, to the extent included in any such facilities, letters of credit, LC Deposits and swingline loans) (the "Assigned Interest"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment and the Credit Agreement, without representation or warranty by the Assignor.

1.  Assignor:                        ████████████████████

2.  Assignee:                        BDCM Opportunity Fund II, L.P.

3.  Borrower(s):                     Allied Holdings, Inc., Allied Systems, LTD (L.P.)

4.  Administrative Agent:            The CIT Group / Business Credit, Inc., as the administrative agent under the Credit Agreement

5.  Credit Agreement:                The $265,000,000.00 Credit Agreement dated as of May 15, 2007 among Allied Holdings, Inc. ("Holdings"), Allied Systems, Ltd. (L.P.) ("Systems"), certain Subsidiaries of Holdings and Systems, as Guarantors, the Lenders parties thereto, Goldman Sachs Credit Partners L.P., as Administrative Agent, The CIT Group/Business Credit, Inc., as Administrative Agent and Collateral Agent and the other agents parties thereto

6.      Assigned Interest:



| Facility | Assigned | Aggregate Amount of Commitment/Loans/LC Deposits for all Lenders | Amount of Commitment/Loans/LC Deposits Assigned | Percentage Assigned of Commitment/Loans/LC Deposits |
|---|---|---|---|---|
| Synthetic LC Commitment | | USD ▮▮▮▮▮▮ | USD ▮▮▮▮▮▮ | ▮▮▮▮% |
| Term Loan | | USD ▮▮▮▮▮▮ | USD ▮▮▮▮▮▮ | ▮▮▮▮% |

Effective Date: ▮▮▮▮▮▮▮▮

N° 474811.1/9999-00999

7   Notice and Wire Instructions:





BDCM Opportunity Fund II, L.P.

CREDIT CONTACT:
Black Diamond Capital Management, L.L.C.



PH:           Fax:

LOAN ACTIVITY CONTACT:
BDCM OPPORTUNITY FUND II, L.P.
C/O Black Diamond Capital Management, L.L.C.
Attn: Loan Administrator



Email:
PH:           Fax:

Wire Instructions: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉

Wire Instructions: BDCM Opportunity Fund II, L.P.

Bank: JPMorgan Chase Bank New York, NY
ABA No: ▉▉▉▉▉
Acct. No: ▉▉▉▉▉▉▉▉
Acct Name: BDCM OPPORTUNITY FUND II, L.P.

Reference:      Allied Holdings to Black Diamond

4

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR



ASSIGNEE

BDCM OPPORTUNITY FUND II, L.P., as Assignee
By:  BDCM Opportunity Fund II Advisor, L.L.C.,
its Investment Manager

By:_____
    Name:
    Title:

NY474811 1/9999-00999

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR

By:_____
   Name:
   Title:

ASSIGNEE

BDCM OPPORTUNITY FUND II, L.P., as Assignee
By:  BDCM Opportunity Fund II Adviser, L.L.C.,
its Investment Manager



5

NY474811.1/9990-00090

Consented to and Accepted:

THE CIT GROUP / BUSINESS CREDIT, INC., as Administrative Agent

By: _____

Name:   Michael Hiberte

Title:   Vice President

Consented to:

ALLIED HOLDINGS, INC.

By: _____

Name:

Title:

ALLIED SYSTEMS, LTD (L.P.)

By: _____

Name:

Title:

NY474811.1/9999-00999

6

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ASSUMPTION AGREEMENT

1.      Representations and Warranties.

1.1      Assignor.  The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements (as defined herein), warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "Credit Documents"), or any collateral thereunder, (iii) the financial condition of the Company, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document.

1.2      Assignee.  The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision, and (v) if it is a Non US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent, the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender.

2.      Payments.  All payments with respect to the Assigned Interests shall be made on the Effective Date as follows:

2.1      With respect to Assigned Interests for Term Loans, unless notice to the contrary is delivered to the Lender from the Administrative Agent, payment to the Assignor by the Assignee in respect of the Assigned Interest shall include such compensation to the Assignor as may be agreed upon by the Assignor and the Assignee with respect to all unpaid interest which has accrued on the Assigned Interest to but excluding the Effective Date.  On and after the applicable Effective Date, the Assignee shall be entitled to receive all interest paid or payable with respect to the Assigned Interest, whether such interest accrued before or after the Effective Date.

2.2      With respect to Assigned Interests for Revolving Loans and LC Commitments and LC Deposits, from and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to but excluding the Effective Date and to the Assignee for amounts which have accrued from and after the Effective Date.

7

3.    General Provisions.  This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment.  This Assignment shall be governed by, and construed in accordance with, the internal laws of the State of New York without regard to conflict of laws principles thereof.

