## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 14-50971 (CSS) |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

## THE YUCAIPA DEFENDANTS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND RESPONSES TO DISCOVERY REQUESTS

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ................................................................................... 1

II.   BACKGROUND ...................................................................................................... 3

    A.    Procedural History ......................................................................................... 3

    B.    Discovery Background..................................................................................... 5

    C.    Discovery Requests at Issue............................................................................ 6

III.  ARGUMENT ............................................................................................................ 7

    A.    All of BD/S's Objections to the Requests at Issue Are Either Improper or
       Unfounded....................................................................................................... 8

          1.    Collateral Estoppel Is Not a Valid Discovery Objection, and In
              Any Event, It Does Not Apply to Interlocutory Orders Like the
              Counterclaim Dismissal ................................................................ 8

          2.    The Requests at Issue Are Relevant to BD/S's Claims, Yucaipa's
              Affirmative Defenses, and Yucaipa's RICO Allegations........................... 9

          3.    BD/S's Other Objections Also Lack Merit............................................... 15

    B.    In Any Event, BD/S Waived all Objections to the Yucaipa Defendants'
       Interrogatories by Failing to Timely Respond ...................................................... 18

    C.    BD/S Cannot Withhold Documents Based on the Common Interest
       Doctrine........................................................................................................... 20

          1.    The common interest doctrine applies only to communications
              between different attorneys representing separate clients ........................ 21

          2.    BD/S Have Not Shown that the Parties to the Challenged
              Communications Shared a Common Legal Interest .................................. 24

          3.    BD/S Have Not Demonstrated that the Underlying
              Communications are Even Privileged....................................................... 26

IV.   CONCLUSION.......................................................................................................... 29

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Sur. Co. v. Baldwin*,
    287 U.S. 156 (1932)............................................................14

*Barton v. RCI, LLC*,
    No. 10-3657 (PGS), 2013 WL 1338235 (D.N.J. Apr. 1, 2013)................................17

*BDCM Opportunity Fund II, LP v. Yucaipa Am. Alliance Fund I, LP*,
    112 A.D. 3d 509 (N.Y. App. Div. 2013) ...............................................11

*Ciba-Geigy Corp. v. Bolar Pharm. Co., Inc.*,
    747 F.2d 844 (3d Cir.1984)...........................................................10

*Cooper Health Sys. v. Virtua Health, Inc.*,
    259 F.R.D. 208 (D.N.J. 2009).........................................................24

*In re Energy Future Holdings Corp.*,
    513 B.R. 651 (Bankr. D. Del. 2014) ..............................................10, 15

*In re FTC*,
    No. M18-304 (RJW), 2001 WL 396522 (S.D.N.Y. Apr. 19, 2001) .........................25

*In re Grand Jury Investigation*,
    631 F.2d 17 (3d Cir. 1980)..........................................................29

*Griggs v. Raymark Indus., Inc.*,
    No. 85-3706, 1986 WL 10650 (E.D. Pa. Sept. 26, 1986)................................16

*Hayes v. Am. Int'l Grp.*,
    No. 09-2874, 2013 WL 2414005 (E.D. Pa. June 4, 2013)................................29

*Hoffman-Laroche, Inc. v. Roxane Laboratories, Inc.*,
    2011 WL 1792791 (D.N.J., May 11, 2011) .......................................21, 22, 23

*IBJ Whitehall Bank & Trust Co. v. Cory & Assocs., Inc.*,
    No. 97 C 5827, 1999 WL 617842 (N.D. Ill. Aug. 12, 1999)..............................24

*International Paper Co. v. Fibreboard Corp.*,
    63 F.R.D. 88 (D. Del. 1974) ........................................................27

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.*,
    662 F.Supp.2d 375 (D. Del. 2009)....................................................9

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
    458 F.3d 244 (3d Cir. 2006).........................................................9

# TABLE OF AUTHORITIES

## (continued)

Page(s)

*Josephs v. Harris Corp.*,
   677 F.2d 985 (3d Cir. 1982)..........................................................................................14, 16

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   253 F.R.D. 300 (D.N.J. 2008)...............................................................................................27

*In re Le-Nature's Inc.*,
   380 B.R. 747 (W.D. Pa. 2008)..............................................................................................19

*Leader Techs., Inc. v. Facebook, Inc.*,
   719 F. Supp. 2d 373 (D. Del. 2010)................................................................................21, 27

*In Re Leslie Controls, Inc.*,
   437 B.R. 493 (Bankr. D. Del. 2010) ...........................................................................21, 25, 27

*Lindsey v. Normet*,
   405 U.S. 56 (1972).................................................................................................................14

*Marti v. Baires*,
   No. 1:08-cv-00653-AWI-SKO PC, 2012 WL 2029720 (E.D. Cal. June 5,
   2012) .....................................................................................................................................17

*Mezu v. Morgan State Univ.*,
   269 F.R.D. 565 (D. Md. 2010)................................................................................................8

*In re ML–Lee Acquisition Fund II, L.P.*,
   151 F.R.D. 37 (D. Del. 1993) ...............................................................................................10

*MobileMedia Ideas LLC v. Apple, Inc.*,
   890 F. Supp. 2d 508 (D. Del. 2012).......................................................................................23

*In re No-Burn Inc. v. Speller*,
   No. 05–02096, 2006 WL 4458703 (Bankr. M.D. N.C. Jan. 21, 2006)....................................8

*Petz v. Ethan Allen, Inc.*,
   113 F.R.D. 494 (D. Conn. 1985)............................................................................................28

*Pineda v. Ford Motor Co.*,
   520 F.3d 237 (3d Cir. 2008)....................................................................................................9

*In re Processed Egg Prods. Antitrust Litig.*,
   278 F.R.D. 112 (E.D. Pa. 2011).............................................................................................24

# TABLE OF AUTHORITIES

(continued)

Page(s)

*Pucket v. Hot Springs Sch. Dist. No. 23-2,*
239 F.R.D. 572 (D.S.D. 2006) ..............................................................................................23

*Robert Bosch LLC v. Pylon Mfg. Corp.,*
263 F.R.D. 142 (D. Del. 2009) ............................................................................................23

*Roesberg v. Johns-Manville Corp.,*
85 F.R.D. 292 (E.D. Pa. 1980)............................................................................................14

*S & R Corp. v. Jiffy Lube Int'l, Inc.,*
968 F.2d 371 (3d Cir.1992).......................................................................................... 10-11

*Solae, LLC v. Hershey Canada, Inc.,*
557 F.Supp.2d 452 (D. Del. 2008)........................................................................................9

*SWIMC, Inc. v. Hy-Tech Thermal Solutions, LLC,*
No. 08-084 (SLR), 2009 WL 1795177 (D. Del. June 24, 2009) ...........................................19

*In re Teleglobe Commc'ns Corp.,*
493 F.3d 345 (3d Cir. 2007).....................................................................21, 22, 23, 24, 26, 27

*In re Tribune Co.,*
No. 08-13141 (KJC), 2011 WL 386827 (Bankr. D. Del. Feb. 3, 2011) ...........................26, 27

*United States v. Asmar,*
827 F. 2d 907 (3d Cir. 1987).................................................................................................13

*Univ. of Pittsburgh v. Champion Prods. Inc.,*
686 F. 2d 1040 (3d Cir. 1982)...............................................................................................13

*In re Westinghouse Sec. Litig.,*
90 F.3d 696 (3d Cir. 1996).....................................................................................................9

## Other Authorities

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 68 (AM. LAW INST.
2000) .....................................................................................................................................27

## Rules

Fed. R. Bankr. P. 7026..............................................................................................1, 6, 29

Fed. R. Bankr. P. 7033 ....................................................................................................1

# TABLE OF AUTHORITIES

(continued)

Page(s)

Fed. R. Bankr. P. 7034....................................................................................................1

Fed. R. Bankr. P. 7037....................................................................................................1

Fed. R. Bankr. P. 9014....................................................................................................1

Fed. R. Civ. P. 26............................................................................................................1

Fed. R. Civ. P. 26(b)(1)..............................................................................................9, 17

Fed. R. Civ. P. 33....................................................................................................1, 19, 20

Fed. R. Civ. P. 33(b)(4).................................................................................3, 16, 18, 19, 20

Fed. R. Civ. P. 34....................................................................................................1, 19, 20

Fed. R. Civ. P. 34(a)......................................................................................................15

Fed. R. Civ. P. 37............................................................................................................1

Yucaipa American Alliance Fund I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively, "Yucaipa"), Jos Opdeweegh, Derex Walker, Jeff Pelletier, Ira Tochner and Joseph Tomczak (collectively, the "Director Defendants" and with Yucaipa, the "Yucaipa Defendants") hereby move, pursuant to Rules 26, 33, 34, and 37 of the Federal Rules of Civil Procedure, as made applicable by Rules 7001, 7026, 7033, 7034, 7037, and 9014 of the Federal Rules of Bankruptcy Procedure, for an order compelling BDCM Opportunity Fund II, L.P., Black Diamond CLO 2005-1 LTD., (collectively, "Black Diamond") and Spectrum Investment Partners, L.P. ("Spectrum" and with Black Diamond, "BD/S"): (1) to produce documents improperly withheld; (2) to serve responses to interrogatories improperly withheld; and (3) to produce documents improperly withheld as privileged. The Yucaipa Defendants also seek a ruling that BD/S has waived any objections to interrogatories by failing to timely respond.

