EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**YUCAIPA'S FIRST SET OF REQUESTS FOR PRODUCTION
TO PLAINTIFF AND/OR COUNTER-CLAIM DEFENDANT
BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD.**

Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund

I, L.P. (collectively, "Yucaipa"), by and through their undersigned counsel, hereby request,

pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rules 7026 and 7034 of

the Federal Rules of Bankruptcy Procedure, that on or before thirty (30) days after the service

hereof, BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 LTD ("Black

Diamond") submit a written response subscribed under oath that identifies with particularity each

of the documents described below.  Yucaipa further requests that this written response state that

each identified item in each category will be produced for inspection and, to the extent desired,

copying by Yucaipa no later than 30 days after service of these requests.  This request may be

satisfied by delivering or mailing true and correct copies of said documents to the offices of

Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071-3197,

Attention: Kahn Scolnick.

## DEFINITIONS

1.      "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group,

Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis

Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services,

Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems,

LLC, Logistic Support LLC, and Terminal Services LLC.

2.      "AMMC" shall mean AMMC VII Limited and all past and present Persons,

entities, attorneys, accountants, employees, agents, representatives, corporations, partners,

predecessor or successor corporations, partnerships or anyone else acting or purporting to act on

behalf of AMMC and/or any of its affiliates, divisions, related parties, predecessors in interest,

successors in interest, or assigns.

3.      "August 22, 2009 E-mails" shall mean the email correspondence sent from Mr.

Derex Walker to Mr. Ehrlich and Mr. Schaffer informing both Black Diamond and Spectrum that

Yucaipa had taken assignment of ComVest's first lien loans, as referenced in paragraphs 63 and

64 of Yucaipa's Counterclaim and Cross-Claim For Declaratory Judgment and Injunctive Relief in *Allied Systems Holding v. Yucaipa American Alliance Fund I. L.P. et al*, No. 12-50947 (CSS), D.I. 55.

4.      "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

5.      "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A. Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of Delaware on May 17, 2012 in case No. 12-11564.

6.      "Challenge" shall mean oppose, resist, hinder, dissent against, deny passage, counter, object to, disagree with, fight, repel, dispute, or protest.

7.      "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

8.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams,

telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda. The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

9.      "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

10.     "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

11.     "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum Relating to Allied or Yucaipa.

12.     "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as approved by the United States Bankruptcy Court for the District of Delaware on September 17, 2013.

13.     The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense. It shall not be limited in any way with respect to the process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "documents," "electronically stored information," or "tangible thing" as

4

contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether in writing, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered. Without limiting the generality of the foregoing, such Documents specifically include, without limitation, all originals, copies and drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, telephone business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any Person(s), written or audio telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter. Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

14. Any request for "All Documents" shall include All Documents in Your possession, custody or control (including, without limitation, documents which may be in the physical possession of Persons such as Your partners, agents, consultants, employees, advisors, attorneys, investigators and/or representatives) whether the documents were created or complied

by You or by any other Person(s) for any reason whatsoever, including but not limited to any documents obtained during litigation with any third parties.

15.     "Document Hold" shall mean any request or notice to preserve relevant information or Documents issued as a result of current or anticipated litigation.

16.     "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

17.     "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

18.     "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

19.     "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

20.     The words "Identify" or "Identity," when used with respect to a Person who is an individual, shall mean to state the following for each such Person:

    (a)     The Person's full name;

    (b)     The Person's present or last known business and residential addresses and telephone numbers;

    (c)     The full name and address of the Person's present or last known employer; and

(d)     The present or last known position of employment held by the Person.

21.     The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

(a)     The official name or designation for the Person, and its common or business name if different;

(b)     The form of organization of the Person;

(c)     The present or last known business address and telephone number of the Person; and

(d)     The nature of the Person's trade or business.

22.     The words "Identify" and "Identity," when used with respect to a Document, shall mean to state the following for each such Document:

(a)     The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;

(b)     The date or approximate date on which the Document was prepared;

(c)     The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;

(d)     The Identity of each Person to whom the Document or any copy of it was sent or addressed;

(e)     The Identity of each Person to whom the Document refers or relates in any way; and

(f)     The Identity of each Person having possession, custody or control of the Document or any copy of it.

23.    "Invalidate" shall mean revoke, repeal, rescind, strike down, abrogate, annul, void, vacate, declare null, overrule, recall, or waive.

24.    "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

25.    "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

26.    "New Issuance" shall mean Black Diamond and Spectrum's equity rights offering in the involuntary bankruptcy proceeding against Allied in the United State Bankruptcy Court for the District of Delaware, Case No. 12-11564, filed on March 4, 2013 that excluded Yucaipa from participation and reduced Yucaipa's pro rata allocation of the SBDRE membership interest from 56% to approximately 3% in favor of Black Diamond and Spectrum.

27.    "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

28.    "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting,

negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

29.    "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

30.    "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

31.    "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

32.    "Spectrum" shall mean Spectrum Investment Partners LP and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

33.    "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit Agreement.

34.    "You" and "Your" shall mean and refer to Black Diamond.

35.    "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American Alliance (Parallel) Fund II, LP.

36.     "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by

Yucaipa in February of 2009.

## **INSTRUCTIONS**

1.      Pursuant to Federal Rule of Civil Procedure 34(b), all Documents shall be

produced in the form in which they are maintained in the normal course of business or in the

form in which they were found in their normal filing places, including file folders or other

bindings in which such Documents were found.  Documents attached to each other should not be

separated.  If for any reason the container cannot be produced, produce copies of all labels or

other identifying markings.  Documents may also be produced by an electronic database

provided that it is clear and unambiguous as to the source, date, and any other applicable

metadata of each Document.

2.      In producing Documents, produce the original of each Document requested,

together with all non-identical copies and drafts of that Document.  (A non-identical copy is a

Document which was initially identical in all respects to any other Document, but which now is

no longer identical by reason of any notation or other modification of any kind including,

without limiting the generality of the foregoing, notes or modifications on the backs of pages or

in the margin thereof, and/or on any copies thereof.)

3.      If any requested Document cannot be produced in full, produce it to the extent

possible, indicating what portion or portions are being withheld and the reason it is being

withheld.

4.      The words "and" and "or" shall be construed conjunctively or disjunctively as

necessary to make the request inclusive rather than exclusive, and each shall include the other

wherever such dual construction will serve to bring within the scope of these requests any

Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.      If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.      The date range for production of Documents shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

7.      With respect to any Document responsive to these requests that You contend You are not required to produce because of an alleged privilege, attorney work product, or other protection from disclosure (which You are not presently prepared to waive), describe each such alleged privileged Document as follows:

    (a)      Give the date of such Document;

    (b)      Identify each Person who wrote, signed, initialed, dictated or otherwise participated in the creation of the Document;

    (c)      Identify each Person to whom the original or copy of the Document was sent;

    (d)      State any basis for claiming privilege, and provide sufficient information concerning the Document to explain the claim of privilege and to permit the adjudication of the propriety of that claim; and

    (e)      State the request to which such Document is responsive.

8.      The search and production of documents responsive to the Requests for Production shall be conducted pursuant to the Discovery Protocol, attached as Exhibit A.

### REQUEST FOR PRODUCTION NO. 1:

All Documents, other than those produced in response to previous requests, Concerning Your potential or actual acquisition of First Lien Debt, including without limitation, the identity of the seller, the price paid, the amount of debt acquired and the date of acquisition.

### REQUEST FOR PRODUCTION NO. 2:

All Documents, other than those produced in response to previous requests, Concerning Your potential or actual sale or disposal of First Lien Debt, including without limitation, the identity of the buyer, the price obtained, the amount of debt sold and the date of the sale.

### REQUEST FOR PRODUCTION NO. 3:

All Documents, other than those produced in response to previous requests, Concerning the Third Amendment, including without limitation, any document discussing whether you would vote in favor of the Third Amendment or not, or any document discussing whether you had any reservations or concerns about the Third Amendment if approved.

### REQUEST FOR PRODUCTION NO. 4:

All Documents, other than those produced in response to previous requests, Concerning any Lenders' vote on the Third Amendment.

### REQUEST FOR PRODUCTION NO. 5:

All Documents, other than those produced in response to previous requests, Concerning the effect of the Third Amendment on Yucaipa.

### REQUEST FOR PRODUCTION NO. 6:

All Documents, other than those produced in response to previous requests, Concerning any potential or actual acquisition by Black Diamond and/or Spectrum of the First Lien Debt held by AMMC.

## REQUEST FOR PRODUCTION NO. 7:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way relating to Yucaipa.

## REQUEST FOR PRODUCTION NO. 8:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way relating to Yucaipa's status as Requisite Lender.

## REQUEST FOR PRODUCTION NO. 9:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way Relating to any transfer of First Lien Debt between Yucaipa and ComVest.

## REQUEST FOR PRODUCTION NO. 10:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way Relating to the exercise of remedies under the First Lien Credit Agreement against Allied.

## REQUEST FOR PRODUCTION NO. 11:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way Concerning whether the Allied board of directors breached its fiduciary duties.

## REQUEST FOR PRODUCTION NO. 12:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way Concerning whether Yucaipa aided and abetted in any breach of fiduciary duties by the Allied board of directors.

## REQUEST FOR PRODUCTION NO. 13:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way Concerning a lock-up agreement or any similar arrangement relating to potential litigation against Yucaipa or the exercise of remedies under the First Lien Credit Agreement against Allied.

## REQUEST FOR PRODUCTION NO. 14:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender in any way relating to Yucaipa.

## REQUEST FOR PRODUCTION NO. 15:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender in any way relating to Yucaipa's status as Requisite Lender.

## REQUEST FOR PRODUCTION NO. 16:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender in any way Relating to the exercise of remedies under the First Lien Credit Agreement against Allied.

## REQUEST FOR PRODUCTION NO. 17:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender in any way Concerning whether the Allied board of directors breached its fiduciary duties.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender in any way Concerning whether Yucaipa aided and abetted in any breach of fiduciary duties by the Allied board of directors.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender in any way Concerning a lock-up agreement or any similar arrangement relating to potential litigation against Yucaipa or the exercise of remedies under the First Lien Credit Agreement against Allied.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any person (including without limitation, T. Michael Riggs and Kirk Ferguson) in any way Concerning potential litigation against Yucaipa or the equitable subordination of any First Lien Debt held by Yucaipa.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents, other than those produced in response to previous requests, Concerning Your or any Lender's attempt to Invalidate or otherwise Challenge the Fourth Amendment.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents, other than those produced in response to previous requests, Concerning Your or any Lender's attempt to prevent, Invalidate or otherwise Challenge the transfer of First Lien Debt from ComVest to Yucaipa.

## REQUEST FOR PRODUCTION NO. 23:

All Documents, other than those produced in response to previous requests, Concerning Your or any Lender's contemplation of requesting CIT not to settle any trade of First Lien Debt between Yucaipa and ComVest.

## REQUEST FOR PRODUCTION NO. 24:

All Documents, other than those produced in response to previous requests, Concerning the Fourth Amendment.

## REQUEST FOR PRODUCTION NO. 25:

All Documents, other than those produced in response to previous requests, evidencing any analysis, evaluation, summary, or notes Concerning the Yucaipa Tender Offer.

## REQUEST FOR PRODUCTION NO. 26:

All Documents, other than those produced in response to previous requests, evidencing any Communications Concerning Yucaipa's efforts to acquire First Lien Debt held by ComVest.

## REQUEST FOR PRODUCTION NO. 27:

All Documents, other than those produced in response to previous requests, evidencing any Communications Concerning ComVest's assignment to Yucaipa of its First Lien Credit Claims, including, but not limited to, any discussion or Communication of the August 22, 2009 E-mails.

## REQUEST FOR PRODUCTION NO. 28:

All Documents, other than those produced in response to previous requests, Concerning any meeting or discussion between representatives of Yucaipa and representatives of Black Diamond or Spectrum Relating to Allied, including, but not limited to, the August 18, 2009 meeting between Stephen H. Deckoff and Ronald Burkle.

## REQUEST FOR PRODUCTION NO. 29:

All Documents, other than those produced in response to previous requests, Concerning Your analysis or evaluation of any actual or potential deal with Jack Cooper involving Allied (including the acquisition of the First Lien Debt by Jack Cooper), between January 2011 and September 2012.

## REQUEST FOR PRODUCTION NO. 30:

All Documents, other than those produced in response to previous requests, Concerning any Lender's analysis or evaluation of any actual or potential deal with Jack Cooper involving Allied (including the acquisition of the First Lien Debt by Jack Cooper), between January 2011 and September 2012.

## REQUEST FOR PRODUCTION NO. 31:

All documents, other than those produced in response to previous requests, evidencing any Communications between You and any other Lender in any way Relating to any actual or potential deal with Jack Cooper.

## REQUEST FOR PRODUCTION NO. 32:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender (including but limited to Spectrum) in any way Relating to a strategy, plan, agreement, or pact with regard to Yucaipa.

## REQUEST FOR PRODUCTION NO. 33:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender (including but limited to Spectrum) in any way Relating to a strategy, plan, agreement, or pact with regard to Allied.

### REQUEST FOR PRODUCTION NO. 34:

All Documents, other than those produced in response to previous requests, Concerning the Cooperation Agreement.

### REQUEST FOR PRODUCTION NO. 35:

All Documents, other than those produced in response to previous requests, Concerning the equitable subordination of First Lien Debt held by Yucaipa.

### REQUEST FOR PRODUCTION NO. 36:

All Documents, other than those produced in response to previous requests, Concerning the equitable subordination of First Lien Debt held by any Lender other than Yucaipa.

### REQUEST FOR PRODUCTION NO. 37:

All Documents, other than those produced in response to previous requests, evidencing any attempt to estimate or value Your or any Lender's investment in Allied.

### REQUEST FOR PRODUCTION NO. 38:

All Documents, other than those produced in response to previous requests, Concerning any transfer of First Lien Debt between Spectrum and Black Diamond.

### REQUEST FOR PRODUCTION NO. 39:

All Documents, other than those produced in response to previous requests, Concerning any Lender's claim for reimbursement of legal expenses under the First Lien Credit Agreement.

### REQUEST FOR PRODUCTION NO. 40:

All Documents, other than those produced in response to previous requests, Concerning Yucaipa's claims for reimbursement of legal expenses under the First Lien Credit Agreement.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents, other than those produced in response to previous requests, Concerning the Credit Bid.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents, other than those produced in response to previous requests, Concerning the formation or purpose of SBDRE LLC.

**REQUEST FOR PRODUCTION NO. 43:**

All Documents, other than those produced in response to previous requests, Concerning the voting rights, equity, and corporate governance of SBDRE LLC.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents, other than those produced in response to previous requests, Concerning the SBDRE Memorandum.

**REQUEST FOR PRODUCTION NO. 45:**

All Documents, other than those produced in response to previous requests, Concerning any potential or actual transaction structure proposed by Black Diamond and Spectrum for Allied, including without limitation any credit bid for all or substantially all the assets of Allied.

**REQUEST FOR PRODUCTION NO. 46:**

All Documents, other than those produced in response to previous requests, Concerning the New Issuance.

**REQUEST FOR PRODUCTION NO. 47:**

All Documents, other than those produced in response to previous requests, evidencing any Communications among representatives or employees of Spectrum or between Spectrum and

Black Diamond in any way Relating to a bankruptcy filing for Allied, whether involuntary or voluntary.

## REQUEST FOR PRODUCTION NO. 48:

All Documents, other than those produced in response to previous requests, Relating to a bankruptcy filing (including planning therefor) for Allied, whether involuntary or voluntary.

## REQUEST FOR PRODUCTION NO. 49:

All Documents, other than those produced in response to previous requests, Concerning the Black Diamond and Spectrum Affidavits.

## REQUEST FOR PRODUCTION NO. 50:

All Document Holds that You have received since 2009 in connection with any litigation related to Allied.

## REQUEST FOR PRODUCTION NO. 51:

Documents evidencing any changes to Your document and data retention policies since January 1, 2011.

## REQUEST FOR PRODUCTION NO. 52:

All Documents, other than those produced in response to previous requests, Relating to compensating Your officers, directors, employees, consultants or representatives based on equitably subordinating or disallowing any First Lien Debt held by Yucaipa.

## REQUEST FOR PRODUCTION NO. 53:

All Documents, other than those produced in response to previous requests, Relating to how the Lenders would share in any recovery with respect to the First Lien Debt.

## REQUEST FOR PRODUCTION NO. 54:

All Documents, other than those produced in response to previous requests, Relating to how the Lenders would share in any recovery with respect to the First Lien Debt if the First Lien Debt held by Yucaipa were equitably subordinated or otherwise disallowed.

## REQUEST FOR PRODUCTION NO. 55:

All Documents, other than those produced in response to previous requests, Relating to the equitable subordination or disallowance of any First Lien Debt.

## REQUEST FOR PRODUCTION NO. 56:

All Documents, other than those produced in response to previous requests, Relating to any Lender's investment in, or cost basis for, the First Lien Debt.

## REQUEST FOR PRODUCTION NO. 57:

All Documents, other than those produced in response to previous requests, Relating to a borrower or equity holder also being a Lender or Requisite Lender.

*[Balance of this page intentionally left blank.]*

Dated: May 20, 2015
          Wilmington, Delaware

YOUNG, CONAWAY, STARGATT &
    TAYLOR, LLP


*/s/ Michael R. Nestor*
John T. Dorsey, Esq. (No. 2988)
Michael R. Nestor (No. 3526)
Sharon M. Zieg, Esq. (No. 4196)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER LLP
Robert A. Klyman
Maurice M. Suh
Kahn Scolnick
333 South Grand Avenue
Los Angeles, CA  90071
Telephone: (213) 229-7000
RKlyman@gibsondunn.com
MSuh@gibsondunn.com
KScolnick@gibsondunn.com

*Attorneys for Defendants*,
Yucaipa American Alliance Fund I, L.P., Yucaipa
American Alliance (Parallel) Fund I, L.P.,Yucaipa
American Alliance Fund II, L.P., Yucaipa American
Alliance (Parallel) Fund II, Ronald Burkle, Jos
Opdeweegh, Derex Walker, Jeff Pelletier, Ira
Tochner, and Joseph Tomczak

<u>**DISCOVERY PROTOCOL**</u>

**I.**    <u>**SEARCH PARAMETERS**</u>

1)  **Documents**.  The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense.  It shall not be limited in any way with respect to the process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "Documents," "electronically stored information," or "tangible thing" as contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether written, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the foregoing, such Documents specifically include, without limitation, all originals, copies and drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, telephone business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations, written or audio telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

2)  **Possession, custody or control**.  The responding party shall be required to produce those Documents responsive to the Document requests that are within the responding party's possession, custody or control (including, without limitation, Documents which may be in the physical possession of the responding party's partners, agents, consultants, employees, advisors, attorneys, investigators and/or representatives).  This includes Documents created or compiled by the responding party or by any other Person for any reason whatsoever, including but not limited to any Documents obtained during litigation with any third parties and Documents later obtained by the responding party.

3)  **Date Range**.  Unless a specific request indicates a more limited time range, the responding party will search all Documents authored, drafted, modified, or otherwise dated from January 1, 2007 to the present.

4)  **Search Terms**.  The responding party needs to conduct a comprehensive and all-inclusive search for responsive documents.  At a minimum, the responding party will

utilize the search terms outlined below when running searches for responsive ESI.  To the extent that any search terms result in a very large and extraordinarily burdensome number of "mishits" for non-responsive Documents, the responding party will notify the propounding party and suggest a modification to the search term(s) at issue.  The propounding party reserves the right to submit additional terms for the propounding party to search for good cause (e.g., a new term becomes relevant or a new abbreviation is discovered).

- (1st or first) /5 (credit /3 agreement)

- (2nd or second) /5 (credit /3 agreement)

- (1st or first) /5 (lien or lein) /5 (indebtedness or lender* or holdings or debt or loan or loans or facility)[1]

- (third or 3rd) /5 amend*

- "Amendment No. 3"

- (fourth or 4th) /5 amend*

- "Amendment No. 4"

- "requisite lender"

- "requisite lenders"

- "required lender"

- "required lenders"

- covenant* /15 default or comply or complies or complied or complying or compliance

- Allied /50 (cash /15 (balance or excess*))

- Allied /50 (financial /5 statement*)

- "tender offer"

- (voting or vote) /5 (right or rights)

- loan /5 purchase /5 agreement

---

[1]  An asterisk indicates a root expander.

- appointment /5 agreement

- (strateg* or strategic*) /5 (buy* or alternative*)

- contribut* /5 capital

- credit /5 bid

- debtor /5 possession

- DIP /5 financ*

- Allied /50 (bankrupt* or restructur* or recapitaliz* or "chapter 11" or "ch. 11" or reorganiz* or "low value" or sale or sell* or default or debt or merge* or dispos*)

- tender /3 offer

- "Cooperation Agreement"

- (Allied or Yucaipa) /30 (plan* or cooperat* or strategy* or pact or agreement* or coordinat*)

- (Allied or Jack Cooper or JCT) /10 ("term sheet" or agreement* or deal* or sale or purchase)

- affidavit* /30 (Allied or Yucaipa)

- equitable subordinat*

- subordinat* /50 (Allied or Yucaipa or debt*)

- subordinat* /50 ("voluntary" or "involuntary" or "bankrupt*")

- reimburse* /20 ("first lien credit" or Yucaipa or Allied or SBDRE)

- (equity /5 offer*) /20 (Yucaipa or Allied)

- "new issuance" /20 (Yucaipa or Allied)

- SBDRE or "SBDRE LLC" or "SBDRE LLC APA"

- Yucaipa[2]

---

[2] The responding party will not be required to search for their own name(s). Accordingly, this term will not be searched by Yucaipa.

- "Black Diamond"

- BDCM

- Spectrum

- Allied

- ComVest

- AMMC

- CIT

- JCT

- Jack /3 Cooper

- (Michael or Mike) /3 Riggs

- *@yucaipaco.com

- *@alliedholdings.com

- *@comvest.com

- *@cit.com

- *@alliedautomotive.com

- *@spectrumgp.com

- *@bdcm.com

- Derex /3 Walker

- (Ron or Ronald) /3 Burkle

- Mark /3 Gendregske

- Jos /3 Opdeweegh

- (Jeff or Jeffrey) /3 Pelletier

- Ira /3 Tochner

- (Joseph or Joe) /3 Tomczak

- Brian /3 Cullen

- Neal /3 Legan

- (Mike or Michael) /3 Falk

- John /3 Blount

- Celio /3 Rodriguez

- Theo /3 Ciupitu

- (Mike or Michael) /3 Riggs

- (Tom or Thomas) / 3 Cooper

- (Tom or Thomas) /3 King

- Jason /3 Provost

- (Robert or Bob) /3 Priddy

- (Robert or Bob) /3 Bermingham

- Stephanie /3 Bond

- Scott /3 Macaulay

- (Vince or Vincent) /3 Belcastro

- (Michael or Mike) /3 Aliberto

- Solmaria /3 Velez

- Brad / Schaefer

- Ehrlich

- Deckoff

- Buller

- Meier

- Schaffer

## II.    **PRODUCTION**

1) **Format of Production**.  Documents will be produced according to the protocols set forth in sections II and III.

   a) Pursuant to Federal Rule of Civil Procedure 34(b), all Documents shall be produced in the form in which they are maintained in the normal course of business or in the form in which they were found in their normal filing places, including file folders or other bindings in which such Documents were found. Documents attached to each other should not be separated.  If for any reason the container cannot be produced, the responding party will produce copies of all labels or other identifying markings.  Documents may also be produced by an electronic database provided that it is clear and unambiguous as to the source, date, and any other applicable metadata of each Document.

   b) The responding party will produce the original of each Document requested, together with all non-identical copies and drafts of that Document.  (A non-identical copy is a Document which was initially identical in all respects to any other Document, but which now is no longer identical by reason of any notation or other modification of any kind including, without limiting the generality of the foregoing, notes or modifications on the backs of pages or in the margin thereof, and/or on any copies thereof.)

   c) If any requested Document cannot be produced in full, the responding party will produce it to the extent possible and will indicate what portion or portions are being withheld and the reason it is being withheld.

2) **Bates Numbering**.  The producing party will brand all Documents in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying content.

3) **Confidentiality Endorsements**.  The producing party will brand any confidentiality or similar endorsements in the lower left-hand corner of the Documents consistent with the Agreed Protective Order entered in this case.  Those endorsements must be in a consistent font type and size, and must not obscure any part of the underlying content or Bates number.

4) **TIFFs**.  Hard copy paper documents shall be scanned as single page, Group IV compression TIFF images using a print setting of at least 300 dots per inch (DPI).  Each image shall have a unique file name, which is the Bates number of the document. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape).

5) **Bibliographic Fields**.  The following information shall be produced for hard copy documents and provided in the data load file at the same time that the TIFF images and the Optical Character Recognition (OCR)-acquired text files are produced:
   - BEGBATES

- ENDBATES
- BEGATTACH
- ENDATTACH
- PGCOUNT
- Volume
- Custodian

6) **OCR Acquired Text Files**.  When subjecting physical documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed.  Any settings such as "auto-skewing," "auto-rotation" and the like should be turned on when documents are run through the process.

7) **Database Load Files / Cross-Reference Files**.  Documents shall be provided with (a) a delimited metadata file (.dat or .txt) and (b) an image load file (.opt), as detailed in Section III.1.

8) **Unitizing of Documents**.  In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized).  In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields.  The parties will make their best efforts to unitize documents correctly.

9) **Privilege Log**.  With respect to any Document responsive to propounded Document requests that the responding party contends it is not required to produce because of an alleged privilege, attorney work product, or other protection from disclosure (which the responding party is not presently prepared to waive), the responding party will describe each such alleged privileged Document as follows:
   - Give the date of such Document;
   - Identify each Person[3] who wrote, signed, initialed, dictated or otherwise participated in the creation of the Document;
   - Identify each Person to whom the original or copy of the Document was sent; and
   - State any basis for claiming privilege, and provide sufficient information concerning the Document to explain the claim of privilege and to permit the adjudication of the propriety of that claim.

## III.  **ESI PRODUCTION PROTOCOL**

1) **Load Files**.  Except for ESI described in sections 2(b) and (c) below, ESI will be produced in electronic format, with files suitable for loading into a litigation support

---

[3]  Person shall mean a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

database.  The load files will define Document breaks, attachments and other information identified below.

a)  **Delimited Text File**: A delimited text file (DAT File) containing the fields listed in 2(a)(v) should be provided.  The delimiters for the file should be Concordance defaults:
Comma - ASCII character 20 ( )
Quote - ASCII character 254 (þ)
Newline - ASCII character 174 (®)

b)  **Image Cross-Reference File (Opticon Load File)**: The Opticon cross-reference file is a comma delimited file consisting of six fields per line.  There must be a line in the cross-reference file for every image in the database.  The format for the file is as follows:
ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount

- ImageID: The unique designation that Concordance and Opticon use to identify an image.  This should be the Bates number of the Document.
- VolumeLabel: The name of the volume.
- ImageFilePath: The full path to the image file.
- DocumentBreak: If this field contains the letter "Y," then this is the first page of a Document.  If this field is blank, then this page is not the first page of a Document.
- FolderBreak: Leave empty.
- BoxBreak: Leave empty.
- PageCount: Number of pages in the Document.

Sample Data
MT 00000001, BOX100,E:\100\MT00000001.TIF,Y,,5
MT 00000002, BOX100,E:\100\MT00000002.TIF,,,,
MT 00000003, BOX100,E:\100\MT00000003.TIF,,,,
MT 00000004, BOX100,E:\100\MT00000004.TIF,,,,
MT 00000005, BOX100,E:\100\MT00000005.TIF,,,,
MT 00000006, BOX100,E:\100\MT00000006.TIF,Y,,1

2)  **Categories of Production of ESI**.  ESI will be produced as follows, depending on its classification.

a)  **Production of ESI as TIFF Images With Metadata and Extracted Text**.  Documents created in standard office automation file formats (including but not limited to Microsoft Word or WordPerfect Documents) and ESI that can practicably be converted into TIFF format will be produced as single-page TIFF Group IV images, with any available fielded metadata and text searchable information extracted from the native Documents.

(i) **Bates Numbering**.  The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent

font type and size.  The Bates number must not obscure any part of the underlying image.

(ii) **File Names**.  Image file names will be identical to the corresponding Bates-numbered images with a ".tif" file extension.

(iii) **Confidentiality Endorsements**.  The producing party will brand any confidentiality or similar endorsements in the lower left-hand corner of the TIFF image consistent with the Agreed Protective Order to be entered in this case.  Those endorsements must be in a consistent font type and size, and must not obscure any part of the underlying image or Bates number.

(iv) **Production of Extracted Full Text**.  The producing party will provide extracted full text (i.e., text extracted from ESI) for all material originating as ESI in a text file corresponding to a single Document.  The full text file name will be composed of the beginning Bates number of the associated Document, with a ".txt" file extension.  When a party is unable to produce extracted full text, OCR should be provided.  If extracted text or OCR cannot be provided, then an explanation of that inability will be provided with its Document production.

(v) **Production of Metadata**.  The producing party will provide the following metadata, as applicable, for all ESI:
- BEGBATES
- ENDBATES
- BEGATTACH
- ENDATTACH
- PGCOUNT
- DATECREATED
- TIMECREATED
- DATELASTACC
- TIMELASTACC
- DATELASTMOD
- TIMELASTMOD
- DATESENT
- TIMESENT
- DATERECEIVED
- TIMERECEIVED
- Author
- From
- To
- CC
- BCC
- Subject
- Filename
- Filepath

- FileExtension
- NativeFile (Path to Native File if produced for the record)
- TextPath (Path to Extracted text file or OCR)
- Custodian
- MailStore
- DocType (e.g., email, attachment, e-doc or paper)
- MD5Hash

Family relationships among e-mail and attachments will be maintained by ensuring that attachments immediately follow their parent e-mail, and setting the "BEGATTACH" and "ENDATTACH" fields appropriately.

(vi) **Explanation of Inability to Produce Metadata**.  When a party is unable to produce metadata for a particular field, it will provide an explanation of that inability with its Document production.

(vii) **Redaction**.  If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced.  However, to the extent that the text is searchable in the native format, the producing party will still provide searchable text for those portions of the Document that have not been redacted.

b) **Production of Native Format Documents That Are Impractical to Convert to TIFF**.  ESI that is not practical to convert to TIFF may be produced using one of the three following methods, which method will be subject to meet and confer between the parties:

(i) **Spreadsheets that are Impractical to Convert to TIFF**.  ESI that is not practical to convert to TIFF (for example, spreadsheets) may be produced in electronic format suitable for loading to a litigation support database with links to the native files.

(A) **Identification**.  ESI produced in native file format will be assigned a unique Bates number within the litigation database.

(B) **File Names**.  File names will be identical to the Bates number, followed by the file extension, e.g., B00000001.xls.

(ii) **Other ESI That is Impractical to Produce in Traditional Formats**.  The parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format Documents or other traditional formats.  The parties will meet and confer to obtain a resolution.

(iii) **Encrypted or Password-Protected ESI**.  For any ESI that exists in encrypted format or is password-protected, the producing party will provide the propounding party a means to gain access to those native files (for example, by supplying passwords).

c) **Production of Pictures/Images**.  Any photographic images created and/or maintained in electronic format will be produced in that format.

EXHIBIT 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

## YUCAIPA'S FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF AND/OR COUNTER-CLAIM DEFENDANT SPECTRUM INVESTMENT PARTNERS L.P.

Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund

I, L.P. (collectively, "Yucaipa"), by and through their undersigned counsel, hereby request,

pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rules 7026 and 7034 of

the Federal Rules of Bankruptcy Procedure, that on or before thirty (30) days after the service

hereof, Spectrum Investment Partners LP ("Spectrum") submit a written response subscribed

under oath that identifies with particularity each of the documents described below.  Yucaipa

further requests that this written response state that each identified item in each category will be

produced for inspection and, to the extent desired, copying by Yucaipa no later than 30 days after

service of these requests.  This request may be satisfied by delivering or mailing true and correct

copies of said documents to the offices of Gibson, Dunn & Crutcher LLP, 333 South Grand

Avenue, Los Angeles, California 90071-3197, Attention: Kahn Scolnick.

## DEFINITIONS

1.      "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group,

Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis

Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services,

Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems,

LLC, Logistic Support LLC, and Terminal Services LLC.

2.      "AMMC" shall mean AMMC VII Limited and all past and present Persons,

entities, attorneys, accountants, employees, agents, representatives, corporations, partners,

predecessor or successor corporations, partnerships or anyone else acting or purporting to act on

behalf of AMMC and/or any of its affiliates, divisions, related parties, predecessors in interest,

successors in interest, or assigns.

3.      "August 22, 2009 E-mails" shall mean the email correspondence sent from Mr.

Derex Walker to Mr. Ehrlich and Mr. Schaffer informing both Black Diamond and Spectrum that

Yucaipa had taken assignment of ComVest's first lien loans, as referenced in paragraphs 63 and

64 of Yucaipa's Counterclaim and Cross-Claim For Declaratory Judgment and Injunctive Relief

in *Allied Systems Holding v. Yucaipa American Alliance Fund I. L.P. et al*, No. 12-50947 (CSS),

D.I. 55.

4.     "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black

Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants,

directors, officers, employees, partners, members, agents, representatives, parent entities

corporations, predecessor or successor corporations, partnerships or anyone else acting or

purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related

parties, predecessors in interest, successors in interest, or assigns.

5.     "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A.

Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of

Delaware on May 17, 2012 in case No. 12-11564.

6.     "Challenge" shall mean oppose, resist, hinder, dissent against, deny passage,

counter, object to, disagree with, fight, repel, dispute, or protest.

7.     "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present

Persons, entities, attorneys, accountants, directors, officers, employees, partners, members,

agents, representatives, parent entities, corporations, predecessor or successor corporations,

partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as

Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates,

divisions, related parties, predecessors in interest, successors in interest, or assigns.

8.     "Communication(s)" shall mean the transmittal of information (in the form of

facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to

correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams,

telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The

transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

9.  "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

10.  "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

11.  "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum Relating to Allied or Yucaipa.

12.  "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as approved by the United States Bankruptcy Court for the District of Delaware on September 17, 2013.

13.  The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense.  It shall not be limited in any way with respect to the process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "documents," "electronically stored information," or "tangible thing" as contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings,"

4

"recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether in writing, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the foregoing, such Documents specifically include, without limitation, all originals, copies and drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, telephone business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any Person(s), written or audio telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

14.    Any request for "All Documents" shall include All Documents in Your possession, custody or control (including, without limitation, documents which may be in the physical possession of Persons such as Your partners, agents, consultants, employees, advisors, attorneys, investigators and/or representatives) whether the documents were created or complied

by You or by any other Person(s) for any reason whatsoever, including but not limited to any documents obtained during litigation with any third parties.

15.    "Document Hold" shall mean any request or notice to preserve relevant information or Documents issued as a result of current or anticipated litigation.

16.    "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

17.    "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

18.    "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

19.    "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

20.    The words "Identify" or "Identity," when used with respect to a Person who is an individual, shall mean to state the following for each such Person:

    (a)    The Person's full name;

    (b)    The Person's present or last known business and residential addresses and telephone numbers;

    (c)    The full name and address of the Person's present or last known employer; and

(d)    The present or last known position of employment held by the Person.

21.    The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

(a)    The official name or designation for the Person, and its common or business name if different;

(b)    The form of organization of the Person;

(c)    The present or last known business address and telephone number of the Person; and

(d)    The nature of the Person's trade or business.

22.    The words "Identify" and "Identity," when used with respect to a Document, shall mean to state the following for each such Document:

(a)    The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;

(b)    The date or approximate date on which the Document was prepared;

(c)    The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;

(d)    The Identity of each Person to whom the Document or any copy of it was sent or addressed;

(e)    The Identity of each Person to whom the Document refers or relates in any way; and

(f)    The Identity of each Person having possession, custody or control of the Document or any copy of it.

23.     "Invalidate" shall mean revoke, repeal, rescind, strike down, abrogate, annul, void, vacate, declare null, overrule, recall, or waive.

24.     "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

25.     "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

26.     "New Issuance" shall mean Black Diamond and Spectrum's equity rights offering in the involuntary bankruptcy proceeding against Allied in the United State Bankruptcy Court for the District of Delaware, Case No. 12-11564, filed on March 4, 2013 that excluded Yucaipa from participation and reduced Yucaipa's pro rata allocation of the SBDRE membership interest from 56% to approximately 3% in favor of Black Diamond and Spectrum.

27.     "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

28.     "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting,

negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

29.    "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

30.    "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

31.    "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

32.    "Spectrum" shall mean Spectrum Investment Partners LP and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

33.    "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit Agreement.

34.    "You" and "Your" shall mean and refer to Spectrum.

35.    "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American Alliance (Parallel) Fund II, LP.

36.    "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by Yucaipa in February of 2009.

## INSTRUCTIONS

1.    Pursuant to Federal Rule of Civil Procedure 34(b), all Documents shall be produced in the form in which they are maintained in the normal course of business or in the form in which they were found in their normal filing places, including file folders or other bindings in which such Documents were found.  Documents attached to each other should not be separated.  If for any reason the container cannot be produced, produce copies of all labels or other identifying markings.  Documents may also be produced by an electronic database provided that it is clear and unambiguous as to the source, date, and any other applicable metadata of each Document.

2.    In producing Documents, produce the original of each Document requested, together with all non-identical copies and drafts of that Document.  (A non-identical copy is a Document which was initially identical in all respects to any other Document, but which now is no longer identical by reason of any notation or other modification of any kind including, without limiting the generality of the foregoing, notes or modifications on the backs of pages or in the margin thereof, and/or on any copies thereof.)

3.    If any requested Document cannot be produced in full, produce it to the extent possible, indicating what portion or portions are being withheld and the reason it is being withheld.

4.    The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any

Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.      If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.      The date range for production of Documents shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

7.      With respect to any Document responsive to these requests that You contend You are not required to produce because of an alleged privilege, attorney work product, or other protection from disclosure (which You are not presently prepared to waive), describe each such alleged privileged Document as follows:

      (a)      Give the date of such Document;

      (b)      Identify each Person who wrote, signed, initialed, dictated or otherwise participated in the creation of the Document;

      (c)      Identify each Person to whom the original or copy of the Document was sent;

      (d)      State any basis for claiming privilege, and provide sufficient information concerning the Document to explain the claim of privilege and to permit the adjudication of the propriety of that claim; and

      (e)      State the request to which such Document is responsive.

8.      The search and production of documents responsive to the Requests for Production shall be conducted pursuant to the Discovery Protocol, attached as Exhibit A.

**REQUEST FOR PRODUCTION NO. 1**:

All Documents, other than those produced in response to previous requests, Concerning Your potential or actual acquisition of First Lien Debt, including without limitation, the identity of the seller, the price paid, the amount of debt acquired and the date of acquisition.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents, other than those produced in response to previous requests, Concerning Your potential or actual sale or disposal of First Lien Debt, including without limitation, the identity of the buyer, the price obtained, the amount of debt sold and the date of the sale.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents, other than those produced in response to previous requests, Concerning the Third Amendment, including without limitation, any document discussing whether you would vote in favor of the Third Amendment or not, or any document discussing whether you had any reservations or concerns about the Third Amendment if approved.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents, other than those produced in response to previous requests, Concerning any Lenders' vote on the Third Amendment.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents, other than those produced in response to previous requests, Concerning the effect of the Third Amendment on Yucaipa.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents, other than those produced in response to previous requests, Concerning any potential or actual acquisition by Black Diamond and/or Spectrum of the First Lien Debt held by AMMC.

## REQUEST FOR PRODUCTION NO. 7:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way relating to Yucaipa.

## REQUEST FOR PRODUCTION NO. 8:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way relating to Yucaipa's status as Requisite Lender.

## REQUEST FOR PRODUCTION NO. 9:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way Relating to any transfer of First Lien Debt between Yucaipa and ComVest.

## REQUEST FOR PRODUCTION NO. 10:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way Relating to the exercise of remedies under the First Lien Credit Agreement against Allied.

## REQUEST FOR PRODUCTION NO. 11:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way Concerning whether the Allied board of directors breached its fiduciary duties.

## REQUEST FOR PRODUCTION NO. 12:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way Concerning whether Yucaipa aided and abetted in any breach of fiduciary duties by the Allied board of directors.

## REQUEST FOR PRODUCTION NO. 13:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and CIT in any way Concerning a lock-up agreement or any similar arrangement relating to potential litigation against Yucaipa or the exercise of remedies under the First Lien Credit Agreement against Allied.

## REQUEST FOR PRODUCTION NO. 14:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender in any way relating to Yucaipa.

## REQUEST FOR PRODUCTION NO. 15:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender in any way relating to Yucaipa's status as Requisite Lender.

## REQUEST FOR PRODUCTION NO. 16:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender in any way Relating to the exercise of remedies under the First Lien Credit Agreement against Allied.

## REQUEST FOR PRODUCTION NO. 17:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender in any way Concerning whether the Allied board of directors breached its fiduciary duties.

## REQUEST FOR PRODUCTION NO. 18:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender in any way Concerning whether Yucaipa aided and abetted in any breach of fiduciary duties by the Allied board of directors.

## REQUEST FOR PRODUCTION NO. 19:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender in any way Concerning a lock-up agreement or any similar arrangement relating to potential litigation against Yucaipa or the exercise of remedies under the First Lien Credit Agreement against Allied.

## REQUEST FOR PRODUCTION NO. 20:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any person (including without limitation, T. Michael Riggs and Kirk Ferguson) in any way Concerning potential litigation against Yucaipa or the equitable subordination of any First Lien Debt held by Yucaipa.

## REQUEST FOR PRODUCTION NO. 21:

All Documents, other than those produced in response to previous requests, Concerning Your or any Lender's attempt to Invalidate or otherwise Challenge the Fourth Amendment.

## REQUEST FOR PRODUCTION NO. 22:

All Documents, other than those produced in response to previous requests, Concerning Your or any Lender's attempt to prevent, Invalidate or otherwise Challenge the transfer of First Lien Debt from ComVest to Yucaipa.

## REQUEST FOR PRODUCTION NO. 23:

All Documents, other than those produced in response to previous requests, Concerning Your or any Lender's contemplation of requesting CIT not to settle any trade of First Lien Debt between Yucaipa and ComVest.

## REQUEST FOR PRODUCTION NO. 24:

All Documents, other than those produced in response to previous requests, Concerning the Fourth Amendment.

## REQUEST FOR PRODUCTION NO. 25:

All Documents, other than those produced in response to previous requests, evidencing any analysis, evaluation, summary, or notes Concerning the Yucaipa Tender Offer.

## REQUEST FOR PRODUCTION NO. 26:

All Documents, other than those produced in response to previous requests, evidencing any Communications Concerning Yucaipa's efforts to acquire First Lien Debt held by ComVest.

## REQUEST FOR PRODUCTION NO. 27:

All Documents, other than those produced in response to previous requests, evidencing any Communications Concerning ComVest's assignment to Yucaipa of its First Lien Credit Claims, including, but not limited to, any discussion or Communication of the August 22, 2009 E-mails.

## REQUEST FOR PRODUCTION NO. 28:

All Documents, other than those produced in response to previous requests, Concerning any meeting or discussion between representatives of Yucaipa and representatives of Black Diamond or Spectrum Relating to Allied, including, but not limited to, the August 18, 2009 meeting between Stephen H. Deckoff and Ronald Burkle.

## REQUEST FOR PRODUCTION NO. 29:

All Documents, other than those produced in response to previous requests, Concerning Your analysis or evaluation of any actual or potential deal with Jack Cooper involving Allied (including the acquisition of the First Lien Debt by Jack Cooper), between January 2011 and September 2012.

## REQUEST FOR PRODUCTION NO. 30:

All Documents, other than those produced in response to previous requests, Concerning any Lender's analysis or evaluation of any actual or potential deal with Jack Cooper involving Allied (including the acquisition of the First Lien Debt by Jack Cooper), between January 2011 and September 2012.

## REQUEST FOR PRODUCTION NO. 31:

All documents, other than those produced in response to previous requests, evidencing any Communications between You and any other Lender in any way Relating to any actual or potential deal with Jack Cooper.

## REQUEST FOR PRODUCTION NO. 32:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender (including but limited to Black Diamond) in any way Relating to a strategy, plan, agreement, or pact with regard to Yucaipa.

## REQUEST FOR PRODUCTION NO. 33:

All Documents, other than those produced in response to previous requests, evidencing any Communications between You and any Lender (including but limited to Black Diamond) in any way Relating to a strategy, plan, agreement, or pact with regard to Allied.

## REQUEST FOR PRODUCTION NO. 34:

All Documents, other than those produced in response to previous requests, Concerning the Cooperation Agreement.

## REQUEST FOR PRODUCTION NO. 35:

All Documents, other than those produced in response to previous requests, Concerning the equitable subordination of First Lien Debt held by Yucaipa.

## REQUEST FOR PRODUCTION NO. 36:

All Documents, other than those produced in response to previous requests, Concerning the equitable subordination of First Lien Debt held by any Lender other than Yucaipa.

## REQUEST FOR PRODUCTION NO. 37:

All Documents, other than those produced in response to previous requests, evidencing any attempt to estimate or value Your or any Lender's investment in Allied.

## REQUEST FOR PRODUCTION NO. 38:

All Documents, other than those produced in response to previous requests, Concerning any transfer of First Lien Debt between Spectrum and Black Diamond.

## REQUEST FOR PRODUCTION NO. 39:

All Documents, other than those produced in response to previous requests, Concerning any Lender's claim for reimbursement of legal expenses under the First Lien Credit Agreement.

## REQUEST FOR PRODUCTION NO. 40:

All Documents, other than those produced in response to previous requests, Concerning Yucaipa's claims for reimbursement of legal expenses under the First Lien Credit Agreement.

## REQUEST FOR PRODUCTION NO. 41:

All Documents, other than those produced in response to previous requests, Concerning the Credit Bid.

## REQUEST FOR PRODUCTION NO. 42:

All Documents, other than those produced in response to previous requests, Concerning the formation or purpose of SBDRE LLC.

## REQUEST FOR PRODUCTION NO. 43:

All Documents, other than those produced in response to previous requests, Concerning the voting rights, equity, and corporate governance of SBDRE LLC.

## REQUEST FOR PRODUCTION NO. 44:

All Documents, other than those produced in response to previous requests, Concerning the SBDRE Memorandum.

## REQUEST FOR PRODUCTION NO. 45:

All Documents, other than those produced in response to previous requests, Concerning any potential or actual transaction structure proposed by Black Diamond and Spectrum for Allied, including without limitation any credit bid for all or substantially all the assets of Allied.

## REQUEST FOR PRODUCTION NO. 46:

All Documents, other than those produced in response to previous requests, Concerning the New Issuance.

## REQUEST FOR PRODUCTION NO. 47:

All Documents, other than those produced in response to previous requests, evidencing any Communications among representatives or employees of Spectrum or between Spectrum and

Black Diamond in any way Relating to a bankruptcy filing for Allied, whether involuntary or voluntary.

## REQUEST FOR PRODUCTION NO. 48:

All Documents, other than those produced in response to previous requests, Relating to a bankruptcy filing (including planning therefor) for Allied, whether involuntary or voluntary.

## REQUEST FOR PRODUCTION NO. 49:

All Documents, other than those produced in response to previous requests, Concerning the Black Diamond and Spectrum Affidavits.

## REQUEST FOR PRODUCTION NO. 50:

All Document Holds that You have received since 2009 in connection with any litigation related to Allied.

## REQUEST FOR PRODUCTION NO. 51:

Documents evidencing any changes to Your document and data retention policies since January 1, 2011.

## REQUEST FOR PRODUCTION NO. 52:

All Documents, other than those produced in response to previous requests, Relating to compensating Your officers, directors, employees, consultants or representatives based on equitably subordinating or disallowing any First Lien Debt held by Yucaipa.

## REQUEST FOR PRODUCTION NO. 53:

All Documents, other than those produced in response to previous requests, Relating to how the Lenders would share in any recovery with respect to the First Lien Debt.

### REQUEST FOR PRODUCTION NO. 54:

All Documents, other than those produced in response to previous requests, Relating to how the Lenders would share in any recovery with respect to the First Lien Debt if the First Lien Debt held by Yucaipa were equitably subordinated or otherwise disallowed.

### REQUEST FOR PRODUCTION NO. 55:

All Documents, other than those produced in response to previous requests, Relating to the equitable subordination or disallowance of any First Lien Debt.

### REQUEST FOR PRODUCTION NO. 56:

All Documents, other than those produced in response to previous requests, Relating to any Lender's investment in, or cost basis for, the First Lien Debt.

### REQUEST FOR PRODUCTION NO. 57:

All Documents, other than those produced in response to previous requests, Relating to a borrower or equity holder also being a Lender or Requisite Lender.

*[Balance of this page intentionally left blank.]*

Dated: May 20, 2015
     Wilmington, Delaware

YOUNG, CONAWAY, STARGATT &
    TAYLOR, LLP


*/s/ Michael R. Nestor*
John T. Dorsey, Esq. (No. 2988)
Michael R. Nestor (No. 3526)
Sharon M. Zieg, Esq. (No. 4196)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER LLP
Robert A. Klyman
Maurice M. Suh
Kahn Scolnick
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
RKlyman@gibsondunn.com
MSuh@gibsondunn.com
KScolnick@gibsondunn.com

*Attorneys for Defendants*,
Yucaipa American Alliance Fund I, L.P., Yucaipa
American Alliance (Parallel) Fund I, L.P.,Yucaipa
American Alliance Fund II, L.P., Yucaipa American
Alliance (Parallel) Fund II, Ronald Burkle, Jos
Opdeweegh, Derex Walker, Jeff Pelletier, Ira
Tochner, and Joseph Tomczak

## DISCOVERY PROTOCOL

### I.   SEARCH PARAMETERS

1) **Documents**.  The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense.  It shall not be limited in any way with respect to the process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "Documents," "electronically stored information," or "tangible thing" as contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether written, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the foregoing, such Documents specifically include, without limitation, all originals, copies and drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, telephone business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations, written or audio telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

2) **Possession, custody or control**.  The responding party shall be required to produce those Documents responsive to the Document requests that are within the responding party's possession, custody or control (including, without limitation, Documents which may be in the physical possession of the responding party's partners, agents, consultants, employees, advisors, attorneys, investigators and/or representatives).  This includes Documents created or compiled by the responding party or by any other Person for any reason whatsoever, including but not limited to any Documents obtained during litigation with any third parties and Documents later obtained by the responding party.

3) **Date Range**.  Unless a specific request indicates a more limited time range, the responding party will search all Documents authored, drafted, modified, or otherwise dated from January 1, 2007 to the present.

4) **Search Terms**.  The responding party needs to conduct a comprehensive and all-inclusive search for responsive documents.  At a minimum, the responding party will

utilize the search terms outlined below when running searches for responsive ESI.  To the extent that any search terms result in a very large and extraordinarily burdensome number of "mishits" for non-responsive Documents, the responding party will notify the propounding party and suggest a modification to the search term(s) at issue.  The propounding party reserves the right to submit additional terms for the propounding party to search for good cause (e.g., a new term becomes relevant or a new abbreviation is discovered).

- (1st or first) /5 (credit /3 agreement)

- (2nd or second) /5 (credit /3 agreement)

- (1st or first) /5 (lien or lein) /5 (indebtedness or lender* or holdings or debt or loan or loans or facility)[1]

- (third or 3rd) /5 amend*

- "Amendment No. 3"

- (fourth or 4th) /5 amend*

- "Amendment No. 4"

- "requisite lender"

- "requisite lenders"

- "required lender"

- "required lenders"

- covenant* /15 default or comply or complies or complied or complying or compliance

- Allied /50 (cash /15 (balance or excess*))

- Allied /50 (financial /5 statement*)

- "tender offer"

- (voting or vote) /5 (right or rights)

- loan /5 purchase /5 agreement

---

[1]  An asterisk indicates a root expander.

- appointment /5 agreement

- (strateg* or strategic*) /5 (buy* or alternative*)

- contribut* /5 capital

- credit /5 bid

- debtor /5 possession

- DIP /5 financ*

- Allied /50 (bankrupt* or restructur* or recapitaliz* or "chapter 11" or "ch. 11" or reorganiz* or "low value" or sale or sell* or default or debt or merge* or dispos*)

- tender /3 offer

- "Cooperation Agreement"

- (Allied or Yucaipa) /30 (plan* or cooperat* or strategy* or pact or agreement* or coordinat*)

- (Allied or Jack Cooper or JCT) /10 ("term sheet" or agreement* or deal* or sale or purchase)

- affidavit* /30 (Allied or Yucaipa)

- equitable subordinat*

- subordinat* /50 (Allied or Yucaipa or debt*)

- subordinat* /50 ("voluntary" or "involuntary" or "bankrupt*")

- reimburse* /20 ("first lien credit" or Yucaipa or Allied or SBDRE)

- (equity /5 offer*) /20 (Yucaipa or Allied)

- "new issuance" /20 (Yucaipa or Allied)

- SBDRE or "SBDRE LLC" or "SBDRE LLC APA"

- Yucaipa[2]

---

[2] The responding party will not be required to search for their own name(s).  Accordingly, this term will not be searched by Yucaipa.

- "Black Diamond"

- BDCM

- Spectrum

- Allied

- ComVest

- AMMC

- CIT

- JCT

- Jack /3 Cooper

- (Michael or Mike) /3 Riggs

- *@yucaipaco.com

- *@alliedholdings.com

- *@comvest.com

- *@cit.com

- *@alliedautomotive.com

- *@spectrumgp.com

- *@bdcm.com

- Derex /3 Walker

- (Ron or Ronald) /3 Burkle

- Mark /3 Gendregske

- Jos /3 Opdeweegh

- (Jeff or Jeffrey) /3 Pelletier

- Ira /3 Tochner

- (Joseph or Joe) /3 Tomczak

- Brian /3 Cullen

- Neal /3 Legan

- (Mike or Michael) /3 Falk

- John /3 Blount

- Celio /3 Rodriguez

- Theo /3 Ciupitu

- (Mike or Michael) /3 Riggs

- (Tom or Thomas) / 3 Cooper

- (Tom or Thomas) /3 King

- Jason /3 Provost

- (Robert or Bob) /3 Priddy

- (Robert or Bob) /3 Bermingham

- Stephanie /3 Bond

- Scott /3 Macaulay

- (Vince or Vincent) /3 Belcastro

- (Michael or Mike) /3 Aliberto

- Solmaria /3 Velez

- Brad / Schaefer

- Ehrlich

- Deckoff

- Buller

- Meier

- Schaffer

II.    **PRODUCTION**

1) **Format of Production**.  Documents will be produced according to the protocols set forth in sections II and III.

   a) Pursuant to Federal Rule of Civil Procedure 34(b), all Documents shall be produced in the form in which they are maintained in the normal course of business or in the form in which they were found in their normal filing places, including file folders or other bindings in which such Documents were found. Documents attached to each other should not be separated.  If for any reason the container cannot be produced, the responding party will produce copies of all labels or other identifying markings.  Documents may also be produced by an electronic database provided that it is clear and unambiguous as to the source, date, and any other applicable metadata of each Document.

   b) The responding party will produce the original of each Document requested, together with all non-identical copies and drafts of that Document.  (A non-identical copy is a Document which was initially identical in all respects to any other Document, but which now is no longer identical by reason of any notation or other modification of any kind including, without limiting the generality of the foregoing, notes or modifications on the backs of pages or in the margin thereof, and/or on any copies thereof.)

   c) If any requested Document cannot be produced in full, the responding party will produce it to the extent possible and will indicate what portion or portions are being withheld and the reason it is being withheld.

2) **Bates Numbering**.  The producing party will brand all Documents in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying content.

3) **Confidentiality Endorsements**.  The producing party will brand any confidentiality or similar endorsements in the lower left-hand corner of the Documents consistent with the Agreed Protective Order entered in this case.  Those endorsements must be in a consistent font type and size, and must not obscure any part of the underlying content or Bates number.

4) **TIFFs**.  Hard copy paper documents shall be scanned as single page, Group IV compression TIFF images using a print setting of at least 300 dots per inch (DPI).  Each image shall have a unique file name, which is the Bates number of the document. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape).

5) **Bibliographic Fields**.  The following information shall be produced for hard copy documents and provided in the data load file at the same time that the TIFF images and the Optical Character Recognition (OCR)-acquired text files are produced:
   - BEGBATES

- ENDBATES
- BEGATTACH
- ENDATTACH
- PGCOUNT
- Volume
- Custodian

6) **OCR Acquired Text Files**.  When subjecting physical documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed.  Any settings such as "auto-skewing," "auto-rotation" and the like should be turned on when documents are run through the process.

7) **Database Load Files / Cross-Reference Files**.  Documents shall be provided with (a) a delimited metadata file (.dat or .txt) and (b) an image load file (.opt), as detailed in Section III.1.

8) **Unitizing of Documents**.  In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized).  In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields.  The parties will make their best efforts to unitize documents correctly.

9) **Privilege Log**.  With respect to any Document responsive to propounded Document requests that the responding party contends it is not required to produce because of an alleged privilege, attorney work product, or other protection from disclosure (which the responding party is not presently prepared to waive), the responding party will describe each such alleged privileged Document as follows:
   - Give the date of such Document;
   - Identify each Person[3] who wrote, signed, initialed, dictated or otherwise participated in the creation of the Document;
   - Identify each Person to whom the original or copy of the Document was sent; and
   - State any basis for claiming privilege, and provide sufficient information concerning the Document to explain the claim of privilege and to permit the adjudication of the propriety of that claim.

III.    <u>**ESI PRODUCTION PROTOCOL**</u>

1) **Load Files**.  Except for ESI described in sections 2(b) and (c) below, ESI will be produced in electronic format, with files suitable for loading into a litigation support

---

[3] Person shall mean a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

database.  The load files will define Document breaks, attachments and other information identified below.

a) **Delimited Text File**: A delimited text file (DAT File) containing the fields listed in 2(a)(v) should be provided.  The delimiters for the file should be Concordance defaults:
Comma - ASCII character 20 ( )
Quote - ASCII character 254 (þ)
Newline - ASCII character 174 (®)

b) **Image Cross-Reference File (Opticon Load File)**: The Opticon cross-reference file is a comma delimited file consisting of six fields per line.  There must be a line in the cross-reference file for every image in the database.  The format for the file is as follows:
ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount

- ImageID: The unique designation that Concordance and Opticon use to identify an image.  This should be the Bates number of the Document.
- VolumeLabel: The name of the volume.
- ImageFilePath: The full path to the image file.
- DocumentBreak: If this field contains the letter "Y," then this is the first page of a Document.  If this field is blank, then this page is not the first page of a Document.
- FolderBreak: Leave empty.
- BoxBreak: Leave empty.
- PageCount: Number of pages in the Document.

Sample Data
MT 00000001, BOX100,E:\100\MT00000001.TIF,Y,,5
MT 00000002, BOX100,E:\100\MT00000002.TIF,,,,
MT 00000003, BOX100,E:\100\MT00000003.TIF,,,,
MT 00000004, BOX100,E:\100\MT00000004.TIF,,,,
MT 00000005, BOX100,E:\100\MT00000005.TIF,,,,
MT 00000006, BOX100,E:\100\MT00000006.TIF,Y,,1

2) **Categories of Production of ESI**.  ESI will be produced as follows, depending on its classification.

a) **Production of ESI as TIFF Images With Metadata and Extracted Text**.  Documents created in standard office automation file formats (including but not limited to Microsoft Word or WordPerfect Documents) and ESI that can practicably be converted into TIFF format will be produced as single-page TIFF Group IV images, with any available fielded metadata and text searchable information extracted from the native Documents.

(i) **Bates Numbering**.  The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent

font type and size.  The Bates number must not obscure any part of the underlying image.

(ii) **File Names**.  Image file names will be identical to the corresponding Bates-numbered images with a ".tif" file extension.

(iii) **Confidentiality Endorsements**.  The producing party will brand any confidentiality or similar endorsements in the lower left-hand corner of the TIFF image consistent with the Agreed Protective Order to be entered in this case.  Those endorsements must be in a consistent font type and size, and must not obscure any part of the underlying image or Bates number.

(iv) **Production of Extracted Full Text**.  The producing party will provide extracted full text (i.e., text extracted from ESI) for all material originating as ESI in a text file corresponding to a single Document.  The full text file name will be composed of the beginning Bates number of the associated Document, with a ".txt" file extension.  When a party is unable to produce extracted full text, OCR should be provided.  If extracted text or OCR cannot be provided, then an explanation of that inability will be provided with its Document production.

(v) **Production of Metadata**.  The producing party will provide the following metadata, as applicable, for all ESI:
- BEGBATES
- ENDBATES
- BEGATTACH
- ENDATTACH
- PGCOUNT
- DATECREATED
- TIMECREATED
- DATELASTACC
- TIMELASTACC
- DATELASTMOD
- TIMELASTMOD
- DATESENT
- TIMESENT
- DATERECEIVED
- TIMERECEIVED
- Author
- From
- To
- CC
- BCC
- Subject
- Filename
- Filepath

- FileExtension
- NativeFile (Path to Native File if produced for the record)
- TextPath (Path to Extracted text file or OCR)
- Custodian
- MailStore
- DocType (e.g., email, attachment, e-doc or paper)
- MD5Hash

Family relationships among e-mail and attachments will be maintained by ensuring that attachments immediately follow their parent e-mail, and setting the "BEGATTACH" and "ENDATTACH" fields appropriately.

(vi) **Explanation of Inability to Produce Metadata**. When a party is unable to produce metadata for a particular field, it will provide an explanation of that inability with its Document production.

(vii) **Redaction**. If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced. However, to the extent that the text is searchable in the native format, the producing party will still provide searchable text for those portions of the Document that have not been redacted.

b) **Production of Native Format Documents That Are Impractical to Convert to TIFF**. ESI that is not practical to convert to TIFF may be produced using one of the three following methods, which method will be subject to meet and confer between the parties:

(i) **Spreadsheets that are Impractical to Convert to TIFF**. ESI that is not practical to convert to TIFF (for example, spreadsheets) may be produced in electronic format suitable for loading to a litigation support database with links to the native files.

   (A) **Identification**. ESI produced in native file format will be assigned a unique Bates number within the litigation database.

   (B) **File Names**. File names will be identical to the Bates number, followed by the file extension, e.g., B00000001.xls.

(ii) **Other ESI That is Impractical to Produce in Traditional Formats**. The parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as native format Documents or other traditional formats. The parties will meet and confer to obtain a resolution.

(iii) **Encrypted or Password-Protected ESI**. For any ESI that exists in encrypted format or is password-protected, the producing party will provide the propounding party a means to gain access to those native files (for example, by supplying passwords).

10

c) **Production of Pictures/Images**.  Any photographic images created and/or maintained in electronic format will be produced in that format.

EXHIBIT 3.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**YUCAIPA'S FIRST SET OF INTERROGATORIES
TO PLAINTIFF/COUNTER-CLAIM DEFENDANT
BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD**

Defendant and Counterclaimant Yucaipa American Alliance Fund I, L.P., by and through

its undersigned counsel, hereby requests, pursuant to Rules 26 and 33 of the Federal Rules of

Civil Procedure and Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, that on

or before thirty (30) days after the service hereof, BDCM Opportunity Fund II, LP and Black

Diamond CLO 2005-1 LTD ("Black Diamond") respond in writing to the following First Set of

Interrogatories.

## **DEFINITIONS**

1.      "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group,

Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis

Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services,

Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems,

LLC, Logistic Support LLC, and Terminal Services LLC.

2.      "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black

Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants,

directors, officers, employees, partners, members, agents, representatives, parent entities

corporations, predecessor or successor corporations, partnerships or anyone else acting or

purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related

parties, predecessors in interest, successors in interest, or assigns.

3.      "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A.

Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of

Delaware on May 17, 2012 in case No. 12-11564.

4.      "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present

Persons, entities, attorneys, accountants, directors, officers, employees, partners, members,

agents, representatives, parent entities, corporations, predecessor or successor corporations,

partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as

Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates,

divisions, related parties, predecessors in interest, successors in interest, or assigns.

5.      "Communication(s)" shall mean the transmittal of information (in the form of

facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to

correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams,

telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The

transmission of documents or things by mail, courier or electronic service or otherwise is

included, without limitation, in the definition of "Communication(s)."

6.      "Complaint" shall mean the operative complaint in the above-entitled action.  At

the time of service of these Interrogatories, the operative complaint is the above-entitled action is

the Complaint for Equitable Subordination, Breach of Complaint for (I) Equitable Subordination,

(II) Breach of Contract, (III) Breach of the Implied Duty of Good Faith and Fair Dealing, and

(IV) Tortious Interference with Contract, filed on November 19, 2014 in the United States

Bankruptcy Court for the District of Delaware.

7.      "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and

present Persons, entities, attorneys, accountants, employees, agents, representatives,

corporations, partners, predecessor or successor corporations, partnerships or anyone else acting

or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties,

predecessors in interest, successors in interest, or assigns.

8.      "Concerning" shall mean about, relating to, referring to, reflecting, describing,

evidencing or constituting.

9.      "Cooperation Agreement" shall mean the formal agreement entered into between

Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to

enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum Relating to Allied or Yucaipa.

10.    "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as approved by the United States Bankruptcy Court for the District of Delaware on September 17, 2013.

11.    The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense.  It shall not be limited in any way with respect to the process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "documents," "electronically stored information," or "tangible thing" as contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether in writing, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the foregoing, such Documents specifically include, without limitation, all originals, copies and drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, telephone business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks,

memoranda of telephone or other conversations by or with any Person(s), written or audio telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

12.    "Events of Default" shall have the meaning ascribed to it in the First Lien Credit Agreement.

13.    "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

14.    "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

15.    "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

16.    "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

17.    The "Georgia Action" shall mean the litigation in Georgia state court known as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American

Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that action.

18.    The words "Identify" or "Identity," when used with respect to a Person who is an individual, shall mean to state the following for each such Person:

(a)    The Person's full name;

(b)    The Person's present or last known business and residential addresses and telephone numbers;

(c)    The full name and address of the Person's present or last known employer; and

(d)    The present or last known position of employment held by the Person.

19.    The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

(a)    The official name or designation for the Person, and its common or business name if different;

(b)    The form of organization of the Person;

(c)    The present or last known business address and telephone number of the Person; and

(d)    The nature of the Person's trade or business.

20.    The words "Identify" and "Identity," when used with respect to a Document shall mean to state the following for each such Document:

(a)     The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;

(b)     The date or approximate date on which the Document was prepared;

(c)     The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;

(d)     The Identity of each Person to whom the Document or any copy of it was sent or addressed;

(e)     The Identity of each Person to whom the Document refers or relates in any way; and

(f)     The Identity of each Person having possession, custody or control of the Document or any copy of it.

21.     The words "Identify" or "Identity," when used with respect to a Communication shall mean to state the following for each such Communication:

(a)     The date or approximate date on which the Communication occurred;

(b)     State whether the Communication was in writing or oral;

(c)     Identify the participants to the Communication; and

(d)     State the substance of the Communication (provided, however, if the Communication was in writing, in lieu of stating the substance, Identify the Document which memorializes the Communication).

22.     "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting

or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related

parties, predecessors in interest, successors in interest, or assigns.

23.    "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as

well as any and all past and present Persons, entities, attorneys, accountants, employees, agents,

representatives, corporations, partners, predecessor or successor corporations, partnerships or

anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates,

divisions, related parties, predecessors in interest, successors in interest, or assigns.

24.    "Person(s)" as used herein refers to and shall include a natural person, firm,

association, organization, corporation, partnership, joint venture, business trust, public entity,

and all other forms of legal entities.

25.    "Relate to," "Related to," and "Relating to," as used herein, shall mean

constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding,

concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting,

negating, contradicting, describing, recording, noting, embodying, memorializing, containing,

mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any

manner logically, factually, indirectly or directly, or in any other way connecting to the matter

addressed in the request, in whole or in part.

26.    "Requisite Lender" shall have the meaning set forth in the First Lien Credit

Agreement.

27.    "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial

Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit

Bid.

28.     "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

29.     "Spectrum" shall mean Spectrum Investment Partners LP and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

30.     "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit Agreement.

31.     "You" and "Your" shall mean and refer to Spectrum.

32.     "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American Alliance (Parallel) Fund II, LP.

33.     "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by Yucaipa in February of 2009.

## INSTRUCTIONS

1.      In answering these Interrogatories, if You cannot provide precise information, state the best estimation or approximation thereof, designated as such.  If You cannot answer any of the following Interrogatories in full after exercising due diligence to secure the full information to do so, so stale and answer to the extent possible, specifying Your inability to answer the remainder.

2.      If You object to a portion or aspect of an Interrogatory, state the grounds for Your objection with specificity and answer the remainder of the Interrogatory about which You do not object.

3.      Where Your response to an Interrogatory is based on a Document, produce a copy of the Document along with the response to the Interrogatory or, if the Document has been produced in this litigation, Identify that Document by bates number.

4.      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.      If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.      The date range for these Interrogatories shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

**INTERROGATORY NO. 1:**

State each of the date(s) on which You acquired or sold any Allied First Lien Debt or Second Lien Debt.

**INTERROGATORY NO. 2:**

For each of the acquisitions or sales identified in Your response to Interrogatory Number 1, Identify the Person(s) from whom You acquired or sold such Debt.

**INTERROGATORY NO. 3:**

For each of the acquisitions or sales identified in Your response to Interrogatory Number 1, state the purchase price paid or received by You in connection with each acquisition or sale and the form of purchase price paid or received.

**INTERROGATORY NO. 4:**

State all facts upon which You base Your contention in paragraph 40 of the Complaint that Yucaipa had the ability to exercise "complete control" of Allied's Board.

**INTERROGATORY NO. 5:**

Describe in detail all reasons You claim You "took a back seat" in negotiating and drafting the terms of the Third Amendment to the First Lien Credit Agreement and "allowed" Yucaipa to lead the negotiations, as alleged in paragraph 52 of the Complaint.

**INTERROGATORY NO. 6:**

State all facts upon which You base Your contention in paragraph 56 of the Complaint that Yucaipa had a scheme to take total control over the First Lien Credit Agreement to the detriment of the legitimate First Lien Lenders.

**INTERROGATORY NO. 7:**

State all facts to support Your contention in paragraph 18 of the Complaint that Yucaipa was protecting its equity by buying the First Lien Debt from ComVest.

**INTERROGATORY NO. 8:**

Describe in detail Your understanding of the value of Yucaipa's equity in Allied as of August 21, 2009.

**INTERROGATORY NO. 9:**

State the value You assigned Your First Lien Debt as of August 21, 2009.

**INTERROGATORY NO. 10:**

State all facts upon which You base Your contention in paragraph 65 of the Complaint that Yucaipa stonewalled ComVest's efforts to pursue a sale or restructuring.

**INTERROGATORY NO. 11:**

State all facts upon which You base Your contention in paragraph 65 of the Complaint that Yucaipa withheld any payment of principal or interest due under the First Lien Credit Agreement, including Identifying each payment of principal or interest purportedly withheld and in what capacity and with what authority Yucaipa purportedly withheld any such payment.

**INTERROGATORY NO. 12:**

State all facts upon which You base Your contention in paragraph 65 of the Complaint that the unanimous vote at the August 3, 2009 Allied Board meeting to forego the quarterly interest payment was made in order to facilitate Yucaipa's interests in negotiations with ComVest.

**INTERROGATORY NO. 13:**

State all facts upon which You base Your contention in paragraph 78 of the Complaint that You were prevented from exercising any rights or remedies under the First Lien Credit Agreement after August 21, 2009.

**INTERROGATORY NO. 14:**

Identify every reason You submitted invoices for payment to Allied for work performed by Ropes & Gray LLP on Your behalf in 2009 in connection with the investigation of "creditor remedies."

**INTERROGATORY NO. 15:**

Describe in detail all reasons You waited to file the involuntary bankruptcy petitions against Allied in the Bankruptcy Court for the District of Delaware until May 2012.

**INTERROGATORY NO. 16:**

Describe in detail all reasons You instructed CIT to refrain from exercising its remedies in December 2008 when CIT attempted to do so as an agent on the First Lien Debt.

**INTERROGATORY NO. 17:**

Identify every instance in which You claim that Allied attempted to retain excess cash in violation of the terms of the First Lien Credit Agreement.

**INTERROGATORY NO. 18:**

Identify every Communication between You and CIT regarding the Fourth Amendment.

**INTERROGATORY NO. 19:**

Identify every Communication between You and CIT regarding the Georgia Action.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
        Wilmington, Delaware

                    YOUNG, CONAWAY, STARGATT &
                        TAYLOR, LLP

                    */s/ Michael R. Nestor*
                    John T. Dorsey, Esq. (No. 2988)
                    Michael R. Nestor (No. 3526)
                    Sharon M. Zieg, Esq. (No. 4196)
                    Michael S. Neiburg (No. 5275)
                    Rodney Square
                    1000 North King Street
                    Wilmington, DE 19801
                    Telephone: (302) 571-6600
                    mnestor@ycst.com

                    - and-

                    GIBSON, DUNN & CRUTCHER LLP
                    Robert A. Klyman
                    Maurice M. Suh
                    Kahn Scolnick
                    333 South Grand Avenue
                    Los Angeles, CA  90071
                    Telephone: (213) 229-7000
                    RKlyman@gibsondunn.com
                    MSuh@gibsondunn.com
                    KScolnick@gibsondunn.com

                    *Attorneys for Defendant*,
                    Yucaipa American Alliance Fund I, L.P.

EXHIBIT 3.2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**DEREX WALKER'S FIRST SET OF INTERROGATORIES**
**TO PLAINTIFF/COUNTER-CLAIM DEFENDANT**
**BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD**

Defendant Derex Walker, by and through his undersigned counsel, hereby requests,

pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 7026 and 7033 of

the Federal Rules of Bankruptcy Procedure, that on or before thirty (30) days after the service

1

hereof, BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 LTD ("Black

Diamond") respond in writing to the following First Set of Interrogatories.

## DEFINITIONS

1.     "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group,

Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis

Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services,

Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems,

LLC, Logistic Support LLC, and Terminal Services LLC.

2.     "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black

Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants,

directors, officers, employees, partners, members, agents, representatives, parent entities

corporations, predecessor or successor corporations, partnerships or anyone else acting or

purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related

parties, predecessors in interest, successors in interest, or assigns.

3.     "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A.

Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of

Delaware on May 17, 2012 in case No. 12-11564.

4.     "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present

Persons, entities, attorneys, accountants, directors, officers, employees, partners, members,

agents, representatives, parent entities, corporations, predecessor or successor corporations,

partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as

Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates,

divisions, related parties, predecessors in interest, successors in interest, or assigns.

5.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

6.      "Complaint" shall mean the operative complaint in the above-entitled action.  At the time of service of these Interrogatories, the operative complaint is the above-entitled action is the Complaint for Equitable Subordination, Breach of Complaint for (I) Equitable Subordination, (II) Breach of Contract, (III) Breach of the Implied Duty of Good Faith and Fair Dealing, and (IV) Tortious Interference with Contract, filed on November 19, 2014 in the United States Bankruptcy Court for the District of Delaware.

7.      "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

8.      "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

9.      "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any

informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum

Relating to Allied or Yucaipa.

10.      "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as

approved by the United States Bankruptcy Court for the District of Delaware on September 17,

2013.

11.      The term "Document(s)" shall include electronically stored information ("ESI")

and is used in its customary broad sense.  It shall not be limited in any way with respect to the

process by which any Document was created, generated, or reproduced, or with respect to the

medium in which the Document is embodied; and shall include, by way of example and without

any limitation, all "documents," "electronically stored information," or "tangible thing" as

contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings,"

"recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and

any kind of tangible material in any medium of any type, upon which intelligence or information

is recorded, or from which intelligence or information can be perceived, whether in writing,

recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic

or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the

foregoing, such Documents specifically include, without limitation, all originals, copies and

drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures,

ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams,

cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes,

transcriptions of records and recordings, business records, telephone business records, desk

calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks,

memoranda of telephone or other conversations by or with any Person(s), written or audio

telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

12.     "Events of Default" shall have the meaning ascribed to it in the First Lien Credit Agreement.

13.     "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

14.     "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

15.     "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

16.     "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

17.     The "Georgia Action" shall mean the litigation in Georgia state court known as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-

CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that action.

18.    The words "Identify" or "Identity," when used with respect to a Person who is an individual, shall mean to state the following for each such Person:

(a)    The Person's full name;

(b)    The Person's present or last known business and residential addresses and telephone numbers;

(c)    The full name and address of the Person's present or last known employer; and

(d)    The present or last known position of employment held by the Person.

19.    The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

(a)    The official name or designation for the Person, and its common or business name if different;

(b)    The form of organization of the Person;

(c)    The present or last known business address and telephone number of the Person; and

(d)    The nature of the Person's trade or business.

20.    The words "Identify" and "Identity," when used with respect to a Document shall mean to state the following for each such Document:

(a)    The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;

(b)     The date or approximate date on which the Document was prepared;

(c)     The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;

(d)     The Identity of each Person to whom the Document or any copy of it was sent or addressed;

(e)     The Identity of each Person to whom the Document refers or relates in any way; and

(f)     The Identity of each Person having possession, custody or control of the Document or any copy of it.

21.     The words "Identify" or "Identity," when used with respect to a Communication shall mean to state the following for each such Communication:

(a)     The date or approximate date on which the Communication occurred;

(b)     State whether the Communication was in writing or oral;

(c)     Identify the participants to the Communication; and

(d)     State the substance of the Communication (provided, however, if the Communication was in writing, in lieu of stating the substance, Identify the Document which memorializes the Communication).

22.     "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

23.    "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

24.    "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

25.    "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

26.    "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

27.    "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

28.    "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

29.    "Spectrum" shall mean Spectrum Investment Partners LP and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

30.    "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit Agreement.

31.    "You" and "Your" shall mean and refer to Spectrum.

32.    "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American Alliance (Parallel) Fund II, LP.

33.    "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by Yucaipa in February of 2009.

## INSTRUCTIONS

1.    In answering these Interrogatories, if You cannot provide precise information, state the best estimation or approximation thereof, designated as such.  If You cannot answer any of the following Interrogatories in full after exercising due diligence to secure the full information to do so, so stale and answer to the extent possible, specifying Your inability to answer the remainder.

2.    If You object to a portion or aspect of an Interrogatory, state the grounds for Your objection with specificity and answer the remainder of the Interrogatory about which You do not object.

3.      Where Your response to an Interrogatory is based on a Document, produce a copy of the Document along with the response to the Interrogatory or, if the Document has been produced in this litigation, Identify that Document by bates number.

4.      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.      If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.      The date range for these Interrogatories shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

**INTERROGATORY NO. 1:**

State all facts upon which You base Your contention that Mr. Walker failed to comply with his duty of loyalty to Allied.

**INTERROGATORY NO. 2:**

State all facts upon which You base Your contention that Mr. Walker failed to comply with his duty of care to Allied.

**INTERROGATORY NO. 3:**

Describe in detail each and every instance in which You contend that Mr. Walker used his position on the board of Allied to benefit Yucaipa.

**INTERROGATORY NO. 4:**

Describe in detail each and every instance in which You allege that Mr. Walker took actions as a member of the board of Allied that were to the detriment of Allied.

**INTERROGATORY NO. 5:**

Describe in detail any instance in which You allege that Mr. Walker took actions as a member of the board of Allied that were to the benefit of Yucaipa.

**INTERROGATORY NO. 6:**

State all facts upon which You base Your contention that Mr. Walker influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

**INTERROGATORY NO. 7:**

State all facts upon which You base Your contention that that Mr. Walker failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**INTERROGATORY NO. 8:**

State all facts upon which You base Your contention that Mr. Walker played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

**INTERROGATORY NO. 9:**

State all facts upon which You base Your contention that Mr. Walker played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

**INTERROGATORY NO. 10:**

Identify each act that You contend Mr. Walker committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

**INTERROGATORY NO. 11:**

State all facts upon which You base Your contention that Mr. Walker was seeking to benefit himself individually at the expense of Allied.

**INTERROGATORY NO. 12:**

Describe in detail each reason Mr. Deckoff travelled to Los Angeles from New York on August 18, 2009.

**INTERROGATORY NO. 13:**

Describe in detail each reason Mr. Deckoff met with Ronald Burkle in August 2009.

**INTERROGATORY NO. 14:**

Identify every Communication between Mr. Schaffer and Mr. Ehrlich regarding Yucaipa's plan to acquire ComVest's First Lien Claims and the Requisite Lender position.

**INTERROGATORY NO. 15:**

Describe in detail every objection that You communicated to Yucaipa about Yucaipa acquiring ComVest's First Lien Claims between May 15, 2007 and August 21, 2009.

**INTERROGATORY NO. 16:**

Describe in detail every reason You declined to ask CIT to refuse to close the trade between Yucaipa and ComVest.

**INTERROGATORY NO. 17:**

Describe in detail every reason You did not send the September 2009 letter challenging Yucaipa's status as Requisite Lender directly to Yucaipa.

**INTERROGATORY NO. 18:**

Describe in detail every objection You communicated to Yucaipa about Yucaipa becoming the Requisite Lender between May 15, 2007 and August 21, 2009.

**INTERROGATORY NO. 19:**

Describe in detail all harm You claim to have suffered as a result of Yucaipa's purported "complete control" of Allied's Board as alleged in paragraph 40 of the Complaint.

**INTERROGATORY NO. 20:**

Identify any communications between You and SBDRE in SBDRE's role as Administrative Agent regarding Yucaipa's expense reimbursement claim.

**INTERROGATORY NO. 21:**

Describe in detail every reason Your expenses and those of the other Lenders were reimbursed but not Yucaipa's.

**INTERROGATORY NO. 22:**

Identify every reason You, at the time of the Credit Bid and in Your purported capacity as Requisite Lender, proposed segregating all of Allied's assets into one tranche to hold the fixed assets and other salable assets (including equipment and real estate) and another tranche for its debt and liabilities (including the collective bargaining agreement), and the basis for not treating all lenders (including Yucaipa) identically with respect to both tranches.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
       Wilmington, Delaware

YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP

*/s/ Michael R. Nestor*
John T. Dorsey, Esq. (No. 2988)
Michael R. Nestor (No. 3526)
Sharon M. Zieg, Esq. (No. 4196)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER LLP
Robert A. Klyman
Maurice M. Suh
Kahn Scolnick
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
RKlyman@gibsondunn.com
MSuh@gibsondunn.com
KScolnick@gibsondunn.com

*Attorneys for Defendant*,
Derex Walker

EXHIBIT 3.3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREK WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**IRA TOCHNER'S FIRST SET OF INTERROGATORIES**
**TO PLAINTIFF/COUNTER-CLAIM DEFENDANT**
**BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD**

Defendant Ira Tochner, by and through his undersigned counsel, hereby requests,

pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 7026 and 7033 of

the Federal Rules of Bankruptcy Procedure, that on or before thirty (30) days after the service

1

hereof, BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 LTD ("Black

Diamond") respond in writing to the following First Set of Interrogatories.

## DEFINITIONS

1.      "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group,

Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis

Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services,

Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems,

LLC, Logistic Support LLC, and Terminal Services LLC.

2.      "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black

Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants,

directors, officers, employees, partners, members, agents, representatives, parent entities

corporations, predecessor or successor corporations, partnerships or anyone else acting or

purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related

parties, predecessors in interest, successors in interest, or assigns.

3.      "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A.

Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of

Delaware on May 17, 2012 in case No. 12-11564.

4.      "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present

Persons, entities, attorneys, accountants, directors, officers, employees, partners, members,

agents, representatives, parent entities, corporations, predecessor or successor corporations,

partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as

Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates,

divisions, related parties, predecessors in interest, successors in interest, or assigns.

2

5.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

6.      "Complaint" shall mean the operative complaint in the above-entitled action.  At the time of service of these Interrogatories, the operative complaint is the above-entitled action is the Complaint for Equitable Subordination, Breach of Complaint for (I) Equitable Subordination, (II) Breach of Contract, (III) Breach of the Implied Duty of Good Faith and Fair Dealing, and (IV) Tortious Interference with Contract, filed on November 19, 2014 in the United States Bankruptcy Court for the District of Delaware.

7.      "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

8.      "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

9.      "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any

informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum Relating to Allied or Yucaipa.

10.    "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as approved by the United States Bankruptcy Court for the District of Delaware on September 17, 2013.

11.    The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense.  It shall not be limited in any way with respect to the process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "documents," "electronically stored information," or "tangible thing" as contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether in writing, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the foregoing, such Documents specifically include, without limitation, all originals, copies and drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, telephone business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any Person(s), written or audio

telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

12.    "Events of Default" shall have the meaning ascribed to it in the First Lien Credit Agreement.

13.    "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

14.    "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

15.    "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

16.    "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

17.    The "Georgia Action" shall mean the litigation in Georgia state court known as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-

CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that action.

18.     The words "Identify" or "Identity," when used with respect to a Person who is an individual, shall mean to state the following for each such Person:

(a)     The Person's full name;

(b)     The Person's present or last known business and residential addresses and telephone numbers;

(c)     The full name and address of the Person's present or last known employer; and

(d)     The present or last known position of employment held by the Person.

19.     The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

(a)     The official name or designation for the Person, and its common or business name if different;

(b)     The form of organization of the Person;

(c)     The present or last known business address and telephone number of the Person; and

(d)     The nature of the Person's trade or business.

20.     The words "Identify" and "Identity," when used with respect to a Document shall mean to state the following for each such Document:

(a)     The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;

(b)    The date or approximate date on which the Document was prepared;

(c)    The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;

(d)    The Identity of each Person to whom the Document or any copy of it was sent or addressed;

(e)    The Identity of each Person to whom the Document refers or relates in any way; and

(f)    The Identity of each Person having possession, custody or control of the Document or any copy of it.

21.    The words "Identify" or "Identity," when used with respect to a Communication shall mean to state the following for each such Communication:

(a)    The date or approximate date on which the Communication occurred;

(b)    State whether the Communication was in writing or oral;

(c)    Identify the participants to the Communication; and

(d)    State the substance of the Communication (provided, however, if the Communication was in writing, in lieu of stating the substance, Identify the Document which memorializes the Communication).

22.    "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

23.     "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

24.     "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

25.     "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

26.     "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

27.     "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

28.     "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

29.    "Spectrum" shall mean Spectrum Investment Partners LP and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

30.    "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit Agreement.

31.    "You" and "Your" shall mean and refer to Spectrum.

32.    "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American Alliance (Parallel) Fund II, LP.

33.    "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by Yucaipa in February of 2009.

## INSTRUCTIONS

1.    In answering these Interrogatories, if You cannot provide precise information, state the best estimation or approximation thereof, designated as such.  If You cannot answer any of the following Interrogatories in full after exercising due diligence to secure the full information to do so, so stale and answer to the extent possible, specifying Your inability to answer the remainder.

2.    If You object to a portion or aspect of an Interrogatory, state the grounds for Your objection with specificity and answer the remainder of the Interrogatory about which You do not object.

3.      Where Your response to an Interrogatory is based on a Document, produce a copy of the Document along with the response to the Interrogatory or, if the Document has been produced in this litigation, Identify that Document by bates number.

4.      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.      If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.      The date range for these Interrogatories shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

**INTERROGATORY NO. 1:**

State all facts upon which You base Your contention that Mr. Tochner failed to comply with his duty of loyalty to Allied.

**INTERROGATORY NO. 2:**

State all facts upon which You base Your contention that Mr. Tochner failed to comply with his duty of care to Allied.

**INTERROGATORY NO. 3:**

Describe in detail each and every instance in which You contend that Mr. Tochner used his position on the board of Allied to benefit Yucaipa.

**INTERROGATORY NO. 4:**

Describe in detail each and every instance in which You allege that Mr. Tochner took actions as a member of the board of Allied that were to the detriment of Allied.

**INTERROGATORY NO. 5:**

Describe in detail any instance in which You allege that Mr. Tochner took actions as a member of the board of Allied that were to the benefit of Yucaipa.

**INTERROGATORY NO. 6:**

State all facts upon which You base Your contention that Mr. Tochner influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

**INTERROGATORY NO. 7:**

State all facts upon which You base Your contention that that Mr. Tochner failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**INTERROGATORY NO. 8:**

State all facts upon which You base Your contention that Mr. Tochner played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

**INTERROGATORY NO. 9:**

State all facts upon which You base Your contention that Mr. Tochner played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

**INTERROGATORY NO. 10:**

Identify each act that You contend Mr. Tochner committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

**INTERROGATORY NO. 11:**

State all facts upon which You base Your contention that Mr. Tochner was seeking to benefit himself individually at the expense of Allied.

**INTERROGATORY NO. 12:**

State all facts upon which You base Your contention in paragraph 83 of the Complaint that Allied brought the Georgia Action at Yucaipa's direction.

**INTERROGATORY NO. 13:**

Identify every transaction that You claim the First Lien Lenders were unable to take regarding any Events of Default during the pendency of the Georgia Action.

**INTERROGATORY NO. 14:**

State all facts upon which You base Your contention in paragraph 94 of the Complaint that Yucaipa did not attempt to negotiate with Jack Cooper for the highest and best purchase price for Allied's assets.

**INTERROGATORY NO. 15:**

State all facts upon which You base Your contention in paragraph 96 of the Complaint that Yucaipa was "improperly using its alleged Requisite Lender position" in pursuing a sale of its First Lien Debt to Jack Cooper.

**INTERROGATORY NO. 16:**

Identify every Communication You had with Jack Cooper regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied.

**INTERROGATORY NO. 17:**

Identify every Communication You had with Spectrum regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied.

**INTERROGATORY NO. 18:**

Describe in detail all every one of the "strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" contemplated by the Cooperation Agreement.

**INTERROGATORY NO. 19:**

Describe in detail all reasons You did not sign the Cooperation Agreement prior to January 2012.

**INTERROGATORY NO. 20:**

Identify the amount You were paid by Spectrum for the transfer of $4,239,486.90 in First Lien Debt.

**INTERROGATORY NO. 21:**

Describe in detail all reasons You sold $4,239,486.90 in First Lien Debt to Spectrum.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
          Wilmington, Delaware

                              YOUNG, CONAWAY, STARGATT &
                                   TAYLOR, LLP


                              */s/ Michael R. Nestor*
                              John T. Dorsey, Esq. (No. 2988)
                              Michael R. Nestor (No. 3526)
                              Sharon M. Zieg, Esq. (No. 4196)
                              Michael S. Neiburg (No. 5275)
                              Rodney Square
                              1000 North King Street
                              Wilmington, DE 19801
                              Telephone: (302) 571-6600
                              mnestor@ycst.com

                              - and-

                              GIBSON, DUNN & CRUTCHER LLP
                              Robert A. Klyman
                              Maurice M. Suh
                              Kahn Scolnick
                              333 South Grand Avenue
                              Los Angeles, CA  90071
                              Telephone: (213) 229-7000
                              RKlyman@gibsondunn.com
                              MSuh@gibsondunn.com
                              KScolnick@gibsondunn.com

                              *Attorneys for Defendant*,
                              Ira Tochner

EXHIBIT 3.4

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**JEFF PELLETIER'S FIRST SET OF INTERROGATORIES**
**TO PLAINTIFF/COUNTER-CLAIM DEFENDANT**
**BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD**

Defendant Jeff Pelletier, by and through his undersigned counsel, hereby requests,

pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 7026 and 7033 of

the Federal Rules of Bankruptcy Procedure, that on or before thirty (30) days after the service

1

hereof, BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 LTD ("Black Diamond") respond in writing to the following First Set of Interrogatories.

## DEFINITIONS

1. "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group, Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services, Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems, LLC, Logistic Support LLC, and Terminal Services LLC.

2. "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

3. "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A. Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of Delaware on May 17, 2012 in case No. 12-11564.

4. "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

2

5.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

6.      "Complaint" shall mean the operative complaint in the above-entitled action.  At the time of service of these Interrogatories, the operative complaint is the above-entitled action is the Complaint for Equitable Subordination, Breach of Complaint for (I) Equitable Subordination, (II) Breach of Contract, (III) Breach of the Implied Duty of Good Faith and Fair Dealing, and (IV) Tortious Interference with Contract, filed on November 19, 2014 in the United States Bankruptcy Court for the District of Delaware.

7.      "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

8.      "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

9.      "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any

informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum

Relating to Allied or Yucaipa.

10.    "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as

approved by the United States Bankruptcy Court for the District of Delaware on September 17,

2013.

11.    The term "Document(s)" shall include electronically stored information ("ESI")

and is used in its customary broad sense.  It shall not be limited in any way with respect to the

process by which any Document was created, generated, or reproduced, or with respect to the

medium in which the Document is embodied; and shall include, by way of example and without

any limitation, all "documents," "electronically stored information," or "tangible thing" as

contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings,"

"recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and

any kind of tangible material in any medium of any type, upon which intelligence or information

is recorded, or from which intelligence or information can be perceived, whether in writing,

recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic

or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the

foregoing, such Documents specifically include, without limitation, all originals, copies and

drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures,

ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams,

cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes,

transcriptions of records and recordings, business records, telephone business records, desk

calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks,

memoranda of telephone or other conversations by or with any Person(s), written or audio

4

telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter. Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

12.     "Events of Default" shall have the meaning ascribed to it in the First Lien Credit Agreement.

13.     "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

14.     "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

15.     "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

16.     "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

17.     The "Georgia Action" shall mean the litigation in Georgia state court known as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-

CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that action.

18.    The words "Identify" or "Identity," when used with respect to a Person who is an individual, shall mean to state the following for each such Person:

    (a)    The Person's full name;

    (b)    The Person's present or last known business and residential addresses and telephone numbers;

    (c)    The full name and address of the Person's present or last known employer; and

    (d)    The present or last known position of employment held by the Person.

19.    The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

    (a)    The official name or designation for the Person, and its common or business name if different;

    (b)    The form of organization of the Person;

    (c)    The present or last known business address and telephone number of the Person; and

    (d)    The nature of the Person's trade or business.

20.    The words "Identify" and "Identity," when used with respect to a Document shall mean to state the following for each such Document:

    (a)    The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;

      (b)     The date or approximate date on which the Document was prepared;

      (c)     The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;

      (d)     The Identity of each Person to whom the Document or any copy of it was sent or addressed;

      (e)     The Identity of each Person to whom the Document refers or relates in any way; and

      (f)     The Identity of each Person having possession, custody or control of the Document or any copy of it.

21.     The words "Identify" or "Identity," when used with respect to a Communication shall mean to state the following for each such Communication:

      (a)     The date or approximate date on which the Communication occurred;

      (b)     State whether the Communication was in writing or oral;

      (c)     Identify the participants to the Communication; and

      (d)     State the substance of the Communication (provided, however, if the Communication was in writing, in lieu of stating the substance, Identify the Document which memorializes the Communication).

22.     "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

23.     "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

24.     "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

25.     "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

26.     "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

27.     "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

28.     "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

29.    "Spectrum" shall mean Spectrum Investment Partners LP and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

30.    "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit Agreement.

31.    "You" and "Your" shall mean and refer to Spectrum.

32.    "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American Alliance (Parallel) Fund II, LP.

33.    "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by Yucaipa in February of 2009.

## INSTRUCTIONS

1.    In answering these Interrogatories, if You cannot provide precise information, state the best estimation or approximation thereof, designated as such.  If You cannot answer any of the following Interrogatories in full after exercising due diligence to secure the full information to do so, so stale and answer to the extent possible, specifying Your inability to answer the remainder.

2.    If You object to a portion or aspect of an Interrogatory, state the grounds for Your objection with specificity and answer the remainder of the Interrogatory about which You do not object.

3.      Where Your response to an Interrogatory is based on a Document, produce a copy of the Document along with the response to the Interrogatory or, if the Document has been produced in this litigation, Identify that Document by bates number.

4.      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.      If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.      The date range for these Interrogatories shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

**<u>INTERROGATORY NO. 1</u>:**

State all facts upon which You base Your contention that Mr. Pelletier failed to comply with his duty of loyalty to Allied.

**<u>INTERROGATORY NO. 2</u>:**

State all facts upon which You base Your contention that Mr. Pelletier failed to comply with his duty of care to Allied.

**<u>INTERROGATORY NO. 3</u>:**

Describe in detail each and every instance in which You contend that Mr. Pelletier used his position on the board of Allied to benefit Yucaipa.

**INTERROGATORY NO. 4:**

Describe in detail each and every instance in which You allege that Mr. Pelletier took actions as a member of the board of Allied that were to the detriment of Allied.

**INTERROGATORY NO. 5:**

Describe in detail any instance in which You allege that Mr. Pelletier took actions as a member of the board of Allied that were to the benefit of Yucaipa.

**INTERROGATORY NO. 6:**

State all facts upon which You base Your contention that Mr. Pelletier influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

**INTERROGATORY NO. 7:**

State all facts upon which You base Your contention that that Mr. Pelletier failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**INTERROGATORY NO. 8:**

State all facts upon which You base Your contention that Mr. Pelletier played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

**INTERROGATORY NO. 9:**

State all facts upon which You base Your contention that Mr. Pelletier played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

**INTERROGATORY NO. 10:**

Identify each act that You contend Mr. Pelletier committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

**INTERROGATORY NO. 11:**

State all facts upon which You base Your contention that Mr. Pelletier was seeking to benefit himself individually at the expense of Allied.

**INTERROGATORY NO. 12:**

Describe in detail all reasons You sold $4,239,486.90 in First Lien Debt to Spectrum.

**INTERROGATORY NO. 13:**

Identify any other trades You considered pursuant to the Cooperation Agreement but did not execute, including identifying whether You offered Spectrum a pro rata right to share in those trades.

**INTERROGATORY NO. 14:**

Describe in detail all reasons You did not disclose the transfer of the $4,239,486.90 in First Lien Debt in the Black Diamond and Spectrum Affidavits.

**INTERROGATORY NO. 15:**

Describe in detail all reasons You did not disclose the transfer of the $4,239,486.90 in First Lien Debt in connection with the filing of the involuntary bankruptcy filing in May 2012 or in response to related discovery.

**INTERROGATORY NO. 16:**

State all facts upon which You base Your contention that Yucaipa refused to perform in accordance with the terms of the First Lien Credit Agreement, as amended by the Third Amendment.

**INTERROGATORY NO. 17:**

State the price You paid for the First Lien Claims You held (and the amount of such claims held) at the time of the involuntary bankruptcy filing in May 2012.

**INTERROGATORY NO. 18**:

Describe in detail all reasons You rejected the Yucaipa Tender Offer.

**INTERROGATORY NO. 19**:

Identify the date You first considered seeking equitable subordination of Yucaipa in relation to Your Allied First Lien Claims.

**INTERROGATORY NO. 20**:

Identify the date You first discussed equitable subordination of Yucaipa in relation to Your Allied First Lien Claims with any other party, including but not limited to T. Michael Riggs, Kirk Ferguson, or Spectrum.

**INTERROGATORY NO. 21**:

Identify the date You first learned that Yucaipa was negotiating with ComVest to acquire ComVest's First Lien Debt.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
      Wilmington, Delaware

                YOUNG, CONAWAY, STARGATT &
                    TAYLOR, LLP

                */s/ Michael R. Nestor*
                John T. Dorsey, Esq. (No. 2988)
                Michael R. Nestor (No. 3526)
                Sharon M. Zieg, Esq. (No. 4196)
                Michael S. Neiburg (No. 5275)
                Rodney Square
                1000 North King Street
                Wilmington, DE 19801
                Telephone: (302) 571-6600
                mnestor@ycst.com

                - and-

                GIBSON, DUNN & CRUTCHER LLP
                Robert A. Klyman
                Maurice M. Suh
                Kahn Scolnick
                333 South Grand Avenue
                Los Angeles, CA  90071
                Telephone: (213) 229-7000
                RKlyman@gibsondunn.com
                MSuh@gibsondunn.com
                KScolnick@gibsondunn.com

                *Attorneys for Defendant*,
                Jeff Pelletier

EXHIBIT 3.5

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) (Jointly Administered) |
| Debtors. | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**JOSEPH TOMCZAK'S FIRST SET OF INTERROGATORIES
TO PLAINTIFF/COUNTER-CLAIM DEFENDANT
BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD**

Defendant Joseph Tomczak, by and through his undersigned counsel, hereby requests,

pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 7026 and 7033 of

the Federal Rules of Bankruptcy Procedure, that on or before thirty (30) days after the service

1

hereof, BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 LTD ("Black

Diamond") respond in writing to the following First Set of Interrogatories.

## DEFINITIONS

1. "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group,

Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis

Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services,

Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems,

LLC, Logistic Support LLC, and Terminal Services LLC.

2. "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black

Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants,

directors, officers, employees, partners, members, agents, representatives, parent entities

corporations, predecessor or successor corporations, partnerships or anyone else acting or

purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related

parties, predecessors in interest, successors in interest, or assigns.

3. "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A.

Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of

Delaware on May 17, 2012 in case No. 12-11564.

4. "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present

Persons, entities, attorneys, accountants, directors, officers, employees, partners, members,

agents, representatives, parent entities, corporations, predecessor or successor corporations,

partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as

Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates,

divisions, related parties, predecessors in interest, successors in interest, or assigns.

5.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

6.      "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

7.      "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

8.      "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum Relating to Allied or Yucaipa.

9.      "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as approved by the United States Bankruptcy Court for the District of Delaware on September 17, 2013.

10.      The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense.  It shall not be limited in any way with respect to the

process by which any Document was created, generated, or reproduced, or with respect to the

medium in which the Document is embodied; and shall include, by way of example and without

any limitation, all "documents," "electronically stored information," or "tangible thing" as

contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings,"

"recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and

any kind of tangible material in any medium of any type, upon which intelligence or information

is recorded, or from which intelligence or information can be perceived, whether in writing,

recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic

or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the

foregoing, such Documents specifically include, without limitation, all originals, copies and

drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures,

ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams,

cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes,

transcriptions of records and recordings, business records, telephone business records, desk

calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks,

memoranda of telephone or other conversations by or with any Person(s), written or audio

telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile

transmissions and any other pertinent information not necessarily contained in files pertaining

exclusively or directly to this matter.  Documents further include, without limitation, materials

maintained in electronic, magnetic or other storage media, including those maintained in

computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-

called "erased" or "deleted" computer information that may be susceptible to retrieval.

11.    "Events of Default" shall have the meaning ascribed to it in the First Lien Credit Agreement.

12.    "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

13.    "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

14.    "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

15.    "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

16.    The "Georgia Action" shall mean the litigation in Georgia state court known as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that action.

17.    The words "Identify" or "Identity," when used with respect to a Person who is an individual, shall mean to state the following for each such Person:

(a)    The Person's full name;

> (b)    The Person's present or last known business and residential addresses and telephone numbers;
>
> (c)    The full name and address of the Person's present or last known employer; and
>
> (d)    The present or last known position of employment held by the Person.

18.    The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

> (a)    The official name or designation for the Person, and its common or business name if different;
>
> (b)    The form of organization of the Person;
>
> (c)    The present or last known business address and telephone number of the Person; and
>
> (d)    The nature of the Person's trade or business.

19.    The words "Identify" and "Identity," when used with respect to a Document shall mean to state the following for each such Document:

> (a)    The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;
>
> (b)    The date or approximate date on which the Document was prepared;
>
> (c)    The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;
>
> (d)    The Identity of each Person to whom the Document or any copy of it was sent or addressed;

      (e)     The Identity of each Person to whom the Document refers or relates in any way; and

      (f)     The Identity of each Person having possession, custody or control of the Document or any copy of it.

20.     The words "Identify" or "Identity," when used with respect to a Communication shall mean to state the following for each such Communication:

      (a)     The date or approximate date on which the Communication occurred;

      (b)     State whether the Communication was in writing or oral;

      (c)     Identify the participants to the Communication; and

      (d)     State the substance of the Communication (provided, however, if the Communication was in writing, in lieu of stating the substance, Identify the Document which memorializes the Communication).

21.     "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

22.     "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

23.     "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

24.     "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

25.     "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

26.     "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

27.     "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

28.     "Spectrum" shall mean Spectrum Investment Partners LP and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

29.     "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit

Agreement.

30.     "You" and "Your" shall mean and refer to Spectrum.

31.     "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American

Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American

Alliance (Parallel) Fund II, LP.

32.     "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by

Yucaipa in February of 2009.

### INSTRUCTIONS

1.     In answering these Interrogatories, if You cannot provide precise information,

state the best estimation or approximation thereof, designated as such.  If You cannot answer any

of the following Interrogatories in full after exercising due diligence to secure the full

information to do so, so stale and answer to the extent possible, specifying Your inability to

answer the remainder.

2.     If You object to a portion or aspect of an Interrogatory, state the grounds for Your

objection with specificity and answer the remainder of the Interrogatory about which You do not

object.

3.     Where Your response to an Interrogatory is based on a Document, produce a copy

of the Document along with the response to the Interrogatory or, if the Document has been

produced in this litigation, Identify that Document by bates number.

4.     The words "and" and "or" shall be construed conjunctively or disjunctively as

necessary to make the request inclusive rather than exclusive, and each shall include the other

wherever such dual construction will serve to bring within the scope of these requests any

Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.     If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.     The date range for these Interrogatories shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

**INTERROGATORY NO. 1:**

State all facts upon which You base Your contention that Mr. Tomczak failed to comply with his duty of loyalty to Allied.

**INTERROGATORY NO. 2:**

State all facts upon which You base Your contention that Mr. Tomczak failed to comply with his duty of care to Allied.

**INTERROGATORY NO. 3:**

Describe in detail each and every instance in which You contend that Mr. Tomczak used his position on the board of Allied to benefit Yucaipa.

**INTERROGATORY NO. 4:**

Describe in detail each and every instance in which You allege that Mr. Tomczak took actions as a member of the board of Allied that were to the detriment of Allied.

**INTERROGATORY NO. 5:**

Describe in detail any instance in which You allege that Mr. Tomczak took actions as a member of the board of Allied that were to the benefit of Yucaipa.

**INTERROGATORY NO. 6:**

State all facts upon which You base Your contention that Mr. Tomczak influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

**INTERROGATORY NO. 7:**

State all facts upon which You base Your contention that that Mr. Tomczak failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**INTERROGATORY NO. 8:**

State all facts upon which You base Your contention that Mr. Tomczak played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

**INTERROGATORY NO. 9:**

State all facts upon which You base Your contention that Mr. Tomczak played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

**INTERROGATORY NO. 10:**

Identify each act that You contend Mr. Tomczak committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

**INTERROGATORY NO. 11:**

State all facts upon which You base Your contention that Mr. Tomczak was seeking to benefit himself individually at the expense of Allied.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
      Wilmington, Delaware

                YOUNG, CONAWAY, STARGATT &
                    TAYLOR, LLP

*/s/ Michael R. Nestor*
John T. Dorsey, Esq. (No. 2988)
Michael R. Nestor (No. 3526)
Sharon M. Zieg, Esq. (No. 4196)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER LLP
Robert A. Klyman
Maurice M. Suh
Kahn Scolnick
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
RKlyman@gibsondunn.com
MSuh@gibsondunn.com
KScolnick@gibsondunn.com

*Attorneys for Defendant*,
Joseph Tomczak

EXHIBIT 3.6

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREK WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**JOS OPDEWEEGH'S FIRST SET OF INTERROGATORIES**
**TO PLAINTIFF/COUNTER-CLAIM DEFENDANT**
**BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD**

Defendant Jos Opdeweegh, by and through his undersigned counsel, hereby requests,

pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 7026 and 7033 of

the Federal Rules of Bankruptcy Procedure, that on or before thirty (30) days after the service

hereof, BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 LTD ("Black

Diamond") respond in writing to the following First Set of Interrogatories.

## DEFINITIONS

1.      "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group,

Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis

Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services,

Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems,

LLC, Logistic Support LLC, and Terminal Services LLC.

2.      "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black

Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants,

directors, officers, employees, partners, members, agents, representatives, parent entities

corporations, predecessor or successor corporations, partnerships or anyone else acting or

purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related

parties, predecessors in interest, successors in interest, or assigns.

3.      "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A.

Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of

Delaware on May 17, 2012 in case No. 12-11564.

4.      "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present

Persons, entities, attorneys, accountants, directors, officers, employees, partners, members,

agents, representatives, parent entities, corporations, predecessor or successor corporations,

partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as

Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates,

divisions, related parties, predecessors in interest, successors in interest, or assigns.

5.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

6.      "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

7.      "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

8.      "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum Relating to Allied or Yucaipa.

9.      "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as approved by the United States Bankruptcy Court for the District of Delaware on September 17, 2013.

10.      The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense.  It shall not be limited in any way with respect to the

process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "documents," "electronically stored information," or "tangible thing" as contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether in writing, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the foregoing, such Documents specifically include, without limitation, all originals, copies and drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, telephone business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any Person(s), written or audio telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

11.     "Events of Default" shall have the meaning ascribed to it in the First Lien Credit Agreement.

12.     "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

13.     "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

14.     "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

15.     "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

16.     The "Georgia Action" shall mean the litigation in Georgia state court known as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that action.

17.     The words "Identify" or "Identity," when used with respect to a Person who is an individual, shall mean to state the following for each such Person:

        (a)     The Person's full name;

      (b)     The Person's present or last known business and residential addresses and telephone numbers;

      (c)     The full name and address of the Person's present or last known employer; and

      (d)     The present or last known position of employment held by the Person.

18.     The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

      (a)     The official name or designation for the Person, and its common or business name if different;

      (b)     The form of organization of the Person;

      (c)     The present or last known business address and telephone number of the Person; and

      (d)     The nature of the Person's trade or business.

19.     The words "Identify" and "Identity," when used with respect to a Document shall mean to state the following for each such Document:

      (a)     The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;

      (b)     The date or approximate date on which the Document was prepared;

      (c)     The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;

      (d)     The Identity of each Person to whom the Document or any copy of it was sent or addressed;

(e)     The Identity of each Person to whom the Document refers or relates in any way; and

(f)     The Identity of each Person having possession, custody or control of the Document or any copy of it.

20.     The words "Identify" or "Identity," when used with respect to a Communication shall mean to state the following for each such Communication:

(a)     The date or approximate date on which the Communication occurred;

(b)     State whether the Communication was in writing or oral;

(c)     Identify the participants to the Communication; and

(d)     State the substance of the Communication (provided, however, if the Communication was in writing, in lieu of stating the substance, Identify the Document which memorializes the Communication).

21.     "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

22.     "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

23.     "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

24.     "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

25.     "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

26.     "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

27.     "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

28.     "Spectrum" shall mean Spectrum Investment Partners LP and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

8

29.     "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit Agreement.

30.     "You" and "Your" shall mean and refer to Spectrum.

31.     "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American Alliance (Parallel) Fund II, LP.

32.     "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by Yucaipa in February of 2009.

## INSTRUCTIONS

1.      In answering these Interrogatories, if You cannot provide precise information, state the best estimation or approximation thereof, designated as such.  If You cannot answer any of the following Interrogatories in full after exercising due diligence to secure the full information to do so, so stale and answer to the extent possible, specifying Your inability to answer the remainder.

2.      If You object to a portion or aspect of an Interrogatory, state the grounds for Your objection with specificity and answer the remainder of the Interrogatory about which You do not object.

3.      Where Your response to an Interrogatory is based on a Document, produce a copy of the Document along with the response to the Interrogatory or, if the Document has been produced in this litigation, Identify that Document by bates number.

4.      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any

Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.      If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.      The date range for these Interrogatories shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

**INTERROGATORY NO. 1:**

State all facts upon which You base Your contention that Mr. Opdeweegh failed to comply with his duty of loyalty to Allied.

**INTERROGATORY NO. 2:**

State all facts upon which You base Your contention that Mr. Opdeweegh failed to comply with his duty of care to Allied.

**INTERROGATORY NO. 3:**

Describe in detail each and every instance in which You contend that Mr. Opdeweegh used his position on the board of Allied to benefit Yucaipa.

**INTERROGATORY NO. 4:**

Describe in detail each and every instance in which You allege that Mr. Opdeweegh took actions as a member of the board of Allied that were to the detriment of Allied.

**INTERROGATORY NO. 5:**

Describe in detail any instance in which You allege that Mr. Opdeweegh took actions as a member of the board of Allied that were to the benefit of Yucaipa.

**INTERROGATORY NO. 6:**

State all facts upon which You base Your contention that Mr. Opdeweegh influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

**INTERROGATORY NO. 7:**

State all facts upon which You base Your contention that that Mr. Opdeweegh failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**INTERROGATORY NO. 8:**

State all facts upon which You base Your contention that Mr. Opdeweegh played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

**INTERROGATORY NO. 9:**

State all facts upon which You base Your contention that Mr. Opdeweegh played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

**INTERROGATORY NO. 10:**

Identify each act that You contend Mr. Opdeweegh committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

**INTERROGATORY NO. 11:**

State all facts upon which You base Your contention that Mr. Opdeweegh was seeking to benefit himself individually at the expense of Allied.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
      Wilmington, Delaware

    YOUNG, CONAWAY, STARGATT &
      TAYLOR, LLP


*/s/ Michael R. Nestor*
John T. Dorsey, Esq. (No. 2988)
Michael R. Nestor (No. 3526)
Sharon M. Zieg, Esq. (No. 4196)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER LLP
Robert A. Klyman
Maurice M. Suh
Kahn Scolnick
333 South Grand Avenue
Los Angeles, CA  90071
Telephone: (213) 229-7000
RKlyman@gibsondunn.com
MSuh@gibsondunn.com
KScolnick@gibsondunn.com

*Attorneys for Defendant*,
Jos Opdeweegh

EXHIBIT 4.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREK WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

## YUCAIPA'S FIRST SET OF INTERROGATORIES TO PLAINTIFF/COUNTER-CLAIM DEFENDANT SPECTRUM INVESTMENT PARTNERS L.P.

Defendant and Counterclaimant Yucaipa American Alliance Fund I, L.P., by and through

its undersigned counsel, hereby requests, pursuant to Rules 26 and 33 of the Federal Rules of

Civil Procedure and Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, that on

1

or before thirty (30) days after the service hereof, Spectrum Investment Partners LP

("Spectrum") respond in writing to the following First Set of Interrogatories.

## DEFINITIONS

1.      "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group,

Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis

Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services,

Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems,

LLC, Logistic Support LLC, and Terminal Services LLC.

2.      "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black

Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants,

directors, officers, employees, partners, members, agents, representatives, parent entities

corporations, predecessor or successor corporations, partnerships or anyone else acting or

purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related

parties, predecessors in interest, successors in interest, or assigns.

3.      "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A.

Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of

Delaware on May 17, 2012 in case No. 12-11564.

4.      "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present

Persons, entities, attorneys, accountants, directors, officers, employees, partners, members,

agents, representatives, parent entities, corporations, predecessor or successor corporations,

partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as

Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates,

divisions, related parties, predecessors in interest, successors in interest, or assigns.

2

5.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

6.      "Complaint" shall mean the operative complaint in the above-entitled action.  At the time of service of these Interrogatories, the operative complaint is the above-entitled action is the Complaint for Equitable Subordination, Breach of Complaint for (I) Equitable Subordination, (II) Breach of Contract, (III) Breach of the Implied Duty of Good Faith and Fair Dealing, and (IV) Tortious Interference with Contract, filed on November 19, 2014 in the United States Bankruptcy Court for the District of Delaware.

7.      "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

8.      "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

9.      "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any

informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum Relating to Allied or Yucaipa.

10.    "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as approved by the United States Bankruptcy Court for the District of Delaware on September 17, 2013.

11.    The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense.  It shall not be limited in any way with respect to the process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "documents," "electronically stored information," or "tangible thing" as contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether in writing, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the foregoing, such Documents specifically include, without limitation, all originals, copies and drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, telephone business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any Person(s), written or audio

4

telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

12.     "Events of Default" shall have the meaning ascribed to it in the First Lien Credit Agreement.

13.     "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

14.     "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

15.     "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

16.     "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

17.     The "Georgia Action" shall mean the litigation in Georgia state court known as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-

CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that action.

18.     The words "Identify" or "Identity," when used with respect to a Person who is an individual, shall mean to state the following for each such Person:

(a)     The Person's full name;

(b)     The Person's present or last known business and residential addresses and telephone numbers;

(c)     The full name and address of the Person's present or last known employer; and

(d)     The present or last known position of employment held by the Person.

19.     The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

(a)     The official name or designation for the Person, and its common or business name if different;

(b)     The form of organization of the Person;

(c)     The present or last known business address and telephone number of the Person; and

(d)     The nature of the Person's trade or business.

20.     The words "Identify" and "Identity," when used with respect to a Document shall mean to state the following for each such Document:

(a)     The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;

  (b)  The date or approximate date on which the Document was prepared;

  (c)  The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;

  (d)  The Identity of each Person to whom the Document or any copy of it was sent or addressed;

  (e)  The Identity of each Person to whom the Document refers or relates in any way; and

  (f)  The Identity of each Person having possession, custody or control of the Document or any copy of it.

21.  The words "Identify" or "Identity," when used with respect to a Communication shall mean to state the following for each such Communication:

  (a)  The date or approximate date on which the Communication occurred;

  (b)  State whether the Communication was in writing or oral;

  (c)  Identify the participants to the Communication; and

  (d)  State the substance of the Communication (provided, however, if the Communication was in writing, in lieu of stating the substance, Identify the Document which memorializes the Communication).

22.  "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

23.     "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

24.     "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

25.     "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

26.     "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

27.     "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

28.     "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

29.     "Spectrum" shall mean Spectrum Investment Partners LP and all past and present

Persons, entities, attorneys, accountants, directors, officers, employees, partners, members,

agents, representatives, parent entities, corporations, predecessor or successor corporations,

partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its

affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

30.     "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit

Agreement.

31.     "You" and "Your" shall mean and refer to Spectrum.

32.     "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American

Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American

Alliance (Parallel) Fund II, LP.

33.     "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by

Yucaipa in February of 2009.

## INSTRUCTIONS

1.     In answering these Interrogatories, if You cannot provide precise information,

state the best estimation or approximation thereof, designated as such.  If You cannot answer any

of the following Interrogatories in full after exercising due diligence to secure the full

information to do so, so stale and answer to the extent possible, specifying Your inability to

answer the remainder.

2.     If You object to a portion or aspect of an Interrogatory, state the grounds for Your

objection with specificity and answer the remainder of the Interrogatory about which You do not

object.

3.    Where Your response to an Interrogatory is based on a Document, produce a copy of the Document along with the response to the Interrogatory or, if the Document has been produced in this litigation, Identify that Document by bates number.

4.    The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.    If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.    The date range for these Interrogatories shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

**INTERROGATORY NO. 1:**

State each of the date(s) on which You acquired or sold any Allied First Lien Debt or Second Lien Debt.

**INTERROGATORY NO. 2:**

For each of the acquisitions or sales identified in Your response to Interrogatory Number 1, Identify the Person(s) from whom You acquired or sold such Debt.

**INTERROGATORY NO. 3:**

For each of the acquisitions or sales identified in Your response to Interrogatory Number 1, state the purchase price paid or received by You in connection with each acquisition or sale and the form of purchase price paid or received.

**INTERROGATORY NO. 4:**

State all facts upon which You base Your contention in paragraph 40 of the Complaint that Yucaipa had the ability to exercise "complete control" of Allied's Board.

**INTERROGATORY NO. 5:**

Describe in detail all reasons You claim You "took a back seat" in negotiating and drafting the terms of the Third Amendment to the First Lien Credit Agreement and "allowed" Yucaipa to lead the negotiations, as alleged in paragraph 52 of the Complaint.

**INTERROGATORY NO. 6:**

State all facts upon which You base Your contention in paragraph 56 of the Complaint that Yucaipa had a scheme to take total control over the First Lien Credit Agreement to the detriment of the legitimate First Lien Lenders.

**INTERROGATORY NO. 7:**

State all facts to support Your contention in paragraph 18 of the Complaint that Yucaipa was protecting its equity by buying the First Lien Debt from ComVest.

**INTERROGATORY NO. 8:**

Describe in detail Your understanding of the value of Yucaipa's equity in Allied as of August 21, 2009.

**INTERROGATORY NO. 9:**

State the value You assigned Your First Lien Debt as of August 21, 2009.

**INTERROGATORY NO. 10:**

State all facts upon which You base Your contention in paragraph 65 of the Complaint that Yucaipa stonewalled ComVest's efforts to pursue a sale or restructuring.

**INTERROGATORY NO. 11:**

State all facts upon which You base Your contention in paragraph 65 of the Complaint that Yucaipa withheld any payment of principal or interest due under the First Lien Credit Agreement, including Identifying each payment of principal or interest purportedly withheld and in what capacity and with what authority Yucaipa purportedly withheld any such payment.

**INTERROGATORY NO. 12:**

State all facts upon which You base Your contention in paragraph 65 of the Complaint that the unanimous vote at the August 3, 2009 Allied Board meeting to forego the quarterly interest payment was made in order to facilitate Yucaipa's interests in negotiations with ComVest.

**INTERROGATORY NO. 13:**

State all facts upon which You base Your contention in paragraph 78 of the Complaint that You were prevented from exercising any rights or remedies under the First Lien Credit Agreement after August 21, 2009.

**INTERROGATORY NO. 14:**

Identify every reason You submitted invoices for payment to Allied for work performed by Ropes & Gray LLP on Your behalf in 2009 in connection with the investigation of "creditor remedies."

**INTERROGATORY NO. 15:**

Describe in detail all reasons You waited to file the involuntary bankruptcy petitions against Allied in the Bankruptcy Court for the District of Delaware until May 2012.

**INTERROGATORY NO. 16:**

Describe in detail all reasons You instructed CIT to refrain from exercising its remedies in December 2008 when CIT attempted to do so as an agent on the First Lien Debt.

**INTERROGATORY NO. 17:**

Identify every instance in which You claim that Allied attempted to retain excess cash in violation of the terms of the First Lien Credit Agreement.

**INTERROGATORY NO. 18:**

Identify every Communication between You and CIT regarding the Fourth Amendment.

**INTERROGATORY NO. 19:**

Identify every Communication between You and CIT regarding the Georgia Action.

**INTERROGATORY NO. 20:**

Identify every Communication between Mr. Schaffer and Mr. Ehrlich regarding Yucaipa's plan to acquire ComVest's First Lien Claims and the Requisite Lender position.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
      Wilmington, Delaware

          YOUNG, CONAWAY, STARGATT &
             TAYLOR, LLP

          */s/ Michael R. Nestor*
          John T. Dorsey, Esq. (No. 2988)
          Michael R. Nestor (No. 3526)
          Sharon M. Zieg, Esq. (No. 4196)
          Michael S. Neiburg (No. 5275)
          Rodney Square
          1000 North King Street
          Wilmington, DE 19801
          Telephone: (302) 571-6600
          mnestor@ycst.com

          - and-

          GIBSON, DUNN & CRUTCHER LLP
          Robert A. Klyman
          Maurice M. Suh
          Kahn Scolnick
          333 South Grand Avenue
          Los Angeles, CA  90071
          Telephone: (213) 229-7000
          RKlyman@gibsondunn.com
          MSuh@gibsondunn.com
          KScolnick@gibsondunn.com

          *Attorneys for Defendant*,
          Yucaipa American Alliance Fund I, L.P.

EXHIBIT 4.2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**DEREX WALKER'S FIRST SET OF INTERROGATORIES
TO PLAINTIFF/COUNTER-CLAIM DEFENDANT
SPECTRUM INVESTMENT PARTNERS L.P.**

Defendant Derex Walker, by and through his undersigned counsel, hereby requests,

pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 7026 and 7033 of

the Federal Rules of Bankruptcy Procedure, that on or before thirty (30) days after the service

1

hereof, Spectrum Investment Partners LP ("Spectrum") respond in writing to the following First Set of Interrogatories.

## DEFINITIONS

1.      "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group, Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services, Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems, LLC, Logistic Support LLC, and Terminal Services LLC.

2.      "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

3.      "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A. Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of Delaware on May 17, 2012 in case No. 12-11564.

4.      "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

2

5.    "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

6.    "Complaint" shall mean the operative complaint in the above-entitled action.  At the time of service of these Interrogatories, the operative complaint is the above-entitled action is the Complaint for Equitable Subordination, Breach of Complaint for (I) Equitable Subordination, (II) Breach of Contract, (III) Breach of the Implied Duty of Good Faith and Fair Dealing, and (IV) Tortious Interference with Contract, filed on November 19, 2014 in the United States Bankruptcy Court for the District of Delaware.

7.    "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

8.    "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

9.    "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any

informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum Relating to Allied or Yucaipa.

10. "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as approved by the United States Bankruptcy Court for the District of Delaware on September 17, 2013.

11. The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense. It shall not be limited in any way with respect to the process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "documents," "electronically stored information," or "tangible thing" as contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether in writing, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered. Without limiting the generality of the foregoing, such Documents specifically include, without limitation, all originals, copies and drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, telephone business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any Person(s), written or audio

telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

12.    "Events of Default" shall have the meaning ascribed to it in the First Lien Credit Agreement.

13.    "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

14.    "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

15.    "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

16.    "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

17.    The "Georgia Action" shall mean the litigation in Georgia state court known as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-

CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that action.

18.     The words "Identify" or "Identity," when used with respect to a Person who is an individual, shall mean to state the following for each such Person:

    (a)     The Person's full name;

    (b)     The Person's present or last known business and residential addresses and telephone numbers;

    (c)     The full name and address of the Person's present or last known employer; and

    (d)     The present or last known position of employment held by the Person.

19.     The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

    (a)     The official name or designation for the Person, and its common or business name if different;

    (b)     The form of organization of the Person;

    (c)     The present or last known business address and telephone number of the Person; and

    (d)     The nature of the Person's trade or business.

20.     The words "Identify" and "Identity," when used with respect to a Document shall mean to state the following for each such Document:

    (a)     The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;

(b)     The date or approximate date on which the Document was prepared;

(c)     The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;

(d)     The Identity of each Person to whom the Document or any copy of it was sent or addressed;

(e)     The Identity of each Person to whom the Document refers or relates in any way; and

(f)     The Identity of each Person having possession, custody or control of the Document or any copy of it.

21.     The words "Identify" or "Identity," when used with respect to a Communication shall mean to state the following for each such Communication:

(a)     The date or approximate date on which the Communication occurred;

(b)     State whether the Communication was in writing or oral;

(c)     Identify the participants to the Communication; and

(d)     State the substance of the Communication (provided, however, if the Communication was in writing, in lieu of stating the substance, Identify the Document which memorializes the Communication).

22.     "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

23.     "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

24.     "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

25.     "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

26.     "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

27.     "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

28.     "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

29.     "Spectrum" shall mean Spectrum Investment Partners LP and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

30.     "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit Agreement.

31.     "You" and "Your" shall mean and refer to Spectrum.

32.     "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American Alliance (Parallel) Fund II, LP.

33.     "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by Yucaipa in February of 2009.

## INSTRUCTIONS

1.     In answering these Interrogatories, if You cannot provide precise information, state the best estimation or approximation thereof, designated as such.  If You cannot answer any of the following Interrogatories in full after exercising due diligence to secure the full information to do so, so stale and answer to the extent possible, specifying Your inability to answer the remainder.

2.     If You object to a portion or aspect of an Interrogatory, state the grounds for Your objection with specificity and answer the remainder of the Interrogatory about which You do not object.

3.      Where Your response to an Interrogatory is based on a Document, produce a copy of the Document along with the response to the Interrogatory or, if the Document has been produced in this litigation, Identify that Document by bates number.

4.      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.      If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.      The date range for these Interrogatories shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

**INTERROGATORY NO. 1:**

State all facts upon which You base Your contention that Mr. Walker failed to comply with his duty of loyalty to Allied.

**INTERROGATORY NO. 2:**

State all facts upon which You base Your contention that Mr. Walker failed to comply with his duty of care to Allied.

**INTERROGATORY NO. 3:**

Describe in detail each and every instance in which You contend that Mr. Walker used his position on the board of Allied to benefit Yucaipa.

**INTERROGATORY NO. 4:**

Describe in detail each and every instance in which You allege that Mr. Walker took actions as a member of the board of Allied that were to the detriment of Allied.

**INTERROGATORY NO. 5:**

Describe in detail any instance in which You allege that Mr. Walker took actions as a member of the board of Allied that were to the benefit of Yucaipa.

**INTERROGATORY NO. 6:**

State all facts upon which You base Your contention that Mr. Walker influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

**INTERROGATORY NO. 7:**

State all facts upon which You base Your contention that that Mr. Walker failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**INTERROGATORY NO. 8:**

State all facts upon which You base Your contention that Mr. Walker played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

**INTERROGATORY NO. 9:**

State all facts upon which You base Your contention that Mr. Walker played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

**INTERROGATORY NO. 10:**

Identify each act that You contend Mr. Walker committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

**INTERROGATORY NO. 11:**

State all facts upon which You base Your contention that Mr. Walker was seeking to benefit himself individually at the expense of Allied.

**INTERROGATORY NO. 12:**

Describe in detail every objection that You communicated to Yucaipa about Yucaipa acquiring ComVest's First Lien Claims between May 15, 2007 and August 21, 2009.

**INTERROGATORY NO. 13:**

Describe in detail every reason You declined to ask CIT to refuse to close the trade between Yucaipa and ComVest.

**INTERROGATORY NO. 14:**

Describe in detail every reason You did not send Your September 2009 letter challenging Yucaipa's status as Requisite Lender directly to Yucaipa.

**INTERROGATORY NO. 15:**

Describe in detail every objection You communicated to Yucaipa about Yucaipa becoming the Requisite Lender between May 15, 2007 and August 21, 2009.

**INTERROGATORY NO. 16:**

Describe in detail all harm You claim to have suffered as a result of Yucaipa's purported "complete control" of Allied's Board as alleged in paragraph 40 of the Complaint.

**INTERROGATORY NO. 17:**

Identify any communications between You and SBDRE in SBDRE's role as Administrative Agent regarding Yucaipa's expense reimbursement claim.

**INTERROGATORY NO. 18:**

Describe in detail every reason Your expenses and those of the other Lenders were reimbursed but Yucaipa's expenses were not reimbursed.

**INTERROGATORY NO. 19:**

Identify every reason You, at the time of the Credit Bid and in Your purported capacity as Requisite Lender, proposed segregating all of Allied's assets into one tranche to hold the fixed assets and other salable assets (including equipment and real estate) and another tranche for its debt and liabilities (including the collective bargaining agreement), and the basis for not treating all lenders (including Yucaipa) identically with respect to both tranches.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
       Wilmington, Delaware

                    YOUNG, CONAWAY, STARGATT &
                       TAYLOR, LLP

                    */s/ Michael R. Nestor*
                    John T. Dorsey, Esq. (No. 2988)
                    Michael R. Nestor (No. 3526)
                    Sharon M. Zieg, Esq. (No. 4196)
                    Michael S. Neiburg (No. 5275)
                    Rodney Square
                    1000 North King Street
                    Wilmington, DE 19801
                    Telephone: (302) 571-6600
                    mnestor@ycst.com

                    - and-

                    GIBSON, DUNN & CRUTCHER LLP
                    Robert A. Klyman
                    Maurice M. Suh
                    Kahn Scolnick
                    333 South Grand Avenue
                    Los Angeles, CA  90071
                    Telephone: (213) 229-7000
                    RKlyman@gibsondunn.com
                    MSuh@gibsondunn.com
                    KScolnick@gibsondunn.com

                    *Attorneys for Defendant*,
                    Derex Walker

EXHIBIT 4.3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**IRA TOCHNER'S FIRST SET OF INTERROGATORIES
TO PLAINTIFF/COUNTER-CLAIM DEFENDANT
SPECTRUM INVESTMENT PARTNERS L.P.**

Defendant Ira Tochner, by and through his undersigned counsel, hereby requests,

pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 7026 and 7033 of

the Federal Rules of Bankruptcy Procedure, that on or before thirty (30) days after the service

hereof, Spectrum Investment Partners LP ("Spectrum") respond in writing to the following First Set of Interrogatories.

## **DEFINITIONS**

1.      "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group, Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services, Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems, LLC, Logistic Support LLC, and Terminal Services LLC.

2.      "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

3.      "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A. Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of Delaware on May 17, 2012 in case No. 12-11564.

4.      "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

5.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

6.      "Complaint" shall mean the operative complaint in the above-entitled action.  At the time of service of these Interrogatories, the operative complaint is the above-entitled action is the Complaint for Equitable Subordination, Breach of Complaint for (I) Equitable Subordination, (II) Breach of Contract, (III) Breach of the Implied Duty of Good Faith and Fair Dealing, and (IV) Tortious Interference with Contract, filed on November 19, 2014 in the United States Bankruptcy Court for the District of Delaware.

7.      "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

8.      "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

9.      "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any

3

informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum Relating to Allied or Yucaipa.

10.     "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as approved by the United States Bankruptcy Court for the District of Delaware on September 17, 2013.

11.     The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense.  It shall not be limited in any way with respect to the process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "documents," "electronically stored information," or "tangible thing" as contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether in writing, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the foregoing, such Documents specifically include, without limitation, all originals, copies and drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, telephone business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any Person(s), written or audio

telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

12.     "Events of Default" shall have the meaning ascribed to it in the First Lien Credit Agreement.

13.     "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

14.     "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

15.     "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

16.     "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

17.     The "Georgia Action" shall mean the litigation in Georgia state court known as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-

CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that action.

18.    The words "Identify" or "Identity," when used with respect to a Person who is an individual, shall mean to state the following for each such Person:

(a)    The Person's full name;

(b)    The Person's present or last known business and residential addresses and telephone numbers;

(c)    The full name and address of the Person's present or last known employer; and

(d)    The present or last known position of employment held by the Person.

19.    The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

(a)    The official name or designation for the Person, and its common or business name if different;

(b)    The form of organization of the Person;

(c)    The present or last known business address and telephone number of the Person; and

(d)    The nature of the Person's trade or business.

20.    The words "Identify" and "Identity," when used with respect to a Document shall mean to state the following for each such Document:

(a)    The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;

  (b) The date or approximate date on which the Document was prepared;

  (c) The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;

  (d) The Identity of each Person to whom the Document or any copy of it was sent or addressed;

  (e) The Identity of each Person to whom the Document refers or relates in any way; and

  (f) The Identity of each Person having possession, custody or control of the Document or any copy of it.

21. The words "Identify" or "Identity," when used with respect to a Communication shall mean to state the following for each such Communication:

  (a) The date or approximate date on which the Communication occurred;

  (b) State whether the Communication was in writing or oral;

  (c) Identify the participants to the Communication; and

  (d) State the substance of the Communication (provided, however, if the Communication was in writing, in lieu of stating the substance, Identify the Document which memorializes the Communication).

22. "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

23.     "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

24.     "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

25.     "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

26.     "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

27.     "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

28.     "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

29.    "Spectrum" shall mean Spectrum Investment Partners LP and all past and present

Persons, entities, attorneys, accountants, directors, officers, employees, partners, members,

agents, representatives, parent entities, corporations, predecessor or successor corporations,

partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its

affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

30.    "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit

Agreement.

31.    "You" and "Your" shall mean and refer to Spectrum.

32.    "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American

Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American

Alliance (Parallel) Fund II, LP.

33.    "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by

Yucaipa in February of 2009.

## INSTRUCTIONS

1.    In answering these Interrogatories, if You cannot provide precise information,

state the best estimation or approximation thereof, designated as such.  If You cannot answer any

of the following Interrogatories in full after exercising due diligence to secure the full

information to do so, so stale and answer to the extent possible, specifying Your inability to

answer the remainder.

2.    If You object to a portion or aspect of an Interrogatory, state the grounds for Your

objection with specificity and answer the remainder of the Interrogatory about which You do not

object.

3.      Where Your response to an Interrogatory is based on a Document, produce a copy of the Document along with the response to the Interrogatory or, if the Document has been produced in this litigation, Identify that Document by bates number.

4.      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.      If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.      The date range for these Interrogatories shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

**INTERROGATORY NO. 1:**

State all facts upon which You base Your contention that Mr. Tochner failed to comply with his duty of loyalty to Allied.

**INTERROGATORY NO. 2:**

State all facts upon which You base Your contention that Mr. Tochner failed to comply with his duty of care to Allied.

**INTERROGATORY NO. 3:**

Describe in detail each and every instance in which You contend that Mr. Tochner used his position on the board of Allied to benefit Yucaipa.

**INTERROGATORY NO. 4:**

Describe in detail each and every instance in which You allege that Mr. Tochner took actions as a member of the board of Allied that were to the detriment of Allied.

**INTERROGATORY NO. 5:**

Describe in detail any instance in which You allege that Mr. Tochner took actions as a member of the board of Allied that were to the benefit of Yucaipa.

**INTERROGATORY NO. 6:**

State all facts upon which You base Your contention that Mr. Tochner influenced Allied, at Yucaipa's direction,  to bring suit against CIT in the Georgia Action.

**INTERROGATORY NO. 7:**

State all facts upon which You base Your contention that that Mr. Tochner failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**INTERROGATORY NO. 8:**

State all facts upon which You base Your contention that Mr. Tochner played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

**INTERROGATORY NO. 9:**

State all facts upon which You base Your contention that Mr. Tochner played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

**INTERROGATORY NO. 10:**

Identify each act that You contend Mr. Tochner committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

**INTERROGATORY NO. 11:**

State all facts upon which You base Your contention that Mr. Tochner was seeking to benefit himself individually at the expense of Allied.

**INTERROGATORY NO. 12:**

State all facts upon which You base Your contention in paragraph 83 of the Complaint that Allied brought the Georgia Action at Yucaipa's direction.

**INTERROGATORY NO. 13:**

Identify every transaction that You claim the First Lien Lenders were unable to take regarding any Events of Default during the pendency of the Georgia Action.

**INTERROGATORY NO. 14:**

State all facts upon which You base Your contention in paragraph 94 of the Complaint that Yucaipa did not attempt to negotiate with Jack Cooper for the highest and best purchase price for Allied's assets.

**INTERROGATORY NO. 15:**

State all facts upon which You base Your contention in paragraph 96 of the Complaint that Yucaipa was "improperly using its alleged Requisite Lender position" in pursuing a sale of its First Lien Debt to Jack Cooper.

**INTERROGATORY NO. 16:**

Identify every Communication You had with Jack Cooper regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied.

**INTERROGATORY NO. 17:**

Identify every Communication You had with Black Diamond regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied.

**INTERROGATORY NO. 18:**

Describe in detail all every one of the "strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" contemplated by the Cooperation Agreement.

**INTERROGATORY NO. 19:**

Describe in detail all reasons You did not sign the Cooperation Agreement prior to January 2012.

**INTERROGATORY NO. 20:**

Identify the amount You paid Black Diamond for the transfer of $4,239,486.90 in First Lien Debt from Black Diamond.

**INTERROGATORY NO. 21:**

Describe in detail all reasons You acquired $4,239,486.90 in First Lien Debt from Black Diamond.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
          Wilmington, Delaware

                       YOUNG, CONAWAY, STARGATT &
                             TAYLOR, LLP

                      */s/ Michael R. Nestor*
                      John T. Dorsey, Esq. (No. 2988)
                      Michael R. Nestor (No. 3526)
                      Sharon M. Zieg, Esq. (No. 4196)
                      Michael S. Neiburg (No. 5275)
                      Rodney Square
                      1000 North King Street
                      Wilmington, DE 19801
                      Telephone: (302) 571-6600
                      mnestor@ycst.com

                      - and-

                      GIBSON, DUNN & CRUTCHER LLP
                      Robert A. Klyman
                      Maurice M. Suh
                      Kahn Scolnick
                      333 South Grand Avenue
                      Los Angeles, CA  90071
                      Telephone: (213) 229-7000
                      RKlyman@gibsondunn.com
                      MSuh@gibsondunn.com
                      KScolnick@gibsondunn.com

                      *Attorneys for Defendant*,
                      Ira Tochner

EXHIBIT 4.4

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREK WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**JEFF PELLETIER'S FIRST SET OF INTERROGATORIES**
**TO PLAINTIFF/COUNTER-CLAIM DEFENDANT**
**SPECTRUM INVESTMENT PARTNERS L.P.**

Defendant Jeff Pelletier, by and through his undersigned counsel, hereby requests,

pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 7026 and 7033 of

the Federal Rules of Bankruptcy Procedure, that on or before thirty (30) days after the service

hereof, Spectrum Investment Partners LP ("Spectrum") respond in writing to the following First Set of Interrogatories.

## DEFINITIONS

1.    "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group, Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services, Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems, LLC, Logistic Support LLC, and Terminal Services LLC.

2.    "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

3.    "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A. Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of Delaware on May 17, 2012 in case No. 12-11564.

4.    "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

2

5.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

6.      "Complaint" shall mean the operative complaint in the above-entitled action.  At the time of service of these Interrogatories, the operative complaint is the above-entitled action is the Complaint for Equitable Subordination, Breach of Complaint for (I) Equitable Subordination, (II) Breach of Contract, (III) Breach of the Implied Duty of Good Faith and Fair Dealing, and (IV) Tortious Interference with Contract, filed on November 19, 2014 in the United States Bankruptcy Court for the District of Delaware.

7.      "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

8.      "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

9.      "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any

3

informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum

Relating to Allied or Yucaipa.

10.     "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as

approved by the United States Bankruptcy Court for the District of Delaware on September 17,

2013.

11.     The term "Document(s)" shall include electronically stored information ("ESI")

and is used in its customary broad sense.  It shall not be limited in any way with respect to the

process by which any Document was created, generated, or reproduced, or with respect to the

medium in which the Document is embodied; and shall include, by way of example and without

any limitation, all "documents," "electronically stored information," or "tangible thing" as

contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings,"

"recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and

any kind of tangible material in any medium of any type, upon which intelligence or information

is recorded, or from which intelligence or information can be perceived, whether in writing,

recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic

or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the

foregoing, such Documents specifically include, without limitation, all originals, copies and

drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures,

ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams,

cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes,

transcriptions of records and recordings, business records, telephone business records, desk

calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks,

memoranda of telephone or other conversations by or with any Person(s), written or audio

telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

12.    "Events of Default" shall have the meaning ascribed to it in the First Lien Credit Agreement.

13.    "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

14.    "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

15.    "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

16.    "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

17.    The "Georgia Action" shall mean the litigation in Georgia state court known as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-

CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that action.

18.     The words "Identify" or "Identity," when used with respect to a Person who is an individual, shall mean to state the following for each such Person:

      (a)     The Person's full name;

      (b)     The Person's present or last known business and residential addresses and telephone numbers;

      (c)     The full name and address of the Person's present or last known employer; and

      (d)     The present or last known position of employment held by the Person.

19.     The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

      (a)     The official name or designation for the Person, and its common or business name if different;

      (b)     The form of organization of the Person;

      (c)     The present or last known business address and telephone number of the Person; and

      (d)     The nature of the Person's trade or business.

20.     The words "Identify" and "Identity," when used with respect to a Document shall mean to state the following for each such Document:

      (a)     The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;

      (b)     The date or approximate date on which the Document was prepared;

      (c)     The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;

      (d)     The Identity of each Person to whom the Document or any copy of it was sent or addressed;

      (e)     The Identity of each Person to whom the Document refers or relates in any way; and

      (f)     The Identity of each Person having possession, custody or control of the Document or any copy of it.

21.     The words "Identify" or "Identity," when used with respect to a Communication shall mean to state the following for each such Communication:

      (a)     The date or approximate date on which the Communication occurred;

      (b)     State whether the Communication was in writing or oral;

      (c)     Identify the participants to the Communication; and

      (d)     State the substance of the Communication (provided, however, if the Communication was in writing, in lieu of stating the substance, Identify the Document which memorializes the Communication).

22.     "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

23.     "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

24.     "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

25.     "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

26.     "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

27.     "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

28.     "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

29.    "Spectrum" shall mean Spectrum Investment Partners LP and all past and present

Persons, entities, attorneys, accountants, directors, officers, employees, partners, members,

agents, representatives, parent entities, corporations, predecessor or successor corporations,

partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its

affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

30.    "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit

Agreement.

31.    "You" and "Your" shall mean and refer to Spectrum.

32.    "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American

Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American

Alliance (Parallel) Fund II, LP.

33.    "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by

Yucaipa in February of 2009.

## INSTRUCTIONS

1.    In answering these Interrogatories, if You cannot provide precise information,

state the best estimation or approximation thereof, designated as such.  If You cannot answer any

of the following Interrogatories in full after exercising due diligence to secure the full

information to do so, so stale and answer to the extent possible, specifying Your inability to

answer the remainder.

2.    If You object to a portion or aspect of an Interrogatory, state the grounds for Your

objection with specificity and answer the remainder of the Interrogatory about which You do not

object.

3.      Where Your response to an Interrogatory is based on a Document, produce a copy of the Document along with the response to the Interrogatory or, if the Document has been produced in this litigation, Identify that Document by bates number.

4.      The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.      If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.      The date range for these Interrogatories shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

**INTERROGATORY NO. 1:**

State all facts upon which You base Your contention that Mr. Pelletier failed to comply with his duty of loyalty to Allied.

**INTERROGATORY NO. 2:**

State all facts upon which You base Your contention that Mr. Pelletier failed to comply with his duty of care to Allied.

**INTERROGATORY NO. 3:**

Describe in detail each and every instance in which You contend that Mr. Pelletier used his position on the board of Allied to benefit Yucaipa.

**INTERROGATORY NO. 4:**

Describe in detail each and every instance in which You allege that Mr. Pelletier took actions as a member of the board of Allied that were to the detriment of Allied.

**INTERROGATORY NO. 5:**

Describe in detail any instance in which You allege that Mr. Pelletier took actions as a member of the board of Allied that were to the benefit of Yucaipa.

**INTERROGATORY NO. 6:**

State all facts upon which You base Your contention that Mr. Pelletier influenced Allied, at Yucaipa's direction,  to bring suit against CIT in the Georgia Action.

**INTERROGATORY NO. 7:**

State all facts upon which You base Your contention that that Mr. Pelletier failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**INTERROGATORY NO. 8:**

State all facts upon which You base Your contention that Mr. Pelletier played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

**INTERROGATORY NO. 9:**

State all facts upon which You base Your contention that Mr. Pelletier played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

**INTERROGATORY NO. 10:**

Identify each act that You contend Mr. Pelletier committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

**INTERROGATORY NO. 11:**

State all facts upon which You base Your contention that Mr. Pelletier was seeking to benefit himself individually at the expense of Allied.

**INTERROGATORY NO. 12:**

Describe in detail all reasons You acquired $4,239,486.90 in First Lien Debt from Black Diamond.

**INTERROGATORY NO. 13:**

Identify any other trades You considered pursuant to the Cooperation Agreement but did not execute, including identifying whether You offered Black Diamond a pro rata right to share in those trades.

**INTERROGATORY NO. 14:**

Describe in detail all reasons You did not disclose the transfer of the $4,239,486.90 in First Lien Debt in the Black Diamond and Spectrum Affidavits.

**INTERROGATORY NO. 15:**

Describe in detail all reasons You did not disclose the transfer of the $4,239,486.90 in First Lien Debt in connection with the filing of the involuntary bankruptcy filing in May 2012 or in response to related discovery.

**INTERROGATORY NO. 16:**

State all facts upon which You base Your contention that Yucaipa refused to perform in accordance with the terms of the First Lien Credit Agreement, as amended by the Third Amendment.

**INTERROGATORY NO. 17:**

State the price You paid for the First Lien Claims You held (and the amount of such claims held) at the time of the involuntary bankruptcy filing in May 2012.

**INTERROGATORY NO. 18:**

Describe in detail all reasons You rejected the Yucaipa Tender Offer.

**INTERROGATORY NO. 19:**

Identify the date You first considered seeking equitable subordination of Yucaipa in

relation to Your Allied First Lien Claims.

**INTERROGATORY NO. 20:**

Identify the date You first discussed equitable subordination of Yucaipa in relation to

Your Allied First Lien Claims with any other party, including but not limited to T. Michael

Riggs, Kirk Ferguson, or Black Diamond.

**INTERROGATORY NO. 21:**

Identify the date You first learned that Yucaipa was negotiating with ComVest to acquire

ComVest's First Lien Debt.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
          Wilmington, Delaware

                                  YOUNG, CONAWAY, STARGATT &
                                       TAYLOR, LLP


                                  */s/ Michael R. Nestor*
                                  John T. Dorsey, Esq. (No. 2988)
                                  Michael R. Nestor (No. 3526)
                                  Sharon M. Zieg, Esq. (No. 4196)
                                  Michael S. Neiburg (No. 5275)
                                  Rodney Square
                                  1000 North King Street
                                  Wilmington, DE 19801
                                  Telephone: (302) 571-6600
                                  mnestor@ycst.com

                                  - and-

                                  GIBSON, DUNN & CRUTCHER LLP
                                  Robert A. Klyman
                                  Maurice M. Suh
                                  Kahn Scolnick
                                  333 South Grand Avenue
                                  Los Angeles, CA  90071
                                  Telephone: (213) 229-7000
                                  RKlyman@gibsondunn.com
                                  MSuh@gibsondunn.com
                                  KScolnick@gibsondunn.com

                                  *Attorneys for Defendant*,
                                  Jeff Pelletier

EXHIBIT 4.5

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**JOSEPH TOMCZAK'S FIRST SET OF INTERROGATORIES**
**TO PLAINTIFF/COUNTER-CLAIM DEFENDANT**
**SPECTRUM INVESTMENT PARTNERS L.P.**

Defendant Joseph Tomczak, by and through his undersigned counsel, hereby requests,

pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 7026 and 7033 of

the Federal Rules of Bankruptcy Procedure, that on or before thirty (30) days after the service

hereof, Spectrum Investment Partners LP ("Spectrum") respond in writing to the following First Set of Interrogatories.

## DEFINITIONS

1.      "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group, Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services, Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems, LLC, Logistic Support LLC, and Terminal Services LLC.

2.      "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

3.      "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A. Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of Delaware on May 17, 2012 in case No. 12-11564.

4.      "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

5.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

6.      "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

7.      "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

8.      "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum Relating to Allied or Yucaipa.

9.      "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as approved by the United States Bankruptcy Court for the District of Delaware on September 17, 2013.

10.     The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense.  It shall not be limited in any way with respect to the

process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "documents," "electronically stored information," or "tangible thing" as contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether in writing, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the foregoing, such Documents specifically include, without limitation, all originals, copies and drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, telephone business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any Person(s), written or audio telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

11.    "Events of Default" shall have the meaning ascribed to it in the First Lien Credit Agreement.

12.    "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

13.    "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

14.    "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

15.    "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

16.    The "Georgia Action" shall mean the litigation in Georgia state court known as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that action.

17.    The words "Identify" or "Identity," when used with respect to a Person who is an individual, shall mean to state the following for each such Person:

(a)    The Person's full name;

5

(b)     The Person's present or last known business and residential addresses and telephone numbers;

(c)     The full name and address of the Person's present or last known employer; and

(d)     The present or last known position of employment held by the Person.

18.     The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

(a)     The official name or designation for the Person, and its common or business name if different;

(b)     The form of organization of the Person;

(c)     The present or last known business address and telephone number of the Person; and

(d)     The nature of the Person's trade or business.

19.     The words "Identify" and "Identity," when used with respect to a Document shall mean to state the following for each such Document:

(a)     The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;

(b)     The date or approximate date on which the Document was prepared;

(c)     The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;

(d)     The Identity of each Person to whom the Document or any copy of it was sent or addressed;

(e)    The Identity of each Person to whom the Document refers or relates in any way; and

(f)    The Identity of each Person having possession, custody or control of the Document or any copy of it.

20.    The words "Identify" or "Identity," when used with respect to a Communication shall mean to state the following for each such Communication:

(a)    The date or approximate date on which the Communication occurred;

(b)    State whether the Communication was in writing or oral;

(c)    Identify the participants to the Communication; and

(d)    State the substance of the Communication (provided, however, if the Communication was in writing, in lieu of stating the substance, Identify the Document which memorializes the Communication).

21.    "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

22.    "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

23.    "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

24.    "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

25.    "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

26.    "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

27.    "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

28.    "Spectrum" shall mean Spectrum Investment Partners LP and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

29.    "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit Agreement.

30.    "You" and "Your" shall mean and refer to Spectrum.

31.    "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American Alliance (Parallel) Fund II, LP.

32.    "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by Yucaipa in February of 2009.

### INSTRUCTIONS

1.    In answering these Interrogatories, if You cannot provide precise information, state the best estimation or approximation thereof, designated as such.  If You cannot answer any of the following Interrogatories in full after exercising due diligence to secure the full information to do so, so stale and answer to the extent possible, specifying Your inability to answer the remainder.

2.    If You object to a portion or aspect of an Interrogatory, state the grounds for Your objection with specificity and answer the remainder of the Interrogatory about which You do not object.

3.    Where Your response to an Interrogatory is based on a Document, produce a copy of the Document along with the response to the Interrogatory or, if the Document has been produced in this litigation, Identify that Document by bates number.

4.    The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any

Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.      If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.      The date range for these Interrogatories shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

**INTERROGATORY NO. 1:**

State all facts upon which You base Your contention that Mr. Tomczak failed to comply with his duty of loyalty to Allied.

**INTERROGATORY NO. 2:**

State all facts upon which You base Your contention that Mr. Tomczak failed to comply with his duty of care to Allied.

**INTERROGATORY NO. 3:**

Describe in detail each and every instance in which You contend that Mr. Tomczak used his position on the board of Allied to benefit Yucaipa.

**INTERROGATORY NO. 4:**

Describe in detail each and every instance in which You allege that Mr. Tomczak took actions as a member of the board of Allied that were to the detriment of Allied.

**INTERROGATORY NO. 5:**

Describe in detail any instance in which You allege that Mr. Tomczak took actions as a member of the board of Allied that were to the benefit of Yucaipa.

**INTERROGATORY NO. 6:**

State all facts upon which You base Your contention that Mr. Tomczak influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

**INTERROGATORY NO. 7:**

State all facts upon which You base Your contention that that Mr. Tomczak failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**INTERROGATORY NO. 8:**

State all facts upon which You base Your contention that Mr. Tomczak played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

**INTERROGATORY NO. 9:**

State all facts upon which You base Your contention that Mr. Tomczak played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

**INTERROGATORY NO. 10:**

Identify each act that You contend Mr. Tomczak committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

**INTERROGATORY NO. 11:**

State all facts upon which You base Your contention that Mr. Tomczak was seeking to benefit himself individually at the expense of Allied.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
      Wilmington, Delaware

          YOUNG, CONAWAY, STARGATT &
             TAYLOR, LLP

          */s/ Michael R. Nestor*
          John T. Dorsey, Esq. (No. 2988)
          Michael R. Nestor (No. 3526)
          Sharon M. Zieg, Esq. (No. 4196)
          Michael S. Neiburg (No. 5275)
          Rodney Square
          1000 North King Street
          Wilmington, DE 19801
          Telephone: (302) 571-6600
          mnestor@ycst.com

          - and-

          GIBSON, DUNN & CRUTCHER LLP
          Robert A. Klyman
          Maurice M. Suh
          Kahn Scolnick
          333 South Grand Avenue
          Los Angeles, CA  90071
          Telephone: (213) 229-7000
          RKlyman@gibsondunn.com
          MSuh@gibsondunn.com
          KScolnick@gibsondunn.com

          *Attorneys for Defendant*,
          Joseph Tomczak

EXHIBIT 4.6

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

## JOS OPDEWEEGH'S FIRST SET OF INTERROGATORIES TO PLAINTIFF/COUNTER-CLAIM DEFENDANT SPECTRUM INVESTMENT PARTNERS L.P.

Defendant Jos Opdeweegh, by and through his undersigned counsel, hereby requests,

pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rules 7026 and 7033 of

the Federal Rules of Bankruptcy Procedure, that on or before thirty (30) days after the service

1

hereof, Spectrum Investment Partners LP ("Spectrum") respond in writing to the following First Set of Interrogatories.

## DEFINITIONS

1.     "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group, Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services, Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems, LLC, Logistic Support LLC, and Terminal Services LLC.

2.     "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

3.     "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A. Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of Delaware on May 17, 2012 in case No. 12-11564.

4.     "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

2

5.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

6.      "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

7.      "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

8.      "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum Relating to Allied or Yucaipa.

9.      "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as approved by the United States Bankruptcy Court for the District of Delaware on September 17, 2013.

10.      The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense.  It shall not be limited in any way with respect to the

process by which any Document was created, generated, or reproduced, or with respect to the

medium in which the Document is embodied; and shall include, by way of example and without

any limitation, all "documents," "electronically stored information," or "tangible thing" as

contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings,"

"recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and

any kind of tangible material in any medium of any type, upon which intelligence or information

is recorded, or from which intelligence or information can be perceived, whether in writing,

recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic

or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the

foregoing, such Documents specifically include, without limitation, all originals, copies and

drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures,

ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams,

cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes,

transcriptions of records and recordings, business records, telephone business records, desk

calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks,

memoranda of telephone or other conversations by or with any Person(s), written or audio

telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile

transmissions and any other pertinent information not necessarily contained in files pertaining

exclusively or directly to this matter.  Documents further include, without limitation, materials

maintained in electronic, magnetic or other storage media, including those maintained in

computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-

called "erased" or "deleted" computer information that may be susceptible to retrieval.

11.     "Events of Default" shall have the meaning ascribed to it in the First Lien Credit

Agreement.

12.     "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien

Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as

amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd.

(L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business

Credit, Inc. as Administrative Agent and Collateral Agent, among others.

13.     "First Lien Credit Claims" shall mean claims of creditors holding debt under the

First Lien Credit Agreement.

14.     "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line

Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are

defined in the First Lien Credit Agreement, as amended from time to time.

15.     "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit

Agreement dated as of August 21, 2009.

16.     The "Georgia Action" shall mean the litigation in Georgia state court known as

Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American

Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-

CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that

action.

17.     The words "Identify" or "Identity," when used with respect to a Person who is an

individual, shall mean to state the following for each such Person:

        (a)     The Person's full name;

(b)     The Person's present or last known business and residential addresses and telephone numbers;

(c)     The full name and address of the Person's present or last known employer; and

(d)     The present or last known position of employment held by the Person.

18.     The words "Identify" or "Identity," when used with respect to a Person other than an individual, shall mean to state the following for each such Person:

(a)     The official name or designation for the Person, and its common or business name if different;

(b)     The form of organization of the Person;

(c)     The present or last known business address and telephone number of the Person; and

(d)     The nature of the Person's trade or business.

19.     The words "Identify" and "Identity," when used with respect to a Document shall mean to state the following for each such Document:

(a)     The nature and substance of the Document with sufficient particularity to enable the same to be precisely identified and recognized, including but not limited to a Bates number or range, if applicable;

(b)     The date or approximate date on which the Document was prepared;

(c)     The Identity of each Person who wrote, signed, initialed, dictated or otherwise participated in the preparation of such Document;

(d)     The Identity of each Person to whom the Document or any copy of it was sent or addressed;

(e)    The Identity of each Person to whom the Document refers or relates in any way; and

(f)    The Identity of each Person having possession, custody or control of the Document or any copy of it.

20.    The words "Identify" or "Identity," when used with respect to a Communication shall mean to state the following for each such Communication:

(a)    The date or approximate date on which the Communication occurred;

(b)    State whether the Communication was in writing or oral;

(c)    Identify the participants to the Communication; and

(d)    State the substance of the Communication (provided, however, if the Communication was in writing, in lieu of stating the substance, Identify the Document which memorializes the Communication).

21.    "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

22.    "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

23.    "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

24.    "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

25.    "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

26.    "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

27.    "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

28.    "Spectrum" shall mean Spectrum Investment Partners LP and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

29.     "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit Agreement.

30.     "You" and "Your" shall mean and refer to Spectrum.

31.     "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American Alliance (Parallel) Fund II, LP.

32.     "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by Yucaipa in February of 2009.

## INSTRUCTIONS

1.     In answering these Interrogatories, if You cannot provide precise information, state the best estimation or approximation thereof, designated as such.  If You cannot answer any of the following Interrogatories in full after exercising due diligence to secure the full information to do so, so stale and answer to the extent possible, specifying Your inability to answer the remainder.

2.     If You object to a portion or aspect of an Interrogatory, state the grounds for Your objection with specificity and answer the remainder of the Interrogatory about which You do not object.

3.     Where Your response to an Interrogatory is based on a Document, produce a copy of the Document along with the response to the Interrogatory or, if the Document has been produced in this litigation, Identify that Document by bates number.

4.     The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive, and each shall include the other wherever such dual construction will serve to bring within the scope of these requests any

Document which would otherwise not be brought within its scope.  Furthermore, wherever the word "any" appears, it shall be read and applied so as to include the word "all," and vice versa. Except as specifically provided herein, words imparting the singular shall include the plural and vice versa, where appropriate.

5.       If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

6.       The date range for these Interrogatories shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

**INTERROGATORY NO. 1:**

State all facts upon which You base Your contention that Mr. Opdeweegh failed to comply with his duty of loyalty to Allied.

**INTERROGATORY NO. 2:**

State all facts upon which You base Your contention that Mr. Opdeweegh failed to comply with his duty of care to Allied.

**INTERROGATORY NO. 3:**

Describe in detail each and every instance in which You contend that Mr. Opdeweegh used his position on the board of Allied to benefit Yucaipa.

**INTERROGATORY NO. 4:**

Describe in detail each and every instance in which You allege that Mr. Opdeweegh took actions as a member of the board of Allied that were to the detriment of Allied.

**INTERROGATORY NO. 5:**

Describe in detail any instance in which You allege that Mr. Opdeweegh took actions as a member of the board of Allied that were to the benefit of Yucaipa.

**INTERROGATORY NO. 6:**

State all facts upon which You base Your contention that Mr. Opdeweegh influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

**INTERROGATORY NO. 7:**

State all facts upon which You base Your contention that that Mr. Opdeweegh failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**INTERROGATORY NO. 8:**

State all facts upon which You base Your contention that Mr. Opdeweegh played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

**INTERROGATORY NO. 9:**

State all facts upon which You base Your contention that Mr. Opdeweegh played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

**INTERROGATORY NO. 10:**

Identify each act that You contend Mr. Opdeweegh committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

**INTERROGATORY NO. 11:**

State all facts upon which You base Your contention that Mr. Opdeweegh was seeking to benefit himself individually at the expense of Allied.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
      Wilmington, Delaware

YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP

*/s/ Michael R. Nestor*
John T. Dorsey, Esq. (No. 2988)
Michael R. Nestor (No. 3526)
Sharon M. Zieg, Esq. (No. 4196)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER LLP
Robert A. Klyman
Maurice M. Suh
Kahn Scolnick
333 South Grand Avenue
Los Angeles, CA  90071
Telephone: (213) 229-7000
RKlyman@gibsondunn.com
MSuh@gibsondunn.com
KScolnick@gibsondunn.com

*Attorneys for Defendant,*
Jos Opdeweegh

EXHIBIT 5

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**YUCAIPA'S FIRST SET OF REQUESTS FOR ADMISSION
TO PLAINTIFF/COUNTER-CLAIM DEFENDANT
BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD**

Defendant and Counterclaimant Yucaipa American Alliance Fund I, L.P., by and through

its undersigned counsel, hereby requests, pursuant to Rules 26 and 36 of the Federal Rules of

Civil Procedure and Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, that on

1

or before thirty (30) days after the service hereof, BDCM Opportunity Fund II, LP and Black

Diamond CLO 2005-1 LTD ("Black Diamond") answer fully, in writing under oath, the

following Requests for Admission.

## DEFINITIONS

1.      "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group,

Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis

Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services,

Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems,

LLC, Logistic Support LLC, and Terminal Services LLC.

2.      "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black

Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants,

directors, officers, employees, partners, members, agents, representatives, parent entities

corporations, predecessor or successor corporations, partnerships or anyone else acting or

purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related

parties, predecessors in interest, successors in interest, or assigns.

3.      "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A.

Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of

Delaware on May 17, 2012 in case No. 12-11564.

4.      "Challenge" shall mean oppose, resist, hinder, dissent against, deny passage,

counter, object to, disagree with, fight, repel, dispute, or protest.

5.      "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present

Persons, entities, attorneys, accountants, directors, officers, employees, partners, members,

agents, representatives, parent entities, corporations, predecessor or successor corporations,

partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

6.     "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

7.     "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

8.     "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

9.     "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum Relating to Allied or Yucaipa.

10.    "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as approved by the United States Bankruptcy Court for the District of Delaware on September 17, 2013.

11.    The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense.  It shall not be limited in any way with respect to the process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "documents," "electronically stored information," or "tangible thing" as contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether in writing, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the foregoing, such Documents specifically include, without limitation, all originals, copies and drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, telephone business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any Person(s), written or audio telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining

exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

12.     "Events of Default" shall have the meaning ascribed to it in the First Lien Credit Agreement.

13.     "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

14.     "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

15.     "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

16.     "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

17.     The "Georgia Action" shall mean the litigation in Georgia state court known as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that action.

18.     "Insider" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

19.     "Invalidate" shall mean revoke, repeal, rescind, strike down, abrogate, annul, void, vacate, declare null, overrule, recall, or waive.

20.     "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

21.     "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

22.     The "New York Action" shall mean the litigation in New York Supreme Court known as BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 LTD, and Spectrum Investment Partners, L.P. v. Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, L.P., No. 650150/2012, including all claims and counterclaims brought in connection with that action.

23.     "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

24.     "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

25.     "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

26.     "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

27.     "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

28.     "Spectrum" shall mean Spectrum Investment Partners LP and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

29.     "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit Agreement.

30.     "You" and "Your" shall mean and refer to Spectrum.

31.     "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American Alliance (Parallel) Fund II, LP.

32.     "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by Yucaipa in February of 2009.

## INSTRUCTIONS

1.     In answering any Request for Admission, if You cannot truthfully admit or deny, specifically identify the matter, or portion thereof, that you cannot truthfully admit or deny, and set forth in detail the reasons why you cannot truthfully admit or deny the matter.

2.     If You object to any Request for Admission, please set forth all reasons for the objection.  If you object to any part of any request for admission, please answer or respond to the remaining part or parts completely.

3.     Where Your response to a Request is based on a Document, produce a copy of the Document along with the response to the Request or, if the Document has been produced in this litigation, Identify that Document by bates number.

4.     If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

5.     The date range for these Requests for Admission shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

## REQUESTS FOR ADMISSION

## REQUEST NO. 1:

Admit that You did not take any action before CIT's settlement of the Georgia Action with Yucaipa to indicate to CIT or Yucaipa or the Georgia state court that You did not approve of the Georgia Settlement.

**REQUEST NO. 2:**

Admit that in approximately September 2009, You requested that CIT, as the Administrative Agent for all Lenders under the First Lien Credit Agreement, refuse to recognize Yucaipa as the Requisite Lender.

**REQUEST NO. 3:**

Admit that at no time before filing the involuntary petition in May 2012 did You share the September 2009 letter instructing CIT not to recognize Yucaipa as Request Lender with Yucaipa.

**REQUEST NO. 4:**

Admit that from approximately March 2011 and through May 2012 You communicated directly with Jack Cooper regarding Jack Cooper's efforts to acquire Allied's assets.

**REQUEST NO. 5:**

Admit that You communicated directly with Jack Cooper regarding the possibility of selling Your First Lien Claims to Jack Cooper and that the price of such a transaction was at a discount to par.

**REQUEST NO. 6:**

Admit that equitably subordinating other Lenders' First Lien Claims was one of the "strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" contemplated by the January 2012 Cooperation Agreement.

**REQUEST NO. 7:**

Admit that equitably subordinating Yucaipa's First Lien Claims was one of the "strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" contemplated by the January 2012 Cooperation Agreement.

**REQUEST NO. 8:**

Admit that You entered into the Cooperation Agreement in contemplation of an involuntary bankruptcy filing for Allied.

**REQUEST NO. 9:**

Admit that You were negotiating with Jack Cooper regarding Jack Cooper's potential acquisition of First Lien Debt while negotiating the transfer of $4,239,486.90 in First Lien Debt from You to Spectrum.

**REQUEST NO. 10:**

Admit that You did not disclose the transfer of the $4,239,486.90 in First Lien Debt in the Black Diamond and Spectrum Affidavits.

**REQUEST NO. 11:**

Admit that You did not disclose the existence of the Cooperation Agreement in connection with the filing of the involuntary bankruptcy filing in May 2012 or in response to discovery.

**REQUEST NO. 12:**

Admit that You rejected Yucaipa Tender Offer.

**REQUEST NO. 13:**

Admit that ComVest was not an Insider of Allied while it served as Requisite Lender.

**REQUEST NO. 14:**

Admit that because ComVest was not an Insider of Allied, You understood that it would be more difficult to equitably subordinate ComVest's First Lien Claims.

**REQUEST NO. 15:**

Admit that You were considering "creditor remedies" prior to Yucaipa's purchase of the First Lien Debt in August 2009.

**REQUEST NO. 16:**

Admit that You discussed equitable subordination of Yucaipa in relation to Your Allied First Lien Claims with T. Michael Riggs before filing the involuntary petition in May 2012.

**REQUEST NO. 17:**

Admit that You were evaluating the possibility of equitable subordination claim in relation to Your Allied First Lien Claims as of August 13, 2009.

**REQUEST NO. 18:**

Admit that by February 2009, You were aware of Yucaipa's negotiations with ComVest to acquire ComVest's First Lien Claims.

**REQUEST NO. 19:**

Admit that on August 18, 2009, Mr. Deckoff discussed Yucaipa's plan to acquire ComVest's First Lien Claims and the Requisite Lender position with Ronald Burkle and Derex Walker of Yucaipa.

**REQUEST NO. 20:**

Admit that on August 18, 2009, Mr. Deckoff agreed to work with Yucaipa to find "mutually beneficial strategies" with respect to Allied.

**REQUEST NO. 21:**

Admit that Brian Cullen was selected to be a member of Allied's board of directors by the creditors committee of the Prior Bankruptcy Case in the United States Bankruptcy Court for the Northern District of Georgia.

**REQUEST NO. 22:**

Admit that, to Your knowledge, Yucaipa did not pay Brian Cullen for Mr. Cullen's service as a member of Allied's board of directors.

**REQUEST NO. 23:**

Admit that, to Your knowledge, Yucaipa did not pay Mark Gendgreske for Mr.

Gendgreske's service as a member of Allied's board of directors.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
       Wilmington, Delaware

YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP


*/s/ Michael R. Nestor*
John T. Dorsey, Esq. (No. 2988)
Michael R. Nestor (No. 3526)
Sharon M. Zieg, Esq. (No. 4196)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER LLP
Robert A. Klyman
Maurice M. Suh
Kahn Scolnick
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
RKlyman@gibsondunn.com
MSuh@gibsondunn.com
KScolnick@gibsondunn.com

*Attorneys for Defendant*,
Yucaipa American Alliance Fund I, L.P.

EXHIBIT 6

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) (Jointly Administered) |
| Debtors. | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, and SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**YUCAIPA'S FIRST SET OF REQUESTS FOR ADMISSION
TO PLAINTIFF/COUNTER-CLAIM DEFENDANT
SPECTRUM INVESTMENT PARTNERS L.P.**

Defendant and Counterclaimant Yucaipa American Alliance Fund I, L.P., by and through

its undersigned counsel, hereby requests, pursuant to Rules 26 and 36 of the Federal Rules of

Civil Procedure and Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, that on

or before thirty (30) days after the service hereof, Spectrum Investment Partners LP

("Spectrum") answer fully, in writing under oath, the following Requests for Admission.

## DEFINITIONS

1.     "Allied" shall mean Allied Systems Holdings, Inc., Allied Automotive Group, Inc., Allied Freight Broker LLC, Allied Systems (Canada) Company, Allied Systems, Ltd., Axis Areta, LLC, Axis Canada Company, Axis Group, Inc., Commercial Carriers, Inc., CT Services, Inc., Cordin Transport LLC, F.J. Boutell Driveway LLC, GACS Incorporated, Logistic Systems, LLC, Logistic Support LLC, and Terminal Services LLC.

2.     "Black Diamond" shall mean BDCM Opportunity Fund II, LP and/or Black Diamond CLO 2005-1 LTD and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Black Diamond and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

3.     "Black Diamond and Spectrum Affidavits" shall mean the affidavits of Jeffrey A. Schaffer and Richard Ehrlich filed with the United States Bankruptcy Court for the District of Delaware on May 17, 2012 in case No. 12-11564.

4.     "Challenge" shall mean oppose, resist, hinder, dissent against, deny passage, counter, object to, disagree with, fight, repel, dispute, or protest.

5.     "CIT" shall mean The CIT Group/Business Credit, Inc. and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of CIT, whether in its role as

Lender, Administrative Agent, Collateral Agent, or any other role, and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

6.      "Communication(s)" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda.  The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

7.      "ComVest" shall mean ComVest Investment Partners III, L.P. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of ComVest and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

8.      "Concerning" shall mean about, relating to, referring to, reflecting, describing, evidencing or constituting.

9.      "Cooperation Agreement" shall mean the formal agreement entered into between Black Diamond and Spectrum in January of 2012 "in contemplation of . . . certain strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" as well as any informal pacts, agreements, plans, or joint strategies between Black Diamond and Spectrum Relating to Allied or Yucaipa.

10.      "Credit Bid" shall mean SBDRE LLC's offer to purchase Allied's assets as approved by the United States Bankruptcy Court for the District of Delaware on September 17, 2013.

11.     The term "Document(s)" shall include electronically stored information ("ESI") and is used in its customary broad sense.  It shall not be limited in any way with respect to the process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "documents," "electronically stored information," or "tangible thing" as contained in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether in writing, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered.  Without limiting the generality of the foregoing, such Documents specifically include, without limitation, all originals, copies and drafts of all letters, notes, memoranda, correspondence, advertisements, circulars, brochures, ledgers, journals, minutes, books, telephone slips, expense accounts, time sheets, telegrams, cables, publications, photographs, microfilm prints, contracts, manuals, recordings, tapes, transcriptions of records and recordings, business records, telephone business records, desk calendars, diaries, transcripts, affidavits, bills, receipts, prescriptions, diagnoses, checks, memoranda of telephone or other conversations by or with any Person(s), written or audio telephone messages, text messages, electronic mail ("e-mail"), evidence of facsimile transmissions and any other pertinent information not necessarily contained in files pertaining exclusively or directly to this matter.  Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained in

computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

12.    "Events of Default" shall have the meaning ascribed to it in the First Lien Credit Agreement.

13.    "First Lien Credit Agreement" shall mean the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and The CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

14.    "First Lien Credit Claims" shall mean claims of creditors holding debt under the First Lien Credit Agreement.

15.    "First Lien Debt" shall mean any "Term Loan", "Revolving Loan", "Swing Line Loan" or "Letter of Credit" obligation owed by Allied to any "Lender", as those terms are defined in the First Lien Credit Agreement, as amended from time to time.

16.    "Fourth Amendment" shall mean Amendment No. 4 to the First Lien Credit Agreement dated as of August 21, 2009.

17.    The "Georgia Action" shall mean the litigation in Georgia state court known as Allied Systems Holdings, Inc., Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, LP v. The CIT Group/Business Credit, Inc., Civil Action No. 2009-CV-177574 (Sup. Ct. of Fulton Cty., Ga.), including all claims and counterclaims brought in that action.

18.    "Insider" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

19.    "Invalidate" shall mean revoke, repeal, rescind, strike down, abrogate, annul, void, vacate, declare null, overrule, recall, or waive.

20.    "Jack Cooper" shall mean Jack Cooper Transport Company, Inc. and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Jack Cooper and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

21.    "Lender" shall have the meaning set forth in the First Lien Credit Agreement, as well as any and all past and present Persons, entities, attorneys, accountants, employees, agents, representatives, corporations, partners, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of the Lender and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

22.    The "New York Action" shall mean the litigation in New York Supreme Court known as BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 LTD, and Spectrum Investment Partners, L.P. v. Yucaipa American Alliance Fund I, LP, and Yucaipa American Alliance (Parallel) Fund I, L.P., No. 650150/2012, including all claims and counterclaims brought in connection with that action.

23.    "Person(s)" as used herein refers to and shall include a natural person, firm, association, organization, corporation, partnership, joint venture, business trust, public entity, and all other forms of legal entities.

24.    "Relate to," "Related to," and "Relating to," as used herein, shall mean constituting, comprising, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting,

negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, setting forth, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in whole or in part.

25.     "Requisite Lender" shall have the meaning set forth in the First Lien Credit Agreement.

26.     "SBDRE LLC" shall mean the entity formed by Black Diamond Commercial Finance LLC and Spectrum Commercial Finance, LLC on August 20, 2013 to place the Credit Bid.

27.     "SBDRE Memorandum" shall mean the November 8, 2013 memorandum circulated by Black Diamond and Spectrum to other Lenders.

28.     "Spectrum" shall mean Spectrum Investment Partners LP and all past and present Persons, entities, attorneys, accountants, directors, officers, employees, partners, members, agents, representatives, parent entities, corporations, predecessor or successor corporations, partnerships or anyone else acting or purporting to act on behalf of Spectrum and/or any of its affiliates, divisions, related parties, predecessors in interest, successors in interest, or assigns.

29.     "Third Amendment" shall mean Amendment No. 3 to the First Lien Credit Agreement.

30.     "You" and "Your" shall mean and refer to Spectrum.

31.     "Yucaipa" shall mean Yucaipa American Alliance Fund I, LP, Yucaipa American Alliance (Parallel) Fund I, LP, Yucaipa American Alliance Fund, II, LP and Yucaipa American Alliance (Parallel) Fund II, LP.

32.     "Yucaipa Tender Offer" shall mean the tender offer to Lenders pursued by Yucaipa in February of 2009.

## INSTRUCTIONS

1.      In answering any Request for Admission, if You cannot truthfully admit or deny, specifically identify the matter, or portion thereof, that you cannot truthfully admit or deny, and set forth in detail the reasons why you cannot truthfully admit or deny the matter.

2.      If You object to any Request for Admission, please set forth all reasons for the objection.  If you object to any part of any request for admission, please answer or respond to the remaining part or parts completely.

3.      Where Your response to a Request is based on a Document, produce a copy of the Document along with the response to the Request or, if the Document has been produced in this litigation, Identify that Document by bates number.

4.      If You object to any term or phrase as vague, ambiguous or indefinite, then provide Your understanding of the term or phrase and respond accordingly.

5.      The date range for these Requests for Admission shall be from January 1, 2007 to the present, unless a specific request indicates otherwise.

## REQUESTS FOR ADMISSION

## REQUEST NO. 1:

Admit that You did not take any action before CIT's settlement of the Georgia Action with Yucaipa to indicate to CIT or Yucaipa or the Georgia state court that You did not approve of the Georgia Settlement.

**REQUEST NO. 2:**

Admit that in approximately September 2009, You requested that CIT, as the Administrative Agent for all Lenders under the First Lien Credit Agreement, refuse to recognize Yucaipa as the Requisite Lender.

**REQUEST NO. 3:**

Admit that at no time before filing the involuntary petition in May 2012 did You share the September 2009 letter instructing CIT not to recognize Yucaipa as Request Lender with Yucaipa.

**REQUEST NO. 4:**

Admit that from approximately March 2011 and through May 2012 You communicated directly with Jack Cooper regarding Jack Cooper's efforts to acquire Allied's assets.

**REQUEST NO. 5:**

Admit that You communicated directly with Jack Cooper regarding the possibility of selling Your First Lien Claims to Jack Cooper and that the price of such a transaction was at a discount to par.

**REQUEST NO. 6:**

Admit that equitably subordinating other Lenders' First Lien Claims was one of the "strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" contemplated by the January 2012 Cooperation Agreement.

**REQUEST NO. 7:**

Admit that equitably subordinating Yucaipa's First Lien Claims was one of the "strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" contemplated by the January 2012 Cooperation Agreement.

**REQUEST NO. 8:**

Admit that You entered into the Cooperation Agreement in contemplation of an involuntary bankruptcy filing for Allied.

**REQUEST NO. 9:**

Admit that You were negotiating with Jack Cooper regarding Jack Cooper's potential acquisition of First Lien Debt while negotiating the transfer of $4,239,486.90 in First Lien Debt from Black Diamond to You.

**REQUEST NO. 10:**

Admit that You did not disclose the transfer of the $4,239,486.90 in First Lien Debt in the Black Diamond and Spectrum Affidavits.

**REQUEST NO. 11:**

Admit that You did not disclose the existence of the Cooperation Agreement in connection with the filing of the involuntary bankruptcy filing in May 2012 or in response to discovery.

**REQUEST NO. 12:**

Admit that You rejected Yucaipa Tender Offer.

**REQUEST NO. 13:**

Admit that ComVest was not an Insider of Allied while it served as Requisite Lender.

**REQUEST NO. 14:**

Admit that because ComVest was not an Insider of Allied, You understood that it would be more difficult to equitably subordinate ComVest's First Lien Claims.

**REQUEST NO. 15:**

Admit that You were considering "creditor remedies" prior to Yucaipa's purchase of the First Lien Debt in August 2009.

**REQUEST NO. 16:**

Admit that You discussed equitable subordination of Yucaipa in relation to Your Allied First Lien Claims with T. Michael Riggs before filing the involuntary petition in May 2012.

**REQUEST NO. 17:**

Admit that You were evaluating the possibility of equitable subordination claim in relation to Your Allied First Lien Claims as of August 13, 2009.

**REQUEST NO. 18:**

Admit that by February 2009, You were aware of Yucaipa's negotiations with ComVest to acquire ComVest's First Lien Claims.

**REQUEST NO. 19:**

Admit that Brian Cullen was selected to be a member of Allied's board of directors by the creditors committee of the Prior Bankruptcy Case in the United States Bankruptcy Court for the Northern District of Georgia.

**REQUEST NO. 20:**

Admit that, to your knowledge, Yucaipa did not pay Brian Cullen for Mr. Cullen's service as a member of Allied's board of directors.

**REQUEST NO. 21:**

Admit that, to your knowledge, Yucaipa did not pay Mark Gendgreske for Mr. Gendgreske's service as a member of Allied's board of directors.

*[Balance of this page intentionally left blank.]*

Dated: June 10, 2015
      Wilmington, Delaware

YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP


*/s/ Michael R. Nestor*
John T. Dorsey, Esq. (No. 2988)
Michael R. Nestor (No. 3526)
Sharon M. Zieg, Esq. (No. 4196)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER LLP
Robert A. Klyman
Maurice M. Suh
Kahn Scolnick
333 South Grand Avenue
Los Angeles, CA  90071
Telephone: (213) 229-7000
RKlyman@gibsondunn.com
MSuh@gibsondunn.com
KScolnick@gibsondunn.com

*Attorneys for Defendant*,
Yucaipa American Alliance Fund I, L.P.

EXHIBIT 7

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

## RESPONSES AND OBJECTIONS OF BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD. TO YUCAIPA'S FIRST SET OF REQUESTS FOR PRODUCTION

Plaintiffs and Counterclaim Defendants BDCM Opportunity Fund II, LP and

Black Diamond CLO 2005-1 Ltd. (collectively, "Black Diamond"), by and through their

undersigned counsel, hereby respond and object, pursuant to Rules 26 and 34 of the Federal

1

Rules of Civil Procedure, made applicable by Rules 7026 and 7034 of the Federal Rules of

Bankruptcy Procedure, to the First Set of Requests for Production of Yucaipa American Alliance

Fund I, LP and Yucaipa American Alliance (Parallel) Fund I, LP (collectively, "Yucaipa"), dated

May 20, 2015 (the "Requests"), as set forth below.

## GENERAL RESPONSES AND OBJECTIONS

The following general responses and objections ("General Objections") are

incorporated into each specific response and objection that follows.

1.      Black Diamond objects to the Requests, including each and every

definition, instruction, and document request, to the extent that they seek to impose obligations

on Black Diamond beyond those required or authorized by the Federal Rules of Bankruptcy

Procedure, the Federal Rules of Civil Procedure, or the Local Rules for the United States

Bankruptcy Court for the District of Delaware.

2.      Black Diamond objects to the Requests to the extent that they seek

disclosure of any information or document that is confidential, sensitive, proprietary, subject to

trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or

state law.

3.      Black Diamond objects to the Requests to the extent that they seek

disclosure of documents containing matters that are protected from discovery by the attorney-

client privilege, the work-product doctrine, the joint-defense privilege, the common interest

privilege, or any other applicable privilege or exemption.  Black Diamond also expressly

reserves the right to redact non-responsive or privileged portions of any documents that may be

produced in response to the Requests and will so indicate to the extent that it does so.

Inadvertent disclosure of any privileged or otherwise protected documents or information shall

2

not be a waiver of any claim of privilege, work-product protection, exemption, or immunity. Black Diamond shall be entitled to the return of any inadvertently produced privileged or otherwise protected documents or information, and demands that Yucaipa return all copies of any inadvertently produced documents.

4.      Black Diamond objects to the Requests to the extent that they seek disclosure of documents containing matters that are not within Black Diamond's possession, custody, control, or knowledge.

5.      Black Diamond objects to the Requests to the extent that the expense or burden of production called for is excessive or outweighs its probative value.  In attempting to find responsive documents to which no objection is made, Black Diamond will conduct reasonable searches.

6.      Black Diamond objects to the Requests to the extent that they seek disclosure of documents containing matters that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

7.      Black Diamond objects to the Requests to the extent that they seek disclosure of documents containing matters that are publicly available, already in Yucaipa's possession, custody, or control, or previously provided to Yucaipa.

8.      Black Diamond objects to the Requests to the extent that they seek disclosure of documents containing matters that are in another persons' or entities' possession, custody, or control, or are more easily obtained by Yucaipa directly from another person or entity.

9.    Black Diamond objects to the Requests to the extent that they seek disclosure of documents containing matters pertaining to persons or entities other than Black Diamond.

10.    Black Diamond objects to the Requests to the extent that they seek the production of documents containing matters not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

11.    Black Diamond objects to the Requests to the extent that they are vague, ambiguous, duplicative, overly broad and/or unduly burdensome.

12.    Black Diamond objects to the Requests to the extent that they impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on Black Diamond.

13.    Black Diamond does not in any way waive or intend to waive, but rather preserves and intends to preserve: (a) all rights to object on any ground to the competence, relevance, materiality and admissibility of any document or information that may be produced in response to the Requests or the subject matter thereof; (b) all rights to object on any ground to the use of any document or information that may be produced in response to the Requests or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (c) all rights to object on any ground to any request for further responses to the Requests or any other document request.

14.    Black Diamond's objections to the Requests are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Black Diamond at a later date and are made

4

without prejudice to Black Diamond's rights to revise, correct, clarify, supplement, modify, or

amend its objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

### REQUEST NO. 1

All documents, other than those produced in response to previous requests, Concerning Your
potential or actual acquisition of First Lien Debt, including without limitation, the identity of the
seller, the price paid, the amount of debt acquired and the date of acquisition.

### RESPONSE TO REQUEST NO. 1

Black Diamond objects to this request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

### REQUEST NO. 2

All Documents, other than those produced in response to the previous requests, Concerning Your
potential or actual sale or disposal of First Lien Debt, including without limitation, the identity of
the buyer, the price obtained, the amount of debt sold and the date of the sale.

### RESPONSE TO REQUEST NO. 2

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

### REQUEST NO. 3

All Documents, other than those produced in response to the previous requests, Concerning the
Third Amendment, including without limitation, any document discussing whether you would
vote in favor of the Third Amendment or not, or any documents discussing whether you had any
reservations or concerns about the Third Amendment if approved.

### RESPONSE TO REQUEST NO. 3

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST NO. 4

All Documents, other than those produced in response to the previous requests, Concerning any
Lenders' vote on the Third Amendment.

## RESPONSE TO REQUEST NO. 4

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST NO. 5

All Documents, other than those produced in response to the previous requests, concerning the
effect of the Third Amendment on Yucaipa.

## RESPONSE TO REQUEST NO. 5

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST NO. 6

All Documents, other than those produced in response to the previous requests, Concerning any
potential or actual acquisition by Black Diamond and/or Spectrum of the First Lien Debt held by
AMMC.

## RESPONSE TO REQUEST NO. 6

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence. Black Diamond further objects to this request on the

grounds that it seeks documents already within Yucaipa's possession, custody, or control.

## REQUEST NO. 7

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and CIT in any way relating to Yucaipa.

## RESPONSE TO REQUEST NO. 7

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests. Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST NO. 8

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and CIT in any way relating to Yucaipa's status as Requisite
Lender.

## RESPONSE TO REQUEST NO. 8

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests. Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST NO. 9

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and CIT in any way Relating to any transfer of First Lien Debt
between Yucaipa and ComVest.

## RESPONSE TO REQUEST NO. 9

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests. Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST NO. 10

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and CIT in any way Relating to the exercise of remedies under
the First Lien Credit Agreement against Allied.

## RESPONSE TO REQUEST NO. 10

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST NO. 11

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and CIT in any way Concerning whether the Allied board of
directors breached its fiduciary duties.

## RESPONSE TO REQUEST NO. 11

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST NO. 12

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and CIT in any way Concerning whether Yucaipa aided and
abetted any breach of fiduciary duties by the Allied board of directors.

## RESPONSE TO REQUEST NO. 12

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST NO. 13

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and CIT in any way Concerning a lock-up agreement or any
similar arrangement relating to potential litigation against Yucaipa or the exercise of remedies
under the First Lien Credit Agreement against Allied.

## RESPONSE TO REQUEST NO. 13

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 14:

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and any other Lender in any way relating to Yucaipa.

## RESPONSE TO REQUEST NO. 14:

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 15:

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and any other Lender in any way relating to Yucaipa's status as
Requisite Lender.

## RESPONSE TO REQUEST NO. 15:

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

9

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and any other Lender in any way Relating to the exercise of
remedies under the First Lien Credit Agreement against Allied.

**RESPONSE TO REQUEST NO. 16:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and any other Lender in any way Concerning whether the Allied
board of directors breached its fiduciary duties.

**RESPONSE TO REQUEST NO. 17:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and any other Lender in any way Concerning whether Yucaipa
aided and abetted any breach of fiduciary duties by the Allied board of directors.

**RESPONSE TO REQUEST NO. 18:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

10

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 19:

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and any other Lender in any way Concerning a lock-up agreement or any similar arrangement relating to potential litigation against Yucaipa or the exercise of remedies under the First Lien Credit Agreement against Allied.

## RESPONSE TO REQUEST NO. 19:

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 20:

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and any person (including, without limitation, T Michael Rigs and Kirk Ferguson) in any way Concerning potential litigation against Yucaipa or the equitable subordination of any First Lien Debt held by Yucaipa

## RESPONSE TO REQUEST NO. 20:

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 21:

All Documents, other than those produced in response to the previous requests, Concerning Your or any Lender's attempt to Invalidate or otherwise Challenge the Fourth Amendment.

11

**RESPONSE TO REQUEST NO. 21:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents, other than those produced in response to the previous requests, Concerning Your
or any Lender's attempt to Invalidate or otherwise Challenge the transfer of Fist Lien Debt from
ComVest to Yucaipa.

**RESPONSE TO REQUEST NO. 22:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents, other than those produced in response to the previous requests, Concerning Your
or any Lender's contemplation of requesting CIT not to settle any trade of First Lien Debt
between Yucaipa and ComVest.

**RESPONSE TO REQUEST NO. 23:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents, other than those produced in response to the previous requests, Concerning the
Fourth Amendment.

**RESPONSE TO REQUEST NO. 24:**

  Black Diamond objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the foregoing general and specific objections, Black Diamond responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents, other than those produced in response to the previous requests, evidencing any analysis, evaluation, summary, or notes concerning the Yucaipa Tender Offer.

**RESPONSE TO REQUEST NO. 25:**

  Black Diamond objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, duplicative of other Requests and seeks information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law, and seeks disclosure of matters that are protected from discovery by the attorney-client privilege, the work-product doctrine, the joint-defense privilege, the common interest privilege, or any other applicable privilege or exemption. Subject to and without waiving the foregoing general and specific objections, Black Diamond responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents, other than those produced in response to the previous requests, evidencing any Communications Concerning Yucaipa's efforts to acquire First Lien Debt held by ComVest.

**RESPONSE TO REQUEST NO. 26:**

  Black Diamond objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents, other than those produced in response to the previous requests, evidencing any
Communications Concerning ComVest's assignment to Yucaipa of its First Lien Credit Claims,
including, but not limited to, any discussion or Communication of the August 22, 2009 E-mails.

**RESPONSE TO REQUEST NO. 27:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents, other than those produced in response to the previous requests, Concerning any
meeting or discussion between representatives of Yucaipa and representatives of Black Diamond
or Spectrum Relating to Allied, including, but not limited to, the August 18, 2009 meeting
between Stephen H. Deckoff and Ronald Burkle.

**RESPONSE TO REQUEST NO. 28:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents, other than those produced in response to the previous requests, Concerning Your
analysis or evaluation of any actual or potential deal with Jack Cooper involving Allied
(including the acquisition of the First Lien Debt by Jack Cooper), between January 2011 and
September 2012.

## RESPONSE TO REQUEST NO. 29:

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome, duplicative of other Requests and seeks information that is confidential,

sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure

pursuant to applicable federal or state law, and seeks disclosure of matters that are protected

from discovery by the attorney-client privilege, the work-product doctrine, the joint-defense

privilege, the common interest privilege, or any other applicable privilege or exemption. Subject

to and without waiving the foregoing general and specific objections, Black Diamond responds

that it already has produced all non-privileged documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 30:

All Documents, other than those produced in response to the previous requests, Concerning any
Lender's analysis or evaluation of any actual or potential deal with Jack Cooper involving Allied
(including the acquisition of the First Lien Debt by Jack Cooper), between January 2011 and
September 2012.

## RESPONSE TO REQUEST NO. 30:

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome, duplicative of other Requests and seeks information that is confidential,

sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure

pursuant to applicable federal or state law, and seeks disclosure of matters that are protected

from discovery by the attorney-client privilege, the work-product doctrine, the joint-defense

privilege, the common interest privilege, or any other applicable privilege or exemption. Subject

to and without waiving the foregoing general and specific objections, Black Diamond responds

that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and any other Lender in any way Relating to any actual or potential deal with Jack Cooper.

**RESPONSE TO REQUEST NO. 31:**

       Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome, duplicative of other Requests and seeks information that is confidential,

sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure

pursuant to applicable federal or state law, and seeks disclosure of matters that are protected

from discovery by the attorney-client privilege, the work-product doctrine, the joint-defense

privilege, the common interest privilege, or any other applicable privilege or exemption. Subject

to and without waiving the foregoing general and specific objections, Black Diamond responds

that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 32:**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and any Lender (including but not limited to Spectrum) in any way Relating to a strategy, plan, agreement, or pact with regard to Yucaipa.

**RESPONSE TO REQUEST NO. 32:**

       Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome, duplicative of other Requests and seeks information that is confidential,

sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure

pursuant to applicable federal or state law, and seeks disclosure of matters that are protected

from discovery by the attorney-client privilege, the work-product doctrine, the joint-defense

privilege, the common interest privilege, or any other applicable privilege or exemption. Subject

to and without waiving the foregoing general and specific objections, Black Diamond responds

that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and any Lender (including but not limited to Spectrum) in any
way Relating to a strategy, plan, agreement, or pact with regard to Allied.

**RESPONSE TO REQUEST NO. 33:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome, duplicative of other Requests and seeks information that is confidential,

sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure

pursuant to applicable federal or state law, and seeks disclosure of matters that are protected

from discovery by the attorney-client privilege, the work-product doctrine, the joint-defense

privilege, the common interest privilege, or any other applicable privilege or exemption.  Subject

to and without waiving the foregoing general and specific objections, Black Diamond responds

that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents, other than those produced in response to the previous requests, Concerning the
Cooperation Agreement.

**RESPONSE TO REQUEST NO. 34:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

17

**REQUEST FOR PRODUCTION NO. 35:**

All Documents, other than those produced in response to the previous requests, Concerning the equitable subordination of First Lien Debt held by Yucaipa.

**RESPONSE TO REQUEST NO. 35:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests.  Subject to and without waiving the foregoing general and specific objections, Black Diamond responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents, other than those produced in response to the previous requests, Concerning the equitable subordination of First Lien Debt held by any Lender other than Yucaipa.

**RESPONSE TO REQUEST NO. 36:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 37:**

All Documents, other than those produced in response to the previous requests, evidencing any attempt to estimate or value Your or any other Lender's investment in Allied.

**RESPONSE TO REQUEST NO. 37:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence, and seeks information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

**REQUEST FOR PRODUCTION NO. 38:**

All Documents, other than those produced in response to the previous requests, concerning any transfer of First Lien Debt between Spectrum and Black Diamond.

**RESPONSE TO REQUEST NO. 38:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad, and unduly burdensome.  Subject to and without waiving the foregoing general and specific objections, Black Diamond responds that it will conduct a reasonable search for and produce, to the extent they exist, non-privileged documents relating to the transfer of Fist Lien Debt between Spectrum and Black Diamond pursuant to the Cooperation Agreement.

**REQUEST FOR PRODUCTION NO. 39:**

All Documents, other than those produced in response to the previous requests, Concerning any Lender's claim for reimbursement of legal expenses under the First Lien Credit Agreement.

**RESPONSE TO REQUEST NO. 39:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 40:**

All Documents, other than those produced in response to the previous requests, Concerning any Yucaipa's claims for reimbursement of legal expenses under the First Lien Credit Agreement.

**RESPONSE TO REQUEST NO. 40:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents, other than those produced in response to the previous requests, Concerning the Credit Bid.

**RESPONSE TO REQUEST NO. 41:**

        Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents, other than those produced in response to the previous requests, Concerning the
formation or purpose of SBDRE LLC.

**RESPONSE TO REQUEST NO. 42:**

        Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 43:**

All Documents, other than those produced in response to the previous requests, Concerning the
voting rights, equity, and corporate governance of SBDRE LLC.

**RESPONSE TO REQUEST NO. 43:**

        Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents, other than those produced in response to the previous requests, Concerning the
SBDRE Memorandum

20

**RESPONSE TO REQUEST NO. 44:**

        Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 45:**

All Documents, other than those produced in response to the previous requests, Concerning any
potential or actual transaction structure proposed by Black Diamond and Spectrum for Allied,
including without limitation any credit bid for all or substantially all the assets of Allied.

**RESPONSE TO REQUEST NO. 45:**

        Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 46:**

All Documents, other than those produced in response to the previous requests, Concerning the
New Issuance.

**RESPONSE TO REQUEST NO. 46:**

        Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 47:**

All Documents, other than those produced in response to the previous requests, evidencing any
Communications among representatives or employees of Spectrum or between Spectrum and
Black Diamond in any way Relating to a bankruptcy filing for Allied, whether involuntary or
voluntary.

**RESPONSE TO REQUEST NO. 47:**

        Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

21

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents, other than those produced in response to the previous requests, Relating to a bankruptcy filing (including planning therefor) for Allied, whether involuntary or voluntary.

**RESPONSE TO REQUEST NO. 48:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests. Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 49:**

All Documents, other than those produced in response to the previous requests, Concerning the Black Diamond and Spectrum Affidavits.

**RESPONSE TO REQUEST NO. 49:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests. Subject to and without waiving the

foregoing general and specific objections, Black Diamond responds that it already has produced

all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 50:**

All document holds You have received since 2009 in connection with any litigation related to Allied.

**RESPONSE TO REQUEST NO. 50:**

Black Diamond objects to this Request on the grounds that it is overbroad and

unduly burdensome. Subject to and without waiving the foregoing general and specific

objections, Black Diamond responds that it will conduct a reasonable search for and produce, to

the extent they exist, non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 51:**

Documents evidencing any changes to Your document and data retention policies since January
1, 2011.

**RESPONSE TO REQUEST NO. 51:**

Black Diamond objects to this Request on the grounds that it is overbroad, unduly

burdensome, and seeks irrelevant information that is not reasonably calculated to the lead to the

discovery of admissible evidence.  Subject to and without waiving the foregoing general and

specific objections, Black Diamond responds that it will conduct a reasonable search for and

produce, to the extent they exist, non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 52:**

All Documents, other than those produced in response to the previous requests, Relating to
compensating Your officers, directors, employees, consultants, or representatives based on
equitably subordinating or disallowing any First Lien Debt held by Yucaipa.

**RESPONSE TO REQUEST NO. 52:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 53:**

All Documents, other than those produced in response to the previous requests, Relating to how
the Lenders would share in any recovery with respect to the First Lien Debt.

**RESPONSE TO REQUEST NO. 53:**

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome, and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.  Subject to and without waiving the foregoing general

23

and specific objections, Black Diamond responds that it already has produced all non-privileged

documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 54:

All Documents, other than those produced in response to the previous requests, Relating to how the Lenders would share in any recovery with respect to the First Lien Debt if the First Lien Debt held by Yucaipa were equitably subordinated or otherwise disallowed.

## RESPONSE TO REQUEST NO. 54:

Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome, and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence. Subject to and without waiving the foregoing general

and specific objections, Black Diamond responds that it already has produced all non-privileged

documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 55:

All Documents, other than those produced in response to the previous requests, Relating to the equitable subordination or disallowance of any First Lien Debt.

## RESPONSE TO REQUEST NO. 55:

Black Diamond objects to this Request on the grounds that it is vague, overbroad

and unduly burdensome. Subject to and without waiving the foregoing general and specific

objections, Black Diamond responds that it already has produced all non-privileged documents

responsive to this Request.

## REQUEST FOR PRODUCTION NO. 56:

All Documents, other than those produced in response to the previous requests, Relating to any Lender's investment in, or cost basis for, the First Lien Debt.

24

**RESPONSE TO REQUEST NO. 56:**

        Black Diamond objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents, other than those produced in response to the previous requests, Relating to a
borrower or equity holder also being a Lender or Requisite Lender.

**RESPONSE TO REQUEST NO. 57:**

        Black Diamond objects to this Request on the grounds that it is vague, overbroad

and unduly burdensome.  Subject to and without waiving the foregoing general and specific

objections, Black Diamond responds that it already has produced all non-privileged documents

responsive to this Request.

Dated: June 19, 2015
      Wilmington, Delaware           **LANDIS RATH & COBB LLP**

                                     Adam G. Landis (No. 3407)
                                     Kerri K. Mumford (No. 4186)
                                     919 Market Street, Suite 1800
                                     Wilmington, Delaware 19801
                                     Telephone: (302) 467-4400
                                     Facsimile: (302) 467-4450

                                     -and-

Adam C. Harris
David Hillman
Robert J. Ward
**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Counsel to Spectrum Investment Partners L.P.*

EXHIBIT 8

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ASHINC Corporation, *et al.*,<br><br>    Debtors. | Chapter 11<br><br>Case No. 12-11564 (CSS)<br><br>(Jointly Administered) |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT,<br><br>    Plaintiffs,<br><br>v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK,<br><br>    Defendants. | Adv. Proc. No. 14-50971 (CSS) |

## RESPONSES AND OBJECTIONS OF SPECTRUM INVESTMENT PARTNERS L.P. TO YUCAIPA'S FIRST SET OF REQUESTS FOR PRODUCTION

Plaintiffs and Counterclaim Spectrum Investment Partners L.P. ("Spectrum"), by and through its undersigned counsel, hereby respond and object, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable by Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure, to the First Set of Requests for Production of Yucaipa American

1

Alliance Fund I, LP and Yucaipa American Alliance (Parallel) Fund I, LP (collectively,

"Yucaipa"), dated May 20, 2015 (the "Requests"), as set forth below.

## GENERAL RESPONSES AND OBJECTIONS

The following general responses and objections ("General Objections") are

incorporated into each specific response and objection that follows.

1.    Spectrum objects to the Requests, including each and every definition,

instruction, and document request, to the extent that they seek to impose obligations on Spectrum

beyond those required or authorized by the Federal Rules of Bankruptcy Procedure, the Federal

Rules of Civil Procedure, or the Local Rules for the United States Bankruptcy Court for the

District of Delaware.

2.    Spectrum objects to the Requests to the extent that they seek disclosure of

any information or document that is confidential, sensitive, proprietary, subject to trade secret

protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.    Spectrum objects to the Requests to the extent that they seek disclosure of

documents containing matters that are protected from discovery by the attorney-client privilege,

the work-product doctrine, the joint-defense privilege, the common interest privilege, or any

other applicable privilege or exemption.  Spectrum also expressly reserves the right to redact

non-responsive or privileged portions of any documents that may be produced in response to the

Requests and will so indicate to the extent that it does so.  Inadvertent disclosure of any

privileged or otherwise protected documents or information shall not be a waiver of any claim of

privilege, work-product protection, exemption, or immunity.  Spectrum shall be entitled to the

return of any inadvertently produced privileged or otherwise protected documents or

2

information, and demands that Yucaipa return all copies of any inadvertently produced documents.

4.      Spectrum objects to the Requests to the extent that they seek disclosure of documents containing matters that are not within Spectrum's possession, custody, control, or knowledge.

5.      Spectrum objects to the Requests to the extent that the expense or burden of production called for is excessive or outweighs its probative value.  In attempting to find responsive documents to which no objection is made, Spectrum will conduct reasonable searches.

6.      Spectrum objects to the Requests to the extent that they seek disclosure of documents containing matters that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

7.      Spectrum objects to the Requests to the extent that they seek disclosure of documents containing matters that are publicly available, already in Yucaipa's possession, custody, or control, or previously provided to Yucaipa.

8.      Spectrum objects to the Requests to the extent that they seek disclosure of documents containing matters that are in another persons' or entities' possession, custody, or control, or are more easily obtained by Yucaipa directly from another person or entity.

9.      Spectrum objects to the Requests to the extent that they seek disclosure of documents containing matters pertaining to persons or entities other than Spectrum.

10.      Spectrum objects to the Requests to the extent that they seek the production of documents containing matters not relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

11.     Spectrum objects to the Requests to the extent that they are vague, ambiguous, duplicative, overly broad and/or unduly burdensome.

12.     Spectrum objects to the Requests to the extent that they impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on Spectrum.

13.     Spectrum does not in any way waive or intend to waive, but rather preserves and intends to preserve: (a) all rights to object on any ground to the competence, relevance, materiality and admissibility of any document or information that may be produced in response to the Requests or the subject matter thereof; (b) all rights to object on any ground to the use of any document or information that may be produced in response to the Requests or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (c) all rights to object on any ground to any request for further responses to the Requests or any other document request.

14.     Spectrum's objections to the Requests are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Spectrum at a later date and are made without prejudice to Spectrum's rights to revise, correct, clarify, supplement, modify, or amend its objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

## REQUEST NO. 1

All documents, other than those produced in response to previous requests, Concerning Your potential or actual acquisition of First Lien Debt, including without limitation, the identity of the seller, the price paid, the amount of debt acquired and the date of acquisition.

4

## RESPONSE TO REQUEST NO. 1

Spectrum objects to this request on the grounds that it is vague, overbroad, unduly

burdensome and seeks irrelevant information that is not reasonably calculated to the lead to the

discovery of admissible evidence.

## REQUEST NO. 2

All Documents, other than those produced in response to the previous requests, Concerning Your
potential or actual sale or disposal of First Lien Debt, including without limitation, the identity of
the buyer, the price obtained, the amount of debt sold and the date of the sale.

## RESPONSE TO REQUEST NO. 2

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

## REQUEST NO. 3

All Documents, other than those produced in response to the previous requests, Concerning the
Third Amendment, including without limitation, any document discussing whether you would
vote in favor of the Third Amendment or not, or any documents discussing whether you had any
reservations or concerns about the Third Amendment if approved.

## RESPONSE TO REQUEST NO. 3

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Spectrum responds that it already has produced all

non-privileged documents responsive to this Request.

## REQUEST NO. 4

All Documents, other than those produced in response to the previous requests, Concerning any
Lenders' vote on the Third Amendment.

**RESPONSE TO REQUEST NO. 4**

  Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests.  Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST NO. 5**

All Documents, other than those produced in response to the previous requests, concerning the effect of the Third Amendment on Yucaipa.

**RESPONSE TO REQUEST NO. 5**

  Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests.  Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST NO. 6**

All Documents, other than those produced in response to the previous requests, Concerning any potential or actual acquisition by Black Diamond and/or Spectrum of the First Lien Debt held by AMMC.

**RESPONSE TO REQUEST NO. 6**

  Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence.  Spectrum further objects to this request on the grounds that it seeks documents already within Yucaipa's possession, custody, or control.

**REQUEST NO. 7**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and CIT in any way relating to Yucaipa.

6

**RESPONSE TO REQUEST NO. 7**

       Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests.  Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST NO. 8**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and CIT in any way relating to Yucaipa's status as Requisite Lender.

**RESPONSE TO REQUEST NO. 8**

       Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests.  Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST NO. 9**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and CIT in any way Relating to any transfer of First Lien Debt between Yucaipa and ComVest.

**RESPONSE TO REQUEST NO. 9**

       Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests.  Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST NO. 10**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and CIT in any way Relating to the exercise of remedies under the First Lien Credit Agreement against Allied.

**RESPONSE TO REQUEST NO. 10**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST NO. 11**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and CIT in any way Concerning whether the Allied board of directors breached its fiduciary duties.

**RESPONSE TO REQUEST NO. 11**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST NO. 12**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and CIT in any way Concerning whether Yucaipa aided and abetted any breach of fiduciary duties by the Allied board of directors.

**RESPONSE TO REQUEST NO. 12**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST NO. 13**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and CIT in any way Concerning a lock-up agreement or any similar arrangement relating to potential litigation against Yucaipa or the exercise of remedies under the First Lien Credit Agreement against Allied.

**RESPONSE TO REQUEST NO. 13**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and any other Lender in any way relating to Yucaipa.

**RESPONSE TO REQUEST NO. 14:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and any other Lender in any way relating to Yucaipa's status as Requisite Lender.

**RESPONSE TO REQUEST NO. 15:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and any other Lender in any way Relating to the exercise of remedies under the First Lien Credit Agreement against Allied.

**RESPONSE TO REQUEST NO. 16:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and any other Lender in any way Concerning whether the Allied board of directors breached its fiduciary duties.

**RESPONSE TO REQUEST NO. 17:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents, other than those produced in response to the previous requests, evidencing any Communications between You and any other Lender in any way Concerning whether Yucaipa aided and abetted any breach of fiduciary duties by the Allied board of directors.

**RESPONSE TO REQUEST NO. 18:**

      Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Spectrum responds that it already has produced all

non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and any other Lender in any way Concerning a lock-up
agreement or any similar arrangement relating to potential litigation against Yucaipa or the
exercise of remedies under the First Lien Credit Agreement against Allied.

**RESPONSE TO REQUEST NO. 19:**

      Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Spectrum responds that it already has produced all

non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and any person (including, without limitation, T Michael Rigs
and Kirk Ferguson) in any way Concerning potential litigation against Yucaipa or the equitable
subordination of any First Lien Debt held by Yucaipa

**RESPONSE TO REQUEST NO. 20:**

      Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Spectrum responds that it already has produced all

non-privileged documents responsive to this Request.

11

**REQUEST FOR PRODUCTION NO. 21:**

All Documents, other than those produced in response to the previous requests, Concerning Your or any Lender's attempt to Invalidate or otherwise Challenge the Fourth Amendment.

**RESPONSE TO REQUEST NO. 21:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests.  Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents, other than those produced in response to the previous requests, Concerning Your or any Lender's attempt to Invalidate or otherwise Challenge the transfer of Fist Lien Debt from ComVest to Yucaipa.

**RESPONSE TO REQUEST NO. 22:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests.  Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents, other than those produced in response to the previous requests, Concerning Your or any Lender's contemplation of requesting CIT not to settle any trade of First Lien Debt between Yucaipa and ComVest.

**RESPONSE TO REQUEST NO. 23:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests.  Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents, other than those produced in response to the previous requests, Concerning the Fourth Amendment.

**RESPONSE TO REQUEST NO. 24:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents, other than those produced in response to the previous requests, evidencing any analysis, evaluation, summary, or notes concerning the Yucaipa Tender Offer.

**RESPONSE TO REQUEST NO. 25:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, duplicative of other Requests and seeks information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law, and seeks disclosure of matters that are protected from discovery by the attorney-client privilege, the work-product doctrine, the joint-defense privilege, the common interest privilege, or any other applicable privilege or exemption. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents, other than those produced in response to the previous requests, evidencing any Communications Concerning Yucaipa's efforts to acquire First Lien Debt held by ComVest.

13

## RESPONSE TO REQUEST NO. 26:

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Spectrum responds that it already has produced all

non-privileged documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 27:

All Documents, other than those produced in response to the previous requests, evidencing any
Communications Concerning ComVest's assignment to Yucaipa of its First Lien Credit Claims,
including, but not limited to, any discussion or Communication of the August 22, 2009 E-mails.

## RESPONSE TO REQUEST NO. 27:

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Spectrum responds that it already has produced all

non-privileged documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 28:

All Documents, other than those produced in response to the previous requests, Concerning any
meeting or discussion between representatives of Yucaipa and representatives of Black Diamond
or Spectrum Relating to Allied, including, but not limited to, the August 18, 2009 meeting
between Stephen H. Deckoff and Ronald Burkle.

## RESPONSE TO REQUEST NO. 28:

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Spectrum responds that it already has produced all

non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents, other than those produced in response to the previous requests, Concerning Your analysis or evaluation of any actual or potential deal with Jack Cooper involving Allied (including the acquisition of the First Lien Debt by Jack Cooper), between January 2011 and September 2012.

**RESPONSE TO REQUEST NO. 29:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, duplicative of other Requests and seeks information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law, and seeks disclosure of matters that are protected from discovery by the attorney-client privilege, the work-product doctrine, the joint-defense privilege, the common interest privilege, or any other applicable privilege or exemption. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents, other than those produced in response to the previous requests, Concerning any Lender's analysis or evaluation of any actual or potential deal with Jack Cooper involving Allied (including the acquisition of the First Lien Debt by Jack Cooper), between January 2011 and September 2012.

**RESPONSE TO REQUEST NO. 30:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, duplicative of other Requests and seeks information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law, and seeks disclosure of matters that are protected from discovery by the attorney-client privilege, the work-product doctrine, the joint-defense privilege, the common interest privilege, or any other applicable privilege or exemption. Subject

15

to and without waiving the foregoing general and specific objections, Spectrum responds that it

already has produced all non-privileged documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 31:

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and any other Lender in any way Relating to any actual or
potential deal with Jack Cooper.

## RESPONSE TO REQUEST NO. 31:

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome, duplicative of other Requests and seeks information that is confidential,

sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure

pursuant to applicable federal or state law, and seeks disclosure of matters that are protected

from discovery by the attorney-client privilege, the work-product doctrine, the joint-defense

privilege, the common interest privilege, or any other applicable privilege or exemption.  Subject

to and without waiving the foregoing general and specific objections, Spectrum responds that it

already has produced all non-privileged documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 32:

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and any Lender (including but not limited to Spectrum) in any
way Relating to a strategy, plan, agreement, or pact with regard to Yucaipa.

## RESPONSE TO REQUEST NO. 32:

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome, duplicative of other Requests and seeks information that is confidential,

sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure

pursuant to applicable federal or state law, and seeks disclosure of matters that are protected

from discovery by the attorney-client privilege, the work-product doctrine, the joint-defense

privilege, the common interest privilege, or any other applicable privilege or exemption.  Subject

to and without waiving the foregoing general and specific objections, Spectrum responds that it

already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents, other than those produced in response to the previous requests, evidencing any
Communications between You and any Lender (including but not limited to Spectrum) in any
way Relating to a strategy, plan, agreement, or pact with regard to Allied.

**RESPONSE TO REQUEST NO. 33:**

   Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome, duplicative of other Requests and seeks information that is confidential,

sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure

pursuant to applicable federal or state law, and seeks disclosure of matters that are protected

from discovery by the attorney-client privilege, the work-product doctrine, the joint-defense

privilege, the common interest privilege, or any other applicable privilege or exemption.  Subject

to and without waiving the foregoing general and specific objections, Spectrum responds that it

already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents, other than those produced in response to the previous requests, Concerning the
Cooperation Agreement.

**RESPONSE TO REQUEST NO. 34:**

   Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Spectrum responds that it already has produced all

non-privileged documents responsive to this Request.

17

**REQUEST FOR PRODUCTION NO. 35:**

All Documents, other than those produced in response to the previous requests, Concerning the equitable subordination of First Lien Debt held by Yucaipa.

**RESPONSE TO REQUEST NO. 35:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents, other than those produced in response to the previous requests, Concerning the equitable subordination of First Lien Debt held by any Lender other than Yucaipa.

**RESPONSE TO REQUEST NO. 36:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 37:**

All Documents, other than those produced in response to the previous requests, evidencing any attempt to estimate or value Your or any other Lender's investment in Allied.

**RESPONSE TO REQUEST NO. 37:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence, and seeks information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

**REQUEST FOR PRODUCTION NO. 38:**

All Documents, other than those produced in response to the previous requests, concerning any transfer of First Lien Debt between Spectrum and Black Diamond.

**RESPONSE TO REQUEST NO. 38:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it will conduct a reasonable search for and produce, to the extent they exist, non-privileged documents relating to the transfer of Fist Lien Debt between Black Diamond and Spectrum pursuant to the Cooperation Agreement.

**REQUEST FOR PRODUCTION NO. 39:**

All Documents, other than those produced in response to the previous requests, Concerning any Lender's claim for reimbursement of legal expenses under the First Lien Credit Agreement.

**RESPONSE TO REQUEST NO. 39:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 40:**

All Documents, other than those produced in response to the previous requests, Concerning any Yucaipa's claims for reimbursement of legal expenses under the First Lien Credit Agreement.

**RESPONSE TO REQUEST NO. 40:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents, other than those produced in response to the previous requests, Concerning the Credit Bid.

19

**RESPONSE TO REQUEST NO. 41:**

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents, other than those produced in response to the previous requests, Concerning the
formation or purpose of SBDRE LLC.

**RESPONSE TO REQUEST NO. 42:**

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 43:**

All Documents, other than those produced in response to the previous requests, Concerning the
voting rights, equity, and corporate governance of SBDRE LLC.

**RESPONSE TO REQUEST NO. 43:**

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents, other than those produced in response to the previous requests, Concerning the
SBDRE Memorandum

**RESPONSE TO REQUEST NO. 44:**

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 45:**

All Documents, other than those produced in response to the previous requests, Concerning any potential or actual transaction structure proposed by Black Diamond and Spectrum for Allied, including without limitation any credit bid for all or substantially all the assets of Allied.

**RESPONSE TO REQUEST NO. 45:**

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 46:**

All Documents, other than those produced in response to the previous requests, Concerning the New Issuance.

**RESPONSE TO REQUEST NO. 46:**

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead

to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 47:**

All Documents, other than those produced in response to the previous requests, evidencing any Communications among representatives or employees of Spectrum or between Spectrum and Black Diamond in any way Relating to a bankruptcy filing for Allied, whether involuntary or voluntary.

**RESPONSE TO REQUEST NO. 47:**

Spectrum objects to this Request on the grounds that it is vague, overbroad,

unduly burdensome and duplicative of other Requests.  Subject to and without waiving the

foregoing general and specific objections, Spectrum responds that it already has produced all

non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents, other than those produced in response to the previous requests, Relating to a bankruptcy filing (including planning therefor) for Allied, whether involuntary or voluntary.

**RESPONSE TO REQUEST NO. 48:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 49:**

All Documents, other than those produced in response to the previous requests, Concerning the Black Diamond and Spectrum Affidavits.

**RESPONSE TO REQUEST NO. 49:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and duplicative of other Requests. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 50:**

All document holds You have received since 2009 in connection with any litigation related to Allied.

**RESPONSE TO REQUEST NO. 50:**

Spectrum objects to this Request on the grounds that it is overbroad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it will conduct a reasonable search for and produce, to the extent they exist, non-privileged documents responsive to this Request.

22

**REQUEST FOR PRODUCTION NO. 51:**

Documents evidencing any changes to Your document and data retention policies since January 1, 2011.

**RESPONSE TO REQUEST NO. 51:**

Spectrum objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it will conduct a reasonable search for and produce, to the extent they exist, non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 52:**

All Documents, other than those produced in response to the previous requests, Relating to compensating Your officers, directors, employees, consultants, or representatives based on equitably subordinating or disallowing any First Lien Debt held by Yucaipa.

**RESPONSE TO REQUEST NO. 52:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 53:**

All Documents, other than those produced in response to the previous requests, Relating to how the Lenders would share in any recovery with respect to the First Lien Debt.

**RESPONSE TO REQUEST NO. 53:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, and seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 54:**

All Documents, other than those produced in response to the previous requests, Relating to how the Lenders would share in any recovery with respect to the First Lien Debt if the First Lien Debt held by Yucaipa were equitably subordinated or otherwise disallowed.

**RESPONSE TO REQUEST NO. 54:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, and seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents, other than those produced in response to the previous requests, Relating to the equitable subordination or disallowance of any First Lien Debt.

**RESPONSE TO REQUEST NO. 55:**

Spectrum objects to this Request on the grounds that it is vague, overbroad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

24

**REQUEST FOR PRODUCTION NO. 56:**

All Documents, other than those produced in response to the previous requests, Relating to any Lender's investment in, or cost basis for, the First Lien Debt.

**RESPONSE TO REQUEST NO. 56:**

Spectrum objects to this Request on the grounds that it is vague, overbroad, unduly burdensome and seeks irrelevant information that is not reasonably calculated to the lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents, other than those produced in response to the previous requests, Relating to a borrower or equity holder also being a Lender or Requisite Lender.

**RESPONSE TO REQUEST NO. 57:**

Spectrum objects to this Request on the grounds that it is vague, overbroad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, Spectrum responds that it already has produced all non-privileged documents responsive to this Request.

Dated: June 19, 2015
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

-and-

Adam C. Harris
David Hillman
Robert J. Ward
**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Counsel to Spectrum Investment Partners L.P.*

EXHIBIT 9

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | **STIPULATION EXTENDING TIME TO RESPOND TO DEFENDANTS' DISCOVERY REQUESTS** |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

WHEREAS, on June 10, 2015, Yucaipa American Alliance Fund I, L.P. and

Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively, "Yucaipa") served Yucaipa's

First Set of Interrogatories to Plaintiff/Counter-Claim Defendant BDCM Opportunity Fund II,

LP and Black Diamond CLO 2005-1 Ltd.;

WHEREAS, on June 10, 2015, Yucaipa served Yucaipa's First Set of

Interrogatories to Plaintiff/Counter-Claim Defendant Spectrum Investment Partners L.P.;

WHEREAS, on June 10, 2015, Yucaipa served Yucaipa's First Set of Requests for Admission to Plaintiff/Counter-Claim Defendant BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 Ltd.;

WHEREAS, on June 10, 2015, Yucaipa served Yucaipa's First Set of Requests for Admission to Plaintiff/Counter-Claim Defendant Spectrum Investment Partners L.P.;

WHEREAS, on June 10, 2015, Derex Walker served his First Set of Interrogatories to Plaintiff/Counter-Claim Defendant BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 Ltd.;

WHEREAS, on June 10, 2015, Derex Walker served his First Set of Interrogatories to Plaintiff/Counter-Claim Defendant Spectrum Investment Partners L.P.;

WHEREAS, on June 10, 2015, Jos Opdeweegh served his First Set of Interrogatories to Plaintiff/Counter-Claim Defendant BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 Ltd.;

WHEREAS, on June 10, 2015, Jos Opdeweegh served his First Set of Interrogatories to Plaintiff/Counter-Claim Defendant Spectrum Investment Partners L.P.;

WHEREAS, on June 10, 2015, Joseph Tomczak served his First Set of Interrogatories to Plaintiff/Counter-Claim Defendant BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 Ltd.;

WHEREAS, on June 10, 2015, Joseph Tomczak served his First Set of Interrogatories to Plaintiff/Counter-Claim Defendant Spectrum Investment Partners L.P.;

WHEREAS, on June 10, 2015, Ira Tochner served his First Set of Interrogatories to Plaintiff/Counter-Claim Defendant BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 Ltd.;

WHEREAS, on June 10, 2015, Ira Tochner served his First Set of Interrogatories to Plaintiff/Counter-Claim Defendant Spectrum Investment Partners L.P.;

WHEREAS, on June 10, 2015, Jeff Pelletier served his First Set of Interrogatories to Plaintiff/Counter-Claim Defendant BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 Ltd.;

WHEREAS, on June 10, 2015, Jeff Pelletier served his First Set of Interrogatories to Plaintiff/Counter-Claim Defendant Spectrum Investment Partners L.P.;

IT IS HEREBY STIPULATED AND AGREED that the deadline for BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd. and Spectrum Investment Partners L.P. to serve their responses to the above-referenced discovery requests is extended to July 31, 2015.

Dated: July 10, 2015
      Wilmington, Delaware

LANDIS RATH & COBB LLP

_____
Adam G. Landis
Kerri K. Mumford
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400


-and-

SCHULTE ROTH & ZABEL LLP
Adam C. Harris
Robert J. Ward
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Michael S. Neiburg*

_____
Michael R. Nestor
Michael S. Neiburg
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600

-and-

*Attorneys for Plaintiffs*

GIBSON, DUNN & CRUTCHER LLP
Robert A. Klyman
Maurice M. Suh
Kahn Scolnick
333 South Grand Avenue
Los Angeles, CA  90071
Telephone: (213) 229-7000

*Attorneys for Defendants*

EXHIBIT 10

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**PLAINTIFF/COUNTER-DEFENDANT BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD.'S RESPONSES AND OBJECTIONS TO YUCAIPA'S FIRST SET OF REQUESTS FOR ADMISSION**

BDCM Opportunity Fund I, LP and Black Diamond CLO 2005-1 Ltd.

(collectively, "Black Diamond"), by and through their undersigned counsel, hereby respond and

object, pursuant to Rules 7026 and 7036 of the Federal Rules of Bankruptcy Procedure, to the

First Set of Requests for Admission of Yucaipa American Alliance Fund I, L.P. ("Yucaipa"),

dated June 10, 2015 (the "Requests for Admission"), as set forth below.

## <u>GENERAL OBJECTIONS</u>

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1.        Black Diamond objects to the Requests for Admission, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), or any other applicable rules or laws.  Black Diamond will construe and respond to the Requests for Admission in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2.        Black Diamond objects to the Requests for Admission to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.        Black Diamond objects to the Requests for Admission to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4.        Black Diamond objects to the Requests for Admission to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5.        Black Diamond objects to the Requests for Admission to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on

2

discovery ("Privileged Materials").  Unless specifically stated otherwise, Black Diamond does not intend disclose any Privileged Materials.  The inadvertent disclosure of any Privileged Materials is not a waiver of any claim of privilege or other protection with respect to any Privileged Materials or any other document or matter, all of which are expressly reserved.  Black Diamond further reserves the right to obtain the return of such information, prohibit its use in any manner, and/or demand the destruction of any such information inadvertently disclosed in response to the Requests for Admission.

6.      Black Diamond objects to the Requests for Admission to the extent that they seek disclosure of information not within Black Diamond's possession, custody, control, or knowledge.

7.      Black Diamond objects to the Requests for Admission to the extent that they purport to request information that is public, already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

8.      Black Diamond objects to the Requests for Admission to the extent that they seek information pertaining to persons or entities other than Black Diamond.

9.      Black Diamond objects to the Requests for Admission to the extent that they are argumentative, lack foundation, or incorporate allegations and assertions that are disputed or erroneous.  By responding and objecting to the Requests for Admission, Black Diamond does not admit the correctness of such assertions.

10.      Black Diamond objects to the Requests for Admission to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that they state or assume legal conclusions.  In providing these objections and responses to the

Requests for Admission, Black Diamond does not admit the factual or legal premise of any

Request for Admission.

        11.     Black Diamond objects to the Requests for Admission to the extent that

they are not limited to the claims or defenses in this action because they, for that reason alone,

are overbroad and unduly burdensome, seek information irrelevant to the subject matter of this

action, and are not calculated to lead to the discovery of admissible evidence.

        12.     Black Diamond objects to the Requests for Admission to the extent that

they impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice

on Black Diamond.

        13.     Black Diamond does not in any way waive or intend to waive, but rather

preserves and intends to preserve: (a) all rights to object on any ground to the competence,

relevance, materiality and admissibility of any document or information that may be produced in

response to the Requests for Admission or the subject matter thereof; (b) all rights to object on

any ground to the use of any document or information that may be produced in response to the

Requests for Admission or the subject matter thereof, in any subsequent proceeding, including

the trial of this or any other action; and (c) all rights to object on any ground to any request for

further responses to the Requests for Admission or any other document request.

        14.     By agreeing to search for information, Black Diamond does not concede

that any Request for Admission seeks information that is relevant to the subject matter involved

in this action or any claim or defense, or seeks information that is reasonably calculated to lead

to the discovery of admissible evidence.  Rather, Black Diamond expressly reserves all further

objections as to the relevance and admissibility of the information provided, as well as the right

to object to further discovery relating to the subject matter of any information provided.

15.    Black Diamond objects to the definitions of the terms "Challenge," "Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Invalidate," "Person(s)," "Relate to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome, vague, and ambiguous.  To the extent possible, Black Diamond will construe these terms in accordance with their ordinary meanings.

16.    Black Diamond objects to the definition of the term "Lender" as overbroad.  Black Diamond shall interpret the term "Lender" as having the meaning set forth in the First Lien Credit Agreement.

17.    Black Diamond objects to the definition of the terms "You" and "Your" on the grounds that those terms are defined as "Spectrum" when the Requests for Admission are directed at Black Diamond.  Black Diamond shall interpret the terms "You" and "Your" as meaning Black Diamond.

18.    Black Diamond's objections to the Requests for Admission are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Black Diamond at a later date and are made without prejudice to Black Diamond's rights to revise, correct, clarify, supplement, modify, or amend its objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

## REQUEST FOR ADMISSION NO. 1

Admit that You did not take any action before CIT's settlement of the Georgia Action with Yucaipa to indicate to CIT or Yucaipa or the Georgia state court that You did not approve of the Georgia Settlement.

## RESPONSE TO REQUEST FOR ADMISSION NO. 1

Black Diamond objects to this Request for Admission on the grounds that it is vague and ambiguous to the extent that terms "take any action," "approve" and "Georgia Settlement" are undefined and susceptible to numerous interpretations.

Black Diamond further objects to this Request for Admission on the grounds that it is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond admits this Request for Admission, but states that Black Diamond and Spectrum had no opportunity before the settlement of the Georgia Action to indicate to CIT or Yucaipa or the Georgia state court that they did not approve of the settlement of the Georgia Action, and that shortly after the Georgia Action was settled, Black Diamond and Spectrum filed the New York Action challenging the validity of the Purported Fourth Amendment and Yucaipa's purported status as Requisite Lender, thereby indicating to Yucaipa and CIT that Black Diamond and Spectrum did not approve of CIT's concession in the settlement of the Georgia Action that the Purported Fourth Amendment is valid and that Yucaipa is the Requisite Lender.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 2

Admit that in approximately September 2009, You requested that CIT, as the Administrative Agent for all Lenders under the First Lien Credit Agreement, refuse to recognize Yucaipa as the Requisite Lender.

6

## RESPONSE TO REQUEST FOR ADMISSION NO. 2

Black Diamond objects to this Request for Admission on the grounds that phrase "approximately September 2009" is vague and ambiguous.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond denies this Request for Admission, but admits that on September 18, 2009, counsel for Black Diamond and Spectrum sent a letter to counsel for CIT, stating, among other things, that "we have doubts about the validity of the assignment of Loans to the Sponsors and their entitlement to act as Requisite Lenders under the Credit Agreement."

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 3

Admit that at no time before filing the involuntary petition in May 2012 did You share the September 2009 letter instructing CIT not to recognize Yucaipa as Request Lender with Yucaipa.

## RESPONSE TO REQUEST FOR ADMISSION NO. 3

Black Diamond objects to this Request for Admission on the grounds that it is vague and ambiguous to the extent that terms "involuntary petition," "share," and "September 2009 letter" are not defined and susceptible to numerous interpretations.

Black Diamond further objects to this Request for Admission on the grounds that it lacks foundation and assumes unsubstantiated facts that are disputed to the extent that the letter dated September 18, 2009 from counsel for Black Diamond and Spectrum to counsel for CIT (the "September 18, 2009 Letter") did not instruct CIT to not recognize Yucaipa as Requisite Lender.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond admits that Black Diamond did not send the September 18, 2009 Letter to Yucaipa before filing the involuntary petition in May 2012 because the September 18, 2009 Letter was addressed to counsel for CIT, not Yucaipa.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 4

Admit that from approximately March 2011 and through May 2012 You communicated directly with Jack Cooper regarding Jack Cooper's efforts to acquire Allied's assets.

## RESPONSE TO REQUEST FOR ADMISSION NO. 4

Black Diamond objects to this Request for Admission on the grounds that phrase "approximately March 2011 and through May 2012" is vague and ambiguous.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond admits this Request for Admission.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 5

Admit that You communicated directly with Jack Cooper regarding the possibility of selling Your First Lien Claims to Jack Cooper and that the price of such a transaction was at a discount to par.

## RESPONSE TO REQUEST FOR ADMISSION NO. 5

Black Diamond objects to this Request for Admission on the grounds that phrase "the price of such a transaction" is vague and ambiguous.

8

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond denies this Request for Admission, but admits that Black Diamond communicated with Jack Cooper regarding the possibility of selling Black Diamond's First Lien Claims to Jack Cooper and that on certain occasions, Jack Cooper had offered to purchase Black Diamond's First Lien Claims at a discount to par, but Black Diamond and Jack Cooper never agreed upon a transaction in which Jack Cooper would purchase Black Diamond's First Lien Claims at a discount to par.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 6

Admit that equitably subordinating other Lenders' First Lien Claims was one of the "strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" contemplated by the January 2012 Cooperation Agreement.

## RESPONSE TO REQUEST FOR ADMISSION NO. 6

Subject to and without waiving the foregoing General Objections, Black Diamond denies this Request for Admission.

## REQUEST FOR ADMISSION NO. 7

Admit that equitably subordinating Yucaipa's First Lien Claims was one of the "strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" contemplated by the January 2012 Cooperation Agreement.

## RESPONSE TO REQUEST FOR ADMISSION NO. 7

Subject to and without waiving the foregoing General Objections, Black Diamond denies this Request for Admission.

**REQUEST FOR ADMISSION NO. 8**

Admit that You entered into the Cooperation Agreement in contemplation of an involuntary bankruptcy filing for Allied.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8**

Black Diamond objects to this Request for Admission on the grounds that the phrase "in contemplation of" is vague and ambiguous.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond denies this Request for Admission, and states that Black Diamond may have contemplated an involuntary bankruptcy filing for Allied at the time the Cooperation Agreement was executed, but Black Diamond did not enter into the Cooperation Agreement for the specific purpose of filing an involuntary bankruptcy petition against Allied.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**REQUEST FOR ADMISSION NO. 9**

Admit that You were negotiating with Jack Cooper regarding Jack Cooper's potential acquisition of First Lien Debt while negotiating the transfer of $4,239,486.90 in First Lien Debt from You to Spectrum

**RESPONSE TO REQUEST FOR ADMISSION NO. 9**

Black Diamond objects to this Request for Admission on the grounds that it is vague and ambiguous.

Black Diamond further objects to this Request for Admission on the grounds that it lacks foundation and assumes unsubstantiated facts.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond denies this Request for Admission, and states that Black Diamond

10

did not negotiate for the transfer of $4,239,486.90 in First Lien Debt to Spectrum.  Rather,

pursuant to the Cooperation Agreement, Black Diamond was required to offer Spectrum that

amount of First Lien Debt at the same price Black Diamond had paid for it.

Black Diamond's investigation through discovery is ongoing and continues and

Black Diamond expressly reserves its right to supplement and/or modify this response as it

deems appropriate.

## REQUEST FOR ADMISSION NO. 10

Admit that You did not disclose the transfer of the $4,239,486.90 in First Lien Debt in the Black
Diamond and Spectrum Affidavits.

## RESPONSE TO REQUEST FOR ADMISSION NO. 10

Black Diamond objects to this Request for Admission on the grounds that the

phrase "the transfer of the $4,239,486.90 in First Lien Debt" is vague and ambiguous.

Black Diamond further objects to this Request for Admission on the grounds

Black Diamond has no right or ability to disclose anything in an affidavit that is filed on

Spectrum's behalf.

Subject to and without waiving the foregoing General Objections and Specific

Objections, Black Diamond denies this Request for Admission, but admits that the Affidavit of

Richard Ehrlich on Behalf of BDCM Opportunity Fund II, LP, dated May 11, 2012 (Case No.

12-11564-CSS, D.I. 6.) does not disclose that Black Diamond transferred $4,239,486.90 in First

Lien Debt to Spectrum.

Black Diamond's investigation through discovery is ongoing and continues and

Black Diamond expressly reserves its right to supplement and/or modify this response as it

deems appropriate.

11

**REQUEST FOR ADMISSION NO. 11**

Admit that You did not disclose the existence of the Cooperation Agreement in connection with the filing of the involuntary bankruptcy filing in May 2012 or in response to discovery.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11**

Black Diamond objects to this Request for Admission on the grounds that the phrase "disclose the existence" is vague and ambiguous.

Black Diamond further objects to this Request for Admission on the grounds that the phrase "in connection with the filing of the involuntary bankruptcy filing" is vague and ambiguous.

Black Diamond further objects to this Request for Admission on the grounds that the phrase "in response to discovery" is vague and ambiguous.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond admits that Black Diamond was not required to disclose the existence of the Cooperation Agreement in connection with the filing of the involuntary bankruptcy petition against Allied in May 2012 and that Black Diamond had not disclosed the existence of the Cooperation Agreement in response to discovery propounded in Adversary Proceeding No. 13-50530 because Black Diamond had not yet completed its document production when Black Diamond disclosed the Cooperation Agreement in response to Yucaipa's Motion for Leave to File a Counterclaim for Equitable Subordination Under 11 U.S.C. § 510(c) or, in the Alternative, to Amend the Answer to Assert Additional Affirmative Defenses (Adv. Proc. No. 13-50530).

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

12

**REQUEST FOR ADMISSION NO. 12**

Admit that You rejected Yucaipa Tender Offer.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12**

Subject to and without waiving the foregoing General Objections, Black Diamond admits this Request for Admission.

**REQUEST FOR ADMISSION NO. 13**

Admit that ComVest was not an Insider of Allied while it served as Requisite Lender.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13**

Black Diamond objects to this Request for Admission on the grounds that it calls for a legal conclusion to the extent that Yucaipa defines "Insider" as having "the meaning set forth in Section 101(31) of the Bankruptcy Code."

Black Diamond further objects to this Request for Admission on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Request for Admission on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond states that the information presently known or readily obtainable by Black Diamond is insufficient to allow Black Diamond to admit or deny this Request for Admission.

**REQUEST FOR ADMISSION NO. 14**

Admit that because ComVest was not an Insider of Allied, You understood that it would be more difficult to equitably subordinate ComVest's First Lien Claims.

13

**RESPONSE TO REQUEST FOR ADMISSION NO. 14**

Black Diamond objects to this Request for Admission on the grounds that it calls for a legal conclusion to the extent that Yucaipa defines "Insider" as "the meaning set forth in Section 101(31) of the Bankruptcy Code."

Black Diamond further objects to this Request for Admission on the grounds that it lacks foundation.

Black Diamond further objects to this Request for Admission on the grounds that it is based on an incomplete hypothetical.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond denies this Request for Admission.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**REQUEST FOR ADMISSION NO. 15**

Admit that You were considering "creditor remedies" prior to Yucaipa's purchase of the First Lien Debt in August 2009.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15**

Black Diamond objects to this Request for Admission on the grounds that it is vague, ambiguous, overbroad and intelligible to the extent that the term "creditor remedies" is undefined and susceptible to multiple interpretations.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond admits that in August 2009, Black Diamond considered numerous options concerning Allied's defaults under the First Lien Credit Agreement.

14

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 16

Admit that You discussed equitable subordination of Yucaipa in relation to Your Allied First Lien Claims with T. Michael Riggs before filing the involuntary petition in May 2012.

## RESPONSE TO REQUEST FOR ADMISSION NO. 16

Black Diamond objects to this Request for Admission on the grounds that the phrase "equitable subordination of Yucaipa in relation to Your Allied First Lien Claims" is vague and ambiguous.

Black Diamond further objects to this Request for Admission on the grounds that the phrase "the involuntary petition" is vague and ambiguous.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond denies this Request for Admission.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 17

Admit that You were evaluating the possibility of equitable subordination claim in relation to Your Allied First Lien Claims as of August 13, 2009.

## RESPONSE TO REQUEST FOR ADMISSION NO. 17

Black Diamond objects to this Request for Admission on the grounds that it is vague, ambiguous, and intelligible.

15

**REQUEST FOR ADMISSION NO. 18**

Admit that by February 2009, You were aware of Yucaipa's negotiations with ComVest to acquire ComVest's First Lien Claims.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18**

Black Diamond objects to this Request for Admission on the grounds that it is vague and ambiguous to the extent that the term "negotiations" is undefined and susceptible to multiple interpretations.

Black Diamond further objects to this Request for Admission on the grounds that it lacks foundation.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond admits this Request for Admission.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**REQUEST FOR ADMISSION NO. 19**

Admit that on August 18, 2009, Mr. Deckoff discussed Yucaipa's plan to acquire ComVest's First Lien Claims and the Requisite Lender position with Ronald Burkle and Derex Walker of Yucaipa.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19**

Black Diamond objects to this Request for Admission on the grounds that it is vague and ambiguous.

Black Diamond further objects to this Request for Admission on the grounds that it lacks foundation and assumes unsubstantiated facts.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond denies this Request for Admission, but admits that Mr. Deckoff

discussed Yucaipa's potential acquisition of ComVest's First Lien Claims with Ronald Burkle

and Derex Walker of Yucaipa on August 18, 2009.

Black Diamond's investigation through discovery is ongoing and continues and

Black Diamond expressly reserves its right to supplement and/or modify this response as it

deems appropriate.

## REQUEST FOR ADMISSION NO. 20

Admit that on August 18, 2009, Mr. Deckoff agreed to work with Yucaipa to find "mutually
beneficial strategies" with respect to Allied.

## RESPONSE TO REQUEST FOR ADMISSION NO. 20

Black Diamond objects to this Request for Admission on the grounds that it is

vague and ambiguous to the extent that the phrase "agreed to work with Yucaipa" is undefined

and susceptible to multiple interpretations.

Black Diamond further objects to this Request for Admission on the grounds that

it is vague and ambiguous to the extent that the phrase "mutually beneficial strategies" is

undefined and susceptible to multiple interpretations.

Subject to and without waiving the foregoing General Objections and Specific

Objections, Black Diamond denies this Request for Admission.

Black Diamond's investigation through discovery is ongoing and continues and

Black Diamond expressly reserves its right to supplement and/or modify this response as it

deems appropriate.

## REQUEST FOR ADMISSION NO. 21

Admit that Brian Cullen was selected to be a member of Allied's board of directors by the
creditors committee of the Prior Bankruptcy Case in the United States Bankruptcy Court for the
Northern District of Georgia.

## RESPONSE TO REQUEST FOR ADMISSION NO. 21

Black Diamond objects to this Request for Admission on the grounds that it is vague and ambiguous to the extent that the term "Prior Bankruptcy Case" is undefined.

Black Diamond further objects to this Request for Admission on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Request for Admission on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond states that the 2007 Reorganization Plan governs such appointment and speaks for itself.

## REQUEST FOR ADMISSION NO. 22

Admit that, to Your knowledge, Yucaipa did not pay Brian Cullen for Mr. Cullen's service as a member of Allied's board of directors.

## RESPONSE TO REQUEST FOR ADMISSION NO. 22

Black Diamond objects to this Request for Admission on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Request for Admission on the grounds that, even though the information sought in this Request for Admission is already in Yucaipa's possession, Yucaipa has improperly refused to produce such information in discovery in the related action, Adversary Proceeding No. 13-50530.

18

Black Diamond further objects to this Request for Admission on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond states that the information presently known or readily obtainable by Black Diamond is insufficient to allow Black Diamond to admit or deny this Request for Admission.

## REQUEST FOR ADMISSION NO. 23

Admit that, to Your knowledge, Yucaipa did not pay Mark Gendgreske for Mr. Gendgreske's service as a member of Allied's board of directors.

## RESPONSE TO REQUEST FOR ADMISSION NO. 23

Black Diamond objects to this Request for Admission on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Request for Admission on the grounds that, even though the information sought in this Request for Admission is already in Yucaipa's possess, Yucaipa has improperly refused to produce such information in discovery in the related action, Adversary Proceeding No. 13-50530.

Black Diamond further objects to this Request for Admission on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond states that the information presently known or readily obtainable by Black Diamond is insufficient to allow Black Diamond to admit or deny this Request for Admission.

Dated: July 31, 2015
     Wilmington, Delaware         **LANDIS RATH & COBB LLP**


          _/s/ Kerri K. Mumford
          Adam G. Landis (No. 3407)
          Kerri K. Mumford (No. 4186)
          919 Market Street, Suite 1800
          Wilmington, Delaware 19801
          Telephone: (302) 467-4400
          Facsimile: (302) 467-4450

          -and-

          Adam C. Harris
          David Hillman
          Robert J. Ward
          **SCHULTE ROTH & ZABEL LLP**
          919 Third Avenue
          New York, New York 10022
          Telephone: (212) 756-2000
          Facsimile: (212) 593-5955

          *Counsel to BDCM Opportunity Fund I, LP and*
          *Black Diamond CLO 2005-1 Ltd.*

20

EXHIBIT 11

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**PLAINTIFF/COUNTER-DEFENDANT SPECTRUM INVESTMENT PARTNERS, L.P.'S
RESPONSES AND OBJECTIONS TO YUCAIPA'S FIRST SET OF REQUESTS FOR
ADMISSION**

Spectrum Investment Partners L.P. ("Spectrum"), by and through its undersigned

counsel, hereby responds and objects, pursuant to Rules 7026 and 7036 of the Federal Rules of

Bankruptcy Procedure, to the First Set of Requests for Admission of Yucaipa American Alliance

Fund I, L.P. ("Yucaipa"), dated June 10, 2015 (the "Requests for Admission"), as set forth

below.

## GENERAL OBJECTIONS

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1.  Spectrum objects to the Requests for Admission, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), or any other applicable rules or laws.  Spectrum will construe and respond to the Requests for Admission in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2.  Spectrum objects to the Requests for Admission to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.  Spectrum objects to the Requests for Admission to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4.  Spectrum objects to the Requests for Admission to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5.  Spectrum objects to the Requests for Admission to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on

2

discovery ("Privileged Materials").  Unless specifically stated otherwise, Spectrum does not

intend disclose any Privileged Materials.  The inadvertent disclosure of any Privileged Materials

is not a waiver of any claim of privilege or other protection with respect to any Privileged

Materials or any other document or matter, all of which are expressly reserved.  Spectrum further

reserves the right to obtain the return of such information, prohibit its use in any manner, and/or

demand the destruction of any such information inadvertently disclosed in response to the

Requests for Admission.

      6.    Spectrum objects to the Requests for Admission to the extent that they

seek disclosure of information not within Spectrum's possession, custody, control, or knowledge.

      7.    Spectrum objects to the Requests for Admission to the extent that they

purport to request information that is public, already in Yucaipa's possession, or otherwise

available from sources to which Yucaipa also has access or sources that are more convenient,

less burdensome, and/or less expensive.

      8.    Spectrum objects to the Requests for Admission to the extent that they

seek information pertaining to persons or entities other than Spectrum.

      9.    Spectrum objects to the Requests for Admission to the extent that they are

argumentative, lack foundation, or incorporate allegations and assertions that are disputed or

erroneous.  By responding and objecting to the Requests for Admission, Spectrum does not

admit the correctness of such assertions.

      10.    Spectrum objects to the Requests for Admission to the extent that they

imply the existence of facts or circumstances that do not or did not exist, and to the extent that

they state or assume legal conclusions.  In providing these objections and responses to the

Requests for Admission, Spectrum does not admit the factual or legal premise of any Request for Admission.

11.     Spectrum objects to the Requests for Admission to the extent that they are not limited to the claims or defenses in this action because they, for that reason alone, are overbroad and unduly burdensome, seek information irrelevant to the subject matter of this action, and are not calculated to lead to the discovery of admissible evidence.

12.     Spectrum objects to the Requests for Admission to the extent that they impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on Spectrum.

13.     Spectrum does not in any way waive or intend to waive, but rather preserves and intends to preserve: (a) all rights to object on any ground to the competence, relevance, materiality and admissibility of any document or information that may be produced in response to the Requests for Admission or the subject matter thereof; (b) all rights to object on any ground to the use of any document or information that may be produced in response to the Requests for Admission or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (c) all rights to object on any ground to any request for further responses to the Requests for Admission or any other document request.

14.     By agreeing to search for information, Spectrum does not concede that any Request for Admission seeks information that is relevant to the subject matter involved in this action or any claim or defense, or seeks information that is reasonably calculated to lead to the discovery of admissible evidence.  Rather, Spectrum expressly reserves all further objections as to the relevance and admissibility of the information provided, as well as the right to object to further discovery relating to the subject matter of any information provided.

4

15.	Spectrum objects to the definitions of the terms "Challenge," "Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Invalidate," "Person(s)," "Relate to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome, vague, and ambiguous.  To the extent possible, Spectrum will construe these terms in accordance with their ordinary meanings.

16.	Spectrum objects to the definition of the term "Lender" as overbroad. Spectrum shall interpret the term "Lender" as having the meaning set forth in the First Lien Credit Agreement.

17.	Spectrum objects to the definition of the terms "You" and "Your" on the grounds that those terms are defined as "Spectrum" when the Requests for Admission are directed at Spectrum.  Spectrum shall interpret the terms "You" and "Your" as meaning Spectrum.

18.	Spectrum's objections to the Requests for Admission are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Spectrum at a later date and are made without prejudice to Spectrum's rights to revise, correct, clarify, supplement, modify, or amend its objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

## REQUEST FOR ADMISSION NO. 1

Admit that You did not take any action before CIT's settlement of the Georgia Action with Yucaipa to indicate to CIT or Yucaipa or the Georgia state court that You did not approve of the Georgia Settlement.

## RESPONSE TO REQUEST FOR ADMISSION NO. 1

Spectrum objects to this Request for Admission on the grounds that it is vague and ambiguous to the extent that terms "take any action," "approve" and "Georgia Settlement" are undefined and susceptible to numerous interpretations.

Spectrum further objects to this Request for Admission on the grounds that it is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum admits this Request for Admission, but states that Black Diamond and Spectrum had no opportunity before the settlement of the Georgia Action to indicate to CIT or Yucaipa or the Georgia state court that they did not approve of the settlement of the Georgia Action, and that shortly after the Georgia Action was settled, Black Diamond and Spectrum filed the New York Action challenging the validity of the Purported Fourth Amendment and Yucaipa's purported status as Requisite Lender, thereby indicating to Yucaipa and CIT that Black Diamond and Spectrum did not approve of CIT's concession in the settlement of the Georgia Action that the Purported Fourth Amendment is valid and that Yucaipa is the Requisite Lender.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 2

Admit that in approximately September 2009, You requested that CIT, as the Administrative Agent for all Lenders under the First Lien Credit Agreement, refuse to recognize Yucaipa as the Requisite Lender.

## RESPONSE TO REQUEST FOR ADMISSION NO. 2

Spectrum objects to this Request for Admission on the grounds that phrase "approximately September 2009" is vague and ambiguous.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum denies this Request for Admission, but admits that on September 18, 2009, counsel for Black Diamond and Spectrum sent a letter to counsel for CIT, stating, among other things, that "we have doubts about the validity of the assignment of Loans to the Sponsors and their entitlement to act as Requisite Lenders under the Credit Agreement."

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 3

Admit that at no time before filing the involuntary petition in May 2012 did You share the September 2009 letter instructing CIT not to recognize Yucaipa as Request Lender with Yucaipa.

## RESPONSE TO REQUEST FOR ADMISSION NO. 3

Spectrum objects to this Request for Admission on the grounds that it is vague and ambiguous to the extent that terms "involuntary petition," "share," and "September 2009 letter" are not defined and susceptible to numerous interpretations.

Spectrum further objects to this Request for Admission on the grounds that it lacks foundation and assumes unsubstantiated facts that are disputed to the extent that the letter dated September 18, 2009 from counsel for Black Diamond and Spectrum to counsel for CIT (the "September 18, 2009 Letter") did not instruct CIT to not recognize Yucaipa as Requisite Lender.

7

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum admits that Spectrum did not send the September 18, 2009 Letter to Yucaipa before filing the involuntary petition in May 2012 because the September 18, 2009 Letter was addressed to counsel for CIT, not Yucaipa.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 4

Admit that from approximately March 2011 and through May 2012 You communicated directly with Jack Cooper regarding Jack Cooper's efforts to acquire Allied's assets.

## RESPONSE TO REQUEST FOR ADMISSION NO. 4

Spectrum objects to this Request for Admission on the grounds that phrase "approximately March 2011 and through May 2012" is vague and ambiguous.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum admits this Request for Admission.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 5

Admit that You communicated directly with Jack Cooper regarding the possibility of selling Your First Lien Claims to Jack Cooper and that the price of such a transaction was at a discount to par.

## RESPONSE TO REQUEST FOR ADMISSION NO. 5

Spectrum objects to this Request for Admission on the grounds that phrase "the price of such a transaction" is vague and ambiguous.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum denies this Request for Admission, but admits that Spectrum communicated with Jack Cooper regarding the possibility of selling Spectrum's First Lien Claims to Jack Cooper and that on certain occasions, Jack Cooper had offered to purchase Spectrum's First Lien Claims at a discount to par, but Spectrum and Jack Cooper never agreed upon a transaction in which Jack Cooper would purchase Spectrum's First Lien Claims at a discount to par.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**REQUEST FOR ADMISSION NO. 6**

Admit that equitably subordinating other Lenders' First Lien Claims was one of the "strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" contemplated by the January 2012 Cooperation Agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6**

Subject to and without waiving the foregoing General Objections, Spectrum denies this Request for Admission.

**REQUEST FOR ADMISSION NO. 7**

Admit that equitably subordinating Yucaipa's First Lien Claims was one of the "strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" contemplated by the January 2012 Cooperation Agreement.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7**

Subject to and without waiving the foregoing General Objections, Spectrum denies this Request for Admission.

**REQUEST FOR ADMISSION NO. 8**

Admit that You entered into the Cooperation Agreement in contemplation of an involuntary bankruptcy filing for Allied.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8**

Spectrum objects to this Request for Admission on the grounds that the phrase "in contemplation of" is vague and ambiguous.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum denies this Request for Admission, and states that Spectrum may have contemplated an involuntary bankruptcy filing for Allied at the time the Cooperation Agreement was executed, but Spectrum did not enter into the Cooperation Agreement for the specific purpose of filing an involuntary bankruptcy petition against Allied.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**REQUEST FOR ADMISSION NO. 9**

Admit that You were negotiating with Jack Cooper regarding Jack Cooper's potential acquisition of First Lien Debt while negotiating the transfer of $4,239,486.90 in First Lien Debt from Black Diamond to You.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9**

Spectrum objects to this Request for Admission on the grounds that it is vague and ambiguous.

Spectrum further objects to this Request for Admission on the grounds that it lacks foundation and assumes unsubstantiated facts.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum denies this Request for Admission.

10

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 10

Admit that You did not disclose the transfer of the $4,239,486.90 in First Lien Debt in the Black Diamond and Spectrum Affidavits.

## RESPONSE TO REQUEST FOR ADMISSION NO. 10

Spectrum objects to this Request for Admission on the grounds that the phrase "the transfer of the $4,239,486.90 in First Lien Debt" is vague and ambiguous.

Spectrum further objects to this Request for Admission on the grounds Spectrum has no right or ability to disclose anything in an affidavit that is filed on Black Diamond's behalf.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum denies this Request for Admission, but admits that the Affidavit of Jeffrey A. Schaffer on Behalf of Spectrum Investment Partners LP, filed May 17, 2012 (Case No. 12-11564-CSS, D.I. 8.) does not disclose that Black Diamond transferred $4,239,486.90 in First Lien Debt to Spectrum.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

11

## REQUEST FOR ADMISSION NO. 11

Admit that You did not disclose the existence of the Cooperation Agreement in connection with the filing of the involuntary bankruptcy filing in May 2012 or in response to discovery.

## RESPONSE TO REQUEST FOR ADMISSION NO. 11

Spectrum objects to this Request for Admission on the grounds that the phrase "disclose the existence" is vague and ambiguous.

Spectrum further objects to this Request for Admission on the grounds that the phrase "in connection with the filing of the involuntary bankruptcy filing" is vague and ambiguous.

Spectrum further objects to this Request for Admission on the grounds that the phrase "in response to discovery" is vague and ambiguous.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum admits that Spectrum was not required to disclose the existence of the Cooperation Agreement in connection with the filing the involuntary bankruptcy petition against Allied in May 2012 and that Spectrum had not disclosed the existence of the Cooperation Agreement in response to discovery propounded in Adversary Proceeding No. 13-50530 because Spectrum had not yet completed its document production when Spectrum disclosed the Cooperation Agreement in response to Yucaipa's Motion for Leave to File a Counterclaim for Equitable Subordination Under 11 U.S.C. § 510(c) or, in the Alternative, to Amend the Answer to Assert Additional Affirmative Defenses (Adv. Proc. No. 13-50530).

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

12

## REQUEST FOR ADMISSION NO. 12

Admit that You rejected Yucaipa Tender Offer.

## RESPONSE TO REQUEST FOR ADMISSION NO. 12

Subject to and without waiving the foregoing General Objections, Spectrum

admits this Request for Admission.

## REQUEST FOR ADMISSION NO. 13

Admit that ComVest was not an Insider of Allied while it served as Requisite Lender.

## RESPONSE TO REQUEST FOR ADMISSION NO. 13

Spectrum objects to this Request for Admission on the grounds that it calls for a

legal conclusion to the extent that Yucaipa defines "Insider" as having "the meaning set forth in

Section 101(31) of the Bankruptcy Code."

Spectrum further objects to this Request for Admission on the grounds that it

seeks information that is already in Yucaipa's possession, or otherwise available from sources to

which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less

expensive.

Spectrum further objects to this Request for Admission on the grounds that it

seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific

Objections, Spectrum states that the information presently known or readily obtainable by

Spectrum is insufficient to allow Spectrum to admit or deny this Request for Admission.

## REQUEST FOR ADMISSION NO. 14

Admit that because ComVest was not an Insider of Allied, You understood that it would be more
difficult to equitably subordinate ComVest's First Lien Claims.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14**

Spectrum objects to this Request for Admission on the grounds that it calls for a legal conclusion to the extent that Yucaipa defines "Insider" as "the meaning set forth in Section 101(31) of the Bankruptcy Code."

Spectrum further objects to this Request for Admission on the grounds that it lacks foundation.

Spectrum further objects to this Request for Admission on the grounds that it is based on an incomplete hypothetical.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum denies this Request for Admission.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**REQUEST FOR ADMISSION NO. 15**

Admit that You were considering "creditor remedies" prior to Yucaipa's purchase of the First Lien Debt in August 2009.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15**

Spectrum objects to this Request for Admission on the grounds that it is vague, ambiguous, overbroad and intelligible to the extent that the term "creditor remedies" is undefined and susceptible to multiple interpretations.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum admits that in August 2009, Spectrum considered numerous options concerning Allied's defaults under the First Lien Credit Agreement.

14

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 16

Admit that You discussed equitable subordination of Yucaipa in relation to Your Allied First Lien Claims with T. Michael Riggs before filing the involuntary petition in May 2012.

## RESPONSE TO REQUEST FOR ADMISSION NO. 16

Spectrum objects to this Request for Admission on the grounds that the phrase "equitable subordination of Yucaipa in relation to Your Allied First Lien Claims" is vague and ambiguous.

Spectrum further objects to this Request for Admission on the grounds that the phrase "the involuntary petition" is vague and ambiguous.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum admits that, once it learned that Yucaipa was planning to improperly acquire ComVest's First Lien Claims in 2009, it discussed with T. Michael Riggs that Yucaipa's actions could subject it to claims for equitable subordination.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## REQUEST FOR ADMISSION NO. 17

Admit that You were evaluating the possibility of equitable subordination claim in relation to Your Allied First Lien Claims as of August 13, 2009.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17**

Spectrum objects to this Request for Admission on the grounds that it is vague,

ambiguous, and intelligible.

**REQUEST FOR ADMISSION NO. 18**

Admit that by February 2009, You were aware of Yucaipa's negotiations with ComVest to
acquire ComVest's First Lien Claims.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18**

Spectrum objects to this Request for Admission on the grounds that it is vague

and ambiguous to the extent that the term "negotiations" is undefined and susceptible to multiple

interpretations.

Spectrum further objects to this Request for Admission on the grounds that it

lacks foundation.

Subject to and without waiving the foregoing General Objections and Specific

Objections, Spectrum denies this Request for Admission.

Spectrum's investigation through discovery is ongoing and continues and

Spectrum expressly reserves its right to supplement and/or modify this response as it deems

appropriate.

**REQUEST FOR ADMISSION NO. 19**

Admit that Brian Cullen was selected to be a member of Allied's board of directors by the
creditors committee of the Prior Bankruptcy Case in the United States Bankruptcy Court for the
Northern District of Georgia.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19**

Spectrum objects to this Request for Admission on the grounds that it is vague

and ambiguous to the extent that the term "Prior Bankruptcy Case" is undefined.

16

Spectrum further objects to this Request for Admission on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Request for Admission on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum states that the 2007 Reorganization Plan governs such appointment and speaks for itself.

## REQUEST FOR ADMISSION NO. 20

Admit that, to Your knowledge, Yucaipa did not pay Brian Cullen for Mr. Cullen's service as a member of Allied's board of directors.

## RESPONSE TO REQUEST FOR ADMISSION NO. 20

Spectrum objects to this Request for Admission on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Request for Admission on the grounds that, even though the information sought in this Request for Admission is already in Yucaipa's possession, Yucaipa has improperly refused to produce such information in discovery in the related action, Adversary Proceeding No. 13-50530.

Spectrum further objects to this Request for Admission on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum states that the information presently known or readily obtainable by Spectrum is insufficient to allow Spectrum to admit or deny this Request for Admission.

## REQUEST FOR ADMISSION NO. 21

Admit that, to Your knowledge, Yucaipa did not pay Mark Gendgreske for Mr. Gendgreske's service as a member of Allied's board of directors.

## RESPONSE TO REQUEST FOR ADMISSION NO. 21

Spectrum objects to this Request for Admission on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Request for Admission on the grounds that, even though the information sought in this Request for Admission is already in Yucaipa's possess, Yucaipa has improperly refused to produce such information in discovery in the related action, Adversary Proceeding No. 13-50530.

Spectrum further objects to this Request for Admission on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum states that the information presently known or readily obtainable by Spectrum is insufficient to allow Spectrum to admit or deny this Request for Admission.

18

Dated: July 31, 2015
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**


<u>/s/   Kerri K. Mumford</u>
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

-and-

Adam C. Harris
David Hillman
Robert J. Ward
**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Counsel to Spectrum Investment Partners, L.P.*

19

EXHIBIT 12

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Kahn A. Scolnick
Direct: +1 213.229.7656
Fax: +1 213.229.6656
KScolnick@gibsondunn.com

July 31, 2015

**VIA ELECTRONIC MAIL**

Adam G. Landis
Kerri K. Mumford
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, Delaware 19801

Adam C. Harris
David Hillman
Robert J. Ward
Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022

Re:    Black Diamond and Spectrum's Responses to Yucaipa's First Set of Requests for Production (Adv. Proc. No. 14-50971)

Dear Counsel:

I write regarding the June 19, 2015 Responses and Objections of BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 Ltd. (collectively, "Black Diamond") and Spectrum Investment Partners L.P. ("Spectrum") to Yucaipa's First Set of Requests for Production in the above-captioned adversary proceeding.

As an initial matter, we understand that Black Diamond and Spectrum have been conducting searches for documents responsive to Yucaipa's RFP Nos. 38, 50, and 51. It has now been more than one month since Black Diamond and Spectrum served their responses, so we look forward to the production of those responsive documents in a timely fashion.

**RFP Nos. 1, 2, 36, 39, 40, 41, 42, 43, 44, 45, 46, 52 and 56**

There are numerous requests—RFP Nos. 1, 2, 36, 39, 40, 41, 42, 43, 44, 45, 46, 52 and 56—for which Black Diamond and Spectrum are refusing to conduct a search because of the assertion that the requests are "vague, overbroad, unduly burdensome and seek[] irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence." These objections are unfounded, as explained below.

**GIBSON DUNN**

Adam G. Landis
Adam C. Harris
July 31, 2015
Page 2

RFP Nos. 1 and 2 seek documents concerning Black Diamond's and Spectrum's acquisition or sale of First Lien Debt, which relates to Yucaipa's allegations of an Involuntary Petition Payoff as detailed in Yucaipa's RICO Complaint, among other places.  (*See* RICO Compl. at ¶¶ 23, 24, 34, 102, 107, 112, 113, 169, 171.)  The amount of debt acquired or sold, the dates of such transactions, and the circumstances surrounding the transactions, are all highly relevant to, among other things, Yucaipa's theories about Black Diamond's and Spectrum's respective motivations leading up to the involuntary filing, and the reasonableness of Black Diamond's and Spectrum's explanations regarding their claims trading.  Accordingly, these requests are specifically calculated to the lead to the discovery of admissible evidence.

RFP No. 36 seeks documents concerning the equitable subordination of First Lien Debt held by any Lender other than Yucaipa.  This request is directly related to Yucaipa's allegation, as detailed in the RICO Complaint, that Black Diamond and Spectrum were scheming to equitably subordinate Yucaipa's debt even before Yucaipa acquired its First Lien Claims (*see* RICO Compl. at ¶¶ 2, 8, 19, 20, 29, 79, 80, 84, 90, 116, 117), and documents discussing the concept of equitably subordinating any other Lender's claims would tend to support Yucaipa's theory.  Documents responsive to this request could also show that the attempt to equitably subordinate Yucaipa's claims is not based on any wrongdoing on Yucaipa's part, but rather is part of a general scheme to improperly advantage Black Diamond and/or Spectrum at the expense of other Lenders.  Accordingly, this request is specifically calculated to the lead to the discovery of admissible evidence.

RFP Nos. 39 and 40 seek documents concerning reimbursement of legal expenses under the First Lien Credit Agreement for Yucaipa and other Lenders, which relates to Yucaipa's allegation, as detailed in the RICO Complaint (*see* RICO Compl. at ¶¶ 32, 131), that Black Diamond and Spectrum inappropriately froze the payment of Yucaipa's fees.  Failure to pay Yucaipa's fees would show the continuing nature of Black Diamond's and Spectrum's scheme, tending to establish that aspect of Yucaipa's RICO claims.  Accordingly, these requests are specifically calculated to the lead to the discovery of admissible evidence.

RFP No. 41 seeks documents concerning the Credit Bid, which relates to Yucaipa's allegation that the Credit Bid was part of Black Diamond's and Spectrum's scheme to dilute Yucaipa's pro rata interest in Allied, as detailed in the RICO Complaint (*see* RICO Compl. at ¶¶ 61, 97, 126, 132, 133, 135, 138, 140).  The circumstances surrounding the development of the Credit Bid, and in particular Black Diamond's and Spectrum's motivations for doing so, are all highly relevant to, among other things, Yucaipa's theory that the Credit Bid was a necessary step in Black Diamond's and Spectrum's goal of unlawfully using SBDRE to control the remaining assets and dilute Yucaipa's interest.  Accordingly, this request is specifically calculated to the lead to the discovery of admissible evidence.

**GIBSON DUNN**

Adam G. Landis
Adam C. Harris
July 31, 2015
Page 3


RFP Nos. 42, 43, and 44 seek documents concerning various aspects of SBDRE; these requests relate to Yucaipa's allegation that Black Diamond and Spectrum used SBDRE to dilute Yucaipa's pro rata interest, as detailed in Yucaipa's RICO Complaint (*see* RICO Compl. at ¶¶ 61, 132, 133, 135, 136, 137, 138, 139). The formation and operation of SBDRE, especially the basis for any belief as to the propriety of SBDRE governance, are highly relevant to Yucaipa's allegations that Black Diamond and Spectrum lacked the authority to govern SBDRE, and that SBDRE was used to irreparably dilute Yucaipa. Accordingly, these requests are specifically calculated to the lead to the discovery of admissible evidence.

RFP No. 45 seeks documents concerning any potential or actual transaction structure proposed by Black Diamond or Spectrum for Allied. Document responsive to this request would tend to support Yucaipa's allegation that equitable subordination was just one of many possible avenues that Black Diamond or Spectrum considered, as alleged in the RICO Complaint, among other places, "to increase their share of the pie" at Yucaipa's expense even though there were other alternatives available. (RICO Compl. at ¶ 2.) Accordingly, this request specifically calculated to the lead to the discovery of admissible evidence.

RFP No. 46 seeks documents concerning the New Issuance, which relates to Yucaipa's allegation that the New Issuance wrongfully excluded Yucaipa from participation and reduced Yucaipa's pro rata allocation of the SBDRE membership interest, as detailed in the RICO Complaint, among other places. (*See* RICO Compl. at ¶¶ 136, 137, 138.) Documents responsive to this request may support Yucaipa's theory that the New Issuance was an attempt to force Yucaipa to either abandon its interests in the Allied assets acquired through the Credit Bid or to invest substantial additional funds into an enterprise that Black Diamond and Spectrum would be entitled to manage in their sole discretion without any fiduciary duties. Accordingly, this request is specifically calculated to the lead to the discovery of admissible evidence.

RFP No. 52 seeks documents concerning any compensation Black Diamond and Spectrum paid to any of their principals, officers, directors, employees, consultants, or representatives for attempting to equitably subordinate Yucaipa. Document responsive to this request would tend to support Yucaipa's overall theory that Black Diamond's and Spectrum's accusations of Yucaipa misconduct were motivated not by any wrongdoing by Yucaipa, but the financial motivations set in place by Black Diamond and/or Spectrum. Accordingly, this request is specifically calculated to the lead to the discovery of admissible evidence.

RFP No. 56 seeks documents concerning any Lender's investment in, or cost basis for, the First Lien Debt, which relates to how much Black Diamond and Spectrum stood to gain by

**GIBSON DUNN**

Adam G. Landis
Adam C. Harris
July 31, 2015
Page 4

their wrongful scheme against Yucaipa.  (*See* RICO Compl. at ¶ 79.)  Documents responsive
to this request also may support Yucaipa's theory that it placed a higher premium on Allied's
value than Black Diamond or Spectrum.  Accordingly, this request is specifically calculated
to the lead to the discovery of admissible evidence.

To the extent you still contend that any of the above requests are still too vague or overbroad
to respond to, please explain what is unclear about them, and we would be happy to clarify or
narrow the requests in order to facilitate a timely response.

### RFP No. 37

Black Diamond and Spectrum are also refusing to conduct a search regarding Yucaipa's
RFP No. 37, which seeks documents concerning any attempt to estimate or value Black
Diamond's or Spectrum's, or any other Lender's, investment in Allied.  Black Diamond's
and Spectrum's refusals to search are based on the objection that this request is "vague,
overbroad, unduly burdensome, seeks irrelevant information that is not reasonably calculated
to the lead to the discovery of admissible evidence, and seeks information that is
confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected
from disclosure pursuant to applicable federal or state law."

These objections are unwarranted, given that there is a protective order in place to protect
any confidential or proprietary information responsive to this request.  Moreover, as Black
Diamond and Spectrum have themselves argued in seeking documents from Yucaipa, the
fact that documents contain sensitive information does not, in and of itself, provide sufficient
grounds for withholding responsive documents.  *See, e.g.*, *Cash Today of Texas, Inc. v.
Greenberg*, No. 02-77, 2002 WL 31414138, at *3 (D. Del. Oct. 23, 2002) ("[B]lanket and
generalized assertions of confidentiality, absent allegations regarding specific harm, are not
sufficient to sustain a motion to quash." (internal quotation and citation omitted)).

To the extent Black Diamond and Spectrum contend that RFP No. 37 is too vague or
overbroad to formulate a response, please explain what is unclear about this request, and we
would be happy to clarify or narrow it in order to facilitate a timely response.

### RFP No. 6

Finally, Black Diamond and Spectrum are refusing to conduct a search regarding Yucaipa's
RFP No. 6, which seeks documents in Black Diamond's and Spectrum's custody or control
that concern any potential or actual acquisition by Black Diamond and/or Spectrum of the
First Lien Debt held by AMMC.  Black Diamond and Spectrum contend this request "seeks
documents already within Yucaipa's possession, custody, or control."  But that is not a valid

GIBSON DUNN

Adam G. Landis
Adam C. Harris
July 31, 2015
Page 5

basis for refusing to search.  The fact that Yucaipa may already have some documents in its possession related to this request is irrelevant; Black Diamond and Spectrum must search for, and produce, any responsive documents in their own possession.  To the extent Black Diamond and Spectrum believe they have already produced such documents in the litigation, please let us know.

To the extent you contend that RFP No. 6 is too vague or overbroad to formulate a response, please explain what is unclear about this request, and we would be happy to clarify or narrow it in order to facilitate a timely response.

*** 

We look forward to working with you to sort through the issues outlined in this letter.  To that end, we welcome the opportunity to have a meet and confer telephonic conference regarding any remaining issues at your earliest convenience.

Sincerely,

Kahn A. Scolnick

KAS/irg/101971373

EXHIBIT 13

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Kahn A. Scolnick
Direct: +1 213.229.7656
Fax: +1 213.229.6656
KScolnick@gibsondunn.com

August 13, 2015

**VIA ELECTRONIC MAIL**

Adam C. Harris
David Hillman
Robert J. Ward
Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022

Re:     BD/S's Responses to Yucaipa Defendants' Requests for Admission and
        Interrogatories (Adv. Proc. No. 14-50971)

Dear Adam, David, and Bob:

I write regarding the responses and objections of BDCM Opportunity Fund II, LP and Black
Diamond CLO 2005-1 Ltd. (collectively, "Black Diamond") and Spectrum Investment
Partners L.P. ("Spectrum," and collectively with Black Diamond, "BD/S") to the Requests
for Admission ("RFAs") and Interrogatories propounded by Yucaipa and the Yucaipa
Defendants in the above-captioned adversary proceeding.  This letter does not purport to be
an exhaustive list of all deficiencies in, or outstanding issues with, Black Diamond and
Spectrum's responses, and we reserve the right to raise additional issues as they become
apparent.

**BD/S's Outstanding Responses to Interrogatories:**

As you know, on June 10, 2015, the Yucaipa Defendants served (via email and First Class
Mail) Black Diamond and Spectrum with two sets of requests for admission and 12 sets of
interrogatories.  Under FRCP 33, Black Diamond and Spectrum's responses were due no
later than July 13, 2015.  Per my discussion with Bob Ward and the parties' subsequent
written stipulation, the Yucaipa Defendants agreed to extend the response deadline to July
31, 2015.

However, despite our agreement to extend that deadline (giving Black Diamond and
Spectrum nearly two months), as of today's date, we have not received any responses or
objections to the interrogatories (and those responses are now two weeks past due).
Presumably this is not an oversight, as Black Diamond and Spectrum timely responded to the
RFAs that were served concurrently.

# GIBSON DUNN

Adam C. Harris
August 13, 2015
Page 2


Under these circumstances, Black Diamond and Spectrum's failure to timely respond to the interrogatories waives any objection to them.  *See* Fed. R. Civ. P. 33(b)(2)(4); *see also SWIMC, Inc. v. HY-Tech Thermal Solutions, LLC*, No. 08-084(SLR), 2009 WL 1795177, at *3-4 (D. Del. June 24, 2009) (waiver of all objections).  We anticipate receiving Black Diamond and Spectrum's responses, without objections, promptly.

**Deficient RFA Responses:**

There are also two notable deficiencies in Black Diamond and Spectrum's RFA responses.

### 1. RFA No. 17:

Black Diamond and Spectrum refuse to answer Yucaipa's RFA No. 17, which states: "Admit that You were evaluating the possibility of [an] equitable subordination claim in relation to Your Allied First Lien Claims as of August 13, 2009."  Black Diamond's and Spectrum contend this request is "vague, ambiguous, and [un]intelligible."

RFA No. 17 is straightforward, however.  Both Black Diamond and Spectrum admit, in response to RFA No. 15, that they were considering "numerous options concerning Allied's defaults."  Accordingly, No. 17 simply seeks to confirm that one of those "options" was in fact a claim of equitable subordination against other lenders.  There is nothing vague or ambiguous about that request.  Indeed, Spectrum has already admitted that it discussed equitably subordinating Yucaipa's claims with T. Michael Riggs in 2009 (*see* Response to RFA No. 16), so there can be no confusion regarding the terminology of this request.

Nonetheless, to the extent Black Diamond and Spectrum continue to be confused regarding RFA No. 17, please explain what is unclear about it, and we would be happy to clarify or narrow it in order to facilitate a timely response.  Otherwise, we look forward to receiving your amended response to RFA No. 17.

### 2. Numerous Objections to Vague or Ambiguous Terms

Black Diamond and Spectrum also object to nearly every RFA on the grounds that one or more of the terms are vague and ambiguous.  Most of these objections are unfounded.  *E.g.*, Responses to RFA Nos. 2, 5 (objecting to the terms "approximately September 2009" and "the price of such a transaction" as vague).

Regardless, with the exception of RFA No. 17 (discussed above), it appears that despite this objection, Black Diamond and Spectrum were able to understand the meaning of the terms and respond appropriately.  To the extent any supposedly vague term limited the responses

# GIBSON DUNN

Adam C. Harris
August 13, 2015
Page 3

given in any way, please identify the particular response, and we would be happy to clarify the terminology in order to facilitate a complete response.

***

We look forward to working with you to sort through the issues outlined in this letter, and generally in continuing to move the various cases forward.

Sincerely,

Kahn A. Scolnick
KAS/irg/101973113

cc:    Adam G. Landis
       Kerry Mumford
       Nick Lagemann

EXHIBIT 14.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD.'S
RESPONSES AND OBJECTIONS TO
YUCAIPA'S FIRST SET OF INTERROGATORIES**

BDCM Opportunity Fund I, LP and Black Diamond CLO 2005-1 Ltd.

(collectively, "Black Diamond"), by and through their undersigned counsel, hereby respond and

object, pursuant to Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, to the

First Set of Interrogatories of Yucaipa American Alliance Fund I, L.P. ("Yucaipa"), dated June

10, 2015 (the "Interrogatories"), as set forth below.

## GENERAL OBJECTIONS

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1.    Black Diamond objects to the Interrogatories, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Local Rules of the United States District Court for the District of Delaware (collectively, the "Local Rules"), or any other applicable rules or laws.  Black Diamond will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2.    Black Diamond objects to the Interrogatories to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.    Black Diamond objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4.    Black Diamond objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5.    Black Diamond objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on

2

discovery ("Privileged Materials").  Unless specifically stated otherwise, Black Diamond does

not intend disclose any Privileged Materials.  The inadvertent disclosure of any Privileged

Materials is not a waiver of any claim of privilege or other protection with respect to any

Privileged Materials or any other document or matter, all of which are expressly reserved.  Black

Diamond further reserves the right to obtain the return of such information, prohibit its use in

any manner, and/or demand the destruction of any such information inadvertently disclosed in

response to the Interrogatories.

6.     Black Diamond objects to the Interrogatories to the extent that they seek

disclosure of information not within Black Diamond's possession, custody, control, or

knowledge.

7.     Black Diamond objects to the Interrogatories to the extent that they

purport to request information that is public, already in Yucaipa's possession, or otherwise

available from sources to which Yucaipa also has access or sources that are more convenient,

less burdensome, and/or less expensive.

8.     Black Diamond objects to the Interrogatories to the extent that they seek

information pertaining to persons or entities other than Black Diamond.

9.     Black Diamond objects to the Interrogatories to the extent that they are

argumentative, lack foundation, or incorporate allegations and assertions that are disputed or

erroneous.  By responding and objecting to the Interrogatories, Black Diamond does not admit

the correctness of such assertions.

10.     Black Diamond objects to the Interrogatories to the extent that they imply

the existence of facts or circumstances that do not or did not exist, and to the extent that they

state or assume legal conclusions.  In providing these objections and responses to the Interrogatories, Black Diamond does not admit the factual or legal premise of any Interrogatory.

11.    Black Diamond objects to the Interrogatories to the extent that they are not limited to the claims or defenses in this action because they, for that reason alone, are overbroad and unduly burdensome, seek information irrelevant to the subject matter of this action, and are not calculated to lead to the discovery of admissible evidence.

12.    Black Diamond objects to the Interrogatories to the extent that they impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on Black Diamond.

13.    Black Diamond does not in any way waive or intend to waive, but rather preserves and intends to preserve: (a) all rights to object on any ground to the competence, relevance, materiality and admissibility of any document or information that may be produced in response to the Interrogatories or the subject matter thereof; (b) all rights to object on any ground to the use of any document or information that may be produced in response to the Interrogatories or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (c) all rights to object on any ground to any request for further responses to the Interrogatories or any other document request.

14.    Black Diamond objects to the definitions of the terms "Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Person(s)," "Relate to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome, vague, and ambiguous.  To the extent possible, Black Diamond will construe these terms in accordance with their ordinary meanings.

15.     Black Diamond's objections to the Interrogatories are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Black Diamond at a later date and are made without prejudice to Black Diamond's rights to revise, correct, clarify, supplement, modify, or amend its objections and responses as appropriate.

<u>SPECIFIC RESPONSES AND OBJECTIONS</u>

### <u>INTERROGATORY NO. 1</u>

State each of the date(s) on which You acquired or sold any Allied First Lien Debt or Second Lien Debt.

### <u>RESPONSE TO INTERROGATORY NO. 1</u>

Black Diamond objects to this Interrogatory on the grounds that it is overbroad and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

### <u>INTERROGATORY NO. 2</u>

For each of the acquisitions or sales identified in Your response to Interrogatory Number 1, Identify the Person(s) from whom You acquired or sold such Debt.

### <u>RESPONSE TO INTERROGATORY NO. 2</u>

Black Diamond objects to this Interrogatory on the grounds that it is overbroad, confidential and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

### <u>INTERROGATORY NO. 3</u>

For each of the acquisitions or sales identified in Your response to Interrogatory Number 1, state the purchase price paid or received by You in connection with each acquisition or sale and the form of purchase price paid or received.

## RESPONSE TO INTERROGATORY NO. 3

Black Diamond objects to this Interrogatory on the grounds that it is overbroad and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 4

State all facts upon which You base Your contention in paragraph 40 of the Complaint that Yucaipa had the ability to exercise "complete control" of Allied's Board.

## RESPONSE TO INTERROGATORY NO. 4

Black Diamond objects to this Interrogatory on the grounds that it vague and ambiguous to the extent that the term "Board" is not defined. Black Diamond shall interpret the term "Board" to mean the board of directors of Allied.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

When Allied emerged from bankruptcy in May 2007, pursuant to Allied's Plan of Reorganization, Yucaipa had the right to appoint three of the five members of Allied's Board. In addition, Yucaipa had the right to appoint Allied's CEO, who would serve as the fourth member of the Board. Finally, the Plan of Reorganization required that the other fifth member of the Board be reasonably acceptable to Yucaipa. Pursuant to the Plan of Reorganization, Yucaipa appointed three of Allied's Board members and Allied's CEO. Upon information and belief, all the Board members that Yucaipa appointed were employees of, or otherwise controlled by, Yucaipa. Moreover, upon information and belief, the Board member who was not appointed by Yucaipa, but whose appointment was required to be reasonably acceptable to Yucaipa, was beholden to Yucaipa over the interests of Allied. In addition, Yucaipa controlled Allied's compensation of Mark Gendregske, who was Allied's CEO and also a member of Allied's

Board.  Lastly, Yucaipa owned a supermajority of Allied's equity, which gave Yucaipa the authority to remove directors.  As a result of the foregoing, Yucaipa had the ability to exercise complete control over Allied's Board.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 5

Describe in detail all reasons You claim You "took a back seat" in negotiating and drafting the terms of the Third Amendment to the First Lien Credit Agreement and "allowed" Yucaipa to lead the negotiations, as alleged in paragraph 52 of the Complaint.

## RESPONSE TO INTERROGATORY NO. 5

Black Diamond objects to this Interrogatory on the grounds that it vague and ambiguous to the extent that paragraph 52 of the Complaint does not allege that Black Diamond "took a back seat" in negotiating and drafting the terms of the Third Amendment to the First Lien Credit Agreement (the "Third Amendment") or that Black Diamond "allowed" Yucaipa to lead the negotiations for the Third Amendment.  Black Diamond shall interpret the term "You" as used in this Interrogatory to mean Allied.

Black Diamond objects to this Interrogatory on the grounds that it vague and ambiguous to the extent that it seeks "all reasons" that Black Diamond made a particular allegation, rather than seeking all facts upon which Black Diamond bases that allegation.  Black Diamond shall interpret this Interrogatory as seeking all facts upon which Black Diamond bases its allegation in paragraph 52 of the Complaint.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Not long after Allied emerged from bankruptcy in 2007, upon information and belief, Yucaipa entered into discussions with CIT (which at the time was the Administrative Agent under the First Lien Credit Agreement) concerning a proposed amendment to the First Lien Credit Agreement that would permit Yucaipa to acquire First Lien Debt.  Upon information and belief, it was Yucaipa's idea – and not Allied's idea – to amend the First Lien Credit Agreement to permit Yucaipa to acquire First Lien Debt.  That proposed amendment to the First Lien Credit Agreement eventually became the Third Amendment.  Upon information and belief, Allied played no substantive role in the negotiations for the Third Amendment.  Rather, Allied allowed Yucaipa to negotiate the terms of the Third Amendment.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**<u>INTERROGATORY NO. 6</u>**

State all facts upon which You base Your contention in paragraph 56 of the Complaint that Yucaipa had a scheme to take total control over the First Lien Credit Agreement to the detriment of the legitimate First Lien Lenders.

## RESPONSE TO INTERROGATORY NO. 6

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Upon information and belief, Yucaipa had a scheme to take total control over the First Lien Credit Agreement to the detriment of the legitimate First Lien Lenders. Yucaipa's scheme can be reasonably inferred from the facts and circumstances pertaining to Yucaipa's improper acquisition of First Lien Debt from ComVest and its self-proclaimed status as the purported Requisite Lender, including, but not limited to, the following:

When Allied emerged from bankruptcy in 2007, Yucaipa became the majority equity owner of Allied, and Allied entered into the First Lien Credit Agreement, which prohibited Yucaipa from acquiring any First Lien Debt. Thereafter, by Yucaipa's own admission, in 2008, "the Great Recession caused a severe contraction in Allied's revenue and margins." In the midst of the so-called Great Recession in 2008, Yucaipa began negotiations for the Third Amendment to allow Yucaipa to acquire First Lien Debt for the first time, but under severe restrictions which prevented Yucaipa from ever gaining control over the First Lien Credit Facility. Yucaipa has admitted that it "never would have acquired any first lien debt while the

Third Amendment's restrictions and conditions limiting Yucaipa's potential ownership rights existed."

In August 2008, Yucaipa – through its control of Allied's Board – caused Allied to go into material default under the First Lien Credit Agreement.  In light of Allied's material defaults under the First Lien Credit Agreement, the First Lien Lenders could have exercised their rights and remedies under the First Lien Credit Agreement, which would have adversely affected the value of Yucaipa's equity in Allied.  Upon information and belief, to prevent the First Lien Lenders from exercising their rights and remedies under the First Lien Credit Agreement in order to protect its equity in Allied, Yucaipa hatched a scheme to seize control over the First Lien Credit Facility, which would prevent the First Lien Lenders from exercising their rights and remedies under the First Lien Credit Agreement.  To effectuate this scheme, Yucaipa would acquire a majority of First Lien Debt, even though it was prohibited from doing so under the First Lien Credit Agreement and Third Amendment thereto.

As part of its scheme to acquire a majority of First Lien Debt to protect its equity interest in Allied, in early 2009, Yucaipa retained Goldman Sachs to launch a tender offer to the First Lien Lenders to acquire a majority of First Lien Debt.  As a condition to the acceptance of the tender offer, Yucaipa required any tendering First Lien Lender to execute an amendment to the First Lien Credit Agreement that would have removed all of the limitations and restrictions on Yucaipa's ability to acquire and vote First Lien Debt under the Third Amendment.  Thus, if the tender offer had been successful, the First Lien Credit Agreement would have been amended to permit Yucaipa to acquire an unlimited amount of First Lien Debt without any limitations or restrictions and to become the Requisite Lender.  The First Lien Lenders, however, did not accept Yucaipa's offer to tender their First Lien Debt.

10

After Yucaipa's tender offer had failed, Yucaipa began negotiations with ComVest (at the time, the majority holder of the First Lien Debt) to purchase ComVest's First Lien Debt holdings. On August 21, 2009, in contravention of the terms of the Third Amendment, Yucaipa purchased a total of $145,112,547.06 of First Lien Debt from ComVest. At the same time, as a condition to closing Yucaipa's purchase of First Lien Debt from ComVest, Allied – at Yucaipa's direction – executed the Purported Fourth Amendment, which (if valid) would have eliminated all of the Third Amendment's restrictions on Yucaipa's ability to acquire and vote First Lien Debt and would have allowed Yucaipa to become the Requisite Lender. Upon purchasing First Lien Debt from ComVest and causing the execution of the Purported Fourth Amendment, Yucaipa declared itself the Requisite Lender.

Finally, by purporting to be the Requisite Lender, Yucaipa completed its scheme to take total control over the First Lien Credit Agreement to the detriment of the legitimate First Lien Lenders. By virtue of being the purported Requisite Lender, Yucaipa (i) prevented the First Lien Lenders from demanding Allied's compliance with the terms of the First Lien Credit Agreement, including excusing Allied's failure to pay required principal and interest when due; (ii) protected its equity investment in Allied from getting wiped out by precluding a balance sheet restructuring during the Great Recession and the near collapse of the auto industry, which any other reasonable First Lien Lender (that did not own a supermajority of Allied's equity) would unquestionably pursue; (iii) derailed a sale of Allied's assets to Jack Cooper by demanding a disproportionate share of the consideration that Jack Cooper was willing to pay; (iv) caused Allied and the First Lien Lenders (including Black Diamond and Spectrum) to incur millions of dollars in unnecessary legal costs in litigation in Georgia state court, New York state court and Bankruptcy Court in order to challenge the Yucaipa's improper assertion of Requisite

11

Lender status and the validity of the Purported Fourth Amendment; and (v) delayed Allied's

ability to consummate a Section 363 sale in the bankruptcy case, which in turn caused Allied and

the First Lien Lenders (including Black Diamond and Spectrum) to incur millions of dollars in

additional unnecessary legal costs.

Black Diamond's investigation through discovery is ongoing and continues and

Black Diamond expressly reserves its right to supplement and/or modify this response as it

deems appropriate.

## INTERROGATORY NO. 7

State all facts to support Your contention in paragraph 18 of the Complaint that Yucaipa was
protecting its equity by buying the First Lien Debt from ComVest.

## RESPONSE TO INTERROGATORY NO. 7

Black Diamond objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less

expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific

Objections, Black Diamond refers to its response to Interrogatory No. 6.

12

## INTERROGATORY NO. 8

Describe in detail Your understanding of the value of Yucaipa's equity in Allied as of August 21, 2009.

## RESPONSE TO INTERROGATORY NO. 8

Black Diamond objects to this Interrogatory on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Black Diamond further objects to this Interrogatory on the grounds that it is premature to the extent that it is properly the subject of expert discovery, not fact discovery.

## INTERROGATORY NO. 9

State the value You assigned Your First Lien Debt as of August 21, 2009.

## RESPONSE TO INTERROGATORY NO. 9

Black Diamond objects to this Interrogatory on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

Black Diamond further objects to this Interrogatory on the grounds that it is premature to the extent that it is properly the subject of expert discovery, not fact discovery.

## INTERROGATORY NO. 10

State all facts upon which You base Your contention in paragraph 65 of the Complaint that Yucaipa stonewalled ComVest's efforts to pursue a sale or restructuring.

## RESPONSE TO INTERROGATORY NO. 10

Black Diamond objects to this Interrogatory on the grounds that it is vague and ambiguous.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Upon information and belief, when ComVest was the Requisite Lender, ComVest was interested in pursuing a restructuring of Allied and its outstanding debt. In the spring and summer of 2009, ComVest repeatedly approached Allied in an effort to engage in discussions concerning a potential conversion of the outstanding First Lien Debt into equity or to have Allied pursue a sale of its assets. However, Yucaipa's hand-picked CEO, Mr. Gendregske, along with the rest of the Yucaipa-dominated Board, refused to engage in restructuring discussions, thus forcing ComVest to negotiate directly with Yucaipa. Yucaipa, however, was also not interested in selling Allied's assets or restructuring its debt. Instead, Yucaipa was only interested in buying ComVest's First Lien Debt to gain control over Allied's First Lien Debt.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 11

State all facts upon which You base Your contention in paragraph 65 of the Complaint that Yucaipa withheld any payment of principal or interest due under the First Lien Credit Agreement, including Identifying each payment of principal or interest purportedly withheld and in what capacity and with what authority Yucaipa purportedly withheld any such payment.

## RESPONSE TO INTERROGATORY NO. 11

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

As Yucaipa itself admits, Allied "stopped making required payments on its outstanding debt beginning in August 2009." Upon information and belief, Yucaipa – through its control of Allied's board of directors – caused Allied to stop making such payments of principal or interest due under the First Lien Credit Agreement beginning in August 2009.

For instance, at the August 3, 2009 meeting of Allied's board of directors, Derex Walker (a Yucaipa employee who was appointed by Yucaipa to be a member of Allied's board of directors) advised Allied's board to not make the $4.8 million interest payment due to the First Lien Lenders because "it was critical that the Company have adequate liquidity to provide a

15

sufficient runway for negotiations" with ComVest and that "based upon his conversations with

ComVest, he did not believe that failure to make the payment would lead to precipitous action by

the lenders or anyone else."  Mr. Walker further advised Allied's board that "he expected

ComVest, as the Requisite Lenders, would not seek to exercise any rights and would not allow

others to do so given the current state of negotiations between ComVest and Yucaipa."  Mr.

Walker then made a motion that Allied forgo the quarterly interest payment due on August 4,

2006.  The rest of Allied's board members unanimously carried that motion.

Upon information and belief, since that August 3, 2009 board meeting, Allied has

not made any payments of interest or principal due under the First Lien Credit Agreement.

Black Diamond's investigation through discovery is ongoing and continues and

Black Diamond expressly reserves its right to supplement and/or modify this response as it

deems appropriate.

## INTERROGATORY NO. 12

State all facts upon which You base Your contention in paragraph 65 of the Complaint that the
unanimous vote at the August 3, 2009 Allied Board meeting to forego the quarterly interest
payment was made in order to facilitate Yucaipa's interests in negotiations with ComVest.

## RESPONSE TO INTERROGATORY NO. 12

Black Diamond objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less

expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

At the August 3, 2009 meeting of Allied's board of directors, Derex Walker (a Yucaipa employee who was appointed by Yucaipa to be a member of Allied's board of directors) advised Allied's board to not make the $4.8 million interest payment due to the First Lien Lenders because "it was critical that the Company have adequate liquidity to provide a sufficient runway for negotiations" with ComVest.  Upon receiving that advice from Mr. Walker, Allied's board of directors unanimously voted to forego the quarterly interest payment.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 13

State all facts upon which You base Your contention in paragraph 78 of the Complaint that You were prevented from exercising any rights or remedies under the First Lien Credit Agreement after August 21, 2009.

## RESPONSE TO INTERROGATORY NO. 13

Subject to and without waiving the foregoing General Objections, Black Diamond responds as follows:

After August 21, 2009, Yucaipa purported to be the Requisite Lender pursuant to the invalid Purported Fourth Amendment to the First Lien Credit Agreement.  Because Yucaipa purported to be the Requisite Lender, the other First Lien Lenders were unable to exercise any of their rights and remedies under the First Lien Credit Agreement that could only be exercised by the Requisite Lender.  In its capacity as the purported Requisite Lender, Yucaipa failed to exercise any of the First Lien Lenders' rights and remedies under the First Lien Credit

17

Agreement notwithstanding the occurrence and continuance of Defaults and Events of Default

(including payment defaults).

Black Diamond's investigation through discovery is ongoing and continues and

Black Diamond expressly reserves its right to supplement and/or modify this response as it

deems appropriate.

## INTERROGATORY NO. 14

Identify every reason You submitted invoices for payment to Allied for work performed by
Ropes & Gray LLP on Your behalf in 2009 in connection with the investigation of "creditor
remedies."

## RESPONSE TO INTERROGATORY NO. 14

Black Diamond objects to this Interrogatory on the grounds that it is vague and

ambiguous to the extent that the phrase "creditor remedies" is undefined and susceptible of

multiple interpretations.

Black Diamond further objects to this Interrogatory on the grounds that it lacks

foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is

neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the

discovery of admissible evidence.

## INTERROGATORY NO. 15

Describe in detail all reasons You waited to file the involuntary bankruptcy petitions against
Allied in the Bankruptcy Court for the District of Delaware until May 2012.

## RESPONSE TO INTERROGATORY NO. 15

Black Diamond objects to this Interrogatory on the grounds that the phrase

"waited to file" is vague, ambiguous and lacks foundation.

18

Black Diamond further objects to this Interrogatory because it does not seek facts, but rather seeks the thought processes of numerous individuals.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 16

Describe in detail all reasons You instructed CIT to refrain from exercising its remedies in December 2008 when CIT attempted to do so as an agent on the First Lien Debt.

## RESPONSE TO INTERROGATORY NO. 16

Black Diamond objects to this Interrogatory on the grounds that it is vague, ambiguous and unintelligible to the extent that Black Diamond had no authority to instruct CIT to take or refrain from taking any action as an agent on the First Lien Debt in December 2008.

Black Diamond objects to this Interrogatory on the grounds that it lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that the phrase "refrain from exercising its remedies" is vague and ambiguous.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 17

Identify every instance in which You claim that Allied attempted to retain excess cash in violation of the terms of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 17

Black Diamond objects to this Interrogatory on the grounds that it is vague and ambiguous.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

At an August 3, 2009 meeting of Allied's board of directors (the "Board") – which was called for the specific purpose of discussing Allied's liquidity, especially with respect to the approximately $4.8 million interest payment due to the First Lien Lenders the next day – Derex Walker advised the Board not to make the $4.8 million interest payment, even though Allied plainly had sufficient liquidity to make the payment. At that meeting, Mr. Walker updated the Board on the status of Yucaipa's negotiations with ComVest, stating that Yucaipa believed a deal could be reached and that not making the required interest payment would help Yucaipa in its negotiations by putting pressure on ComVest to sell its First Lien Debt to Yucaipa.

Mr. Walker further advised the Board that based upon his conversations with ComVest, he did not believe that failure to make the required interest payment would lead to precipitous action by ComVest or any of the other First Lien Lenders because ComVest, as the Requisite Lender, would not seek to exercise any rights and would not allow the other First Lien Lenders to do so given the current state of negotiations between ComVest and Yucaipa.

Notwithstanding the fact that Allied had sufficient liquidity to pay debt service under the First Lien Facility, in order to facilitate Yucaipa's interests in negotiations with

20

ComVest, Mr. Walker made a motion to the Board that Allied forego the quarterly interest payment that Allied owed the First Lien Lenders on August 4, 2009.  The Board carried that motion unanimously.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**INTERROGATORY NO. 18**

Identify every Communication between You and CIT regarding the Fourth Amendment.

**RESPONSE TO INTERROGATORY NO. 18**

Black Diamond objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Black Diamond refers to the following documents that have been produced through discovery in this action, which Black Diamond, upon a reasonable inquiry, has identified as containing communications between Black Diamond and CIT regarding the Fourth Amendment:  BDCM0030503.

Black Diamond further states that Black Diamond and CIT may have had other oral or written communications regarding the Purported Fourth Amendment.  However, the employees of Black Diamond do not have a specific recollection of whether and when such communications occurred.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**INTERROGATORY NO. 19**

Identify every Communication between You and CIT regarding the Georgia Action.

**RESPONSE TO INTERROGATORY NO. 19**

Black Diamond objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

Dated:  August 31, 2015
           Wilmington, Delaware                    **LANDIS RATH & COBB LLP**


                                                     _ /s/ Kerri K. Mumford_
                                                   Adam G. Landis (No. 3407)
                                                   Kerri K. Mumford (No. 4186)
                                                   919 Market Street, Suite 1800
                                                   Wilmington, Delaware 19801
                                                   Telephone: (302) 467-4400
                                                   Facsimile: (302) 467-4450

                                                   -and-

                                                   Adam C. Harris
                                                   David Hillman
                                                   Robert J. Ward
                                                   **SCHULTE ROTH & ZABEL LLP**
                                                   919 Third Avenue
                                                   New York, New York 10022
                                                   Telephone: (212) 756-2000
                                                   Facsimile: (212) 593-5955

                                                   _Counsel to BDCM Opportunity Fund I, LP and_
                                                   _Black Diamond CLO 2005-1 Ltd._

EXHIBIT 14.2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD.'S
RESPONSES AND OBJECTIONS TO
DEREX WALKER'S FIRST SET OF INTERROGATORIES**

BDCM Opportunity Fund I, LP and Black Diamond CLO 2005-1 Ltd.

(collectively, "Black Diamond"), by and through their undersigned counsel, hereby respond and

object, pursuant to Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, to the

First Set of Interrogatories of Derex Walker, dated June 10, 2015 (the "Interrogatories"), as set

forth below.

## GENERAL OBJECTIONS

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1.      Black Diamond objects to the Interrogatories, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Local Rules of the United States District Court for the District of Delaware (collectively, the "Local Rules"), or any other applicable rules or laws.  Black Diamond will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2.      Black Diamond objects to the Interrogatories to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.      Black Diamond objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4.      Black Diamond objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5.      Black Diamond objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on

2

discovery ("Privileged Materials").  Unless specifically stated otherwise, Black Diamond does not intend disclose any Privileged Materials.  The inadvertent disclosure of any Privileged Materials is not a waiver of any claim of privilege or other protection with respect to any Privileged Materials or any other document or matter, all of which are expressly reserved.  Black Diamond further reserves the right to obtain the return of such information, prohibit its use in any manner, and/or demand the destruction of any such information inadvertently disclosed in response to the Interrogatories.

6.      Black Diamond objects to the Interrogatories to the extent that they seek disclosure of information not within Black Diamond's possession, custody, control, or knowledge.

7.      Black Diamond objects to the Interrogatories to the extent that they purport to request information that is public, already in Mr. Walker's possession, or otherwise available from sources to which Mr. Walker also has access or sources that are more convenient, less burdensome, and/or less expensive.

8.      Black Diamond objects to the Interrogatories to the extent that they seek information pertaining to persons or entities other than Black Diamond.

9.      Black Diamond objects to the Interrogatories to the extent that they are argumentative, lack foundation, or incorporate allegations and assertions that are disputed or erroneous.  By responding and objecting to the Interrogatories, Black Diamond does not admit the correctness of such assertions.

10.     Black Diamond objects to the Interrogatories to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that they

state or assume legal conclusions.  In providing these objections and responses to the

Interrogatories, Black Diamond does not admit the factual or legal premise of any Interrogatory.

   11. Black Diamond objects to the Interrogatories to the extent that they are not

limited to the claims or defenses in this action because they, for that reason alone, are overbroad

and unduly burdensome, seek information irrelevant to the subject matter of this action, and are

not calculated to lead to the discovery of admissible evidence.

   12. Black Diamond objects to the Interrogatories to the extent that they

impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on

Black Diamond.

   13. Black Diamond does not in any way waive or intend to waive, but rather

preserves and intends to preserve: (a) all rights to object on any ground to the competence,

relevance, materiality and admissibility of any document or information that may be produced in

response to the Interrogatories or the subject matter thereof; (b) all rights to object on any ground

to the use of any document or information that may be produced in response to the

Interrogatories or the subject matter thereof, in any subsequent proceeding, including the trial of

this or any other action; and (c) all rights to object on any ground to any request for further

responses to the Interrogatories or any other document request.

   14. Black Diamond objects to the definitions of the terms

"Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Person(s)," "Relate

to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome,

vague, and ambiguous.  To the extent possible, Black Diamond will construe these terms in

accordance with their ordinary meanings.

15.     Black Diamond's objections to the Interrogatories are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Black Diamond at a later date and are made without prejudice to Black Diamond's rights to revise, correct, clarify, supplement, modify, or amend its objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1

State all facts upon which You base Your contention that Mr. Walker failed to comply with his duty of loyalty to Allied.

### RESPONSE TO INTERROGATORY NO. 1

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Walker.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

### INTERROGATORY NO. 2

State all facts upon which You base Your contention that Mr. Walker failed to comply with his duty of care to Allied.

### RESPONSE TO INTERROGATORY NO. 2

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Walker.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 3

Describe in detail each and every instance in which You contend that Mr. Walker used his position on the board of Allied to benefit Yucaipa.

## RESPONSE TO INTERROGATORY NO. 3

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Walker.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 4

Describe in detail each and every instance in which You allege that Mr. Walker took actions as a member of the board of Allied that were to the detriment of Allied.

## RESPONSE TO INTERROGATORY NO. 4

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Walker.

6

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 5

Describe in detail any instance in which You allege that Mr. Walker took actions as a member of the board of Allied that were to the benefit of Yucaipa.

## RESPONSE TO INTERROGATORY NO. 5

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Walker.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 6

State all facts upon which You base Your contention that Mr. Walker influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

## RESPONSE TO INTERROGATORY NO. 6

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Walker.

Black Diamond further objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the Complaint does not allege that "Mr. Walker influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action."

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 7

State all facts upon which You base Your contention that that Mr. Walker failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

## RESPONSE TO INTERROGATORY NO. 7

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Walker.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

8

**INTERROGATORY NO. 8**

State all facts upon which You base Your contention that Mr. Walker played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

**RESPONSE TO INTERROGATORY NO. 8**

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement.

For instance, in August 2009, Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting in concert with each other, caused Yucaipa to purchase First Lien Debt from ComVest in contravention of the First Lien Credit Agreement, as amended by the Third Amendment.

As a result of Yucaipa's improper purchase of First Lien Debt, Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting in concert with each other, caused Yucaipa to proclaim itself to be the Requisite Lender in breach of the Credit Agreement, as amended by the Third Amendment, which precludes Yucaipa from, among other things, voting

9

First Lien Debt.  Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times

acting in concert with each other, caused Yucaipa to improperly use its status as the purported

Requisite Lender to prevent the First Lien Lenders from demanding Allied's compliance with the

Credit Agreement, including excusing Allied's failure to pay required principal and interest

when due.

Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting

in concert with each other, also caused Yucaipa to improperly use its status as the purported

Requisite Lender to preclude a balance sheet restructuring during the Great Recession and the

near collapse of the auto industry, which any other reasonable First Lien Lender (that did not

own a supermajority of Allied's equity) would unquestionably pursue.

Further, Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all

times acting in concert with each other, caused Yucaipa to improperly use its status as the

purported Requisite Lender to derail the sale of Allied's assets to JCT by demanding a

disproportionate share of the consideration that JCT was willing to pay.

Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all

times acting in concert with each other, caused Yucaipa to improperly assert itself as the

Requisite Lender, which caused Allied and the First Lien Lenders to incur millions of dollars in

unnecessary legal costs in Georgia state court, New York state court, and Bankruptcy Court to

determine who is rightfully the Requisite Lender, and which also delayed Allied's ability to

consummate a Section 363 sale in the bankruptcy case, which in turn caused Allied and the First

Lien Lenders to incur additional millions of dollars in unnecessary legal costs.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 9

State all facts upon which You base Your contention that Mr. Walker played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 9

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the Third Amendment.  Upon information and belief, Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligations under the Third Amendment.  For instance, Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting in concert with each other, did nothing to ensure that Yucaipa did not acquire First Lien Debt in excess of the amount permitted pursuant to Section 10.6(c) of the Third Amendment.  Moreover, Mr. Burkle and the Yucaipa

11

Directors (including Mr. Walker), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligation pursuant to Section 10.6(j)(iii) of the Third Amendment to make a capital contribution of 50% of the face value of the First Lien Debt improperly held by Yucaipa.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 10

Identify each act that You contend Mr. Walker committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 10

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond refers to its responses to Interrogatory No. 8 and Interrogatory No. 9.

**INTERROGATORY NO. 11**

State all facts upon which You base Your contention that Mr. Walker was seeking to benefit himself individually at the expense of Allied.

**RESPONSE TO INTERROGATORY NO. 11**

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

At all relevant times, Mr. Walker was a Yucaipa employee and an Allied director. Upon information and belief, Mr. Walker did not receive any compensation in his capacity as an Allied director. Rather, Yucaipa compensated Mr. Walker as a Yucaipa employee, whose duties as a Yucaipa employee included serving as a director of Allied. As described in paragraph 135 of the Complaint, Mr. Walker, in his individual capacity, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement through his control of Yucaipa. In doing so, upon information and belief, Mr. Walker was seeking to benefit himself individually by serving Yucaipa's interests (the entity that pays his compensation) at the expense of Allied's interest (the entity that paid him no compensation).

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 12

Describe in detail each reason Mr. Deckoff travelled to Los Angeles from New York on August 18, 2009.

## RESPONSE TO INTERROGATORY NO. 12

Black Diamond objects to this Interrogatory on the grounds that it lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 13

Describe in detail each reason Mr. Deckoff met with Ronald Burkle in August 2009.

## RESPONSE TO INTERROGATORY NO. 13

Black Diamond objects to this Interrogatory on the grounds that it lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

14

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information in support of allegations that Yucaipa is collaterally estopped from asserting.

**INTERROGATORY NO. 14**

Identify every Communication between Mr. Schaffer and Mr. Ehrlich regarding Yucaipa's plan
to acquire ComVest's First Lien Claims and the Requisite Lender position.

**RESPONSE TO INTERROGATORY NO. 14**

Black Diamond objects to this Interrogatory on the grounds that it is overbroad

and unduly burdensome.

Black Diamond further objects to this Interrogatory on the grounds that it is

neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for,

any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to

improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the

Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing General Objections and Specific

Objections, Black Diamond responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Black Diamond refers to the

following documents that have been produced through discovery in this action, which Black

Diamond, upon a reasonable inquiry, has identified as containing communications between Mr.

Schaffer and Mr. Ehrlich regarding Yucaipa's plan to acquire ComVest's First Lien Claims and

the Requisite Lender position:

| | | | |
|---|---|---|---|
| SPEC 0003649 | SPEC 0003823 | SPEC 0003946 | SPEC 0006855 |
| SPEC 0003688 | SPEC 0003838 | SPEC 0003947 | SPEC 0006899 |
| SPEC 0003690 | SPEC 0003935 | SPEC 0003949 | SPEC 0007666 |
| SPEC 0003704 | SPEC 0003937 | SPEC 0003973 | SPEC 0007667 |
| SPEC 0003706 | SPEC 0003939 | SPEC 0006641 | SPEC 0008173 |
| SPEC 0003733 | SPEC 0003942 | SPEC 0006769 | SPEC 0008228 |
| SPEC 0003820 | SPEC 0003944 | SPEC 0006851 | SPEC 0008231 |

SPEC 0008233          SPEC 0012288

Black Diamond further states that Mr. Schaffer and Mr. Ehrlich may have had other oral or written communications regarding Yucaipa's plan to acquire ComVest's First Lien Claims and the Requisite Lender position.  However, Mr. Ehrlich does not have a specific recollection of whether and when such communications occurred.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**INTERROGATORY NO. 15**

Describe in detail every objection that You communicated to Yucaipa about Yucaipa acquiring ComVest's First Lien Claims between May 15, 2007 and August 21, 2009.

**RESPONSE TO INTERROGATORY NO. 15**

Black Diamond objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the term "objection" is not defined and susceptible to multiple interpretations.

Black Diamond objects to this Interrogatory on the grounds that it is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence to the extent that the Bankruptcy Court has already held that Yucaipa's contention that Black Diamond and Spectrum had encouraged Yucaipa to buy First Lien Claims from ComVest is not plausible.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to

16

improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the

Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 16

Describe in detail every reason You declined to ask CIT to refuse to close the trade between
Yucaipa and ComVest.

## RESPONSE TO INTERROGATORY NO. 16

Black Diamond objects to this Interrogatory on the grounds that it is vague,

ambiguous and lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is

neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for,

any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to

improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the

Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 17

Describe in detail every reason You did not send the September 2009 letter challenging
Yucaipa's status as Requisite Lender directly to Yucaipa.

## RESPONSE TO INTERROGATORY NO. 17

Black Diamond objects to this Interrogatory on the grounds that it is vague and

ambiguous to the extent that the "September 2009 letter" is not defined.  Black Diamond shall

interpret the "September 2009 letter" to mean the letter dated September 18, 2009 from Keith H.

Wofford of Ropes and Gray (on behalf of Black Diamond and Spectrum) to Eric W. Kimball of

Patton Boggs LLP (on behalf of CIT), Bates stamped Yucaipa069794.

Black Diamond further objects to this Interrogatory on the grounds that it lacks

foundation.

Black Diamond further objects to this Interrogatory to the extent that it calls for

information protected by the attorney-client privilege, common interest privilege and any other

applicable privilege.

Black Diamond further objects to this Interrogatory on the grounds that it is

neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for,

any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to

improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the

Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 18

Describe in detail every objection that You communicated to Yucaipa about Yucaipa becoming
the Requisite Lender between May 15, 2007 and August 21, 2009.

## RESPONSE TO INTERROGATORY NO. 18

Black Diamond objects to this Interrogatory on the grounds that it is vague and

ambiguous to the extent that the term "objection" is not defined and susceptible to multiple

interpretations.

Black Diamond further objects to this Interrogatory on the grounds that it is

neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the

discovery of admissible evidence to the extent that the Bankruptcy Court has already held that

18

Yucaipa's contention that Black Diamond and Spectrum had encouraged Yucaipa to buy First

Lien Claims from ComVest is not plausible.

Black Diamond further objects to this Interrogatory on the grounds that it is

neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for,

any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to

improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the

Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information in support of allegations that Yucaipa is collaterally estopped from asserting.

**INTERROGATORY NO. 19**

Describe in detail all harm You claim to have suffered as a result of Yucaipa's purported
"complete control" of Allied's Board as alleged in paragraph 40 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 19**

Black Diamond objects to this Interrogatory on the grounds that the term "Board"

is vague and ambiguous because it is not defined.  Spectrum shall interpret the term "Board" to

mean the board of directors of Allied.

Black Diamond further objects to this Interrogatory on the grounds that it is

premature to the extent that the amount of Spectrum's damages in this action will be the subject

of expert discovery.  Black Diamond expressly reserves its right to supplement and/or modify

this response after such expert discovery.

Subject to and without waiving the foregoing General Objections and Specific

Objections, Black Diamond responds as follows:

As a result of Yucaipa's complete control of the Allied Board, the Allied Board

(i) caused Allied's default of payment obligations under the First Lien Credit Agreement to

19

further Yucaipa's interests; (ii) approved Yucaipa's acquisition of First Lien Debt in breach of the First Lien Credit Agreement; (iii) approved the Purported Fourth Amendment pursuant to which Yucaipa improperly declared itself the Requisite Lender; (iv) refused to explore any restructuring alternatives that would not benefit Yucaipa, including JCT's proposed purchase of Allied's assets in late 2011 and 2012; (v) allowed Yucaipa to derail a sale of Allied's assets to JCT; (vi) allowed Yucaipa to improperly assert itself as the Requisite Lender, in breach of the First Lien Credit Agreement, which caused Allied and the First Lien Lenders to incur millions of dollars in costs to challenge Yucaipa's improper assertion as the Requisite Lender and which delayed Allied's ability to consummate a Section 363 sale in the bankruptcy case, which also caused Allied and the First Lien Lenders to incur additional millions of dollars in unnecessary legal costs.

  As a result of these actions, Black Diamond has suffered substantial harm in an amount to be proved at trial.  For instance, as a result of Yucaipa's complete control of Allied's Board, Yucaipa was able to improperly derail the deal in which JCT was willing to pay every First Lien Lender par plus accrued interest.  Yucaipa admits that after that deal was derailed, JCT purchased substantially all of Allied's assets through a Section 363 sale for only $135 million, which was "$170 million less in consideration than offered by JCT to all Lenders nearly 18 months earlier."  (Yucaipa's Counterclaim ¶ 10(e).)  In addition, Allied and the First Lien Lenders (including Black Diamond and Spectrum) incurred millions of dollars in costs as a direct result of Yucaipa's complete control of Allied's Board.

  Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

20

## INTERROGATORY NO. 20

Identify any communications between You and SBDRE in SBDRE's role as Administrative Agent regarding Yucaipa's expense reimbursement claim.

## RESPONSE TO INTERROGATORY NO. 20

Black Diamond objects to this Interrogatory on the grounds that it is vague, ambiguous and unintelligible to the extent that SBDRE is not, and never has been, the Administrative Agent.

Black Diamond further objects to this Interrogatory on the grounds that it lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 21

Describe in detail every reason Your expenses and those of the other Lenders were reimbursed but not Yucaipa's.

## RESPONSE TO INTERROGATORY NO. 21

Black Diamond objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that it does not identify which "expenses" were purportedly "reimbursed," nor does it identify who reimbursed such unidentified expenses.

Black Diamond further objects to this Interrogatory on the grounds that it lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 22

Identify every reason You, at the time of the Credit Bid and in Your purported capacity as Requisite Lender, proposed segregating all of Allied's assets into one tranche to hold the fixed assets and other salable assets (including equipment and real estate) and another tranche for its debt and liabilities (including the collective bargaining agreement), and the basis for not treating all lenders (including Yucaipa) identically with respect to both tranches.

## RESPONSE TO INTERROGATORY NO. 22

Black Diamond objects to this Interrogatory on the grounds that it is compound, vague, ambiguous, unintelligible and is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

Black Diamond further objects to this Interrogatory on the grounds that it lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it assumes unsubstantiated facts.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege and common interest privilege.

22

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

Dated: August 31, 2015
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**


  */s/ Kerri K. Mumford*
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

-and-

Adam C. Harris
David Hillman
Robert J. Ward
**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Counsel to BDCM Opportunity Fund I, LP and*
*Black Diamond CLO 2005-1 Ltd.*

EXHIBIT 14.3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD.'S**
**RESPONSES AND OBJECTIONS TO**
**IRA TOCHNER'S FIRST SET OF INTERROGATORIES**

BDCM Opportunity Fund I, LP and Black Diamond CLO 2005-1 Ltd.

(collectively, "Black Diamond"), by and through their undersigned counsel, hereby respond and

object, pursuant to Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, to the

First Set of Interrogatories of Ira Tochner, dated June 10, 2015 (the "Interrogatories"), as set

forth below.

## GENERAL OBJECTIONS

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1.     Black Diamond objects to the Interrogatories, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Local Rules of the United States District Court for the District of Delaware (collectively, the "Local Rules"), or any other applicable rules or laws.  Black Diamond will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2.     Black Diamond objects to the Interrogatories to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.     Black Diamond objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4.     Black Diamond objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5.     Black Diamond objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on

2

discovery ("Privileged Materials").  Unless specifically stated otherwise, Black Diamond does not intend disclose any Privileged Materials.  The inadvertent disclosure of any Privileged Materials is not a waiver of any claim of privilege or other protection with respect to any Privileged Materials or any other document or matter, all of which are expressly reserved.  Black Diamond further reserves the right to obtain the return of such information, prohibit its use in any manner, and/or demand the destruction of any such information inadvertently disclosed in response to the Interrogatories.

6.      Black Diamond objects to the Interrogatories to the extent that they seek disclosure of information not within Black Diamond's possession, custody, control, or knowledge.

7.      Black Diamond objects to the Interrogatories to the extent that they purport to request information that is public, already in Mr. Tochner's possession, or otherwise available from sources to which Mr. Tochner also has access or sources that are more convenient, less burdensome, and/or less expensive.

8.      Black Diamond objects to the Interrogatories to the extent that they seek information pertaining to persons or entities other than Black Diamond.

9.      Black Diamond objects to the Interrogatories to the extent that they are argumentative, lack foundation, or incorporate allegations and assertions that are disputed or erroneous.  By responding and objecting to the Interrogatories, Black Diamond does not admit the correctness of such assertions.

10.      Black Diamond objects to the Interrogatories to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that they

state or assume legal conclusions.  In providing these objections and responses to the

Interrogatories, Black Diamond does not admit the factual or legal premise of any Interrogatory.

   11. Black Diamond objects to the Interrogatories to the extent that they are not

limited to the claims or defenses in this action because they, for that reason alone, are overbroad

and unduly burdensome, seek information irrelevant to the subject matter of this action, and are

not calculated to lead to the discovery of admissible evidence.

   12. Black Diamond objects to the Interrogatories to the extent that they

impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on

Black Diamond.

   13. Black Diamond does not in any way waive or intend to waive, but rather

preserves and intends to preserve: (a) all rights to object on any ground to the competence,

relevance, materiality and admissibility of any document or information that may be produced in

response to the Interrogatories or the subject matter thereof; (b) all rights to object on any ground

to the use of any document or information that may be produced in response to the

Interrogatories or the subject matter thereof, in any subsequent proceeding, including the trial of

this or any other action; and (c) all rights to object on any ground to any request for further

responses to the Interrogatories or any other document request.

   14. Black Diamond objects to the definitions of the terms

"Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Person(s)," "Relate

to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome,

vague, and ambiguous.  To the extent possible, Black Diamond will construe these terms in

accordance with their ordinary meanings.

15.     Black Diamond's objections to the Interrogatories are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Black Diamond at a later date and are made without prejudice to Black Diamond's rights to revise, correct, clarify, supplement, modify, or amend its objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

## INTERROGATORY NO. 1

State all facts upon which You base Your contention that Mr. Tochner failed to comply with his duty of loyalty to Allied.

## RESPONSE TO INTERROGATORY NO. 1

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tochner.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 2

State all facts upon which You base Your contention that Mr. Tochner failed to comply with his duty of care to Allied.

## RESPONSE TO INTERROGATORY NO. 2

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tochner.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 3

Describe in detail each and every instance in which You contend that Mr. Tochner used his position on the board of Allied to benefit Yucaipa.

## RESPONSE TO INTERROGATORY NO. 3

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tochner.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 4

Describe in detail each and every instance in which You allege that Mr. Tochner took actions as a member of the board of Allied that were to the detriment of Allied.

## RESPONSE TO INTERROGATORY NO. 4

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tochner.

6

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

**INTERROGATORY NO. 5**

Describe in detail any instance in which You allege that Mr. Tochner took actions as a member of the board of Allied that were to the benefit of Yucaipa.

**RESPONSE TO INTERROGATORY NO. 5**

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tochner.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

**INTERROGATORY NO. 6**

State all facts upon which You base Your contention that Mr. Tochner influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

**RESPONSE TO INTERROGATORY NO. 6**

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tochner.

Black Diamond further objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the Complaint does not allege that "Mr. Tochner influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action."

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 7

State all facts upon which You base Your contention that that Mr. Tochner failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

## RESPONSE TO INTERROGATORY NO. 7

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tochner.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 8

State all facts upon which You base Your contention that Mr. Tochner played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 8

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement.

For instance, in August 2009, Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting in concert with each other, caused Yucaipa to purchase First Lien Debt from ComVest in contravention of the First Lien Credit Agreement, as amended by the Third Amendment.

As a result of Yucaipa's improper purchase of First Lien Debt, Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting in concert with each other, caused Yucaipa to proclaim itself to be the Requisite Lender in breach of the Credit Agreement, as amended by the Third Amendment, which precludes Yucaipa from, among other things, voting

First Lien Debt.  Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times

acting in concert with each other, caused Yucaipa to improperly use its status as the purported

Requisite Lender to prevent the First Lien Lenders from demanding Allied's compliance with the

Credit Agreement, including excusing Allied's failure to pay required principal and interest

when due.

Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting

in concert with each other, also caused Yucaipa to improperly use its status as the purported

Requisite Lender to preclude a balance sheet restructuring during the Great Recession and the

near collapse of the auto industry, which any other reasonable First Lien Lender (that did not

own a supermajority of Allied's equity) would unquestionably pursue.

Further, Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all

times acting in concert with each other, caused Yucaipa to improperly use its status as the

purported Requisite Lender to derail the sale of Allied's assets to JCT by demanding a

disproportionate share of the consideration that JCT was willing to pay.

Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all

times acting in concert with each other, caused Yucaipa to improperly assert itself as the

Requisite Lender, which caused Allied and the First Lien Lenders to incur millions of dollars in

unnecessary legal costs in Georgia state court, New York state court, and Bankruptcy Court to

determine who is rightfully the Requisite Lender, and which also delayed Allied's ability to

consummate a Section 363 sale in the bankruptcy case, which in turn caused Allied and the First

Lien Lenders to incur additional millions of dollars in unnecessary legal costs.

10

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 9

State all facts upon which You base Your contention that Mr. Tochner played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 9

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the Third Amendment.  Upon information and belief, Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligations under the Third Amendment.  For instance, Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting in concert with each other, did nothing to ensure that Yucaipa did not acquire First Lien Debt in excess of the amount permitted pursuant to Section 10.6(c) of the Third Amendment.  Moreover, Mr. Burkle and the Yucaipa

11

Directors (including Mr. Tochner), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligation pursuant to Section 10.6(j)(iii) of the Third Amendment to make a capital contribution of 50% of the face value of the First Lien Debt improperly held by Yucaipa.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 10

Identify each act that You contend Mr. Tochner committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 10

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond refers to its responses to Interrogatory No. 8 and Interrogatory No. 9.

## INTERROGATORY NO. 11

State all facts upon which You base Your contention that Mr. Tochner was seeking to benefit himself individually at the expense of Allied.

## RESPONSE TO INTERROGATORY NO. 11

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

At all relevant times, Mr. Tochner was a Yucaipa employee and an Allied director. Upon information and belief, Mr. Tochner did not receive any compensation in his capacity as an Allied director. Rather, Yucaipa compensated Mr. Tochner as a Yucaipa employee, whose duties as a Yucaipa employee included serving as a director of Allied. As described in paragraph 135 of the Complaint, Mr. Tochner, in his individual capacity, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement through his control of Yucaipa. In doing so, upon information and belief, Mr. Tochner was seeking to benefit himself individually by serving Yucaipa's interests (the entity that pays his compensation) at the expense of Allied's interest (the entity that paid him no compensation).

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**INTERROGATORY NO. 12**

State all facts upon which You base Your contention in paragraph 83 of the Complaint that Allied brought the Georgia Action at Yucaipa's direction.

**RESPONSE TO INTERROGATORY NO. 12**

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Tochner, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

At all relevant times, Yucaipa controlled Allied by (i) owning a supermajority of Allied's equity, (ii) having the power to control appoint a majority of Allied's board of directors; (iii) having the power to control, remove, and replace all five members of Allied's board of directors, and (iv) having the power to appoint, control, remove, and replace Allied's CEO. Upon information and belief, in November 2009, through Yucaipa's control over Allied, Yucaipa directed Allied to join Yucaipa as a plaintiff in a lawsuit against CIT in the Superior

14

Court of Fulton County, Georgia, seeking, among other things, a declaratory judgment that the

Purported Fourth Amendment is valid and that Yucaipa was the Requisite Lender.

Black Diamond's investigation through discovery is ongoing and continues and

Black Diamond expressly reserves its right to supplement and/or modify this response as it

deems appropriate.

## INTERROGATORY NO. 13

Identify every transaction that You claim the First Lien Lenders were unable to take regarding
any Events of Default during the pendency of the Georgia Action.

## RESPONSE TO INTERROGATORY NO. 13

Black Diamond objects to this Interrogatory on the grounds that it is neither

relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of

the claims against Mr. Tochner, and is improperly asserted on Yucaipa's behalf to improperly

circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules

of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it is based

on an incomplete hypothetical.

Subject to and without waiving the foregoing General Objections and Specific

Objections, Black Diamond responds as follows:

During the pendency of the Georgia Action, and for the entire period that Yucaipa

purported to be the Requisite Lender, the First Lien Lenders were unable to exercise any of their

rights and remedies in responses to Allied's numerous Defaults and Events of Default.  For

instance, the First Lien Lenders were unable terminate the Revolving Commitments, the Term

Loan Commitments or the LC Commitments.  In addition, the First Lien Lenders were unable to

make immediately due and payable (i) the unpaid principal amount of and accrued interest on the

Loans; (ii) the unreimbursed amounts of LC Disbursements; (iii) an amount equal to the

maximum amount that may at any time be drawn under all Letters of Credit then outstanding;

and (iv) all other Obligations.  The First Lien Lenders also could not enforce any other Default-

related remedies.

Black Diamond's investigation through discovery is ongoing and continues and

Black Diamond expressly reserves its right to supplement and/or modify this response as it

deems appropriate.

## INTERROGATORY NO. 14

State all facts upon which You base Your contention in paragraph 94 of the Complaint that
Yucaipa did not attempt to negotiate with Jack Cooper for the highest and best purchase price for
Allied's assets.

## RESPONSE TO INTERROGATORY NO. 14

Black Diamond objects to this Interrogatory on the grounds that it that it is vague,

ambiguous and unintelligible to the extent that paragraph 94 of the Complaint alleges that the

"the 'disinterested' members of the [Allied] Board (or a special committee of the Board)" had a

"responsibility . . . to negotiate the highest and best purchase price for Allied's assets without

immediate regard for how those proceeds might be allocated."  Paragraph 94 does not allege that

"Yucaipa did not attempt to negotiate with Jack Cooper for the highest and best purchase price

for Allied's assets."

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less

expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

As fiduciaries of Allied, Allied's board of directors, including the Special Committee of the board of directors, had a fiduciary responsibility to negotiate with Jack Cooper for the highest and best purchase price for Allied's assets without immediate regard for how those proceeds might be allocated.  Rather than fulfilling its fiduciary duties to Allied and its creditors, Allied's board of directors sat back and did nothing while Yucaipa wrongfully usurped control of negotiations with Jack Cooper in late 2011/2012, and in doing so sought to obtain disparate and better treatment for itself relative to the other First Lien Lenders.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 15

State all facts upon which You base Your contention in paragraph 96 of the Complaint that Yucaipa was "improperly using its alleged Requisite Lender position" in pursuing a sale of its First Lien Debt to Jack Cooper.

## RESPONSE TO INTERROGATORY NO. 15

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

In late 2011, Jack Cooper sought to acquire Allied through a typical M&A type transaction.  Yucaipa, however, had no interest in allowing Allied to pursue a typical M&A type transaction.  Instead, Yucaipa – while purporting to act as the Requisite Lender – insisted that any transaction with Jack Cooper had to be structured as a sale of Yucaipa's First Lien Debt so that Yucaipa could garner a premium for itself by demanding a disproportionate share of the consideration that Jack Cooper was willing to pay.

For example, Jack Cooper's term sheet dated December 19, 2011 (the "12/19/11 Proposal") contemplated that Yucaipa would receive, on account of the Obligations it allegedly held, 100% of the principal amount of the Obligations plus accrued interest in the form of $100 million in cash and $50 million in "tack on" Jack Cooper notes.  That same term sheet, however, contemplated that (i) Black Diamond and Spectrum would receive 100% of the principal amount of the Obligations they held (but not accrued interest) payable solely in Jack Cooper notes (with no cash), and (ii) CIT would receive only 57% of the principal amount of the Obligations it held (or $20 million in cash).  When Black Diamond and Spectrum legitimately requested that they receive ratable treatment with Yucaipa on account of the Obligations they held, Yucaipa – in its capacity as the purported Requisite Lender – refused to yield to Black Diamond and Spectrum's request for ratable treatment.

18

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 16

Identify every Communication You had with Jack Cooper regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied.

## RESPONSE TO INTERROGATORY NO. 16

Black Diamond objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Black Diamond refers to the following documents that have been produced through discovery in this action, which Black Diamond, upon a reasonable inquiry, has identified as containing communications between Black Diamond and Jack Cooper regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied:

| | | | |
|---|---|---|---|
| BDCM0000003 | BDCM0000130 | BDCM0001690 | BDCM0002249 |
| BDCM0000007 | BDCM0000141 | BDCM0001719 | BDCM0002263 |
| BDCM0000009 | BDCM0000144 | BDCM0002094 | BDCM0002299 |
| BDCM0000011 | BDCM0000147 | BDCM0002096 | BDCM0002301 |
| BDCM0000021 | BDCM0000153 | BDCM0002099 | BDCM0002318 |
| BDCM0000024 | BDCM0000204 | BDCM0002113 | BDCM0002337 |
| BDCM0000031 | BDCM0000207 | BDCM0002127 | BDCM0002339 |
| BDCM0000040 | BDCM0000218 | BDCM0002131 | BDCM0002362 |
| BDCM0000056 | BDCM0000363 | BDCM0002140 | BDCM0002462 |
| BDCM0000091 | BDCM0000371 | BDCM0002165 | BDCM0002580 |
| BDCM0000094 | BDCM0000376 | BDCM0002182 | BDCM0002585 |
| BDCM0000104 | BDCM0000954 | BDCM0002184 | BDCM0002590 |
| BDCM0000105 | BDCM0001098 | BDCM0002189 | BDCM0002592 |
| BDCM0000116 | BDCM0001600 | BDCM0002224 | BDCM0002599 |
| BDCM0000128 | BDCM0001660 | BDCM0002246 | BDCM0002603 |

19

| | | | |
|---|---|---|---|
| BDCM0002606 | BDCM0002789 | BDCM0003353 | BDCM0003448 |
| BDCM0002612 | BDCM0002795 | BDCM0003356 | BDCM0003471 |
| BDCM0002621 | BDCM0002860 | BDCM0003363 | BDCM0003485 |
| BDCM0002625 | BDCM0002882 | BDCM0003366 | BDCM0003505 |
| BDCM0002642 | BDCM0002892 | BDCM0003374 | BDCM0003540 |
| BDCM0002657 | BDCM0002902 | BDCM0003378 | BDCM0003545 |
| BDCM0002670 | BDCM0002917 | BDCM0003381 | BDCM0004802 |
| BDCM0002671 | BDCM0002937 | BDCM0003386 | BDCM0004828 |
| BDCM0002672 | BDCM0002947 | BDCM0003390 | BDCM0004882 |
| BDCM0002674 | BDCM0003265 | BDCM0003394 | BDCM0004886 |
| BDCM0002676 | BDCM0003303 | BDCM0003409 | BDCM0004896 |
| BDCM0002678 | BDCM0003308 | BDCM0003422 | BDCM0007316 |
| BDCM0002686 | BDCM0003315 | BDCM0003423 | BDCM0007596 |
| BDCM0002689 | BDCM0003317 | BDCM0003425 | BDCM0020224 |
| BDCM0002696 | BDCM0003323 | BDCM0003427 | BDCM0020255 |
| BDCM0002703 | BDCM0003326 | BDCM0003428 | BDCM0021726 |
| BDCM0002712 | BDCM0003328 | BDCM0003431 | |
| BDCM0002726 | BDCM0003343 | BDCM0003445 | |

Black Diamond further states that Black Diamond and Jack Cooper may have had other oral or written communications regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied.  However, the employees of Black Diamond do not have a specific recollection of whether and when such communications occurred.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 17

Identify every Communication You had with Spectrum regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied.

## RESPONSE TO INTERROGATORY NO. 17

Black Diamond objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome.

20

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Black Diamond refers to the following documents that have been produced through discovery in this action, which Black Diamond, upon a reasonable inquiry, has identified as containing communications Black Diamond and Spectrum regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied:

| | | | |
|---|---|---|---|
| SPEC 0000015 | SPEC 0000593 | SPEC 0001118 | BDCM0000712 |
| SPEC 0000026 | SPEC 0000595 | SPEC 0002496 | BDCM0000714 |
| SPEC 0000029 | SPEC 0000599 | SPEC 0002497 | BDCM0000920 |
| SPEC 0000033 | SPEC 0000792 | SPEC 0002499 | BDCM0000941 |
| SPEC 0000038 | SPEC 0000795 | SPEC 0002950 | BDCM0000942 |
| SPEC 0000044 | SPEC 0000798 | SPEC 0002971 | BDCM0000944 |
| SPEC 0000050 | SPEC 0000801 | SPEC 0003050 | BDCM0000965 |
| SPEC 0000057 | SPEC 0000805 | SPEC 0003052 | BDCM0000968 |
| SPEC 0000058 | SPEC 0000809 | SPEC 0003054 | BDCM0000979 |
| SPEC 0000060 | SPEC 0000817 | SPEC 0003056 | BDCM0001553 |
| SPEC 0000063 | SPEC 0000823 | SPEC 0003058 | BDCM0001556 |
| SPEC 0000067 | SPEC 0000830 | SPEC 0003060 | BDCM0001576 |
| SPEC 0000072 | SPEC 0000838 | SPEC 0003637 | BDCM0001600 |
| SPEC 0000077 | SPEC 0000840 | SPEC 0006205 | BDCM0001603 |
| SPEC 0000091 | SPEC 0000852 | SPEC 0006211 | BDCM0002117 |
| SPEC 0000098 | SPEC 0000856 | SPEC 0006221 | BDCM0002462 |
| SPEC 0000099 | SPEC 0000860 | SPEC 0006604 | BDCM0002474 |
| SPEC 0000206 | SPEC 0000865 | SPEC 0006740 | BDCM0002487 |
| SPEC 0000262 | SPEC 0000869 | SPEC 0012850 | BDCM0002539 |
| SPEC 0000266 | SPEC 0000874 | SPEC 0013071 | BDCM0002543 |
| SPEC 0000280 | SPEC 0000883 | SPEC 0013254 | BDCM0002549 |
| SPEC 0000284 | SPEC 0000920 | SPEC 0013400 | BDCM0002559 |
| SPEC 0000291 | SPEC 0000951 | SPEC 0013401 | BDCM0002573 |
| SPEC 0000376 | SPEC 0000954 | SPEC 0013403 | BDCM0002580 |
| SPEC 0000377 | SPEC 0000956 | BDCM0000031 | BDCM0002585 |
| SPEC 0000378 | SPEC 0000982 | BDCM0000149 | BDCM0002590 |
| SPEC 0000380 | SPEC 0001028 | BDCM0000204 | BDCM0002592 |
| SPEC 0000444 | SPEC 0001040 | BDCM0000207 | BDCM0002599 |
| SPEC 0000445 | SPEC 0001042 | BDCM0000218 | BDCM0002603 |
| SPEC 0000449 | SPEC 0001106 | BDCM0000242 | BDCM0002606 |
| SPEC 0000454 | SPEC 0001111 | BDCM0000508 | BDCM0002612 |

21

| | | | |
|---|---|---|---|
| BDCM0002621 | BDCM0002803 | BDCM0003381 | BDCM0003571 |
| BDCM0002625 | BDCM0002806 | BDCM0003386 | BDCM0004837 |
| BDCM0002657 | BDCM0002831 | BDCM0003390 | BDCM0004852 |
| BDCM0002671 | BDCM0002840 | BDCM0003394 | BDCM0004864 |
| BDCM0002672 | BDCM0002842 | BDCM0003407 | BDCM0006239 |
| BDCM0002676 | BDCM0002844 | BDCM0003409 | BDCM0006255 |
| BDCM0002678 | BDCM0002859 | BDCM0003431 | BDCM0006309 |
| BDCM0002686 | BDCM0002873 | BDCM0003448 | BDCM0007108 |
| BDCM0002689 | BDCM0002877 | BDCM0003454 | BDCM0007143 |
| BDCM0002692 | BDCM0002880 | BDCM0003467 | BDCM0007610 |
| BDCM0002696 | BDCM0002917 | BDCM0003469 | BDCM0007621 |
| BDCM0002703 | BDCM0002931 | BDCM0003471 | BDCM0007799 |
| BDCM0002712 | BDCM0002933 | BDCM0003481 | BDCM0007801 |
| BDCM0002716 | BDCM0002939 | BDCM0003485 | BDCM0007803 |
| BDCM0002726 | BDCM0002947 | BDCM0003490 | BDCM0007878 |
| BDCM0002728 | BDCM0003265 | BDCM0003494 | BDCM0008919 |
| BDCM0002734 | BDCM0003291 | BDCM0003498 | BDCM0008963 |
| BDCM0002738 | BDCM0003300 | BDCM0003505 | BDCM0010844 |
| BDCM0002740 | BDCM0003317 | BDCM0003508 | BDCM0020255 |
| BDCM0002740 | BDCM0003356 | BDCM0003510 | BDCM0021726 |
| BDCM0002789 | BDCM0003374 | BDCM0003513 | |
| BDCM0002795 | BDCM0003378 | BDCM0003540 | |

Black Diamond further states that Black Diamond and Spectrum may have had other oral or written communications regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied. However, the employees of Black Diamond do not have a specific recollection of whether and when such communications occurred.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**INTERROGATORY NO. 18**

Describe in detail all every one of the "strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" contemplated by the Cooperation Agreement.

**RESPONSE TO INTERROGATORY NO. 18**

Black Diamond objects to this Interrogatory on the grounds that the phrase "contemplated by the Cooperation Agreement" is vague and ambiguous.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Tochner, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

**INTERROGATORY NO. 19**

Describe in detail all reasons You did not sign the Cooperation Agreement prior to January 2012.

**RESPONSE TO INTERROGATORY NO. 19**

Black Diamond objects to this Interrogatory on the grounds that it lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Tochner, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

23

## INTERROGATORY NO. 20

Identify the amount You were paid by Spectrum for the transfer of $4,239,486.90 in First Lien Debt.

## RESPONSE TO INTERROGATORY NO. 20

Black Diamond objects to this Interrogatory on the grounds that it is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

Black Diamond further objects to this Interrogatory on the grounds that it is vague, ambiguous and lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Tochner, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 21

Describe in detail all reasons You sold $4,239,486.90 in First Lien Debt to Spectrum.

## RESPONSE TO INTERROGATORY NO. 21

Black Diamond objects to this Interrogatory on the grounds that it is vague, ambiguous and lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Tochner, and is improperly asserted on Yucaipa's behalf to

24

improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the

Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information in support of allegations that Yucaipa is collaterally estopped from asserting.


Dated: August 31, 2015
       Wilmington, Delaware              **LANDIS RATH & COBB LLP**


                                         _  /s/  Kerri K. Mumford_
                                         Adam G. Landis (No. 3407)
                                         Kerri K. Mumford (No. 4186)
                                         919 Market Street, Suite 1800
                                         Wilmington, Delaware 19801
                                         Telephone: (302) 467-4400
                                         Facsimile: (302) 467-4450

                                         -and-

                                         Adam C. Harris
                                         David Hillman
                                         Robert J. Ward
                                         **SCHULTE ROTH & ZABEL LLP**
                                         919 Third Avenue
                                         New York, New York 10022
                                         Telephone: (212) 756-2000
                                         Facsimile: (212) 593-5955

                                         _Counsel to BDCM Opportunity Fund I, LP and_
                                         _Black Diamond CLO 2005-1 Ltd._

EXHIBIT 14.4

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD.'S
RESPONSES AND OBJECTIONS TO
JEFF PELLETIER'S FIRST SET OF INTERROGATORIES**

BDCM Opportunity Fund I, LP and Black Diamond CLO 2005-1 Ltd.

(collectively, "Black Diamond"), by and through their undersigned counsel, hereby respond and

object, pursuant to Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, to the

First Set of Interrogatories of Jeff Pelletier, dated June 10, 2015 (the "Interrogatories"), as set

forth below.

## GENERAL OBJECTIONS

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1.      Black Diamond objects to the Interrogatories, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Local Rules of the United States District Court for the District of Delaware (collectively, the "Local Rules"), or any other applicable rules or laws.  Black Diamond will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2.      Black Diamond objects to the Interrogatories to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.      Black Diamond objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4.      Black Diamond objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5.      Black Diamond objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on

2

discovery ("Privileged Materials").  Unless specifically stated otherwise, Black Diamond does not intend disclose any Privileged Materials.  The inadvertent disclosure of any Privileged Materials is not a waiver of any claim of privilege or other protection with respect to any Privileged Materials or any other document or matter, all of which are expressly reserved.  Black Diamond further reserves the right to obtain the return of such information, prohibit its use in any manner, and/or demand the destruction of any such information inadvertently disclosed in response to the Interrogatories.

6.    Black Diamond objects to the Interrogatories to the extent that they seek disclosure of information not within Black Diamond's possession, custody, control, or knowledge.

7.    Black Diamond objects to the Interrogatories to the extent that they purport to request information that is public, already in Mr. Pelletier's possession, or otherwise available from sources to which Mr. Pelletier also has access or sources that are more convenient, less burdensome, and/or less expensive.

8.    Black Diamond objects to the Interrogatories to the extent that they seek information pertaining to persons or entities other than Black Diamond.

9.    Black Diamond objects to the Interrogatories to the extent that they are argumentative, lack foundation, or incorporate allegations and assertions that are disputed or erroneous.  By responding and objecting to the Interrogatories, Black Diamond does not admit the correctness of such assertions.

10.    Black Diamond objects to the Interrogatories to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that they

state or assume legal conclusions.  In providing these objections and responses to the

Interrogatories, Black Diamond does not admit the factual or legal premise of any Interrogatory.

11.     Black Diamond objects to the Interrogatories to the extent that they are not

limited to the claims or defenses in this action because they, for that reason alone, are overbroad

and unduly burdensome, seek information irrelevant to the subject matter of this action, and are

not calculated to lead to the discovery of admissible evidence.

12.     Black Diamond objects to the Interrogatories to the extent that they

impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on

Black Diamond.

13.     Black Diamond does not in any way waive or intend to waive, but rather

preserves and intends to preserve: (a) all rights to object on any ground to the competence,

relevance, materiality and admissibility of any document or information that may be produced in

response to the Interrogatories or the subject matter thereof; (b) all rights to object on any ground

to the use of any document or information that may be produced in response to the

Interrogatories or the subject matter thereof, in any subsequent proceeding, including the trial of

this or any other action; and (c) all rights to object on any ground to any request for further

responses to the Interrogatories or any other document request.

14.     Black Diamond objects to the definitions of the terms

"Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Person(s)," "Relate

to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome,

vague, and ambiguous.  To the extent possible, Black Diamond will construe these terms in

accordance with their ordinary meanings.

4

15.     Black Diamond's objections to the Interrogatories are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Black Diamond at a later date and are made without prejudice to Black Diamond's rights to revise, correct, clarify, supplement, modify, or amend its objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1

State all facts upon which You base Your contention that Mr. Pelletier failed to comply with his duty of loyalty to Allied.

### RESPONSE TO INTERROGATORY NO. 1

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Pelletier.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

### INTERROGATORY NO. 2

State all facts upon which You base Your contention that Mr. Pelletier failed to comply with his duty of care to Allied.

### RESPONSE TO INTERROGATORY NO. 2

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Pelletier.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

**INTERROGATORY NO. 3**

Describe in detail each and every instance in which You contend that Mr. Pelletier used his position on the board of Allied to benefit Yucaipa.

**RESPONSE TO INTERROGATORY NO. 3**

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Pelletier.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

**INTERROGATORY NO. 4**

Describe in detail each and every instance in which You allege that Mr. Pelletier took actions as a member of the board of Allied that were to the detriment of Allied.

**RESPONSE TO INTERROGATORY NO. 4**

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Pelletier.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 5

Describe in detail any instance in which You allege that Mr. Pelletier took actions as a member of the board of Allied that were to the benefit of Yucaipa.

## RESPONSE TO INTERROGATORY NO. 5

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Pelletier.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 6

State all facts upon which You base Your contention that Mr. Pelletier influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

## RESPONSE TO INTERROGATORY NO. 6

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Pelletier.

7

Black Diamond further objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the Complaint does not allege that "Mr. Pelletier influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action."

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 7

State all facts upon which You base Your contention that that Mr. Pelletier failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

## RESPONSE TO INTERROGATORY NO. 7

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Pelletier.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 8

State all facts upon which You base Your contention that Mr. Pelletier played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 8

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement.

For instance, in August 2009, Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting in concert with each other, caused Yucaipa to purchase First Lien Debt from ComVest in contravention of the First Lien Credit Agreement, as amended by the Third Amendment.

As a result of Yucaipa's improper purchase of First Lien Debt, Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting in concert with each other, caused Yucaipa to proclaim itself to be the Requisite Lender in breach of the Credit Agreement, as amended by the Third Amendment, which precludes Yucaipa from, among other things, voting

First Lien Debt.  Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times

acting in concert with each other, caused Yucaipa to improperly use its status as the purported

Requisite Lender to prevent the First Lien Lenders from demanding Allied's compliance with the

Credit Agreement, including excusing Allied's failure to pay required principal and interest

when due.

Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting

in concert with each other, also caused Yucaipa to improperly use its status as the purported

Requisite Lender to preclude a balance sheet restructuring during the Great Recession and the

near collapse of the auto industry, which any other reasonable First Lien Lender (that did not

own a supermajority of Allied's equity) would unquestionably pursue.

Further, Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all

times acting in concert with each other, caused Yucaipa to improperly use its status as the

purported Requisite Lender to derail the sale of Allied's assets to JCT by demanding a

disproportionate share of the consideration that JCT was willing to pay.

Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all

times acting in concert with each other, caused Yucaipa to improperly assert itself as the

Requisite Lender, which caused Allied and the First Lien Lenders to incur millions of dollars in

unnecessary legal costs in Georgia state court, New York state court, and Bankruptcy Court to

determine who is rightfully the Requisite Lender, and which also delayed Allied's ability to

consummate a Section 363 sale in the bankruptcy case, which in turn caused Allied and the First

Lien Lenders to incur additional millions of dollars in unnecessary legal costs.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 9

State all facts upon which You base Your contention that Mr. Pelletier played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 9

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the Third Amendment. Upon information and belief, Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligations under the Third Amendment. For instance, Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting in concert with each other, did nothing to ensure that Yucaipa did not acquire First Lien Debt in excess of the amount permitted pursuant to Section 10.6(c) of the Third Amendment. Moreover, Mr. Burkle and the Yucaipa

11

Directors (including Mr. Pelletier), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligation pursuant to Section 10.6(j)(iii) of the Third Amendment to make a capital contribution of 50% of the face value of the First Lien Debt improperly held by Yucaipa.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 10

Identify each act that You contend Mr. Pelletier committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 10

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond refers to its responses to Interrogatory No. 8 and Interrogatory No. 9.

## INTERROGATORY NO. 11

State all facts upon which You base Your contention that Mr. Pelletier was seeking to benefit himself individually at the expense of Allied.

## RESPONSE TO INTERROGATORY NO. 11

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

At all relevant times, Mr. Pelletier was a Yucaipa employee and an Allied director.  Upon information and belief, Mr. Pelletier did not receive any compensation in his capacity as an Allied director.  Rather, Yucaipa compensated Mr. Pelletier as a Yucaipa employee, whose duties as a Yucaipa employee included serving as a director of Allied.  As described in paragraph 135 of the Complaint, Mr. Pelletier, in his individual capacity, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement through his control of Yucaipa.  In doing so, upon information and belief, Mr. Pelletier was seeking to benefit himself individually by serving Yucaipa's interests (the entity that pays his compensation) at the expense of Allied's interest (the entity that paid him no compensation).

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

13

**INTERROGATORY NO. 12**

Describe in detail all reasons You sold $4,239,486.90 in First Lien Debt to Spectrum.

**RESPONSE TO INTERROGATORY NO. 12**

Black Diamond objects to this Interrogatory on the grounds that it is vague, ambiguous and lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

**INTERROGATORY NO. 13**

Identify any other trades You considered pursuant to the Cooperation Agreement but did not execute, including identifying whether You offered Spectrum a pro rata right to share in those trades.

**RESPONSE TO INTERROGATORY NO. 13**

Black Diamond objects to this Interrogatory on the grounds that the phrase "other trades" is vague and ambiguous to the extent that it is undefined and susceptible to multiple interpretations.

Black Diamond further objects to this Interrogatory on the grounds that the term "considered" is vague, ambiguous and overbroad.

Black Diamond further objects to this Interrogatory on the grounds that it lacks foundation.

14

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 14

Describe in detail all reasons You did not disclose the transfer of the $4,239,486.90 in First Lien Debt in the Black Diamond and Spectrum Affidavits.

## RESPONSE TO INTERROGATORY NO. 14

Black Diamond objects to this Interrogatory on the grounds that it is vague, ambiguous, compound and lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory to the extent that it calls for an answer about an affidavit filed by another entity.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 15

Describe in detail all reasons You did not disclose the transfer of the $4,239,486.90 in First Lien Debt in connection with the filing of the involuntary bankruptcy filing in May 2012 or in response to related discovery.

## RESPONSE TO INTERROGATORY NO. 15

Black Diamond objects to this Interrogatory on the grounds that it is vague,

ambiguous, compound and lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is

neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for,

any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to

improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the

Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 16

State all facts upon which You base Your contention that Yucaipa refused to perform in accordance with the terms of the First Lien Credit Agreement, as amended by the Third Amendment.

## RESPONSE TO INTERROGATORY NO. 16

Black Diamond objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less

expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information pertaining to persons or entities other than Black Diamond.

16

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

On August 21, 2009, in contravention of the terms of the Third Amendment, Yucaipa purchased a total of $145,112,547.06 of First Lien Debt from ComVest. At the same time, as a condition to closing Yucaipa's purchase of First Lien Debt from ComVest, Allied – at Yucaipa's direction – executed the Purported Fourth Amendment, which (if valid) would have eliminated all of the Third Amendment's restrictions on Yucaipa's ability to acquire and vote First Lien Debt and would have allowed Yucaipa to become the Requisite Lender. Upon purchasing First Lien Debt from ComVest and causing the execution of the Purported Fourth Amendment, Yucaipa declared itself the Requisite Lender.

In acquiring First Lien Debt from ComVest, Yucaipa breached Section 10.6(c) of the Third Amendment by purchasing, and purporting to hold, $114,712,08.66 in Term Loans, which is substantially greater than the amount of Term Loans that Yucaipa is permitted to purchase and hold. Moreover, Yucaipa breached Section 10.6(j)(iii) of the Third Amendment by failing to make a capital contribution of 50% of the face value of the First Lien Debt improperly held by Yucaipa.

In addition, under Section 2.1(c) of the Third Amendment, Yucaipa is not permitted to purchase or hold any Revolving Loans or LC Commitments. On or about August

17

21, 2009, Yucaipa breached that provision by purchasing, and purporting to hold, $30,400,458.40 of LC Commitments.

As a result of its impermissible acquisition of First Lien Debt, Yucaipa declared itself to be the Requisite Lender, with all the rights and powers granted thereto under the First Lien Credit Agreement.  By improperly acting as the Requisite Lender, Yucaipa breached numerous other provisions of the First Lien Credit Agreement, as amended by the Third Amendment, including, but not limited to:

- Section 2.7(a) of the Third Amendment, which provides that Yucaipa "shall have no voting rights for all purposes under this Agreement (whether before, during, or after an Insolvency or Liquidation Proceeding) . . . with respect to their Term Loans."

- Section 2.7(b) of the Third Amendment, which provides that Yucaipa "shall not . . . make any election, give any consent, commence any action or file any motion, claim, obligation, notice or application or take any other action in any Insolvency or Liquidation Proceeding without the prior written consent of all Lenders . . . ."

- Section 2.7(e)(iv) of the Third Amendment, which provides that Yucaipa "knowingly and irrevocably waives any and all rights to exercise any voting rights it would otherwise have as a Lender for all purposes under this Agreement . . . ."

Yucaipa's improper usurpation of Requisite Lender status breached the First Lien Credit Agreement, as amended by the Third Amendment, in at least the following ways:

- Yucaipa improperly acquired First Lien Debt in violation of the First Lien Credit Agreement;

- Yucaipa improperly used its purported debt holdings to declare itself the Requisite Lender, in clear violation of the First Lien Credit Agreement;

- Yucaipa improperly used its status as purported Requisite Lender to neutralize the First Lien Lenders, giving the Debtors a "free pass" to ignore the provisions of the First Lien Credit Agreement requiring them to pay principal and interest and abide by certain financial and operating covenants;

- Yucaipa improperly used its status as purported Requisite Lender to protect its equity investment by precluding a badly-needed restructuring of the Debtors; and

- Yucaipa's improper usurpation of Requisite Lender status caused the First Lien Lenders to incur unnecessary legal costs regarding the impropriety of Yucaipa's status as Requisite Lender and the invalidity of the Purported Fourth Amendment.

In addition, starting in November or December 2011, Yucaipa, acting as the purported Requisite Lender, hijacked negotiations with Jack Cooper ("JCT") by insisting on terms that would benefit Yucaipa, rather than the Debtors, and by demanding that any deal disproportionately favor Yucaipa at the expense of the First Lien Lenders.

As a direct result of Yucaipa's wrongful usurpation of Requisite Lender status, Yucaipa was able to improperly derail the deal in which JCT was willing to pay every First Lien Lender par plus accrued interest. Yucaipa admits that after that deal was derailed, JCT purchased substantially all of Allied's assets through a Section 363 sale for only $135 million, which was "$170 million less in consideration than offered by JCT to all Lenders nearly 18 months earlier." (Yucaipa's Counterclaim ¶ 10(e).) In addition, the Debtors were forced to incur $30 million in post-petition financing, reducing the amount available from the Debtors' assets for distribution to the First Lien Lenders. The non-Yucaipa First Lien Lenders were also forced to incur millions of dollars in legal fees in connection with the bankruptcy cases and the New York action made necessary by Yucaipa's wrongful acts. Yucaipa's wrongful usurpation of Requisite Lender status also delayed the Debtors' ability to consummate a Section 363 sale in the bankruptcy case, which in turn caused the Debtors and First Lien Lenders to incur millions of dollars in additional unnecessary legal costs.

As a result of Yucaipa's breaches of the First Lien Credit Agreement, as amended by the Third Amendment, Plaintiffs have suffered damages.

19

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 17

State the price You paid for the First Lien Claims You held (and the amount of such claims held) at the time of the involuntary bankruptcy filing in May 2012.

## RESPONSE TO INTERROGATORY NO. 17

Black Diamond objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 18

Describe in detail all reasons You rejected the Yucaipa Tender Offer.

## RESPONSE TO INTERROGATORY NO. 18

Black Diamond objects to this Interrogatory on the grounds that it is vague, ambiguous, lacks foundation, and is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Black Diamond did not accept the Yucaipa Tender Offer because if the Yucaipa Tender Offer had been accepted, the First Lien Credit Agreement would have been amended to permit Yucaipa to acquire and vote First Lien Debt without any of the limitations imposed by the Third Amendment.  Such an amendment would have allowed Yucaipa to purchase a majority of the First Lien Debt and become the Requisite Lender, thereby seizing control of the First Lien Facility.  Permitting Yucaipa, as Allied's majority and controlling shareholder, to take control of the First Lien Facility would permit Yucaipa to prevent the exercise of rights or remedies of the First Lien Lenders notwithstanding the occurrence and continuance of Defaults and Events of Default.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 19

Identify the date You first considered seeking equitable subordination of Yucaipa in relation to Your Allied First Lien Claims.

## RESPONSE TO INTERROGATORY NO. 19

Black Diamond objects to this Interrogatory on the grounds that it is vague, ambiguous and lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 20

Identify the date You first discussed equitable subordination of Yucaipa in relation to Your
Allied First Lien Claims with any other party, including but not limited to T. Michael Riggs,
Kirk Ferguson, or Spectrum.

## RESPONSE TO INTERROGATORY NO. 20

Black Diamond objects to this Interrogatory on the grounds that it is vague,

ambiguous and lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is

neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for,

any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to

improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the

Federal Rules of Civil Procedure.

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 21

Identify the date You first learned that Yucaipa was negotiating with ComVest to acquire
ComVest's First Lien Debt.

## RESPONSE TO INTERROGATORY NO. 21

Black Diamond objects to this Interrogatory on the grounds that it is vague,

ambiguous and lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is

neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for,

any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to

improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Upon information and belief, Black Diamond first learned that Yucaipa was negotiating with ComVest to acquire ComVest's First Lien Debt on or around February 26, 2009.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

Dated: August 31, 2015
      Wilmington, Delaware          **LANDIS RATH & COBB LLP**

*/s/ Kerri K. Mumford*
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

-and-

Adam C. Harris
David Hillman
Robert J. Ward
**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Counsel to BDCM Opportunity Fund I, LP and
Black Diamond CLO 2005-1 Ltd.*

EXHIBIT 14.5

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD.'S
RESPONSES AND OBJECTIONS TO
JOSEPH TOMCZAK'S FIRST SET OF INTERROGATORIES**

BDCM Opportunity Fund I, LP and Black Diamond CLO 2005-1 Ltd.

(collectively, "Black Diamond"), by and through their undersigned counsel, hereby respond and

object, pursuant to Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, to the

First Set of Interrogatories of Joseph Tomczak, dated June 10, 2015 (the "Interrogatories"), as set

forth below.

## GENERAL OBJECTIONS

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1. Black Diamond objects to the Interrogatories, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Local Rules of the United States District Court for the District of Delaware (collectively, the "Local Rules"), or any other applicable rules or laws. Black Diamond will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2. Black Diamond objects to the Interrogatories to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3. Black Diamond objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4. Black Diamond objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5. Black Diamond objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on

2

discovery ("Privileged Materials").  Unless specifically stated otherwise, Black Diamond does not intend disclose any Privileged Materials.  The inadvertent disclosure of any Privileged Materials is not a waiver of any claim of privilege or other protection with respect to any Privileged Materials or any other document or matter, all of which are expressly reserved.  Black Diamond further reserves the right to obtain the return of such information, prohibit its use in any manner, and/or demand the destruction of any such information inadvertently disclosed in response to the Interrogatories.

6.     Black Diamond objects to the Interrogatories to the extent that they seek disclosure of information not within Black Diamond's possession, custody, control, or knowledge.

7.     Black Diamond objects to the Interrogatories to the extent that they purport to request information that is public, already in Mr. Tomczak's possession, or otherwise available from sources to which Mr. Tomczak also has access or sources that are more convenient, less burdensome, and/or less expensive.

8.     Black Diamond objects to the Interrogatories to the extent that they seek information pertaining to persons or entities other than Black Diamond.

9.     Black Diamond objects to the Interrogatories to the extent that they are argumentative, lack foundation, or incorporate allegations and assertions that are disputed or erroneous.  By responding and objecting to the Interrogatories, Black Diamond does not admit the correctness of such assertions.

10.     Black Diamond objects to the Interrogatories to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that they

state or assume legal conclusions.  In providing these objections and responses to the

Interrogatories, Black Diamond does not admit the factual or legal premise of any Interrogatory.

        11.     Black Diamond objects to the Interrogatories to the extent that they are not

limited to the claims or defenses in this action because they, for that reason alone, are overbroad

and unduly burdensome, seek information irrelevant to the subject matter of this action, and are

not calculated to lead to the discovery of admissible evidence.

        12.     Black Diamond objects to the Interrogatories to the extent that they

impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on

Black Diamond.

        13.     Black Diamond does not in any way waive or intend to waive, but rather

preserves and intends to preserve: (a) all rights to object on any ground to the competence,

relevance, materiality and admissibility of any document or information that may be produced in

response to the Interrogatories or the subject matter thereof; (b) all rights to object on any ground

to the use of any document or information that may be produced in response to the

Interrogatories or the subject matter thereof, in any subsequent proceeding, including the trial of

this or any other action; and (c) all rights to object on any ground to any request for further

responses to the Interrogatories or any other document request.

        14.     Black Diamond objects to the definitions of the terms

"Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Person(s)," "Relate

to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome,

vague, and ambiguous.  To the extent possible, Black Diamond will construe these terms in

accordance with their ordinary meanings.

15.     Black Diamond's objections to the Interrogatories are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Black Diamond at a later date and are made without prejudice to Black Diamond's rights to revise, correct, clarify, supplement, modify, or amend its objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

## INTERROGATORY NO. 1

State all facts upon which You base Your contention that Mr. Tomczak failed to comply with his duty of loyalty to Allied.

## RESPONSE TO INTERROGATORY NO. 1

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 2

State all facts upon which You base Your contention that Mr. Tomczak failed to comply with his duty of care to Allied.

## RESPONSE TO INTERROGATORY NO. 2

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 3

Describe in detail each and every instance in which You contend that Mr. Tomczak used his position on the board of Allied to benefit Yucaipa.

## RESPONSE TO INTERROGATORY NO. 3

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 4

Describe in detail each and every instance in which You allege that Mr. Tomczak took actions as a member of the board of Allied that were to the detriment of Allied.

## RESPONSE TO INTERROGATORY NO. 4

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

6

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 5

Describe in detail any instance in which You allege that Mr. Tomczak took actions as a member of the board of Allied that were to the benefit of Yucaipa.

## RESPONSE TO INTERROGATORY NO. 5

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 6

State all facts upon which You base Your contention that Mr. Tomczak influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

## RESPONSE TO INTERROGATORY NO. 6

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

7

Black Diamond further objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the Complaint does not allege that "Mr. Tomczak influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action."

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

## INTERROGATORY NO. 7

State all facts upon which You base Your contention that that Mr. Tomczak failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

## RESPONSE TO INTERROGATORY NO. 7

Black Diamond objects to this Interrogatory on the grounds that Black Diamond is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

8

## INTERROGATORY NO. 8

State all facts upon which You base Your contention that Mr. Tomczak played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 8

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement.

For instance, in August 2009, Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, caused Yucaipa to purchase First Lien Debt from ComVest in contravention of the First Lien Credit Agreement, as amended by the Third Amendment.

As a result of Yucaipa's improper purchase of First Lien Debt, Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, caused Yucaipa to proclaim itself to be the Requisite Lender in breach of the Credit Agreement, as amended by the Third Amendment, which precludes Yucaipa from, among other things,

voting First Lien Debt.  Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, caused Yucaipa to improperly use its status as the purported Requisite Lender to prevent the First Lien Lenders from demanding Allied's compliance with the Credit Agreement, including excusing Allied's failure to pay required principal and interest when due.

Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, also caused Yucaipa to improperly use its status as the purported Requisite Lender to preclude a balance sheet restructuring during the Great Recession and the near collapse of the auto industry, which any other reasonable First Lien Lender (that did not own a supermajority of Allied's equity) would unquestionably pursue.

Further, Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, caused Yucaipa to improperly use its status as the purported Requisite Lender to derail the sale of Allied's assets to JCT by demanding a disproportionate share of the consideration that JCT was willing to pay.

Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, caused Yucaipa to improperly assert itself as the Requisite Lender, which caused Allied and the First Lien Lenders to incur millions of dollars in unnecessary legal costs in Georgia state court, New York state court, and Bankruptcy Court to determine who is rightfully the Requisite Lender, and which also delayed Allied's ability to consummate a Section 363 sale in the bankruptcy case, which in turn caused Allied and the First Lien Lenders to incur additional millions of dollars in unnecessary legal costs.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 9

State all facts upon which You base Your contention that Mr. Tomczak played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 9

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the Third Amendment. Upon information and belief, Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligations under the Third Amendment. For instance, Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, did nothing to ensure that Yucaipa did not acquire First Lien Debt in excess of the amount permitted pursuant to Section 10.6(c) of the Third Amendment. Moreover, Mr. Burkle

11

and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligation pursuant to Section 10.6(j)(iii) of the Third Amendment to make a capital contribution of 50% of the face value of the First Lien Debt improperly held by Yucaipa.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 10

Identify each act that You contend Mr. Tomczak committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 10

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond refers to its responses to Interrogatory No. 8 and Interrogatory No. 9.

## INTERROGATORY NO. 11

State all facts upon which You base Your contention that Mr. Tomczak was seeking to benefit himself individually at the expense of Allied.

## RESPONSE TO INTERROGATORY NO. 11

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

At all relevant times, Mr. Tomczak was a Yucaipa employee and an Allied director.  Upon information and belief, Mr. Tomczak did not receive any compensation in his capacity as an Allied director.  Rather, Yucaipa compensated Mr. Tomczak as a Yucaipa employee, whose duties as a Yucaipa employee included serving as a director of Allied.  As described in paragraph 135 of the Complaint, Mr. Tomczak, in his individual capacity, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement through his control of Yucaipa.  In doing so, upon information and belief, Mr. Tomczak was seeking to benefit himself individually by serving Yucaipa's interests (the entity that pays his compensation) at the expense of Allied's interest (the entity that paid him no compensation).

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

Dated: August 31, 2015
      Wilmington, Delaware          **LANDIS RATH & COBB LLP**


                                  *__/s/  Kerri K. Mumford*
                                    Adam G. Landis (No. 3407)
                                    Kerri K. Mumford (No. 4186)
                                    919 Market Street, Suite 1800
                                    Wilmington, Delaware 19801
                                    Telephone: (302) 467-4400
                                    Facsimile: (302) 467-4450

                                    -and-

                                    Adam C. Harris
                                    David Hillman
                                    Robert J. Ward
                                    **SCHULTE ROTH & ZABEL LLP**
                                    919 Third Avenue
                                    New York, New York 10022
                                    Telephone: (212) 756-2000
                                    Facsimile: (212) 593-5955

                                    *Counsel to BDCM Opportunity Fund I, LP and*
                                    *Black Diamond CLO 2005-1 Ltd.*

EXHIBIT 14.6

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**BDCM OPPORTUNITY FUND II, LP AND BLACK DIAMOND CLO 2005-1 LTD.'S**
**RESPONSES AND OBJECTIONS TO**
**YUCAIPA'S FIRST SET OF INTERROGATORIES**

BDCM Opportunity Fund I, LP and Black Diamond CLO 2005-1 Ltd.

(collectively, "Black Diamond"), by and through their undersigned counsel, hereby respond and

object, pursuant to Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, to the

First Set of Interrogatories of Yucaipa American Alliance Fund I, L.P. ("Yucaipa"), dated June

10, 2015 (the "Interrogatories"), as set forth below.

## GENERAL OBJECTIONS

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1.      Black Diamond objects to the Interrogatories, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Local Rules of the United States District Court for the District of Delaware (collectively, the "Local Rules"), or any other applicable rules or laws.  Black Diamond will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2.      Black Diamond objects to the Interrogatories to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.      Black Diamond objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4.      Black Diamond objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5.      Black Diamond objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on

2

discovery ("Privileged Materials").  Unless specifically stated otherwise, Black Diamond does

not intend disclose any Privileged Materials.  The inadvertent disclosure of any Privileged

Materials is not a waiver of any claim of privilege or other protection with respect to any

Privileged Materials or any other document or matter, all of which are expressly reserved.  Black

Diamond further reserves the right to obtain the return of such information, prohibit its use in

any manner, and/or demand the destruction of any such information inadvertently disclosed in

response to the Interrogatories.

6.    Black Diamond objects to the Interrogatories to the extent that they seek

disclosure of information not within Black Diamond's possession, custody, control, or

knowledge.

7.    Black Diamond objects to the Interrogatories to the extent that they

purport to request information that is public, already in Yucaipa's possession, or otherwise

available from sources to which Yucaipa also has access or sources that are more convenient,

less burdensome, and/or less expensive.

8.    Black Diamond objects to the Interrogatories to the extent that they seek

information pertaining to persons or entities other than Black Diamond.

9.    Black Diamond objects to the Interrogatories to the extent that they are

argumentative, lack foundation, or incorporate allegations and assertions that are disputed or

erroneous.  By responding and objecting to the Interrogatories, Black Diamond does not admit

the correctness of such assertions.

10.    Black Diamond objects to the Interrogatories to the extent that they imply

the existence of facts or circumstances that do not or did not exist, and to the extent that they

state or assume legal conclusions.  In providing these objections and responses to the

Interrogatories, Black Diamond does not admit the factual or legal premise of any Interrogatory.

 11. Black Diamond objects to the Interrogatories to the extent that they are not

limited to the claims or defenses in this action because they, for that reason alone, are overbroad

and unduly burdensome, seek information irrelevant to the subject matter of this action, and are

not calculated to lead to the discovery of admissible evidence.

 12. Black Diamond objects to the Interrogatories to the extent that they

impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on

Black Diamond.

 13. Black Diamond does not in any way waive or intend to waive, but rather

preserves and intends to preserve: (a) all rights to object on any ground to the competence,

relevance, materiality and admissibility of any document or information that may be produced in

response to the Interrogatories or the subject matter thereof; (b) all rights to object on any ground

to the use of any document or information that may be produced in response to the

Interrogatories or the subject matter thereof, in any subsequent proceeding, including the trial of

this or any other action; and (c) all rights to object on any ground to any request for further

responses to the Interrogatories or any other document request.

 14. Black Diamond objects to the definitions of the terms

"Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Person(s)," "Relate

to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome,

vague, and ambiguous.  To the extent possible, Black Diamond will construe these terms in

accordance with their ordinary meanings.

15.     Black Diamond's objections to the Interrogatories are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Black Diamond at a later date and are made without prejudice to Black Diamond's rights to revise, correct, clarify, supplement, modify, or amend its objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1

State each of the date(s) on which You acquired or sold any Allied First Lien Debt or Second Lien Debt.

### RESPONSE TO INTERROGATORY NO. 1

Black Diamond objects to this Interrogatory on the grounds that it is overbroad and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

### INTERROGATORY NO. 2

For each of the acquisitions or sales identified in Your response to Interrogatory Number 1, Identify the Person(s) from whom You acquired or sold such Debt.

### RESPONSE TO INTERROGATORY NO. 2

Black Diamond objects to this Interrogatory on the grounds that it is overbroad, confidential and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

### INTERROGATORY NO. 3

For each of the acquisitions or sales identified in Your response to Interrogatory Number 1, state the purchase price paid or received by You in connection with each acquisition or sale and the form of purchase price paid or received.

## RESPONSE TO INTERROGATORY NO. 3

Black Diamond objects to this Interrogatory on the grounds that it is overbroad and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 4

State all facts upon which You base Your contention in paragraph 40 of the Complaint that Yucaipa had the ability to exercise "complete control" of Allied's Board.

## RESPONSE TO INTERROGATORY NO. 4

Black Diamond objects to this Interrogatory on the grounds that it vague and ambiguous to the extent that the term "Board" is not defined. Black Diamond shall interpret the term "Board" to mean the board of directors of Allied.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

When Allied emerged from bankruptcy in May 2007, pursuant to Allied's Plan of Reorganization, Yucaipa had the right to appoint three of the five members of Allied's Board. In addition, Yucaipa had the right to appoint Allied's CEO, who would serve as the fourth member of the Board. Finally, the Plan of Reorganization required that the other fifth member of the Board be reasonably acceptable to Yucaipa. Pursuant to the Plan of Reorganization, Yucaipa appointed three of Allied's Board members and Allied's CEO. Upon information and belief, all the Board members that Yucaipa appointed were employees of, or otherwise controlled by, Yucaipa. Moreover, upon information and belief, the Board member who was not appointed by Yucaipa, but whose appointment was required to be reasonably acceptable to Yucaipa, was beholden to Yucaipa over the interests of Allied. In addition, Yucaipa controlled Allied's compensation of Mark Gendregske, who was Allied's CEO and also a member of Allied's

6

Board.  Lastly, Yucaipa owned a supermajority of Allied's equity, which gave Yucaipa the authority to remove directors.  As a result of the foregoing, Yucaipa had the ability to exercise complete control over Allied's Board.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 5

Describe in detail all reasons You claim You "took a back seat" in negotiating and drafting the terms of the Third Amendment to the First Lien Credit Agreement and "allowed" Yucaipa to lead the negotiations, as alleged in paragraph 52 of the Complaint.

## RESPONSE TO INTERROGATORY NO. 5

Black Diamond objects to this Interrogatory on the grounds that it vague and ambiguous to the extent that paragraph 52 of the Complaint does not allege that Black Diamond "took a back seat" in negotiating and drafting the terms of the Third Amendment to the First Lien Credit Agreement (the "Third Amendment") or that Black Diamond "allowed" Yucaipa to lead the negotiations for the Third Amendment.  Black Diamond shall interpret the term "You" as used in this Interrogatory to mean Allied.

Black Diamond objects to this Interrogatory on the grounds that it vague and ambiguous to the extent that it seeks "all reasons" that Black Diamond made a particular allegation, rather than seeking all facts upon which Black Diamond bases that allegation.  Black Diamond shall interpret this Interrogatory as seeking all facts upon which Black Diamond bases its allegation in paragraph 52 of the Complaint.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which

7

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Not long after Allied emerged from bankruptcy in 2007, upon information and belief, Yucaipa entered into discussions with CIT (which at the time was the Administrative Agent under the First Lien Credit Agreement) concerning a proposed amendment to the First Lien Credit Agreement that would permit Yucaipa to acquire First Lien Debt.  Upon information and belief, it was Yucaipa's idea – and not Allied's idea – to amend the First Lien Credit Agreement to permit Yucaipa to acquire First Lien Debt.  That proposed amendment to the First Lien Credit Agreement eventually became the Third Amendment.  Upon information and belief, Allied played no substantive role in the negotiations for the Third Amendment.  Rather, Allied allowed Yucaipa to negotiate the terms of the Third Amendment.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 6

State all facts upon which You base Your contention in paragraph 56 of the Complaint that Yucaipa had a scheme to take total control over the First Lien Credit Agreement to the detriment of the legitimate First Lien Lenders.

**RESPONSE TO INTERROGATORY NO. 6**

   Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

   Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

   Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

   Upon information and belief, Yucaipa had a scheme to take total control over the First Lien Credit Agreement to the detriment of the legitimate First Lien Lenders.  Yucaipa's scheme can be reasonably inferred from the facts and circumstances pertaining to Yucaipa's improper acquisition of First Lien Debt from ComVest and its self-proclaimed status as the purported Requisite Lender, including, but not limited to, the following:

   When Allied emerged from bankruptcy in 2007, Yucaipa became the majority equity owner of Allied, and Allied entered into the First Lien Credit Agreement, which prohibited Yucaipa from acquiring any First Lien Debt.  Thereafter, by Yucaipa's own admission, in 2008, "the Great Recession caused a severe contraction in Allied's revenue and margins."  In the midst of the so-called Great Recession in 2008, Yucaipa began negotiations for the Third Amendment to allow Yucaipa to acquire First Lien Debt for the first time, but under severe restrictions which prevented Yucaipa from ever gaining control over the First Lien Credit Facility.  Yucaipa has admitted that it "never would have acquired any first lien debt while the

Third Amendment's restrictions and conditions limiting Yucaipa's potential ownership rights existed."

In August 2008, Yucaipa – through its control of Allied's Board – caused Allied to go into material default under the First Lien Credit Agreement.  In light of Allied's material defaults under the First Lien Credit Agreement, the First Lien Lenders could have exercised their rights and remedies under the First Lien Credit Agreement, which would have adversely affected the value of Yucaipa's equity in Allied.  Upon information and belief, to prevent the First Lien Lenders from exercising their rights and remedies under the First Lien Credit Agreement in order to protect its equity in Allied, Yucaipa hatched a scheme to seize control over the First Lien Credit Facility, which would prevent the First Lien Lenders from exercising their rights and remedies under the First Lien Credit Agreement.  To effectuate this scheme, Yucaipa would acquire a majority of First Lien Debt, even though it was prohibited from doing so under the First Lien Credit Agreement and Third Amendment thereto.

As part of its scheme to acquire a majority of First Lien Debt to protect its equity interest in Allied, in early 2009, Yucaipa retained Goldman Sachs to launch a tender offer to the First Lien Lenders to acquire a majority of First Lien Debt.  As a condition to the acceptance of the tender offer, Yucaipa required any tendering First Lien Lender to execute an amendment to the First Lien Credit Agreement that would have removed all of the limitations and restrictions on Yucaipa's ability to acquire and vote First Lien Debt under the Third Amendment.  Thus, if the tender offer had been successful, the First Lien Credit Agreement would have been amended to permit Yucaipa to acquire an unlimited amount of First Lien Debt without any limitations or restrictions and to become the Requisite Lender.  The First Lien Lenders, however, did not accept Yucaipa's offer to tender their First Lien Debt.

After Yucaipa's tender offer had failed, Yucaipa began negotiations with ComVest (at the time, the majority holder of the First Lien Debt) to purchase ComVest's First Lien Debt holdings.  On August 21, 2009, in contravention of the terms of the Third Amendment, Yucaipa purchased a total of $145,112,547.06 of First Lien Debt from ComVest. At the same time, as a condition to closing Yucaipa's purchase of First Lien Debt from ComVest, Allied – at Yucaipa's direction – executed the Purported Fourth Amendment, which (if valid) would have eliminated all of the Third Amendment's restrictions on Yucaipa's ability to acquire and vote First Lien Debt and would have allowed Yucaipa to become the Requisite Lender.  Upon purchasing First Lien Debt from ComVest and causing the execution of the Purported Fourth Amendment, Yucaipa declared itself the Requisite Lender.

Finally, by purporting to be the Requisite Lender, Yucaipa completed its scheme to take total control over the First Lien Credit Agreement to the detriment of the legitimate First Lien Lenders.  By virtue of being the purported Requisite Lender, Yucaipa (i) prevented the First Lien Lenders from demanding Allied's compliance with the terms of the First Lien Credit Agreement, including excusing Allied's failure to pay required principal and interest when due; (ii) protected its equity investment in Allied from getting wiped out by precluding a balance sheet restructuring during the Great Recession and the near collapse of the auto industry, which any other reasonable First Lien Lender (that did not own a supermajority of Allied's equity) would unquestionably pursue; (iii) derailed a sale of Allied's assets to Jack Cooper by demanding a disproportionate share of the consideration that Jack Cooper was willing to pay; (iv) caused Allied and the First Lien Lenders (including Black Diamond and Spectrum) to incur millions of dollars in unnecessary legal costs in litigation in Georgia state court, New York state court and Bankruptcy Court in order to challenge the Yucaipa's improper assertion of Requisite

Lender status and the validity of the Purported Fourth Amendment; and (v) delayed Allied's

ability to consummate a Section 363 sale in the bankruptcy case, which in turn caused Allied and

the First Lien Lenders (including Black Diamond and Spectrum) to incur millions of dollars in

additional unnecessary legal costs.

Black Diamond's investigation through discovery is ongoing and continues and

Black Diamond expressly reserves its right to supplement and/or modify this response as it

deems appropriate.

## INTERROGATORY NO. 7

State all facts to support Your contention in paragraph 18 of the Complaint that Yucaipa was
protecting its equity by buying the First Lien Debt from ComVest.

## RESPONSE TO INTERROGATORY NO. 7

Black Diamond objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less

expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks

information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific

Objections, Black Diamond refers to its response to Interrogatory No. 6.

**INTERROGATORY NO. 8**

Describe in detail Your understanding of the value of Yucaipa's equity in Allied as of August 21, 2009.

**RESPONSE TO INTERROGATORY NO. 8**

Black Diamond objects to this Interrogatory on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Black Diamond further objects to this Interrogatory on the grounds that it is premature to the extent that it is properly the subject of expert discovery, not fact discovery.

**INTERROGATORY NO. 9**

State the value You assigned Your First Lien Debt as of August 21, 2009.

**RESPONSE TO INTERROGATORY NO. 9**

Black Diamond objects to this Interrogatory on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

Black Diamond further objects to this Interrogatory on the grounds that it is premature to the extent that it is properly the subject of expert discovery, not fact discovery.

**INTERROGATORY NO. 10**

State all facts upon which You base Your contention in paragraph 65 of the Complaint that Yucaipa stonewalled ComVest's efforts to pursue a sale or restructuring.

**RESPONSE TO INTERROGATORY NO. 10**

Black Diamond objects to this Interrogatory on the grounds that it is vague and ambiguous.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Upon information and belief, when ComVest was the Requisite Lender, ComVest was interested in pursuing a restructuring of Allied and its outstanding debt.  In the spring and summer of 2009, ComVest repeatedly approached Allied in an effort to engage in discussions concerning a potential conversion of the outstanding First Lien Debt into equity or to have Allied pursue a sale of its assets.  However, Yucaipa's hand-picked CEO, Mr. Gendregske, along with the rest of the Yucaipa-dominated Board, refused to engage in restructuring discussions, thus forcing ComVest to negotiate directly with Yucaipa.  Yucaipa, however, was also not interested in selling Allied's assets or restructuring its debt.  Instead, Yucaipa was only interested in buying ComVest's First Lien Debt to gain control over Allied's First Lien Debt.

14

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 11

State all facts upon which You base Your contention in paragraph 65 of the Complaint that Yucaipa withheld any payment of principal or interest due under the First Lien Credit Agreement, including Identifying each payment of principal or interest purportedly withheld and in what capacity and with what authority Yucaipa purportedly withheld any such payment.

## RESPONSE TO INTERROGATORY NO. 11

Black Diamond objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

As Yucaipa itself admits, Allied "stopped making required payments on its outstanding debt beginning in August 2009." Upon information and belief, Yucaipa – through its control of Allied's board of directors – caused Allied to stop making such payments of principal or interest due under the First Lien Credit Agreement beginning in August 2009.

For instance, at the August 3, 2009 meeting of Allied's board of directors, Derex Walker (a Yucaipa employee who was appointed by Yucaipa to be a member of Allied's board of directors) advised Allied's board to not make the $4.8 million interest payment due to the First Lien Lenders because "it was critical that the Company have adequate liquidity to provide a

sufficient runway for negotiations" with ComVest and that "based upon his conversations with

ComVest, he did not believe that failure to make the payment would lead to precipitous action by

the lenders or anyone else."  Mr. Walker further advised Allied's board that "he expected

ComVest, as the Requisite Lenders, would not seek to exercise any rights and would not allow

others to do so given the current state of negotiations between ComVest and Yucaipa."  Mr.

Walker then made a motion that Allied forgo the quarterly interest payment due on August 4,

2006.  The rest of Allied's board members unanimously carried that motion.

       Upon information and belief, since that August 3, 2009 board meeting, Allied has

not made any payments of interest or principal due under the First Lien Credit Agreement.

       Black Diamond's investigation through discovery is ongoing and continues and

Black Diamond expressly reserves its right to supplement and/or modify this response as it

deems appropriate.

## INTERROGATORY NO. 12

State all facts upon which You base Your contention in paragraph 65 of the Complaint that the
unanimous vote at the August 3, 2009 Allied Board meeting to forego the quarterly interest
payment was made in order to facilitate Yucaipa's interests in negotiations with ComVest.

## RESPONSE TO INTERROGATORY NO. 12

       Black Diamond objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less

expensive.

       Black Diamond further objects to this Interrogatory on the grounds that it seeks

information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

At the August 3, 2009 meeting of Allied's board of directors, Derex Walker (a Yucaipa employee who was appointed by Yucaipa to be a member of Allied's board of directors) advised Allied's board to not make the $4.8 million interest payment due to the First Lien Lenders because "it was critical that the Company have adequate liquidity to provide a sufficient runway for negotiations" with ComVest.  Upon receiving that advice from Mr. Walker, Allied's board of directors unanimously voted to forego the quarterly interest payment.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 13

State all facts upon which You base Your contention in paragraph 78 of the Complaint that You were prevented from exercising any rights or remedies under the First Lien Credit Agreement after August 21, 2009.

## RESPONSE TO INTERROGATORY NO. 13

Subject to and without waiving the foregoing General Objections, Black Diamond responds as follows:

After August 21, 2009, Yucaipa purported to be the Requisite Lender pursuant to the invalid Purported Fourth Amendment to the First Lien Credit Agreement.  Because Yucaipa purported to be the Requisite Lender, the other First Lien Lenders were unable to exercise any of their rights and remedies under the First Lien Credit Agreement that could only be exercised by the Requisite Lender.  In its capacity as the purported Requisite Lender, Yucaipa failed to exercise any of the First Lien Lenders' rights and remedies under the First Lien Credit

17

Agreement notwithstanding the occurrence and continuance of Defaults and Events of Default

(including payment defaults).

Black Diamond's investigation through discovery is ongoing and continues and

Black Diamond expressly reserves its right to supplement and/or modify this response as it

deems appropriate.

## INTERROGATORY NO. 14

Identify every reason You submitted invoices for payment to Allied for work performed by
Ropes & Gray LLP on Your behalf in 2009 in connection with the investigation of "creditor
remedies."

## RESPONSE TO INTERROGATORY NO. 14

Black Diamond objects to this Interrogatory on the grounds that it is vague and

ambiguous to the extent that the phrase "creditor remedies" is undefined and susceptible of

multiple interpretations.

Black Diamond further objects to this Interrogatory on the grounds that it lacks

foundation.

Black Diamond further objects to this Interrogatory on the grounds that it is

neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the

discovery of admissible evidence.

## INTERROGATORY NO. 15

Describe in detail all reasons You waited to file the involuntary bankruptcy petitions against
Allied in the Bankruptcy Court for the District of Delaware until May 2012.

## RESPONSE TO INTERROGATORY NO. 15

Black Diamond objects to this Interrogatory on the grounds that the phrase

"waited to file" is vague, ambiguous and lacks foundation.

18

Black Diamond further objects to this Interrogatory because it does not seek facts, but rather seeks the thought processes of numerous individuals.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 16

Describe in detail all reasons You instructed CIT to refrain from exercising its remedies in December 2008 when CIT attempted to do so as an agent on the First Lien Debt.

## RESPONSE TO INTERROGATORY NO. 16

Black Diamond objects to this Interrogatory on the grounds that it is vague, ambiguous and unintelligible to the extent that Black Diamond had no authority to instruct CIT to take or refrain from taking any action as an agent on the First Lien Debt in December 2008.

Black Diamond objects to this Interrogatory on the grounds that it lacks foundation.

Black Diamond further objects to this Interrogatory on the grounds that the phrase "refrain from exercising its remedies" is vague and ambiguous.

Black Diamond further objects to this Interrogatory on the grounds that it is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 17

Identify every instance in which You claim that Allied attempted to retain excess cash in violation of the terms of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 17

Black Diamond objects to this Interrogatory on the grounds that it is vague and ambiguous.

19

Black Diamond further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Black Diamond further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Black Diamond.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

At an August 3, 2009 meeting of Allied's board of directors (the "Board") – which was called for the specific purpose of discussing Allied's liquidity, especially with respect to the approximately $4.8 million interest payment due to the First Lien Lenders the next day – Derex Walker advised the Board not to make the $4.8 million interest payment, even though Allied plainly had sufficient liquidity to make the payment.  At that meeting, Mr. Walker updated the Board on the status of Yucaipa's negotiations with ComVest, stating that Yucaipa believed a deal could be reached and that not making the required interest payment would help Yucaipa in its negotiations by putting pressure on ComVest to sell its First Lien Debt to Yucaipa.

Mr. Walker further advised the Board that based upon his conversations with ComVest, he did not believe that failure to make the required interest payment would lead to precipitous action by ComVest or any of the other First Lien Lenders because ComVest, as the Requisite Lender, would not seek to exercise any rights and would not allow the other First Lien Lenders to do so given the current state of negotiations between ComVest and Yucaipa.

Notwithstanding the fact that Allied had sufficient liquidity to pay debt service under the First Lien Facility, in order to facilitate Yucaipa's interests in negotiations with

ComVest, Mr. Walker made a motion to the Board that Allied forego the quarterly interest payment that Allied owed the First Lien Lenders on August 4, 2009.  The Board carried that motion unanimously.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 18

Identify every Communication between You and CIT regarding the Fourth Amendment.

## RESPONSE TO INTERROGATORY NO. 18

Black Diamond objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome.

Subject to and without waiving the foregoing General Objections and Specific Objections, Black Diamond responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Black Diamond refers to the following documents that have been produced through discovery in this action, which Black Diamond, upon a reasonable inquiry, has identified as containing communications between Black Diamond and CIT regarding the Fourth Amendment:  BDCM0030503.

Black Diamond further states that Black Diamond and CIT may have had other oral or written communications regarding the Purported Fourth Amendment.  However, the employees of Black Diamond do not have a specific recollection of whether and when such communications occurred.

Black Diamond's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 19

Identify every Communication between You and CIT regarding the Georgia Action.

## RESPONSE TO INTERROGATORY NO. 19

Black Diamond objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

Dated:  August 31, 2015
      Wilmington, Delaware        **LANDIS RATH & COBB LLP**


                              *__/s/ Kerri K. Mumford*
                              Adam G. Landis (No. 3407)
                              Kerri K. Mumford (No. 4186)
                              919 Market Street, Suite 1800
                              Wilmington, Delaware 19801
                              Telephone: (302) 467-4400
                              Facsimile: (302) 467-4450


                              -and-

                              Adam C. Harris
                              David Hillman
                              Robert J. Ward
                              **SCHULTE ROTH & ZABEL LLP**
                              919 Third Avenue
                              New York, New York 10022
                              Telephone: (212) 756-2000
                              Facsimile: (212) 593-5955


                              *Counsel to BDCM Opportunity Fund I, LP and Black Diamond CLO 2005-1 Ltd.*

EXHIBIT 15.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**SPECTRUM INVESTMENT PARTNERS, L.P.'S RESPONSES AND OBJECTIONS TO**
**YUCAIPA'S FIRST SET OF INTERROGATORIES**

Spectrum Investment Partners, L.P. ("Spectrum"), by and through its undersigned

counsel, hereby responds and objects, pursuant to Rules 7026 and 7033 of the Federal Rules of

Bankruptcy Procedure, to the First Set of Interrogatories of Yucaipa American Alliance Fund I,

L.P. ("Yucaipa"), dated June 10, 2015 (the "Interrogatories"), as set forth below.

## GENERAL OBJECTIONS

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1.     Spectrum objects to the Interrogatories, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Local Rules of the United States District Court for the District of Delaware (collectively, the "Local Rules"), or any other applicable rules or laws.  Spectrum will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2.     Spectrum objects to the Interrogatories to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.     Spectrum objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4.     Spectrum objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5.     Spectrum objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on discovery ("Privileged

2

Materials").  Unless specifically stated otherwise, Spectrum does not intend disclose any

Privileged Materials.  The inadvertent disclosure of any Privileged Materials is not a waiver of

any claim of privilege or other protection with respect to any Privileged Materials or any other

document or matter, all of which are expressly reserved.  Spectrum further reserves the right to

obtain the return of such information, prohibit its use in any manner, and/or demand the

destruction of any such information inadvertently disclosed in response to the Interrogatories.

6.      Spectrum objects to the Interrogatories to the extent that they seek

disclosure of information not within Spectrum's possession, custody, control, or knowledge.

7.      Spectrum objects to the Interrogatories to the extent that they purport to

request information that is public, already in Yucaipa's possession, or otherwise available from

sources to which Yucaipa also has access or sources that are more convenient, less burdensome,

and/or less expensive.

8.      Spectrum objects to the Interrogatories to the extent that they seek

information pertaining to persons or entities other than Spectrum.

9.      Spectrum objects to the Interrogatories to the extent that they are

argumentative, lack foundation, or incorporate allegations and assertions that are disputed or

erroneous.  By responding and objecting to the Interrogatories, Spectrum does not admit the

correctness of such assertions.

10.     Spectrum objects to the Interrogatories to the extent that they imply the

existence of facts or circumstances that do not or did not exist, and to the extent that they state or

assume legal conclusions.  In providing these objections and responses to the Interrogatories,

Spectrum does not admit the factual or legal premise of any Interrogatory.

11.     Spectrum objects to the Interrogatories to the extent that they are not limited to the claims or defenses in this action because they, for that reason alone, are overbroad and unduly burdensome, seek information irrelevant to the subject matter of this action, and are not calculated to lead to the discovery of admissible evidence.

12.     Spectrum objects to the Interrogatories to the extent that they impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on Spectrum.

13.     Spectrum does not in any way waive or intend to waive, but rather preserves and intends to preserve: (a) all rights to object on any ground to the competence, relevance, materiality and admissibility of any document or information that may be produced in response to the Interrogatories or the subject matter thereof; (b) all rights to object on any ground to the use of any document or information that may be produced in response to the Interrogatories or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (c) all rights to object on any ground to any request for further responses to the Interrogatories or any other document request.

14.     Spectrum objects to the definitions of the terms "Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Person(s)," "Relate to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome, vague, and ambiguous.  To the extent possible, Spectrum will construe these terms in accordance with their ordinary meanings.

15.     Spectrum's objections to the Interrogatories are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Spectrum at a later date and are made without

4

prejudice to Spectrum's rights to revise, correct, clarify, supplement, modify, or amend its

objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1

State each of the date(s) on which You acquired or sold any Allied First Lien Debt or Second
Lien Debt.

### RESPONSE TO INTERROGATORY NO. 1

Spectrum objects to this Interrogatory on the grounds that it is overbroad and

neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the

discovery of admissible evidence.

### INTERROGATORY NO. 2

For each of the acquisitions or sales identified in Your response to Interrogatory Number 1,
Identify the Person(s) from whom You acquired or sold such Debt.

### RESPONSE TO INTERROGATORY NO. 2

Spectrum objects to this Interrogatory on the grounds that it is overbroad,

confidential and neither relevant to the subject matter of this proceeding nor reasonably

calculated to lead to the discovery of admissible evidence.

### INTERROGATORY NO. 3

For each of the acquisitions or sales identified in Your response to Interrogatory Number 1, state
the purchase price paid or received by You in connection with each acquisition or sale and the
form of purchase price paid or received.

### RESPONSE TO INTERROGATORY NO. 3

Spectrum objects to this Interrogatory on the grounds that it is overbroad and

neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the

discovery of admissible evidence.

**INTERROGATORY NO. 4**

State all facts upon which You base Your contention in paragraph 40 of the Complaint that Yucaipa had the ability to exercise "complete control" of Allied's Board.

**RESPONSE TO INTERROGATORY NO. 4**

Spectrum objects to this Interrogatory on the grounds that it vague and ambiguous to the extent that the term "Board" is not defined. Spectrum shall interpret the term "Board" to mean the board of directors of Allied.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

When Allied emerged from bankruptcy in May 2007, pursuant to Allied's Plan of Reorganization, Yucaipa had the right to appoint three of the five members of Allied's Board. In addition, Yucaipa had the right to appoint Allied's CEO, who would serve as the fourth member of the Board. Finally, the Plan of Reorganization required that the other fifth member of the Board be reasonably acceptable to Yucaipa. Pursuant to the Plan of Reorganization, Yucaipa appointed three of Allied's Board members and Allied's CEO. Upon information and belief, all the Board members that Yucaipa appointed were employees of, or otherwise controlled by, Yucaipa. Moreover, upon information and belief, the Board member who was not appointed by Yucaipa, but whose appointment was required to be reasonably acceptable to Yucaipa, was beholden to Yucaipa over the interests of Allied. In addition, Yucaipa controlled Allied's compensation of Mark Gendregske, who was Allied's CEO and also a member of Allied's Board. Lastly, Yucaipa owned a supermajority of Allied's equity, which gave Yucaipa the authority to remove directors. As a result of the foregoing, Yucaipa had the ability to exercise complete control over Allied's Board.

6

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 5

Describe in detail all reasons You claim You "took a back seat" in negotiating and drafting the terms of the Third Amendment to the First Lien Credit Agreement and "allowed" Yucaipa to lead the negotiations, as alleged in paragraph 52 of the Complaint.

## RESPONSE TO INTERROGATORY NO. 5

Spectrum objects to this Interrogatory on the grounds that it vague and ambiguous to the extent that paragraph 52 of the Complaint does not allege that Spectrum "took a back seat" in negotiating and drafting the terms of the Third Amendment to the First Lien Credit Agreement (the "Third Amendment") or that Spectrum "allowed" Yucaipa to lead the negotiations for the Third Amendment.  Spectrum shall interpret the term "You" as used in this Interrogatory to mean Allied.

Spectrum objects to this Interrogatory on the grounds that it vague and ambiguous to the extent that it seeks "all reasons" that Spectrum made a particular allegation, rather than seeking all facts upon which Spectrum bases that allegation.  Spectrum shall interpret this Interrogatory as seeking all facts upon which Spectrum bases its allegation in paragraph 52 of the Complaint.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Not long after Allied emerged from bankruptcy in 2007, upon information and belief, Yucaipa entered into discussions with CIT (which at the time was the Administrative Agent under the First Lien Credit Agreement) concerning a proposed amendment to the First Lien Credit Agreement that would permit Yucaipa to acquire First Lien Debt. Upon information and belief, it was Yucaipa's idea – and not Allied's idea – to amend the First Lien Credit Agreement to permit Yucaipa to acquire First Lien Debt. That proposed amendment to the First Lien Credit Agreement eventually became the Third Amendment. Upon information and belief, Allied played no substantive role in the negotiations for the Third Amendment. Rather, Allied allowed Yucaipa to negotiate the terms of the Third Amendment.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 6

State all facts upon which You base Your contention in paragraph 56 of the Complaint that Yucaipa had a scheme to take total control over the First Lien Credit Agreement to the detriment of the legitimate First Lien Lenders.

## RESPONSE TO INTERROGATORY NO. 6

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Upon information and belief, Yucaipa had a scheme to take total control over the First Lien Credit Agreement to the detriment of the legitimate First Lien Lenders.  Yucaipa's scheme can be reasonably inferred from the facts and circumstances pertaining to Yucaipa's improper acquisition of First Lien Debt from ComVest and its self-proclaimed status as the purported Requisite Lender, including, but not limited to, the following:

When Allied emerged from bankruptcy in 2007, Yucaipa became the majority equity owner of Allied, and Allied entered into the First Lien Credit Agreement, which prohibited Yucaipa from acquiring any First Lien Debt.  Thereafter, by Yucaipa's own admission, in 2008, "the Great Recession caused a severe contraction in Allied's revenue and margins."  In the midst of the so-called Great Recession in 2008, Yucaipa began negotiations for the Third Amendment to allow Yucaipa to acquire First Lien Debt for the first time, but under severe restrictions which prevented Yucaipa from ever gaining control over the First Lien Credit Facility.  Yucaipa has admitted that it "never would have acquired any first lien debt while the Third Amendment's restrictions and conditions limiting Yucaipa's potential ownership rights existed."

In August 2008, Yucaipa – through its control of Allied's Board – caused Allied to go into material default under the First Lien Credit Agreement.  In light of Allied's material defaults under the First Lien Credit Agreement, the First Lien Lenders could have exercised their rights and remedies under the First Lien Credit Agreement, which would have adversely affected

9

the value of Yucaipa's equity in Allied.  Upon information and belief, to prevent the First Lien

Lenders from exercising their rights and remedies under the First Lien Credit Agreement in order

to protect its equity in Allied, Yucaipa hatched a scheme to seize control over the First Lien

Credit Facility, which would prevent the First Lien Lenders from exercising their rights and

remedies under the First Lien Credit Agreement.  To effectuate this scheme, Yucaipa would

acquire a majority of First Lien Debt, even though it was prohibited from doing so under the

First Lien Credit Agreement and Third Amendment thereto.

   As part of its scheme to acquire a majority of First Lien Debt to protect its equity

interest in Allied, in early 2009, Yucaipa retained Goldman Sachs to launch a tender offer to the

First Lien Lenders to acquire a majority of First Lien Debt.  As a condition to the acceptance of

the tender offer, Yucaipa required any tendering First Lien Lender to execute an amendment to

the First Lien Credit Agreement that would have removed all of the limitations and restrictions

on Yucaipa's ability to acquire and vote First Lien Debt under the Third Amendment.  Thus, if

the tender offer had been successful, the First Lien Credit Agreement would have been amended

to permit Yucaipa to acquire an unlimited amount of First Lien Debt without any limitations or

restrictions and to become the Requisite Lender.  The First Lien Lenders, however, did not

accept Yucaipa's offer to tender their First Lien Debt.

   After Yucaipa's tender offer had failed, Yucaipa began negotiations with

ComVest (at the time, the majority holder of the First Lien Debt) to purchase ComVest's First

Lien Debt holdings.  On August 21, 2009, in contravention of the terms of the Third

Amendment, Yucaipa purchased a total of $145,112,547.06 of First Lien Debt from ComVest.

At the same time, as a condition to closing Yucaipa's purchase of First Lien Debt from

ComVest, Allied – at Yucaipa's direction – executed the Purported Fourth Amendment, which

(if valid) would have eliminated all of the Third Amendment's restrictions on Yucaipa's ability to acquire and vote First Lien Debt and would have allowed Yucaipa to become the Requisite Lender.  Upon purchasing First Lien Debt from ComVest and causing the execution of the Purported Fourth Amendment, Yucaipa declared itself the Requisite Lender.

Finally, by purporting to be the Requisite Lender, Yucaipa completed its scheme to take total control over the First Lien Credit Agreement to the detriment of the legitimate First Lien Lenders.  By virtue of being the purported Requisite Lender, Yucaipa (i) prevented the First Lien Lenders from demanding Allied's compliance with the terms of the First Lien Credit Agreement, including excusing Allied's failure to pay required principal and interest when due; (ii) protected its equity investment in Allied from getting wiped out by precluding a balance sheet restructuring during the Great Recession and the near collapse of the auto industry, which any other reasonable First Lien Lender (that did not own a supermajority of Allied's equity) would unquestionably pursue; (iii) derailed a sale of Allied's assets to Jack Cooper by demanding a disproportionate share of the consideration that Jack Cooper was willing to pay; (iv) caused Allied and the First Lien Lenders (including Black Diamond and Spectrum) to incur millions of dollars in unnecessary legal costs in litigation in Georgia state court, New York state court and Bankruptcy Court in order to challenge the Yucaipa's improper assertion of Requisite Lender status and the validity of the Purported Fourth Amendment; and (v) delayed Allied's ability to consummate a Section 363 sale in the bankruptcy case, which in turn caused Allied and the First Lien Lenders (including Black Diamond and Spectrum) to incur millions of dollars in additional unnecessary legal costs.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 7

State all facts to support Your contention in paragraph 18 of the Complaint that Yucaipa was protecting its equity by buying the First Lien Debt from ComVest.

## RESPONSE TO INTERROGATORY NO. 7

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum refers to its response to Interrogatory No. 6.

## INTERROGATORY NO. 8

Describe in detail Your understanding of the value of Yucaipa's equity in Allied as of August 21, 2009.

## RESPONSE TO INTERROGATORY NO. 8

Spectrum objects to this Interrogatory on the grounds that it is vague, ambiguous, overbroad, and unduly burdensome.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Spectrum further objects to this Interrogatory on the grounds that it is premature to the extent that it is properly the subject of expert discovery, not fact discovery.

## INTERROGATORY NO. 9

State the value You assigned Your First Lien Debt as of August 21, 2009.

## RESPONSE TO INTERROGATORY NO. 9

Spectrum objects to this Interrogatory on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

Spectrum further objects to this Interrogatory on the grounds that it is premature to the extent that it is properly the subject of expert discovery, not fact discovery.

## INTERROGATORY NO. 10

State all facts upon which You base Your contention in paragraph 65 of the Complaint that Yucaipa stonewalled ComVest's efforts to pursue a sale or restructuring.

## RESPONSE TO INTERROGATORY NO. 10

Spectrum objects to this Interrogatory on the grounds that it is vague and ambiguous.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

13

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Upon information and belief, when ComVest was the Requisite Lender, ComVest was interested in pursuing a restructuring of Allied and its outstanding debt. In the spring and summer of 2009, ComVest repeatedly approached Allied in an effort to engage in discussions concerning a potential conversion of the outstanding First Lien Debt into equity or to have Allied pursue a sale of its assets. However, Yucaipa's hand-picked CEO, Mr. Gendregske, along with the rest of the Yucaipa-dominated Board, refused to engage in restructuring discussions, thus forcing ComVest to negotiate directly with Yucaipa. Yucaipa, however, was also not interested in selling Allied's assets or restructuring its debt. Instead, Yucaipa was only interested in buying ComVest's First Lien Debt to gain control over Allied's First Lien Debt.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 11

State all facts upon which You base Your contention in paragraph 65 of the Complaint that Yucaipa withheld any payment of principal or interest due under the First Lien Credit Agreement, including Identifying each payment of principal or interest purportedly withheld and in what capacity and with what authority Yucaipa purportedly withheld any such payment.

## RESPONSE TO INTERROGATORY NO. 11

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

14

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

As Yucaipa itself admits, Allied "stopped making required payments on its outstanding debt beginning in August 2009." Upon information and belief, Yucaipa – through its control of Allied's board of directors – caused Allied to stop making such payments of principal or interest due under the First Lien Credit Agreement beginning in August 2009.

For instance, at the August 3, 2009 meeting of Allied's board of directors, Derex Walker (a Yucaipa employee who was appointed by Yucaipa to be a member of Allied's board of directors) advised Allied's board to not make the $4.8 million interest payment due to the First Lien Lenders because "it was critical that the Company have adequate liquidity to provide a sufficient runway for negotiations" with ComVest and that "based upon his conversations with ComVest, he did not believe that failure to make the payment would lead to precipitous action by the lenders or anyone else." Mr. Walker further advised Allied's board that "he expected ComVest, as the Requisite Lenders, would not seek to exercise any rights and would not allow others to do so given the current state of negotiations between ComVest and Yucaipa." Mr. Walker then made a motion that Allied forgo the quarterly interest payment due on August 4, 2006. The rest of Allied's board members unanimously carried that motion.

Upon information and belief, since that August 3, 2009 board meeting, Allied has not made any payments of interest or principal due under the First Lien Credit Agreement.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

15

**INTERROGATORY NO. 12**

State all facts upon which You base Your contention in paragraph 65 of the Complaint that the unanimous vote at the August 3, 2009 Allied Board meeting to forego the quarterly interest payment was made in order to facilitate Yucaipa's interests in negotiations with ComVest.

**RESPONSE TO INTERROGATORY NO. 12**

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

At the August 3, 2009 meeting of Allied's board of directors, Derex Walker (a Yucaipa employee who was appointed by Yucaipa to be a member of Allied's board of directors) advised Allied's board to not make the $4.8 million interest payment due to the First Lien Lenders because "it was critical that the Company have adequate liquidity to provide a sufficient runway for negotiations" with ComVest.  Upon receiving that advice from Mr. Walker, Allied's board of directors unanimously voted to forego the quarterly interest payment.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**INTERROGATORY NO. 13**

State all facts upon which You base Your contention in paragraph 78 of the Complaint that You were prevented from exercising any rights or remedies under the First Lien Credit Agreement after August 21, 2009.

16

**RESPONSE TO INTERROGATORY NO. 13**

Subject to and without waiving the foregoing General Objections, Spectrum responds as follows:

After August 21, 2009, Yucaipa purported to be the Requisite Lender pursuant to the invalid Purported Fourth Amendment to the First Lien Credit Agreement.  Because Yucaipa purported to be the Requisite Lender, the other First Lien Lenders were unable to exercise any of their rights and remedies under the First Lien Credit Agreement that could only be exercised by the Requisite Lender.  In its capacity as the purported Requisite Lender, Yucaipa failed to exercise any of the First Lien Lenders' rights and remedies under the First Lien Credit Agreement notwithstanding the occurrence and continuance of Defaults and Events of Default (including payment defaults).

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**INTERROGATORY NO. 14**

Identify every reason You submitted invoices for payment to Allied for work performed by Ropes & Gray LLP on Your behalf in 2009 in connection with the investigation of "creditor remedies."

**RESPONSE TO INTERROGATORY NO. 14**

Spectrum objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the phrase "creditor remedies" is undefined and susceptible of multiple interpretations.

Spectrum further objects to this Interrogatory on the grounds that it lacks foundation.

17

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 15

Describe in detail all reasons You waited to file the involuntary bankruptcy petitions against Allied in the Bankruptcy Court for the District of Delaware until May 2012.

## RESPONSE TO INTERROGATORY NO. 15

Spectrum objects to this Interrogatory on the grounds that the phrase "waited to file" is vague, ambiguous and lacks foundation.

Spectrum further objects to this Interrogatory because it does not seek facts, but rather seeks the thought processes of numerous individuals.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 16

Describe in detail all reasons You instructed CIT to refrain from exercising its remedies in December 2008 when CIT attempted to do so as an agent on the First Lien Debt.

## RESPONSE TO INTERROGATORY NO. 16

Spectrum objects to this Interrogatory on the grounds that it is vague, ambiguous and unintelligible to the extent that Spectrum had no authority to instruct CIT to take or refrain from taking any action as an agent on the First Lien Debt in December 2008.

Spectrum further objects to this Interrogatory on the grounds that it lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that the phrase "refrain from exercising its remedies" is vague and ambiguous.

18

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 17

Identify every instance in which You claim that Allied attempted to retain excess cash in violation of the terms of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 17

Spectrum objects to this Interrogatory on the grounds that it is vague and ambiguous.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

At an August 3, 2009 meeting of Allied's board of directors (the "Board") – which was called for the specific purpose of discussing Allied's liquidity, especially with respect to the approximately $4.8 million interest payment due to the First Lien Lenders the next day – Derex Walker advised the Board not to make the $4.8 million interest payment, even though Allied plainly had sufficient liquidity to make the payment. At that meeting, Mr. Walker updated the Board on the status of Yucaipa's negotiations with ComVest, stating that Yucaipa

believed a deal could be reached and that not making the required interest payment would help Yucaipa in its negotiations by putting pressure on ComVest to sell its First Lien Debt to Yucaipa.

Mr. Walker further advised the Board that based upon his conversations with ComVest, he did not believe that failure to make the required interest payment would lead to precipitous action by ComVest or any of the other First Lien Lenders because ComVest, as the Requisite Lender, would not seek to exercise any rights and would not allow the other First Lien Lenders to do so given the current state of negotiations between ComVest and Yucaipa.

Notwithstanding the fact that Allied had sufficient liquidity to pay debt service under the First Lien Facility, in order to facilitate Yucaipa's interests in negotiations with ComVest, Mr. Walker made a motion to the Board that Allied forego the quarterly interest payment that Allied owed the First Lien Lenders on August 4, 2009.  The Board carried that motion unanimously.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**INTERROGATORY NO. 18**

Identify every Communication between You and CIT regarding the Fourth Amendment.

**RESPONSE TO INTERROGATORY NO. 18**

Spectrum objects to this Interrogatory on the grounds that overbroad and unduly burdensome.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

20

Pursuant to Federal Rule of Civil Procedure 33(d), Spectrum responds to this Interrogatory by referring to the following documents that have been produced through discovery in this action:

SPEC 0011567
SPEC 0011569
SPEC 0010844
SPEC 0003526
SPEC 0003539
SPEC 0006626
SPEC 0008339

Spectrum further states that employees of Spectrum and employees of CIT may have had communications regarding the Purported Fourth Amendment through telephone calls and/or in person meetings.  However, the employees of Spectrum do not have a specific recollection of whether and when such communications occurred.

**INTERROGATORY NO. 19**

Identify every Communication between You and CIT regarding the Georgia Action.

**RESPONSE TO INTERROGATORY NO. 19**

Spectrum objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 20**

Identify every Communication between Mr. Schaffer and Mr. Ehrlich regarding Yucaipa's plan to acquire ComVest's First Lien Claims and the Requisite Lender position.

**RESPONSE TO INTERROGATORY NO. 20**

Spectrum objects to this Interrogatory on the grounds that overbroad and unduly burdensome.

21

Subject to and without waiving the foregoing General Objections and Specific

Objections, Spectrum responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Spectrum responds to this

Interrogatory by referring to the following documents that have been produced through discovery

in this action:

| | | | |
|---|---|---|---|
| SPEC 0003649 | SPEC 0003838 | SPEC 0003949 | SPEC 0007667 |
| SPEC 0003688 | SPEC 0003935 | SPEC 0003973 | SPEC 0008173 |
| SPEC 0003690 | SPEC 0003937 | SPEC 0006641 | SPEC 0008228 |
| SPEC 0003704 | SPEC 0003939 | SPEC 0006769 | SPEC 0008231 |
| SPEC 0003706 | SPEC 0003942 | SPEC 0006851 | SPEC 0008233 |
| SPEC 0003733 | SPEC 0003944 | SPEC 0006855 | SPEC 0012288 |
| SPEC 0003820 | SPEC 0003946 | SPEC 0006899 | |
| SPEC 0003823 | SPEC 0003947 | SPEC 0007666 | |

Spectrum further states that Mr. Schaffer and Mr. Ehrlich may have had

communications regarding Yucaipa's plan to acquire ComVest's First Lien Claims and the

Requisite Lender position through telephone calls and/or in person meetings.  Mr. Schaffer does

not have a specific recollection of whether and when such communications occurred.

Dated: August 31, 2015
      Wilmington, Delaware        **LANDIS RATH & COBB LLP**


                                         */s/ Kerri K. Mumford*
                                     Adam G. Landis (No. 3407)
                                     Kerri K. Mumford (No. 4186)
                                     919 Market Street, Suite 1800
                                     Wilmington, Delaware 19801
                                     Telephone: (302) 467-4400
                                     Facsimile: (302) 467-4450

                                     -and-

                                     Adam C. Harris
                                     David Hillman
                                     Robert J. Ward
                                     **SCHULTE ROTH & ZABEL LLP**
                                     919 Third Avenue
                                     New York, New York 10022
                                     Telephone: (212) 756-2000
                                     Facsimile: (212) 593-5955

                                     *Counsel to Spectrum Investment Partners, L.P.*

23

EXHIBIT 15.2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**SPECTRUM INVESTMENT PARTNERS, L.P.'S RESPONSES AND OBJECTIONS TO
DEREX WALKER'S FIRST SET OF INTERROGATORIES**

Spectrum Investment Partners, L.P. ("Spectrum"), by and through its undersigned counsel, hereby responds and objects, pursuant to Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, to the First Set of Interrogatories of Derex Walker, dated June 10, 2015 (the "Interrogatories"), as set forth below.

## GENERAL OBJECTIONS

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1.      Spectrum objects to the Interrogatories, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Local Rules of the United States District Court for the District of Delaware (collectively, the "Local Rules"), or any other applicable rules or laws.  Spectrum will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2.      Spectrum objects to the Interrogatories to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.      Spectrum objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4.      Spectrum objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5.      Spectrum objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on discovery ("Privileged

2

Materials").  Unless specifically stated otherwise, Spectrum does not intend disclose any

Privileged Materials.  The inadvertent disclosure of any Privileged Materials is not a waiver of

any claim of privilege or other protection with respect to any Privileged Materials or any other

document or matter, all of which are expressly reserved.  Spectrum further reserves the right to

obtain the return of such information, prohibit its use in any manner, and/or demand the

destruction of any such information inadvertently disclosed in response to the Interrogatories.

6.      Spectrum objects to the Interrogatories to the extent that they seek

disclosure of information not within Spectrum's possession, custody, control, or knowledge.

7.      Spectrum objects to the Interrogatories to the extent that they purport to

request information that is public, already in Mr. Walker's possession, or otherwise available

from sources to which Mr. Walker also has access or sources that are more convenient, less

burdensome, and/or less expensive.

8.      Spectrum objects to the Interrogatories to the extent that they seek

information pertaining to persons or entities other than Spectrum.

9.      Spectrum objects to the Interrogatories to the extent that they are

argumentative, lack foundation, or incorporate allegations and assertions that are disputed or

erroneous.  By responding and objecting to the Interrogatories, Spectrum does not admit the

correctness of such assertions.

10.     Spectrum objects to the Interrogatories to the extent that they imply the

existence of facts or circumstances that do not or did not exist, and to the extent that they state or

assume legal conclusions.  In providing these objections and responses to the Interrogatories,

Spectrum does not admit the factual or legal premise of any Interrogatory.

3

11.     Spectrum objects to the Interrogatories to the extent that they are not limited to the claims or defenses in this action because they, for that reason alone, are overbroad and unduly burdensome, seek information irrelevant to the subject matter of this action, and are not calculated to lead to the discovery of admissible evidence.

12.     Spectrum objects to the Interrogatories to the extent that they impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on Spectrum.

13.     Spectrum does not in any way waive or intend to waive, but rather preserves and intends to preserve: (a) all rights to object on any ground to the competence, relevance, materiality and admissibility of any document or information that may be produced in response to the Interrogatories or the subject matter thereof; (b) all rights to object on any ground to the use of any document or information that may be produced in response to the Interrogatories or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (c) all rights to object on any ground to any request for further responses to the Interrogatories or any other document request.

14.     Spectrum objects to the definitions of the terms "Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Person(s)," "Relate to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome, vague, and ambiguous.  To the extent possible, Spectrum will construe these terms in accordance with their ordinary meanings.

15.     Spectrum's objections to the Interrogatories are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Spectrum at a later date and are made without

4

prejudice to Spectrum's rights to revise, correct, clarify, supplement, modify, or amend its

objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1

State all facts upon which You base Your contention that Mr. Walker failed to comply with his duty of loyalty to Allied.

### RESPONSE TO INTERROGATORY NO. 1

Spectrum objects to this Interrogatory on the grounds that Spectrum is not

asserting a breach of fiduciary duty claim against Mr. Walker.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less

expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information pertaining to persons or entities other than Spectrum.

### INTERROGATORY NO. 2

State all facts upon which You base Your contention that Mr. Walker failed to comply with his duty of care to Allied.

### RESPONSE TO INTERROGATORY NO. 2

Spectrum objects to this Interrogatory on the grounds that Spectrum is not

asserting a breach of fiduciary duty claim against Mr. Walker.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

**INTERROGATORY NO. 3**

Describe in detail each and every instance in which You contend that Mr. Walker used his position on the board of Allied to benefit Yucaipa.

**RESPONSE TO INTERROGATORY NO. 3**

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Walker.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

**INTERROGATORY NO. 4**

Describe in detail each and every instance in which You allege that Mr. Walker took actions as a member of the board of Allied that were to the detriment of Allied.

**RESPONSE TO INTERROGATORY NO. 4**

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Walker.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which

6

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 5

Describe in detail any instance in which You allege that Mr. Walker took actions as a member of the board of Allied that were to the benefit of Yucaipa.

## RESPONSE TO INTERROGATORY NO. 5

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Walker.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 6

State all facts upon which You base Your contention that Mr. Walker influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

## RESPONSE TO INTERROGATORY NO. 6

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Walker.

Spectrum further objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the Complaint does not allege that "Mr. Walker influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action."

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 7

State all facts upon which You base Your contention that that Mr. Walker failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

## RESPONSE TO INTERROGATORY NO. 7

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Walker.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

8

## INTERROGATORY NO. 8

State all facts upon which You base Your contention that Mr. Walker played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 8

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement.

For instance, in August 2009, Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting in concert with each other, caused Yucaipa to purchase First Lien Debt from ComVest in contravention of the First Lien Credit Agreement, as amended by the Third Amendment.

As a result of Yucaipa's improper purchase of First Lien Debt, Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting in concert with each other, caused Yucaipa to proclaim itself to be the Requisite Lender in breach of the Credit Agreement, as amended by the Third Amendment, which precludes Yucaipa from, among other things, voting First Lien Debt.  Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times

acting in concert with each other, caused Yucaipa to improperly use its status as the purported

Requisite Lender to prevent the First Lien Lenders from demanding Allied's compliance with the

Credit Agreement, including excusing Allied's failure to pay required principal and interest

when due.

Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting

in concert with each other, also caused Yucaipa to improperly use its status as the purported

Requisite Lender to preclude a balance sheet restructuring during the Great Recession and the

near collapse of the auto industry, which any other reasonable First Lien Lender (that did not

own a supermajority of Allied's equity) would unquestionably pursue.

Further, Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all

times acting in concert with each other, caused Yucaipa to improperly use its status as the

purported Requisite Lender to derail the sale of Allied's assets to JCT by demanding a

disproportionate share of the consideration that JCT was willing to pay.

Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all

times acting in concert with each other, caused Yucaipa to improperly assert itself as the

Requisite Lender, which caused Allied and the First Lien Lenders to incur millions of dollars in

unnecessary legal costs in Georgia state court, New York state court, and Bankruptcy Court to

determine who is rightfully the Requisite Lender, and which also delayed Allied's ability to

consummate a Section 363 sale in the bankruptcy case, which in turn caused Allied and the First

Lien Lenders to incur additional millions of dollars in unnecessary legal costs.

Spectrum's investigation through discovery is ongoing and continues and

Spectrum expressly reserves its right to supplement and/or modify this response as it deems

appropriate.

10

## INTERROGATORY NO. 9

State all facts upon which You base Your contention that Mr. Walker played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 9

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the Third Amendment. Upon information and belief, Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligations under the Third Amendment. For instance, Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting in concert with each other, did nothing to ensure that Yucaipa did not acquire First Lien Debt in excess of the amount permitted pursuant to Section 10.6(c) of the Third Amendment. Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Walker), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligation pursuant to Section 10.6(j)(iii) of the Third Amendment to make a capital contribution of 50% of the face value of the First Lien Debt improperly held by Yucaipa.

11

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 10

Identify each act that You contend Mr. Walker committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 10

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum refers to its responses to Interrogatory No. 8 and Interrogatory No. 9.

## INTERROGATORY NO. 11

State all facts upon which You base Your contention that Mr. Walker was seeking to benefit himself individually at the expense of Allied.

## RESPONSE TO INTERROGATORY NO. 11

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

At all relevant times, Mr. Walker was a Yucaipa employee and an Allied director. Upon information and belief, Mr. Walker did not receive any compensation in his capacity as an Allied director. Rather, Yucaipa compensated Mr. Walker as a Yucaipa employee, whose duties as a Yucaipa employee included serving as a director of Allied. As described in paragraph 135 of the Complaint, Mr. Walker, in his individual capacity, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement through his control of Yucaipa. In doing so, upon information and belief, Mr. Walker was seeking to benefit himself individually by serving Yucaipa's interests (the entity that pays his compensation) at the expense of Allied's interest (the entity that paid him no compensation).

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**INTERROGATORY NO. 12**

Describe in detail every objection that You communicated to Yucaipa about Yucaipa acquiring ComVest's First Lien Claims between May 15, 2007 and August 21, 2009.

**RESPONSE TO INTERROGATORY NO. 12**

Spectrum objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the term "objection" is not defined and susceptible to multiple interpretations.

Spectrum objects to this Interrogatory on the grounds that it is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence to the extent that the Bankruptcy Court has already held that Yucaipa's

13

contention that Black Diamond and Spectrum had encouraged Yucaipa to buy First Lien Claims from ComVest is not plausible.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

**INTERROGATORY NO. 13**

Describe in detail every reason You declined to ask CIT to refuse to close the trade between Yucaipa and ComVest.

**RESPONSE TO INTERROGATORY NO. 13**

Spectrum objects to this Interrogatory on the grounds that it is vague, ambiguous and lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

14

## INTERROGATORY NO. 14

Describe in detail every reason You did not send the September 2009 letter challenging Yucaipa's status as Requisite Lender directly to Yucaipa.

## RESPONSE TO INTERROGATORY NO. 14

Spectrum objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the "September 2009 letter" is not defined. Spectrum shall interpret the "September 2009 letter" to mean the letter dated September 18, 2009 from Keith H. Wofford of Ropes and Gray (on behalf of Black Diamond and Spectrum) to Eric W. Kimball of Patton Boggs LLP (on behalf of CIT), Bates stamped Yucaipa069794.

Spectrum further objects to this Interrogatory on the grounds that it lacks foundation.

Spectrum further objects to this Interrogatory to the extent that it calls for information protected by the attorney-client privilege, common interest privilege and any other applicable privilege.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 15

Describe in detail every objection You communicated to Yucaipa about Yucaipa becoming the Requisite Lender between May 15, 2007 and August 21, 2009.

## RESPONSE TO INTERROGATORY NO. 15

Spectrum objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the term "objection" is not defined and susceptible to multiple interpretations.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence to the extent that the Bankruptcy Court has already held that Yucaipa's contention that Black Diamond and Spectrum had encouraged Yucaipa to buy First Lien Claims from ComVest is not plausible.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 16

Describe in detail all harm You claim to have suffered as a result of Yucaipa's purported "complete control" of Allied's Board as alleged in paragraph 40 of the Complaint.

## RESPONSE TO INTERROGATORY NO. 16

Spectrum objects to this Interrogatory on the grounds that the term "Board" is vague and ambiguous because it is not defined.  Spectrum shall interpret the term "Board" to mean the board of directors of Allied.

Spectrum further objects to this Interrogatory on the grounds that it is premature to the extent that the amount of Spectrum's damages in this action will be the subject of expert discovery.  Spectrum expressly reserves its right to supplement and/or modify this response after such expert discovery.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

As a result of Yucaipa's complete control of the Allied Board, the Allied Board (i) caused Allied's default of payment obligations under the First Lien Credit Agreement to further Yucaipa's interests; (ii) approved Yucaipa's acquisition of First Lien Debt in breach of the First Lien Credit Agreement; (iii) approved the Purported Fourth Amendment pursuant to which Yucaipa improperly declared itself the Requisite Lender; (iv) refused to explore any restructuring alternatives that would not benefit Yucaipa, including JCT's proposed purchase of Allied's assets in late 2011 and 2012; (v) allowed Yucaipa to derail a sale of Allied's assets to JCT; (vi) allowed Yucaipa to improperly assert itself as the Requisite Lender, in breach of the First Lien Credit Agreement, which caused Allied and the First Lien Lenders to incur millions of dollars in costs to challenge Yucaipa's improper assertion as the Requisite Lender and which delayed Allied's ability to consummate a Section 363 sale in the bankruptcy case, which also caused Allied and the First Lien Lenders to incur additional millions of dollars in unnecessary legal costs.

As a result of these actions, Spectrum has suffered substantial harm in an amount to be proved at trial.  For instance, as a result of Yucaipa's complete control of Allied's Board, Yucaipa was able to improperly derail the deal in which JCT was willing to pay every First Lien Lender par plus accrued interest.  Yucaipa admits that after that deal was derailed, JCT

purchased substantially all of Allied's assets through a Section 363 sale for only $135 million, which was "$170 million less in consideration than offered by JCT to all Lenders nearly 18 months earlier." (Yucaipa's Counterclaim ¶ 10(e).) In addition, Allied and the First Lien Lenders (including Black Diamond and Spectrum) incurred millions of dollars in costs as a direct result of Yucaipa's complete control of Allied's Board.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 17

Identify any communications between You and SBDRE in SBDRE's role as Administrative Agent regarding Yucaipa's expense reimbursement claim.

## RESPONSE TO INTERROGATORY NO. 17

Spectrum objects to this Interrogatory on the grounds that it is vague, ambiguous and unintelligible to the extent that SBDRE is not, and never has been, the Administrative Agent.

Spectrum further objects to this Interrogatory on the grounds that it lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

18

**INTERROGATORY NO. 18**

Describe in detail every reason Your expenses and those of the other Lenders were reimbursed but not Yucaipa's.

**RESPONSE TO INTERROGATORY NO. 18**

Spectrum objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that it does not identify which "expenses" were purportedly "reimbursed," nor does it identify who reimbursed such unidentified expenses.

Spectrum further objects to this Interrogatory on the grounds that it lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

**INTERROGATORY NO. 19**

Identify every reason You, at the time of the Credit Bid and in Your purported capacity as Requisite Lender, proposed segregating all of Allied's assets into one tranche to hold the fixed assets and other salable assets (including equipment and real estate) and another tranche for its debt and liabilities (including the collective bargaining agreement), and the basis for not treating all lenders (including Yucaipa) identically with respect to both tranches.

## RESPONSE TO INTERROGATORY NO. 19

Spectrum objects to this Interrogatory on the grounds that it is compound, vague, ambiguous, unintelligible and is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

Spectrum further objects to this Interrogatory on the grounds that it lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it assumes unsubstantiated facts.

Spectrum further objects to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege and common interest privilege.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Walker, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

Dated: August 31, 2015
     Wilmington, Delaware               **LANDIS RATH & COBB LLP**

                                      */s/ Kerri K. Mumford*
                                   Adam G. Landis (No. 3407)
                                   Kerri K. Mumford (No. 4186)
                                   919 Market Street, Suite 1800
                                   Wilmington, Delaware 19801
                                   Telephone: (302) 467-4400
                                   Facsimile: (302) 467-4450

                                   -and-

                                   Adam C. Harris
                                   David Hillman
                                   Robert J. Ward
                                   **SCHULTE ROTH & ZABEL LLP**
                                   919 Third Avenue
                                   New York, New York 10022
                                   Telephone: (212) 756-2000
                                   Facsimile: (212) 593-5955

                                   *Counsel to Spectrum Investment Partners, L.P.*

EXHIBIT 15.3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

## SPECTRUM INVESTMENT PARTNERS, L.P.'S RESPONSES AND OBJECTIONS TO IRA TOCHNER'S FIRST SET OF INTERROGATORIES

Spectrum Investment Partners, L.P. ("Spectrum"), by and through its undersigned counsel, hereby responds and objects, pursuant to Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, to the First Set of Interrogatories of Ira Tochner, dated June 10, 2015 (the "Interrogatories"), as set forth below.

## GENERAL OBJECTIONS

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1.      Spectrum objects to the Interrogatories, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Local Rules of the United States District Court for the District of Delaware (collectively, the "Local Rules"), or any other applicable rules or laws.  Spectrum will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2.      Spectrum objects to the Interrogatories to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.      Spectrum objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4.      Spectrum objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5.      Spectrum objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on discovery ("Privileged

2

Materials"). Unless specifically stated otherwise, Spectrum does not intend disclose any

Privileged Materials. The inadvertent disclosure of any Privileged Materials is not a waiver of

any claim of privilege or other protection with respect to any Privileged Materials or any other

document or matter, all of which are expressly reserved. Spectrum further reserves the right to

obtain the return of such information, prohibit its use in any manner, and/or demand the

destruction of any such information inadvertently disclosed in response to the Interrogatories.

      6.     Spectrum objects to the Interrogatories to the extent that they seek

disclosure of information not within Spectrum's possession, custody, control, or knowledge.

      7.     Spectrum objects to the Interrogatories to the extent that they purport to

request information that is public, already in Mr. Tochner's possession, or otherwise available

from sources to which Mr. Tochner also has access or sources that are more convenient, less

burdensome, and/or less expensive.

      8.     Spectrum objects to the Interrogatories to the extent that they seek

information pertaining to persons or entities other than Spectrum.

      9.     Spectrum objects to the Interrogatories to the extent that they are

argumentative, lack foundation, or incorporate allegations and assertions that are disputed or

erroneous. By responding and objecting to the Interrogatories, Spectrum does not admit the

correctness of such assertions.

      10.     Spectrum objects to the Interrogatories to the extent that they imply the

existence of facts or circumstances that do not or did not exist, and to the extent that they state or

assume legal conclusions. In providing these objections and responses to the Interrogatories,

Spectrum does not admit the factual or legal premise of any Interrogatory.

11.     Spectrum objects to the Interrogatories to the extent that they are not limited to the claims or defenses in this action because they, for that reason alone, are overbroad and unduly burdensome, seek information irrelevant to the subject matter of this action, and are not calculated to lead to the discovery of admissible evidence.

12.     Spectrum objects to the Interrogatories to the extent that they impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on Spectrum.

13.     Spectrum does not in any way waive or intend to waive, but rather preserves and intends to preserve: (a) all rights to object on any ground to the competence, relevance, materiality and admissibility of any document or information that may be produced in response to the Interrogatories or the subject matter thereof; (b) all rights to object on any ground to the use of any document or information that may be produced in response to the Interrogatories or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (c) all rights to object on any ground to any request for further responses to the Interrogatories or any other document request.

14.     Spectrum objects to the definitions of the terms "Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Person(s)," "Relate to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome, vague, and ambiguous.  To the extent possible, Spectrum will construe these terms in accordance with their ordinary meanings.

15.     Spectrum's objections to the Interrogatories are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Spectrum at a later date and are made without

4

prejudice to Spectrum's rights to revise, correct, clarify, supplement, modify, or amend its

objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

## INTERROGATORY NO. 1

State all facts upon which You base Your contention that Mr. Tochner failed to comply with his duty of loyalty to Allied.

## RESPONSE TO INTERROGATORY NO. 1

Spectrum objects to this Interrogatory on the grounds that Spectrum is not

asserting a breach of fiduciary duty claim against Mr. Tochner.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less

expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 2

State all facts upon which You base Your contention that Mr. Tochner failed to comply with his duty of care to Allied.

## RESPONSE TO INTERROGATORY NO. 2

Spectrum objects to this Interrogatory on the grounds that Spectrum is not

asserting a breach of fiduciary duty claim against Mr. Tochner.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 3

Describe in detail each and every instance in which You contend that Mr. Tochner used his position on the board of Allied to benefit Yucaipa.

## RESPONSE TO INTERROGATORY NO. 3

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Tochner.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 4

Describe in detail each and every instance in which You allege that Mr. Tochner took actions as a member of the board of Allied that were to the detriment of Allied.

## RESPONSE TO INTERROGATORY NO. 4

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Tochner.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which

6

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 5

Describe in detail any instance in which You allege that Mr. Tochner took actions as a member of the board of Allied that were to the benefit of Yucaipa.

## RESPONSE TO INTERROGATORY NO. 5

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Tochner.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 6

State all facts upon which You base Your contention that Mr. Tochner influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

## RESPONSE TO INTERROGATORY NO. 6

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Tochner.

7

Spectrum further objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the Complaint does not allege that "Mr. Tochner influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action."

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

**INTERROGATORY NO. 7**

State all facts upon which You base Your contention that that Mr. Tochner failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**RESPONSE TO INTERROGATORY NO. 7**

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Tochner.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

8

## INTERROGATORY NO. 8

State all facts upon which You base Your contention that Mr. Tochner played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 8

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement.

For instance, in August 2009, Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting in concert with each other, caused Yucaipa to purchase First Lien Debt from ComVest in contravention of the First Lien Credit Agreement, as amended by the Third Amendment.

As a result of Yucaipa's improper purchase of First Lien Debt, Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting in concert with each other, caused Yucaipa to proclaim itself to be the Requisite Lender in breach of the Credit Agreement, as amended by the Third Amendment, which precludes Yucaipa from, among other things, voting First Lien Debt.  Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times

acting in concert with each other, caused Yucaipa to improperly use its status as the purported
Requisite Lender to prevent the First Lien Lenders from demanding Allied's compliance with the
Credit Agreement, including excusing Allied's failure to pay required principal and interest
when due.

Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting
in concert with each other, also caused Yucaipa to improperly use its status as the purported
Requisite Lender to preclude a balance sheet restructuring during the Great Recession and the
near collapse of the auto industry, which any other reasonable First Lien Lender (that did not
own a supermajority of Allied's equity) would unquestionably pursue.

Further, Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all
times acting in concert with each other, caused Yucaipa to improperly use its status as the
purported Requisite Lender to derail the sale of Allied's assets to JCT by demanding a
disproportionate share of the consideration that JCT was willing to pay.

Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all
times acting in concert with each other, caused Yucaipa to improperly assert itself as the
Requisite Lender, which caused Allied and the First Lien Lenders to incur millions of dollars in
unnecessary legal costs in Georgia state court, New York state court, and Bankruptcy Court to
determine who is rightfully the Requisite Lender, and which also delayed Allied's ability to
consummate a Section 363 sale in the bankruptcy case, which in turn caused Allied and the First
Lien Lenders to incur additional millions of dollars in unnecessary legal costs.

Spectrum's investigation through discovery is ongoing and continues and
Spectrum expressly reserves its right to supplement and/or modify this response as it deems
appropriate.

10

## INTERROGATORY NO. 9

State all facts upon which You base Your contention that Mr. Tochner played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 9

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the Third Amendment.  Upon information and belief, Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligations under the Third Amendment.  For instance, Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting in concert with each other, did nothing to ensure that Yucaipa did not acquire First Lien Debt in excess of the amount permitted pursuant to Section 10.6(c) of the Third Amendment.  Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Tochner), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligation pursuant to Section 10.6(j)(iii) of the Third Amendment to make a capital contribution of 50% of the face value of the First Lien Debt improperly held by Yucaipa.

11

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 10

Identify each act that You contend Mr. Tochner committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 10

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum refers to its responses to Interrogatory No. 8 and Interrogatory No. 9.

## INTERROGATORY NO. 11

State all facts upon which You base Your contention that Mr. Tochner was seeking to benefit himself individually at the expense of Allied.

## RESPONSE TO INTERROGATORY NO. 11

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

12

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

At all relevant times, Mr. Tochner was a Yucaipa employee and an Allied director.  Upon information and belief, Mr. Tochner did not receive any compensation in his capacity as an Allied director.  Rather, Yucaipa compensated Mr. Tochner as a Yucaipa employee, whose duties as a Yucaipa employee included serving as a director of Allied.  As described in paragraph 135 of the Complaint, Mr. Tochner, in his individual capacity, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement through his control of Yucaipa.  In doing so, upon information and belief, Mr. Tochner was seeking to benefit himself individually by serving Yucaipa's interests (the entity that pays his compensation) at the expense of Allied's interest (the entity that paid him no compensation).

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**INTERROGATORY NO. 12**

State all facts upon which You base Your contention in paragraph 83 of the Complaint that Allied brought the Georgia Action at Yucaipa's direction.

**RESPONSE TO INTERROGATORY NO. 12**

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

13

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Tochner, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

At all relevant times, Yucaipa controlled Allied by (i) owning a supermajority of Allied's equity, (ii) having the power to control appoint a majority of Allied's board of directors; (iii) having the power to control, remove, and replace all five members of Allied's board of directors, and (iv) having the power to appoint, control, remove, and replace Allied's CEO. Upon information and belief, in November 2009, through Yucaipa's control over Allied, Yucaipa directed Allied to join Yucaipa as a plaintiff in a lawsuit against CIT in the Superior Court of Fulton County, Georgia, seeking, among other things, a declaratory judgment that the Purported Fourth Amendment is valid and that Yucaipa was the Requisite Lender.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 13

Identify every transaction that You claim the First Lien Lenders were unable to take regarding any Events of Default during the pendency of the Georgia Action.

## RESPONSE TO INTERROGATORY NO. 13

Spectrum objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims

14

against Mr. Tochner, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it is based on an incomplete hypothetical.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

During the pendency of the Georgia Action, and for the entire period that Yucaipa purported to be the Requisite Lender, the First Lien Lenders were unable to exercise any of their rights and remedies in responses to Allied's numerous Defaults and Events of Default.  For instance, the First Lien Lenders were unable terminate the Revolving Commitments, the Term Loan Commitments or the LC Commitments.  In addition, the First Lien Lenders were unable to make immediately due and payable (i) the unpaid principal amount of and accrued interest on the Loans; (ii) the unreimbursed amounts of LC Disbursements; (iii) an amount equal to the maximum amount that may at any time be drawn under all Letters of Credit then outstanding; and (iv) all other Obligations.  The First Lien Lenders also could not enforce any other Default-related remedies.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 14

State all facts upon which You base Your contention in paragraph 94 of the Complaint that Yucaipa did not attempt to negotiate with Jack Cooper for the highest and best purchase price for Allied's assets.

## RESPONSE TO INTERROGATORY NO. 14

Spectrum objects to this Interrogatory on the grounds that it that it is vague, ambiguous and unintelligible to the extent that paragraph 94 of the Complaint alleges that the "the 'disinterested' members of the [Allied] Board (or a special committee of the Board)" had a "responsibility . . . to negotiate the highest and best purchase price for Allied's assets without immediate regard for how those proceeds might be allocated."  Paragraph 94 does not allege that "Yucaipa did not attempt to negotiate with Jack Cooper for the highest and best purchase price for Allied's assets."

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

As fiduciaries of Allied, Allied's board of directors, including the Special Committee of the board of directors, had a fiduciary responsibility to negotiate with Jack Cooper for the highest and best purchase price for Allied's assets without immediate regard for how those proceeds might be allocated.  Rather than fulfilling its fiduciary duties to Allied and its creditors, Allied's board of directors sat back and did nothing while Yucaipa wrongfully usurped control of negotiations with Jack Cooper in late 2011/2012, and in doing so sought to obtain disparate and better treatment for itself relative to the other First Lien Lenders.

16

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 15

State all facts upon which You base Your contention in paragraph 96 of the Complaint that Yucaipa was "improperly using its alleged Requisite Lender position" in pursuing a sale of its First Lien Debt to Jack Cooper.

## RESPONSE TO INTERROGATORY NO. 15

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

In late 2011, Jack Cooper sought to acquire Allied through a typical M&A type transaction. Yucaipa, however, had no interest in allowing Allied to pursue a typical M&A type transaction. Instead, Yucaipa – while purporting to act as the Requisite Lender – insisted that any transaction with Jack Cooper had to be structured as a sale of Yucaipa's First Lien Debt so that Yucaipa could garner a premium for itself by demanding a disproportionate share of the consideration that Jack Cooper was willing to pay.

For example, Jack Cooper's term sheet dated December 19, 2011 (the "12/19/11 Proposal") contemplated that Yucaipa would receive, on account of the Obligations it allegedly held, 100% of the principal amount of the Obligations plus accrued interest in the form of $100

17

million in cash and $50 million in "tack on" Jack Cooper notes.  That same term sheet, however, contemplated that (i) Black Diamond and Spectrum would receive 100% of the principal amount of the Obligations they held (but not accrued interest) payable solely in Jack Cooper notes (with no cash), and (ii) CIT would receive only 57% of the principal amount of the Obligations it held (or $20 million in cash).  When Black Diamond and Spectrum legitimately requested that they receive ratable treatment with Yucaipa on account of the Obligations they held, Yucaipa – in its capacity as the purported Requisite Lender – refused to yield to Black Diamond and Spectrum's request for ratable treatment.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**INTERROGATORY NO. 16**

Identify every Communication You had with Jack Cooper regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied.

**RESPONSE TO INTERROGATORY NO. 16**

Spectrum objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Spectrum refers to the following documents that have been produced through discovery in this action, which Spectrum, upon a reasonable inquiry, has identified as containing communications between Spectrum and Jack Cooper regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied:

18

| | | | |
|---|---|---|---|
| SPEC 0000015 | SPEC 0000057 | SPEC 0000091 | SPEC 0000798 |
| SPEC 0000026 | SPEC 0000058 | SPEC 0000262 | SPEC 0000817 |
| SPEC 0000029 | SPEC 0000060 | SPEC 0000266 | SPEC 0000823 |
| SPEC 0000033 | SPEC 0000063 | SPEC 0000280 | SPEC 0000830 |
| SPEC 0000038 | SPEC 0000067 | SPEC 0000284 | SPEC 0012850 |
| SPEC 0000044 | SPEC 0000072 | SPEC 0000291 | |
| SPEC 0000050 | SPEC 0000077 | SPEC 0000792 | |

Spectrum further states that Spectrum and Jack Cooper may have had other oral or written communications regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied.  However, the employees of Spectrum do not have a specific recollection of whether and when such communications occurred.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 17

Identify every Communication You had with Black Diamond regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied.

## RESPONSE TO INTERROGATORY NO. 17

Spectrum objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Spectrum refers to the following documents that have been produced through discovery in this action, which Spectrum, upon a reasonable inquiry, has identified as containing communications Spectrum and Spectrum regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied:

| | | | |
|---|---|---|---|
| SPEC 0000015 | SPEC 0000856 | BDCM0000508 | BDCM0002726 |
| SPEC 0000026 | SPEC 0000860 | BDCM0000712 | BDCM0002728 |
| SPEC 0000029 | SPEC 0000865 | BDCM0000714 | BDCM0002734 |
| SPEC 0000033 | SPEC 0000869 | BDCM0000920 | BDCM0002738 |
| SPEC 0000038 | SPEC 0000874 | BDCM0000941 | BDCM0002740 |
| SPEC 0000044 | SPEC 0000883 | BDCM0000942 | BDCM0002740 |
| SPEC 0000050 | SPEC 0000920 | BDCM0000944 | BDCM0002789 |
| SPEC 0000057 | SPEC 0000951 | BDCM0000965 | BDCM0002795 |
| SPEC 0000058 | SPEC 0000954 | BDCM0000968 | BDCM0002803 |
| SPEC 0000060 | SPEC 0000956 | BDCM0000979 | BDCM0002806 |
| SPEC 0000063 | SPEC 0000982 | BDCM0001553 | BDCM0002831 |
| SPEC 0000067 | SPEC 0001028 | BDCM0001556 | BDCM0002840 |
| SPEC 0000072 | SPEC 0001040 | BDCM0001576 | BDCM0002842 |
| SPEC 0000077 | SPEC 0001042 | BDCM0001600 | BDCM0002844 |
| SPEC 0000091 | SPEC 0001106 | BDCM0001603 | BDCM0002859 |
| SPEC 0000098 | SPEC 0001111 | BDCM0002117 | BDCM0002873 |
| SPEC 0000099 | SPEC 0001118 | BDCM0002462 | BDCM0002877 |
| SPEC 0000206 | SPEC 0002496 | BDCM0002474 | BDCM0002880 |
| SPEC 0000262 | SPEC 0002497 | BDCM0002487 | BDCM0002917 |
| SPEC 0000266 | SPEC 0002499 | BDCM0002539 | BDCM0002931 |
| SPEC 0000280 | SPEC 0002950 | BDCM0002543 | BDCM0002933 |
| SPEC 0000284 | SPEC 0002971 | BDCM0002549 | BDCM0002939 |
| SPEC 0000291 | SPEC 0003050 | BDCM0002559 | BDCM0002947 |
| SPEC 0000376 | SPEC 0003052 | BDCM0002573 | BDCM0003265 |
| SPEC 0000377 | SPEC 0003054 | BDCM0002580 | BDCM0003291 |
| SPEC 0000378 | SPEC 0003056 | BDCM0002585 | BDCM0003300 |
| SPEC 0000380 | SPEC 0003058 | BDCM0002590 | BDCM0003317 |
| SPEC 0000444 | SPEC 0003060 | BDCM0002592 | BDCM0003356 |
| SPEC 0000445 | SPEC 0003637 | BDCM0002599 | BDCM0003374 |
| SPEC 0000449 | SPEC 0006205 | BDCM0002603 | BDCM0003378 |
| SPEC 0000454 | SPEC 0006211 | BDCM0002606 | BDCM0003381 |
| SPEC 0000593 | SPEC 0006221 | BDCM0002612 | BDCM0003386 |
| SPEC 0000595 | SPEC 0006604 | BDCM0002621 | BDCM0003390 |
| SPEC 0000599 | SPEC 0006740 | BDCM0002625 | BDCM0003394 |
| SPEC 0000792 | SPEC 0012850 | BDCM0002657 | BDCM0003407 |
| SPEC 0000795 | SPEC 0013071 | BDCM0002671 | BDCM0003409 |
| SPEC 0000798 | SPEC 0013254 | BDCM0002672 | BDCM0003431 |
| SPEC 0000801 | SPEC 0013400 | BDCM0002676 | BDCM0003448 |
| SPEC 0000805 | SPEC 0013401 | BDCM0002678 | BDCM0003454 |
| SPEC 0000809 | SPEC 0013403 | BDCM0002686 | BDCM0003467 |
| SPEC 0000817 | BDCM0000031 | BDCM0002689 | BDCM0003469 |
| SPEC 0000823 | BDCM0000149 | BDCM0002692 | BDCM0003471 |
| SPEC 0000830 | BDCM0000204 | BDCM0002696 | BDCM0003481 |
| SPEC 0000838 | BDCM0000207 | BDCM0002703 | BDCM0003485 |
| SPEC 0000840 | BDCM0000218 | BDCM0002712 | BDCM0003490 |
| SPEC 0000852 | BDCM0000242 | BDCM0002716 | BDCM0003494 |

| | | | |
|---|---|---|---|
| BDCM0003498 | BDCM0004837 | BDCM0007143 | BDCM0008919 |
| BDCM0003505 | BDCM0004852 | BDCM0007610 | BDCM0008963 |
| BDCM0003508 | BDCM0004864 | BDCM0007621 | BDCM0010844 |
| BDCM0003510 | BDCM0006239 | BDCM0007799 | BDCM0020255 |
| BDCM0003513 | BDCM0006255 | BDCM0007801 | BDCM0021726 |
| BDCM0003540 | BDCM0006309 | BDCM0007803 | |
| BDCM0003571 | BDCM0007108 | BDCM0007878 | |

Spectrum further states that Spectrum and Black Diamond may have had other oral or written communications regarding Jack Cooper's potential acquisition of First Lien Debt or potential acquisition of Allied. However, the employees of Spectrum do not have a specific recollection of whether and when such communications occurred.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 18

Describe in detail all every one of the "strategies to enforce the rights of the Parties as Lenders under the First Lien Credit Agreement" contemplated by the Cooperation Agreement.

## RESPONSE TO INTERROGATORY NO. 18

Spectrum objects to this Interrogatory on the grounds that the phrase "contemplated by the Cooperation Agreement" is vague and ambiguous.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Tochner, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

21

**INTERROGATORY NO. 19**

Describe in detail all reasons You did not sign the Cooperation Agreement prior to January 2012.

**RESPONSE TO INTERROGATORY NO. 19**

Spectrum objects to this Interrogatory on the grounds that it lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Tochner, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

**INTERROGATORY NO. 20**

Identify the amount You paid Black Diamond for the transfer of $4,239,486.90 in First Lien Debt from Black Diamond.

**RESPONSE TO INTERROGATORY NO. 20**

Spectrum objects to this Interrogatory on the grounds that it is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

Spectrum further objects to this Interrogatory on the grounds that it is vague, ambiguous and lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Tochner, and is improperly asserted on Yucaipa's behalf to improperly

circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules

of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information in support of allegations that Yucaipa is collaterally estopped from asserting.

**INTERROGATORY NO. 21**

Describe in detail all reasons You acquired $4,239,486.90 in First Lien Debt from Black
Diamond.

**RESPONSE TO INTERROGATORY NO. 21**

Spectrum objects to this Interrogatory on the grounds that it is vague, ambiguous

and lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it is neither

relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of

the claims against Mr. Tochner, and is improperly asserted on Yucaipa's behalf to improperly

circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules

of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information in support of allegations that Yucaipa is collaterally estopped from asserting.

Dated: August 31, 2015
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**


  */s/ Kerri K. Mumford*
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

-and-

Adam C. Harris
David Hillman
Robert J. Ward
**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Spectrum Investment Partners, L.P.*

EXHIBIT 15.4

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**SPECTRUM INVESTMENT PARTNERS, L.P.'S RESPONSES AND OBJECTIONS TO
JEFF PELLETIER'S FIRST SET OF INTERROGATORIES**

Spectrum Investment Partners, L.P. ("Spectrum"), by and through its undersigned counsel, hereby responds and objects, pursuant to Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, to the First Set of Interrogatories of Jeff Pelletier, dated June 10, 2015 (the "Interrogatories"), as set forth below.

## GENERAL OBJECTIONS

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1.      Spectrum objects to the Interrogatories, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Local Rules of the United States District Court for the District of Delaware (collectively, the "Local Rules"), or any other applicable rules or laws. Spectrum will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2.      Spectrum objects to the Interrogatories to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.      Spectrum objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4.      Spectrum objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5.      Spectrum objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on discovery ("Privileged

2

Materials").  Unless specifically stated otherwise, Spectrum does not intend disclose any

Privileged Materials.  The inadvertent disclosure of any Privileged Materials is not a waiver of

any claim of privilege or other protection with respect to any Privileged Materials or any other

document or matter, all of which are expressly reserved.  Spectrum further reserves the right to

obtain the return of such information, prohibit its use in any manner, and/or demand the

destruction of any such information inadvertently disclosed in response to the Interrogatories.

6.      Spectrum objects to the Interrogatories to the extent that they seek

disclosure of information not within Spectrum's possession, custody, control, or knowledge.

7.      Spectrum objects to the Interrogatories to the extent that they purport to

request information that is public, already in Mr. Pelletier's possession, or otherwise available

from sources to which Mr. Pelletier also has access or sources that are more convenient, less

burdensome, and/or less expensive.

8.      Spectrum objects to the Interrogatories to the extent that they seek

information pertaining to persons or entities other than Spectrum.

9.      Spectrum objects to the Interrogatories to the extent that they are

argumentative, lack foundation, or incorporate allegations and assertions that are disputed or

erroneous.  By responding and objecting to the Interrogatories, Spectrum does not admit the

correctness of such assertions.

10.      Spectrum objects to the Interrogatories to the extent that they imply the

existence of facts or circumstances that do not or did not exist, and to the extent that they state or

assume legal conclusions.  In providing these objections and responses to the Interrogatories,

Spectrum does not admit the factual or legal premise of any Interrogatory.

11.     Spectrum objects to the Interrogatories to the extent that they are not limited to the claims or defenses in this action because they, for that reason alone, are overbroad and unduly burdensome, seek information irrelevant to the subject matter of this action, and are not calculated to lead to the discovery of admissible evidence.

12.     Spectrum objects to the Interrogatories to the extent that they impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on Spectrum.

13.     Spectrum does not in any way waive or intend to waive, but rather preserves and intends to preserve: (a) all rights to object on any ground to the competence, relevance, materiality and admissibility of any document or information that may be produced in response to the Interrogatories or the subject matter thereof; (b) all rights to object on any ground to the use of any document or information that may be produced in response to the Interrogatories or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (c) all rights to object on any ground to any request for further responses to the Interrogatories or any other document request.

14.     Spectrum objects to the definitions of the terms "Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Person(s)," "Relate to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome, vague, and ambiguous.  To the extent possible, Spectrum will construe these terms in accordance with their ordinary meanings.

15.     Spectrum's objections to the Interrogatories are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Spectrum at a later date and are made without

4

prejudice to Spectrum's rights to revise, correct, clarify, supplement, modify, or amend its

objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1

State all facts upon which You base Your contention that Mr. Pelletier failed to comply with his
duty of loyalty to Allied.

### RESPONSE TO INTERROGATORY NO. 1

Spectrum objects to this Interrogatory on the grounds that Spectrum is not

asserting a breach of fiduciary duty claim against Mr. Pelletier.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less

expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information pertaining to persons or entities other than Spectrum.

### INTERROGATORY NO. 2

State all facts upon which You base Your contention that Mr. Pelletier failed to comply with his
duty of care to Allied.

### RESPONSE TO INTERROGATORY NO. 2

Spectrum objects to this Interrogatory on the grounds that Spectrum is not

asserting a breach of fiduciary duty claim against Mr. Pelletier.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 3

Describe in detail each and every instance in which You contend that Mr. Pelletier used his position on the board of Allied to benefit Yucaipa.

## RESPONSE TO INTERROGATORY NO. 3

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Pelletier.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 4

Describe in detail each and every instance in which You allege that Mr. Pelletier took actions as a member of the board of Allied that were to the detriment of Allied.

## RESPONSE TO INTERROGATORY NO. 4

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Pelletier.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

**INTERROGATORY NO. 5**

Describe in detail any instance in which You allege that Mr. Pelletier took actions as a member of the board of Allied that were to the benefit of Yucaipa.

**RESPONSE TO INTERROGATORY NO. 5**

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Pelletier.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

**INTERROGATORY NO. 6**

State all facts upon which You base Your contention that Mr. Pelletier influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

**RESPONSE TO INTERROGATORY NO. 6**

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Pelletier.

7

Spectrum further objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the Complaint does not allege that "Mr. Pelletier influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action."

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

**INTERROGATORY NO. 7**

State all facts upon which You base Your contention that that Mr. Pelletier failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**RESPONSE TO INTERROGATORY NO. 7**

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Pelletier.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

8

## INTERROGATORY NO. 8

State all facts upon which You base Your contention that Mr. Pelletier played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 8

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement.

For instance, in August 2009, Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting in concert with each other, caused Yucaipa to purchase First Lien Debt from ComVest in contravention of the First Lien Credit Agreement, as amended by the Third Amendment.

As a result of Yucaipa's improper purchase of First Lien Debt, Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting in concert with each other, caused Yucaipa to proclaim itself to be the Requisite Lender in breach of the Credit Agreement, as amended by the Third Amendment, which precludes Yucaipa from, among other things, voting First Lien Debt.  Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times

9

acting in concert with each other, caused Yucaipa to improperly use its status as the purported

Requisite Lender to prevent the First Lien Lenders from demanding Allied's compliance with the

Credit Agreement, including excusing Allied's failure to pay required principal and interest

when due.

Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting

in concert with each other, also caused Yucaipa to improperly use its status as the purported

Requisite Lender to preclude a balance sheet restructuring during the Great Recession and the

near collapse of the auto industry, which any other reasonable First Lien Lender (that did not

own a supermajority of Allied's equity) would unquestionably pursue.

Further, Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all

times acting in concert with each other, caused Yucaipa to improperly use its status as the

purported Requisite Lender to derail the sale of Allied's assets to JCT by demanding a

disproportionate share of the consideration that JCT was willing to pay.

Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all

times acting in concert with each other, caused Yucaipa to improperly assert itself as the

Requisite Lender, which caused Allied and the First Lien Lenders to incur millions of dollars in

unnecessary legal costs in Georgia state court, New York state court, and Bankruptcy Court to

determine who is rightfully the Requisite Lender, and which also delayed Allied's ability to

consummate a Section 363 sale in the bankruptcy case, which in turn caused Allied and the First

Lien Lenders to incur additional millions of dollars in unnecessary legal costs.

Spectrum's investigation through discovery is ongoing and continues and

Spectrum expressly reserves its right to supplement and/or modify this response as it deems

appropriate.

10

## INTERROGATORY NO. 9

State all facts upon which You base Your contention that Mr. Pelletier played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 9

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the Third Amendment.  Upon information and belief, Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligations under the Third Amendment.  For instance, Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting in concert with each other, did nothing to ensure that Yucaipa did not acquire First Lien Debt in excess of the amount permitted pursuant to Section 10.6(c) of the Third Amendment.  Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Pelletier), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligation pursuant to Section 10.6(j)(iii) of the Third Amendment to make a capital contribution of 50% of the face value of the First Lien Debt improperly held by Yucaipa.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 10

Identify each act that You contend Mr. Pelletier committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 10

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum refers to its responses to Interrogatory No. 8 and Interrogatory No. 9.

## INTERROGATORY NO. 11

State all facts upon which You base Your contention that Mr. Pelletier was seeking to benefit himself individually at the expense of Allied.

## RESPONSE TO INTERROGATORY NO. 11

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

At all relevant times, Mr. Pelletier was a Yucaipa employee and an Allied director.  Upon information and belief, Mr. Pelletier did not receive any compensation in his capacity as an Allied director.  Rather, Yucaipa compensated Mr. Pelletier as a Yucaipa employee, whose duties as a Yucaipa employee included serving as a director of Allied.  As described in paragraph 135 of the Complaint, Mr. Pelletier, in his individual capacity, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement through his control of Yucaipa.  In doing so, upon information and belief, Mr. Pelletier was seeking to benefit himself individually by serving Yucaipa's interests (the entity that pays his compensation) at the expense of Allied's interest (the entity that paid him no compensation).

Spectrum's investigation through discovery is ongoing and continues and Black Diamond expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 12

Describe in detail all reasons You acquired $4,239,486.90 in First Lien Debt from Black Diamond.

## RESPONSE TO INTERROGATORY NO. 12

Spectrum objects to this Interrogatory on the grounds that it is vague, ambiguous and lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly

13

circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 13

Identify any other trades You considered pursuant to the Cooperation Agreement but did not execute, including identifying whether You offered Black Diamond a pro rata right to share in those trades.

## RESPONSE TO INTERROGATORY NO. 13

Spectrum objects to this Interrogatory on the grounds that the phrase "other trades" is vague and ambiguous to the extent that it is undefined and susceptible to multiple interpretations.

Spectrum further objects to this Interrogatory on the grounds that the term "considered" is vague, ambiguous and overbroad.

Spectrum further objects to this Interrogatory on the grounds that it lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 14

Describe in detail all reasons You did not disclose the transfer of the $4,239,486.90 in First Lien Debt in the Black Diamond and Spectrum Affidavits.

## RESPONSE TO INTERROGATORY NO. 14

Spectrum objects to this Interrogatory on the grounds that it is vague, ambiguous, compound and lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory to the extent that it calls for an answer about an affidavit filed by another entity.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 15

Describe in detail all reasons You did not disclose the transfer of the $4,239,486.90 in First Lien Debt in connection with the filing of the involuntary bankruptcy filing in May 2012 or in response to related discovery.

## RESPONSE TO INTERROGATORY NO. 15

Spectrum objects to this Interrogatory on the grounds that it is vague, ambiguous, compound and lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly

circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules

of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 16

State all facts upon which You base Your contention that Yucaipa refused to perform in
accordance with the terms of the First Lien Credit Agreement, as amended by the Third
Amendment.

## RESPONSE TO INTERROGATORY NO. 16

Spectrum objects to this Interrogatory on the grounds that it seeks information

that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa

also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information pertaining to persons or entities other than Spectrum.

Spectrum further objects to this Interrogatory on the grounds that it is neither

relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of

the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly

circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules

of Civil Procedure.

Subject to and without waiving the foregoing General Objections and Specific

Objections, Spectrum responds as follows:

On August 21, 2009, in contravention of the terms of the Third Amendment,

Yucaipa purchased a total of $145,112,547.06 of First Lien Debt from ComVest.  At the same

time, as a condition to closing Yucaipa's purchase of First Lien Debt from ComVest, Allied – at

16

Yucaipa's direction – executed the Purported Fourth Amendment, which (if valid) would have eliminated all of the Third Amendment's restrictions on Yucaipa's ability to acquire and vote First Lien Debt and would have allowed Yucaipa to become the Requisite Lender.  Upon purchasing First Lien Debt from ComVest and causing the execution of the Purported Fourth Amendment, Yucaipa declared itself the Requisite Lender.

In acquiring First Lien Debt from ComVest, Yucaipa breached Section 10.6(c) of the Third Amendment by purchasing, and purporting to hold, $114,712,08.66 in Term Loans, which is substantially greater than the amount of Term Loans that Yucaipa is permitted to purchase and hold.  Moreover, Yucaipa breached Section 10.6(j)(iii) of the Third Amendment by failing to make a capital contribution of 50% of the face value of the First Lien Debt improperly held by Yucaipa.

In addition, under Section 2.1(c) of the Third Amendment, Yucaipa is not permitted to purchase or hold any Revolving Loans or LC Commitments.  On or about August 21, 2009, Yucaipa breached that provision by purchasing, and purporting to hold, $30,400,458.40 of LC Commitments.

As a result of its impermissible acquisition of First Lien Debt, Yucaipa declared itself to be the Requisite Lender, with all the rights and powers granted thereto under the First Lien Credit Agreement.  By improperly acting as the Requisite Lender, Yucaipa breached numerous other provisions of the First Lien Credit Agreement, as amended by the Third Amendment, including, but not limited to:

- Section 2.7(a) of the Third Amendment, which provides that Yucaipa "shall have no voting rights for all purposes under this Agreement (whether before, during, or after an Insolvency or Liquidation Proceeding) . . . with respect to their Term Loans."

- Section 2.7(b) of the Third Amendment, which provides that Yucaipa "shall not . . . make any election, give any consent, commence any action or file any motion, claim, obligation, notice or application or take any other action in any Insolvency or Liquidation Proceeding without the prior written consent of all Lenders . . . ."

- Section 2.7(e)(iv) of the Third Amendment, which provides that Yucaipa "knowingly and irrevocably waives any and all rights to exercise any voting rights it would otherwise have as a Lender for all purposes under this Agreement . . . ."

Yucaipa's improper usurpation of Requisite Lender status breached the First Lien Credit Agreement, as amended by the Third Amendment, in at least the following ways:

- Yucaipa improperly acquired First Lien Debt in violation of the First Lien Credit Agreement;

- Yucaipa improperly used its purported debt holdings to declare itself the Requisite Lender, in clear violation of the First Lien Credit Agreement;

- Yucaipa improperly used its status as purported Requisite Lender to neutralize the First Lien Lenders, giving the Debtors a "free pass" to ignore the provisions of the First Lien Credit Agreement requiring them to pay principal and interest and abide by certain financial and operating covenants;

- Yucaipa improperly used its status as purported Requisite Lender to protect its equity investment by precluding a badly-needed restructuring of the Debtors; and

- Yucaipa's improper usurpation of Requisite Lender status caused the First Lien Lenders to incur unnecessary legal costs regarding the impropriety of Yucaipa's status as Requisite Lender and the invalidity of the Purported Fourth Amendment.

In addition, starting in November or December 2011, Yucaipa, acting as the purported Requisite Lender, hijacked negotiations with Jack Cooper ("JCT") by insisting on terms that would benefit Yucaipa, rather than the Debtors, and by demanding that any deal disproportionately favor Yucaipa at the expense of the First Lien Lenders.

As a direct result of Yucaipa's wrongful usurpation of Requisite Lender status, Yucaipa was able to improperly derail the deal in which JCT was willing to pay every First Lien Lender par plus accrued interest. Yucaipa admits that after that deal was derailed, JCT purchased substantially all of Allied's assets through a Section 363 sale for only $135 million,

which was "$170 million less in consideration than offered by JCT to all Lenders nearly 18 months earlier." (Yucaipa's Counterclaim ¶ 10(e).) In addition, the Debtors were forced to incur $30 million in post-petition financing, reducing the amount available from the Debtors' assets for distribution to the First Lien Lenders. The non-Yucaipa First Lien Lenders were also forced to incur millions of dollars in legal fees in connection with the bankruptcy cases and the New York action made necessary by Yucaipa's wrongful acts. Yucaipa's wrongful usurpation of Requisite Lender status also delayed the Debtors' ability to consummate a Section 363 sale in the bankruptcy case, which in turn caused the Debtors and First Lien Lenders to incur millions of dollars in additional unnecessary legal costs.

As a result of Yucaipa's breaches of the First Lien Credit Agreement, as amended by the Third Amendment, Plaintiffs have suffered damages.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

**INTERROGATORY NO. 17**

State the price You paid for the First Lien Claims You held (and the amount of such claims held) at the time of the involuntary bankruptcy filing in May 2012.

**RESPONSE TO INTERROGATORY NO. 17**

Spectrum objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 18**

Describe in detail all reasons You rejected the Yucaipa Tender Offer.

**RESPONSE TO INTERROGATORY NO. 18**

Spectrum objects to this Interrogatory on the grounds that it is vague, ambiguous, lacks foundation, and is neither relevant to the subject matter of this proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Spectrum did not accept the Yucaipa Tender Offer because if the Yucaipa Tender Offer had been accepted, the First Lien Credit Agreement would have been amended to permit Yucaipa to acquire and vote First Lien Debt without any of the limitations imposed by the Third Amendment. Such an amendment would have allowed Yucaipa to purchase a majority of the First Lien Debt and become the Requisite Lender, thereby seizing control of the First Lien Facility. Permitting Yucaipa, as Allied's majority and controlling shareholder, to take control of the First Lien Facility would permit Yucaipa to prevent the exercise of rights or remedies of the First Lien Lenders notwithstanding the occurrence and continuance of Defaults and Events of Default.

20

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 19

Identify the date You first considered seeking equitable subordination of Yucaipa in relation to Your Allied First Lien Claims.

## RESPONSE TO INTERROGATORY NO. 19

Spectrum objects to this Interrogatory on the grounds that it is vague, ambiguous and lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 20

Identify the date You first discussed equitable subordination of Yucaipa in relation to Your Allied First Lien Claims with any other party, including but not limited to T. Michael Riggs, Kirk Ferguson, or Spectrum.

## RESPONSE TO INTERROGATORY NO. 20

Spectrum objects to this Interrogatory on the grounds that it is vague, ambiguous and lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of

the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly

circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules

of Civil Procedure.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information in support of allegations that Yucaipa is collaterally estopped from asserting.

## INTERROGATORY NO. 21

Identify the date You first learned that Yucaipa was negotiating with ComVest to acquire
ComVest's First Lien Debt.

## RESPONSE TO INTERROGATORY NO. 21

Spectrum objects to this Interrogatory on the grounds that it is vague, ambiguous

and lacks foundation.

Spectrum further objects to this Interrogatory on the grounds that it is neither

relevant to, nor reasonably calculated to lead to the discovery of admissible evidence for, any of

the claims against Mr. Pelletier, and is improperly asserted on Yucaipa's behalf to improperly

circumvent Yucaipa's limit of 25 interrogatories pursuant to Rule 33(a)(1) of the Federal Rules

of Civil Procedure.

Subject to and without waiving the foregoing General Objections and Specific

Objections, Spectrum responds as follows:

Spectrum first learned that Yucaipa was negotiating with ComVest to acquire

ComVest's First Lien Debt in or around April 2009.

Spectrum's investigation through discovery is ongoing and continues and

Spectrum expressly reserves its right to supplement and/or modify this response as it deems

appropriate.

22

Dated: August 31, 2015
     Wilmington, Delaware          **LANDIS RATH & COBB LLP**


          */s/  Kerri K. Mumford*
          Adam G. Landis (No. 3407)
          Kerri K. Mumford (No. 4186)
          919 Market Street, Suite 1800
          Wilmington, Delaware 19801
          Telephone: (302) 467-4400
          Facsimile: (302) 467-4450

          -and-

          Adam C. Harris
          David Hillman
          Robert J. Ward
          **SCHULTE ROTH & ZABEL LLP**
          919 Third Avenue
          New York, New York 10022
          Telephone: (212) 756-2000
          Facsimile: (212) 593-5955

          *Counsel to Spectrum Investment Partners, L.P.*

EXHIBIT 15.5

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**SPECTRUM INVESTMENT PARTNERS, L.P.'S RESPONSES AND OBJECTIONS TO
JOSEPH TOMCZAK'S FIRST SET OF INTERROGATORIES**

Spectrum Investment Partners, L.P. ("Spectrum"), by and through its undersigned counsel, hereby responds and objects, pursuant to Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, to the First Set of Interrogatories of Joseph Tomczak, dated June 10, 2015 (the "Interrogatories"), as set forth below.

## GENERAL OBJECTIONS

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1.	Spectrum objects to the Interrogatories, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Local Rules of the United States District Court for the District of Delaware (collectively, the "Local Rules"), or any other applicable rules or laws.  Spectrum will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2.	Spectrum objects to the Interrogatories to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.	Spectrum objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4.	Spectrum objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5.	Spectrum objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on discovery ("Privileged

2

Materials"). Unless specifically stated otherwise, Spectrum does not intend disclose any Privileged Materials. The inadvertent disclosure of any Privileged Materials is not a waiver of any claim of privilege or other protection with respect to any Privileged Materials or any other document or matter, all of which are expressly reserved. Spectrum further reserves the right to obtain the return of such information, prohibit its use in any manner, and/or demand the destruction of any such information inadvertently disclosed in response to the Interrogatories.

6.       Spectrum objects to the Interrogatories to the extent that they seek disclosure of information not within Spectrum's possession, custody, control, or knowledge.

7.       Spectrum objects to the Interrogatories to the extent that they purport to request information that is public, already in Mr. Tomczak's possession, or otherwise available from sources to which Mr. Tomczak also has access or sources that are more convenient, less burdensome, and/or less expensive.

8.       Spectrum objects to the Interrogatories to the extent that they seek information pertaining to persons or entities other than Spectrum.

9.       Spectrum objects to the Interrogatories to the extent that they are argumentative, lack foundation, or incorporate allegations and assertions that are disputed or erroneous. By responding and objecting to the Interrogatories, Spectrum does not admit the correctness of such assertions.

10.       Spectrum objects to the Interrogatories to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that they state or assume legal conclusions. In providing these objections and responses to the Interrogatories, Spectrum does not admit the factual or legal premise of any Interrogatory.

11.     Spectrum objects to the Interrogatories to the extent that they are not limited to the claims or defenses in this action because they, for that reason alone, are overbroad and unduly burdensome, seek information irrelevant to the subject matter of this action, and are not calculated to lead to the discovery of admissible evidence.

12.     Spectrum objects to the Interrogatories to the extent that they impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on Spectrum.

13.     Spectrum does not in any way waive or intend to waive, but rather preserves and intends to preserve: (a) all rights to object on any ground to the competence, relevance, materiality and admissibility of any document or information that may be produced in response to the Interrogatories or the subject matter thereof; (b) all rights to object on any ground to the use of any document or information that may be produced in response to the Interrogatories or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (c) all rights to object on any ground to any request for further responses to the Interrogatories or any other document request.

14.     Spectrum objects to the definitions of the terms "Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Person(s)," "Relate to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome, vague, and ambiguous.  To the extent possible, Spectrum will construe these terms in accordance with their ordinary meanings.

15.     Spectrum's objections to the Interrogatories are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Spectrum at a later date and are made without

4

prejudice to Spectrum's rights to revise, correct, clarify, supplement, modify, or amend its objections and responses as appropriate.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1

State all facts upon which You base Your contention that Mr. Tomczak failed to comply with his duty of loyalty to Allied.

### RESPONSE TO INTERROGATORY NO. 1

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

### INTERROGATORY NO. 2

State all facts upon which You base Your contention that Mr. Tomczak failed to comply with his duty of care to Allied.

### RESPONSE TO INTERROGATORY NO. 2

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 3

Describe in detail each and every instance in which You contend that Mr. Tomczak used his position on the board of Allied to benefit Yucaipa.

## RESPONSE TO INTERROGATORY NO. 3

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 4

Describe in detail each and every instance in which You allege that Mr. Tomczak took actions as a member of the board of Allied that were to the detriment of Allied.

## RESPONSE TO INTERROGATORY NO. 4

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which

6

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 5

Describe in detail any instance in which You allege that Mr. Tomczak took actions as a member of the board of Allied that were to the benefit of Yucaipa.

## RESPONSE TO INTERROGATORY NO. 5

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 6

State all facts upon which You base Your contention that Mr. Tomczak influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

## RESPONSE TO INTERROGATORY NO. 6

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

Spectrum further objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the Complaint does not allege that "Mr. Tomczak influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action."

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

**INTERROGATORY NO. 7**

State all facts upon which You base Your contention that that Mr. Tomczak failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**RESPONSE TO INTERROGATORY NO. 7**

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Tomczak.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

8

## INTERROGATORY NO. 8

State all facts upon which You base Your contention that Mr. Tomczak played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 8

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement.

For instance, in August 2009, Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, caused Yucaipa to purchase First Lien Debt from ComVest in contravention of the First Lien Credit Agreement, as amended by the Third Amendment.

As a result of Yucaipa's improper purchase of First Lien Debt, Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, caused Yucaipa to proclaim itself to be the Requisite Lender in breach of the Credit Agreement, as amended by the Third Amendment, which precludes Yucaipa from, among other things, voting First Lien Debt.  Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all

9

times acting in concert with each other, caused Yucaipa to improperly use its status as the purported Requisite Lender to prevent the First Lien Lenders from demanding Allied's compliance with the Credit Agreement, including excusing Allied's failure to pay required principal and interest when due.

Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, also caused Yucaipa to improperly use its status as the purported Requisite Lender to preclude a balance sheet restructuring during the Great Recession and the near collapse of the auto industry, which any other reasonable First Lien Lender (that did not own a supermajority of Allied's equity) would unquestionably pursue.

Further, Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, caused Yucaipa to improperly use its status as the purported Requisite Lender to derail the sale of Allied's assets to JCT by demanding a disproportionate share of the consideration that JCT was willing to pay.

Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, caused Yucaipa to improperly assert itself as the Requisite Lender, which caused Allied and the First Lien Lenders to incur millions of dollars in unnecessary legal costs in Georgia state court, New York state court, and Bankruptcy Court to determine who is rightfully the Requisite Lender, and which also delayed Allied's ability to consummate a Section 363 sale in the bankruptcy case, which in turn caused Allied and the First Lien Lenders to incur additional millions of dollars in unnecessary legal costs.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

10

## INTERROGATORY NO. 9

State all facts upon which You base Your contention that Mr. Tomczak played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 9

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the Third Amendment.  Upon information and belief, Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligations under the Third Amendment.  For instance, Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, did nothing to ensure that Yucaipa did not acquire First Lien Debt in excess of the amount permitted pursuant to Section 10.6(c) of the Third Amendment.  Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Tomczak), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligation pursuant to Section 10.6(j)(iii) of the Third Amendment to make a capital contribution of 50% of the face value of the First Lien Debt improperly held by Yucaipa.

11

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 10

Identify each act that You contend Mr. Tomczak committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 10

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum refers to its responses to Interrogatory No. 8 and Interrogatory No. 9.

## INTERROGATORY NO. 11

State all facts upon which You base Your contention that Mr. Tomczak was seeking to benefit himself individually at the expense of Allied.

## RESPONSE TO INTERROGATORY NO. 11

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

At all relevant times, Mr. Tomczak was a Yucaipa employee and an Allied director.  Upon information and belief, Mr. Tomczak did not receive any compensation in his capacity as an Allied director.  Rather, Yucaipa compensated Mr. Tomczak as a Yucaipa employee, whose duties as a Yucaipa employee included serving as a director of Allied.  As described in paragraph 135 of the Complaint, Mr. Tomczak, in his individual capacity, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement through his control of Yucaipa.  In doing so, upon information and belief, Mr. Tomczak was seeking to benefit himself individually by serving Yucaipa's interests (the entity that pays his compensation) at the expense of Allied's interest (the entity that paid him no compensation).

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

Dated:  August 31, 2015
      Wilmington, Delaware          **LANDIS RATH & COBB LLP**


       */s/  Kerri K. Mumford*
      Adam G. Landis (No. 3407)
      Kerri K. Mumford (No. 4186)
      919 Market Street, Suite 1800
      Wilmington, Delaware 19801
      Telephone: (302) 467-4400
      Facsimile: (302) 467-4450

      -and-

      Adam C. Harris
      David Hillman
      Robert J. Ward
      **SCHULTE ROTH & ZABEL LLP**
      919 Third Avenue
      New York, New York 10022
      Telephone: (212) 756-2000
      Facsimile: (212) 593-5955

      *Counsel to Spectrum Investment Partners, L.P.*

EXHIBIT 15.6

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**SPECTRUM INVESTMENT PARTNERS, L.P.'S RESPONSES AND OBJECTIONS TO
JOS OPDEWEEGH'S FIRST SET OF INTERROGATORIES**

Spectrum Investment Partners, L.P. ("Spectrum"), by and through its undersigned counsel, hereby responds and objects, pursuant to Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, to the First Set of Interrogatories of Jos Opdeweegh, dated June 10, 2015 (the "Interrogatories"), as set forth below.

## GENERAL OBJECTIONS

The subsequent general objections ("General Objections") are incorporated into each specific response and objection that follows.

1.    Spectrum objects to the Interrogatories, including each and every definition and instruction, to the extent that they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Local Rules of the United States District Court for the District of Delaware (collectively, the "Local Rules"), or any other applicable rules or laws.  Spectrum will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Rules, and any other applicable rules or laws.

2.    Spectrum objects to the Interrogatories to the extent that they seek disclosure of any information that is confidential, sensitive, proprietary, subject to trade secret protection, or otherwise protected from disclosure pursuant to applicable federal or state law.

3.    Spectrum objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter involved in this action and is not reasonably calculated to lead to the discovery of admissible evidence.

4.    Spectrum objects to the Interrogatories to the extent that they are vague, ambiguous, overbroad, and/or unduly burdensome.

5.    Spectrum objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, the work product doctrine, the common-interest privilege, or any other applicable privilege or immunity or limitation on discovery ("Privileged

2

Materials").  Unless specifically stated otherwise, Spectrum does not intend disclose any

Privileged Materials.  The inadvertent disclosure of any Privileged Materials is not a waiver of

any claim of privilege or other protection with respect to any Privileged Materials or any other

document or matter, all of which are expressly reserved.  Spectrum further reserves the right to

obtain the return of such information, prohibit its use in any manner, and/or demand the

destruction of any such information inadvertently disclosed in response to the Interrogatories.

6.      Spectrum objects to the Interrogatories to the extent that they seek

disclosure of information not within Spectrum's possession, custody, control, or knowledge.

7.      Spectrum objects to the Interrogatories to the extent that they purport to

request information that is public, already in Mr. Opdeweegh's possession, or otherwise

available from sources to which Mr. Opdeweegh also has access or sources that are more

convenient, less burdensome, and/or less expensive.

8.      Spectrum objects to the Interrogatories to the extent that they seek

information pertaining to persons or entities other than Spectrum.

9.      Spectrum objects to the Interrogatories to the extent that they are

argumentative, lack foundation, or incorporate allegations and assertions that are disputed or

erroneous.  By responding and objecting to the Interrogatories, Spectrum does not admit the

correctness of such assertions.

10.      Spectrum objects to the Interrogatories to the extent that they imply the

existence of facts or circumstances that do not or did not exist, and to the extent that they state or

assume legal conclusions.  In providing these objections and responses to the Interrogatories,

Spectrum does not admit the factual or legal premise of any Interrogatory.

3

11.     Spectrum objects to the Interrogatories to the extent that they are not limited to the claims or defenses in this action because they, for that reason alone, are overbroad and unduly burdensome, seek information irrelevant to the subject matter of this action, and are not calculated to lead to the discovery of admissible evidence.

12.     Spectrum objects to the Interrogatories to the extent that they impose unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice on Spectrum.

13.     Spectrum does not in any way waive or intend to waive, but rather preserves and intends to preserve: (a) all rights to object on any ground to the competence, relevance, materiality and admissibility of any document or information that may be produced in response to the Interrogatories or the subject matter thereof; (b) all rights to object on any ground to the use of any document or information that may be produced in response to the Interrogatories or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action; and (c) all rights to object on any ground to any request for further responses to the Interrogatories or any other document request.

14.     Spectrum objects to the definitions of the terms "Communication(s)," "Concerning," "Document(s)," "Identify," "Identity," "Person(s)," "Relate to," "Related to," and "Relating to" on the grounds that they are overbroad, unduly burdensome, vague, and ambiguous.  To the extent possible, Spectrum will construe these terms in accordance with their ordinary meanings.

15.     Spectrum's objections to the Interrogatories are made to the best of its present knowledge, information, and belief.  The objections are made without prejudice to the assertion of additional objections and responses by Spectrum at a later date and are made without

prejudice to Spectrum's rights to revise, correct, clarify, supplement, modify, or amend its

objections and responses as appropriate.

<b><u>SPECIFIC RESPONSES AND OBJECTIONS</u></b>

## <u>INTERROGATORY NO. 1</u>

State all facts upon which You base Your contention that Mr. Opdeweegh failed to comply with
his duty of loyalty to Allied.

## <u>RESPONSE TO INTERROGATORY NO. 1</u>

Spectrum objects to this Interrogatory on the grounds that Spectrum is not

asserting a breach of fiduciary duty claim against Mr. Opdeweegh.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less

expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information pertaining to persons or entities other than Spectrum.

## <u>INTERROGATORY NO. 2</u>

State all facts upon which You base Your contention that Mr. Opdeweegh failed to comply with
his duty of care to Allied.

## <u>RESPONSE TO INTERROGATORY NO. 2</u>

Spectrum objects to this Interrogatory on the grounds that Spectrum is not

asserting a breach of fiduciary duty claim against Mr. Opdeweegh.

Spectrum further objects to this Interrogatory on the grounds that it seeks

information that is already in Yucaipa's possession, or otherwise available from sources to which

5

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 3

Describe in detail each and every instance in which You contend that Mr. Opdeweegh used his position on the board of Allied to benefit Yucaipa.

## RESPONSE TO INTERROGATORY NO. 3

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Opdeweegh.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 4

Describe in detail each and every instance in which You allege that Mr. Opdeweegh took actions as a member of the board of Allied that were to the detriment of Allied.

## RESPONSE TO INTERROGATORY NO. 4

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Opdeweegh.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which

Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

**INTERROGATORY NO. 5**

Describe in detail any instance in which You allege that Mr. Opdeweegh took actions as a member of the board of Allied that were to the benefit of Yucaipa.

**RESPONSE TO INTERROGATORY NO. 5**

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Opdeweegh.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

**INTERROGATORY NO. 6**

State all facts upon which You base Your contention that Mr. Opdeweegh influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action.

**RESPONSE TO INTERROGATORY NO. 6**

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Opdeweegh.

Spectrum further objects to this Interrogatory on the grounds that it is vague and ambiguous to the extent that the Complaint does not allege that "Mr. Opdeweegh influenced Allied, at Yucaipa's direction, to bring suit against CIT in the Georgia Action."

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

**INTERROGATORY NO. 7**

State all facts upon which You base Your contention that that Mr. Opdeweegh failed to fulfill his fiduciary obligations with respect to negotiations between Allied and Jack Cooper between December 2011 and May 2012.

**RESPONSE TO INTERROGATORY NO. 7**

Spectrum objects to this Interrogatory on the grounds that Spectrum is not asserting a breach of fiduciary duty claim against Mr. Opdeweegh.

Spectrum further objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

## INTERROGATORY NO. 8

State all facts upon which You base Your contention that Mr. Opdeweegh played any role in Yucaipa's purported failure to perform in accordance with the terms of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 8

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Opdeweegh), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement.

For instance, in August 2009, Mr. Burkle and the Yucaipa Directors (including Mr. Opdeweegh), at all times acting in concert with each other, caused Yucaipa to purchase First Lien Debt from ComVest in contravention of the First Lien Credit Agreement, as amended by the Third Amendment.

As a result of Yucaipa's improper purchase of First Lien Debt, Mr. Burkle and the Yucaipa Directors (including Mr. Opdeweegh), at all times acting in concert with each other, caused Yucaipa to proclaim itself to be the Requisite Lender in breach of the Credit Agreement, as amended by the Third Amendment, which precludes Yucaipa from, among other things, voting First Lien Debt.  Mr. Burkle and the Yucaipa Directors (including Mr. Opdeweegh), at all

times acting in concert with each other, caused Yucaipa to improperly use its status as the purported Requisite Lender to prevent the First Lien Lenders from demanding Allied's compliance with the Credit Agreement, including excusing Allied's failure to pay required principal and interest when due.

Mr. Burkle and the Yucaipa Directors (including Mr. Opdeweegh), at all times acting in concert with each other, also caused Yucaipa to improperly use its status as the purported Requisite Lender to preclude a balance sheet restructuring during the Great Recession and the near collapse of the auto industry, which any other reasonable First Lien Lender (that did not own a supermajority of Allied's equity) would unquestionably pursue.

Further, Mr. Burkle and the Yucaipa Directors (including Mr. Opdeweegh), at all times acting in concert with each other, caused Yucaipa to improperly use its status as the purported Requisite Lender to derail the sale of Allied's assets to JCT by demanding a disproportionate share of the consideration that JCT was willing to pay.

Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Opdeweegh), at all times acting in concert with each other, caused Yucaipa to improperly assert itself as the Requisite Lender, which caused Allied and the First Lien Lenders to incur millions of dollars in unnecessary legal costs in Georgia state court, New York state court, and Bankruptcy Court to determine who is rightfully the Requisite Lender, and which also delayed Allied's ability to consummate a Section 363 sale in the bankruptcy case, which in turn caused Allied and the First Lien Lenders to incur additional millions of dollars in unnecessary legal costs.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

10

## INTERROGATORY NO. 9

State all facts upon which You base Your contention that Mr. Opdeweegh played any role in Yucaipa's purported failure to perform in accordance with the terms of the Third Amendment to the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 9

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

Mr. Burkle and the Yucaipa Directors (including Mr. Opdeweegh), at all times acting in concert with each other, intentionally and maliciously induced multiple breaches by Yucaipa of the Third Amendment. Upon information and belief, Mr. Burkle and the Yucaipa Directors (including Mr. Opdeweegh), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligations under the Third Amendment. For instance, Mr. Burkle and the Yucaipa Directors (including Mr. Opdeweegh), at all times acting in concert with each other, did nothing to ensure that Yucaipa did not acquire First Lien Debt in excess of the amount permitted pursuant to Section 10.6(c) of the Third Amendment. Moreover, Mr. Burkle and the Yucaipa Directors (including Mr. Opdeweegh), at all times acting in concert with each other, did nothing to ensure that Yucaipa performed its obligation pursuant to Section 10.6(j)(iii) of the Third Amendment to make a capital contribution of 50% of the face value of the First Lien Debt improperly held by Yucaipa.

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

## INTERROGATORY NO. 10

Identify each act that You contend Mr. Opdeweegh committed intentionally to induce breaches by Yucaipa of the First Lien Credit Agreement.

## RESPONSE TO INTERROGATORY NO. 10

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum refers to its responses to Interrogatory No. 8 and Interrogatory No. 9.

## INTERROGATORY NO. 11

State all facts upon which You base Your contention that Mr. Opdeweegh was seeking to benefit himself individually at the expense of Allied.

## RESPONSE TO INTERROGATORY NO. 11

Spectrum objects to this Interrogatory on the grounds that it seeks information that is already in Yucaipa's possession, or otherwise available from sources to which Yucaipa also has access or sources that are more convenient, less burdensome, and/or less expensive.

Spectrum further objects to this Interrogatory on the grounds that it seeks information pertaining to persons or entities other than Spectrum.

12

Subject to and without waiving the foregoing General Objections and Specific Objections, Spectrum responds as follows:

At all relevant times, Mr. Opdeweegh was a Yucaipa employee and an Allied director.  Upon information and belief, Mr. Opdeweegh did not receive any compensation in his capacity as an Allied director.  Rather, Yucaipa compensated Mr. Opdeweegh as a Yucaipa employee, whose duties as a Yucaipa employee included serving as a director of Allied.  As described in paragraph 135 of the Complaint, Mr. Opdeweegh, in his individual capacity, intentionally and maliciously induced multiple breaches by Yucaipa of the First Lien Credit Agreement through his control of Yucaipa.  In doing so, upon information and belief, Mr. Opdeweegh was seeking to benefit himself individually by serving Yucaipa's interests (the entity that pays his compensation) at the expense of Allied's interest (the entity that paid him no compensation).

Spectrum's investigation through discovery is ongoing and continues and Spectrum expressly reserves its right to supplement and/or modify this response as it deems appropriate.

Dated: August 31, 2015
      Wilmington, Delaware        **LANDIS RATH & COBB LLP**


        */s/ Kerri K. Mumford*
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

-and-

Adam C. Harris
David Hillman
Robert J. Ward
**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

*Counsel to Spectrum Investment Partners, L.P.*

14

EXHIBIT 16

# Schulte Roth & Zabel LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Writer's Direct Number
212.756.2166

Writer's E-mail Address
Robert.Ward@srz.com

August 31, 2015

**BY E-MAIL**

Kahn Scolnick
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California 90071

Re:  Black Diamond and Spectrum's Responses and Objections to the Yucaipa
Defendants' Requests for Admission and Interrogatories in *BDCM
Opportunity Fund II, LP, et al. v. Yucaipa Am. Alliance Fund I, L.P.*, Adv.
Proc. No. 14-50971 (CSS)

Dear Kahn:

On behalf of BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd.
(collectively, "Black Diamond") and Spectrum Investment Partners, L.P. ("Spectrum"), we write
in response to your letter dated August 13, 2015 ("Yucaipa's Letter") concerning Black Diamond
and Spectrum's responses to the Yucaipa Defendants' Requests for Admission ("RFAs") and
Interrogatories in the above-referenced adversary proceeding.

Yucaipa's RFA No. 17

RFA No. 17 seeks to have Black Diamond and Spectrum "Admit that You were
evaluating the possibility of [sic] equitable subordination claim in relation to Your Allied First
Lien Claims as of August 9, 2009."  In response, Black Diamond and Spectrum objected to RFA
No. 17 on the grounds that it is "vague, ambiguous, and [un]intelligible."

In Yucaipa's Letter, you claim that this RFA "is straightforward" and that it seeks
confirmation that one of the options that Black Diamond and Spectrum considered concerning
Allied's defaults "was in fact a claim of equitable subordination against other lenders."
(Yucaipa's Letter at 2.)  However, the plain text of RFA No. 17 asks about an "equitable
subordination claim *in relation to Your Allied First Lien Claims*," which is vague, ambiguous

Kahn Scolnick
August 31, 2015
Page 2

and unintelligible.  It does not ask about "a claim of equitable subordination *against other lenders*," as you now assert in Yucaipa's Letter.

In any event, in light of Judge Sontchi's Opinion dismissing Yucaipa's Counterclaim and finding that Yucaipa's allegations are not plausible, the issues of whether and when Black Diamond and Spectrum began considering a claim for equitable subordination against other Lenders are not relevant to any of the pending actions and are barred by collateral estoppel.  Accordingly, Black Diamond and Spectrum will not supplement their responses to RFA No. 17.

The Yucaipa Defendants' Interrogatories

Please find enclosed with this letter Black Diamond and Spectrum's responses and objections to the Yucaipa Defendants' 12 sets of Interrogatories.  Black Diamond and Spectrum disagree with your assertion that Black Diamond and Spectrum have waived their objections to the Interrogatories.  We note that the Yucaipa Defendants have suffered no prejudice from the fact that the responses are being served today rather than on July 31.  We further note that in these bankruptcy cases, Judge Sontchi has already ruled that late service of discovery responses does *not* constitute a waiver of objections without a showing a prejudice. (Adv. Case No. 13-50530 (CSS) (Bankr. D. Del.) D.I. 202 at 115.)

* * *

In responding to the issues raised in Yucaipa's Letter, Black Diamond and Spectrum reserve all of their objections to the Yucaipa Defendants' RFAs and Interrogatories and waive none.

Respectfully,

Robert J. Ward

Encls.

cc:    Nicholas Lagemann, Esq.
       John Massaro, Esq.

EXHIBIT 17

# Schulte Roth&Zabel LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Writer's Direct Number
212.756.2166

Writer's E-mail Address
Robert.Ward@srz.com

September 2, 2015

**BY E-MAIL**

Kahn Scolnick
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California 90071

Re:  Black Diamond and Spectrum's Responses and Objections to Yucaipa's
First Set of Requests for Production in *BDCM Opportunity Fund II, LP, et
al. v. Yucaipa Am. Alliance Fund I, L.P.*, Adv. Proc. No. 14-50971 (CSS)

Dear Kahn:

On behalf of BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd.
(collectively, "Black Diamond") and Spectrum Investment Partners, L.P. ("Spectrum"), we write
in response to your letter dated July 31, 2015 ("Yucaipa's Letter") concerning Black Diamond
and Spectrum's responses to Yucaipa's First Set of Requests for Production ("RFP") in the
above-referenced adversary proceeding (the "BD/S Adversary Proceeding").

As noted in Yucaipa's Letter, Black Diamond and Spectrum agreed to search for
documents responsive to RFP Nos. 50 and 51 and we will produce responsive documents, if any,
in short order.

As for the other issues raised in Yucaipa's Letter, our initial responses are set
forth below.  We propose having a telephonic conference call to meet and confer about these
issues and other discovery-related issues.

Yucaipa's RICO Allegations Are Barred by Collateral Estoppel

Yucaipa argues that the vast majority of RFPs identified in Yucaipa's Letter are
relevant to the allegations in its RICO Complaint (RFP Nos. 1, 2, 36, 38, 39, 40-46, 56).
However, the Bankruptcy Court's Opinion, dated August 21, 2015, found that the allegations in
Yucaipa's Counterclaims were not plausible and barred by the Covenant Not to Sue (the

Kahn Scolnick
September 2, 2015
Page 2

"Counterclaim Dismissal").  The allegations in Yucaipa's RICO Complaint are the same as the allegations raised in its Counterclaims, and thus subject to collateral estoppel.[1]

<u>Claims that Are Stayed in the Delaware Chancery Court</u>

        Yucaipa also seeks discovery in support of the allegations in its Delaware Chancery Court action challenging Black Diamond and Spectrum's governance of SBDRE. (RFP Nos. 39, 40, 41, 42, 43, 44, 46.)  However, Yucaipa's Delaware Chancery Court action is stayed, and thus it is entirely inappropriate for Yucaipa to seek discovery for its claims in that action through the "backdoor" of the BD/S Adversary Proceeding.  Accordingly, Black Diamond and Spectrum stand on their objections to RFP Nos. 39, 40, 41, 42, 43, 44 and 46.

<u>Equitable Subordination of Lenders Other Than Yucaipa (RFP No. 36)</u>

        RFP No. 36 seeks documents concerning "the equitable subordination of First Lien Debt held by any Lender other than Yucaipa."  Moreover, this RFP is vague.  Given that no Lender under the Credit Agreement has been equitably subordinated, it is entirely unclear what documents this RFP seeks.  Yucaipa's Letter attempts to clarify this ambiguity by stating that it seeks "documents discussing the concept of equitably subordinating any other Lender's claims."

        In any event, in addition to this RFP lacking relevance in light of the Counterclaim Dismissal (as discussed above) and being vague, this RFP is over broad to the extent that it seeks information concerning Lenders other than Black Diamond, Spectrum and Yucaipa.  Accordingly, Black Diamond and Spectrum stand on their objections to RFP No. 36.

<u>Employee Compensation (RFP No. 52)</u>

        RFP No. 52 seeks documents concerning the compensation paid to the officers, directors, employees, consultants, or representatives of Black Diamond and Spectrum "based on equitably subordinating or disallowing any First Lien Debt held by Yucaipa."  Notwithstanding that this RFP seeks irrelevant information, as set forth above, Black Diamond and Spectrum can confirm that they do not pay any of their officers, directors, employees, consultants, or representatives based on equitably subordinating or disallowing any First Lien Debt held by Yucaipa.  Accordingly, without waiving their objections to RFP No. 52, Black Diamond and Spectrum will not search for responsive documents because none exist.

<u>Value of Investments in Allied (RFP No. 37)</u>

        RFP No. 37 seeks documents "evidencing any attempt to estimate or value Your or any other Lender's investment in Allied."  In Yucaipa's Letter, without addressing how this RFP is even relevant, Yucaipa argues that Black Diamond and Spectrum's objections are unwarranted given that "there is a protective order in place to protect any confidential or proprietary information responsive to this request."  (Yucaipa's Letter at 4.)

---

[1] Prior to the Counterclaim Dismissal, Black Diamond and Spectrum had agreed to search for documents responsive to RFP No. 38 (documents concerning the so-called "Involuntary Petition Payoff"), but in light of the Counterclaim Dismissal, RFP No. 38 is no longer relevant.

Kahn Scolnick
September 2, 2015
Page 3

   Black Diamond and Spectrum's objections are not limited to the commercial sensitivity of the documents responsive to this RFP.  Black Diamond and Spectrum also objected to this RFP on the grounds of, among other things, relevance.  Yucaipa has made no attempt to explain how Black Diamond and Spectrum's subjective valuation of their investment in Allied – let alone other Lenders' investment in Allied – is relevant to the BD/S Adversary Proceeding.  This RFP is also overbroad and unduly burdensome to the extent that it seeks documents concerning Lenders other than Black Diamond, Spectrum or Yucaipa.  In addition, the phrase "investment in Allied" is vague because it is not clear whether that phrase is limited to First Lien Debt, or whether it also includes equity, second lien debt, or some other form of "investment in Allied."  Accordingly, Black Diamond and Spectrum stand on their objections to RFP No. 37.

<u>The AMMC Trade (RFP No. 6)</u>

   RFP No. 6 seeks documents concerning "any potential or actual acquisition by Black Diamond and/or Spectrum of the First Lien Debt held by AMMC."  In Yucaipa's Letter, Yucaipa argues that Black Diamond and Spectrum cannot refuse to search for such documents based on the fact that they are already in Yucaipa's possession, custody and control.  (Yucaipa's Letter at 4-5.)

   Yucaipa, however, ignores the fact that Black Diamond and Spectrum also objected to this RFP based on, among other things, relevance.  In particular, Black Diamond and Spectrum's acquisition of AMMC's First Lien Debt may have been relevant to the determination of whether Black Diamond and Spectrum are the Requisite Lenders – a determination which has already been made by the Bankruptcy Court.  However, Yucaipa has failed to explain how AMMC's First Lien Debt is relevant to the BD/S Adversary Proceeding.

   In any event, Black Diamond and Spectrum have already disclosed to Yucaipa documents sufficient to show their acquisition of AMMC's First Lien Debt.  While Yucaipa also seeks documents concerning "any *potential* . . . acquisition" of AMMC's First Lien Debt, Yucaipa has made no attempt to explain the relevance, if any, of such hypothetical transactions.  Given that Yucaipa already has in its possession documents sufficient to show the Black Diamond and Spectrum acquired AMMC's First Lien Debt, and given that Yucaipa has utterly failed to show the relevance of RFP No. 6, Black Diamond and Spectrum stand on their objections to RFP No. 6.

* * *

Kahn Scolnick
September 2, 2015
Page 4

      In responding to the issues raised in Yucaipa's Letter, Black Diamond and Spectrum reserve all of their objections to Yucaipa's RFPs.

Respectfully,

Robert J. Ward

cc:    Nicholas Lagemann, Esq.
        John Massaro, Esq.

EXHIBIT 18

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Kahn A. Scolnick
Direct: +1 213.229.7656
Fax: +1 213.229.6656
KScolnick@gibsondunn.com

October 22, 2015

VIA ELECTRONIC MAIL

Adam C. Harris
David Hillman
Robert J. Ward
Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022

Re:     Allied Litigation:  Black Diamond's and Spectrum's privilege logs

Dear Adam, David, and Bob:

I write as counsel for Yucaipa in a good-faith attempt to meet and confer regarding the
inadequacy of the privilege logs produced by BDCM Opportunity Fund II, LP and Black
Diamond CLO 2005-1 Ltd. (collectively, "Black Diamond") and Spectrum Investment
Partners L.P. ("Spectrum," and collectively with Black Diamond, "BD/S") on August 1,
2015.

As identified below, BD/S's privilege logs are deficient in a number of respects.  I provide
the following examples in the hopes of resolving these issues expeditiously without the need
to seek relief from the Court.  This letter is not meant to be a comprehensive list of all
deficiencies in the logs and we reserve the right to raise additional issues as they become
apparent.  We would be happy to discuss any of the issues set forth in this letter in a
telephonic conference if that would assist in moving things forward.

**Global Issues With BD/S's Privilege Logs**

There are global issues with the BD/S logs that need to be corrected.  Black Diamond's log
fails to include the dates of any of the communications identified.  Spectrum's log fails to
include the basis for the privilege being asserted, such as whether it is being withheld under
the attorney-client privilege, work-product protection, something else, or some combination
of these.  *See, e.g.*, *Wei v. Bodner*, 127 F.R.D. 91, 96 (D.N.J. 1989) ("At a minimum, for
each document asserted to be protected . . . the defendants must provide both plaintiff and the
Court with *the date of the document*, the name of its author, the name of its recipient, the
names of all people given copies of the document, the subject of the document *and the
privilege or privileges asserted*." (emphases added)).

**GIBSON DUNN**

Robert J. Ward
October 22, 2015
Page 2

Spectrum's log also appears to have numerous entries with an incomplete or cut-off description. For example, entry No. 788, dated 4/15/2009, reads "Confidential communication concerning legal advice regarding a Request for." Another, entry No. 1895, dated 6/12/2012, reads "Confidential communications concerning legal advice regarding Gendredsy's relation to." Given these inadequacies, the logs fail to meet the basic requirements for establishing privilege—namely, "the description of each document and its contents must be sufficiently detailed to allow the court to determine whether the elements of attorney-client privilege . . . have been established." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 475 (E.D. Pa. 2005).

In short, BD/S's deficient logs make it nearly impossible for Yucaipa to properly assess the claimed privilege.

<u>**Specific Issues with BD/S's Privilege Descriptions**</u>

There are also material deficiencies in the quality of the individual descriptions included in the BD/S logs. A proper claim of attorney-client privilege "requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality." *International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D. Del. 1974). Likewise, a party asserting work-product protection must "identify the withheld documents with sufficient particularly that the opposing counsel can intelligently argue that the privilege ought not to apply." *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1439 (D. Del. 1989).

The descriptions in the BD/S logs do not meet these basic standards. Examples of deficient descriptions include the following:

- Black Diamond Log page 27: "Confidential communications concerning legal advice regarding memo."
- Spectrum Log No. 554: "Confidential communications concerning legal advice regarding CIT."
- Black Diamond Log page 22: "Communications concerning legal advice regarding communications with the company."
- Black Diamond Log page 39: "Confidential communication proving [sic] legal advice regarding Georgia action."
- Spectrum Log No. 924: "Confidential communication concerning legal advice regarding conference call."
- Spectrum Log No. 382: "Confidential communications concerning legal advice regarding a term sheet.
- Spectrum Log No. 727: "Confidential communications concerning legal advice regarding bid.

# GIBSON DUNN

Robert J. Ward
October 22, 2015
Page 3

- Spectrum Log No. 1063: "Confidential communications concerning legal advice regarding related litigation."
- Spectrum Log No. 933: "Confidential communications concerning legal advice regarding exposure."
- Black Diamond Log page 36: "Confidential communication containing legal advice regarding litigation budget."
- Black Diamond Log page 1: "Confidential communications concerning counsel with information for the purpose of a memo."

Moreover, a number of your entries provide information that indicates the entries would not include privileged communications at all.  For example, some entries state "[c]onfidential communication concerning legal advice regarding CIT as collateral agent," where no attorney is identified as a party to the communication.

To take another example, entry No. 94 on Spectrum's log asserts privilege over a communication between Jeffrey Buller and Jeffrey Schaffer, with no attorney present, with a description that states:  "Confidential communications concerning legal advice regarding Ropes engagement."  This description does not say whether the communication is asking for, relaying, or otherwise communicating privileged information, leaving Yucaipa unable to assess the assertion of privilege.  There are more than 50 such entries between Mr. Buller and Mr. Schaffer alone on Spectrum's log.[1]  Black Diamond's log presents the same issue, as there are numerous communications between Richard Ehrlich and Les Meier, and Richard Ehrlich and Stephen Deckoff, without attorneys present and without an adequate description as to what privilege is being asserted (*see e.g.*, entry Nos. 977, 1195).

Likewise, BD/S's logs contain hundreds of entries where no attorney was present on the communication, and the accompanying descriptions fail to identify how communications between different parties could be privileged.  For example, it is unclear how entries like Black Diamond's No. 1902, between Richard Ehrlich and Jeffrey Schaffer, withheld as "[c]onfidential communication containing legal advice regarding the Riggs et al v. Comvest et al Florida action," are actually privileged.

The use of the rote phrase "[c]onfidential communications concerning legal advice," rather than specific descriptions, is insufficient to preserve the confidentiality of these documents

---

[1]  *See e.g.*, entry Nos. 91, 94, 119, 120, 145, 287, 288, 289, 514, 555, 610, 652, 680, 686, 687, 688, 689, 696, 705, 707, 737, 738, 744, 842, 858, 906, 907, 1074, 1075, 1120, 1202, 1264, 1265, 1435, 1565, 1634, 1686, 1688, 1848, 1849, 1908, 2011, 2012, 2290, 2292, 2293, 2294, 2313, 2337, 2339, 2341, 2342, 2344, 2345, 2356, 2363, 2364, 2378, 2400, 2448, 2449, 2456, 2490, 2491, 2606, 2719, 2731.

**GIBSON DUNN**

Robert J. Ward
October 22, 2015
Page 4

and communications, and leaves Yucaipa (and eventually the Court) unable to determine whether the assertion of privilege was proper.  Accordingly, please provide amended logs that meet the applicable standards of particularity so that Yucaipa and the Court may properly assess the claimed privilege.

## Common-Interest Doctrine

Both Black Diamond and Spectrum appear to be withholding documents on the basis of the common-interest doctrine, based on the number of entries identifying non-attorney third parties as part of the withheld communication or document.[2]  However, the common-interest doctrine is not a proper basis for Black Diamond and Spectrum to withhold documents that are not already privileged:  "the common interest privilege assumes the existence of a valid underlying privilege."  I Epstein, The Attorney-Client Privilege & The Work-Product Doctrine 274 (ABA 5th ed. 2007); *see Cavallero v. United States*, 284 F.3d 236, 251 (1st Cir. 2002) ("One cannot create a privilege, where previously there was none, simply by introducing a third party (with or without common interest) into the circle within which documents are shared.").

Accordingly, the common-interest doctrine cannot shield communications between third parties without inclusion of their respective counsel.  *Schachar v. Am. Academy of Ophthalmology, Inc.*, 106 F.R.D. 187, 193 (N.D. Ill. 1985) ("[T]he court knows of no privilege attending communications between co-plaintiffs in a civil action unless such actions were part of a joint communication with an attorney."); *see also Leader Technologies, Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010) ("Communications *between clients and attorneys* 'allied in a common legal cause' remain protected because it is reasonable to expect that parties pursuing common legal interests intended resultant disclosures to be 'insulated from exposure beyond the confines of the group.'" (emphasis added)).

Nor does the common-interest doctrine insulate otherwise ordinary business discourse made for any purpose other than "securing, advancing, or supplying legal representation" between BD/S and third parties.  *Leader Technologies*, 719 F. Supp. 2d at 376.  Most importantly, for a communication to be protected, the interests must be "identical, not similar, and be legal, not solely commercial."  *Id.*  Accordingly, BD/S must either amend their logs to properly

---

[2]  While Black Diamond's log indicates "CI" for numerous entries under the "Basis for Privilege" part of their log, which presumably is intended to assert a common-interest privilege, Spectrum's log does not expressly assert the common-interest privilege anywhere.

**GIBSON DUNN**

Robert J. Ward
October 22, 2015
Page 5

assert a common-interest privilege by clearly identifying an identical legal interest in the description, or produce those documents.

To the extent BD/S, and the other parties included in communications identified in their privilege logs, formalized their legal cooperation in a common-interest or joint defense agreement, please provide Yucaipa with that document or confirm in writing that no such formal agreement exists.

### Waiver of Privilege

Finally, Black Diamond and/or Spectrum appear to be asserting privilege over communications that have already been produced in this litigation.  For example, entry No. 280 on Spectrum's log identifies a communication on October 6, 2008 at 18:14:19 from Bala Ramakrishnan that is being withheld as "[c]onfidential communications concerning legal advice regarding the Broadpoint preliminary report."  This appears to be referencing e-mail communications contained in SPEC 0004337, which were produced more than two years ago on April 19, 2013.  Moreover, from a review of this document, it is clear that this document is not privileged.  Nowhere on the document is any communication made "for the purpose of securing primarily . . . an opinion on law or [] legal services or [] assistance in some legal proceeding."  *Willemijn Houdstermaatschaapij*, 707 F. Supp. at 1442.

Likewise, entry No. 29 on Spectrum's log identifies a communication on August 18, 2008 from Bala Ramakrishnan that is being withheld as "[c]onfidential communication concerning legal advice regarding choice of counsel."  This also appears to be a document produced more than two years ago at SPEC 0012560.  This same document appears to coordinate with several of Black Diamond's entries on page 2 of their log being withheld as "Confidential communications concerning legal advice regarding the first lien lenders group and its selection of counsel."  However, from a review of SPEC 0012560, it does not appear that any of these communications is privileged, as none involves an attorney, or appears to have been made "for the purpose of securing" legal advice.  *Id.*

We are still evaluating how widespread this issue is, but in the meantime we request that you reconcile your logs with your productions accordingly or take any other action you deem appropriate.

***

We look forward to working with you to promptly sort through the issues outlined in this letter.

**GIBSON DUNN**

Robert J. Ward
October 22, 2015
Page 6

Sincerely,

/s/

Kahn A. Scolnick

cc:     Adam G. Landis
        Kerry Mumford
        Nick Lagemann

KAS/irg