## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ASHINC Corporation, *et al.*,<br><br>     Debtors. | Chapter 11<br><br>Case No. 12-11564 (CSS)<br>(Jointly Administered) |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT,<br><br>     Plaintiffs,<br><br>v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK,<br><br>     Defendants. | Adv. Proc. No. 14-50971 (CSS) |

## THE YUCAIPA DEFENDANTS' OPPOSITION TO BLACK DIAMOND &

## SPECTRUM'S CROSS-MOTION TO STRIKE AFFIRMATIVE DEFENSES

# TABLE OF CONTENTS

Page

I.     PRELIMINARY STATEMENT ...................................................................... 1

II.    BACKGROUND ........................................................................................... 3

III.   ARGUMENT ................................................................................................ 5

       A.    BD/S's Motion Is Procedurally Improper ............................................. 5

       B.    BD/S Have Not Met Their Burden Under Rule 12(f) ............................. 6

             1.    Yucaipa's Defenses Easily Meet the Applicable Pleading Standard .......... 6

             2.    BD/S Advance an Overly Broad Reading of the Counterclaim
                   Dismissal Order ........................................................... 9

             3.    The Yucaipa Defendants' Affirmative Defenses Are Not
                   Redundant, Immaterial, Impertinent, or Scandalous ............................... 11

             4.    Yucaipa's Affirmative Defenses Do Not Cause Prejudice to BD/S ......... 12

       C.    Dismissal of the Affirmative Defenses Would Result in Serious Prejudice
             to the Yucaipa Defendants ................................................................... 12

       D.    Leave to Amend ................................................................................. 16

IV.    CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ambac Assurance Corp. v. Adelanto Pub. Util. Auth.*,
    No. 09–5087–JFK, 2012 WL 1589597 (S.D.N.Y. May 7, 2012)..............................................8

*Bayer CropScience AG v. Dow AgroSciences LLC*,
    No. 10–1045–RMB/JS, 2011 WL 6934557 (D. Del. Dec. 30, 2011)...................................7, 8

*BDCM Opp. Fund II, LP v. Yucaipa Am. Alliance Fund I, LP*,
    112 A.D.3d 509 (N.Y. App. Div. 2013) ..............................................................................10

*Boatright v. Crozer-Keystone Health Sys.*,
    No. 14-7041, 2015 WL 4506559 (E.D. Pa. July 24, 2015) ...................................................13

*Charpentier v. Godsil*,
    937 F.2d 859 (3d Cir. 1991)...............................................................................................16

*Cipollone v. Liggett Group, Inc.*,
    789 F.2d 181 (3d Cir. 1986)..................................................................................................6

*Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*,
    160 F.3d 982 (3d Cir. 1998)..................................................................................................3

*Fleet Nat'l Bank v. Hartstone*,
    No. 96-10166-NG, 1997 WL 557564 (D. Mass. May 29, 1997)............................................11

*Gate Guard Servs. L.P. v. Perez*,
    14 F. Supp. 3d 825 (S.D. Tex. 2014) .....................................................................................5

*Internet Media Corp. v. Hearst Newspapers, LLC*,
    No. 10–690–SLR, 2012 WL 3867165 (D. Del. Sept. 6, 2012).............................................7, 8

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
    458 F.3d 244 (3d Cir. 2006)................................................................................................11

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
    292 F.R.D. 167 (D. Del. 2013) ........................................................................................5, 6

*In re New Valley Corp. v. Corp. Prop. Assocs.*,
    181 F.3d 517 (3d Cir. 1999)..................................................................................................3

*Newborn Bros. v. Albion Eng'g Co.*,
    299 F.R.D. 90 (D.N.J. 2014)...........................................................................................7, 12

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)...........................................................................................................12

## TABLE OF AUTHORITIES
(continued)

Page(s)

*S. Track & Pump, Inc. v. Terex Corp.*,
    722 F. Supp. 2d 509 (D. Del. 2010) .......................................................................9

*Sheridan v. E.I. duPont de Nemours & Co.*,
    No. 93-46-SLR, 1994 WL 468711 (D. Del. Mar. 28, 1994) ....................................6

*Signature Bank v. Check-X-Change, LLC*,
    No. 12–2802–ES, 2013 WL 3286154 (D.N.J. June 27, 2013) ...............................13

*Smith v. Giant Eagle, Inc.*,
    No. 10–01644, 2011 WL 1706520 (W.D. Pa. May 4, 2011)..................................11

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006)......................................................................................9

*Tyco Fire Prods. LP v. Victaulic Co.*,
    777 F. Supp. 2d 893 (E.D. Pa. 2011) ..............................................................2, 7, 8

*U.S. v. Walerko Tool & Eng'g Corp.*,
    784 F. Supp. 1385 (N.D. Ind. 1992) .........................................................................6

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
    252 F.3d 316 (4th Cir. 2001) ....................................................................................2

*Yurman Design Inc. v. Chaindom Enters., Inc.*,
    No. 99–9307–JFK, 2000 WL 897141 (S.D.N.Y. July 5, 2000)................................8

