**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., AS CO-ADMINISTRATIVE AGENT, AND SPECTRUM COMMERCIAL FINANCE LLC, AS CO-ADMINISTRATIVE AGENT, | Adv. Proc. No. 14-50971 (CSS) |
| Plaintiffs, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |

**BLACK DIAMOND AND SPECTRUM'S REPLY
MEMORANDUM OF LAW IN SUPPORT OF THEIR
CROSS-MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................ 5

I.      THE COURT HAS DISCRETION TO STRIKE AFFIRMATIVE DEFENSES .............. 5

II.     THE CROSS-MOTION TO STRIKE SHOULD BE GRANTED ..................................... 9

        A.      The Affirmative Defenses Should Be Stricken Insofar As They Assert Factual Allegations That Have Already Been Rejected .......................................... 9

        B.      The Yucaipa Defendants Have Admitted That the Affirmative Defenses at Issue Sound in Fraud and Are Therefore Subject to FRCP 9(b) ........................... 17

        C.      To the Extent the Affirmative Defenses Will Require BD/S to Engage in Unnecessary Discovery and Repeatedly Respond to Implausible Factual Allegations Through Summary Judgment and Trial, They Will Cause BD/S Substantial Prejudice ........................................................................................... 18

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashokkumar v. Elbaum*,
No. 12 Civ. 3067 (CRZ), 2014 WL 4508123 (D. Neb. Sept. 28, 2012)...................................6

*Bayer CropSciences AG v. Dow AgroSciences LLC*,
No. 10 Civ. 1045 (RMB) (JS), 2011 WL 6934557 (D. Del. Dec. 30, 2011).....................17, 18

*Bever v. CitiMortgage, Inc.*,
No. 11 Civ. 01584 (AWI) (SKO), 2014 WL 2042015 (E.D. Cal. May 16, 2014) .................16

*Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*,
No. 13 Civ. 13804, 2015 WL 3441155 (E.D. Mich. May 28, 2015)......................................13

*Coach, Inc. v. Kmart Corp.*,
756 F. Supp. 2d 421 (S.D.N.Y. 2010)....................................................................................18

*F.T.C. v. Instant Response Systems, LLC*,
No. 13 Civ. 00976 (ILG) (VMS), 2014 WL 558688 (E.D.N.Y. Feb. 11, 2014) ...............6, 14

*Fleet Nat'l Bank v. Harstone*,
No. 96-10166-NG, 1997 WL 557564 (D. Mass. May 29, 1997)............................................12

*Human Genome Sciences, Inc. v. Genentech, Inc.*,
No. 11 Civ. 6519 (MRP) (JEM), 2011 WL 7461786 (C.D. Cal. Dec. 9, 2011) .....................12

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
458 F.3d 244 (3d Cir. 2006)...................................................................................................10

*King v. Solvay S.A.*,
304 F.R.D. 507 (S.D. Tex. 2015).............................................................................................6

*Koken v. GPC Int'l, Inc.*,
443 F. Supp. 2d 631 (D. Del. 2006)........................................................................................9

*La. Sulphur Carriers, Inc. v. Gulf Res. & Chem. Corp.*,
53 F.R.D. 458 (D. Del. 1971) ................................................................................................18

*Lunsford v. United States*,
570 F.2d 221 (8th Cir. 1977) ..................................................................................................6

*Sheridan v. E.I. DuPont de Nemours Co.*,
Civ. A. No. 93-46-SLR, 1994 WL 468711 (D. Del. Mar. 28, 1994).......................................5

*Sidney-Vinstein v. A.H. Robins Co.,*
    697 F.2d 880 (9th Cir. 1983) .................................................................19

*Tyco Fire Prods. LP v. Victaulic Co.,*
    777 F. Supp. 2d 893 (E.D. Pa. 2011) .....................................................17

*United States v. Walerko Tool and Eng'g Corp.,*
    784 F. Supp. 1385 (N.D. Ind. 1992) .........................................................5

*Warner/Chappel Music, Inc. v. Pilz Compact Disc., Inc.,*
    No. Civ. A. 99-0293, 1999 WL 999332 (E.D. Pa. Oct. 26, 1999)...........14

*XpertUniverse, Inc. v. Cisco Sys., Inc.,*
    868 F. Supp. 2d 376 (D. Del. 2012).......................................................17

**Statutes and Rules**

Fed. R. Civ. P. 8(c) ......................................................................3, 9, 12, 14

Fed. R. Civ. P. 9(b) ..............................................................................17, 18

Fed. R. Civ. P. 9(c) .....................................................................................4

Fed. R. Civ. P. 12(f).......................................................................2, 5, 6, 18

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure, Civil § 1380 (3d ed. 2016) ......................5, 8

Hon. Amy St. Eve, *et al.*, *The Forgotten Pleading*,
    2013 Fed. Ct. L. Rev. 152 (2013)..................................................16

Plaintiffs BDCM Opportunity Fund II, L.P., Black Diamond CLO 2005-1 Ltd. (collectively "Black Diamond"), and Spectrum Investment Partners, L.P. ("Spectrum" and, together with Black Diamond, "BD/S"), by and through their undersigned counsel, submit this Reply Memorandum of Law in further support of BD/S's cross-motion pursuant to Federal Rule of Civil Procedure ("FRCP") 12(f) to strike certain affirmative defenses asserted in the Answer of Yucaipa American Alliance Fund I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively, "Yucaipa"), Jos Opdeweegh, Derex Walker, Jeff Pelletier, Ira Tochner, and Joseph Tomczak (collectively, the "Director Defendants" and, together with Yucaipa, the "Yucaipa Defendants").

