# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

Yucaipa American Alliance Fund I, L.P.,   :
Yucaipa American Alliance (Parallel) Fund I,   :
L.P., Yucaipa American Alliance Fund II, L.P.,   :
Yucaipa American Alliance (Parallel) Fund II,   :
L.P., Ronald Burkle, Jos Opdeweegh, Derex   :
Walker, Jeff Pelletier, Ira Tochner, and Joseph   :    Chapter 11
Tomczak,   :
  :    Case No. 12-11564 (CSS)
               Appellants-Defendants,   :
  :    (Jointly Administered)
  :
v.   :    Adv. Proc. No. 14-50971
  :
BDCM Opportunity Fund II, L.P., Black   :
Diamond CLO 2005-1 Ltd., Spectrum   :    C.A. No. _____
Investment Partners, L.P., Black Diamond   :
Commercial Finance, L.L.C., as Co-   :    ECF Case
Administrative Agent, and Spectrum   :
Commercial Finance, LLC, as Co-   :
Administrative Agent,   :
  :
               Appellees-Plaintiffs.   :
  :
------------------------------------------------------------x

**APPELLANTS-DEFENDANTS YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, AND JOSEPH TOMCZAK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO APPEAL**

YOUNG CONAWAY
STARGATT & TAYLOR, LLP
Michael R. Nestor (No. 3526)
Edmon L. Morton (No. 3856)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER LLP

01:21503847.1

Maurice M. Suh (*Pro Hac Vice*)
Robert A. Klyman (*Pro Hac Vice*)
Kahn Scolnick (*Pro Hac Vice*)
333 South Grand Avenue
Los Angeles, CA  90071
Telephone:  (213) 229-7000
msuh@gibsondunn.com

*Attorneys for Appellants-Defendants Yucaipa
American Alliance Fund I, L.P., Yucaipa American
Alliance (Parallel) Fund I, L.P., Ronald Burkle, Jos
Opdeweegh, Derex Walker, Jeff Pelletier, Ira
Tochner, and Joseph Tomczak*

01:21503847.1

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   BACKGROUND ............................................................................................... 4

      A.    The Various Related Cases and the Parties' Pleadings In Those Cases. .................. 4

      B.    The Yucaipa Defendants' Motion to Compel Discovery and BD/S's Cross-
            Motion to Strike Defenses. ........................................................................ 6

III.  ARGUMENT .................................................................................................. 8

      A.    Legal Standard for Interlocutory Appeal. ................................................... 8

      B.    This Appeal Presents Controlling Questions of Law.................................... 8

      C.    There Is Substantial Ground for Difference of Opinion. ........................... 9

            1.    Substantial Ground for Difference of Opinion Exists as to the
                  Bankruptcy Court's Application of a "Plausibility" Standard to
                  Affirmative Defenses. ..................................................................... 10

            2.    Substantial Ground for Difference of Opinion Exists as to The
                  Bankruptcy Court's Application of Rule 9(b)'s Particularity Standard
                  to Equitable Defenses. .................................................................... 11

      D.    An Interlocutory Appeal Will Materially Advance the Termination of the
            Litigation....................................................................................................... 12

IV.   CONCLUSION............................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*,
    321 B.R. 147 (D.N.J. 2005) ...................................................................................12

*Bayer CropScience AG v. Dow AgroScis. LLC*,
    No. 10-1045, 2011 WL 6934557 (D. Del. Dec. 30, 2011) ...........................................2, 10, 11

*BDCM Opportunity Fund II, LP v. Yucaipa Am. Alliance Fund I, LP*,
    978 N.Y.S.2d 10 (N.Y. App. Div. 2013) ..........................................................................13, 14

*Boatright v. Crozer-Keystone Health Sys.*,
    No. 14-7041, 2015 WL 4506559 (E.D. Pa. July 24, 2015) ....................................................13

*In re Broadstripe, LLC*,
    No. 09-10006, 2009 WL 774401 (D. Del. Mar. 26, 2009) .................................................8, 13

*In re Chocolate Confectionary Antitrust Litig.*,
    607 F. Supp. 2d 701 (M.D. Pa. 2009) .........................................................................9

*Connelly v. Lane Constr. Corp.*,
    809 F.3d 780 (3d Cir. 2016)...........................................................................................11

*Cipollone v. Liggett Grp., Inc.*,
    789 F.2d 181 (3d Cir. 1986).....................................................................................1, 8, 10

*Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*,
    160 F.3d 982 (3d Cir. 1998)...........................................................................................16

*In re Dwek*,
    Civ. No. 3:09-cv-5046, 2010 WL 234938 (D.N.J. Jan. 15, 2010)...........................................12

*FTC v. Wyndham Worldwide Corp.*,
    10 F. Supp. 3d 602 (D.N.J. 2014) ...............................................................................9

*Internet Media Corp. v. Hearst Newspapers, LLC*,
    No. 10-690-SLR, 2012 WL 3867165 (D. Del. Sept. 6, 2012) ...........................................2, 11

*Johnson v. Alldredge*,
    488 F.2d 820 (3d Cir. 1973)...........................................................................................8

*Katz v. Carte Blanche Corp.*,
    496 F.2d 747 (3d Cir. 1974).....................................................................................8, 9, 12

*In re L.A. Dodgers LLC*,
    465 B.R. 18 (D. Del. 2011).............................................................................................7

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Lindsey v. Normet*,
    405 U.S. 56 (1972)................................................................................16

*In re Marvel Entm't Grp.*,
    209 B.R. 832 (D. Del. 1997)...............................................................3, 9

