## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK | Chapter 11<br><br>Case No. 12-11564 (CSS)<br><br>(Jointly Administered)<br><br>Adv. Proc. No. 14-50971 (CSS) |
|         Appellants-Defendants, | |
|    v. | Case No. _____ |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., as Co-Administrative Agent, and SPECTRUM COMMERCIAL FINANCE, LLC, as Co-Administrative Agent, | ECF Case |
|         Appellees-Plaintiffs. | |

## APPELLEES-PLAINTIFFS BLACK DIAMOND AND SPECTRUM'S MEMORANDUM OF LAW IN OPPOSITION TO YUCAIPA'S MOTION FOR LEAVE TO APPEAL

Adam Harris
Robert Ward
David Hillman
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

Adam Landis (No. 3407)
Kerri Mumford (No. 4186)
LANDIS RATH & COBB LLP
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

*Attorneys for Appellees-Plaintiffs BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd., Spectrum Investment Partners, L.P., Black Diamond Commercial Finance, L.L.C., as Co-Administrative Agent, and Spectrum Commercial Finance, LLC, as Co-Administrative Agent*

{935.001-W0045837.}

## TABLE OF CONTENTS

Preliminary Statement ...................................................................................................... 1

Background .......................................................................................................................... 4

Legal Standard .................................................................................................................. 10

Argument .......................................................................................................................... 10

I.      No Exceptional Circumstances Exist for an Interlocutory Appeal .................................. 10

II.     The Bankruptcy Court's Order Does Not Involve a Controlling Question of Law .......... 11

        A.      The Bankruptcy Court's Order Prevented Yucaipa From Recasting Rejected
                Claims As Affirmative Defenses .......................................................................... 11

        B.      Alternative Grounds for Dismissal Are Not Controlling Questions of Law ......... 13

III.    There Is No Substantial Ground for Difference of Opinion ............................................ 14

IV.     An Interlocutory Appeal Will Not Advance the Termination of the Litigation ............... 16

Conclusion ........................................................................................................................ 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
800 F. Supp. 2d 613 (D. Del. 2011) (Robinson, J.)....................................................11

*Acosta v. Pace Local I-300 Health Fund*,
No. CIV. 04-3885 (JAP), 2007 WL 1074093 (D.N.J. Apr. 9, 2007) .....................................13

*In re AE Liquidation, Inc.*,
451 B.R. 343 (D. Del. 2011)...................................................................10, 13, 16

*Ahrenholz v. Bd. of Trustees of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) (Posner, J.) ..............................................................13

*AMEC Civil, LLC v. DMJM Harris, Inc.*,
No. 06-64 (FLW), 2007 WL 433328 (D.N.J. Feb. 6, 2007)...............................................11, 21

*Bayer CropSciences AG v. Dow AgroSciences LLC*,
No. 10 Civ. 1045 (RMB) (JS), 2011 WL 6934557 (D. Del. Dec. 30, 2011).............................15

*BDCM Opportunity Fund II, LP v. Yucaipa Am. Alliance Fund I, LP*,
No. 650150/2012, 2013 WL 1290394 (N.Y. Sup. Ct. Mar. 8, 2013),
*aff'd*, 112 A.D.3d 509 (N.Y. App. Div. 2013).......................................................1, 4

*Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*,
No. 13 Civ. 13804, 2015 WL 3441155 (E.D. Mich. May 28, 2015)......................................12

*In re Clark-Franklin-Kingston Press, Inc.*,
No. C.A. 90-11231 WF, 1993 WL 160580 (D. Mass. Apr. 21, 1993) .....................................17

*In re Complete Retreats, LLC*,
No. CIV.A. 3:07MC152SRU, 2008 WL 220752 (D. Conn. Jan. 23, 2008)............................13

*Fleet Nat'l Bank v. Harstone*,
No. 96-10166-NG, 1997 WL 557564 (D. Mass. May 29, 1997) .............................................12

*In re Flintkote Co.*,
471 B.R. 95 (D. Del. 2012)..................................................................................13

*Human Genome Sciences, Inc. v. Genetech, Inc.*,
No. 11 Civ. 6519 (MRP) (JEM), 2011 WL 7461786 (C.D. Cal. Dec. 9, 2011).....................12

*Kirkland & Ellis v. CMI Corp.*,
No. 95 C 7457, 1996 WL 674072 (N.D. Ill. Nov. 19, 1996)....................................17

*Knipe v. SmithKline Beecham*,
    583 F. Supp. 2d 553 (E.D. Pa. 2008) ............................................................... 14

*Link v. Mercedes-Benz of N. Am., Inc.*,
    550 F.2d 860 (3d Cir. 1977) ............................................................................. 13

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96 CIV. 1262 (RWS), 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ............... 16

*MCI WorldCom Commc'ns v. Commc'ns Network Int'l., Ltd.*,
    358 B.R. 76 (S.D.N.Y. 2006) ........................................................................... 18

*Modern Creative Servs., Inc. v. Dell Inc.*,
    No. 05 Civ. 3891 (JLL), 2008 WL 305747 (D.N.J. Jan. 28, 2008) ................. 11, 12

*N.F.L. Ins. Ltd. By Lines v. B&B Holdings, Inc.*,
    No. 91 Civ. 8580 (PKL), 1993 WL 255101 (S.D.N.Y. July 1, 1993) ................... 17

*In re New Century Holdings, Inc.*,
    Civ. No. 09-732-SLR, 2010 WL 2802538 (D. Del. July 15, 2010)
    (Robinson, J.) .................................................................................................. 10

*In re Norvergence Inc.*,
    Civ. No. 08-1882 (MLC), 2008 WL 5136842 (D.N.J. Dec. 5, 2008) ................... 16

*In re Semcrude, L.P.*,
    Civ. No. 10-447-SLR, 2010 WL 4537921 (D. Del. Oct. 26, 2010)
    (Robinson, J.) ............................................................................................. *passim*

*Tyco Fire Prods. LP v. Victaulic Co.*,
    777 F. Supp. 2d 893 (E.D. Pa. 2011) ............................................................... 15

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    868 F. Supp. 2d 376 (D. Del. 2012) ................................................................. 16

Appellees-Plaintiffs BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd., Black Diamond Commercial Finance, L.L.C. (collectively, "Black Diamond"), Spectrum Investment Partners, L.P., and Spectrum Commercial Finance, LLC (collectively, "Spectrum" and together with Black Diamond, "BD/S"), submit this Memorandum of Law in opposition to the motion for leave to file an interlocutory appeal (the "Motion") from the Order[1] of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") granting BD/S's Cross-Motion to Strike Certain Affirmative Defenses filed by Yucaipa American Alliance Fund I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P., Ronald Burkle, Jos Opdeweegh, Derex Walker, Jeff Pelletier, Ira Tochner, and Joseph Tomczak (collectively, "Yucaipa").

