IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>ASHINC CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br>Bank. No. 12-11564 (CSS)<br>(Jointly Administered) |
| YUCAIPA AMERICAN ALLIANCE FUND II, LP, *et al.*,<br><br>Appellants-Defendants,<br>v.<br>BDCM OPPORTUNITY FUND II, LP, *et al.*,<br><br>Appellees-Plaintiffs. | Adv. No. 14-50971 (CSS)<br>Misc. No. 17-40-SLR |

**MEMORANDUM ORDER**

At Wilmington this 27th day of June, 2017, having reviewed defendants' (together, "Yucaipa") motion for leave to file an interlocutory appeal (D.I. 1) ("motion for leave"), and the papers filed in connection therewith;

**IT IS ORDERED** that the motion for leave is denied for the reasons that follow:

1. **Introduction.** In the above-captioned adversary proceeding,[1] the bankruptcy court entered an order[2] denying Yucaipa's motion to compel discovery in support of certain of its affirmative defenses ("motion to compel") and granting plaintiffs' (together, "BD/S") cross-motion to strike certain of Yucaipa's affirmative defenses ("motion to strike").[3] Yucaipa seeks leave to appeal that portion of the interlocutory order which granted BD/S's

---

[1] *BDCM Opportunity Fund II, LP v. Yucaipa Amer. Alliance Fund II, L.P.*, Adv. No. 14-50971 (CSS) ("BD/S action"). The docket of the BD/S action is referred to herein as "Adv. D.I. __."
[2] Adv. D.I. 194.
[3] *See* Adv. D.I. 119, 136.

motion to strike. **Background.**[4] This adversary proceeding is part of a years' long dispute between Yucaipa and BD/S over a credit agreement that arose out of chapter 11 debtor Allied's[5] May 2007 plan of reorganization. By August 2008, Allied had defaulted under the credit agreement, leading to litigation in the bankruptcy court and other courts over a variety of issues, including the validity of certain subsequent amendments to the credit agreement and the identity of the "Requisite Lenders"[6] thereunder. Among the actions are: Allied's October 2012 declaratory judgment action, which sought a determination of the identity of the Requisite Lenders under the credit agreement ("Allied action");[7] the unsecured creditors' committee's February 2013 action, which alleged breaches of fiduciary duties against Yucaipa and sought derivative equitable subordination of Yucaipa's first lien debt claims ("Committee action");[8] the instant BD/S action, filed in November 2014, by which BD/S seeks direct equitable subordination of Yucaipa's first lien debt claims; and Yucaipa's May 2015 RICO action against BD/S, which was recently dismissed by this court with prejudice.[9]

2. In the Allied action, Yucaipa filed cross-claims asserting that it was the Requisite Lender under the credit agreement[10] and alleging that BD/S engaged in a "double-dealing, self-serving scheme" in which BD/S: "support[ed] Yucaipa's plan to acquire the Requisite

---

[4] Because the court writes primarily for the benefit of the parties, familiarity with the underlying facts in this case is assumed, and they will not be repeated here except where necessary to provide context for the motion for leave.
[5] Allied refers to Allied Systems Holdings, Inc., as well as its subsidiaries. Allied is now known as ASHINC Corporation.
[6] Under the credit agreement, the Requisite Lenders were vested with authority to exercise – or refrain from exercising – certain rights and remedies on behalf of all lenders, such as declaring events of default, demanding immediate payment by Allied of any and all amounts due, or commencing foreclosure.
[7] *Allied Sys. Holdings, Inc. v. Amer. Money Mgmt., et al.*, Adv. Proc. No. 12-50947 (CSS) (Bankr. D. Del.). The docket of this action is referred to herein as "Allied action, D.I. __."
[8] *Official Comm. of Unsecured Creditors of Allied Sys. Holdings, Inc. v. Yucaipa Amer. Alliance Fund I, L.P., et al.*, Adv. No. 13-50530 (CSS) (Bankr. D. Del.). The docket of this action is referred to herein as "Committee action, D.I. __."
[9] *Yucaipa Amer. Alliance Fund I, L.P. v. Ehrlich, et al.*, 204 F. Supp. 3d 765 (D. Del. 2016).
[10] *See* Allied action, D.I. 65.

