# Exhibit 22

**Execution Version**

## AMENDMENT NO. 3 TO CREDIT AGREEMENT AND CONSENT

This **AMENDMENT NO. 3 TO CREDIT AGREEMENT AND CONSENT** dated as of April 30, 2008 (this "**Amendment**"), to the Second Lien Secured Super-Priority Debtor In Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 (as amended by that certain Limited Waiver and Amendment No. 1 to Credit Agreement and Pledge and Security Agreement, dated as of May 29, 2007, and as further amended by that certain Amendment No. 2 to Credit Agreement, dated as of June 12, 2007, the "**Credit Agreement**"), by and among **ALLIED SYSTEMS HOLDINGS, INC.** (formerly known as Allied Holdings, Inc.), a Delaware Corporation ("**Holdings**"), **ALLIED SYSTEMS, LTD. (L.P.)**, a Georgia limited partnership ("**Systems**" and, together with Holdings, the "**Borrowers**") and **CERTAIN SUBSIDIARIES OF HOLDINGS**, the Lenders party hereto from time to time, **GOLDMAN SACHS CREDIT PARTNERS L.P.**, as Lead Arranger, as Syndication Agent, as Collateral Agent and as Administrative Agent (together with its permitted successors in such capacity, "**Administrative Agent**").

### RECITALS:

**WHEREAS**, the Credit Agreement currently prohibits Borrowers and their respective Affiliates from becoming Lenders under the Credit Agreement;

**WHEREAS,** Borrowers have requested that Requisite Lenders agree to amend the Credit Agreement to permit Sponsor and its Affiliates (other than Borrowers and their Subsidiaries) to become Lenders under the Credit Agreement by purchasing and assuming the rights and obligations of one or more Lenders under the Credit Agreement and to contribute such rights and obligations to Borrowers in the form of capital contributions; and

**WHEREAS**, Requisite Lenders have agreed to amend the Credit Agreement to permit Sponsor and its Affiliates (other than Borrowers and their Subsidiaries) to become Lenders under the Credit Agreement and to contribute such rights and obligations to Borrowers, in the manner, and subject to the terms and conditions, provided for herein.

**NOW, THEREFORE**, in consideration of the premises and the agreements, provisions and covenants herein contained, the parties hereto agree as follows:

**SECTION 1. DEFINITIONS**

1.1  All capitalized terms used herein (including in the introductory paragraph and Recitals set forth above) and not otherwise defined shall have the meanings assigned to such terms in the Credit Agreement.

EXHIBIT 343

CONFIDENTIAL                                                                                                     AHS00064051

**SECTION 2. AMENDMENTS TO CREDIT AGREEMENT**

2.1 **Amendments to Section 1: Definitions.**

(a) Section 1.1 of the Credit Agreement is hereby amended by adding thereto the following definition of "Insolvency or Liquidation Proceeding" and "Restricted Sponsor Affiliates" in the proper alphabetical order:

" '**Insolvency or Liquidation Proceeding**' as defined in the Intercreditor Agreement."

" '**Restricted Sponsor Affiliates**' means Sponsor and its Affiliates (other than Borrowers or any of their Subsidiaries)."

(b) Section 1.1 of the Credit Agreement is hereby further amended by deleting the definition of "Eligible Assignee" in its entirety and inserting in lieu thereof the following:

" '**Eligible Assignee**' means (i) any Lender, any Affiliate of any Lender and any Related Fund (any two or more Related Funds being treated as a single Eligible Assignee for all purposes hereof), and (ii) any commercial bank, insurance company, investment or mutual fund or other entity that is an "accredited investor" (as defined in Regulation D under the Securities Act) and which extends credit or buys loans; provided, neither Borrowers nor any of their Subsidiaries shall be an Eligible Assignee."

(c) Section 1.1 of the Credit Agreement is hereby further amended by deleting the definition of "Loan Exposure" in its entirety and inserting in lieu thereof the following:

""**Loan Exposure**" means, with respect to any Lender, as of any date of determination, the outstanding principal amount of the Loans of such Lender; provided, at any time prior to the making of the initial Loans, the Loan Exposure of any Lender shall be equal to such Lender's Loan Commitment; provided further that with respect to any provisions of this Agreement relating to the voting rights of Lenders (including the right of Lenders to consent or take any other action with respect to any amendment, modification, termination or waiver of any provision of this Agreement or the other Credit Documents, or consent to any departure by any Credit Party therefrom), the aggregate outstanding principal amount of the Loans of all Restricted Sponsor Affiliates shall be disregarded for purposes of this definition of "Loan Exposure"."