8



**PURCHASE AND SALE AGREEMENT FOR** ▮▮▮▮▮▮▮▮

### TRANSACTION SPECIFIC TERMS

THIS PURCHASE AND SALE AGREEMENT is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the Standard Terms. The Standard Terms are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms and the Transaction Specific Terms together constitute a single integrated Purchase and Sale Agreement governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

---

### TRANSACTION SUMMARY

| | |
|---|---|
| Trade Date: | |
| Agreement Date: | |
| Seller: | |
| Buyer: | |
| Credit Agreement: | Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement dated as of March 30, 2007 as amended and restated as of May 15, 2007 among Allied Holdings, Inc. ("Holdings"), Allied Systems, Ltd. (L.P.) ("Systems"), certain Subsidiaries of Holdings and Systems, as Subsidiary Guarantors, the Lenders party thereto, Goldman Sachs Credit Partners L.P., as Syndication Agent, The CIT Group / Business Credit, Inc., as Administrative Agent and Collateral Agent |
| Borrower: | Allied Holdings, Inc. and Allied Systems, Ltd. (L.P.) |
| Purchase Amount(s): | (i) ▮▮▮▮▮▮▮ outstanding principal amount<br>(ii) ▮▮▮▮▮▮ principal amount |
| Tranche(s): | (i) ▮▮▮▮▮▮▮▮▮▮▮▮<br>(ii) ▮▮▮▮▮▮▮▮▮▮▮▮ |
| CUSIP Number(s), if available: | N/A |
| Pre-Settlement Date Accruals Treatment: | ☒ Settled Without Accrued Interest<br>☐ Trades Flat |
| Type of Assignment: | ☐ Original Assignment<br>☒ Secondary Assignment |

| TRANSACTION SUMMARY | | |
|---|---|---|
| Immediate Prior Seller (if any): | | |
| Borrower in Bankruptcy: | Yes ☐ | No ☒ |
| Delivery of Credit Documents: | Yes ☐ | No ☒ |
| Netting Arrangements: | Yes ☐ | No ☒ |
| Flip Representations: | Yes ☐[1] | No ☒ |
| Step-Up Provisions: | Yes ☐[1] | No ☒ |
| | Shift Date[2]: | Not Applicable |
| Transfer Notice: | Yes ☐[3] | No ☒ |

A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement. Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement. Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement. If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means The CIT Group / Business Credit, Inc., as Administrative Agent.

"Assignment" means the Assignment and Assumption Agreement that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Required Consents to such assignment.

"Bankruptcy Case" select one:
    ☒ none.
    ☐ means [the case under the Bankruptcy Code pending before the Bankruptcy Court in which Borrower is a debtor, In re _____, No. _____].

---

[1]  The Parties cannot specify "Yes" to both "Flip Representations" and "Step-Up Provisions" unless they set forth appropriate modifications in Section H. Neither "Flip Representations" nor "Step-Up Provisions" applies to original assignments.

[2]  Specify a Shift Date only if "Yes" is specified opposite "Step-Up Provisions" and if the second box is selected in the definition of Covered Prior Seller. The Shift Date is the date that the Parties agree is the closest possible approximation for when the market convention for transferring the Loans and Commitments (if any) shifted from a par/near par documentation basis to a distressed documentation basis. In consulting as to the appropriate date, the Parties may refer to published results of an anonymous LSTA poll of disinterested dealers as to such dealers' views regarding the Shift Date or, if results have not been published with respect to the Credit Agreement, either Party may request in writing that the LSTA endeavor to conduct such a poll. To initiate a poll, send a request that includes the name of Borrower and either the CUSIP number (if available) or the name and date of the Credit Agreement to the LSTA at lstashiftdatepolls@lsta.org. The results of such LSTA polls are available to facilitate discussions between the Parties and have no binding effect.

[3]  "Yes" can be elected only if "Yes" is specified opposite "Borrower in Bankruptcy" in the Transaction Summary.

2

"Bankruptcy Court" select one:
☒ none.
☐ means [the United States Bankruptcy Court for the _____District of _____ (and, if appropriate, the United States District Court for that District)].

"Bar Date" select one:
☒ not applicable.
☐ none has been set.
☐ means [specify applicable date, if any].

"Buyer Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Commitments" select one:
☐ none.
☒ means Synthetic LC Commitment in the principal amount of ███████ all of which is funded as an LC Deposit.

"Covered Prior Seller" select one:
☒ not applicable.
☐ means each Prior Seller that transferred the Loans and Commitments (if any)[4] on or after the Shift Date [but prior to the date on which _____[5] transferred such Loans and Commitments (if any)].[6]

"Filing Date" select one:
☒ none.
☐ means [identify date on which Borrower filed Bankruptcy Case].

"Loans" means, collectively, Term Loans in the outstanding principal amount of ███████ and Synthetic LC Deposits in the principal amount of ███████

"Netting Letter" select one:
☒ not applicable.
☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
☒ not applicable.
☐ means [specify original buyer in the netting arrangement].

"Penultimate Buyer" select one:

---

[4] If applicable to only a portion of the Loans and Commitments (if any), specify the portion that applies, _e.g._, "each Prior Seller that transferred the [Name of applicable Covered Prior Seller] Loans (as defined in Section 1 of the Annex)."