## I.    PRELIMINARY STATEMENT

Yucaipa and BD/S have agreed to coordinate discovery among two adversary proceedings (the "Adversary Proceedings") pending in this Court (A.P. No. 13-50530-CSS (the "Committee Action"); A.P. No. 14-50971-CSS (the "BD/S Action")); and a RICO action pending before the District Court. (D. Ct. No. 15-cv-00373-SLR (the "RICO Action").) Discovery in these matters has been ongoing for several years, with tens of thousands of documents produced by the parties. Over the past year, the Yucaipa Defendants and BD/S have engaged in an extensive, good-faith meet-and-confer process in effort to streamline the outstanding discovery disputes as much as possible before seeking judicial intervention—this process covered hundreds of written requests discussed during multiple rounds of correspondence and phone calls, and culminating in a lengthy in-person meeting last month. At

this point, the parties have managed to resolve most of those disputes, and all that remains is a narrow set of issues that now require the Court's guidance and resolution.[1]

BD/S have refused to produce a variety of responsive documents and responses to sixty-eight of the Yucaipa Defendants' written discovery requests, lodging a host of unfounded and untenable objections, including "collateral estoppel" and "lack of foundation."  BD/S's privilege logs also demonstrate that they have improperly withheld thousands of responsive documents on the basis of an asserted common-interest protection that does not and cannot exist here.  For each of the following reasons, the Court should overrule BD/S's objections and compel them to respond to the Yucaipa Defendants' outstanding discovery requests.

- BD/S's cannot properly refuse to produce documents or provide written responses based on the supposed "collateral estoppel" effect of this Court's August 21, 2015 Order dismissing Yucaipa's counterclaims in the BD/S Action.  For one thing, Collateral estoppel is not a proper ground for objecting to discovery.  For another, the counterclaim dismissal order is a non-final interlocutory order—it is hornbook law that such an order cannot give rise to collateral estoppel.

- The discovery requests at issue are exceedingly relevant to BD/S's own allegations—both with respect to alleged liability and harm/damages—and Yucaipa's affirmative defenses in the Adversary Proceedings (the requests also bear upon Yucaipa's related allegations in the RICO Action).

- In any event, BD/S have waived all objections to the Yucaipa Defendants' Interrogatories by failing to timely object without good cause (or any cause) for the

---

[1]  While the discovery disputes addressed by this Motion are ripe for resolution, BD/S recently informed the Yucaipa Defendants that at some point in the future they intend to produce additional documents, supplement some of their written responses per the parties' agreement, and serve a revised privilege log.  (*See* Scolnick Decl., Ex. 26.)  As such, the Yucaipa Defendants reserve their right to seek further relief from this Court upon receipt of these supplemental productions, responses, and privilege logs, if necessary.

delay.  *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a *timely* objection is
waived unless the court, for good cause, excuses the failure." (emphasis added)).

- The common interest doctrine does not apply to many (if not all) of the documents
that BD/S have withheld as privileged.  Such documents are not communications
between different attorneys for separate parties, BD/S have not identified a common
*legal* interest among the communicants, and they have not adequately demonstrated
how the attorney-client privilege or work-product doctrine could protect the
underlying communications.

Throughout these related actions, the Yucaipa Defendants have provided BD/S with a
significant amount of information and documents in discovery—Yucaipa alone has produced
*ten times* more documents than Black Diamond and Spectrum combined.  And Yucaipa has
sought to respond to all non-objectionable discovery requests in a timely fashion.  By this
motion, the Yucaipa Defendants seek this Court's assistance in ensuring that the discovery scales
remain balanced.  The Court should require BD/S to fully participate in the discovery process, so
that the Yucaipa Defendants can adequately defend themselves against BD/S's wide-ranging and
ultimately baseless allegations.

In sum, the Court should order BD/S to produce responsive documents that they have
refused to search for or have improperly withheld, and to provide written responses to the
Yucaipa Defendants' Interrogatories.

## II.    BACKGROUND

### A.    Procedural History

In May 2012, BD/S forced Allied Systems Holdings, Inc. ("Allied") into Chapter 11
bankruptcy by filing an involuntary bankruptcy petition.  (Case No. 12-11564-CSS, D.I. 1.)
Since then, BD/S and Yucaipa have litigated a series of related and overlapping adversary
proceedings.

In February 2013, the Official Committee of Unsecured Creditors (the "Committee")

initiated the Committee Action seeking equitable subordination of Yucaipa's first lien debt

claims and alleging breaches of various fiduciary duties against Yucaipa and the Director

Defendants.  (A.P. No. 13-50530-CSS, D.I. 1.)  BD/S then quickly moved to intervene as

plaintiffs in the Committee Action, and the Court granted that request, dismissing BD/S's similar

complaint filed a few weeks earlier in Adversary Proceeding No. 13-50499 without prejudice.

(Case No. 12-11564, D.I. 876; D.I. 1015 at 3, 4.)  The Committee and BD/S (as intervening

plaintiffs) then filed a joint amended complaint in the Committee Action, again asserting causes

of action for equitable subordination of Yucaipa's first lien debt claims and breach of fiduciary

duty against all of the Yucaipa Defendants, among other things.  (A.P. No. 13-50530-CSS, D.I.

76.)

More than eighteen months after filing the amended complaint in the Committee Action,

BD/S filed *another* adversary proceeding, the BD/S Action, alleging causes of action for:

(i) equitable subordination against Yucaipa; (ii) breach of the First Lien Credit Agreement, as

amended by the third amendment to the First Lien Credit Agreement ("Third Amendment"),

against Yucaipa; (iii) breach of the duty of good faith and fair dealing against Yucaipa; and

(iv) tortious interference with contract against the Director Defendants.  (A.P. No. 14-50971-

CSS, D.I. 1 at ¶¶ 107–141.)[2]  The operative complaints in the two Adversary Proceedings contain

many nearly identical factual allegations.

On May 8, 2015, Yucaipa filed the RICO Action against BD/S in the District Court of

Delaware alleging violations of civil RICO and claims for fraud and tortious interference with

business relations.  (D. Ct. No. 15-cv-00373-SLR, D.I. 1.)  Yucaipa's complaint details BD/S's

scheme to reap a windfall from their relatively small investment in Allied by encouraging

Yucaipa (Allied's majority equity holder and therefor an "insider") to purchase Allied's first lien

debt, and then preventing Yucaipa from acting as the Requisite Lender, filing the involuntary

---

[2]  The BD/S Action also named Ronald Burkle as a defendant for the tortious interference claim.

bankruptcy petition supported by false affidavits, and seeking the equitable subordination of

Yucaipa's claims.  (*Id.*)  BD/S moved to dismiss or stay the RICO Action; their motion has been

fully briefed and is pending in the District Court.

Meanwhile, on February 19, 2015, Yucaipa answered the BD/S complaint and also filed a

counterclaim against BD/S for equitable subordination.  (A.P. No. 14-50971-CSS, D.I. 19.)

BD/S moved to dismiss Yucaipa's counterclaim, and on August 21, 2015, this Court granted

BD/S's motion to dismiss with prejudice (the "Counterclaim Dismissal").  (*Id.*, D.I. 19; D.I. 82;

D.I. 83.)  Yucaipa moved to appeal that interlocutory order, but the District Court denied the

motion, finding that due to the overlapping claims and facts in the various Adversary

Proceedings, this Court should resolve the dispute in the first instance before the District Court's

review.  (*See* D. Ct. No. 15-mc-00232-SLR, D.I. 1; D.I. 20.)

**B.    Discovery Background**

Beginning in 2013 and continuing in 2015, the Yucaipa Defendants and BD/S exchanged

numerous discovery requests in the Adversary Proceedings, with the Yucaipa Defendants

producing 76,815 documents and BD/S collectively producing 7,616 documents to date.

On August 27, 2015, the parties filed a Joint Rule 26(f) Report (the "Joint Report") in the

RICO Action pursuant to which they agreed to coordinate discovery in the RICO Action and the

Adversary Proceedings.  (*See* D. Ct. No. 15-cv-00373-SLR, D.I. 23, § A.)

In May 2015, Yucaipa served its First Set of Requests for Production of Documents (the

"Requests for Production") on BD/S.  (*See* Declaration of Kahn Scolnick ("Scolnick Decl."),

which is being filed concurrently with this Motion, at Exs. 1 and 2.)  A few weeks later, Yucaipa

served its First Set of Requests for Admission (the "Requests for Admission") (*id.*, Exs. 5 and 6),

and the Yucaipa Defendants each served their First Sets of Interrogatories (the "Interrogatories")

on BD/S.  (*Id.*, Exs. 3-1–3-6 and 4-1–4-6.)  BD/S's responses to the Requests for Admission and

Interrogatories were due no later than July 13, 2015, but at BD/S's request, the Yucaipa

Defendants agreed to extend the response deadline until July 31, 2015.  (*Id.*, Ex. 9.)