**Other Authorities**

5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus,
    Federal Practice & Procedure § 1380 (3d ed. 2016) .......................................2, 5, 6

**Rules**

Fed. R. Civ. P. 8 ...........................................................................................................2, 7, 8, 9

Fed. R. Civ. P. 9(b) ...........................................................................................................8, 9

Fed. R. Civ. P. 12(f)(2) ...........................................................................1, 2, 4, 5, 6, 11, 12, 13

Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively, "Yucaipa"), Jos Opdeweegh, Derex Walker, Jeff Pelletier, Ira Tochner and Joseph Tomczak (collectively, the "Director Defendants" and with Yucaipa, the "Yucaipa Defendants") submit this opposition to the cross-motion to strike Yucaipa's affirmative defenses brought by BDCM Opportunity Fund II, L.P. and Black Diamond CLO 2005-1 LTD. (collectively, "Black Diamond") and Spectrum Investment Partners, L.P. ("Spectrum" and with Black Diamond, "BD/S").

## I.      PRELIMINARY STATEMENT

BD/S responded to Yucaipa's pending motion to compel with a cross-motion under Rule 12(f) to strike Yucaipa's affirmative equitable defenses of unclean hands, waiver, estoppel, consent, and laches.  (D.I. 136 at 31-35.)  BD/S's cross-motion is both procedurally flawed and substantively baseless.  In reality, BD/S invite plain error by asking this Court to strip the Yucaipa Defendants of their fundamental rights to mount a defense.  Most importantly, because the affirmative defenses that BD/S seek to strike are equitable in nature, a motion to strike in connection with Yucaipa's discovery efforts would necessarily create an unworkable discovery process, as individual facts that support equitable defenses are indistinguishable from those supporting other defenses.  The Court should deny BD/S's motion for each of the following independently sufficient reasons.

**1.**      A motion to strike under Rule 12(f) must be made "within *21 days* after being served" with the answer.  Fed. R. Civ. P. 12(f) (emphasis added).  The Yucaipa Defendants answered BD/S's complaint and specifically asserted their challenged affirmative defenses in February 2015.  (D.I. 19.)  BD/S then waited *18 months* to bring their cross-motion, rendering it untimely and deficient on its face.

**2.**      Even if the Court is inclined to overlook the cross-motion's procedural defect and proceed to the merits, BD/S's sole asserted basis for striking the defenses is this Court's August 2015 dismissal of Yucaipa's Counterclaim for equitable subordination.  Among other things, this Court found specific aspects of Yucaipa's Counterclaim not sufficiently "plausible" to meet the

1

pleading standard of Rule 12(b)(6).  But counterclaims and affirmative defenses are "evaluate[d] . . . through a markedly different lens[.]"  *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 901 (E.D. Pa. 2011).  Affirmative defenses are not required to meet Rule 12(b)(6)'s plausibility standard—they need only provide notice to the plaintiff under Rule 8.  And affirmative defenses may not be stricken unless they are "insufficient[,] . . . redundant, immaterial, impertinent, or scandalous[.]"  Fed. R. Civ. P. 12(f).  BD/S have not even tried to articulate how Rule 12(f)'s standard has been met here (indeed, it has not).

**3.**    Striking the Yucaipa Defendants' equitable defenses would turn discovery in this case into a procedural and administrative quagmire.  BD/S brought this belated cross-motion now only as part of their attempt to block Yucaipa's discovery efforts.  But BD/S gave no explanation as to how they would individually distinguish between facts sought in discovery that would related to Yucaipa's equitable defenses and facts sought in discovery that relate to Yucaipa's more general defenses.  This forecasts BD/S's wholesale refusal to provide responses to Yucaipa's discovery requests, which would impact ***all*** of Yucaipa's defenses (including, for instance, the defenses of unjust enrichment, ratification, failure to mitigate, and the business judgment rule).  BD/S's motion to strike does not merely seek to prohibit argument at trial—it seeks to dramatically compress Yucaipa's fundamental right to defend itself by discovering facts that relate to ***all*** of its defenses.

**4.**    Relatedly, the striking of these affirmative defenses would cause serious prejudice to the Yucaipa Defendants.  BD/S are positioning the case so that the fact-finder hears only BD/S's version of a long and complicated set of facts, events, and transactions—leaving Yucaipa and individual Director Defendants effectively gagged at trial, unable to defend themselves by giving the fact-finder the complete picture of what happened, and why.  Indeed, BD/S's strategy in bringing this motion now, explicitly to block Yucaipa's legitimate discovery efforts, highlights why Rule 12(f) motions are viewed with "disfavor."  5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice & Procedure § 1380 (3d ed. 2016) (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (noting that

"striking a portion of a pleading is a drastic remedy [that] often is sought by the movant simply as a dilatory or harassing tactic")).  The discovery produced by BD/S thus far, while woefully inadequate, contains admissions too numerous to ignore that call into question the cleanliness of their hands, including the admission that Spectrum privately believed that Yucaipa was

███████████████████████████████████████ (D.I. 144 (Scolnick Reply Decl.), Ex. 33), while at the same time working with Black Diamond to explore "litigation options" against Yucaipa in the context of an involuntary bankruptcy (D.I. 121 (Scolnick Decl.), Ex. 21 at 31; Ex. 22 at 80).