## PRELIMINARY STATEMENT

BD/S brought this cross-motion to prevent the Yucaipa Defendants from re-litigating factual allegations that have already been squarely considered and rejected by this Court.  The Yucaipa Defendants continue to re-assert the same lengthy narrative rife with implausible factual allegations that this Court has already considered and rejected, *twice*, when it dismissed Yucaipa's claims in the Cross-Claims Dismissal and the Counterclaim Dismissal.[1] This time, the Yucaipa Defendants pitch their implausible story as affirmative defenses in an effort to obtain broad discovery into the very same rejected factual allegations that underlie their dismissed claims.

In their motion to compel filed on July 22, 2016 (the "Motion to Compel"), the Yucaipa Defendants argued, for the first time, that the "carefully timed series of lies, payoffs, and legal maneuvers" alleged in Yucaipa's previously dismissed claims are also the factual basis for their affirmative defenses of unclean hands, estoppel, waiver, consent, and laches, as well as

---

[1] Capitalized terms not defined herein have the same meanings and definitions ascribed to them in BD/S's Memorandum of Law in Opposition to the Yucaipa Defendants' Motion to Compel and In Support of Their Cross-Motion to Strike Certain Affirmative Defenses.  (D.I. 136.)

for Yucaipa's claims in a separate RICO Action.  (Motion to Compel at 10.)  The RICO Action was dismissed by Judge Robinson last week on September 2, 2016.  As to the affirmative defenses, the Yucaipa Defendants' reliance upon them to resurrect twice rejected factual allegations is plainly improper and would cause BD/S substantial prejudice, especially at this late stage of the litigation.

The Yucaipa Defendants first claim that the cross-motion to strike is untimely and procedurally improper because BD/S did not move to strike any affirmative defenses within 21 days of the Yucaipa Defendants' Answer.  However, FRCP 12(f)(1) permits a Court to strike affirmative defenses "on its own."  Courts have discretion to hear "untimely" motions to strike, especially where, as here, the motion is focused on preventing prejudice that may occur at a later stage of the litigation.  BD/S could not have known that the Yucaipa Defendants would recast as affirmative defenses the same implausible factual allegations that the Court previously dismissed until the Yucaipa Defendants took that position earlier this summer and filed the Motion to Compel.  All the affirmative defenses themselves say is that BD/S are barred from recovering on the basis of unclean hands, estoppel, waiver, consent and laches (*see infra* at 7 n.5); only in the Motion to Compel, and in the meet and confer just prior thereto, did the Yucaipa Defendants disclose that these summary affirmative defenses were meant to be a repeat of the previously rejected factual allegations.[2]  As further explained below, the cross-motion to strike is well-founded, and the Court should exercise its discretion to hear it.

The cross-motion to strike should be granted because the Yucaipa Defendants are not entitled to repeatedly raise factual allegations that this Court has considered and rejected.

---

[2] If the Yucaipa Defendants had not moved to compel, BD/S would have discovered, in depositions, that the affirmative defenses are a reiteration of the dismissed claims.  BD/S would have then moved for summary judgment striking the affirmative defenses before trial on the same grounds as in this motion.  Thus, the relief requested in this motion is timely sought.  Further, substantial amounts of unnecessary costs and time would have been spent on discovery if BD/S had not raised these issues now.

The central argument in the Yucaipa Defendants' opposition brief (the "Opposition") — that the affirmative defenses meet the pleadings standards of FRCP 8(c) — misses the point.  Whether or not the affirmative defenses satisfy FRCP 8(c), the Yucaipa Defendants have admitted that *at least* five of their affirmative defenses (unclean hands, estoppel, waiver, consent, and laches) assert factual allegations that have already been considered and rejected in the Cross-Claims Dismissal and Counterclaim Dismissal, particularly:

- That BD/S was secretly plotting to equitably subordinate Yucaipa as far back as 2009, before Yucaipa had even acquired first lien debt;

- That BD/S "encouraged" Yucaipa to acquire first lien debt;

- That BD/S surreptitiously instructed CIT not to recognize Yucaipa as the Requisite Lender;

- That BD/S engaged in an "illegal claims trade" and/or bribe to induce Spectrum to file an involuntary bankruptcy petition (the so-called "Involuntary Petition Payoff");

- That BD/S was "lying in wait" for the optimal time to file involuntary bankruptcy petitions;

- That BD/S engaged in "sham" negotiations with Jack Cooper Transport ("JCT") intending all along to later "scuttle" the potential deal; and

- That BD/S filed an "objectively baseless" equitable subordination claim against Yucaipa.

Because those factual allegations were considered and rejected by this Court in the Cross-Claims Dismissal and the Counterclaim Dismissal, the Court should strike the affirmative defenses.  What is more, those factual allegations are foundational to the aforementioned affirmative defenses, and thus the defenses should be stricken.  At bottom, the Yucaipa Defendants should not be permitted to re-litigate factual issues that have already been addressed and determined, and essentially end-run prior rulings of this Court, under the guise of affirmative defenses.