*Modern Creative Services, Inc. v. Dell Inc.*,
    No. 05-3891, 2008 WL 305747 (D.N.J. Jan. 28, 2008).......................10

*In re New Valley Corp.*,
    181 F.3d 517 (3d Cir. 1999)................................................................16

*Newborn Bros. v. Albion Eng'g Co.*,
    299 F.R.D. 90 (D.N.J. 2014)...............................................................10

*Reese v. BP Expl. (Ala.) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ................................................................9

*Senju Pharm. Co. v. Apotex, Inc.*,
    921 F. Supp. 2d 297 (D. Del. 2013)....................................................11

*Tyco Fire Prods. LP v. Victaulic Co.*,
    777 F. Supp. 2d 893 (E.D. Pa. 2011) ..............................................2, 11

*In re W.R. Grace & Co.*,
    No. 08-246, 2008 WL 3522453 (D. Del. Aug. 12, 2008)......................7

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
    252 F.3d 316 (4th Cir. 2001) ..............................................................10

*In re Winstar Commc'ns, Inc.*,
    554 F.3d 382 (3d Cir. 2009)................................................................16

*XpertUniverse, Inc. v. Cisco Systems, Inc.*,
    2012 WL 2335938 (D. Del. June 19, 2012)...................................10, 11

**Statutes**

28 U.S.C. § 1292(b) ...............................................................................8

**Other Authorities**

Wright & Miller, Fed. Prac. & Proc. § 3930 (3d ed.) ..........................9, 13

Wright & Miller, Fed. Prac. & Proc. § 3931 (3d ed.) .............................13

# TABLE OF AUTHORITIES
(continued)

Page(s)

**Rules**

Fed. R. Civ. P. 8(a) ...................................................................................................................2

Fed. R. Civ. P. 8(c) ...................................................................................................................2

Fed. R. Civ. P. 9(b) ...............................................................................................................8, 11

Fed. R. Civ. P. 12(f) ........................................................................................................ passim

Fed. R. Civ. P. 12(g) ...................................................................................................................6

01:21503847.1

Appellants-Defendants Yucaipa American Alliance Fund I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P. (together "Yucaipa"), Ronald Burkle, Jos Opdeweegh, Derex Walker, Jeff Pelletier, Ira Tochner, and Joseph Tomczak (together "Individual Defendants") (collectively "the Yucaipa Defendants") respectfully seek leave under 28 U.S.C. § 158(a)(3) to appeal the Bankruptcy Court's January 18, 2017 Order (the "Order," D.I. 194) granting the Cross-Motion to Strike Certain Affirmative Defenses brought by Plaintiffs BDCM Opportunity Fund II, L.P., Black Diamond CLO 2005-1 Ltd., Black Diamond Commercial Finance, LLC, Spectrum Investment Partners, L.P., and Spectrum Commercial Finance, LLC (collectively "BD/S"), filed in Case No. 14-50971 (the "BD/S Action").

## I.    PRELIMINARY STATEMENT

The Yucaipa Defendants respectfully seek leave for an interlocutory appeal of the Bankruptcy Court's erroneous and highly prejudicial Order striking their affirmative defenses of unclean hands, waiver, consent, estoppel, and laches under Rule 12(f) of the Federal Rules of Civil Procedure. The Order constitutes plain and reversible error under Third Circuit precedent and this Court's case law. Critically, the Order seriously impairs the Yucaipa Defendants' ability to defend against the BD/S Action—depriving these defendants of due process without justification. If review of the Bankruptcy Court's ruling is delayed until after a final judgment, the entire case would need to be redone (from discovery, through dispositive motion practice, and including trial) in light of this single fundamental error that can and should be corrected now. Thus, because the Order satisfies the criteria for interlocutory review, this Court should grant leave to appeal and not delay review pending the underlying trial in the BD/S Action.

First, this appeal presents "a controlling issue of law"—namely, the Bankruptcy Court committed reversible error by applying the wrong legal standard to assess the sufficiency of the Yucaipa Defendants' affirmative defenses. The Third Circuit has held that courts may not strike defenses under Rule 12(f) "unless the insufficiency of the defense is 'clearly apparent.'" *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986). Here, there was no insufficiency (let alone a "clearly apparent" one) in the Yucaipa Defendants' affirmative

defenses of unclean hands, waiver, consent, estoppel, or laches.  To the contrary, there is no dispute that these defenses are valid, cognizable, and legally "sufficient" defenses to BD/S's equitable claims, in particular the lead claims of equitable subordination.  The Bankruptcy Court's inquiry should have stopped there.

Instead, the Bankruptcy Court took issue with the sufficiency of these defenses not as a legal matter, but purely as a matter of *pleading*.  The Bankruptcy Court made no findings and offered no reasoning for its decision, so this Court must presume that (a) the Bankruptcy Court found, as BD/S urged it to do, the factual bases for the Yucaipa Defendants' equitable defenses overlapped 100% with the factual bases for the counterclaim that Yucaipa (but not the Individual Defendants) previously asserted against BD/S for equitable subordination, which the Bankruptcy Court dismissed in 2015 under Rule 12(b)(6) based, in part, on the *Twombly* and *Iqbal* "plausibility" standard; and then (b) again, adopting the arguments of BD/S, the Bankruptcy Court simply recycled its "plausibility" findings to grant BD/S's untimely motion to strike five of the Yucaipa Defendants' (including the Individual Defendants') equitable defenses under Rule 12(f).