## PRELIMINARY STATEMENT

With this request for an interlocutory appeal, Yucaipa tries once again to spin a yarn that has *repeatedly* been rejected by both the Bankruptcy Court and this Court. The crux of Yucaipa's Motion is that it should be permitted to take wide-ranging discovery in support of its *several times dismissed* allegations, and the issues underlying those allegations, that BD/S engaged in certain alleged inequitable conduct, notwithstanding the fact that numerous courts – including this Court – have dismissed Yucaipa's claims based on those allegations; Yucaipa seeks to avoid these prior rulings by saying that it has recast those same allegations and issues as affirmative defenses. Notwithstanding the fact, as set forth below, that the Bankruptcy Court dismissed Yucaipa's cross-claims (based on those same allegations) as implausible and later dismissed its equitable subordination counterclaim (based on those same allegations) as implausible, and that this Court denied Yucaipa leave to appeal the dismissal of the counterclaim, and that this Court dismissed Yucaipa's RICO complaint (based on those same

---

[1] *BDCM Opportunity Fund II, LP v. Yucaipa Am. Alliance Fund I, L.P. (In re ASHINC Corp.)*, Adv. Proc. No. 14-50971 (CSS), D.I. 194 (Bankr. D. Del. Jan. 18, 2017).

allegations) *with prejudice*, Yucaipa insists that it is entitled to discovery on those *same* dismissed allegations.

The Bankruptcy Court correctly saw Yucaipa's maneuver for what it was and recognized that Yucaipa should not be permitted to take discovery in support of dismissed claims and the issues underlying those claims, and that to the extent that Yucaipa's purported "affirmative defenses" are based on the same allegations and issues as its dismissed claims, those affirmative defenses should be stricken. In deciding this Motion, this Court should not allow Yucaipa to "end-run" around the prior dismissals of Yucaipa's claims. As set forth herein, Yucaipa has utterly failed to meet its burden for leave to file an interlocutory appeal from the Bankruptcy Court's Order striking its affirmative defenses.

To begin, notwithstanding the threshold *requirement* that a movant show that there are exceptional circumstances warranting an interlocutory appeal, Yucaipa does not even attempt to argue that exceptional circumstances exist. Yucaipa also fails to cite to any "controlling question of law." Yucaipa attempts to characterize the Bankruptcy Court's Order striking its affirmative defenses as a "matter of pleading," but the Order was not premised on pleading standards. Instead, the Order was based on the well-established principle that affirmative defenses should be stricken as legally insufficient where they are based on the same allegations as previously-dismissed claims or counterclaims and the issues underlying those counterclaims. Here, Yucaipa *admits* that its stricken affirmative defenses were based on the same allegations and issues as (i) Yucaipa' cross-claims for declaratory judgment and other relief in a related adversary proceeding (the "Cross-Claims"), which were dismissed with prejudice as implausible, (ii) Yucaipa's counterclaim for equitable subordination in this action (the "Counterclaim"), which also was dismissed with prejudice as implausible, and (iii) Yucaipa's RICO complaint, which this Court dismissed with prejudice for failure to state a claim.

The Bankruptcy Court's Order granting BD/S's cross-motion to strike affirmative defenses is premised upon a fact-intensive analysis drawing upon the Bankruptcy Court's deep familiarity with the history and record of this litigation. As set forth below, controlling case law

holds such fact-intensive issues are not "controlling questions of law" for purposes of determining whether to grant leave to file an interlocutory appeal. Moreover, Yucaipa fails to establish any "substantial ground for a difference of opinion" concerning the correct legal standard. Instead, Yucaipa merely *disagrees* with the Bankruptcy Court's findings, which is plainly insufficient to satisfy this prong of the standard for an interlocutory appeal.

Nor can Yucaipa credibly argue that an interlocutory appeal would materially advance the ultimate resolution of the litigation. An interlocutory appeal of the Bankruptcy Court's Order would not terminate the litigation or obviate the need for a trial. Rather, regardless of whether Yucaipa prevails, an interlocutory appeal would only *prolong* the litigation. As such, in the interests of efficiency and avoiding piecemeal litigation, this action and related adversary proceedings in the Bankruptcy Court should first proceed to final judgment, and then the parties can pursue their appeals, if any. The avoidance of piecemeal litigation is particularly important here because, as Yucaipa admits, the facts and issues underlying its affirmative defenses are the *same facts and issues* that underlay its Counterclaim, the dismissal of which this Court declined to review on an interlocutory basis. Yucaipa fails to explain why the Court would grant an interlocutory appeal of the dismissal of its affirmative defenses when the Court already denied an interlocutory appeal of the same factual allegations relating to the dismissal of the Counterclaim.

BD/S respectfully submit that the best way to avoid inconsistent rulings and promote judicial economy would be to allow the Bankruptcy Court to rule on *all* the pending claims in the adversary proceedings. Rather than allowing disfavored piecemeal interlocutory appeals, all the pending claims should be brought to final judgment in the ordinary course before any appeals are taken. *See In re Semcrude, L.P.*, Civ. No. 10-447-SLR, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010) (Robinson, J.) ("Piecemeal litigation is generally disfavored by the Third Circuit.").

## BACKGROUND

This dispute centers around a Credit Agreement[2] that arose out of the May 2007 bankruptcy plan of reorganization of Allied.[3]   Since August 2008, Allied was in continuous default under the Credit Agreement, leading to various litigations before the Bankruptcy Court, this Court and other courts.