2

Lender position" by investing "tens of millions of dollars to acquire a majority of the first lien debt pursuant to an amendment that reversed restrictions on ownership contained in the Third Amendment [to the credit agreement];[11] "encouraged Yucaipa's proposed plan, a fact on which Yucaipa relied in executing the plan";[12] and then "chose to double-cross Yucaipa" by "surreptitiously sen[ding] a letter to their agent, [CIT], questioning the validity of Yucaipa's Requisite Lender status."[13] "Thus, while Yucaipa was working toward what it believed to be that shared goal, [BD/S was] scheming to challenge Yucaipa's Requisite Lender status."[14] In February 2013, the bankruptcy court dismissed Yucaipa's cross-claims on several grounds, including that the factual allegations underlying the cross-claims were implausible.[15] On summary judgment in the Allied action, the bankruptcy court determined that BD/S was the Requisite Lender under the credit agreement,[16] and that decision has been affirmed by this court and the Court of Appeals for the Third Circuit.[17]

3. In the BD/S action, Yucaipa asserted a counterclaim[18] against BD/S for equitable subordination, similarly alleging that BD/S engaged in a lengthy, complex, multi-year scheme to equitably subordinate Yucaipa's debt. The counterclaim alleged that BD/S's scheme consisted of a "carefully orchestrated series of lies, payoffs and legal maneuvers designed to improperly enrich themselves at the expense of Yucaipa."[19] In August 2015, the bankruptcy court entered a 65-page opinion and order dismissing Yucaipa's

---

[11] See id., ¶ 4.
[12] See id., ¶¶ 5, 71.
[13] See id., ¶ 7.
[14] See id., ¶ 8.
[15] See Allied action, D.I. 162 at 109:5-9; 110:6-16.
[16] See Allied Action, D.I. 275.
[17] See In re Yucaipa Amer. Alliance Fund II, LP, et al. v. BDCM Opportunity Fund II, LP (In re Allied System Holdings Inc.), 556 B.R. 581 (D. Del. 2016), aff'd sub nom., In re ASHINC Corp. et al., 2017 WL 1097095 (3d Cir. Mar. 23, 2017).
[18] See Adv. D.I. 19 at 31-69.
[19] See id. at 31, ¶ 1; 36-37, ¶ 11.

3

counterclaim with prejudice on several independent grounds, including that "the[] alleged facts do not tell a plausible story."[20] After rejecting several specific factual allegations, the bankruptcy court noted that the alleged scheme was dependent upon each in a series of "unpredictable events occurring in a manner favorable to [BD/S]," including a series of unpredictable litigation outcomes. As the bankruptcy court observed, the alleged scheme required BD/S's success in:

> (i) invalidating the [f]ourth [a]mendment [to the credit agreement] through litigation; (ii) obtaining judicial declaration that [BD/S] are the Requisite Lenders; (iii) acquiring Allied's assets through a credit bid on behalf of all Lenders (including Yucaipa, subject to the equitable subordination claims); (iv) prevailing in their equitable subordination claims against Yucaipa and obtaining substantial recovery; and (v) hoping the Allied assets they acquired would increase in value to the point where the asset value plus any recovery realized from the equitable subordination litigation exceeded a par plus accrued interest recovery years after [another potential purchaser] had offered them a 100% recovery.

(Adv. D.I. 82 at 64) The bankruptcy court dismissed the counterclaim, concluding that "Yucaipa's reliance on this sequence of events is not plausible."[21] Yucaipa sought leave to appeal the bankruptcy court's interlocutory order dismissing its counterclaim with prejudice and, on November 13, 2015, this court denied that request.[22]

4. The parties have exchanged substantial discovery since these proceedings began in 2013. In July of 2016, Yucaipa filed its motion to compel discovery regarding factual allegations supporting its affirmative defenses,[23] and BD/S filed its combined opposition and motion to strike certain of Yucaipa's affirmative defenses, including unclean hands, waiver, estoppel, consent, and laches.[24] The motion to strike asserted that Yucaipa improperly sought discovery in support of irrelevant factual allegations for the purpose of

---

[20] See Adv. D.I. 82.
[21] See Adv. D.I. 82 at 64.
[22] See Civ. No. 15-232 (SLR), D.I. 20.
[23] See Adv. D.I. 119.
[24] See Adv. D.I. 136, 158.