(d) Section 1.1 of the Credit Agreement is hereby further amended by deleting the second parenthetical in clause (v) of the definition of "Restricted Junior Payment" in its entirety and inserting in lieu thereof the following:

"(other than the conversion of any of such Indebtedness to common or other Equity Interests of Holdings other than Disqualified Equity Interests)"

2

CONFIDENTIAL                                                                                       AHS00064052

2.2    **Amendments to Section 2: Loans and Letters of Credit.**

(a)    Section 2.7 of the Credit Agreement is hereby amended by deleting the parenthetical in the second sentence of clause (b) in its entirety and inserting in lieu thereof the following:

"(with respect to any entry relating to such Lender's Loans and any entry relating to any Restricted Sponsor Affiliate's Loans)"

(b)    Section 2.17 of the Credit Agreement is hereby amended by deleting the reference to "Section 2.14(e)" in the first sentence thereof and inserting in lieu thereof "Section 2.14(e), Section 10.6(i) or Section 10.6(j)".

2.3    **Amendments to Section 6: Negative Covenants.**

(a)    Section 6.4 of the Credit Agreement is hereby amended by inserting the following at the end of clause (c) thereof:

"or other Equity Interests (other than Disqualified Equity Interests)"

2.4    **Amendments to Section 10: Miscellaneous.**

(a)    Section 10.6(g) of the Credit Agreement is hereby amended by deleting clause (i) thereof in its entirety and inserting the following in lieu thereof:

"(i) Each Lender shall have the right at any time to sell one or more participations to any Person (other than Holdings, any of its Subsidiaries or any of its Affiliates (including, without limitation, Restricted Sponsor Affiliates)) in all or any part of its Commitments, Loans or in any other Obligation."

(b)    Section 10.6 of the Credit Agreement is hereby amended by inserting a new clause (i) as follows:

"(i)    Restricted Sponsor Affiliates.  The Restricted Sponsor Affiliates, from time to time, intend to become Lenders and, from time to time, to sell, assign or transfer all or a portion of their Loans and the rights and obligations as Lenders related thereto under this Agreement to Eligible Assignees.  Each Lender hereby acknowledges that a Restricted Sponsor Affiliate (i) may be a Lender (provided such Restricted Sponsor Affiliate otherwise satisfies the criteria of the definition of the term of "Eligible Assignee") and (ii) may sell, assign or transfer all or a portion of its Loans and the rights and obligations as a Lender related thereto under this Agreement to Eligible Assignees.

To the fullest extent permitted by applicable law, no Restricted Sponsor Affiliate shall assert, and each Restricted Sponsor Affiliate immediately and automatically upon becoming a Lender, hereby irrevocably (i) waives, any claim or cause of action against any Lender, any Agent and their respective Affiliates, directors, employees, attorneys, agents or sub-agents (whether or not the claim therefor is based on contract, tort or duty

3

CONFIDENTIAL

AHS00064053

imposed by any applicable legal requirement or otherwise) arising out of, in connection with, as a result of, or in any way related to, this Agreement or any Credit Document or any agreement or instrument contemplated hereby or thereby or referred to herein or therein, the transactions contemplated hereby or thereby, any Loan or the use of the proceeds thereof or any act or omission or event occurring in connection therewith except to the extent caused by such Lender's or Agent's gross negligence or willful misconduct on or after the date such Restricted Sponsor Affiliate becomes a Lender hereunder as determined by a court of competent jurisdiction by final and non-appealable judgment, (ii) waives, releases and agrees not to sue upon any such claim or any such cause of action, whether or not accrued and whether or not known or suspected to exist in its favor and (iii) waives any claim or cause of action against any Agent or any Lender and their respective Affiliates, directors, employees, attorneys, agents or sub-agents on any theory of liability for special, indirect, consequential or punitive damages, arising out of, in connection with, as a result of, or in any way related to this Agreement, or any other Credit Document or any agreement or instrument contemplated hereby or thereby, any Loan or the use of proceeds thereof or any act or omission or event occurring in connection therewith.