[5] Specify the first Entity that transferred the Loans and Commitments (if any) on a distressed documentation basis on or after the Shift Date.

[6] The bracketed language applies where the relevant Predecessor Transfer Documents include a distressed trade that settled after the par/near par trade which settled on or after the Shift Date.

3

☒ not applicable.
☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
☐ means [_____].

"Required Consents" means the notice to the Borrower and the Agent.

"Seller Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

"Transfer Fee" means the ▮▮▮▮transfer or other similar fee payable to the Agent in connection with the Assignment.

"Unfunded Commitments" means that part of the Commitments that has not been funded in the form of loans, advances, letter of credit disbursements or otherwise under the Credit Agreement, which is in the principal amount of ▮▮▮▮▮▮▮.

B.    **SECTION 4 (SELLER'S REPRESENTATIONS AND WARRANTIES)**

The following specified terms shall apply to the sections referenced in this Section B:

| | Flat Representation | Flip Representation | Step-Up Representation |
|---|---|---|---|
| | If "No" is specified opposite both "Flip Representations" and "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specied opposite "Flip Representations" in the Transaction Summary, the following subsections of Section 4 shall apply: | If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, the following subsections of Section 4 shall apply: |
| Section 4.1(d) (Title) | Section 4.1(d)(i) | Section 4.1(d)(ii) | Section 4.1(d)(i) |
| Section 4.1(e) (Proceedings) | Section 4.1(e)(i) | Section 4.1(e)(i) | Section 4.1(e)(ii) |
| Section 4.1(f) (Principal Amount) | Section 4.1(f)(i) | Section 4.1(f)(ii) | Section 4.1(f)(i) |
| Section 4.1(g) (Future Funding) | Section 4.1(g)(i) | Section 4.1(g)(ii) | Section 4.1(g)(iii) |
| Section 4.1(h) (Acts and Omissions) | Section 4.1(h)(i) | Section 4.1(h)(i) | Section 4.1(h)(ii) |
| Section 4.1(i) (Performance of Obligations) | Section 4.1(i)(i) | Section 4.1(i)(i) | Section 4.1(i)(ii) |
| Section 4.1(l) (Setoff) | Section 4.1(l)(i) | Section 4.1(l)(i) | Section 4.1(l)(ii) |
| Section 4.1(t) (Consents and Waivers) | Section 4.1(t)(i) | Section 4.1(t)(i) | Section 4.1(t)(i) |
| Section 4.1(u) (Other Documents) | Section 4.1(u)(i) | Section 4.1(u)(i) | Section 4.1(u)(ii) |
| Section 4.1(v) (Proof of Claim) | Section 4.1(v)(i) | Section 4.1(v)(ii) | Section 4.1(v)(i) |

NY474880.1/9999-00999

Section 4.1(k) (Purchase Price); Netting Arrangements.

If "Yes" is specified opposite Netting Arrangements in the Transaction Summary, Section 4.1(k) shall be amended in its entirety as follows:

"(k) [intentionally omitted]."[7]

Section 4.1(r) (Predecessor Transfer Agreements).

☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to par/near par loans.

☒ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to distressed loans.

☐ Seller acquired the Transferred Rights from Immediate Prior Seller pursuant to Predecessor Transfer Agreements relating to both par/near par loans and distressed loans.

Section 4.1(u) (Other Documents).

☒ None.

☐ The following: _____

Section 4.1(v) (Proof of Claim). N/A

☐ The Proof of Claim was duly and timely filed, on or prior to the Bar Date, by
  ☐ the Agent on behalf of the Lenders.
  ☐ Seller or a Prior Seller.

☐ The Bar Date specified in the Transaction Specific Terms has been set in the Bankruptcy Case and no Proof of Claim has been filed.

☒ No Bar Date has been set in the Bankruptcy Case and no Proof of Claim has been filed.

C.    **SECTION 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)**

C.1    Section 5.1(n) (Buyer Status).    [Specify Buyer's status for purposes of determining Required Consents, minimum assignment amount requirements or Transfer Fee requirements.]

☒ Buyer is not a Lender.

☐ Buyer is a Lender.

☐ Buyer is an Affiliate (as defined in the Credit Agreement) of a Lender.

☐ Buyer is an Approved Fund [substitute Credit Agreement defined term if different] of a Lender.

C.2    If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

D.    **SECTION 6 (INDEMNIFICATION)**

Section 6.1 (Seller's Indemnities); Step-Up Indemnities.

(i)    If "Yes" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(b) shall apply (and the alternate indemnities contained in Section 6.1(a) shall not apply).

(ii)    If "No" is specified opposite "Step-Up Provisions" in the Transaction Summary, Seller's indemnities contained in Section 6.1(a) shall apply (and the alternate indemnities contained in Section 6.1(b) shall not apply).

---

[7]  Seller should add, and Buyer should cause Original Buyer or Penultimate Buyer, as applicable, to add, a comparable representation to the Netting Letter in lieu of this representation.

5