Despite the Yucaipa Defendants' extension, however, BD/S failed to timely respond to the Interrogatories.  Instead, they served their responses a month later (and more than six weeks after the initial deadline), on August 31, 2015. (*Id.*, Exs. 14-1–14-6 and 15-1–15-6.)

## C.    Discovery Requests at Issue[3]

BD/S objected to Yucaipa's Requests for Production Nos. 1, 2, 36–37, 39–46, and 56 (the "Disputed Requests for Production") on the basis of relevance, overbreadth, vagueness and undue burden, and refused to conduct a search for responsive documents.  (*Id.*, Exs. 7–8, 29–30.)[4]  The Disputed Requests for Production seek documents concerning BD/S's acquisition and sale of Allied's first lien debt; equitable subordination; valuation of lenders' investment in Allied; reimbursement of legal expenses under the First Lien Credit Agreement; the entity BD/S formed to bid on Allied's remaining assets after a bankruptcy sale, SBDRE LLC ("SBDRE"); a credit bid made by SBDRE; and other lenders' investment in first lien debt.

BD/S's untimely responses to the Interrogatories were deficient in many respects.  For example, BD/S initially objected and refused to respond to thirty-eight Interrogatories on the ground that they sought information "in support of allegations that Yucaipa is collaterally estopped from asserting."  (*Id.*, Exs. 14-1–14-6 and 15-1–15-6.)  BD/S also refused to respond to sixteen Interrogatories on the grounds that they were overbroad and/or irrelevant, among other things.  (*Id.*)[5]

---

[3]  Charts containing the exact language of all the Requests at Issue are attached as Exhibits 29 and 30 to the Scolnick Declaration in support of this Motion, in accordance with Local Rule 7026-1(c).

[4]  Although BD/S initially agreed to produce documents responsive to Request for Production No. 38, they later withdrew that agreement during the meet and confer process, claiming that this Request was no longer relevant in light of the Counterclaim Dismissal.  (Scolnick Decl., Ex. 17 at 2, n.1.)  Thus, the Disputed Requests for Production also include Request for Production No. 38.

[5]  After meeting and conferring, BD/S agreed to supplement its responses to some of these Interrogatories, but continues to refuse to answer Interrogatory Nos. 1–3 and 8–9 from Yucaipa; Tochner Interrogatory Nos. 18–21; Pelletier Interrogatory Nos. 12–15, 17 and 19–20; Walker Interrogatories to Black Diamond Nos. 12–13 and 20–22 and Walker Interrogatories to Spectrum Nos. 17–19.

BD/S has also withheld and refused to produce more than 4,000 relevant documents on the basis of the common interest doctrine, attorney-client privilege, or work-product doctrine, even though, based on BD/S's privilege descriptions, none of these protections appear to apply to the withheld documents.

After various rounds of meeting and conferring over eleven months, the parties have resolved many of their disputes regarding BD/S's deficient discovery responses and erroneous privilege log entries.

At this point, with respect to  the Disputed Requests for Production, BD/S has refused to search for documents, maintaining their position that these requests are "barred by collateral estoppel"—and thus, irrelevant—because they "seek documents related to the allegations in Yucaipa's RICO claims, which the Bankruptcy Court found implausible." (*Id.*, Ex. 17 at 1–2; Ex. 26 at 2.)

As to the Interrogatories, BD/S continue to stand on their relevance objection to thirty Interrogatories based on the purported collateral estoppel effect of the Counterclaim Dismissal in the BD/S Action, and continue to stand on their other objections to an additional ten Interrogatories. (*Id.*, Ex. 26 at 2–3.)  BD/S also contend that they have not waived their objections despite their untimely responses. (*Id.*, Ex. 16 at 2.)

### III.    ARGUMENT

This Court should compel BD/S to respond to the Yucaipa Defendants' outstanding discovery requests (the "Requests at Issue") and produce the documents improperly withheld as privileged because: (1)  collateral estoppel is not a proper discovery objection, and, in any event, the Requests at Issue are relevant to BD/S's claims and to the Yucaipa Defendants' affirmative defenses asserted in the Adversary Proceedings; (2) all of BD/S' additional objections lack merit; (3) BD/S failed to timely respond to Yucaipa's Interrogatories; and (4) BD/S's blanket assertion of common interest protection is improper.

**A.    All of BD/S's Objections to the Requests at Issue Are Either Improper or Unfounded**

BD/S have improperly objected to and refused to produce documents or provide information in response to twenty-eight Requests for Production and forty Interrogatories, on multiple grounds, including collateral estoppel, relevance, vagueness, and lack of foundation, among others.  (*See* Scolnick Decl., Exs. 29 and 30.)[6]

**1.    Collateral Estoppel Is Not a Valid Discovery Objection, and In Any Event, It Does Not Apply to Interlocutory Orders Like the Counterclaim Dismissal**

BD/S have improperly objected to and refused to produce responsive, non-privileged documents and information on the ground that the Requests at Issue are purportedly barred by "collateral estoppel."  (*See e.g.*, Scolnick Decl., Ex. 17 at 1–2.)[7]  According to BD/S, this Court's Counterclaim Dismissal order precludes the Yucaipa Defendants from seeking discovery on a range of topics relevant to their defenses in the Adversary Proceedings and their claims in the RICO Action.  BD/S's "collateral estoppel" objection is not well taken.

Courts have repeatedly recognized that issue and/or claim preclusion are "not a proper ground for objection to discovery."  *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 575 (D. Md. 2010).  In *Mezu*, as here, the defendant claimed res judicata as the basis for not responding to discovery.  *Id.*  The court found that objection to be "a violation of Rule 26(g)(1)(B)."  *Id.*  As the court explained, "[r]es judicata is an affirmative defense that 'may properly be raised through a motion to dismiss under Rule 12(b)(6) . . . .  It is not a proper ground for objection to discovery.'"  *Id.*; *see also In re No-Burn Inc. v. Speller*, No. 05–02096, 2006 WL 4458703, at *2 (Bankr. M.D. N.C. Jan. 21, 2006) ("issues regarding res judicata and collateral estoppel are

---

[6]  The Yucaipa Defendants challenge BD/S's objections to and refusal to provide documents or information in response to: (1) Yucaipa's Requests for Production Nos. 1–2, 36–46, and 56; (2) Yucaipa's Interrogatories Nos. 1–3 and 8–9; (3) Tochner Interrogatories Nos. 18–21; (4) Pelletier Interrogatories Nos. 12–15, 17, and 19–20; (5) Walker Interrogatories to Black Diamond Nos. 12–13 and 20–22; and (6) Walker Interrogatories to Spectrum Nos. 17–19.

[7]  In either their objections and responses to discovery requests or in meet and confer correspondence, BD/S asserts a collateral estoppel objection to fifty-eight of the Requests at Issue.

premature in the discovery phase of a lawsuit").

Further, even if collateral estoppel were a valid objection, it would be inapplicable here because the Counterclaim Dismissal is merely an interlocutory order—it does not resolve the entire BD/S Action or Committee Action, and the District Court expressly refused to consider Yucaipa's interlocutory appeal from the order.  (D. Ct. No. 15-mc-00232-SLR, D.I. 20.) Therefore, under black-letter law, the Counterclaim Dismissal does not constitute a "final judgment" for purposes of applying collateral estoppel.  *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (collateral estoppel requires that "the issue was determined by a final and valid judgment"); *see also Pineda v. Ford Motor Co*., 520 F.3d 237, 243 (3d Cir. 2008) ("Under the 'merger rule,' prior interlocutory orders . . . merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order." (quoting *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996) (quotation marks omitted))).

In short, collateral estoppel is not a valid discovery objection, and even if it were, the interlocutory Counterclaim Dismissal order can have no collateral estoppel effect.

### 2. The Requests at Issue Are Relevant to BD/S's Claims, Yucaipa's Affirmative Defenses, and Yucaipa's RICO Allegations

The Requests at Issue seek documents and information directly relevant to BD/S's liability and damages theories, Yucaipa's affirmative defenses in the Adversary Proceedings, and Yucaipa's claims in the RICO Action.[8]  BD/S's arguments to the contrary lack merit.

The Federal Rules allow a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"  Fed. R. Civ. P. 26(b)(1).  "Relevancy" for purposes of discovery "is broadly construed."  *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F.Supp.2d 375, 380 (D. Del. 2009); s*ee also Solae, LLC v. Hershey Canada, Inc.*, 557

---

[8]  Yucaipa's discovery requests pertain to all of these actions, by express agreement of the parties.  (*See* D. Ct. No. 15-cv-00373-SLR, D.I. 23, § A.)