It would be manifestly unfair, and violative of the Yucaipa Defendants' due process rights, to prevent them from pursuing their defenses.  Particularly where BD/S's core claim requires them to prove that Yucaipa behaved "inequitabl[y]," *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986-87 (3d Cir. 1998) (elements of equitable subordination), the Yucaipa Defendants must be permitted to show, for instance, that BD/S acted wrongfully and in bad faith, such that the balance of equities does not warrant granting BD/S relief.  *In re New Valley Corp. v. Corp. Prop. Assocs.*, 181 F.3d 517, 522-23 (3d Cir. 1999) (elements of "unclean hands" defense).

In sum, the Yucaipa Defendants respectfully request that this Court deny BD/S's cross-motion to strike their affirmative defenses.

## II.    BACKGROUND

In May 2012, BD/S forced Allied Systems Holdings, Inc. ("Allied") into Chapter 11 bankruptcy by filing an involuntary bankruptcy petition.  (Case No. 12-11564-CSS, D.I. 1.) Since then, BD/S and Yucaipa have litigated a series of related and overlapping adversary proceedings.

On November 19, 2014, BD/S filed the present adversary action, alleging causes of action for:  (i) equitable subordination against Yucaipa; (ii) breach of the First Lien Credit Agreement, as amended by the third amendment to the First Lien Credit Agreement, against Yucaipa; (iii) breach of the duty of good faith and fair dealing against Yucaipa; and (iv) tortious

interference with contract against the Director Defendants.  (A.P. No. 14-50971-CSS, D.I. 1 ¶¶ 107-41.)

On February 19, 2015, the Yucaipa Defendants answered BD/S's complaint and Yucaipa also filed a counterclaim against BD/S for equitable subordination.  (A.P. No. 14-50971-CSS, D.I. 19.)  The Yucaipa Defendants' answer asserted fifteen affirmative defenses, including estoppel, waiver, unclean hands, consent, and laches.  (*Id.*)

BD/S moved to dismiss Yucaipa's Counterclaim (but did not move to strike the affirmative defenses).  On August 21, 2015, this Court granted BD/S's motion to dismiss with prejudice (the "Counterclaim Dismissal").  (*Id.*, D.I. 19; D.I. 82; D.I. 83.)  This Court cited three specific grounds for the dismissal:  (i) a contractual covenant not to sue and related prohibition on Yucaipa asserting claims against other lenders; (ii) collateral estoppel; and (iii) implausibility under Rule 12(b)(6).  (*Id.*, D.I. 82.)[1]  Only the implausibility findings are relevant here.

Specifically, the Court found it implausible that: (i) Black Diamond transferred first lien debt to Spectrum to secure the latter's participation in the involuntary petition; (ii) BD/S "orchestrated Yucaipa's purchase of First Lien Debt in order to later equitably subordinate Yucaipa's claims"; (iii) BD/S were waiting for the optimal time to file their equitable subordination counterclaim; and (iv) "economic actors, such as [BD/S], would take that much litigation risk" just to frustrate Yucaipa's attempt to acquire unrestricted first lien debt.  (A.P. No. 14-50971-CSS, D.I. 82 at 58-65.)

Yucaipa moved for leave to appeal that order, but the District Court denied the motion. (*See* D. Ct. No. 15-mc-00232-SLR, D.I. 1; D.I. 20.)

One year later, on July 22, 2016, the Yucaipa Defendants moved to compel discovery from BD/S.  (A.P. No. 14-50971-CSS, D.I. 119.)  On August 12, 2016, BD/S filed their

---

[1] The Court's implausibility findings are arguably dicta.  (*See* Counterclaim Dismissal at 45 ("Although, these findings [regarding the covenant not to sue and appearance prohibition]are sufficient to resolve the motion to dismiss, the Court will address the parties' additional arguments regarding collateral estoppel and whether the Counterclaim is plausible . . . .").)

opposition to Yucaipa's motion to compel, which included a cross-motion to strike certain affirmative defenses.  (*Id.*, D.I. 136.)  BD/S's counsel did not meet and confer with the Yucaipa Defendants' counsel at any time before filing their cross-motion.  (Scolnick Decl., ¶ 4.)

## III.    ARGUMENT

This Court should deny BD/S's cross-motion to strike because:  (A) it is procedurally improper; (B) it does not satisfy the substantive requirements of Rule 12(f); and (C) the Yucaipa Defendants would be severely prejudiced by the striking of their affirmative defenses.

## A.    BD/S's Motion Is Procedurally Improper

BD/S concede that their motion to strike is untimely.  (D.I. 136 at 31, n.16.)  A party may bring a motion to strike under Rule 12(f) only "before responding to the pleading" or "within 21 days of being served with the pleading."  Fed. R. Civ. P. 12(f)(2).  Here, Yucaipa filed and served its answer on February 19, 2015, so BD/S's motion is more than 17 months too late.