The affirmative defenses also must be stricken because the factual allegations being asserted sound in fraud and cannot satisfy FRCP 9(b)'s pleading requirements.  The Yucaipa Defendants have admitted that their affirmative defenses allege "a carefully timed series of lies, payoffs, and legal maneuvers," including an alleged fraud on the court and the Yucaipa Defendants' detrimental reliance on alleged "false statements" by BD/S.  Those allegations sound in fraud, and, as set forth below, the affirmative defenses asserting them are therefore subject to FRCP 9(b)'s heightened pleading requirements.  The Yucaipa Defendants respond by arguing that their summary affirmative defenses are pled with sufficient particularity because they are particularized in the *factual allegations asserted in the dismissed counterclaim*.  Yucaipa is therefore stuck with a dilemma:  to satisfy the requirement that its affirmative defenses be pled with particularity it must rely upon factual allegations that have already been considered and dismissed by this Court, but to do so means that those affirmative defenses should be dismissed because the underlying factual allegations have already been rejected.  Because the Court has already considered and rejected the fraud-based allegations in the dismissed counterclaim, the summary affirmative defenses are left without any factual support that could possibly satisfy FRCP 9(c).

Finally, the cross-motion to strike should be granted because BD/S will suffer substantial prejudice if the Yucaipa Defendants are permitted to perpetually re-litigate factual issues that have already been addressed and determined.  Namely, to permit the Yucaipa Defendants to open the door to broad and unnecessary discovery in support of implausible factual allegations would be a significant waste of time and expense, especially at this late stage of the litigation.  For all of the foregoing reasons, the cross-motion to strike should be granted.

## ARGUMENT

### I.    THE COURT HAS DISCRETION TO STRIKE AFFIRMATIVE DEFENSES

The Yucaipa Defendants challenge BD/S's cross-motion to strike under FRCP

12(f) as "untimely" and "procedurally improper."  (Opp. at 5.)  However, FRCP 12(f)(1)

provides that the court may strike an insufficient affirmative defense "*on its own*."  FED. R. CIV.

P. 12(f)(1) (emphasis added).  The "on its own" language provided in FRCP 12(f)(1) has widely

been interpreted to mean that a court has discretion to hear a motion to strike *at any time*,

because allegations in a pleading may cause prejudice at a later point in the litigation, after the 21

day period following service.

> The authority given to the court by the rule to strike an insufficient
> defense on its own initiative at any time has been interpreted to
> allow the district court to consider untimely motions to strike and
> to grant them if doing so seems proper.  *This judicial discretion is
> appropriate since in many instances a motion to strike . . . is
> designed to eliminate allegations from the pleadings that might
> cause prejudice at some later point in the litigation*.  In light of
> this, the time limitations set out in Rule 12(f) should not be applied
> strictly when the motion to strike seems to have merit.

5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL §

1380 (3d ed. 2016) (emphasis added).

Plainly, the Court may consider the motion if it chooses to do so, and federal

courts around the country routinely consider "untimely" motions to strike brought under FRCP

12(f), including motions to strike affirmative defenses.[3]  *See, e.g., Sheridan v. E.I. DuPont de

Nemours Co.*, Civ. A. No. 93-46-SLR, 1994 WL 468711, at *10-12 (D. Del. Mar. 28, 1994)

---

[3] The Yucaipa Defendants argue that *Sheridan* and another case cited by BD/S, *United States v. Walerko Tool and Eng'g Corp.*, 784 F. Supp. 1385, 1387 (N.D. Ind. 1992), are inapposite for reasons other than the proposition for which BD/S is citing them, *i.e.*, that the case law supports the Court hearing this motion (*see* Opp. at 6).  BD/S cited those cases for a simple proposition that the Yucaipa Defendants cannot seriously contest:  in both cases (and in many others), the court recognized its authority to consider FRCP 12(f) motions to strike filed more than 21 days after service of the pertinent pleading.  *See Walerko*, 784 F. Supp. at 1387 ("Rule 12(f) allows the court on its own motion to strike matters in a pleading . . . [T]he court may decide the merits of the motion to strike even if the motion is untimely.").

("[B]ecause Rule 12(f) permits a district court on its own initiative to entertain a motion to strike, the Court has the discretion to hear untimely motions."); *see also Lunsford v. United States*, 570 F.2d 221, 227 n.11 (8th Cir. 1977) (court had authority to consider motion to strike affirmative defenses filed after 21 day limitation "as it may strike material from the pleadings on its own initiative"); *King v. Solvay S.A.*, 304 F.R.D. 507, 509 (S.D. Tex. 2015) (holding that under FRCP 12(f), "a court may strike an insufficient pleading on its own initiative at any time"); *F.T.C. v. Instant Response Systems, LLC*, No. 13 Civ. 00976 (ILG) (VMS), 2014 WL 558688, at *2 (E.D.N.Y. Feb. 11, 2014) (considering and granting "untimely" motion to strike affirmative defenses); *Ashokkumar v. Elbaum*, No. 12 Civ. 3067 (CRZ), 2014 WL 4508123, at *1 (D. Neb. Sept. 28, 2012) ("Rule 12(f)(1) allows a court, in its discretion, to consider a motion to strike even if it was filed beyond the deadline set by Rule 12(f)(2).").

Here, the basis of BD/S's cross-motion to strike is that certain affirmative defenses turn on factual allegations that this Court has already rejected as implausible and which are therefore barred by collateral estoppel, as the Yucaipa Defendants have repeatedly admitted in the Motion to Compel and in their Opposition.  (*See* Motion to Compel at 10; Opp. at 8-9; Counterclaim Dismissal at 3, 54, 64-65.)