This was reversible error.  Many courts—including this one—have expressly held that "*Twombly* and *Iqbal* do not apply to affirmative defenses, which need not be plausible to survive."  *Internet Media Corp. v. Hearst Newspapers, LLC*, No. 10-690-SLR, 2012 WL 3867165, at *3 (D. Del. Sept. 6, 2012) (internal quotation marks omitted); *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 900-01 (E.D. Pa. 2011).  Indeed, in *Bayer CropScience AG v. Dow AgroScis. LLC*, No. 10-1045 RMB/JS, 2011 WL 6934557, at *1-2 (D. Del. Dec. 30, 2011), this Court set forth nine separate bases for rejecting the "plausibility" standard for affirmative defenses, including the textual differences between Rules 8(a) and 8(c), "the unfairness of holding the defendant to the same pleading standard as the plaintiff," and the risk "that a heightened pleading requirement would produce more motions to strike, which are disfavored."

In any event, even if the "plausibility" standard were generally applicable to defenses (it is not), the defenses at issue easily clear the "plausibility" hurdle at the pleading stage. Likewise, to the extent the Bankruptcy Court accepted BD/S's alternative argument that the equitable defenses should be subjected to Federal Rule of Civil Procedure 9(b)'s particularity requirement for fraud, this too was error because (i) Rule 9(b) does not apply to these equitable defenses, and (ii) at the very least, the Yucaipa Defendants were willing and able to plead these defenses with more particularity.

Second, the issues presented by the appeal are subject to "substantial ground for difference of opinion" because the Bankruptcy Court's Order is contrary to established law. *In re Marvel Entm't Grp.*, 209 B.R. 832, 837-38 (D. Del. 1997). Alternatively, to the extent there is still some room for debate about the applicability of the "plausibility" standard to affirmative defenses (a diminishing minority of courts apply it, although not this Court), this also presents a substantial ground for difference of opinion. Notably, the Third Circuit Court of Appeals has yet to rule on this issue.

Third, an immediate appeal will materially advance the ultimate resolution of the BD/S Action and related actions, will protect the Yucaipa Defendants' due process rights, and should avoid wasted trial time and litigation expense for *all* parties as well as numerous courts (the Bankruptcy Court, this Court, and the Third Circuit Court of Appeals). The ruling will prevent (and already has prevented) the Yucaipa Defendants from obtaining discovery into facts touching on the now-struck affirmative defenses—even where such discovery is also relevant to the Yucaipa Defendants' more general defense against BD/S's claims—and could even prevent the Yucaipa Defendants from arguing key theories of defense at trial. Tellingly, the effort to strike these affirmative defenses was made more than *17 months after* the Yucaipa Defendants pleaded these defenses in their answer, and BD/S moved to strike only in the context of opposing the Yucaipa Defendants' Motion to Compel discovery. Not only was this improper procedurally, but it highlights the ramifications of the Bankruptcy Court's Order.

In short, the Order striking these defenses will fundamentally alter how the case progresses, and if it is reversed on appeal following a final judgment, this would require not only a re-trial, but a re-opening and re-doing of discovery (including depositions and written discovery).  This Court should authorize an interlocutory appeal.[1]

## II.    BACKGROUND

The underlying dispute between the parties arises out of *In re ASHINC Corp.*, No. 12-11564 (Bankr. D. Del. May 17, 2013) (the "Allied Bankruptcy") and the related adversary proceedings pending in the Bankruptcy Court and this Court.

### A.    The Various Related Cases and the Parties' Pleadings In Those Cases.

In May 2012, BD/S forced Allied into Chapter 11 bankruptcy by filing an involuntary bankruptcy petition.

Yucaipa (and not the Individual Defendants) subsequently asserted cross-claims against BD/S in an adversary proceeding (A.P. No. 12-50947), seeking: (a) a declaration that the Third Amendment to the Allied First Lien Credit Agreement ("FLCA") was invalid and that Yucaipa validly held various term loans and commitments; (b) a remedy for unjust enrichment because Yucaipa would not have agreed to purchase First Lien Debt in the absence of a Fourth Amendment to the FLCA and certain explicit and implicit representations of support in that purchase by BD/S; (c) a finding of estoppel against BD/S on the ground that their actions, including their failure to object to the Fourth Amendment, barred them from arguing that the provisions of the Third Amendment were controlling as to Yucaipa; and (d) injunctive relief against BD/S and others to enjoin them from acting as "Requisite Lenders" and "Agents" under the FLCA and from taking actions based on that claimed status.  (A.P. No. 12-11564, D.I. 65.) On February 27, 2013, the Bankruptcy Court dismissed those cross-claims on multiple grounds,

---

[1]  If this Court grants leave to appeal, the Yucaipa Defendants may move to have the appeal heard on an expedited basis (e.g., before depositions take place), in the interest of efficiency.

including the purported lack of plausibility of certain allegations.  (A.P. No. 12-50947, D.I. 139, 162.)

In 2013, the Committee of Unsecured Creditors brought an action against Yucaipa for equitable subordination and breach of fiduciary duty, and against some of the Individual Defendants for aiding and abetting breach of fiduciary duty, among other claims, A.P. No. 13-50530 (the "Committee Action").  BD/S intervened in that action as plaintiffs.  Yucaipa and the named Individual Defendants filed separate answers, each asserting various affirmative defenses including estoppel, waiver, unclean hands, unjust enrichment, and consent (i.e., the same defenses that the Bankruptcy Court recently struck from the BD/S Action).  (A.P. No. 13-50530, D.I. 95-96).