*The New York Action.*   In January 2012, BD/S sued Yucaipa in New York State Supreme Court and obtained a judicial declaration that the Purported Fourth Amendment to the Credit Agreement was void *ab initio* and that as a result Yucaipa is not the "Requisite Lender" (*i.e.*, the majority Lender with the power to exercise, or refrain from exercising, remedies on behalf of the other Lenders) (the "New York Action").   *BDCM Opportunity Fund II, LP v. Yucaipa Am. Alliance Fund I, LP*, No. 650150/2012, 2013 WL 1290394 (N.Y. Sup. Ct. Mar. 8, 2013), *aff'd*, 112 A.D.3d 509, 509-10 (N.Y. App. Div. 2013).   That decision was affirmed and Yucaipa has exhausted its appeals in the New York Action.

*The Allied Bankruptcy.*   On May 17, 2012, BD/S, as creditors of Allied, filed an involuntary bankruptcy petition against Allied (the "Allied Bankruptcy").[4]   On October 17, 2012, Allied filed an adversary proceeding seeking declarations as to the identity of the Requisite Lender and the validity of the Purported Fourth Amendment (the "Allied Action").[5]

---

[2] The "Credit Agreement" refers to the Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement, as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and the CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others.

[3] "Allied" collectively refers to ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) and its related entities in bankruptcy.

[4] The "Allied Bankruptcy" refers to *In re ASHINC Corp., et al.*, Case No. 12-11564 (CSS) (Bankr. D. Del.).

[5] The "Allied Action" refers to *Allied Systems Holdings, Inc. v. American Money Management, et al.*, Adv. Pro. No. 12-50947 (CSS) (Bankr. D. Del.).

*The Committee Action.*    On March 14, 2013, the Official Committee of Unsecured Creditors (the "Committee") and BD/S (as Intervenors) filed an amended complaint against Yucaipa and numerous directors of Allied (the "Committee Action").[6]  In the Committee Action, the Committee asserted, among other claims, a derivative equitable subordination claim against Yucaipa, while BD/S asserted a direct equitable subordination claim against Yucaipa.

On July 9, 2013, BD/S filed motions for summary judgment in the Allied Action and the Committee Action for a determination that they are the Requisite Lenders.  On July 30, 2013, the Bankruptcy Court granted those motions, holding that BD/S are the Requisite Lenders. (*See* Committee Action, D.I. 280.)  On March 31, 2016, this Court affirmed that decision.[7] Yucaipa's appeal from that decision is pending before the Third Circuit.

*Yucaipa's Implausible Cross-Claims.*    On January 5, 2013, in the Allied Action, Yucaipa filed cross-claims for declaratory judgment and other relief seeking to invalidate the Third Amendment to the Credit Agreement (the "Cross-Claims").  (Allied Action, D.I. No. 65.) The Cross-Claims alleged that BD/S had "support[ed] Yucaipa's acquisition of the Requisite Lender position" and "encouraged Yucaipa's proposed plan, a fact on which Yucaipa relied in executing the plan."  (*Id.* ¶¶ 5, 71.)  The Cross-Claims further alleged that BD/S "chose to double-cross Yucaipa" by "surreptitiously sen[ding] a letter to [CIT (the Administrative Agent)] questioning the validity of Yucaipa's Requisite Lender status."  (*Id.* ¶ 7.)

On February 27, 2013, the Bankruptcy Court dismissed Yucaipa's Cross-Claims on several grounds, including that the factual allegations underlying the Cross-Claims were implausible (the "Cross-Claims Dismissal").  (Allied Action, D.I. No. 162 at 104:14-106:3.)  The court specifically ruled that Yucaipa's allegations that BD/S "encouraged" Yucaipa to buy First

---

[6] The "Committee Action" refers to *The Official Committee of Unsecured Creditors of Allied Systems Holdings, Inc. v. Yucaipa American Alliance Fund I, L.P., et al.*, Adv. Pro. No. 13-50530 (CSS) (Bankr. D. Del.).

[7] *Yucaipa Am. Alliance Fund II, LP, et al. v. BDCM Opportunity Fund II, LP, et al.*, Nos. 13-cv-1580, 13-cv-1583 (SLR), D.I. 39, 40 (D. Del. March 31, 2016).

Lien Debt and then secretly urged CIT to refuse to recognize Yucaipa's purported Requisite
Lender status were implausible:

- "[T]he allegations in [the Cross-Claims] do not meet [the plausibility] standard.  There is some innuendo, there's some vague allegations.  The bottom line is I just don't think the story as pled holds together sufficiently to meet the standard." (*Id.* at 104:14-22.)

- "I don't think there's any allegation really that rises to the plausibility that there was any kind of mischief going on that was detrimental or directed at Yucaipa at the time of the third amendment being entered into the purchase, excuse me, and then the fourth amendment being negotiated, and then the debt being b[]ought and then the fourth amendment being passed." (*Id.* at 105:19-106:3.)

Yucaipa noticed an appeal from the Cross-Claims Dismissal but then voluntarily abandoned that
appeal.[8]

***Yucaipa's Implausible Counterclaim.***  BD/S filed this adversary proceeding on
November 19, 2014, seeking, among other things, to equitably subordinate Yucaipa's First Lien
Debt (the "BD/S Action").  On February 19, 2015, Yucaipa filed a Counterclaim for Equitable
Subordination in the BD/S Action.    (Committee Action, D.I. No. 19 at 31-69 (the
"Counterclaim").)  The Counterclaim made the same implausible allegations as the Cross-Claims
that BD/S "encouraged Yucaipa to acquire as much debt as possible by providing false
assurances of cooperation and support" (*id.* ¶¶ 8, 42-51), and "surreptitiously instruct[ed] the
Administrative Agent to refuse to recognize directions from Yucaipa in its capacity as Requisite
Lender and to challenge the validity of Yucaipa's status as Requisite Lender" (*id.* ¶¶ 9, 52-54).

The Counterclaim further alleged that these steps were part of a premeditated,
multi-step, multi-year scheme to use the bankruptcy process to subordinate Yucaipa's First Lien
Debt, consisting of a "carefully orchestrated series of lies, payoffs and legal maneuvers designed
to improperly enrich themselves at the expense of Yucaipa."  (Counterclaim ¶¶ 1, 7-11.)  This

---

[8] As a result, Yucaipa's claim that it "has not been able to appeal" the Cross-Claims Dismissal is simply incorrect.  (Yucaipa's Br. at 12.)

alleged "scheme" included filing "an involuntary bankruptcy petition . . . and submit[ting] false statements to the Bankruptcy Court to support that involuntary bankruptcy petition." (*Id.* ¶¶ 10, 62-81.)  The Counterclaim also included allegations regarding a "Cooperation Agreement" between Black Diamond and Spectrum, under which Black Diamond allegedly paid a "$4 million bribe to Spectrum, in the form of an illegal claims trade, to induce Spectrum to join the scheme" – what Yucaipa calls the "Involuntary Petition Payoff." (*Id.* ¶¶ 10(d), 64-70.) Yucaipa alleges that the ultimate goal of this scheme was to "wipe out Yucaipa's First Lien Claims with an objectively baseless complaint for equitable subordination," which Yucaipa alleged is "based on false assertions about Yucaipa's role in the management of Allied." (*Id.* ¶¶ 11, 11(a), 82-90.)