4

reviving its dismissed cross-claims and counterclaim and that those affirmative defenses should be stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.[25] Following oral argument,[26] the bankruptcy court entered an order on January 18, 2017, which denied Yucaipa's motion to compel and granted BD/S's motion to strike the defenses. The order did not specify a basis for the bankruptcy court's decision. On February 16, 2017, Yucaipa filed its motion for leave to appeal that portion of the order striking its affirmative defenses. (D.I. 1)

5. **Standard of review.** The court may, in its discretion, grant leave to parties in bankruptcy to appeal interlocutory orders. See 28 U.S.C. § 158(a)(3). In deciding whether an interlocutory order is appealable in the bankruptcy context, courts have typically borrowed the standard found in 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district courts to the courts of appeal. See In re SemCrude, L.P., 407 B.R. 553, 556-57 (D. Del. 2009); In re Magic Rests., Inc., 202 B.R. 24, 25 (D. Del. 1996). Under § 1292(b), leave to file an interlocutory appeal may be granted when the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, the resolution may materially advance the ultimate termination of the litigation. See Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974). Leave may be denied for reasons apart from this specified criteria, including such matters as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue. Id.; SemCrude, 407 B.R. at 557. The party seeking leave to appeal an interlocutory order must establish that "exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." In re Del. and Hudson Ry. Co., 96 B.R. 469, 472-73

---

[25] See Adv. D.I. 136 at 31.
[26] See Adv. D.I. 192.

5

(D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). Piecemeal litigation is generally disfavored by the Third Circuit. *See In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988).

6. **Analysis.** The court is not persuaded that Yucaipa has established the criteria necessary to justify an interlocutory appeal. A "controlling question of law" includes every order which, "if erroneous, would be reversible error on final appeal." *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 80 F. Supp. 2d 613, 622 n.5 (D. Del. 2011) (quoting *Katz*, 496 F.2d at 755). Yucaipa argues this requirement is met because, in striking its affirmative defenses, the bankruptcy court committed reversible error by "applying the Rule 12(b)(6) 'plausibility' standard and/or Rule 9(b)'s 'particularity' standard" which are the "wrong legal standard[s] to assess the sufficiency of [Yucaipa's] affirmative defenses." (D.I. 2 at 1, 9) Yucaipa argues that there is no dispute that its defenses are legally sufficient defenses to equitable claims, such as BD/S's claims for equitable subordination and breach of fiduciary duty, and that the bankruptcy court erred in striking those defenses as insufficiently pled under Rule 12(b)(6) and/or Rule 9(b). (*See id.* at 8-9) Conversely, BD/S argues that the order was not premised on pleading standards but on the "well-established principle that affirmative defenses should be stricken as legally insufficient where they are based on the same allegations as previously dismissed claims or counterclaims and the issues underlying those counterclaims." (*See* D.I. 3 at 2) Because Yucaipa has admitted that its stricken affirmative defenses were based on the same allegations as the previously dismissed cross-claims, counterclaim, and RICO claims, BD/S contends that dismissal of these defenses was required to avoid prejudice. (*See id.*)

7. While the Third Circuit has not yet opined as to whether affirmative defenses are subject to plausibility standards under *Twombly* and *Iqbal*,[27] this court has joined other district courts in the Third Circuit in holding that they are not. *See Internet Media Corp. v. Hearst Newspapers, LLC*, 2012 WL 3867165, at *3 (D. Del. Sept. 6, 2012) ("*Twombly* and *Iqbal* do not apply to affirmative defenses . . . which need not be plausible to survive. [An affirmative defense] must merely provide fair notice of the issue involved.") (quoting *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011)). Indeed, Rule 12(b)(6) does not offer a mechanism for dismissing affirmative defenses because it refers only to "claim[s]." *See Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 301 (D. Del. 2013). However, there is no indication in the order that the bankruptcy court granted the motion to strike the defenses because they were insufficiently pled under Rule 12(b)(6) or, alternatively, Rule 9(b), or that the bankruptcy court applied an incorrect legal standard in striking the defenses. (*See* Adv. D.I. 194)