(c) Section 10.6 of the Credit Agreement is hereby amended by inserting a new clause (j) as follows:

"(j) <u>Contribution of Loans to Borrowers; Cancellation of Debt</u>.

(i) The Restricted Sponsor Affiliates may, from time to time, make capital contributions of their Loans to Borrowers.

(ii) Notwithstanding anything to the contrary herein, a Restricted Sponsor Affiliate may at any time make a capital contribution of its Loans to Borrowers in exchange for Equity Interests of Holdings (other than Disqualified Equity Interests) upon no less than one Business Days' prior written notice to Administrative Agent or Lenders. Such Restricted Sponsor Affiliate and Borrowers shall promptly provide all information and data reasonably requested by Administrative Agent or the Requisite Lenders in connection with such capital contribution.

(iii) Immediately upon a Borrower's acquisition of Loans from a Restricted Sponsor Affiliate, (x) such Loans and all rights and obligations as a Lender related thereto shall for all purposes (including under this Agreement, the other Credit Documents and otherwise) be deemed to be irrevocably prepaid, terminated, extinguished, cancelled and of no further force and effect and such Borrower shall neither obtain nor have any rights as a Lender hereunder or under the other Credit Documents by virtue of such capital contribution and (y) such Borrower shall deliver to Administrative Agent or the Requisite Lenders a written acknowledgement and agreement executed by an Authorized Officer and in form and substance reasonably acceptable to Administrative Agent or the Requisite Lenders acknowledging the irrevocable prepayment, termination, extinguishment and cancellation of such Loans and confirming that such Borrower has no rights as a Lender under the Credit Documents or otherwise.

4

CONFIDENTIAL            AHS00064054

(iv) As soon as practicable after a Borrower's acquisition of Loans from a Restricted Sponsor Affiliate in accordance with this Section 10.6(j), such Borrower shall take all actions necessary to cause such Loans to be extinguished or otherwise cancelled in its books and records in accordance with GAAP.

(v) To the extent permitted by applicable law, no Credit Party shall assert, and each Credit Party hereby irrevocably waives, any claim or cause of action against any Lender, any Agent and their respective Affiliates, directors, employees, attorneys, agents or sub-agents (whether or not the claim therefor is based on contract, tort or duty imposed by any applicable legal requirement or otherwise) arising out of, in connection with, as a result of, or in any way related to, any capital contribution of Loans made by a Restricted Sponsor Affiliate to such Borrower or any act or omission or event occurring in connection therewith, and each Credit Party hereby irrevocably waives, releases and agrees not to sue upon any such claim or any such cause of action, whether or not accrued and whether or not known or suspected to exist in its favor."

**SECTION 3. CONDITIONS PRECEDENT TO EFFECTIVENESS**

The effectiveness of the amendments and the consent set forth in this Amendment are subject to the satisfaction, or waiver, of the following conditions on or before the date hereof (the "**Amendment Effective Date**"):

(a) Borrowers, the other Credit Parties and Requisite Lenders shall have indicated their consent by the execution and delivery of the signature pages hereof to the Administrative Agent or Requisite Lenders; and

(b) Administrative Agent or Requisite Lenders shall have received a certificate from an officer of Holdings stating that as of the Amendment Effective Date (i) the representations and warranties contained in Section 4 herein and in the other Credit Documents are true, correct and complete in all material respects on and as of the Amendment Effective Date to the same extent as though made on and as of that date, except to the extent such representations and warranties specifically relate to an earlier date, in which case such representations and warranties are true, correct and complete in all material respects on and as of such earlier date and (ii) no event has occurred and is continuing or will result from the consummation of the transactions contemplated by this Amendment that would constitute an Event of Default or a Default.

**SECTION 4. REPRESENTATIONS AND WARRANTIES**

4.1 <u>Corporate Power and Authority</u>. Each Credit Party has all requisite corporate, limited liability company or partnership (as applicable) power and authority to enter into this Amendment and to carry out the transactions contemplated by, and perform its obligations under, the Credit Agreement, as amended by this Amendment (the "**Amended Credit Agreement**").

4.2 <u>Authorization of Amendments</u>. The execution and delivery of this Amendment have been duly authorized by all necessary corporate, limited liability company or partnership (as applicable) action on the part of each Credit Party.