F.Supp.2d 452, 460 (D. Del. 2008) (noting that Rule 26 provides liberal discovery of nonprivileged facts).  "[D]iscovery is ordinarily allowed under the concept of relevancy 'unless it is clear that the information sought can have no possible bearing upon the subject matter of the action.'"  *In re Energy Future Holdings Corp.*, 513 B.R. 651, 656 (Bankr. D. Del. 2014) (quoting *In re ML–Lee Acquisition Fund II, L.P.*, 151 F.R.D. 37, 39 (D. Del. 1993)).

In both Adversary Proceedings, BD/S generally assert that the Yucaipa Defendants improperly acted or refused to act in ways that would have helped Allied—and that the Yucaipa Defendants did so in order to benefit Yucaipa (which was Allied's majority equity holder) and harm Allied and its other stakeholders.  In response, the Yucaipa Defendants consistently have asserted that they did not engage in any inappropriate conduct in their management of Allied, Yucaipa's acquisition of Allied's first lien debt, or in any other actions or decisions they took or did not take with respect to Allied.  Rather, the Yucaipa Defendants have explained that BD/S orchestrated a carefully timed series of lies, payoffs, and legal maneuvers designed to wrongfully enrich themselves at Yucaipa's expense—setting up Yucaipa as the proverbial fall guy to blame for Allied's misfortunes connected to the Great Recession.  To that end, the Yucaipa Defendants have asserted the affirmative defenses of unclean hands, waiver, estoppel, consent, and laches, among others.  (A.P. No. 13-50530-CSS, D.I. 95 at ¶¶ 299–304, 307–308, 315–316; D.I. 96 at ¶¶ 157–162, 165–166, 168; A.P. No. 14–50971-CSS, D.I. 19 at ¶¶ 147–150, 155–156, 159–160, 166–167.)

The Requests at Issue seek documents and information relevant to BD/S's claims and these affirmative defenses (and the allegations in Yucaipa's RICO Action).  For example:

***Unclean Hands***:  To prevail on this defense, the Yucaipa Defendants will need to establish, among other things, that BD/S's conduct was inequitable with respect to the subject matter of their claims in this case—namely, that BD/S acted improperly in connection with their own (or other parties') investments in Allied, and/or that BD/S proceeded unfairly against the Yucaipa Defendants before and during the Allied bankruptcy and these Adversary Proceedings.  *See Ciba-Geigy Corp. v. Bolar Pharm. Co., Inc.*, 747 F.2d 844, 855 (3d Cir.1984); *see also S &*

*R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 377 n. 7 (3d Cir.1992) (misconduct sufficient to establish unclean hands includes "fraud, unconscionability, or bad faith on the part of the plaintiff").

Several of the Requests at Issue concern BD/S's acquisition and sale of first lien debt, the amount they paid or received for that debt, and BD/S's valuation of their own or any other lender's debt.[9] Other Requests seek documents or information concerning transfers of First Lien Debt between Black Diamond and Spectrum, including details regarding the undisclosed transfer of $4,239,486.90 from Black Diamond to Spectrum in advance of the involuntary filing.[10] BD/S's acquisition, sale, and valuations of that debt—as well as the purchase prices, dates of transactions, persons involved in the transactions, and other circumstances surrounding the transactions—are all highly relevant and will likely demonstrate that BD/S was motivated to (and eventually did) act improperly with respect to Yucaipa and Allied.

Moreover, in both of these Adversary Proceedings, for both liability and damages, it will be necessary to know who owned what amount of debt, when, and what it was worth at various points in time. Among other things, if BD/S prevails, they will need to prove harm/damages by comparing the value of their holdings over time against the other opportunities they contend should have been undertaken on behalf of the debtor (e.g., what they stood to gain/lose based on each alleged opportunity, compared with what they ultimately received in the bankruptcy and what they claim to be entitled to now if they are successful in subordinating Yucaipa's debt).

Specifically the challenged discovery would illuminate BD/S's motivations for passing on a potential deal with a third party and instead moving forward with the involuntary filing, and at the very least could assist the Yucaipa Defendants in identifying additional witnesses. It

---

[9]  Requests for Production 1, 2, 37 and 56; Yucaipa Interrogatory Nos. 1–3 and 9; Pelletier Interrogatory Nos. 12 and 17; Tochner Interrogatory No. 20.

[10]  Request for Production 38; Pelletier Interrogatory Nos. 13–15; Tochner Interrogatories 20–21.

would also tend to show the reasonableness of BD/S's explanations regarding their claims trading. The Yucaipa Defendants requested details regarding the $4,239.486.90 transfer that occurred just before BD/S filed the involuntary bankruptcy petition—the Yucaipa Defendants believe that this transaction was an improper claims trade to induce Spectrum to file the involuntary petition, which was part of a larger conspiracy to profit at Yucaipa's expense. These Requests will assist the Yucaipa Defendants in testing the accuracy of this key contention, and thus, the strength of their unclean hands defense.

Similarly, other Requests at Issue seek information and documents related to BD/S's "Cooperation Agreement," the timing of BD/S's consideration of equitable subordination, the entity referred to as SBDRE, LLC, SBDRE's credit bid, issuance of new stock, and payment of lenders' legal expenses.[11]  Discovery concerning the "Cooperation Agreement" and equitable subordination directly relate to the theory that BD/S were scheming to equitably subordinate first lien debt at the expense of other lenders even before Yucaipa had acquired its first lien claims. Discovery concerning SBDRE, the credit bid, and issuance of new stock relate to the Yucaipa Defendants' contention that BD/S lacked the authority to govern SBDRE, and that it used SBDRE through the credit bid and the new issuance of stock as part of its unlawful scheme to dilute Yucaipa's pro rata interest in Allied. Lastly, discovery concerning reimbursement of legal expenses under the First Lien Credit Agreement relate to the Yucaipa Defendants' position that BD/S inappropriately froze the payment of Yucaipa's fees, while inequitably authorizing the payment of their own fees.

In short, Yucaipa has a right to take discovery in order to develop and pursue its unclean hands defense, which is based on BD/S's bad faith and inequitable conduct with respect to their investments in Allied and their treatment of Yucaipa.

---

[11]  Requests for Production Nos. 36, 39–46; Pelletier Interrogatories Nos. 13, 19–20; Tochner Interrogatories Nos. 18–19; Walker Interrogatories to Black Diamond 20–22; Walker Interrogatories to Spectrum Nos. 17–19.

**_Waiver/Acquiescence/Laches_**:  In order to prevail on these defenses, the Yucaipa Defendants will generally need to show, among other things, that BD/S inexcusably delayed in bringing suit and that the Yucaipa Defendants relied to their detriment on false statements by BD/S.  *See, e.g.*, *Univ. of Pittsburgh v. Champion Prods. Inc.*, 686 F. 2d 1040, 1044 (3d Cir. 1982) (laches); *United States v. Asmar*, 827 F. 2d 907, 912 (3d Cir. 1987) (estoppel).

Walker Interrogatories Nos. 12 and 13 to Black Diamond seek information about a meeting between Mr. Deckoff of Black Diamond and Ronald Burkle of Yucaipa in August 2009, in which the two discussed Yucaipa's potential acquisition of Allied First Lien Debt.  (Scolnick Decl., Ex. 3-2 at 12.)  Because BD/S allege that the Yucaipa Defendants tortiously interfered with the First Lien Credit Agreement by allowing Yucaipa to "surreptitious[ly]" acquire First Lien Debt in August 2009 and to become Requisite Lender (A.P. No. 14-50971-CSS, D.I. 1 at ¶ 10), details regarding this meeting between Mr. Deckoff and Mr. Burkle plainly bear upon BD/S's claims and Yucaipa's defenses.  For instance, does Black Diamond concede that Mr. Deckoff knew of Yucaipa's intention to acquire first lien debt?  If so, does Black Diamond acknowledge that Mr. Deckoff voiced no objections or concerns about the acquisition, and in fact supported the proposed transaction?

These facts, if established, would seriously undermine BD/S's theory that Yucaipa's acquisition of first lien debt was some sort of "scheme" plotted behind the scenes to harm other lenders.  They should also confirm that BD/S made false statements to Yucaipa in connection with the acquisition of First Lien Debt, and that Yucaipa relied on those statements to its detriment.  Likewise, these facts would support Yucaipa's defense that Black Diamond acquiesced in Yucaipa's first lien debt purchase, and thus, waived any right to complain or at least waited too long to complain (and in the meantime BD/S readily accepted the benefits of Yucaipa's actions as the requisite lender).  *See BDCM Opportunity Fund II, LP v. Yucaipa Am. Alliance Fund I, LP*, 112 A.D. 3d 509, 511 (N.Y. App. Div. 2013) (reversing summary judgment in favor of Black Diamond and finding a genuine factual dispute "as to waiver," based on Black Diamond's "'active involvement'" in Yucaipa's efforts to become requisite lender).