BD/S also waived their Rule 12(f) objections by failing to include them in their prior Rule 12 motion to dismiss Yucaipa's Counterclaim.  Under Rule 12(g), BD/S may not bring a second Rule 12 motion "raising a defense or objection that was available to the party but omitted from [an] earlier motion."  *See also* 5C Wright, *supra*, Federal Practice & Procedure § 1385 (explaining that Rule 12(g) "generally precludes a second motion based on any Rule 12 defense or objection that the [party] could have but neglected to raise in the original motion . . . .  The right to raise these defenses by preliminary motion is lost when the defendant neglects to consolidate them in his initial motion.").

BD/S nevertheless argue that this Court should excuse their procedural errors.  They invite the Court to exercise its discretion to strike Yucaipa's defenses "on its own" motion.  (D.I. 136 at 31, n.16.)  The Court should decline BD/S's invitation, which incidentally was raised only in a footnote.  *See Gate Guard Servs. L.P. v. Perez*, 14 F. Supp. 3d 825, 833 (S.D. Tex. 2014) ("[A]n argument raised in a footnote is insufficient and may be disregarded by the Court").

Courts should take great care in exercising their discretion to strike defenses under Rule 12(f), because striking defenses is "generally disfavored."  *Joao Bock Transaction Sys.,*

*LLC v. Jack Henry & Assocs., Inc.*, 292 F.R.D. 167, 170-71 (D. Del. 2013).  As explained by a leading treatise, "[b]oth because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted."  5C Wright, *supra*, Federal Practice & Procedure § 1380. Such caution would be appropriately exercised here, where BD/S brought this motion in an explicit attempt to avoid responding to legitimate discovery requests.

In seeking to excuse their 17-month delay in making this request, BD/S cite only two cases, neither of which advances their argument.  (D.I. 136 at 31, n.16.)  In the first, the party's motion to strike was only *four days* late.  *U.S. v. Walerko Tool & Eng'g Corp.*, 784 F. Supp. 1385, 1387 (N.D. Ind. 1992).  The second case did not even deal with a motion to strike affirmative defenses or specify how tardy the motion was.  *Sheridan v. E.I. duPont de Nemours & Co.*, No. 93-46-SLR, 1994 WL 468711, at *10-12 (D. Del. Mar. 28, 1994).

## B.    BD/S Have Not Met Their Burden Under Rule 12(f)

BD/S do not, and cannot, meet Rule 12(f)'s standard by showing that the challenged defenses are "insufficient[,] . . . redundant, immaterial, impertinent, or scandalous."  Motions to strike "ordinarily are denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues."  *Joao Bock Transaction Systems, LLC*, 292 F.R.D. at 170 (citations omitted).  A court ruling on a motion to strike "must construe all facts in favor of the nonmoving party," and must deny the motion "unless it appears to a certainty that . . . [the movant] would succeed despite any state of the facts which could be proved in support of the defense."  *Id.* at 170-71 (citations omitted); *see also Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986) ("a court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent'" (quotation marks and citation omitted)).

### 1.    Yucaipa's Defenses Easily Meet the Applicable Pleading Standard

BD/S argue that the dismissal of Yucaipa's Counterclaim renders the five challenged

affirmative defenses "legally insufficient." (D.I. 136 at 32.) But "[a]n affirmative defense is insufficient if it is not recognized as a defense to the cause of action." *Newborn Bros. v. Albion Eng'g Co.*, 299 F.R.D. 90, 93-94 (D.N.J. 2014) (citations omitted) (internal quotation marks omitted). BD/S do not (and could not) argue that equitable defenses like waiver, consent, unclean hands, laches, and estoppel are "not recognized" as defenses to BD/S's equitable cause of action for subordination or their other related claims against the Yucaipa Defendants.

Instead, BD/S hinge their entire motion on the fact that this Court previously dismissed Yucaipa's Counterclaim for equitable subordination. (D.I. 136 at 31-32.) But to the extent this Court found certain allegations not "plausible" in dismissing Yucaipa's Counterclaim, that is irrelevant here, because the legal sufficiency of Yucaipa's defenses is not assessed through the "plausibility" framework.

Counterclaims and affirmative defenses are "evaluate[d] . . . through a markedly different lens[.]" *Tyco Fire Prods. LP*, 777 F. Supp. 2d at 901. Specifically, Rule 8(a) requires a plaintiff/counterclaimant to "show[] that the pleader is entitled to relief[,]" whereas Rule 8(c) requires a defendant merely to "affirmatively state any . . . affirmative defense." Fed. R. Civ. P. 8. "[I]n light of the differences between Rules 8(a) and 8(c) in text and purpose," courts have held that the heightened pleading standards of "*Twombly* and *Iqbal* do not apply to affirmative defenses." *Internet Media Corp. v. Hearst Newspapers, LLC*, No. 10–690–SLR, 2012 WL 3867165, at *3 (D. Del. Sept. 6, 2012) (citations omitted) (internal quotation marks omitted); *see also Tyco Fire Prods. LP*, 777 F. Supp. 2d at 900 (unlike a counterclaim, "[a]n affirmative defense need not be plausible to survive; it must merely provide fair notice of the issue involved").