The Yucaipa Defendants' contention that BD/S "waived their Rule 12(f) objections" because BD/S did not move to strike any affirmative defenses when they moved to dismiss the Yucaipa Defendants' counterclaim is without merit.  (Opp. at 5.)  BD/S could not have known that the Yucaipa Defendants' affirmative defenses were premised upon the same allegations asserted in the Yucaipa Defendants' cross-claims and counterclaim,[4] because the

---

[4] Any argument that BD/S should have known that the affirmative defenses relied upon the factual allegations in the Yucaipa Defendants' counterclaim is disingenuous because the Yucaipa Defendants raised the *exact same* affirmative defenses in the action brought by the Official Committee of Unsecured Creditors, long before they

affirmative defenses in the Answer are conclusory assertions without any accompanying factual support.[5]  Indeed, the Yucaipa Defendants asserted a laundry list of *fifteen* affirmative defenses (presumably every defense they could think of) without setting forth any factual allegations to clarify or distinguish them.  (D.I. 19 ("Answer") ¶¶  142-75.)

Thus, BD/S first became aware that the Yucaipa Defendants were seeking to resurrect their dismissed cross-claims and counterclaims by recasting them as affirmative defenses during meet and confers leading up to the Yucaipa Defendants' Motion to Compel discovery, filed on July 22, 2016 (D.I. 119 ("Motion to Compel")).[6]  In the Motion to Compel, the Yucaipa Defendants *for the first time* submitted to the Court that their "*affirmative defenses of unclean hands, waiver, estoppel, consent, and laches, among others*," are premised upon the same factual allegations that this Court previously rejected in the Cross-Claims Dismissal and the Counterclaim Dismissal:

> [T]he Yucaipa Defendants have explained that BD/S orchestrated a carefully timed series of lies, payoffs, and legal maneuvers designed to wrongfully enrich themselves at Yucaipa's expense . . . . *To that end, the Yucaipa Defendants have asserted the affirmative defenses of unclean hands, waiver, estoppel, consent, and laches, among others*.

---

asserted the counterclaim.  (*See* Adv. Proc. 13-50530 (CSS), D.I. 95 ¶¶ 300 (Estoppel), 302 (Waiver), 304 (Unclean Hands), 308 (Consent), 316 (Laches).)

[5] *E.g.*, Answer ¶¶ 148 (Estoppel: "Plaintiffs are estopped from pursuing their Claims for Relief by the actions and conduct of Allied, Black Diamond, Spectrum, and other lenders."), 150 (Waiver: "Plaintiffs are barred by the doctrine of waiver from pursuing their Claims for Relief by the actions and conduct of Allied, Black Diamond, Spectrum, and other lenders."), 156 (Unclean Hands: "Plaintiffs are barred by the doctrines of unclean hands and *in pari delicto* from pursuing their Claims for Relief by the actions of and conduct of Allied, Black Diamond, Spectrum, and other lenders.").

[6] The Yucaipa Defendants have also sought to use their claims in the RICO Action to support broad discovery (*see* Motion to Compel at 9).  However, those claims are based upon the same implausible factual allegations and were dismissed on September 2 by Judge Robinson in the District Court.  *Yucaipa American Alliance Fund I, L.P., et al. v. Ehrlich, et al.*, Case No. 15-cv-00373 (SLR) (D. Del. Sept. 2, 2016), ECF No. 35.

(Motion to Compel at 10 (emphasis added).)[7]  BD/S's cross-motion to strike followed.

Indeed, the Motion to Compel seeks responses to more than 40 discovery requests focused on the same implausible allegations that the Court has rejected on numerous grounds in the Cross-Claims Dismissal and Counterclaim Dismissal.  Thus, *only now*,[8] at this late stage of the litigation, is it apparent that the affirmative defenses are based on the rejected factual claims. *See* 5C WRIGHT & MILLER, *supra*, § 1380 ("judicial discretion" to hear an untimely motion to strike is appropriate where the motion is "*designed to eliminate allegations from the pleadings that might cause prejudice at some later point in the litigation*" (emphasis added)).  Unless the defenses are stricken, the Yucaipa Defendants will have free reign to end-run prior rulings of this Court, to continue seeking discovery in furtherance of already-rejected factual allegations, and to keep pitching the same implausible factual story *again* and *again*, all the way through discovery, summary judgment, and trial.  Indeed, the Yucaipa Defendants spend nearly four pages of their opposition brief (Opp. at 13-16) to, *yet again*, walk the Court through the same alleged multi-year scheme by BD/S that the Court has described as "an exercise in creative writing." (Counterclaim Dismissal at 65.)

---

[7] Even in the Motion to Compel, the Yucaipa Defendants apparently declined to identify all of the affirmative defenses that rely upon the rejected factual allegations.  Instead, they argue that the five affirmative defenses of unclean hands, waiver, estoppel, consent, and laches, along with unidentified "others," rely upon those allegations. (*Id.* at 10.)  Although this motion is focused on the five affirmative defenses that the Yucaipa Defendants *have* identified, to the extent that the Yucaipa Defendants attempt to rely upon the rejected factual allegations in support of other affirmative defenses, the Court should preclude them from doing so.

[8] Clearly, had BD/S moved to dismiss the affirmative defenses within 21 days of their assertion, the Yucaipa Defendant would have argued that such motion was premature and baseless because the affirmative defenses were not particularized.  Now that the Yucaipa Defendants have admitted that their affirmative defenses are based on the rejected factual claims, the motion is ripe.  The other way this could have played out is that the Yucaipa Defendants' witnesses, in depositions, would have admitted that the affirmative defenses are based on the same factual allegations that have been rejected by the Court and BD/S would have moved for summary judgment dismissing the affirmative defenses at that time.  Thus, this motion is not untimely.  In the meantime, the parties would have incurred needless expenses in discovery.