On November 19, 2014, BD/S commenced the BD/S Action, the adversary proceeding out of which this appeal arises.  The BD/S Action seeks equitable subordination of Yucaipa's claims arising out the FLCA, and includes causes of action against the Yucaipa Defendants for breach of the implied duty of good faith and fair dealing, breach of contract, and tortious interference.  (A.P. No. 14-50971, D.I. 1.)

On February 19, 2015, the Yucaipa Defendants filed their answer, asserting 15 affirmative defenses:  Failure to State a Claim, Justification, Estoppel, Waiver, Ratification, Unclean Hands and *In Pari Delicto*, Unjust Enrichment, Consent, Statute of Limitations, Contractual Prohibition, Laches, Failure to Mitigate, Good Faith, Exculpation, and Business Judgment Rule.  (*Id.*, D.I. 19.)

The answer also included an equitable subordination counterclaim brought by Yucaipa—but not the Individual Defendants—against BD/S.  (*Id.*)  Yucaipa's counterclaim detailed how BD/S schemed to turn a relatively small investment in Allied into huge profits by:  (i) preventing Yucaipa from acting as Requisite Lender or taking other actions to benefit Allied and its stakeholders; (ii) filing an involuntary bankruptcy petition against Allied in 2012, supported by false affidavits concealing illegal claims trading; and (iii) pursuing an equitable subordination

strategy in Bankruptcy Court in order to reap a windfall off of BD/S's investments, which BD/S were plotting to do even before Yucaipa acquired any First Lien Debt. (*Id.*, pp. 33-37, ¶¶ 8-11.)

BD/S moved to dismiss Yucaipa's counterclaim under Rule 12(b)(6), but did not seek to strike any of the Yucaipa Defendants' affirmative defenses under Rule 12(f), even though (i) a motion to strike must be made "within 21 days after being served with the" answer and (ii) a second Rule 12 motion may not be brought to raise an objection that was available but omitted from the first motion. Fed. R. Civ. P. 12(f)(2), 12(g)(2). (A.P. No. 14-50971, D.I. 41.)

On August 21, 2015, the Bankruptcy Court granted BD/S's Motion to Dismiss on several grounds, including that Yucaipa had not plausibly alleged BD/S's scheme under the *Twombly-Iqbal* standard. (A.P. No. 14-50971, D.I. 82-1, pp. 61-62.) Yucaipa moved for leave to appeal that order (*id.*, D.I. 90), but this Court denied Yucaipa's motion on November 13, 2015 (D. Del. No. 15-mc-00232-SLR, D.I. 1, 20).

**B.    The Yucaipa Defendants' Motion to Compel Discovery and BD/S's Cross-Motion to Strike Defenses.**

Beginning in 2013 and continuing today, the parties have engaged in discovery, although no depositions have taken place yet. To date, the Yucaipa Defendants have produced ten times the number of documents as Black Diamond and Spectrum have *combined*, and BD/S have stonewalled by refusing to produce several categories of relevant documents. (*See* A.P. No. 14-50971, D.I. 119, pp. 1-3, 6-7.) Regarding written discovery, BD/S have objected and refused to respond to many of the Yucaipa Defendants' requests, despite months of diligent meet-and-confer efforts by the Yucaipa Defendants.

Accordingly, the Yucaipa Defendants filed a Motion to Compel the Production of Documents and Responses to Discovery Requests (the "Motion to Compel") to obtain documents and information related to the Allied Bankruptcy, the Committee Action, and the BD/S Action. (*Id.*, D.I. 119.)

On August 12, 2016, BD/S opposed the Motion to Compel. (*Id.*, D.I. 136.) BD/S did not dispute that the sought-after discovery was relevant to the Yucaipa Defendants' affirmative

defenses.  However, BD/S's opposition included an untimely—by more than seventeen months—cross-motion under Rule 12(f) to strike five of these equitable defenses.  (*Id*.)[2]

In their cross-motion, BD/S did *not* argue that any of these defenses were legally insufficient to defend against claims for equitable subordination or breaches of fiduciary duty. Nor did they argue that the defenses as pleaded failed to provide fair notice under Rule 8(c). Rather, BD/S argued only that the affirmative defenses of unclean hands, waiver, consent, estoppel, and laches turn "upon factual allegations that the Court has already determined to be *implausible*."  (*Id.* at 31-32 (emphasis added).)  BD/S thus urged the Bankruptcy Court to strike these defenses based on:  (a) lack of plausibility, with respect to facts that overlapped with those asserted in Yucaipa's now-dismissed Counterclaims, even though that prior ruling applied only to Yucaipa and not the Individual Defendants, and (b) the particularity standard under Rule 9(b), with respect to any facts that reflect BD/S's fraudulent conduct.  (*Id*. at 31-34.)

The Bankruptcy Court held a hearing on the Motion to Compel and the Cross-Motion to Strike on January 9, 2017, and took the matters under submission without asking any questions or making any findings on the record.  (*Id*., D.I. 193.)  The Bankruptcy Court then denied the Yucaipa Defendants' Motion to Compel and granted BD/S's Motion to Strike on January 18, 2017, in a one-line order stating that "[u]pon consideration" of BD/S's Cross-Motion to Strike Certain Affirmative Defenses, the motion was "GRANTED."  (*Id*., D.I. 194.)

For purposes of this Motion, the Yucaipa Defendants assume (as we must) that the Bankruptcy Court adopted BD/S's arguments in full, including the grounds and legal standards supporting the Motion to Strike.

---

[2]  BD/S also waived any Rule 12(f) objections by failing to include them in their prior Rule 12 motion to dismiss Yucaipa's Counterclaim. Fed. R. Civ. P. 12(g)(2) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").