In addition, the Counterclaim also alleged that BD/S engaged in "sham" negotiations with Jack Cooper Transport Company Inc. ("JCT") regarding a potential sale of Allied's assets, while "[a]t the same time, [BD/S] plotted to force Allied into involuntary bankruptcy." (*Id.* ¶¶ 56-62, 71.) According to the Counterclaim, BD/S "were simply distracting JCT, Yucaipa and Allied while [BD/S] prepared to carry out their ultimate objective" and had "no intention of participating in a sale to JCT . . . ." (*Id.* ¶¶ 58, 61.)

On August 21, 2015, the Bankruptcy Court issued an Opinion dismissing the Counterclaim with prejudice (the "Counterclaim Dismissal"). (BD/S Action, D.I. 82.) The court dismissed the Counterclaim on several independent grounds, including that "the[] alleged facts do not tell a plausible story." (*Id.* at 65.) Specifically, the court found implausible the allegation that the so-called "Involuntary Petition Payoff" was a bribe or that it needed to be disclosed before the petition was filed. (*Id.* at 62.) The court also rejected Yucaipa's reliance upon an email from 2009, finding that "it is not plausible that this email indicates that Black Diamond and Spectrum schemed to equitably subordinate Yucaipa's First Lien Debt." (*Id.* at 63-64.) Further, the court expressly rejected as implausible the allegation that BD/S were "'lying in wait' for the optimal time to file their equitable subordination claim, including negotiating for a year with JCT only to scuttle the deal." (*Id.* at 64.)

The Bankruptcy Court correctly found that Yucaipa's alleged scheme was dependent upon "every one of the following unpredictable events occurring in a manner favorable to Black Diamond and Spectrum," including a series of favorable litigation outcomes:

- "invalidating the Fourth Amendment through litigation" (*id.*);

- "obtaining judicial declaration that Black Diamond and Spectrum are the Requisite Lenders" (*id.*);

- "acquiring Allied's assets through a credit bid on behalf of all Lenders" (*id.*);

- "prevailing in their equitable subordination claims against Yucaipa and obtaining a substantial recovery" (*id.*); and

- "hoping that the Allied assets they acquired would increase in value to the point where the asset value plus any recovery realized from the equitable subordination litigation exceeded a par plus accrued interest recovery years after JCT had offered them a 100% recovery" (*id.*).

The Bankruptcy Court determined that "Yucaipa's reliance on this sequence of events is not plausible," and that "[i]t is not plausible that economic actors, such as Black Diamond and Spectrum, would take that much litigation risk just to aggravate Yucaipa's attempt to own unrestricted First Lien Debt." (*Id.* at 64-65.)

The court concluded that "[a]t first blush Yucaipa brings a bowl of allegations to the Court for adjudication, but alas, the bowl is really a sieve, and all of Yucaipa's allegations leak out leaving nothing but an empty vessel" and that the "Counterclaim is an exercise in creative writing which, at closer examination, simply does not hold together." (*Id.* at 65.) Accordingly, the court dismissed the Counterclaim with prejudice.

***Yucaipa's Dismissed RICO Action.***  Several months after filing its Counterclaim, on May 8, 2015, Yucaipa filed a RICO complaint against BD/S in this Court (the "RICO Action")[9] (after first filing that complaint in the District Court for the Southern District of New

---

[9] The "RICO Action" refers to *Yucaipa American Alliance Fund I, L.P., et al. v. Ehrlich, et al.*, Case No. 15-cv-00373 (SLR) (D. Del.).

York and then hastily withdrawing that compliant when BD/S moved to dismiss it in that court).

BD/S moved to dismiss the RICO Action, which was based upon the same allegations as those in

Yucaipa's Counterclaim and Cross-Claims.  On September 2, 2016, this Court dismissed the

RICO Action with prejudice.  (*See* RICO Action, D.I. 35, 36.)  Yucaipa's appeal from that

dismissal is pending.

    ***Yucaipa's Motion to Compel and BD/S's Cross-Motion to Strike.***  During the

course of the BD/S Action, Yucaipa has served a total of ***710 discovery requests***, consisting of

114 document requests, 515 interrogatories, and 81 requests for admission.  (*See* BD/S Action,

D.I 120.)  BD/S has responded to all but 53 of these requests.  Many of those discovery requests

related solely to the allegations underlying Yucaipa's dismissed Cross-Claims, Counterclaim,

and RICO complaint.

    On July 22, 2016, Yucaipa filed a motion in the Bankruptcy Court to compel that

discovery.[10]  (BD/S Action, D.I. 119.)  In that motion Yucaipa admitted, for the first time, that its

affirmative defenses were based upon the *same* implausible factual allegations that this Court

and the Bankruptcy Court dismissed with prejudice.  Specifically, Yucaipa argued that:

> [T]he Yucaipa Defendants have explained that BD/S orchestrated a
> carefully timed series of lies, payoffs, and legal maneuvers
> designed to wrongfully enrich themselves at Yucaipa's expense—
> setting up Yucaipa as the proverbial fall guy to blame for Allied's
> misfortunes connected to the Great Recession.  *To that end, the*
> *Yucaipa Defendants have asserted the affirmative defenses of*
> *unclean hands, waiver, estoppel, consent, and laches, among*
> *others.*

---

[10] Notably, claiming it needed discovery in support of its now-stricken affirmative defenses,
Yucaipa sought to compel BD/S to produce documents and answer interrogatories about all of
the allegations in Yucaipa's dismissed Counterclaim.  The Bankruptcy Court denied Yucaipa's
motion to compel such discovery and, even though Yucaipa does not seek an interlocutory
appeal from that denial, Yucaipa's Motion herein seeks an interlocutory appeal of the dismissal
of its affirmative defenses so that it can try to take discovery in support of its implausible
allegations.