8. In absence of a written or oral ruling, the court must assume that the bankruptcy court granted BD/S's request pursuant to the applicable rule – Rule 12(f) – which provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court's determination on a "motion to strike under Rule 12(f) is discretionary." *F.T.C. v. Hope Now Modifications, LLC*, 2011 WL 883202, at *2 (D.N.J. Mar. 10, 2011). According to Yucaipa, the controlling issue of law is whether the bankruptcy court failed to adhere to the Third Circuit's rule that a court may not strike defenses under Rule 12(f) "unless the insufficiency of the defenses is clearly apparent" and, therefore, applied the incorrect standard in striking its defenses. (*See* D.I. 2 at 1) In reality, Yucaipa has appealed from the bankruptcy court's

---

[27] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

7

discretionary application of Rule 12(f) to these affirmative defenses in determining that they were insufficient, redundant, immaterial, impertinent, or scandalous. This is not a controlling question of law. *See MCI WorldCom Commc'ns v. Commc'ns Network Int'l*, 358 B.R. 76, 79 (S.D.N.Y. 2006) ("the question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.").

9. Nor is the court persuaded that substantial grounds for difference of opinion exist as to the correct legal standard to dismiss an affirmative defense under Rule 12(f). "A party's disagreement with the [bankruptcy] court's ruling does not constitute 'a substantial ground for difference of opinion' within the meaning of [§] 1292(b)." *Hurst v. City of Dover*, 2006 WL 2347707, at *2 (D. Del. Mar. 21, 2006). "The difference of opinion must arise out of genuine doubt as to the correct legal standard." *Id.* (internal quotations omitted). Moreover, "[t]he difference of opinion must be legally significant (*e.g.*, multiple courts disagree as to the applicable legal standard." *In re SemCrude, L.P.*, 2010 WL 4537921, *3 (D. Del. Oct. 26, 2010) (internal citation omitted).

10. Yucaipa's difference of opinion here does not arise out of genuine doubt as to the correct legal standard. BD/S asked the bankruptcy court to strike the affirmative defenses pursuant to Rule 12(f) because those defenses asserted the same factual allegations that had already been considered and rejected by the bankruptcy court and other courts. (*See* Adv. D.I. 158 at 9; D.I. 3 at 11) Because Rule 12(f) indisputably governs the relief requested in the motion to strike, and there is no indication that the bankruptcy court ruled to strike Yucaipa's affirmative defenses as insufficiently pled, Yucaipa cannot demonstrate a genuine doubt regarding the correct legal standard.

11. Rather, Yucaipa argues that interlocutory appeal is appropriate because, in applying Rule 12(f), the bankruptcy court declined to follow Third Circuit binding precedent in *Cipollone* that a court may not strike an affirmative defense "unless the insufficiency of

8

the defense is clearly apparent." (See D.I. 2 at 10 (quoting *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986), *rev'd in part on other grounds*, 505 U.S. 504 (1992)) Yucaipa asserts that the bankruptcy court may only strike an affirmative defense if the defense is "not recognized as a defense to the cause of action," and there is no dispute that Yucaipa's affirmative defenses are legally recognized defenses to BD/S's equitable claims. (*See id.* (quoting *Newborn Bros. Co., Inc. v. Albion Eng'g Co.*, 299 F.R.D. 90, 97 (D.N.J. 2014)) Again, Yucaipa's argument fails to address the full text of Rule 12(f) and the bankruptcy court's discretion in ruling on a motion to strike.

12. This court has recognized that, "[a]s a general matter, motions to strike under Rule 12(f) are disfavored." *Fesnak and Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010). "[E]ven where the challenged material is 'redundant, immaterial, impertinent, or scandalous,' a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *See Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 359 (D. Del. 2009) (internal citations omitted); *see also Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993) (motion to strike will be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.") "Prejudice occurs when the challenged pleading confuses the issues or is so lengthy and complex that it places an undue burden on the responding party." *Karpov v. Karpov*, 307 F.R.D. 345, 348-49 (D. Del. 2015); *see also Louisiana Sulphur Carriers, Inc. v. Gulf Resources and Chem. Corp.*, 53 F.R.D. 458, 460 (D. Del. 1971) (striking defense that would substantially complicate the discovery proceedings and the issues at trial).