5

CONFIDENTIAL

AHS00064055

      4.3    No Conflict. The execution and delivery by each Credit Party of this Amendment and the performance by each Credit Party of the Amended Credit Agreement do not and will not (i) violate any provision of any law or any governmental rule or regulation applicable to any Credit Party, the certificate or articles of incorporation or bylaws (or other organizational documents) of any Credit Party or any order, judgment or decree of any court or other agency of government binding on any Credit Party, (ii) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material indenture, mortgage, deed to secure debt, deed of trust, lease, agreement or other instrument to which any Credit Party is a party or by which any Credit Party or any of its property is bound (any of the foregoing, a "**Contractual Obligation**"), (iii) result in or require the creation or imposition of any Lien upon any of the properties or assets of a Credit Party other than those in favor of the Collateral Agent, on behalf of itself and the Secured Parties, pursuant to the Credit Documents or those in favor of the Second Lien Collateral Agent on a second priority basis pursuant to the Second Lien Credit Documents, or (iv) require any approval of stockholders or any approval or consent of any Person under any Contractual Obligation of any Credit Party other than those that have been made or obtained.

      4.4    Governmental Consents. No action, consent or approval of, registration or filing with or any other action by any Governmental Authority is required in connection with the execution and delivery by each Credit Party of this Amendment or the performance by the Credit Parties of the Amended Credit Agreement.

      4.5    Binding Obligation. This Amendment has been duly executed and delivered by each Credit Party and this Amendment and the Amended Credit Agreement constitute the legal, valid and binding obligation of each Credit Party enforceable against each Credit Party in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, moratorium, reorganization or other similar laws affecting creditors' rights generally and except as enforceability may be limited by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

      4.6    Incorporation of Representations and Warranties From Credit Documents. The representations and warranties contained in the Credit Documents are and will be true, correct and complete in all material respects on and as of the Amendment Effective Date to the same extent as though made on and as of that date, except to the extent such representations and warranties specifically relate to an earlier date, in which case they were true, correct and complete in all material respects on and as of such earlier date.

      4.7    Absence of Default. As of the date of this Amendment and after giving effect to the amendment set forth herein, no event has occurred and is continuing or will result from the consummation of the transactions contemplated by this Amendment that would constitute an Event of Default or a Default.

**SECTION 5. ACKNOWLEDGEMENT AND CONSENT**

      Each Guarantor hereby consents to the terms of this Amendment and further hereby confirms and agrees that, notwithstanding the effectiveness of this Amendment, the obligations of such Guarantor under each of the Credit Documents to which such Guarantor is a party shall

CONFIDENTIAL AHS00064056

not be impaired and each of the Credit Documents to which such Guarantor is a party are, and shall continue to be, in full force and effect and are hereby confirmed and ratified in all respects.

Each Guarantor hereby acknowledges and agrees that (i) notwithstanding the conditions to effectiveness set forth in this Amendment, such Guarantor is not required by the terms of the Credit Agreement or any other Credit Document to consent to the amendment to the Credit Agreement effected pursuant to this Amendment and (ii) nothing in the Credit Agreement, this Amendment or any other Credit Document shall be deemed to require the consent of such Guarantor to any future amendments to the Credit Agreement.

**SECTION 6. MISCELLANEOUS**

6.1   Binding Effect.   This Amendment shall be binding upon the parties hereto and their respective successors and assigns and shall inure to the benefit of the parties hereto and the successors and assigns of Lenders.

6.2   Severability.   In case any provision in or obligation hereunder shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

6.3   Effect on Credit Agreement.   Except as expressly set forth herein, Lenders agree to no amendment with respect to the Credit Agreement or any other Credit Document, and the Credit Agreement and the other Credit Documents remain in full force in accordance with their respective terms. Requisite Lender's agreeing to the amendment contained herein does not and shall not create (nor shall any Credit Party rely upon the existence of or claim or assert that there exists) any obligation of any Lender to consider or to agree to any further amendment to any Credit Document. In the event that Lenders subsequently agree to consider any further amendment to any Credit Document, neither the amendment contained herein nor any other conduct of Lenders shall be of any force or effect on Lenders' consideration or decision with respect to any such amendment, and Lenders shall have no further obligation whatsoever to consider or to agree to any such amendment. Lenders, expressly reserve the right to require strict compliance with the terms of the Credit Agreement and the other Credit Documents in all respects. The amendment agreed to herein shall not constitute a course of dealing at variance with the Credit Agreement so as to require further notice by Lenders to require strict compliance with the terms of the Credit Agreement and the other Credit Documents in the future. The parties hereto acknowledge and agree that this Amendment shall be deemed to be a Credit Document. On and after the Amendment Effective Date, each reference in the Credit Agreement to "this Agreement", "hereunder", "hereof", "herein" or words of like import referring to the Credit Agreement, and each reference in the other Credit Documents to the "Credit Agreement", "thereunder", "thereof", "therein" or words of like import referring to the Credit Agreement shall mean and be a reference to the Amended Credit Agreement.