13

* * * * *

Regardless of whether this Court previously found Yucaipa's allegations insufficient to support an *affirmative* cause of action against BD/S for equitable subordination, the Yucaipa Defendants are entitled to even greater latitude to explore information and documents that support their defensive theories. After all, "[d]ue process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quotation marks omitted) (quoting *Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 168 (1932)). Moreover, BD/S's blanket assertions that certain discovery requests are irrelevant "[are] not adequate to voice a successful objection[.]" *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). Rather, "the party resisting discovery 'must show specifically how each [request] is not relevant.'" *Id.* (*quoting Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980)).

In elucidating their relevance objections, BD/S have asserted only that these requests are "barred by collateral estoppel" based on the Counterclaim Dismissal (Scolnick Decl., Ex. 17 at 1-2), and that they "do not plan to respond to discovery demands based on Yucaipa's claims and allegations that the [bankruptcy court] has rejected as implausible." (*Id.*, Ex. 24 at 3; *see also id*, Ex. 26 at 2 ("RFP Nos. 1, 2, 36–46, and 56 seek documents related to the allegations in Yucaipa's RICO claims, which the Bankruptcy Court found implausible. Black Diamond and Spectrum intend to stand on their relevance objections to those RFPs.").) But as explained *supra*, collateral estoppel is not a proper objection. And because BD/S provided no other explanation as to why any of these requests are not relevant to their own claims, or Yucaipa's affirmative defenses (indeed, BD/S concede the requests are relevant to Yucaipa's RICO claims), BD/S cannot refuse to respond on relevance grounds.[12]

---

[12] Underscoring that their sole basis for a relevance objection is grounded in collateral estoppel, BD/S had acknowledged the relevance of Request for Production No. 38 by failing to lodge a specific objection based on relevance to that request and agreeing to produce responsive documents before the Counterclaim Dismissal. (Scolnick Decl., Ex. 7 at 19; Ex. 8 at 19.) After the Counterclaim

(Cont'd on next page)

Simply put, there is no credible argument that the information the Yucaipa Defendants seek "can have no possible bearing upon the subject matter of the action.'" *In re Energy Future Holdings Corp.*, 513 B.R. at 656.

### 3.    BD/S's Other Objections Also Lack Merit

BD/S object to some of the Requests as overbroad to the extent that they seek "information concerning Lenders other than Black Diamond, Spectrum or Yucaipa." (Scolnick Decl., Ex. 17 at 3; *see also id.*, Ex. 14-1 at 13.)  However, Yucaipa is entitled to seek "any designated documents" that are in the "*possession, custody or control* of the party upon whom the request is served." Fed. R. Civ. P. 34(a) (emphasis added).  Thus, regardless of whether these Requests seek documents related to other Lenders, persons, or entities, to the extent that BD/S possess or control such documents, BD/S must produce them.

Moreover, some of these Requests seek documents that are, in fact, uniquely within BD/S's possession or control.  For example, Interrogatory No. 8 asks BD/S to "[d]escribe in detail *Your* understanding of the value of Yucaipa's equity in Allied as of August 21, 2009." (Scolnick Decl., Ex. 3-1 at 11; Ex. 4-1 at 11(emphasis added).)  In the BD/S Action, BD/S repeatedly alleges that Yucaipa engaged in the alleged wrongful acts "to protect its equity stake from being wiped out as a result of the legitimate exercise of the rights and remedies of the First Lien Lenders[.]" (A.P. No. 14-50971-CSS, D.I. 1 at ¶ 2.)  Thus, Yucaipa is entitled to know what BD/S believed Yucaipa's equity stake in Allied was worth on August 21, 2009—when Yucaipa acquired the first lien debt.  Without that evidence, how can BD/S possibly hope to prove that Yucaipa was so motivated to protect its equity interest that it disregarded its

---

(Cont'd from previous page)
Dismissal, however, BD/S changed course and took the position that this request was no longer relevant.  (*Id*., Ex. 17 at 2 n.1.)

obligations to Allied and the other stakeholders?  Furthermore, *only* BD/S can provide information related to *BD/S's* valuation of Yucaipa's equity on that date.

BD/S next contend that Requests Nos. 39–44 and 46 improperly seek discovery in support of allegations in a related Delaware Chancery Court action challenging BD/S's governance of SBDRE.  (Scolnick Decl., Ex. 17 at 2.)  This objection presumably is an extension of their generic "relevance" objection, and it is similarly misplaced.  Regardless of whether these Requests might also be relevant to the Delaware Chancery action, their independent relevance to the Adversary Proceedings here makes them fair game for discovery.

BD/S also objected to many of the Requests on the generic grounds that they are overbroad[13] or vague and/or ambiguous.[14]  Under the Federal Rules, however, "[t]he grounds for objecting to an interrogatory must be stated *with specificity*."  Fed. R. Civ. P. 33(b)(4) (emphasis added).  As courts have explained, "[t]o voice a successful objection to an interrogatory [a party] cannot simply entone the familiar litany that the interrogatories are overly broad, ambiguous [and] vague. . . .   Rather, [a party] must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, vague or irrelevant or oppressive."  *Griggs v. Raymark Indus., Inc.*, No. 85-3706, 1986 WL 10650, at *1 (E.D. Pa. Sept. 26, 1986); *see also Josephs*, 677 F.2d at 992.  Accordingly, BD/S's blanket vagueness and overbreadth objections to the majority of the Requests are not a valid basis for refusing to respond.[15]

---

[13]  BD/S made this objection to all of the Disputed Requests for Production, and: (1) Yucaipa Interrogatory Nos. 1–3 and 8–9; and (2) Pelletier Interrogatory No. 13 and 17.

[14]  BD/S made this objection to all of the disputed Requests for Production, and: (1) Yucaipa Interrogatory Nos. 8–9; (2) Tochner Interrogatory No. 18, 20–21; (3) Pelletier Interrogatory Nos. 12–15, 19–21; (4) Walker Interrogatories to Black Diamond Nos. 20–22; and (5) Walker Interrogatories to Spectrum Nos. 17–19.

[15]  Some of these Interrogatories, such as Interrogatory Nos. 8 and 9, ask BD/S to describe only a single figure at a single point in time (August 21, 2009).  (Scolnick Decl., Exs. 3-1 at 11 and 4-1 at 11.)  As such, BD/S' blanket overbreadth objection is misplaced.

Furthermore, even where BD/S gave a cursory explanation of what they perceived as "vague" about the Interrogatories,[16] they made no good-faith effort to respond by using common sense and attributing ordinary definitions and reasonable interpretations to commonplace terms and phrases, such as "contemplated by" and "considered."  *See Barton v. RCI, LLC*, No. 10-3657 (PGS), 2013 WL 1338235, at *11 (D.N.J. Apr. 1, 2013) (ordering responses to document requests that were "not so vague or ambiguous as to be incomprehensible to Defendant").

BD/S also objected to many Interrogatories on the ground that they "lack[ed] foundation."[17]  But foundation concerns the *admissibility* of evidence, and the Federal Rules explicitly do not require discoverable information to be admissible.  Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").  As a result, "lack of foundation is not a proper objection to a discovery request."  *Marti v. Baires*, No. 1:08-cv-00653-AWI-SKO PC, 2012 WL 2029720, at *5 (E.D. Cal. June 5, 2012).

Finally, BD/S objected to many of the Director Defendants' Interrogatories on the grounds that they are not relevant to the claims against the Director Defendants and were "improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories[.]"  This objection makes no sense.  In both Adversary Proceedings, the Director Defendants and Yucaipa have asserted the *same* affirmative defenses to which the Interrogatories at issue relate.  (*See* A.P. No. 13-50530-CSS, D.I. 95, D.I. 96; A.P. No. 14-50971-CSS, D.I 19.)  As Allied directors, each of these affirmative defenses apply equally to the Director Defendants,

---

[16]  *See* (1) Tochner Interrogatory No. 18 (objecting to the phrase "contemplated by the Cooperation Agreement"); (2) Pelletier Interrogatory No. 13 (objecting to the phrase "other trades" and the term "considered"); (3) Walker Interrogatory to Black Diamond No. 21 and Walker Interrogatory to Spectrum No. 18 (objecting to the terms "expenses" and "reimbursed.").  Yucaipa maintains that none of these terms or phrases are vague, despite BD/S's improper objection.

[17]  BD/S made this objection to: (1) Tochner Interrogatory Nos. 19–21; (2) Pelletier Interrogatory Nos. 12–15, 19–21; (3) Walker Interrogatories to Black Diamond Nos.12–13 and 20–22; and (4) Walker Interrogatories to Spectrum Nos. 17–19.

and they are entitled to seek supporting evidence.

And regardless, the Yucaipa entities are nowhere near their numerical limit for serving interrogatories, such that they would need to "circumvent" that limit.  BD/S have sued two separate Yucaipa entities in these two Adversary Proceedings (meaning 100 total interrogatories may be propounded on Black Diamond and another 100 on Spectrum), not to mention Yucaipa's ability to serve twenty-five additional interrogatories in the RICO Action.  When BD/S made this objection, the Yucaipa entities had served only twenty interrogatories on Spectrum and an additional nineteen on Black Diamond.  (Scolnick Decl., Exs. 3-1 and 4-1.)