The federal circuits are split as to whether affirmative defenses and counterclaims are both held to the same "plausibility" pleading standard, and whether dismissal of one necessitates dismissal of the other. The Third Circuit has not yet weighed in, *see Bayer CropScience AG v. Dow AgroSciences LLC*, No. 10–1045–RMB/JS, 2011 WL 6934557, at *1 (D. Del. Dec. 30, 2011), but multiple district judges in the Third Circuit, including the Honorable Sue L. Robinson

(the district judge overseeing these actions), have held affirmative defenses to the *lower* notice-pleading standard. *See, e.g.*, *Internet Media Corp.*, 2012 WL 3867165; *Tyco Fire Prods. LP*, 777 F. Supp. 2d at 901; *Bayer CropScience AG*, 2011 WL 6934557.

This makes perfect sense in light of the textual differences between Rule 8(a) and Rule 8(c), along with the practical differences between a plaintiff asserting a cause of action and a defendant pleading an affirmative defense. "A mere pleading deficiency with respect to a certain *counterclaim* . . . will not prevent [defendant] from asserting an analogous affirmative defense *and obtaining discovery*." *Ambac Assurance Corp. v. Adelanto Pub. Util. Auth.*, No. 09–5087–JFK, 2012 WL 1589597, at *3 (S.D.N.Y. May 7, 2012) (emphasis added); *see also Internet Media Corp.*, 2012 WL 3867165 (dismissing counterclaim but refusing to strike analogous affirmative defenses, in light of the different pleading standards). That is precisely the case here: BD/S's cross-motion to strike is brought in connection with their opposition to discovery. Through this motion to strike, BD/S seek a far more drastic remedy than simply precluding the Yucaipa Defendants from presenting their affirmative defenses at trial—rather, BD/S seek to cut off fundamental and broad-scale discovery rights.

Recognizing that Yucaipa's affirmative defenses easily clear Rule 8's minimal notice-pleading hurdle, BD/S in the alternative attempt to invoke Rule 9(b)'s heightened pleading standard because, they claim, the affirmative "defenses sound in fraud." (D.I. 136 at 34.) But BD/S are reaching.

The Yucaipa Defendants' affirmative defenses at issue are *equitable* in nature, not based in fraud.[2] In any event, Yucaipa has painstakingly laid out the specific "who, what, when, where, and why" of BD/S's inequitable conduct in its dismissed Counterclaim and pending RICO Complaint—regardless of whether those allegations are deemed to be "plausible" (which

---

[2] BD/S's authorities are readily distinguishable. For example, in *Yurman Design Inc. v. Chaindom Enters., Inc.*, No. 99–9307–JFK, 2000 WL 897141, at *3 (S.D.N.Y. July 5, 2000) (emphasis added), the stricken affirmative defense explicitly alleged that a copyright registration was "*fraudulently* obtained."

is not relevant for purposes of affirmative defenses), they are pleaded with a great deal of specificity.

Notably, BD/S contend that Yucaipa's prior pleadings were based on the "same factual allegations" as the Yucaipa Defendants' affirmative defenses. (D.I. 136 at 1-2, 16, 31.) If that is true, then it is telling that neither this Court nor BD/S ever suggested that Yucaipa failed to plead these facts "with particularity" under Rule 9(b). In fact, even in BD/S's pending motion to dismiss Yucaipa's RICO claims—claims that are *expressly* premised on predicate acts involving bankruptcy fraud, among other things—BD/S did not invoke 9(b) or argue that Yucaipa's allegations lacked the sufficient level of specificity. (D. Ct. No. 15-0373-SLR, D.I. 17.) And for good reason, in light of the flexible Rule 9(b) standard, which is plainly met here. *See, e.g., S. Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 519 (D. Del. 2010) (explaining that Rule 9(b)'s particularity requirement "is flexible because the purpose of Rule 9(b) is to provide 'defendants notice of the claims against them'") (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006)).

In sum, Rule 8(c)'s notice pleading requirements apply here. The Yucaipa Defendants' Answer contains the requisite short, plain statement affording BD/S "fair notice" of the defenses the Yucaipa Defendants intend to assert. Nothing more is required.

### 2. BD/S Advance an Overly Broad Reading of the Counterclaim Dismissal Order

Even if the affirmative defenses were subject to a "plausibility" standard (they are not), this Court's Counterclaim Dismissal order was narrower than BD/S suggest in terms of the Court's plausibility findings. BD/S falsely state that Yucaipa has somehow "admit[ted]" in its motion to compel that the factual allegations underlying all of its defenses "are the same factual allegations that this Court already has found to be implausible." (A.P. No. 14-50971-CSS, D.I. 136 at 31 (emphasis omitted).) But Yucaipa said no such thing. On the contrary, Yucaipa simply argued that the Requests at Issue in its motion to compel "seek documents and information relevant to BD/S's claims and these affirmative defenses (and the allegations in

Yucaipa's RICO Action)." (D.I. 119 at 10.) While these issues all overlap, they are not coextensive.