For the foregoing reasons, the Court has authority to consider — and, BD/S respectfully submit, should consider — BD/S's cross motion to strike the Yucaipa Defendants' affirmative defenses of unclean hands, estoppel, waiver, consent, and laches.

## II.    THE CROSS-MOTION TO STRIKE SHOULD BE GRANTED

BD/S cross-moved to strike for the straightforward purpose of preventing the Yucaipa Defendants from re-litigating and seeking discovery in support of factual allegations that this Court has already rejected.  The Yucaipa Defendants should not be permitted to end-run prior rulings of this Court by re-asserting rejected facts under the guise of bases for affirmative defenses.  Striking the affirmative defenses insofar as they assert factual allegations that have already been rejected — or entirely to the extent those factual allegations are foundational to the affirmative defenses — will save time and expense and will prevent this Court from having to re-adjudicate the same rejected narrative the Yucaipa Defendants have asserted over and over again.[9]

### A.    The Affirmative Defenses Should Be Stricken Insofar As They Assert Factual Allegations That Have Already Been Rejected

The Yucaipa Defendants argue that they have adequately pled their affirmative defenses under FRCP 8(c)'s pleading standard and that *Iqbal* and *Twombly*'s plausibility standard should not apply (even though they acknowledge that the law is unsettled in that area). (*See* Opp. at 6-8.)  However, BD/S's cross-motion is not asking the Court to determine whether the Yucaipa Defendants' affirmative defenses were adequately pled under FRCP 8(c) or *Iqbal* and *Twombly*.  The cross-motion seeks to strike affirmative defenses that assert factual

---

[9] For this same reason, the Court should deny the Yucaipa Defendants' request for leave to amend their affirmative defenses, which is nothing more than a plea for *one more chance* to pitch their implausible story.  (*See* Opp. at 16.) Because any such amendment would necessarily be based upon the same allegations that this Court has already rejected, the amendment would be futile.  *See Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634, 635-36 (D. Del. 2006) (where amendment to affirmative defenses "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend" (citation omitted)).

allegations that have already been rejected by the Court and therefore should not be re-litigated or the subject of further discovery.

> 1.     The Yucaipa Defendants Continue to Rely Upon
> <u>Factual Allegations That the Court Has Already Rejected</u>

This Court has repeatedly determined that critical "facts" which underlie the Yucaipa Defendants' affirmative defenses are not plausible.  In the Cross-Claims Dismissal, the Court rejected allegations that BD/S "encouraged" Yucaipa to acquire first lien debt so that BD/S could, years later, equitably subordinate Yucaipa's claims.  (Cross-Claims Dismissal at 104:14-106:3.)  Yucaipa is collaterally estopped from recycling those same allegations in support of its affirmative defenses.[10]  Moreover, the foundational allegations that BD/S "encouraged" Yucaipa to acquire first lien debt are the base holding up rest of the alleged "scheme" underlying Yucaipa's affirmative defenses; without these foundational factual allegations, the affirmative defenses cannot stand.

The Court once again rejected those same allegations in the Counterclaim Dismissal on the basis of implausibility and collateral estoppel arising from the Cross-Claims Dismissal.  With regard to those and other allegations asserted in the Yucaipa Defendants' counterclaim, the Court stated that:

> At first blush, Yucaipa brings a bowl of allegations to the Court for adjudication, but alas, the bowl is really a sieve, and *all of Yucaipa's allegations leak out leaving nothing but an empty vessel.*

---

[10] Collateral estoppel applies where (1) the identical issue was raised in a previous action; (2) the issue was actually litigated and decided; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a final judgment on the merits.  *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248-49 (3d Cir. 2006).  Here, Yucaipa had a full and fair opportunity to litigate the plausibility of the allegations supporting its cross-claims in opposing Black Diamond and Spectrum's motion to dismiss.  The Court dismissed the cross-claims, finding that Yucaipa's allegations that Black Diamond and Spectrum "encouraged" Yucaipa to buy first lien debt were implausible.  The Court's implausibility findings were necessary to support the final judgment on the merits dismissing Yucaipa's cross-claims, and Yucaipa abandoned its appeal of that dismissal order.  Accordingly, collateral estoppel bars the Yucaipa Defendants from re-litigating the factual allegations from cross-claims that the Court has dismissed, which are the factual allegations on which the affirmative defenses are based.

> In other words, even if Yucaipa's Counterclaim were not barred by
> the Covenant Not to Sue and the Appearance Prohibition (which
> they are), *the alleged facts do not tell a plausible story*.   The
> Counterclaim is *an exercise of creative writing which, at closer
> examination, simply does not hold together.*

(Counterclaim Dismissal at 65 (emphasis added).)  In dismissing the Yucaipa Defendants' cross-

claims and counterclaim with prejudice, the Court, using its "judicial experience and common

sense" (Counterclaim Dismissal at 62), considered and rejected the same factual allegations that

the Yucaipa Defendants now contend prop up at least five of their affirmative defenses (*id.* at 62,

64; *see also* Cross-Claims Dismissal at 104:14-106:3).

Namely, the Court rejected the Yucaipa Defendants' factual allegations:

1) that BD/S "encouraged" Yucaipa to acquire first lien debt by providing
false assurances of cooperation and support in 2009 (Cross-Claims
Dismissal at 104:14-106:3; Counterclaim Dismissal at 50-51, 54, 63-64);

2) that a 2009 email indicates that BD/S schemed to equitably subordinate
Yucaipa's first lien debt (Counterclaim Dismissal at 63-64);

3) that BD/S entered into an "illegal claims trade" that served as a bribe to
induce Spectrum to file an involuntary petition (the so-called "Involuntary
Petition Payoff") (Counterclaim Dismissal at 62);

4) that BD/S was "lying in wait" or otherwise waiting for the optimal time to
file the involuntary petitions (*id.*);

5) that BD/S engaged in "sham" negotiations with JCT only to "scuttle" a
deal that would have resulted in a recovery of par plus accrued interest
(*id.*); and

6) that BD/S filed an "objectively baseless" complaint for equitable
subordination as part of a scheme to wipe out Yucaipa's claims (*id.* at 62-
65).