## III.    ARGUMENT

### A.    Legal Standard for Interlocutory Appeal.

When considering whether to grant leave to appeal under 28 U.S.C. § 158(a)(3), courts "typically borrow[] the standard found in 28 U.S.C. § 1292(b), which governs whether an appeal of an interlocutory order of a district court to a court of appeals is warranted." *In re W.R. Grace & Co.*, No. 08-246, 2008 WL 3522453, at *2 (D. Del. Aug. 12, 2008); *see also In re L.A. Dodgers LLC*, 465 B.R. 18, 29 (D. Del. 2011).  Under this standard, "leave is appropriate where the proposed appeal concerns (1) a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) . . . an immediate appeal . . . may materially advance the ultimate termination of the litigation . . . ." *In re Broadstripe, LLC*, No. 09-10006, 2009 WL 774401, at *2 (D. Del. Mar. 26, 2009) (internal quotation marks and citations omitted).

### B.    This Appeal Presents Controlling Questions of Law.

A controlling question of law exists where an order presents a pure legal issue (e.g., one that does not require consideration of the record) that if decided incorrectly would be grounds for reversal of the final judgment.  *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (interlocutory appeals may "avoid a wasted trial"); *Johnson v. Alldredge*, 488 F.2d 820, 822-23 (3d Cir. 1973) (explaining that interlocutory appeals are designed "to permit decision of legal issues as to which there is considerable question without requiring the parties first to participate in a trial that may be unnecessary").

The Yucaipa Defendants' appeal will present at least two controlling questions of law:

> (1) Striking affirmative defenses under Rule 12(f) is generally disfavored and may not be done "unless the insufficiency of the defense is 'clearly apparent.'" *Cipollone*, 789 F.2d at 188.  Here, there is no dispute that unclean hands, waiver, consent, estoppel, and laches are all valid and legally "sufficient" defenses to equitable claims, such as claims for equitable subordination and breaches of fiduciary duty.  Nonetheless, the Bankruptcy Court struck these defenses pursuant to Rule 12(f) as insufficiently *pleaded* under the "plausibility" standard, even

though that standard is inapplicable to defenses.  Did the Bankruptcy Court err by applying the wrong pleading standard to strike Yucaipa Defendants' affirmative defenses?

(2) Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud," while allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Numerous courts have held that equitable defenses like unclean hands, waiver, consent, estoppel, and laches are not subject to Rule 9(b)'s particularity requirement, but rather may be pleaded generally.  Did the Bankruptcy Court err to the extent it adopted BD/S's alternative argument that the Yucaipa Defendants' equitable defenses are subject to Rule 9(b)'s heightened pleading standard and that they failed to meet that standard?

These questions of law are plainly "controlling" because the Bankruptcy Court's incorrect disposition of either of them would be reversible error on appeal.  *See, e.g., Katz*, 496 F.2d at 755; Wright & Miller, Fed. Prac. & Proc. § 3930 (3d ed.) ("There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment.").

**C.    There Is Substantial Ground for Difference of Opinion.**

The Bankruptcy Court disregarded established law by applying the Rule 12(b)(6) "plausibility" standard and/or Rule 9(b)'s "particularity" standard to strike the Yucaipa Defendants' affirmative defenses of unclean hands, waiver, consent, estoppel, and laches.

Substantial ground for difference of opinion exists when an order is contrary to established law.  *In re Marvel Entm't Grp.*, 209 B.R. at 837-38.  There can also be substantial ground for difference of opinion even where there are no directly conflicting cases, so long as the appeal "involves an issue over which reasonable judges might differ."  *Reese v. BP Expl. (Ala.) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (internal quotation marks omitted); *see also FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 634 (D.N.J. 2014) (explaining that "substantial ground for difference of opinion" arises "out of genuine doubt as to the correct legal standard")

(internal quotation marks omitted); *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 705 (M.D. Pa. 2009) ("A substantial ground for difference of opinion exists when controlling authority fails to resolve a pivotal matter.").

1.    **Substantial Ground for Difference of Opinion Exists as to the Bankruptcy Court's Application of a "Plausibility" Standard to Affirmative Defenses.**

In the Third Circuit, a motion to strike affirmative defenses must be denied "unless the insufficiency of the defense is 'clearly apparent.'"  *Cipollone*, 789 F.2d at 188.  "[A]n affirmative defense is insufficient if it is not recognized as a defense to the cause of action." *Newborn Bros. v. Albion Eng'g Co.*, 299 F.R.D. 90, 93-94 (D.N.J. 2014) (internal quotation marks omitted).[3]  "The underpinning of this principle rests on a concern that a court should restrain from evaluating the merits of a defense where, as here, the factual background for a case is largely undeveloped."  *Cipollone*, 789 F.2d at 188; *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) ("[S]triking a portion of a pleading is a drastic remedy [that] . . . is often sought by the movant simply as a dilatory tactic.").

Here, there is no dispute that the defenses of unclean hands, waiver, estoppel, consent, and laches are valid, recognized, and legally sufficient defenses to equitable causes of action, including claims for equitable subordination and breach of fiduciary duty.