(*Id.* at 10 (emphasis added).)  As a result of that admission, BD/S cross-moved to strike those affirmative defenses to the extent that they were based on the same allegations as Yucaipa's dismissed claims.  After full briefing and oral argument, the Bankruptcy Court denied Yucaipa's motion to compel and granted BD/S's cross-motion to strike on January 18, 2017.  (BD/S Action, D.I. 194.)

### LEGAL STANDARD

An interlocutory appeal is permitted *only* when the order at issue (1) involves a controlling question of law upon which there is (2) substantial grounds for a difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation.  *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011).  The "party seeking leave to appeal an interlocutory order *must* establish that exceptional circumstances justify a departure from the basi[c] policy of postponing review until after the entry of final judgment."  *In re New Century Holdings, Inc.*, Civ. No. 09-732-SLR, 2010 WL 2802538, at *1 (D. Del. July 15, 2010) (Robinson, J.) (emphasis added) (internal quotation marks omitted).  Moreover, the Court's discretion to deny an interlocutory appeal is not limited by these factors.  *AE Liquidation*, 451 B.R. at 346.  An interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue."  *Id.*

### ARGUMENT

**I.    No Exceptional Circumstances Exist for an Interlocutory Appeal**

As noted above, Yucaipa "*must* establish that exceptional circumstances" exist to justify an interlocutory appeal.  *New Century Holdings*, 2010 WL 2802538, at *1 (Robinson, J.) (emphasis added); *see also AE Liquidation*, 451 B.R. at 346 (an interlocutory order is appropriate "*only* when the party seeking leave to appeal establishes" exceptional circumstances) (emphasis added).  Tellingly, Yucaipa's Motion wholly ignores this *requirement*.  That omission is not surprising, as no such exceptional circumstances are present here.  Accordingly, the Court should deny the Motion for this reason alone.  *See AE Liquidation*, 451 B.R. at 348-49 (denying leave

for interlocutory appeal where "Plaintiffs fail to present exceptional circumstances justifying the need for immediate review").

**II.    The Bankruptcy Court's Order Does Not Involve a Controlling Question of Law**

"A 'controlling question of law' encompasses an order which, "if erroneous, would be reversible error on final appeal.'" *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 800 F. Supp. 2d 613, 622 n.5 (D. Del. 2011) (Robinson, J.) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)).

**A.    The Bankruptcy Court's Order Prevented Yucaipa From Recasting Rejected Claims As Affirmative Defenses**

To begin, Yucaipa's Motion is premised upon the faulty assumption that the Bankruptcy Court struck Yucaipa's affirmative defenses by "applying the Rule 12(b)(6) 'plausibility' standard and/or Rule 9(b)'s 'particularity' standard." (Yucaipa's Br. at 9.) In other words, Yucaipa argues that the Bankruptcy Court found its affirmative defenses to be "insufficiently *pleaded*." (*Id.* at 8.) However, as BD/S argued in the briefing below, the cross-motion to strike did *not* ask the Bankruptcy Court "to determine whether the Yucaipa Defendants' affirmative defenses were adequately pled under FRCP 8(c) or *Iqbal* and *Twombly*." (BD/S Action, D.I. 158 at 9.) Rather, the cross-motion asked the Bankruptcy Court to strike affirmative defenses asserting the *same* factual allegations that had already been considered and rejected – twice by the Bankruptcy Court and once by this Court. (*Id.* at 9-10.) Numerous courts both within and outside the Third Circuit "have stricken affirmative defenses as legally insufficient where the arguments raised therein had previously been addressed and rejected by that court."[11] *Modern Creative Servs., Inc. v. Dell Inc.*, No. 05 Civ. 3891 (JLL), 2008 WL 305747, at *1 (D.N.J. Jan. 28, 2008); *see also AMEC Civil, LLC v. DMJM Harris, Inc.*, No. 06-64 (FLW), 2007 WL 433328, at *5 (D.N.J. Feb. 6, 2007) (striking affirmative defenses on the

---

[11] As such, Yucaipa plainly misapprehends the standard governing a motion to strike by suggesting that a court may dismiss an affirmative defense as insufficient *only* where the affirmative defense "is not recognized as a defense to the cause of action." (Yucaipa's Br. at 10.)

ground that they were "already decided by [the] Court"); *Human Genome Sciences, Inc. v. Genetech, Inc.*, No. 11 Civ. 6519 (MRP) (JEM), 2011 WL 7461786, at *8 (C.D. Cal. Dec. 9, 2011) (striking unclean hands affirmative defense because it "relies on the same facts" as defendant's dismissed counterclaim); *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, No. 13 Civ. 13804, 2015 WL 3441155, at *5 (E.D. Mich. May 28, 2015) (where court previously dismissed counterclaim based on fraud as "implausible and insufficient as a matter of law, court stated that "corresponding affirmative defense of fraud . . . must fail for the same reasons"); *Fleet Nat'l Bank v. Harstone*, No. 96-10166-NG, 1997 WL 557564, at *13 (D. Mass. May 29, 1997) (recommending striking affirmative defenses that were "based on the same allegations of misconduct that were rejected in" defendant's counterclaims).[12]   Accordingly, the Bankruptcy Court correctly struck Yucaipa's affirmative defenses because they were based upon the *same* allegations that the Bankruptcy Court and this Court considered and rejected in the dismissals of the Cross-Claims, Counterclaim, and RICO Action.

Moreover, Yucaipa's Motion does not raise a "controlling question of law," as required for an interlocutory appeal, because the Bankruptcy Court's Order was based on a fact-intensive analysis concerning whether Yucaipa's affirmative defenses were based upon the same factual allegations as the Cross-Claims, Counterclaim and RICO Action.[13]   The Bankruptcy Court engaged in such analysis using its familiarity with the history and record of this litigation. Yucaipa's attempt to revive its repeatedly-rejected factual allegations in the guise of affirmative defenses does not involve questions of "pure law" that can be decided in an interlocutory appeal

---

[12] Yucaipa's attempt to distinguish *Modern Creative Services* on the ground that the affirmative defenses considered there were "not actually defenses to the particular causes of action" is unavailing. (Yucaipa's Br. at 10 n.3.)  Contrary to Yucaipa's claim, the court there expressly stated that it was striking defenses because they were based upon arguments that the "Court has expressly addressed and rejected." *Modern Creative Servs.*, 2008 WL 305747, at *3-4. So too here.