13. Nevertheless, and as repeatedly held by courts in this circuit, a court's determination on a "motion to strike under Rule 12(f) is discretionary." *Hope Now*, 2011 WL 883202, at *2; *see also Signature Bank v. Check-x-Change, LLC*, 2013 WL 3286154, at *2

9

(D.N.J. June 27, 2013) ("a court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)") (internal citations omitted); *U.S. v. Consol. Coal Co.*, 1991 WL 333694 (W.D. Pa. July 5, 1994) (court may grant motion to strike when "required for the purposes of justice"). Courts have observed that an affirmative defense is insufficient if "it is not recognized as a defense to the cause of action," and that an affirmative defense can be stricken on the basis of the pleadings alone "if the defense asserted could not possibly prevent recovery under any pleaded or inferable set of facts." *Newborn Bros.*, 299 F.R.D. at 93 (quoting *Hope Now*, 2011 WL 883202, at *1).

14. Yucaipa's argument that the bankruptcy court may only strike an affirmative defense if the defense was "not recognized as a defense to the cause of action" fails to take into account the bankruptcy court's "considerable discretion" in ruling on a motion to strike. *See Signature Bank,* 2013 WL 3286154, at *2. The function of Rule 12(f) is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Boatright v. Crozer-Keystone Health Sys.*, 2015 WL 4506559, *5 (E.D. Pa. 2015) (internal quotations and citations omitted); *see also United States v. Kramer*, 757 F. Supp. 397, 410 (D.N.J. 1991) (motions to strike may "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case").

15. Here, BD/S's motion to strike certain of Yucaipa's affirmative defenses sets forth the potential prejudice it faces: Yucaipa's defenses assert the same allegations that have already been considered and rejected several times in the dismissal of the cross-claims, counterclaim, and RICO claims; to deny the request would permit Yucaipa an end-run of the bankruptcy court's prior decisions by allowing it to reassert rejected allegations as bases for its affirmative defenses; and denial of the request would result in BD/S having to respond to

10

unnecessary and burdensome discovery with respect to previously dismissed claims. (See Adv. D.I. 158 at 9-10)

16. Yucaipa's pleadings appear to confirm BD/S's concerns that Yucaipa's affirmative defenses are based on the same allegations underlying its dismissed cross-claims and counterclaim:

> [T]he Yucaipa Defendants have explained that BD/S orchestrated a carefully timed series of lies, payoffs, and legal maneuvers designed to wrongfully enrich themselves at Yucaipa's expense – setting up Yucaipa as the proverbial fall guy to blame for Allied's misfortunes connected to the Great Recession. **To that end, the Yucaipa Defendants have asserted the affirmative defenses of unclean hands, waiver, estoppel, consent, and laches, among others.**

(Adv. D.I. 119 at 10) (emphasis added).[28] Consistent with case law in the Third Circuit, the bankruptcy court had discretion to dismiss an affirmative defense that would "prejudice the adverse party." See *XpertUniverse, Inc. v. Cisco Systems, Inc.*, 868 F. Supp. 2d 376, 379 (D. Del. 2012) (citing *Fesnak*, 722 F. Supp. 2d at 502)). The court cannot say that granting BD/S this relief was "contrary to established law." *In re Marvel Entm't Grp.*, 209 B.R. at 837-38. Whether burdensome discovery is sufficiently prejudicial to justify the "highly disfavored" action of striking affirmative defenses in this particular case is beyond the scope of the instant analysis.

18. Because there is no indication that the bankruptcy court ruled to strike Yucaipa's affirmative defenses as insufficiently pled, and because the bankruptcy court had discretion to strike the affirmative defenses under Rule 12(f), the court cannot conclude that the bankruptcy court applied an incorrect legal standard or that there is any genuine doubt as to the correct legal standard. While Yucaipa disagrees with the bankruptcy court's ruling, the

---

[28] See also D.I. 2 at 12 ("[Yucaipa has] painstakingly laid out the specific 'who, what, when where, and why' of BD/S's inequitable conduct – which forms part of the basis for these defenses of unclean hands, estoppel, consent, waiver, and laches – in, among other places, Yucaipa's dismissed [counterclaim] and cross-claims.")