6.4   Headings.   Section headings herein are included herein for convenience of reference only and shall not constitute a part hereof for any other purpose or be given any substantive effect.

7

6.5     APPLICABLE LAW.  **THIS AMENDMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES THEREOF (OTHER THAN SECTION 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW).**

6.6     Counterparts.  This Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument.  As set forth herein, this Amendment shall become effective upon the execution of a counterpart hereof by each of the parties hereto and receipt by Administrative Agent or Requisite Lenders of written or telephonic notification of such execution and authorization of delivery thereof.

*[The remainder of this page is intentionally left blank.]*

8

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

**BORROWERS:**                              **ALLIED SYSTEMS HOLDINGS, INC.**

By: _____
    Thomas H. King
    Executive Vice President
    and Chief Financial Officer


**ALLIED SYSTEMS, LTD. (L.P.)**

By:   Allied Automotive Group, Inc.,
      its Managing General Partner

By: _____
    Thomas H. King
    Executive Vice President
    and Assistant Treasurer


**ACKNOWLEDGED AND AGREED:**

**ACE OPERATIONS, LLC**
**AXIS NETHERLANDS, LLC**

By:   AXIS Group, Inc.,
      its Sole Member and Manager

By: _____
    Thomas H. King
    Executive Vice President
    and Assistant Treasurer

*Amendment No. 3 Signature Page*

CONFIDENTIAL                                                                          AHS00064059

AH INDUSTRIES INC.
ALLIED AUTOMOTIVE GROUP, INC.
ALLIED FREIGHT BROKER LLC
ALLIED SYSTEMS (CANADA) COMPANY
AXIS CANADA COMPANY
AXIS GROUP, INC.
COMMERCIAL CARRIERS, INC.
CORDIN TRANSPORT LLC
C T SERVICES, INC.
F.J. BOUTELL DRIVEAWAY LLC
GACS INCORPORATED
QAT, INC.
RMX LLC
TERMINAL SERVICES LLC
TRANSPORT SUPPORT LLC

By: _____
Thomas H. King
Executive Vice President and
Assistant Treasurer


AXIS ARETA, LLC
LOGISTIC SYSTEMS, LLC
LOGISTIC TECHNOLOGY, LLC

By:  AX International Limited,
     its Sole Member and Manager


By: _____
Thomas H. King
Executive Vice President
and Assistant Treasurer

*Amendment No. 3 Signature Page*

CONFIDENTIAL

THIRD AMENDMENT TO THE
CREDIT AGREEMENT

To approve the Third Amendment:

**MONARCH MASTER FUNDING LTD**

By:   Monarch Alternative Capital LP,
      its Advisor

By: _____
Name:
Title:

Christopher Santana
Managing Principal

*Amendment No. 3 Signature Page*

CONFIDENTIAL

AHS00064061

THIRD AMENDMENT TO THE
CREDIT AGREEMENT

To approve the Third Amendment:

**GRAND CENTRAL ASSET TRUST – VCM SERIES**

By: _/s/ Molly Walter_
Name: Molly Walter
Title: Attorney-In-Fact

*Amendment No. 3 Signature Page*

CONFIDENTIAL

THIRD AMENDMENT TO THE
CREDIT AGREEMENT

To approve the Third Amendment:

Name of Institution:

TRS Venor LLC
By:  DEUTSCHE BANK AG
     CAYMAN ISLANDS BRANCH, ITS SOLE MEMBER
By:  DB SERVICES NEW JERSEY, INC.

By: _____  Edward Schaffer
Name:                        Vice President
Title:

By: _____
Name: Jonathan Shin
Title: Assistant Vice President

Amendment No. 3 Signature Page

CONFIDENTIAL
AHS00064063