**B.      In Any Event, BD/S Waived all Objections to the Yucaipa Defendants' Interrogatories by Failing to Timely Respond**

Even if any of BD/S's objections to the Yucaipa Defendants' Interrogatories had merit (and they do not), BD/S waived these objections by failing to timely assert them.  BD/S must therefore respond to *all* of the Interrogatories that they have refused to answer.

A responding party waives any objection to an interrogatory not stated in a timely fashion, unless the court, for good cause, excuses the failure.  *See* Fed. R. Civ. P. 33(b)(4).  Here, BD/S have not—and cannot under the circumstances—demonstrate any "good cause" that would excuse their failure to object or respond on time.  While BD/S's responses and objections to the Interrogatories were due no later than July 13, 2015, the Yucaipa Defendants agreed, at BD/S's request, to extend the deadline until July 31, 2015.  (Scolnick Decl., Ex. 9.)  Yet July 31 came and went, and BD/S failed to serve their objections until *August 31*—a full month past the extended and agreed-upon deadline.  (*Id.*, Exs. 14-1–14-6 and 15-1–15-6.)

BD/S's late responses and objections were not a result of mere oversight or a good faith mistake.  In fact, on the deadline of July 31, 2015, BD/S timely served their responses and objections to Yucaipa's *Requests for Admissions*—which were covered by the same stipulation to extend BD/S's discovery response dates.  (*Id.*, Exs. 10 and 11.)  Moreover, two weeks after the July 31 deadline, counsel for the Yucaipa Defendants sent BD/S a meet and confer letter reminding them that the Yucaipa Defendants had not received any responses or objections to the

Interrogatories due two weeks prior and informing them that the untimely responses waived BD/S's objections.  (*Id.*, Ex. 13.)

On August 31, 2015 (a month past the deadline), BD/S finally served their responses to the Interrogatories, along with a letter arguing that they had not waived objections because: (1) the Yucaipa Defendants had suffered no prejudice from the late-served objections; and (2) this Court "has already ruled that late service of discovery responses does *not* constitute waiver of objections without a showing of prejudice."  (*Id.*, Ex. 16 at 2 (emphasis in original).)

There is no good cause to excuse BD/S's late-served objections.  For one thing, waiver does not depend on whether the requesting party suffers prejudice.  Indeed, Federal Rule 33 makes no mention of "prejudice"—it speaks only of whether "good cause" excuses the failure to serve timely responses.  *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").  For this reason, courts regularly deem objections waived for failure to provide a timely response without considering prejudice to the requesting party.  *See SWIMC, Inc. v. Hy-Tech Thermal Solutions, LLC*, No. 08-084 (SLR), 2009 WL 1795177, at *3 (D. Del. June 24, 2009); *In re Le-Nature's Inc.*, 380 B.R. 747, 750–51 (W.D. Pa. 2008).[18]

Furthermore, contrary to BD/S's assertion, this Court's prior ruling in the Committee Action (A.P. No. 13-50530, D.I. 202 at 115)—which excuses *another* instance of BD/S's failure to timely object to discovery—does not give them a free pass for the duration of these related cases to ignore all discovery deadlines without consequence.[19]  There, the Court considered whether BD/S had waived objections for failing to respond to document requests under Rule 34 subject to a shortened deadline set forth in a Scheduling Order.  (*See id.*, D.I. 165 at 6–8.)  BD/S

---

[18]  While the Yucaipa Defendants contend that "prejudice" is irrelevant to BD/S's waiver here, they do not concede that they suffered no prejudice from BD/S's failure to serve timely responses.

[19]  The fact that BD/S have previously missed discovery deadlines in these same Adversary Proceedings demonstrates precisely why this Court should not excuse BD/S's failure to comply in this instance.

argued that they failed to timely respond due to a good faith misreading of the Scheduling Order, and that the late-served objections did not result in prejudice. (*See id.*, D.I. 182 at 9.) This Court ruled: "[H]owever tempting it is to hold the deadline against one of the proponents of shortened deadlines, the Court *has to look to the actual occurrence of what happened*, and most importantly. . . prejudice. And I think that *given the flurry of activity*, that there really is no basis to hold that deadline so strictly against Black Diamond." (*Id.*, D.I. 202 at 115 (emphasis added).) Accordingly, the Court ruled that under those particular circumstances, where BD/S missed a *shortened* deadline set forth in a Scheduling Order amidst a "flurry of activity" in the case, the Court would not find waiver absent prejudice to the requesting party. (*See id.*)

By contrast, here, BD/S specifically requested and received an *extended* deadline, and they then willfully missed that deadline. BD/S cannot possibly argue that their failure was a good-faith mistake—as BD/S timely served responses and objections to Yucaipa's Requests for Admissions served concurrently with the Interrogatories. (*See* Scolnick Decl., Exs. 10 and 11.) And BD/S received notice of the missed deadline via letter from the Yucaipa Defendants on August 13, 2015. (*Id.*, Ex. 13 at 1–2.) Moreover, unlike document requests governed by Federal Rule 34 (which applied to the prior dispute in which the Court found no waiver), interrogatories are governed by Federal Rule 33, which contains an *explicit* waiver provision for untimely objections without any requirement of prejudice to the requesting party. *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").

Thus, looking at the "actual occurrence" of what transpired here, there are no grounds to excuse BD/S's untimely objections. Nor have BD/S suggested that such grounds exist. Instead, BD/S appear content to rely solely on this Court's forgiveness of a *prior* discovery violation premised on a different Rule based on different circumstances as a justification for disregarding all types of discovery deadlines in the future. The Court should not countenance such practices.

## C.    BD/S Cannot Withhold Documents Based on the Common Interest Doctrine

BD/S are currently withholding more than 4,000 responsive documents from disclosure

based on an improper and vastly overbroad assertion of the common interest doctrine.  (*See* Scolnick Decl., Exs. 21 and 22.)  BD/S, as "[t]he party invoking the protection of the common interest doctrine[,] bears the burden of proving it applies."  *In Re Leslie Controls, Inc.*, 437 B.R. 493, 497 (Bankr. D. Del. 2010); *see also Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 377 (D. Del. 2010).  BD/S cannot meet their burden here, and all communications withheld under the common interest doctrine should be produced.

      1.      **The common interest doctrine applies only to communications between different attorneys representing separate clients**

The common interest doctrine "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others."  *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007).

BD/S claim that "Black Diamond, Spectrum and the other non-Yucaipa First Lien Lenders had a common legal interest in maximizing their recoveries of First Lien Debt, which included exploring potential claims against Allied and/or Yucaipa, and they jointly retained counsel (Ropes & Gray) to further that common legal interest."  (Scolnick Decl., Ex. 20 at 5.)  But as the Third Circuit has held, the common interest doctrine "only applies when clients are represented by separate counsel."  *Teleglobe*, 493 F.3d at 365; *see also Hoffman-La Roche, Inc. v. Roxane Labs., Inc.*, No. 09-6335 (WJM), 2011 WL 1792791, at *5 (D.N.J. May 11, 2011) ("The common-interest doctrine does not apply in this case for a very simple reason: there is only a single attorney, Mr. Silverman, alleged to be involved in the Disputed Documents.").

Here, none of the challenged communications that BD/S have withheld involve *separate* counsel representing *different* clients.  Rather, BD/S's privilege logs identify only *one* attorney (specifically the law firm of Ropes & Gray) as common-interest counsel.  (Scolnick Decl., Ex. 24 at 2.)[20]  Indeed, BD/S represent that all the first lien lenders "*jointly* retained counsel[.]"  (*Id.*

---

[20]    Although different clients represented by a single attorney can protect otherwise privileged communications from disclosure under the joint client or co-client privilege, BD/S has not invoked that privilege as a justification for withholding relevant documents, despite myriad opportunities to do

(Cont'd on next page)

(emphasis added).) Accordingly, BD/S's assertion of the common interest doctrine to protect communications between themselves and/or other First Lien Lenders is "out of place, as [BD/S have] never asserted that the parties were represented by *separate* counsel who properly shared information." *Teleglobe*, 493 F.3d at 365 n.22 (emphasis added).

Likewise, many of these communications involve no attorneys whatsoever. For example, Spectrum is withholding dozens of communications between Bala Ramakrishnan from GSO Capital, on the one hand, and Spectrum's Jeffrey Schaffer, on the other, despite the fact that neither is an attorney. (*Id.*, Ex. 22 at *e.g.*, 3 [Nos. 45–51], 4–5 [Nos. 65, 68, 70–73].) And BD/S logged numerous communications between non-attorneys Jeffrey Schaffer (Spectrum) and Richard Ehrlich (Black Diamond).[21]

BD/S have argued that "the presence of an attorney is not required for a communication to be protected by the attorney-client privilege." (*Id.*, Ex. 24 at 2.) Yet the Third Circuit has held that "the common-interest privilege only supplants the disclosure rule when *attorneys*, *not*

---

(Cont'd from previous page)

so. Although the doctrines are similar, they differ in important respects. *See Teleglobe*, 493 F.3d at 363 n.18. If a party intends to rely on the joint client privilege to withhold relevant documents, it must make this distinction clear. *See id.* at 365 n.22 ("This means that BCE's invocation of the 'common interest' privilege in the Bankruptcy Court was out of place. . . . Confusing as this area of law is, parties asserting the privilege (who, incidentally, bear the burden of proving it applies) are expected to explain themselves with more precision than BCE has throughout this litigation."); *see also Hoffman-La Roche, Inc.*, 2011 WL 1792791 at *6 n.7 ("[T]he presence of a single attorney could augur in favor of arguing the separate doctrine of 'co-client' or 'joint-client' privilege. Roche has not done so here, repeatedly invoking by name *only* the common-interest doctrine. Having failed to argue the joint or co-client doctrine, Roche has not, and cannot, meet its burden of showing that it applies and that its requirements have been met." (emphasis in original)).