Regardless, the Court found the following allegations in Yucaipa's equitable subordination counterclaim to be implausible: (i) that Black Diamond transferred first lien debt to Spectrum to secure the latter's participation in the involuntary petition; (ii) that BD/S "orchestrated Yucaipa's purchase of First Lien Debt in order to later equitably subordinate Yucaipa's claims"; (iii) that BD/S were waiting for the optimal time to file their equitable subordination counterclaim; and (iv) that "economic actors, such as [BD/S], would take that much litigation risk" just to frustrate Yucaipa's attempt to acquire unrestricted first lien debt. (D.I. 82 at 58-65.)

However, this Court said nothing about the plausibility of the fact that BD/S knew of and failed to take action regarding certain actions alleged in the BD/S Complaint, such as the passage of the Fourth Amendment to the First Lien Credit Agreement and Yucaipa acting as Requisite Lender (laches defense). Nor did the Court rule on the plausibility of the fact that BD/S consented to various actions by Yucaipa that are now identified in BD/S's Complaint as wrongful (consent/waiver affirmative defense).[3] Further, the Court did not blanketly immunize BD/S for all purposes related to these cases, or find that Yucaipa may never argue that BD/S acted with bad faith regarding their investments in Allied or their treatment of the Yucaipa Defendants (unclean hands). Because these and other facts support the challenged affirmative

---

[3] It would be erroneous and illogical to bar Yucaipa from even pursuing the defenses of waiver/consent, where the Counterclaim Dismissal did not touch on these facts, and an appellate court in New York has already found a triable issue of material fact (reversing summary judgment in Black Diamond's favor) on the related issue of Black Diamond's "active involvement" in Yucaipa's efforts to become Requisite Lender, such that Black Diamond waived its challenges to Yucaipa's Requisite Lender status. *BDCM Opp. Fund II, LP v. Yucaipa Am. Alliance Fund I, LP*, 112 A.D.3d 509, 511-12 (N.Y. App. Div. 2013).

defenses, and were not at issue in the Counterclaim, the Court had no occasion to rule on their plausibility.[4]

### 3. The Yucaipa Defendants' Affirmative Defenses Are Not Redundant, Immaterial, Impertinent, or Scandalous

Rule 12(f) sets forth the specific grounds for striking an affirmative defense. Yet BD/S do not argue that the challenged affirmative defenses are "redundant, immaterial, impertinent, or scandalous[.]" Fed. R. Civ. P. 12(f). Nor could they.

An affirmative defense is "immaterial" if it "has no essential or important relationship to the claim for relief." *Smith v. Giant Eagle, Inc.*, No. 10–01644, 2011 WL 1706520, at *4 (W.D. Pa. May 4, 2011). Similarly, an affirmative defense is "impertinent" if it does "not pertain, and [is] not necessary, to the issues in question." *Id.* And an affirmative defense is "scandalous" if it "casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." *Id.*

Here, the affirmative defenses of unclean hands, estoppel, waiver, laches, and consent are directly relevant to BD/S's own claims and allegations in the action, necessary to rule on BD/S's own claims, and do not cast an unnecessarily "derogatory" light on anyone or detract from the dignity of the Court. On the contrary, if the Yucaipa Defendants are ultimately able to prove that BD/S misused the judicial machinery to serve their own ends, precluding their recovery in this litigation, that would have a salutary effect on this Court.

---

[4] In one of BD/S's cited cases, *Fleet Nat'l Bank v. Hartstone*, No. 96-10166-NG, 1997 WL 557564 (D. Mass. May 29, 1997), the magistrate judge recommended dismissing some (not all) of the counterclaims on the basis of "issue preclusion," to the extent they were duplicative of claims rejected in an earlier case that proceeded to judgment in the district court, which was affirmed by the First Circuit. *Id.* at *1, *13. Here, by contrast, BD/S are not arguing that this Court's Counterclaim Dismissal order has preclusive effect, warranting dismissal of affirmative defenses—nor could they, as that order was and remains interlocutory. *See, e.g.*, *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (collateral estoppel requires that "the issue was determined by a final and valid judgment"). In fact, in opposing Yucaipa's motion to compel, BD/S are expressly disclaiming reliance on collateral estoppel. (D.I. 136 at 12 & n.12.)

### 4.    Yucaipa's Affirmative Defenses Do Not Cause Prejudice to BD/S

Even if BD/S otherwise met their burden under Rule 12(f), which they did not, "a motion to strike should not be granted unless the presence of the [affirmative defense] will prejudice the adverse party." *Newborn Bros.*, 299 F.R.D. at 93-94.  But beyond the obligation to participate in discovery, BD/S fail to offer any support for the argument that they would be prejudiced by the challenged affirmative defenses.

Further, BD/S's complaints about the burdens of discovery do not withstand scrutiny. Yucaipa produced more than ten times the documents that Black Diamond and Spectrum have produced, combined.  (Scolnick Decl., ¶ 3.)  Moreover, as explained in the Yucaipa Defendants' reply in support of their motion to compel, the discovery Requests at Issue are directly relevant to BD/S's own allegations and theories—not merely the affirmative defenses.  (A.P. No. 14-50971-CSS, D.I. 143 at 4-14.)