The Yucaipa Defendants, by their own admission, now rely upon those same

factual allegations to support their affirmative defenses of unclean hands, waiver, estoppel,

consent, laches, and possibly "others," and to obtain additional discovery.  (Motion to Compel at

10; Opp. at 8-9.)  In the Motion to Compel, the Yucaipa Defendants argue that they "have

explained that BD/S orchestrated a carefully timed series of lies, payoffs, and legal maneuvers" and "[t]o that end, the Yucaipa Defendants have asserted the affirmative defenses of unclean hands, waiver, estoppel, consent, and laches, among others." (Motion to Compel at 10.) In their Opposition, the Yucaipa Defendants again admit that in support of their affirmative defenses, "Yucaipa has painstakingly laid out the specific 'who, what, when, where, and why' of BD/S's inequitable conduct in its dismissed Counterclaim and pending RICO Complaint . . . ." (Opp. at 8.)[11]

Accordingly, because this Court has already rejected the factual allegations that the Yucaipa Defendants admit underlie their affirmative defenses, the Court should strike those affirmative defenses.

2.      The Yucaipa Defendants Should Not Be Permitted
        to Re-Assert Factual Allegations That Have Already
        Been Rejected Under the Guise of Affirmative Defenses

Regardless of whether the Yucaipa Defendants' affirmative defenses were adequately pled under FRCP 8(c), they should be stricken because they re-assert factual allegations that the Court has already rejected. *See*, *e.g.*, *Human Genome Sciences, Inc. v. Genentech, Inc.*, No. 11 Civ. 6519 (MRP) (JEM), 2011 WL 7461786, at *8 (C.D. Cal. Dec. 9, 2011) (striking unclean hands affirmative defense because it "relies on the same facts" as defendant's dismissed counterclaim); *Fleet Nat'l Bank v. Harstone*, No. 96-10166-NG, 1997 WL 557564, at *13 (D. Mass. May 29, 1997) (Magistrate Judge report and recommendation that affirmative defenses "based on the same allegations of misconduct that were rejected in" defendant's counterclaim be stricken).

---

[11] Remarkably, the Yucaipa Defendants accuse BD/S of lying about this on the next page: "BD/S falsely state that Yucaipa has somehow admitted . . . that the factual allegations underlying all of its defenses 'are the same factual allegations that this Court already has found to be implausible.'" (Opp. at 9.)

A court in this circuit took on this issue directly in *Modern Creative Servs., Inc. v. Dell Inc.*, where it struck affirmative defenses after the defendant sought to reassert arguments that had previously been rejected when the court dismissed its counterclaim.  No. 05 Civ. 3891 (JLL), 2008 WL 305747, at *2-4 (D.N.J. Jan. 28, 2008).  In granting the plaintiff's motion to strike, the court explained that the defendant could not reassert rejected theories "in the guise of an affirmative defense" and that the court would not provide the defendant with "the ability to renew arguments which have been squarely addressed and decided by this Court as a matter of law."  *Id.; see also*, *e.g.*, *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, No. 13 Civ. 13804, 2015 WL 3441155, at *5 (E.D. Mich. May 28, 2015) (where court previously dismissed counterclaim based on fraud as "implausible and insufficient as a matter of law," court stated that "corresponding affirmative defense of fraud . . . must fail for the same reasons").

The Court should do the same here, where the Yucaipa Defendants have admitted that factual allegations previously rejected by the Court underlie five of their affirmative defenses and are the basis for the additional discovery sought in the Motion to Compel.  (*See* Motion to Compel at 10.)  Indeed, the Court need only look to pages 13 through 16 of the Opposition, where the Yucaipa Defendants brazenly re-assert factual allegations that the Court has already squarely considered and rejected in their effort to obtain additional discovery.  For instance, the Yucaipa Defendants point *again* to a 2009 email that the Court addressed in the Counterclaim Dismissal, this time arguing that they need additional discovery to "*confirm the Yucaipa Defendants' theory that BD/S were already planning to equitably subordinate Yucaipa*." (Opp. at 13-14 (emphasis added).)  The Yucaipa Defendants re-assert various other allegations that BD/S "*were plotting against [Yucaipa] as far back as 2008*."  (Opp. at 13, 15.)  Despite the

Court's previous rejection of these factual allegations, the Yucaipa Defendants will continue asserting them unless the motion to strike is granted.