The Bankruptcy Court nonetheless struck these defenses pursuant to Rule 12(f) as inadequately *pleaded* under the *Twombly/Iqbal* "plausibility" standard.  The court found—based solely on the pleadings and without considering any evidence—it is not even "plausible" that BD/S could have acted inequitably or unfairly in any way with respect to Allied or their claims

---

[3]  For instance, BD/S (and thus the Bankruptcy Court) relied heavily on the order striking certain defenses in *Modern Creative Services, Inc. v. Dell Inc.*, No. 05-3891, 2008 WL 305747 (D.N.J. Jan. 28, 2008).  There, however, unlike here, the defenses at issue were legally defective because they were not actually defenses to the particular causes of action. See *id.* at *3 (striking defense of redundancy because "the New Jersey Supreme Court has specifically allowed such a 'redundant' . . . claim to proceed alongside claims similar to those alleged here"), *4 (striking defense asserting that the defendant owed plaintiff no independent duty of confidentiality, because there was no requirement under New Jersey law that the plaintiff must allege an independent duty of confidentiality).

against Yucaipa (unclean hands); it is not even "plausible" that BD/S could have acquiesced or participated in any of the transactions or events about which they now complain (waiver, estoppel, consent); and it is not even "plausible" that BD/S could have waited too long to assert their claims (laches). *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789-90, 793 (3d Cir. 2016) (explaining that under *Twombly*/*Iqbal*, a complaint's factual allegations "are assumed to be true even if 'unrealistic or nonsensical,' 'chimerical,'" "'extravagantly fanciful,'" or "even outlandish," so long as the pleader raises a "reasonable inference that discovery will reveal evidence of the elements necessary to establish her claims").

While the Third Circuit has not yet decided this issue, *see Bayer CropScience AG*, 2011 WL 6934557, at *1-2, a majority of district courts, including this one, have expressly rejected the "plausibility" standard for affirmative defenses. These courts instead apply Rule 8(c)'s notice-pleading standard to defenses. *See, e.g.*, *XpertUniverse, Inc. v. Cisco Systems, Inc.*, 2012 WL 2335938, at *5 n. 3 (D. Del. June 19, 2012) (joining "the majority of the District Courts in the Third Circuit [that] have rejected the application of *Twombly* and *Iqbal*" to affirmative defenses); *Internet Media Corp.*, 2012 WL 3867165, at *3; *Tyco Fire Prods. LP*, 777 F. Supp. 2d at 900-01; *Bayer CropScience AG*, 2011 WL 6934557, at *1-2; *see also Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 303-04 (D. Del. 2013) (finding that a specific allegation, "while insufficient as a counterclaim to survive a motion to dismiss—is sufficient as an affirmative defense to survive a motion to strike"). There is no dispute that the now-stricken defenses satisfy Rule 8(c)'s pleading standard.

Accordingly, substantial ground for difference of opinion exists as to the Bankruptcy Court's application of the *Iqbal-Twombly* "plausibility" standard to strike the Yucaipa Defendants' affirmative defenses.

### 2. Substantial Ground for Difference of Opinion Exists as to The Bankruptcy Court's Application of Rule 9(b)'s Particularity Standard to Equitable Defenses.

The Bankruptcy Court may also have accepted BD/S's alternative argument that the Yucaipa Defendants' affirmative defenses failed to meet Rule 9(b)'s particularity pleading

standard because the "defenses sound in fraud."  (A.P. No. 14-50971, D.I. 136, p. 34.)  This

would also present substantial ground for difference of opinion because courts have found that

the affirmative defenses at issue here are *equitable* in nature, not based in fraud.  *See*

*XpertUniverse, Inc.*, 868 F. Supp. 2d at 379-84 (applying Rule 9(b) to affirmative defense of

inequitable conduct in prosecution of a patent application, but not to affirmative defenses of

"laches/estoppel," "unclean hands," "unjust enrichment," "waiver," and "consent").

Rule 9(b) makes clear that "[m]alice, intent, knowledge, and other conditions of a

person's mind may be alleged generally."  Thus, contrary to BD/S's argument and the

Bankruptcy Court's implicit conclusion, allegations concerning BD/S's *intent* to reap a windfall

from their Allied investments at Yucaipa's expense, their *knowledge* of and acquiescence in

Yucaipa acquiring First Lien Debt and becoming Requisite Lender, and their *malice* toward

Yucaipa (accusing it of misconduct while privately acknowledging that Yucaipa was adding

value and acting in good faith toward Allied) are all matters that may be pleaded generally.

Moreover, even to the extent Rule 9(b) applied to one or more of these defenses, there

would be substantial ground for a difference of opinion as to the sufficiency of the defenses as

pleaded.  The Yucaipa Defendants have painstakingly laid out the specific "who, what, when,

where, and why" of BD/S's inequitable conduct—which forms part of the basis for these

defenses of unclean hands, estoppel, consent, waiver, and laches—in, among other places,

Yucaipa's dismissed Counterclaim and cross-claims.  While Yucaipa's allegations were deemed

not "plausible" (a finding with which Yucaipa strongly disagrees but has not been able to appeal

yet), there is no question that the allegations were pleaded with a great deal of specificity.

Indeed, to the extent this Court would prefer for the Yucaipa Defendants to plead their

affirmative defenses with more specificity in an amended answer, they would be happy to so

do—although such defenses would still not be subject to the "plausibility" standard.

**D.    An Interlocutory Appeal Will Materially Advance the Termination of the Litigation.**

This Court should hear these issues on an interlocutory basis because their immediate

resolution will materially advance the termination of the litigation, conserving the time and

resources of the Bankruptcy Court, this Court, the Third Circuit, the parties, and the non-parties who will be deposed during discovery.  The Bankruptcy Court's Order constitutes a fundamental and reversible error—waiting until a final judgment to review this error will require a complete retrial and reopening of discovery.