[13] As Yucaipa admits, the Bankruptcy Court dismissed both the Cross-Claims and the Counterclaim "on multiple grounds," not just on the *Iqbal* and *Twombly* pleading standards. (Yucaipa's Br. at 4, 6.)

"quickly and cleanly without having to study the record." *See AE Liquidation*, 451 B.R. at 347 ; *see also Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 676-77 (7th Cir. 2000) (Posner, J.). The interlocutory appeal statute was "not designed for review of factual matters but addresses itself to a 'controlling question of law.'" *Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860, 863 (3d Cir. 1977); *see also In re Semcrude, L.P.*, Civ. No. 10-447-SLR, 2010 WL 4537921, at *3 (D. Del. Oct. 26, 2010) (Robinson, J.) (finding no controlling question of law in bankruptcy court's motion to dismiss ruling, which was a "fact-intensive inquiry"); *In re Flintkote Co.*, 471 B.R. 95, 102-03 (D. Del. 2012) (finding no controlling question of law from "the Bankruptcy Court's fact-intensive" ruling). Accordingly, Yucaipa has failed to show that its interlocutory appeal raises any controlling questions of law.

### B.    Alternative Grounds for Dismissal Are Not Controlling Questions of Law

Even accepting, *arguendo*, Yucaipa's argument that the Bankruptcy Court struck Yucaipa's affirmative defenses by "applying the Rule 12(b)(6) 'plausibility' standard and/or Rule 9(b)'s 'particularity' standard" (Yucaipa's Br. at 9), Yucaipa has still failed to identify a controlling question of law. Where, as Yucaipa claims is the case here, a decision is based on multiple alternative grounds, no single ground can be a "controlling question of law" because even if one ground is reversed, the decision would be affirmed on the other grounds. *See, e.g.*, *Acosta v. Pace Local I-300 Health Fund*, No. CIV. 04-3885 (JAP), 2007 WL 1074093, at *1 (D.N.J. Apr. 9, 2007) ("Because the Court included alternative grounds for the dismissal of the legal malpractice claims, it is conceivable that the Court of Appeals could reverse the Court's conclusion [on one ground], but still affirm the Court's dismissal [on a different ground]. Thus, the Court's ruling . . . does not present a controlling question of law."); *In re Complete Retreats, LLC*, No. CIV.A. 3:07MC152SRU, 2008 WL 220752, at *2 (D. Conn. Jan. 23, 2008) ("In bankruptcy proceedings, an interlocutory order does not raise a controlling question of law where alternative legal grounds exist for the court's order.").

Here, according to Yucaipa's reasoning, the Bankruptcy Court struck Yucaipa's affirmative defenses because (i) they were "insufficiently pleaded under the 'plausibility'

standard" (Yucaipa's Br. at 8) or (ii) they "failed to meet" Rule 9(b)'s pleading standard (*id.* at 9). If the Bankruptcy Court erred on either of those grounds, that would not be reversible error on appeal because the Order could still be affirmed on the other ground.

**III.    There Is No Substantial Ground for Difference of Opinion**

To obtain leave for an interlocutory appeal, Yucaipa also has the burden of establishing that the Order raises a substantial ground for a difference of opinion, but "[a] party's *disagreement* with the bankruptcy court's ruling does not constitute 'a substantial ground for a difference of opinion.'" *In re Semcrude*, 2010 WL 4537921, at *3 (Robinson, J.) (alteration omitted) (emphasis added). Rather, "[t]he difference of opinion must arise out of genuine doubt as to the correct legal standard." *Id.* (internal quotation marks omitted). Moreover, "'[t]he difference of opinion must also be legally significant (*e.g.*, multiple courts disagree as to the applicable legal standard).'" *Id.*; *see also Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 599 (E.D. Pa. 2008) (substantial ground for difference of opinion exists where the matter involves "one or more difficult and pivotal questions of law not settled by controlling authority"). As set forth below, Yucaipa merely *disagrees* with the Order and has failed to establish that a genuine question exists regarding the correct legal standards.

Here, Yucaipa attempts to manufacture sufficient grounds for an interlocutory appeal by framing the Bankruptcy Court's decision as a misapplication of the *Iqbal-Twombly* plausibility standard to its affirmative defenses. (*See* Yucaipa's Br. at 10-11.) But that is not what the Bankruptcy Court did, nor is it what BD/S argued in the cross-motion to strike. Rather, BD/S argued, and the Bankruptcy Court agreed, that Yucaipa should not be permitted to make an end-run around this Court's and the Bankruptcy Court's prior dismissals of Yucaipa's claims by using the *same* rejected allegations to support numerous affirmative defenses and to obtain wide-ranging, costly, burdensome – and *irrelevant* – discovery. (*See* BD/S Action, D.I. 158 at 11.) As set forth above (*see supra* Part II.A), there is ample precedent establishing the Bankruptcy Court's power to strike affirmative defenses that are based on the same allegations as dismissed claims. Yucaipa has not identified *any* precedent placing this legal principle in doubt; instead it

has constructed and attacked a strawman because it merely *disagrees* with the Bankruptcy Court's decision. Yucaipa's disagreement with the Bankruptcy Court is not enough to justify the piecemeal litigation Yucaipa seeks here.

Moreover, Yucaipa has not identified a substantial ground for a difference of opinion regarding its failure to plead the affirmative defenses with particularity pursuant to Rule 9(b). Yucaipa does not, and cannot, challenge the fact that affirmative defenses sounding in fraud must be pled with particularity under FRCP 9(b). *See, e.g.*, *Bayer CropSciences AG v. Dow AgroSciences LLC*, No. 10 Civ. 1045 (RMB) (JS), 2011 WL 6934557, at *1, *3 (D. Del. Dec. 30, 2011) (striking affirmative defense of estoppel premised upon "misleading conduct" for failure to satisfy FRCP 9(b)); *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 901 n.7 (E.D. Pa. 2011) (affirmative defenses sounding in fraud "are subject to Rule 9(b)'s particularized requirements"). Instead, Yucaipa argues that its affirmative defenses "are *equitable* in nature, not based in fraud." (Yucaipa's Br. at 12.) This argument cannot be taken seriously.