11

disagreement does not constitute a substantial ground for difference of opinion within the meaning of § 1292(b). See Hurst, 2006 WL 2347707, at *2.

19. In support of its argument that immediate resolution will materially advance the ultimate termination of the litigation, Yucaipa argues that the bankruptcy court's error "shapes the entire case, such that the reversal on appeal from final judgment will require a complete redoing of discovery (including depositions of third parties) and a complete retrial of all issues and claims." (D.I. 2 at 12-13; D.I. 4 at 9) Yucaipa argues that an immediate appeal of this issue will conserve the time and resources of the court, the bankruptcy court, the parties, and the non-parties who will be deposed during discovery. (D.I. 2 at 12-13) Yucaipa further argues that the order creates a difficulty in distinguishing between "the facts and theories [Yucaipa] must be allowed to develop in discovery as part of [its] general defense" and "the facts and theories that relate solely to the now-stricken defenses." (Id. at 16) Conversely, BD/S argues that the bankruptcy court is more than capable of dealing with any issues that may arise with respect to Yucaipa's general defense. (See D.I. 3 at 20) BD/S further argues that the possibility of a retrial is not by itself a sufficient basis for an interlocutory appeal and that interlocutory appeal will only prolong the litigation. (See id. at 17 (citing Kirkland & Ellis v. CMI Corp., 1996 WL 674072 (N.D. Ill. Nov. 19, 1996))

20. The court agrees that saving judicial resources and sparing expense to the litigants is highly relevant to the court's analysis. See Katz, 496 F.2d at 755. However, in light of the related BD/S action and Committee action, which pending actions "involve at least some overlapping claims and certainly involve overlapping facts," and in accordance with the court's prior ruling,[29] the better approach is to have the entire dispute resolved in

---

[29] See Civ. No. 15-232 (SLR), D.I. 20 & Civ. No. 15-256 (SLR), D.I. 19 (denying Yucaipa's motion for leave to appeal interlocutory order dismissing its counterclaim and Yucaipa's motion to withdraw reference of the BD/S action).

the first instance by the bankruptcy court,[30] thus avoiding piecemeal litigation and the risk of inconsistent rulings and findings. Under these circumstances, interlocutory appeal would only promote piecemeal determination of the questions raised in the actions and would likely create unnecessary delay.

21. Finally, a party seeking leave to appeal an interlocutory order must establish that "exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." See Del. and Hudson Ry., 96 B.R. at 473. Here, Yucaipa's opening brief did not specify what exceptional circumstances justified interlocutory appeal, and BD/S argues the motion for leave should be denied on this basis alone. (D.I. 3 at 10-11 (citing In re AE Liquidation, Inc., 451 B.R. 343, 348-49 (D. Del. 2011) (denying leave for interlocutory appeal where "Plaintiffs fail to present exceptional circumstances justifying the need for immediate review.")). On reply, Yucaipa argues that the bankruptcy court's order was "plain error under binding precedent;" that by striking its core affirmative defenses, the bankruptcy court stripped Yucaipa of its right to defend itself; and that "waiting until a final judgment to hear this appeal would be highly inefficient and would ensure a re-do of the entire case." (See D.I. 4 at 10) Because its opening brief included the same points, Yucaipa argues that it has met the standard for interlocutory review in demonstrating that exceptional circumstances are present. (See id.)

22. "Interlocutory appeal is meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation." DeLalla v. Hanover Ins., 2010 WL 3908597, at *3 (D.N.J. Sept. 30, 2010). The court does not agree that these are exceptional circumstances justifying immediate appeal.

---

[30] Recognizing that some of the bankruptcy court's decisions may be in the form of proposed findings of fact and conclusions of law.

13


23. **Conclusion.** For the foregoing reasons, the motion for leave (D.I. 1) is denied, and Misc. No. 17-40-SLR is closed.

                                                                                                                   _____

                                                                                                                   Senior United States District Judge