[21] Scolnick Decl., Ex. 22 at Nos. 60, 110, 111, 499, 500, 502, 512, 513, 531, 629, 748, 753, 754, 770, 803, 811, 827, 829, 889, 898, 899, 900, 911, 915, 940, 957, 959, 983, 984, 985, 986, 987, 988, 1005, 1006, 1007, 1008, 1020, 1064, 1065, 1086, 1087, 1103, 1546, 1547, 1560, 1561, 1679, 1681, 2109, 2277, 2278; Ex. 21 at Nos. 20, 21, 65, 66, 67, 79, 80, 94, 99, 145, 172, 177, 178, 181, 182, 183, 184, 185, 199, 201, 217, 223, 224, 250, 251, 252, 253, 254, 258, 278, 345, 346, 347, 349, 354, 371, 372, 548, 551, 557, 558, 562, 564, 565, 620, 623, 626, 742, 761, 822, 823, 829, 830, 852, 854, 855, 857, 865, 866, 867, 1230, 1231, 1233, 1315, 1320, 1322, 1323, 1327, 1328, 1329, 1333, 1334, 1335, 1435, 1437, 1439, 1440, 1442, 1444, 1445, 1446, 1447, 1571, 1572, 1892, 1893, 2065, 2443.

*clients*, decide to share information in order to coordinate legal strategies." *Teleglobe*, 493 F.3d at 365 (emphasis added); *see also id.* at 364 ("[T]o be eligible for continued protection, the communication must be shared with the *attorney* of the member of the community of interest. Sharing the communication directly with a member of the community may destroy the privilege." (citations omitted) (emphasis in original)).  And the Delaware District Court has likewise held that "to qualify for and to maintain the privilege, the communications must be shared between counsel, and not just between the clients." *MobileMedia Ideas LLC v. Apple, Inc.*, 890 F. Supp. 2d 508, 515 (D. Del. 2012) (citing *Teleglobe*, 493 F.3d at 365); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 263 F.R.D. 142, 146 (D. Del. 2009) (same).[22]  Accordingly, the numerous communications that BD/S are currently withholding on the basis of a common interest protection that do not include counsel are being improperly withheld and should be produced.  At the very least, the Court should review these communications in camera to determine whether there is any protection available.

BD/S attempt to circumvent the presence-of-counsel requirement by making a blanket claim that these communications "reflect[] legal advice."  (*See,* Scolnick Decl., Exs. 21 and 22.) But the common interest doctrine covers communications without counsel present only in narrow instances:  "(1) [when] one party is seeking confidential information from the other *on behalf of* an attorney; (2) [when] one party is relaying confidential information to the other *on behalf of* an attorney; and (3) [when] the parties are communicating work product that is related to the litigation." *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 584 (D.S.D. 2006)

---

[22]  *See also In re Processed Egg Prods. Antitrust Litig.*, 278 F.R.D. 112,, 125 n.23 (E.D. Pa. 2011) (noting that because "the letters [at issue] were authored by and primarily addressed to executives of each company[,] [t]his further calls into question the applicability of the common-interest privilege."); *Cooper Health Sys. v. Virtua Health, Inc.*, 259 F.R.D. 208, 214 (D.N.J. 2009)("[T]he privilege does not extend to communications between non-attorneys who simply have a joint interest" and is applicable only to "communications amongst attorneys[.]"); *Hoffman-La Roche, Inc*., 2011WL 1792791, at *5–6 (finding that the "common-interest doctrine only applies to communications between attorneys" and that doctrine did not apply there, as only one attorney was alleged to be involved in the communications-at-issue).

(emphasis added) (quoting *IBJ Whitehall Bank & Trust Co. v. Cory & Assocs., Inc.*, No. 97 C 5827, 1999 WL 617842, at *6 (N.D. Ill. Aug. 12, 1999)).  Here, BD/S's identical, boilerplate description that each logged communication reflects legal advice fails to identify whether the communication was being made on behalf of counsel or was relaying legal advice on behalf of the attorney.  Thus, BD/S have failed to satisfy their burden of demonstrating that the common interest doctrine applies.

> **2.      BD/S Have Not Shown that the Parties to the Challenged Communications Shared a Common Legal Interest**

In any event, BD/S's assertion of the common interest doctrine also fails because they have not identified a common *legal* interest between themselves and among the First Lien Lenders.  In order to invoke the doctrine, "all members of the community must share a common legal interest in the shared communication."  *Teleglobe*, 493 F.3d at 364.

BD/S assert that "[BD/S] and the other non-Yucaipa First Lien Lenders had a common legal interest in maximizing their recoveries of First Lien Debt, which included exploring potential claims against Allied and/or Yucaipa, and they jointly retained counsel (Ropes & Gray) to further that common legal interest."  (Scolnick Decl., Ex. 20 at 5.)  According to BD/S, this "common legal interest" began on or around August 1, 2008, and terminated in February 2009, when ComVest purchased the majority of Allied's first lien debt.  (*Id.*, Ex. 24 at 1 and 2, n.1.)  BD/S also contend that their own common interests continued after ComVest's debt purchase.  (*Id.*, at 2, n.1)  But this asserted "common" interest is untenable.

The First Lien Lenders' "interest in *maximizing their recoveries of First Lien Debt*, which included exploring potential claims against Allied and/or Yucaipa," is at most a *commercial* interest, not a legal one.  This is true even where, as here, parties are attempting to utilize the court system to achieve their commercial goals.[23]  "[A]n *incidental* legal issue is insufficient to

---

[23]  BD/S's admission that the First Lien Lenders shared this common interest as far back as August 2008—before Yucaipa acquired any first lien debt, and almost four years before BD/S filed the involuntary bankruptcy petition—strongly suggests that, as Yucaipa has maintained throughout this

(Cont'd on next page)

transform a commercial interest into a legal one" for the purposes of establishing a common interest. *Leslie Controls*, 437 B.R. at 499 (emphasis in original). "[A] business strategy which happens to include a concern about litigation is not a ground for invoking the common interest rule." *In re FTC*, No. M18-304 (RJW), 2001 WL 396522, at *5 (S.D.N.Y. Apr. 19, 2001). Here, the First Lien Lenders' exploration of potential claims against Allied and Yucaipa as a *means* of maximizing their own profits was purely incidental to their primary *business*-driven goal, rendering the common-interest doctrine inapplicable.

BD/S respond that their common commercial interest was also a legal one because it "required an analysis of the First Lien Credit Agreement as well as issues of contract and bankruptcy law to determine what *legal* claims were available to the non-Yucaipa First Lien Lenders." (Scolnick Decl., Ex. 24 at 2 (emphasis in original).) BD/S analogize their shared interests to the common interest in *Leslie Controls*, 437 B.R. 493. There, this Court found that the debtor, an ad hoc committee of asbestos plaintiffs, and the debtors' proposed future claimants' representative shared an interest in "preserv[ing] and maximiz[ing] the insurance available to pay asbestos claims," and that this shared interest was legal because "[i]t involve[d] an analysis of the insurance documents, as well as contract, insurance and bankruptcy law[,] and "[i]t require[d] the involvement of the bankruptcy court." *Id*. at 500 (quotation marks omitted).

However, in *Leslie Controls*, the parties did not invoke the common interest doctrine until *after* the debtor had made the decision to file for bankruptcy. *Id*. at 495–96. And the debtor shared the documents pre-petition in hopes of developing a consensual plan of reorganization. *Id.* at 496. By contrast, here, between August 1, 2008 and February 2009—the period in which BD/S contend that lenders shared a common interest in pursuing claims against Allied and

---

(Cont'd from previous page)

litigation, that BD/S planned to set Yucaipa up to purchase first lien debt so that they could later sue for equitable subordination, all in an effort to (in their words) *maximize their recoveries of their first lien debt*."