BD/S argue without support that their "[c]osts of discovery and trial will be dramatically increased" if the affirmative defenses are not stricken.  (D.I. 136 at 34-35.)  But BD/S have not explained how responding to the discovery relevant to the Yucaipa Defendants' affirmative defenses is any different or more burdensome than responding to the discovery Yucaipa is entitled to anyway, with respect to BD/S's own claims and allegations or with respect to the Yucaipa Defendants' other (unchallenged) defenses.

BD/S therefore fail to show any prejudice that would result from allowing the Yucaipa Defendants to pursue their equitable affirmative defenses.

### C.    Dismissal of the Affirmative Defenses Would Result in Serious Prejudice to the Yucaipa Defendants

The Yucaipa Defendants must be given a fair opportunity to defend themselves against BD/S's unfounded and wide-ranging allegations. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978) ("Parties may obtain discovery regarding any matter . . . which is relevant . . . whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party[.]").  Indeed, the striking of the Yucaipa Defendants' affirmative defenses would be particularly unfair and prejudicial if done to shut down the

Yucaipa Defendants' discovery efforts—which BD/S are transparently asking the Court to do with this cross-motion.

Judicial "[r]eluctance to grant [Rule] 12(f) motions arises due to concern over dismissing pleadings before the parties have had a full chance to develop the factual record." *Boatright v. Crozer-Keystone Health Sys.*, No. 14-7041, 2015 WL 4506559, at *5 (E.D. Pa. July 24, 2015). "Rule 12(f) is not meant to afford an opportunity to determine disputed and substantial issues of law, since these questions are properly viewed as determinable only after opportunity for discovery and a hearing on the merits." *Signature Bank v. Check-X-Change, LLC*, No. 12–2802–ES, 2013 WL 3286154, at *3 (D.N.J. June 27, 2013).

Indeed, the Court's Counterclaim Dismissal order highlights precisely why the Yucaipa Defendants need discovery to explore the facts underlying their theories, in particular with respect to their unclean hands defense.[5] For example, in its Counterclaim, Yucaipa pointed to an email demonstrating that Spectrum was ████████████████████████████████ just days before the passage of the Fourth Amendment (Adv. Proc. No. 14-50971, D.I. 19, ¶¶ 43, 51, 54), a transaction that BD/S's own communications show that they had known about for months (D.I. 144 (Scolnick Reply Decl.), Ex. 31). The Court did not believe it was possible that these communications about equitable subordination could have been about Yucaipa, because the email does not expressly ██████████████████████████████████████████ ████████████████ (D.I. 82 at 63-64), even though Spectrum had earlier discussions in which it was specifically noted that █████████████████████████████████████ ██████████████ (Scolnick Decl., Ex. 2 at SPEC0003144), and even though the email in question is dated contemporaneously with Yucaipa's negotiations with ComVest over the acquisition of the majority of first lien debt.

---

[5] To reiterate, Yucaipa's unclean hands defense encompasses a broad range of issues, not only those discussed here.

Accordingly, Request for Production No. 36 seeks documents "[c]oncerning the equitable subordination of First Lien Debt held by any Lender *other than Yucaipa*."  (D.I. 121 (Scolnick Decl.), Ex. 29 at 1; Ex. 30 at 1 (emphasis added).  Documents responsive to this request—if any—would demonstrate that BD/S were indeed contemplating subordination of *other Lenders*.  But if there are no responsive documents, that would confirm the Yucaipa Defendants' theory that BD/S in 2009 were already planning to equitably subordinate Yucaipa, not some other unnamed lender.  In that circumstance, Yucaipa's theory would have gone past the threshold of "plausibility" and would be confirmed as true—which would directly the Yucaipa Defendants' unclean hands defense.

Such documents would also shed light on what Mr. Ehrlich of Black Diamond was contemplating when he emailed Mr. Schaffer of Spectrum on August 21, 2009, asking ████████ ██████████████████████████████████████████████████████████ (D.I. 144 (Scolnick Reply Decl.), Ex. 32, at SPEC 0003943.)  Similarly, such documents may reveal what plans or strategies Mr. Ehrlich had in mind when he emailed Mr. Schaffer on September 17, 2009, stating that it ██████████████████████████████████████████████ ████  (D.I. 19, ¶ 51.)  Such documents could help the factfinder understand what Mr. Schaffer meant when he emailed another Allied first lien lender on September 9, 2009, stating ██████ ████████████████████████████████████████████████████████████ ████████████████████████████  (Scolnick Decl., Ex. 1 at SPEC 0008244.)  What "good news" is there for Spectrum in Yucaipa purchasing a majority of the first lien debt if the allegations that BD/S have asserted against Yucaipa are true?