The Yucaipa Defendants also cite *Internet Media Corp. v. Hearst Newspapers, LLC* (Opp. at 8), a three-page opinion in which Judge Robinson dismissed the defendant's counterclaim but declined to strike affirmative defenses solely on the basis of FRCP 8(c)'s pleading standards, holding that *Iqbal* and *Twombly*'s plausibility standard did not apply to affirmative defenses.  No. 10 Civ. 0690 (SLR), 2012 WL 3867165, at *3 (D. Del. Sept. 6, 2012). However, in that case, as the court found, the defendant did not "attempt to argue that it laid out sufficient facts in support of either its affirmative defense or counterclaim" as Yucaipa argues it did here, and the Court did not address the legal sufficiency of any factual allegations, as this Court has done.  *Id.* at *2.  Nor did the defendant contend that the factual allegations underlying its affirmative defense were the same facts underlying the counterclaim.  Indeed, the court did not know the facts upon which defendant was relying:  the defendant argued that it would "obtain a detailed explanation of its defenses by the completion of expert discovery."  *Id.*

Here, by comparison, the Court has considered and addressed the Yucaipa Defendants' factual allegations at length, both in the Cross-Claims Dismissal and in the 65-page Counterclaims Dismissal.  (Counterclaim Dismissal at 62, 64.)  Further, as opposed to *Internet Media Corp*, the Yucaipa Defendants have freely admitted that their affirmative defenses are predicated upon the very same factual allegations this Court described as "*an exercise of creative writing*."  (*Id.* at 65.)  Because those factual allegations are plainly insufficient, the Yucaipa Defendants' affirmative defenses should be stricken.  *See, e.g., Warner/Chappel Music, Inc. v. Pilz Compact Disc., Inc.*, No. Civ. A. 99-0293, 1999 WL 999332, at *3-5 (E.D. Pa. Oct. 26, 1999) ("The Court can strike an affirmative defense when it is legally insufficient to prevent

14

recovery under any state of facts reasonably able to be inferred from the well pleaded allegations

of the answer.").  Since we now know the Yucaipa Defendants' affirmative defenses of unclean

hands, estoppel, waiver, consent and laches re-assert the same factual allegations that have

already been rejected, they should be stricken.

### 3.    Granting the Motion to Strike Will Not Deprive the Yucaipa Defendants of Due Process or the Ability to Assert Valid Defenses

The Yucaipa Defendants complain that it would be "manifestly unfair, and

violative of the Yucaipa Defendants' due process rights, to prevent them from pursuing their

defenses."  (Opp. at 3.)  But if the motion to strike is granted, the Yucaipa Defendants would not

be precluded from pursuing *valid* defenses, only defenses that re-assert factual allegations that

have already been rejected by the Court, and critically, by the finder-of-fact with respect to

BD/S's equitable subordination claim, the same claim to which Yucaipa asserts the affirmative

defenses.  Indeed, the Yucaipa Defendants' contention that BD/S's motion to strike is an attempt

to "position[] the case so that the fact-finder hears only BD/S's version of a long and

complicated set of facts" (Opp. at 2) is misguided, because the finder-of-fact is this Court, which

has already *repeatedly* heard and *rejected* the factual allegations at issue in this motion.

The Yucaipa Defendants are entitled to argue and present evidence that they did

not engage in the conduct alleged by BD/S or that such conduct was not wrongful — *e.g.*, that

Yucaipa did not acquire first lien debt in violation of the Third Amendment, improperly declare

itself Requisite Lender, or interfere with a potential transaction with JCT that would have yielded

a recovery of par plus accrued interest for BD/S and other first lien lenders.  But the facts upon

which the Yucaipa Defendants base their affirmative defenses are really meant to show bad acts

by BD/S, not the absence of bad acts by Yucaipa.  In that regard, the factual allegations at issue

are not actually affirmative "defenses" but instead are affirmative *claims*, which have already

been dismissed.  *See* Hon. Amy St. Eve, *et al.*, *The Forgotten Pleading*, 2013 FED. CT.  L. REV.

152, 169 n.113 (2013) ("With regard to misdesignations, Rule 8(c)(2) provides that: 'If a party

mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court

must, if justice requires, treat the pleading as though it were correctly designated, and may

impose terms for doing so.' FED. R. CIV. P. 8(c)(2).").

Further, Yucaipa is not correct that it is being prevented from asserting *any*

affirmative defenses.  A number of Yucaipa's affirmative defenses are not at issue in this motion,

in particular the affirmative defenses of justification, business judgment rule, good faith,

exculpation, and failure to mitigate.  (*See* Answer ¶¶ 146, 169, 171, 173, 175.)  What Yucaipa is

not permitted to do is assert defenses based upon facts that have already been rejected by this

Court, and this motion to strike is geared toward only those defenses.  Likewise, the Yucaipa

Defendants may argue and present evidence that BD/S are not entitled to the relief being sought

on their claims, but not on the basis of these same factual allegations.

As to discovery associated with the affirmative defenses, the Yucaipa Defendants

are merely seeking to engage in an improper fishing expedition — not to assert valid defenses,

but to resurrect factual allegations that the Court has already rejected.  *See*, *e.g.*, *Bever v.

CitiMortgage, Inc.*, No. 11 Civ. 01584 (AWI) (SKO), 2014 WL 2042015, at *3 (E.D. Cal. May

16, 2014) ("Plaintiff is not permitted to use the discovery process as a fishing expedition to try

and resuscitate dismissed claims.").

In the factual allegations at issue in this motion to strike, the Yucaipa Defendants

seek to show that BD/S engaged in wrongful behavior, as they attempted to show in the cross-

claim and counterclaim, but the facts underlying those claims have been rejected.  What the

Yucaipa Defendants should be doing instead is attempting to prove that they did not engage in wrongful behavior.  As such, the Court should strike the affirmative defenses.