"[C]ourts have tended to make the controlling question requirement the same as the requirement that [the] determination [of the appeal] may materially advance the ultimate termination of the litigation."  *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005) (internal quotation marks omitted); *see also Katz,* 496 F.2d at 755 (conserving time and expense is "a highly relevant factor").  Resolution of an appeal need not entirely "eliminate the need for trial" or necessarily determine a party's claim on the merits, in order to satisfy the standard for interlocutory review.  *In re Dwek*, Civ. No. 3:09-cv-5046, 2010 WL 234938, at *2 (D.N.J. Jan. 15, 2010); *accord* Wright & Miller, Fed. Prac. & Proc. § 3930 (3d ed.) ("the better view [is] that a question is controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants").[4]

By striking the Yucaipa Defendants' core affirmative defenses, the Bankruptcy Court stripped these parties of their right to defend themselves and ensured that many key facts will remain undeveloped.  *See Boatright v. Crozer-Keystone Health Sys.*, No. 14-7041, 2015 WL 4506559, at *5 (E.D. Pa. July 24, 2015) (explaining judicial "[r]eluctance to grant [Rule] 12(f) motions arises due to concern over dismissing pleadings before the parties have had a full chance to develop the factual record").

---

[4]  *See also In re Broadstripe, LLC*, 2009 WL 774401, at *2 ("Granting leave is further appropriate where doing so promotes the avoidance of harm to a party *pendente lite* from a possibly erroneous interlocutory order and the avoidance of possible wasted trial time and litigation expense.") (internal quotation marks and citations omitted); Wright & Miller, Fed. Prac. & Proc. § 3931 (3d ed.) ("Appeal also is suitable . . . so long as present appeal may forestall unnecessary proceedings . . . or unnecessary duplication of proceedings after reversal for trial of issues that should not have been dismissed.").

If the Yucaipa Defendants cannot appeal this ruling until a final judgment, discovery in the Bankruptcy Court will be a procedural and administrative quagmire because of the overlap of issues. By way of example, the very defenses that were struck by the Bankruptcy Court are still at issue in the Committee Action, and discovery has been coordinated, so there will undoubtedly be additional motion practice flowing from the Bankruptcy Court's ruling.

Further, in related litigation between the parties, a New York appellate court reversed summary judgment for Black Diamond on its claim to invalidate the Fourth Amendment and to strip "Requisite Lender" status from Yucaipa, upon finding a triable issue of fact on Yucaipa's defense of waiver. *BDCM Opportunity Fund II, LP v. Yucaipa Am. Alliance Fund I, LP*, 978 N.Y.S.2d 10, 13 (N.Y. App. Div. 2013). The court focused on evidence of Black Diamond's "active involvement" in the transactions about which it was complaining (the same transactions that form the basis for BD/S's claims here), including evidence that (a) Black Diamond was fully aware through the summer of 2009 that Yucaipa intended to acquire the majority of Allied First Lien Debt and assume Requisite Lender status; and (b) Black Diamond sent Yucaipa numerous proposals in 2011, all of which depended on Yucaipa being able to exercise its authority as Requisite Lender. *Id.*

Under these circumstances, it was incongruous and nonsensical for the Bankruptcy Court to prevent the Yucaipa Defendants from even *pleading* these defenses and developing them through discovery in the BD/S Action, when the New York appellate court had found sufficient evidence of waiver and "active involvement" by Black Diamond to preclude summary judgment. For instance, the Yucaipa Defendants have been now precluded from seeking discovery as to:

- When BD/S first started evaluating the possibility of equitable subordination against Yucaipa (Yucaipa has alleged and has put forth specific evidence showing that these discussions began on the eve of Yucaipa signing the transaction documents to acquire First Lien Debt in August 2009, and immediately after a meeting between representatives of BD/S and Yucaipa in Los Angeles) (A.P. No. 14-50971, D.I. 121, Ex. 1, p. 18 (No. 36); *id.*, Ex. 2, p. 18 (No. 36); *id.*, Ex. 3.4, p. 13 (Nos. 19-20); *id.*, Ex. 4.4, p. 13 (Nos. 19-20));

- An August 2009 trip by Black Diamond's principal to meet with Yucaipa's principal in Los Angeles (Yucaipa has alleged and has put forth evidence showing that the sole purpose for this trip was to support and encourage Yucaipa's acquisition of First Lien Debt and assumption of Requisite Lender status in August 2009) (*id.*, Ex. 3.2, p. 12 (Nos. 12-13); *id.*, Ex. 4.2, p. 12 (Nos. 12-13));

- Why, in internal correspondence, BD/S described Yucaipa as "operating in good faith to add value to Allied" when they later alleged in the BD/S action that Yucaipa's representatives on Allied's board were committing various torts and aiding and abetting breaches of fiduciary duty;

- Why BD/S sent correspondence to Yucaipa indicating they supported "Yucaipa's Allied strategy" as "it seemed right," contrary to their allegations in the BD/S Action;

- Why BD/S never once demanded that Yucaipa, upon becoming Requisite Lender in August 2009, exercise remedies against Allied, and never expressed any displeasure at Yucaipa's alleged failure to do so;

- Why BD/S never once on its own exercised remedies against Allied, which had been in continuous default of the FLCA since August 2008, and why BD/S actually demanded that the administrative agent under the FLCA *refrain* from exercising remedies in December 2008; and

- Yucaipa's and other Lenders' claims for expense reimbursement under the FLCA (Yucaipa has alleged and has put forth evidence showing that once BD/S usurped Requisite Lender status from Yucaipa, they unfairly, and without explanation or justification, caused the debtor to reimburse the expenses of other Lenders, but not Yucaipa) (*id.*, Ex. 1, p. 18 (Nos. 39-40); *id.*, Ex. 2, p. 18 (Nos. 39-40); *id.*, Ex. 3.2, p. 13 (Nos. 20-21)).