As Yucaipa admitted in the court below, its affirmative defenses were premised upon a "series of *lies*, payoffs, and legal maneuvers," including an alleged fraud on the Court. (BD/S Action, D.I. 119 at 13 (emphasis added).)[14] Yucaipa contended that it needed discovery in support of its affirmative defenses to prove, among other things, that BD/S made "false statements" and that Yucaipa "relied on [its] detriment on false statements by BD/S." (*Id.* at 12-13.) These are classic allegations of fraud. Indeed, Yucaipa itself relies on a case holding that affirmative defenses alleging inequitable conduct may also sound in fraud and therefore become

---

[14] Tellingly, Yucaipa argues that its affirmative defenses somehow satisfied Rule 9(b)'s particularity requirement for fraud allegations because Yucaipa alleged "the specific 'who, what, when, where, and why' of BD/S's inequitable conduct – which forms part of the basis for these defenses of unclean hands, estoppel, consent, waiver, and laches – *in, among other places, Yucaipa's dismissed Counterclaim and cross-claims*." (Yucaipa's Br. at 12 (emphasis added).) Thus, Yucaipa still freely admits that its affirmative defenses are based on the *same* allegations as its dismissed Counterclaim and Cross-Claims, yet maintains that it should be permitted to simply end-run around those dismissals by getting discovery on the same allegations in the guise of purported affirmative defenses.

subject to Rule 9(b)'s pleading requirements. *See e.g.*, *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 380-83 (D. Del. 2012) (dismissing "inequitable conduct" affirmative defense for failure to satisfy FRCP 9(b)).

Yucaipa also argues that "even to the extent that Rule 9(b) applied to one or more of these defenses, there would be a substantial ground for a difference of opinion as to the *sufficiency* of the defenses as pleaded." (Yucaipa's Br. at 12 (emphasis added).) This argument lacks merit. As a general matter, "rulings on the sufficiency of pleadings are not appropriate for interlocutory review." *In re Lloyd's Am. Trust Fund Litig.*, No. 96 CIV. 1262 (RWS), 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997). That general rule makes sense because, as here, such rulings typically involve disputes concerning the *application* of a legal standard, *not* the standard itself. Specifically, Yucaipa argues that the Bankruptcy Court applied Rule 9(b)'s pleading standard *incorrectly*, not that it applied the *incorrect standard*. That argument, even if correct (and it is not), is insufficient to justify an interlocutory appeal.[15] *See, e.g.*, *In re Norvergence Inc.*, Civ. No. 08-1882 (MLC), 2008 WL 5136842, at *3 (D.N.J. Dec. 5, 2008) (denying leave for interlocutory appeal where movant "dispute[d] the Bankruptcy Court's application of *Twombly*" because "[t]here is no genuine doubt as to the correct legal standard here; it is uncontested that *Twombly* and Rule 9(b) apply").

## IV.    An Interlocutory Appeal Will Not Advance the Termination of the Litigation

Under the final prong, Yucaipa must show that an interlocutory appeal may materially advance the ultimate termination of the litigation. *AE Liquidation*, 451 B.R. at 346. Yucaipa argues that an interlocutory appeal of the Order would materially advance the termination of the litigation because "waiting until a final judgment to review [the Bankruptcy

---

[15] In any event, there can be no substantial ground for difference of opinion as to whether Yucaipa satisfied Rule 9(b)'s particularity requirement for fraud-based allegations because Yucaipa's affirmative defenses, as pled, do not allege any *facts*. Rather, Yucaipa's Answer simply recites a laundry list of every conceivable affirmative defense without any factual support. (BD/S Action, D.I. 19 ¶¶ 142-75.)

Court's purported] error will require a complete retrial and reopening of discovery." (Yucaipa's Br. at 13.)  Yucaipa's rank speculation that a retrial *might* occur plainly is insufficient to satisfy its burden for an interlocutory appeal. *See Kirkland & Ellis v. CMI Corp.*, No. 95 C 7457, 1996 WL 674072, at *4 (N.D. Ill. Nov. 19, 1996) ("While [movant] is not required to demonstrate with certainty that an interlocutory appeal would expedite the case, it should advance more than mere conjecture that some issues might have to be retried.").[16]

Moreover, Yucaipa's argument that the mere possibility of a retrial justifies an interlocutory appeal "applies in every case where a district court issues an interlocutory order that could result in a remand from the appellate court if the decision ultimately is reversed.  If the mere possibility of a retrial justified [an interlocutory appeal], the general rule in federal court that interlocutory appeals are not permitted would be rendered inefficacious." *N.F.L. Ins. Ltd. By Lines v. B&B Holdings, Inc.*, No. 91 Civ. 8580 (PKL), 1993 WL 255101, at *3 n.5 (S.D.N.Y. July 1, 1993).  Indeed, granting interlocutory appeals simply to avoid the risk of retrial is actually the antithesis of judicial economy:

> In the course of an adversarial proceeding trial judges make myriad decisions which, if erroneous, might require a new trial. Subjecting all such decisions to interlocutory appeal, on the presumption that multiple trials should be avoided, would make the already swamped federal court system an even deeper quagmire. Such an approach would not serve the interests of judicial economy.

*In re Clark-Franklin-Kingston Press, Inc.*, No. C.A. 90-11231 WF, 1993 WL 160580, at *3 (D. Mass. Apr. 21, 1993).

Here, an interlocutory appeal of the Order would not terminate the litigation or even obviate the need for a trial.  Rather, BD/S's claims against Yucaipa will proceed regardless of whether the Order is appealed now or after final judgment.  Thus, in the interest of efficiency,

---

[16] Notably, Yucaipa raised the same argument in its motion for leave to appeal the Counterclaim dismissal, which this Court denied.

the BD/S Action should first proceed to final judgment, then the parties can pursue their appeals, if any, rather than allowing Yucaipa to delay proceedings with piecemeal appellate litigation. *See MCI WorldCom Commc'ns v. Commc'ns Network Int'l., Ltd.*, 358 B.R. 76, 79-80 (S.D.N.Y. 2006) ("[G]ranting CNI leave to appeal at this juncture will result in piecemeal litigation in this Court and in bankruptcy court, the likelihood of multiple appeals, and delay in the entry of final judgment."). The avoidance of piecemeal litigation is particularly compelling here because, as Yucaipa admits, the facts underlying its affirmative defenses are the *same facts* that supported its Counterclaim. (*See* Yucaipa's Br. at 12 ("[Yucaipa has] painstakingly laid out the specific 'who what, when, where, and why' of BD/S's inequitable conduct – which forms part of the basis for these defenses of unclean hands, estoppel, consent, waiver, and laches – in, among other places, *Yucaipa's dismissed Counterclaim and cross-claims*." (emphasis added).) This Court has already denied Yucaipa's motion for leave to appeal the Counterclaim Dismissal, and it should do so again here so that the Court can hear all appeals, if any, arising from the same set of "facts" at one time.