Yucaipa—Allied was not yet considering bankruptcy.  On the contrary, Allied did not enter

bankruptcy until more than three years later.  And Yucaipa did not even own any First Lien Debt

at this time.  Therefore, to the extent BD/S and the First Lien Lenders were truly exploring

potential legal claims against Allied or Yucaipa during this period, that would have been just one

incidental avenue of many to accomplish their *business strategy* of maximizing the return of their

investments.[24]

Because the First Lien Lenders did not share a common *legal* interest, the common

interest doctrine cannot apply to the challenged communications.[25]

### 3.    BD/S Have Not Demonstrated that the Underlying Communications are Even Privileged

Assuming for the sake of argument that BD/S could overcome the initial hurdles to

invoking the common interest doctrine (which they cannot), BD/S's privilege logs still fail to

establish that the challenged communications are privileged in the first instance.

The common interest doctrine is not an independent privilege; it applies only if the

underlying communication is protected from disclosure by the attorney-client privilege or the

work product doctrine.  *See In re Tribune Co.*, No. 08-13141 (KJC), 2011 WL 386827, at *6

(Bankr. D. Del. Feb. 3, 2011).  The attorney-client privilege applies to communications made

between persons "in confidence . . . for the purpose of obtaining or providing legal assistance for

the client."  *Teleglobe*, 493 F.3d at 359 (quotation marks omitted) (citing RESTATEMENT (THIRD)

OF THE LAW GOVERNING LAWYERS § 68 (AM. LAW INST. 2000)).  To ascertain whether a

---

[24]  Indeed, as BD/S acknowledge, the first lien lenders also explored *selling* their first lien claims to Yucaipa during this time period.  This is because the lenders' primary focus—as they admitted—was maximizing their recoveries of first lien debt.

[25]  To the extent BD/S argue that they meant to assert the joint client or co-client privilege (*see* note 20), that privilege could not apply to the First Lien Lenders because maximizing recoveries for one Lender may implicate minimizing the recovery of other Lenders, and co-clients' "legal interests must be identical (or nearly so) in order that an attorney can represent them all with the candor, vigor, and loyalty that our ethics require."  *Teleglobe*, 493 F.3d at 366.

document is protected by the work-product doctrine, first, the Court must determine whether "litigation could reasonably have been anticipated," and second, the document must have been "prepared primarily for the purpose of litigation[.]"  *In re Tribune Co.*, 2011 WL 386827, at *6 (quotation marks omitted) (quoting *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D.N.J. 2008)).

After establishing that the attorney-client privilege and/or work-product doctrine applies, the party invoking the common interest doctrine must then demonstrate that "(1) the communication was made by separate parties in the course of a matter of common interest, (2) the communication was designed to further that effort, and (3) the privilege has not otherwise been waived."  *Leslie Controls*, 437 B.R. at 496.

BD/S's privilege logs fail to demonstrate that the disputed documents are subject to any underlying privileges, much less that the common interest doctrine applies.  For example, they have withheld documents because they supposedly "contain[] legal advice" regarding "Allied financials," (*see, e.g.*, Scolnick Decl., Ex. 22 at 64 [Nos. 653–656]) "CIT's resignation as Administrative and Collateral Agent," (*id.* at 106 [Nos. 1419–1422]) "ComVest's potential partnership with Yucaipa," (*id.*, Ex. 21 at 29 [Nos. 181–185])  the "JCT bid," (*id.* at 83 [No. 914]) and "Yucaipa's Georgia Action against CIT."  (*Id.* at 40 [Nos. 345–347].)  BD/S's generic privilege descriptions do not provide the required "precise and certain reasons for preserving [these communications'] confidentiality," *International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D. Del. 1974), nor do they demonstrate that BD/S engaged in these communications (without attorneys) "for the purpose of obtaining or providing legal" advice for BD/S.  *Teleglobe*, 493 F.3d at 359.  It is not clear why BD/S would have sought legal advice regarding Allied's financials, CIT's resignation, ComVest's "potential partnership" with Yucaipa, or how these communications among themselves *only* (and no attorneys) were made for "securing, advancing, or supplying legal representation," *Leader Techs., Inc.*, 719 F.Supp.2d at 376, and in an effort to further a joint legal strategy.  Without more, BD/S's privilege

descriptions are insufficient for Yucaipa to "intelligently argue that the [privilege] ought not to apply." *Petz v. Ethan Allen, Inc.*, 113 F.R.D. 494, 497 (D. Conn. 1985).

Indeed, at least some of the documents improperly logged by Spectrum—and produced by third parties—confirm the absence of any legal advice sought, provided, or even referenced. (*Compare* Scolnick Decl., Exs. 27 with Ex. 22, Nos. 83 and 84.)[26]  And Spectrum's own production of SPEC0004312–16, appearing to match entry no. 280 in Spectrum's privilege log, demonstrates that the communications do not reflect any legal advice or otherwise constitute a privileged communication, confirming that the document was wrongfully logged.  (*Compare Id.*, Ex. 28 with Ex. 22, No. 280.)[27]

BD/S has also withheld documents that supposedly "contain legal advice" concerning BD/S's "legal expenses" or "litigation budget."  (*See, e.g.*, Scolnick Decl., Ex. 21 at 49–50 [Nos. 491–496].)  Once again, these descriptions fail to demonstrate how conversations about expenses or budget were made for the purpose of obtaining or providing legal assistance.  "[I]n the absence of unusual circumstances, the privilege does not shield . . . fee arrangements."  *In re Grand Jury Investigation*, 631 F.2d 17, 19 (3d Cir. 1980); *see also Hayes v. Am. Int'l Grp.*, No. 09-2874, 2013 WL 2414005, at *3 (E.D. Pa. June 4, 2013) (same).  BD/S has not identified any "unusual circumstances" that would shield these communications from disclosure.[28]

---

[26]  Exhibits 27 and 28 to the Scolnick Declaration were designated "confidential" by the producing parties.  As such, the Yucaipa Defendants have filed these Exhibits under seal, pursuant to this Court's order dated March 10, 2015.  (Adv. No. 14-50971-CSS, D.I. 27.)

[27]  In recent correspondence, Spectrum maintained that the logged documents were privileged, but stated that they would remove those entries from their privilege log and produce those documents "in light of their disclosure."  (Scolnick Decl., Ex. 26 at 4.)  That Spectrum continues to assert that these documents are privileged despite the fact that they contain no legal advice further demonstrates the problematic and overbroad nature of their privilege assertions and the log itself.

[28]  Black Diamond's privilege log also contains documents concerning "litigation expenses" or "litigation budget" withheld on the basis of attorney-client privilege.  (Scolnick Decl., Ex. 21.)  For the same reasons, Black Diamond cannot properly withhold these documents.

Finally, BD/S has withheld communications between them purportedly "containing legal advice" about "a Confidentiality Agreement between Black Diamond and [Jack Cooper Transport Company ('JCT'), a third party not named as a Defendant or Plaintiff in the Adversary Proceedings]"—and in some instances, "attaching a markup" of the Agreement. (*See, e.g.*, Scolnick Decl., Ex. 21 at 75–76 [Nos. 807, 809–818].)  But there is no indication of what common legal interest BD/S may have had in a confidentiality agreement between Black Diamond and JCT *only* (not including Spectrum), or how these communications furthered any such common legal interest.  Nor should the work-product doctrine apply because, from the descriptions, neither Yucaipa nor the Court can determine whether litigation could reasonably have been anticipated when this agreement was created, or whether it was created primarily for the purpose of litigation.  And because JCT is not a party to the Adversary Proceedings, it is more likely this agreement was *not* created in anticipation of litigation, but rather, for a purely commercial purpose.

### CERTIFICATION UNDER DEL. BANKR. L.R. 7026-1(d)

The undersigned counsel for the Yucaipa Defendants certifies, pursuant to Rule 37(a)(1) and Del. Bankr. L.R. 7026-1(d), that they in good faith attempted to confer with counsel to BD/S in an effort to obtain the requested discovery without court action.

### IV.    CONCLUSION

For these reasons, the Yucaipa Defendants respectfully request that the Court enter the proposed order attached hereto as <u>Exhibit A</u> and compel BD/S to: (1) produce documents responsive to the Disputed Requests for Production; (2) provide written responses to the other Requests at Issue; and (3) produce responsive documents improperly withheld on the basis of the common-interest doctrine.  The Yucaipa Defendants also request that this Court find that any objections to Interrogatories have been waived by BD/S's failure to timely respond.

Dated: July 22, 2016                     YOUNG CONAWAY
                                         STARGATT & TAYLOR, LLP

                                         */s/    Michael S. Neiburg*
                                         Michael R. Nestor (No. 3526)
                                         Edmon L. Morton (No. 3856)
                                         Michael S. Neiburg (No. 5275)
                                         Rodney Square
                                         1000 North King Street
                                         Wilmington, DE  19801
                                         Telephone: (302) 571-6600
                                         mneiburg@ycst.com


                                         - and-

                                         GIBSON, DUNN & CRUTCHER LLP
                                         Maurice M. Suh (*Pro Hac Vice*)
                                         Robert A. Klyman (*Pro Hac Vice*)
                                         Kahn Scolnick (*Pro Hac Vice*)
                                         333 South Grand Avenue
                                         Los Angeles, CA  90071
                                         Telephone: (213) 229-7000
                                         MSuh@gibsondunn.com

                                         *Attorneys for the Yucaipa Defendants*