In addition, BD/S admit that "BD/S and other First Lien Lenders (other than Yucaipa) formed a steering committee *in 2008*, before Yucaipa purchased any First Lien Debt and before the involuntary bankruptcy petitions were filed, for the purpose of maximizing their recovery of First Lien Debt and exploring legal claims against Allied and/or Yucaipa . . . ."  (D.I. 136 (Motion to Strike at 25) (emphasis added); *see also* D.I. 121 (Scolnick Decl.), Ex. 24 at 2 ("Moreover, the non-Yucaipa First Lien Lenders, as part of their common legal interest to

14

maximize their recoveries of First Lien Debt, jointly retained counsel (Ropes & Gray) in order to facilitate their common legal interest in pursuing potential claims against Allied and/or Yucaipa.").)

Documents identified on BD/S's privilege log confirm that they were seeking legal advice in October 2009—two months after Yucaipa acquired first lien debt, and more than two years *before* BD/S pulled the trigger on an involuntary filing—regarding ███████████ ████████████████████████████████████████ (D.I. 121 (Scolnick Decl.), Ex. 21 at 31; Ex. 22 at 80.)  Recall, as noted above, that BD/S were also ████████████ ███████████████████ in August 2009.  Thus, within a three-month span, Yucaipa acquired first lien debt, BD/S were ████████████████████████████ one was asking the other if it was ██████████ against Yucaipa, and they were investigating ████ ████████████████████████████ Yet in their own contemporaneous internal correspondence, BD/S privately admitted that Yucaipa was ████████████████████████ ██████. (D.I. 144 (Scolnick Reply Decl.), Ex. 33 at SPEC 0010928.)

Much of the discovery the Yucaipa Defendants seek related to their affirmative defenses is relevant to BD/S's admitted strategies directed at Yucaipa.  For example, Pelletier Interrogatory No. 19 to BD/S asks them to "[i]dentify the date You first considered seeking equitable subordination [a legal claim] of Yucaipa in relation to Your Allied First Lien Claims." (D.I. 121 (Scolnick Decl.), Ex. 29 at 10; Ex. 30 at 10.)  Likewise, Pelletier Interrogatory No. 20 asks BD/S to identify when they discussed equitable subordination of Yucaipa with any other party.  (D.I. 121 (Scolnick Decl.), Ex. 29 at 10-11; Ex. 30 at 10.)

BD/S's admitted long-term legal and business strategies against Yucaipa directly support the Yucaipa Defendants' unclean hands theories and their other defense theories—namely, that BD/S were plotting against them as far back as 2008.  Certainly, before preventing the Yucaipa Defendants from exploring through discovery the propriety of BD/S's motivations and strategies, the Yucaipa Defendants are entitled to know why BD/S were obtaining legal advice on their ████████████████████████████████████████████████████████ (D.I. 121

(Scolnick Decl.), Ex. 21 at 31), while almost contemporaneously stating that it was their belief that Yucaipa ███████████████████████████████ (D.I. 144 (Scolnick Reply Decl.), Ex. 33 at SPEC 0010928.)

Presciently, in seeking to dismiss Yucaipa's equitable subordination counterclaim last year, BD/S stressed that such dismissal would not leave Yucaipa unable to "defend[] itself against a claim brought by a Lender; nor have Black Diamond or Spectrum ever taken such a position." (D.I. 65 at 21.) Indeed, BD/S recognized that preventing Yucaipa from defending itself would be "absurd[] [and] commercially unreasonable[.]" (*Id.*) The Yucaipa Defendants wholeheartedly agree.

**D.    Leave to Amend**

Should the Court grant BD/S's motion to strike in whole or in part, the Yucaipa Defendants seek leave to amend their affirmative defenses. "[A] responsive pleading may be amended at any time by leave of court to include an affirmative defense, and 'leave shall be freely given when justice so requires.' Unless the opposing party will be prejudiced, leave to amend should generally be allowed." *Charpentier v. Godsil*, 937 F.2d 859, 863-64 (3d Cir. 1991) (citations omitted).

Because discovery regarding the Yucaipa Defendants' affirmative defenses is directly relevant to, and overlaps with, the discovery regarding BD/S's own claims, BD/S will not be prejudiced by allowing the Yucaipa Defendants to amend their pleading. Moreover, because BD/S delayed the filing of this motion for nearly a year and a half, any potential prejudice is directly attributable to their own failure to timely move.

## IV.    CONCLUSION

For these reasons, the Yucaipa Defendants respectfully request that the Court deny BD/S's motion to strike their affirmative defenses.

Dated: August 29, 2016

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

/s/ Michael S. Neiburg
_____
Michael R. Nestor (No. 3526)
Edmon L. Morton (No. 3856)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER LLP
Maurice M. Suh (*Pro Hac Vice*)
Robert A. Klyman (*Pro Hac Vice*)
Kahn Scolnick (*Pro Hac Vice*)
333 South Grand Avenue
Los Angeles, CA  90071
Telephone: (213) 229-7000
MSuh@gibsondunn.com

*Attorneys for Appellants-Defendants*
*Yucaipa American Alliance Fund I, L.P., and*
*Yucaipa American Alliance (Parallel) Fund I, L.P.*

17