> **B.** **The Yucaipa Defendants Have Admitted That the Affirmative Defenses at Issue Sound in Fraud and Are Therefore Subject to FRCP 9(b)**

The Yucaipa Defendants' affirmative defenses must also be stricken because they sound in fraud.  The Yucaipa Defendants do not challenge the fact that affirmative defenses sounding in fraud must be pled with particularity under FRCP 9(b).  *See, e.g.*, *Bayer CropSciences AG v. Dow AgroSciences LLC*, No. 10 Civ. 1045 (RMB) (JS), 2011 WL 6934557, at *1, *3 (D. Del. Dec. 30, 2011) (striking affirmative defense of estoppel premised upon "misleading conduct" for failure to satisfy FRCP 9(b)); *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 901 n.7 (E.D. Pa. 2011) (affirmative defenses sounding in fraud "are subject to Rule 9(b)'s particularized requirements").  Instead, the Yucaipa Defendants argue that their affirmative defenses do not sound in fraud.  That assertion cannot be taken seriously.

In their companion Motion to Compel, the Yucaipa Defendants argued that their affirmative defenses were premised upon a "series of lies, payoffs, and legal maneuvers," including a fraud on the Court.  (Motion to Compel at 13.)  The Yucaipa Defendants contended that they needed discovery in support of their affirmative defenses to prove, among other things, that BD/S made "false statements" and that the Yucaipa Defendants "relied to their detriment on false statements by BD/S."  (*Id*. at 12-13.)  These are classic allegations of fraud.  The Yucaipa Defendants' feeble attempt to characterize their affirmative defenses as "equitable in nature" is also unavailing, as allegations of inequitable conduct may also sound in fraud.  *See, e.g.*, *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 381 (D. Del. 2012) (dismissing "inequitable conduct" counterclaims and affirmative defenses for failure to satisfy FRCP 9(b)).

The Yucaipa Defendants are forced to fall back on arguing that they pled their affirmative defenses with sufficient particularly *based on the factual allegations asserted in their dismissed counterclaim*, an argument that only reinforces BD/S's motion to strike because the Court has already rejected those factual allegations.  (Opp. at 8.)  These allegations include that Black Diamond "bribed" Spectrum by entering into an illegal claims trade and defrauding the Court, that BD/S "encouraged" Yucaipa to acquire first lien debt, and that BD/S engaged in "sham" negotiations while "lying in wait" to file the involuntary petitions and assert an objectively baseless equitable subordination claim.  (*See* Counterclaim Dismissal at 61-65; Cross-Claims Dismissal at 104:14-106:3.)

Without these factual allegations, the Yucaipa Defendants' affirmative defenses sounding in fraud are nothing but conclusory assertions that fail to satisfy FRCP 9(b).  *See Bayer CropSciences*, 2011 WL 6934557, at *1, *3.  For the above reasons, the Yucaipa Defendants' affirmative defenses sounding in fraud must be stricken.

**C.     To the Extent the Affirmative Defenses Will Require BD/S to Engage in Unnecessary Discovery and Repeatedly Respond to Implausible Factual Allegations Through Summary Judgment and Trial, They Will Cause BD/S Substantial Prejudice**

The law is plain that for purposes of a FRCP 12(f) motion to strike, the presence of affirmative defenses that will "substantially complicate the discovery proceedings and the issues at trial" is sufficient to show prejudice.  *La. Sulphur Carriers, Inc. v. Gulf Res. & Chem. Corp.*, 53 F.R.D. 458, 460 (D. Del. 1971); *see also Coach, Inc. v. Kmart Corp.*, 756 F. Supp. 2d 421, 426 (S.D.N.Y. 2010) ("increased discovery costs in having to explore the factual basis" of an affirmative defense constitutes prejudice that warrants striking an affirmative defense).  Indeed, a motion to strike that will "avoid the expenditure of time and money that must arise

from litigating spurious issues by dispensing with those issues prior to trial" is properly granted. *Sidney-Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983).

Here, despite this Court's repeated rejections of the Yucaipa Defendants' implausible allegations in the Cross-Claims Dismissal and the Counterclaim Dismissal, the Yucaipa Defendants brought a motion to compel seeking the production of additional documents and written responses based on 30 discovery requests focused on those very same factual allegations, which the Yucaipa Defendants now contend are necessary to support their affirmative defenses.  Opening the door to broad discovery in support of implausible allegations at this late stage of the litigation will cause substantial prejudice to BD/S.

Discovery aside, BD/S will also suffer prejudice if it is forced to continually litigate and respond to the Yucaipa Defendants' implausible allegations at the summary judgment phase, during motions in limine, or at trial.  For all of these reasons, BD/S will suffer prejudice if the Court does not strike the Yucaipa Defendants' affirmative defenses which are based upon the same implausible allegations that the Court has already rejected.

## CONCLUSION

For the foregoing reasons, BD/S respectfully request that the Court strike the Yucaipa Defendants' affirmative defenses of unclean hands, waiver, estoppel, consent, and laches and preclude the Yucaipa Defendants from relying upon the factual allegations already rejected by this Court to support their other affirmative defenses.

Dated: September 8, 2016
      Wilmington, Delaware                   **LANDIS RATH & COBB LLP**

                                          */s/ Kerri K. Mumford*
                   Adam G. Landis (No. 3407)
                   Kerri K. Mumford (No. 4186)
                   919 Market Street, Suite 1800
                   Wilmington, Delaware 19801
                   Telephone: (302) 467-4400
                   Facsimile: (302) 467-4450

                   -and-

                   **SCHULTE ROTH & ZABEL LLP**
                   Adam C. Harris
                   David Hillman
                   Robert J. Ward
                   919 Third Avenue
                   New York, New York 10022
                   Telephone: (212) 756-2000
                   Facsimile: (212) 593-5955

                   *Counsel to BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd., Spectrum Investment Partners, L.P., Black Diamond Commercial Finance, L.L.C., and Spectrum Commercial Finance LLC.*