Additionally, the facts underlying the five now-stricken affirmative defenses are also relevant to the Yucaipa Defendants' more general defense of the case, which remains at issue and ripe for discovery. Yet as a consequence of the Order striking the defenses, the Bankruptcy Court has prevented the Yucaipa Defendants from seeking discovery on many relevant topics, including:

- The Yucaipa Defendants were denied discovery concerning the amount of First Lien Debt that BD/S held at various points in time, and the price at which such Debt was bought and sold—facts that are not only foundational in terms of BD/S's standing to assert claims as a lender, but also highly relevant to any calculation of BD/S's purported damages. (A.P. No. 14-50971, D.I. 121, Ex. 1, pp. 12 (Nos. 1-2), 18 (No. 7), 21 (No. 56); *id.*, Ex. 2, pp. 12 (Nos. 1-2), 18 (No. 37), 21 (No. 56); *id.*, Ex. 3.1, pp. 10-11 (Nos. 1-3, 9); *id.*, Ex. 4.1, pp. 10-11 (Nos. 1-3, 9); *id.*, Ex. 3.4, p. 12 (No. 17); *id.*, Ex. 4.4, p. 12 (No. 17));

- The Yucaipa Defendants were prevented from obtaining any discovery as to BD/S's understanding of the value of Yucaipa's equity interest in Allied—even though the entire premise of BD/S's equitable subordination claim is that Yucaipa was motivated to "protect its equity interest" at the expense of other lenders.  (*Id.*, Ex. 3.1, p. 11 (No. 8); *id.*, Ex. 4.1, p. 11 (No. 8)); and

- The Yucaipa Defendants were denied discovery as to any potential transactions for Allied that BD/S explored or proposed, even though BD/S repeatedly allege that the Yucaipa Defendants "thwarted" and "failed to consider" alternative transactions that could have benefitted Allied.  (*Id.*, Ex. 1, p. 19 (No. 45); *id.*, Ex. 2, p. 19 (No. 45); *id.*, Ex. 3.3, p. 13 (No. 18); *id.*, Ex. 4.3, p. 13 (No. 18)).

There are many other examples—but the takeaway is that there will be no way to compartmentalize and distinguish (a) the facts and theories the Yucaipa Defendants must be allowed to develop in discovery as part of their general defense against BD/S's allegations, from (b) those facts and theories that relate solely to the now-stricken defenses.  As discovery moves forward, BD/S will refuse to provide witnesses for depositions and/or will instruct witnesses not to answer questions anytime a topic strays too close to the non-existent line between (a) and (b).  This will result in numerous, significant discovery disputes before the Bankruptcy Court (and this Court later on appeal).  An interlocutory appeal will short-circuit all of this.

Moreover, the Bankruptcy Court's erroneous ruling may well prevent the Yucaipa Defendants from giving the fact-finder at trial the complete picture of BD/S's own inequitable conduct and acquiescence in the very transactions that now form the basis of their claims.  The Yucaipa Defendants have a due process right "to present every available defense."  *Lindsey v. Normet*, 405 U.S. 56, 66 (1972).  Because these defenses are equitable in nature, they cannot simply be severed and tried later in the event of a reversal on appeal from final judgment.

On the contrary, BD/S's core claim requires them to prove that Yucaipa acted "inequitabl[y]," *Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986-87 (3d Cir. 1998) (elements of equitable subordination, which include an "unfair advantage").  In addition, the Third Circuit "has described equitable subordination as a 'remedial rather than penal' doctrine designed 'to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the

bankruptcy results.'" *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 411 (3d Cir. 2009).

Accordingly, the Yucaipa Defendants must be permitted to show, and the fact-finder must be

able to compare, the relative conduct of BD/S and the Yucaipa Defendants—for instance, to the

extent BD/S acted wrongfully and in bad faith, the balance of equities would not warrant

granting BD/S equitable relief. *In re New Valley Corp.*, 181 F.3d 517, 522-23 (3d Cir. 1999)

(elements of "unclean hands" defense).

In sum, it would be highly inefficient and unfair to force the Yucaipa Defendants to wait

until final judgment to appeal the Bankruptcy Court's erroneous ruling striking their equitable

defenses.  An interlocutory appeal on this fundamental legal issue will avoid the prospect of re-

doing discovery entirely (including depositions of third parties) and/or retrials following a final

judgment.  An interlocutory appeal will thus materially advance the ultimate termination of the

litigation.

## IV.    CONCLUSION

For these reasons, the Court should grant the Yucaipa Defendants leave to appeal.

Dated: February 1, 2017

YOUNG CONAWAY
STARGATT & TAYLOR,
LLP

*/s/ Michael R. Nestor*
Michael R. Nestor (No. 3526)
Edmon L. Morton (No. 3856)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER
LLP
Maurice M. Suh (*Pro Hac Vice*)
Robert A. Klyman (*Pro Hac*

01:21503847.1

17

*Vice*)
Kahn Scolnick (*Pro Hac Vice*)
333 South Grand Avenue
Los Angeles, CA  90071
Telephone: (213) 229-7000
MSuh@gibsondunn.com

*Attorneys for Appellants-
Defendants
Yucaipa American Alliance Fund
I, L.P., Yucaipa American
Alliance (Parallel) Fund I, L.P.,
Ronald Burkle, Jos Opdeweegh,
Derex Walker, Jeff Pelletier, Ira
Tochner, and Joseph Tomczak*

01:21503847.1