Yucaipa also argues that, by granting the motion to strike, the Bankruptcy Court has "stripped" Yucaipa of its right to defend itself. (Yucaipa's Br. at 13.) That is false. The Bankruptcy Court only prevented Yucaipa from pursuing defenses that re-assert factual allegations that have already been rejected by the court (*i.e.* those defenses based upon BD/S's alleged "scheme" to equitably subordinate Yucaipa). In particular, the Bankruptcy Court has only dismissed claims masquerading as affirmative defenses that allege that BD/S perpetrated a fraud on Yucaipa; the Bankruptcy Court has not dismissed any defenses where Yucaipa alleges that Yucaipa itself did not act inequitably. Yucaipa is still free to raise affirmative defenses that rely on *any* theory the Bankruptcy Court has not already rejected. Indeed, even after the motion to strike, Yucaipa's Answer still raises the affirmative defenses of justification, business judgment rule, good faith, exculpation, and failure to mitigate. (*See* BD/S Action, D.I. 19 ¶¶ 146, 169, 171, 173, 175.)

Yucaipa also argues that the Bankruptcy Court's Order "ensured that many key facts will remain undeveloped" by preventing Yucaipa from taking discovery on its affirmative defenses.[17]  (Yucaipa's Br. at 13-15.)  Yucaipa's claim that it has not had an adequate opportunity to develop facts through discovery does not withstand scrutiny.  In the BD/S Action, Yucaipa has served a total of 710 separate discovery requests, consisting of 114 document requests, 515 interrogatories, and 81 requests for admission.  BD/S has produced documents and provided substantive responses to the vast majority of those 710 discovery requests, except those directly related to the allegations underlying Yucaipa's dismissed Cross-Claims, Counterclaim, and RICO Action (now recast as affirmative defenses).  For instance, Yucaipa served an interrogatory directing BD/S to "[d]escribe in detail all reasons You did not disclose the transfer of the $4,239,486.90 in First Lien Debt in connection with the filing of the involuntary bankruptcy [] in May 2012 or in response to related discovery."  (BD/S Action, D.I. 120, Ex. 3-4 at 12.)  The Bankruptcy Court has already rejected that allegation, holding that "[a]s Black Diamond and Spectrum did not transfer the [$4,239,486.90] in order to commence the involuntary proceedings, such transfer did not need to be disclosed pursuant to Bankruptcy Rule 1003."  (*Id.*, D.I. 82 at 62.).  Yucaipa cannot be permitted to make an end-run around the Bankruptcy Court's prior decisions under the guise of needing to develop "key facts" in support of the same allegations that have been repeatedly rejected.[18]

---

[17] It is worth noting that the specific discovery requests Yucaipa identifies in its brief were the subject of Yucaipa's *motion to compel*, not BD/S's *cross-motion to strike*.  (*See* Yucaipa's Br. at 14-16 (citing to exhibits in support of Yucaipa's motion to compel).)  The Bankruptcy Court denied the motion to compel, and Yucaipa has not sought an interlocutory appeal of that ruling.

[18] For the same reason, Yucaipa's suggestion that discovery will be a "procedural and administrative quagmire" because the "very defenses that were struck by the Bankruptcy Court are still at issue in the Committee Action" cannot be taken seriously.  (Yucaipa's Br. at 14.)  The Committee Action and the BD/S Action have been effectively consolidated – in fact, they will soon be prosecuted by a single litigation trustee – and will be tried together.  As such, Yucaipa cannot raise the same dismissed affirmative defenses under the guise that they are only being presented in the Committee Action.

Yucaipa also bemoans the difficulty in distinguishing between "the facts and theories the Yucaipa Defendants must be allowed to develop as part of their general defense" and "the facts and theories that relate solely to the now-stricken defenses." (Yucaipa's Br. at 16.) Although it is possible that some confusion may arise in this area, the Bankruptcy Court is more than capable of dealing with any such issues. In any event, Yucaipa's suggestion that an interlocutory appeal will somehow "short-circuit" this difficulty is disingenuous and self-serving. (*Id.*) An appeal would resolve that difficulty only if Yucaipa wins. If this Court were to affirm the Bankruptcy Court's dismissal of the affirmative defenses, the parties would be left in the same position about which Yucaipa complains.

Finally, Yucaipa claims that the dismissal of its affirmative defenses will prevent Yucaipa from "giving the fact-finder at trial the complete picture of BD/S's own inequitable conduct and acquiescence in the very transactions that now form the basis of their claims." (Yucaipa's Br. at 16.) This argument, too, misses the mark. BD/S's equitable subordination claim will be tried in front of the *Bankruptcy Court*, the same court that considered and dismissed Yucaipa's Cross-Claims, Counterclaim, and affirmative defenses. Thus, the fact-finder (*i.e.*, the Bankruptcy Court) has already been presented (on numerous occasions) with the "complete picture" of Yucaipa's allegations that BD/S engaged in inequitable conduct and found those allegations to be implausible.

## CONCLUSION

For the foregoing reasons, Yucaipa's Motion for leave to file an interlocutory appeal should be denied.

Dated:  February 15, 2017
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kerri K. Mumford*
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

- and -

**SCHULTE ROTH & ZABEL LLP**
Adam C. Harris
Robert J. Ward
David M. Hillman

919 Third Avenue
New York, New York 10022
Telephone:  (212) 756-2000
Facsimile:  (212) 593-5955

*Attorneys for Appellees-Plaintiffs BDCM Opportunity
Fund II, LP, Black Diamond CLO 2005-1 Ltd.,
Spectrum Investment Partners, L.P., Black Diamond
Commercial Finance, L.L.C., as Co-Administrative
Agent, and Spectrum Commercial Finance, LLC, as
Co-Administrative Agent*