# Exhibit 70

| | |
|---|---|
| **From:** | derex@att.blackberry.net |
| **Sent:** | Wednesday, May 16, 2012 6:41 PM EDT |
| **To:** | John Blount; Kelley, Jeffrey W.; Dempster, Hazen H. |
| **CC:** | Mark Gendregske; Ira Tochner |
| **Subject:** | Fw: Allied |
| **Attachments:** | Yucaipa Lock Up Agreement.DOC |

Please see below. We're reviewing now. Thanks.
Sent via BlackBerry by AT&T

---

**From:** "Harris, Adam" <Adam.Harris@srz.com>
**Date:** Wed, 16 May 2012 18:26:23 -0400
**To:** Ira Tochner<Ira.Tochner@yucaipaco.com>; Derex Walker<Derex.Walker@yucaipaco.com>; Douglas Teitelbaum<Douglas.Teitelbaum@yucaipaco.com>; David E. Ross<DRoss@kasowitz.com>; David Spalten<dspalten@kasowitz.com>; Adam K. Grant<AGrant@kasowitz.com>
**Cc:** Ward, Robert<Robert.Ward@srz.com>; Lepore, Victoria<Victoria.Lepore@srz.com>; Harris, Adam<Adam.Harris@srz.com>
**Subject:** Allied

FOR SETTLEMENT PURPOSES ONLY
NOT ADMISSIBLE FOR ANY PURPOSE

Gentlemen --

In furtherance of our discussions from yesterday attached please find a draft agreement to be entered into by Black Diamond, Spectrum and Yucaipa. As you will see, we have also provided that Allied will sign for limited purposes. This draft has not been approved by either Black Diamond or Spectrum and thus remains subject to their comments and revisions.

Given tomorrow's 12 noon expiration of the Yucaipa and Allied agreements regarding the commencement of any voluntary chapter 11 cases, we would ask that comments on the draft agreement be retumed to us by no later than 11 am NY time tomorrow. Altematively, the time to provide comments could be extended until 5 pm tomorrow if Yucaipa and Allied agree to extend their agreements regarding the commencement of any voluntary chapter 11 cases until 12 noon on Friday, May 18th.

If you would like to discuss all or any portion of the draft agreement we would be happy to make ourselves available this evening. I can be reached on my cell at 914-536-9512.

We look forward to your prompt response to the attached.

Adam

Adam Harris, Esq.
Partner
212.756.2253
adam.harris@srz.com



**Schulte Roth & Zabel LLP**
**919 Third Avenue, New York, NY 10022**
**212.756.2000 | 212.593.5955 fax**

******************************************************************************
U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this
communication was not intended or written to be used, and cannot be used, for the
purpose of avoiding U.S. federal tax penalties.
******************************************************************************

NOTICE

This e-mail message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or that constitutes attorney
work product. If you are not the intended recipient, you are hereby notified that
any dissemination, distribution or copying of this e-mail and any attachment(s) is
strictly prohibited. If you have received this e-mail in error, please immediately
notify the sender by replying to this e-mail and delete the message and any attachment(s) from your system. Thank you.
==============================================================================

This email may contain material that is confidential and for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

**FOR SETTLEMENT PURPOSES ONLY**
**NOT ADMISSIBLE FOR ANY PURPOSE**
**SRZ DRAFT {DATE}**

May __, 2012

Ladies and Gentlemen:

This letter agreement ("Agreement") is entered into and made by and among (a) Yucaipa American Alliance Fund I, LP and Yucaipa American Alliance (Parallel) Fund I, LP (collectively, "Yucaipa"), (b) Black Diamond CLO 2005-1 LTD. and BDCM Opportunity Fund II, L.P. (collectively, "Black Diamond"), and (c) Spectrum Investment Partners, L.P. (together with its affiliates or any fund under the control of its affiliates, "Spectrum"). Yucaipa, Black Diamond and Spectrum shall each be referred to herein as a "Party" and collectively as the "Parties." Each of the Parties is or alleges that it is a Lender under the First Lien Credit Agreement and/or the Second Lien Credit Agreement,[1] and that it owns or controls, with power to vote, the First Lien Obligations and/or Second Lien Obligations set forth on the signature pages hereof (the "Lender Claims").

In contemplation of, among other things, the pursuit of certain strategies relating to a possible restructuring of or transaction involving the Borrowers and Guarantors, the Parties have agreed to enter into this Agreement.

1. Cooperation. For so long as this Agreement is in effect, the Parties shall, in good faith, work together to identify and implement courses of action for the purpose of maximizing the recoveries of the Parties in respect of the Lender Claims. The Parties acknowledge and agree that such courses of action may include (without limitation) the collective sale by the Parties of all or a portion of the Lender Claims, or the exercise of rights attendant to the First Lien Obligations under the First Lien Credit Agreement. Notwithstanding the foregoing, no Party shall be required to consent to or approve, or be deemed to have consented to or approved any particular course of action by virtue of such Party's execution of

[1] "First Lien Credit Agreement" means the Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement dated as of March 30, 2007 and amended and restated as of May 15, 2007, and as further amended, modified or supplemented through April 17, 2008 (including, without limitation, as set forth in Amendment No. 3 to Credit Agreement and Consent dated as of April 17, 2008), by and among Allied Holdings, Inc. and Allied Systems, Ltd. (L.P.), as Borrowers, certain Subsidiaries of Borrowers, as Subsidiary Guarantors, various Lenders, Goldman Sachs Credit Partners L.P., as Lead Arranger and Syndication Agent, and The CIT Group/Business Credit, Inc. ("CIT"), as Administrative Agent and Collateral Agent.

"Second Lien Credit Agreement" means the Second Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement dated as of May 15, 2007 (as amended, modified or supplemented from time to time), by and among Allied Holdings, Inc. and Allied Systems, Ltd. (L.P.), as Borrowers, certain Subsidiaries of Borrowers, as Subsidiary Guarantors, various Lenders, and Goldman Sachs Credit Partners L.P., as Lead Arranger and Syndication Agent, Administrative Agent and Collateral Agent .

The First Lien Credit Agreement and the Second Lien Credit Agreement are collectively referred to herein as the "Credit Agreements."

Capitalized terms used but not specifically defined herein shall have the meanings ascribed to them in the First Lien Credit Agreement.

**FOR SETTLEMENT PURPOSES ONLY**
**NOT ADMISSIBLE FOR ANY PURPOSE**

**SRZ DRAFT {DATE}**

this Agreement. Such consent or approval to any course of action shall be given or withheld in each Party's sole discretion.

2. Transfer of Lender Claims. (a) For so long as this Agreement is in effect, except as specifically set forth below in this Paragraph 2, no Party shall (i) grant any proxies to any person in connection with its Lender Claims except as permitted by this Agreement and otherwise consistent with the terms hereof, or (ii) sell, transfer, assign, pledge (if not currently pledged), further pledge (if currently pledged), encumber (if not currently encumbered), further encumber (if currently encumbered) or otherwise dispose of its Lender Claims, except (x) if the Selling Party (as defined below) is Yucaipa, in accordance with clause (b) or (c) of this Paragraph 2, or (y) if the Selling Party is Black Diamond or Spectrum, either (A) in accordance with clause (b) of this Paragraph 2, or (B) to a party that agrees in writing to assume such Party's Lender Claim, and to be subject to the terms and conditions of this Agreement. Subject to Paragraph 3 hereof, this Agreement shall in no way be construed to preclude any Party from acquiring additional Lender Claims, provided that any such Lender Claim so acquired shall thereafter be subject to this Agreement.

(b) Notwithstanding the foregoing, a Party (a "Selling Party") may sell, transfer or otherwise dispose of its Lender Claims to any affiliate, or to one or more funds, managed accounts or entities that are under common management or control with the Selling Party (in which case such Lender Claims shall remain subject to the terms of this Agreement); or

(c) Yucaipa may sell, transfer, or otherwise dispose of its Lender Claims, to any third party so long as:

(i) prior to such sale, transfer or disposition, such Selling Party shall have offered to sell its Lender Claims to the other Parties hereto pursuant to a written notice setting forth the terms and conditions on which Yucaipa is prepared to sell its Lender Claims (including price) (an "Offer"). The non-selling Parties shall have five (5) business days (the "Offer Period") to accept the Offer in writing and to execute a binding commitment to purchase such Lender Claims. If the Offer is not timely accepted in writing and a binding commitment timely executed, subject to compliance with clause (ii) of this Paragraph 2(c), Yucaipa shall be entitled to sell, transfer or otherwise dispose of its Lender Claims to any third party free and clear of any obligations set forth in this Agreement on terms and conditions no less favorable to Yucaipa than those set forth in the Offer. If Yucaipa does not enter into a binding commitment for the sale, transfer or disposition of its Lender Claims within thirty (30) days after the expiration of the Offer Period, prior to any sale, transfer or disposition thereafter Yucaipa must extend a new Offer to the other Parties hereto in accordance with this Paragraph 2(c); and

(ii) if the Offer of Yucaipa is not timely accepted by one or more non-selling Parties and Yucaipa determines to sell, transfer or otherwise dispose of its Lender Claims to a third party, in connection with such sale, transfer or other disposition the proposed third party purchaser must agree in writing to include in such sale, transfer or other disposition of the Yucaipa's Lender Claims all of the Lender Claims of all other Parties hereto on identical terms and conditions. In furtherance thereof, Yucaipa shall cause such third party purchaser shall make an offer in writing to each non-selling Party, and such non-selling Parties shall have five (5) business days to accept the offer in writing and to execute a binding commitment to sell its Lender Claims.

(d) Any sale, transfer or other disposition by a Party of all or a portion of its Lender Claims that is not in compliance with the terms of this Agreement shall be void ab initio.

3. Purchase of Lender Claims. Yucaipa (or any affiliate of any Yucaipa) may not acquire additional Lender Claims without written consent of the other Parties. If Yucaipa (or any affiliate of any Yucaipa) is offered the opportunity to acquire (directly or indirectly), any additional Lender Claims (an "Additional Claim Purchase"), Yucaipa shall (or, as applicable, shall cause its affiliate to) notify each of the other Parties hereto about the opportunity to acquire such Lender Claims no event later than five (5) business days following receipt of such offer. .

4. Equal and Ratable Sharing. (a) Yucaipa agrees that it will not, and will not cause, solicit or induce any other Person to, directly or indirectly, propose or formulate, or engage in discussions or negotiations with respect to the proposal or formulation of, any transaction (including, without limitation, any sale of Lender Claims, the sale of any assets or equity securities of any Borrower or any Guarantor, or any restructuring of any Borrower or Guarantor under the provisions of the Bankruptcy Code or otherwise; any such transaction, a "Transaction") if such Transaction does not provide that each Party that owns or controls (or purports to own or control) First Lien Obligations or Second Lien Obligations, as applicable, will receive (or be given an entitlement to receive) Identical Consideration (unless a Party agrees in writing to accept consideration that, in form or amount, is less favorable than the receipt of Identical Consideration). For purposes of this Agreement, the term "Identical Consideration" shall mean (i) the same aggregate percentage recovery, and (ii) the same form and mix of consideration. For the avoidance of doubt, and by way of example, if any Party were to receive consideration on account of First Lien Obligations held by such Party comprised of (x) 25% in cash, (y) 50% in new notes, and (z) 25% in new equity securities, each other Party hereto holding First Lien Obligations would be required to receive consideration on account of its First Lien Obligations comprised of (A) 25% in cash, (B) 50% in the same new notes, and (C) 25% in the same new equity securities.

**FOR SETTLEMENT PURPOSES ONLY**
**NOT ADMISSIBLE FOR ANY PURPOSE**

**SRZ DRAFT {DATE}**

(b) Yucaipa agrees that if it receives any consideration on account of the sale of (or sale of a participation in) its First Lien Obligations or Second Lien Obligations, as applicable of a value that is greater than the consideration received by any other Party in respect of the sale of (or sale of a participation in) such Party's First Lien Obligations or Second Lien Obligations as applicable (other than a circumstance resulting from a Party's determination not to accept an offer pursuant to Paragraph 2(c)(ii) hereof), then Yucaipa shall (i) notify each of the other Parties hereto holding First Lien Obligations or Second Lien Obligations, as applicable, and (ii) apply a portion of the consideration so received to purchase participations from each other Party holding First Lien Obligations or Second Lien Obligations, as applicable, so that after giving effect thereto, each Party shall have received on account of its First Lien Obligations or Second Lien Obligations, as applicable, Identical Consideration.

5. Communication with Jack Cooper Transport, Inc. and Other Potential Purchasers of Lender Claims. Each Party agrees to exercise reasonable best efforts to execute an amendment to its respective non-disclosure agreement (each an "NDA Amendment") with Jack Cooper Transport, Inc, or any affiliate, agent, employee, officer or director thereof (collectively, the "JCT Entities") to permit the Parties to disclose to each other information regarding the potential purchase and sale of Lender Claims to the JCT Entities. Each Party agrees to disclose to all other Parties all communications (including copies of any written communications, including term sheets, as well as the substance of any oral communications) between the Party and either (a) subject to the execution of the NDA Amendments to the extent they are necessary to allow such disclosure, the JCT entities, or (b) any other Person who offers to purchase, or expresses and interest in purchasing, any Lender Claims or engaging in any other Transaction. Such disclosure shall be made promptly and within a reasonable period of time after such communication in accordance with the Notice provisions below.

6. Proposals to Offer Lender Claims for Sale. The Parties hereby agree to cooperate in the formulation and negotiation of any offer, proposal, term sheet or similar arrangement providing for the sale, transfer, or other disposition to one or more third parties of all or substantially all of the Lender Claims. The Parties hereby agree to formulate and submit to the JCT Entities for consideration an offer to sell, transfer and otherwise dispose to the JCT Entities all of the Lenders Claims for consideration having a value equal to 107% of the principal amount of First Lien Obligations owned or controlled (or purported to be owned or controlled) by the Parties (it being understood that no portion of such consideration shall be attributed to the Second Lien Obligations).

7. Acknowledgement of Priorities. The Parties hereto acknowledge and agree that no payment or distribution shall be made on account of Second Lien Obligations, including without limitation, in connection with a sale, transfer or other disposition of Lender Claims, without the prior consent of each Party owning First Lien Obligations.

8. Confidentiality.

(a) Each Party agrees that, without obtaining the prior approval of each other Party (such approval not to be unreasonably withheld or delayed), or except as may be

**FOR SETTLEMENT PURPOSES ONLY**
**NOT ADMISSIBLE FOR ANY PURPOSE**

**SRZ DRAFT {DATE}**

required by applicable law or regulation or by relevant legal, administrative, or regulatory authorities or otherwise in connection with any judicial, regulatory or administrative proceeding or investigation, no Party will (i) issue a press release or other public statement relating to this Agreement, or any matters related thereto, or (ii) otherwise disclose to any third party (other than each Party's principals, employees, members, partners, funding sources, attorneys, auditors, professional advisors, limited partners or affiliates who need to know) any non-public information regarding the Strategies, or disclose any of the terms of this Agreement, without, in each case, the prior written consent of each other Party.

(b) The Parties agree that this Agreement and any discussions pursuant hereto shall be subject to Federal Rule of Evidence 408 and any state law equivalent. This Agreement and all negotiations relating hereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms. Each Party also agrees that no Party will seek discovery of this Agreement, or any matters related thereto, either by document demand or document request, whether formal or informal, made at deposition, hearing, court conference, trial or otherwise, or by interrogatory. Moreover, no questions regarding this Agreement or any matters related thereto shall be asked during any deposition, hearing, court conference or trial, nor shall any reference be made by any Party to this Agreement or the Strategies during any deposition, hearing court conference or trial or in any pleadings, briefs, memoranda of law, affidavits or papers submitted to any court or in any expert opinions, expert reports or expert testimony.

9. No Waiver. Nothing herein shall be construed as a waiver by any Party of any or all of such Party's rights and claims, and the Parties expressly reserve any and all of their respective rights and claims.

10. Reservation of Rights. Except as expressly provided in this Agreement, nothing herein is intended to, or does, in any manner, waive, limit, impair or restrict the ability of each of the Parties hereto to protect and preserve their rights, remedies, and interests. Except as expressly set forth herein, nothing herein shall be deemed an admission of any kind. If the transactions contemplated herein are not consummated, or if this Agreement is terminated for any reason, the Parties hereto fully reserve any and all of their rights, remedies, and interests.

11. Litigation Standstill.

(a) New York Action. The Parties mutually agree to adjourn the oral argument scheduled for May 30, 2012 at 11:00 a.m. in the New York Action,[2] until June 30, 2012 or as soon thereafter as such oral argument can be heard by the Court.

(b) Involuntary Bankruptcy Case. During the period from the date of this Agreement through (a) the earlier of (a) June 15, 2012, or (b) the date on which Black Diamond and Spectrum receive a notice from the Borrowers and Guarantors of their intent ot

---

[2] *BDCM Opportunity Fund II, LP et al. v. Yucaipa American Alliance Fund I L.P. et al*, Index No. 650150/2012, Supreme Court of the State of New York, County of New York (the "New York Action").

commence a case or proceeding under the Bankruptcy Code, pursuant to clause (c)(ii) at this Paragraph 11. Black Diamond and Spectrum agree not to initiate any case or proceeding under the Bankruptcy Code against the Borrowers or Guarantors,

(c) Voluntary Bankruptcy Case. (i) Yucaipa agrees it will not authorize or cause (and will direct any member of the Board of Directors approved or appointed by Yucaipa not to authorize or cause) the Borrowers or Guarantors to commence any case or proceeding under the Bankruptcy Code; (ii) Each Borrower and Guarantor hereby agrees that it will not commence any case or proceeding under the Bankruptcy Code except as may be required in the exercise of its fiduciary duties, provided that such Borrower or Guarantor shall provide Black Diamond and Spectrum not less than two (2) business days written notice prior to the commencement of any such case or proceeding.

12. Representations and Warranties. Each Party represents, warrants and covenants to the other Parties that:

(a) such Party has all requisite power and authority to execute and deliver this Agreement and to perform its obligations under this Agreement and that such Party has duly authorized such execution, delivery and performance;

(b) this Agreement, when executed and delivered by such Party, will constitute a valid and binding agreement of such Party, enforceable against such Party in accordance with its terms,

(c) the execution or delivery by such Party of this Agreement will not violate or be in conflict with (i) any provisions of law or regulation applicable to such Party, (ii) any order of any court or government agency having jurisdiction over such Party, or (iii) any agreement or instrument to which such Party or any of its affiliates is a party or to which such Party or any of its affiliates may be bound;

(d) such Party owns or controls (or purports to own or control), with power to vote, the principal amount of First Lien Obligations and Second Lien Obligations set forth on the signature pages hereto, and has not entered into any agreement to sell, transfer or otherwise dispose of all or any portion of its Lender Claims or any interest therein; and

(e) it shall not take, directly or indirectly, any action that could reasonably be expected to adversely impact the recoveries (either in dollar amount or form) on account of the Lender Claims, or induce or support any other person to do so (including, without limitation, providing any Borrower or Guarantor with any debtor-in-possession financing).

13. Additional Covenants of the Borrowers. Within seven (7) business days of the date of this Agreement, (i) the Borrowers and Guarantors shall be in compliance with all reporting requirements under the First Lien Credit Agreement, including without limitation, Quarterly Fleet Reports, and (ii) shall provide the Parties with a current fleet list. The Borrowers

and Guarantors shall comply on a prospective basis with all reporting requirements set forth in the First Lien Credit Agreement.

14. Expenses. Upon the execution and delivery of this Agreement by all Parties, Yucaipa shall reimburse Black Diamond and Spectrum for all reasonable costs and expenses incurred in connection with the enforcement of their rights and remedies as First Lien Lenders and the preparation and prosecution of the New York Action in an amount not to exceed [$1 million]. Upon such reimbursement, Black Diamond and Spectrum agree to assign, their respective rights, up to the amount reimbursed, under Section 10.2(h) of the First Lien Credit Agreement to Yucaipa.

15. Governing Law; Submission to Jurisdiction; Waiver of Jury Trial; Remedies. This Agreement is governed by the laws of the State of New York, without reference to principles of choice or conflict of laws other than Section 5-1401 of the New York General Obligations Law. Each of the Parties agrees that any legal action or proceeding with respect to this Agreement may be brought in the federal and state courts located in the State of New York, and, by execution and delivery of this Agreement, each Party hereby irrevocably submits itself in respect of its property, generally and unconditionally, to the exclusive jurisdiction of the aforesaid courts in any legal action or proceeding arising out of or relating to this Agreement. Each of the Parties hereby irrevocably waives any objection which it may now or hereafter have to the laying of venue of any of the aforesaid actions or proceedings arising out of or in connection with this Agreement brought in the courts referred to in the preceding sentence. EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES THE RIGHT TO A TRIAL BY JURY IN CONNECTION WITH ANY MATTER ARISING OUT OF OR RELATING TO THIS AGREEMENT. The Parties acknowledge that money damages may not be a sufficient remedy for any breach of this Agreement by any Party. Accordingly, in the event of any such breach or threatened breach, each non-breaching Party, in addition to any other remedies at law or in equity that it may have, shall be entitled, without the requirement of posting a bond or other security, to seek equitable relief, including injunctive relief or specific performance or both.

16. Notices.

(a) All demands, notices, requests, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered by courier service, messenger, telecopy or electronic mail at, or if duly deposited in the U.S. mail, by overnight mail, postage prepaid, return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, to the following Parties:

in the case of Black Diamond, to:

1 Sound Shore Drive, Suite 200
Greenwich, Connecticut 06830

Attention: Richard Ehrlich
Telephone: (203) 552-0888

**FOR SETTLEMENT PURPOSES ONLY**
**NOT ADMISSIBLE FOR ANY PURPOSE**

**SRZ DRAFT {DATE}**

Facsimile: (203) 552-1014
Email: rehrlich@bdcm.com

with a copy (which shall not constitute notice) to:

Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022

Attention: Adam Harris, Esq.
Telephone: (212) 756-2253
Facsimile: (212) 593-5955
Email: adam.harris@srz.com

in the case of Spectrum, to:

1250 Broadway, 19th Floor
New York, New York 10001

Attention: Jeffrey A. Schaffer
Telephone: (212) 687-9555
Facsimile: (212) 983-2322
Email: jschaffer@spectrumgp.com

Attention: Stephen C. Jacobs
Telephone: (212) 687-9555
Facsimile: (212) 983-2322
Email: sjacobs@spectrumgp.com

with a copy (which shall not constitute notice) to:

Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022

Attention: Adam Harris, Esq.
Telephone: (212) 756-2253
Facsimile: (212) 593-5955
Email: adam.harris@srz.com

in the case of Yucaipa, to:

c/o The Yucaipa Companies LLC
9130 W. Sunset Blvd.

**FOR SETTLEMENT PURPOSES ONLY**
**NOT ADMISSIBLE FOR ANY PURPOSE**

**SRZ DRAFT {DATE}**

Los Angeles, CA 90069

Attention: Douglas Teitelbaum
Telephone: 310-789-7200
Facsimile: 310-228-2873
Email: Douglas.Teitelbaum@yucaipaco.com

with a copy (which shall not constitute notice) to:

Kasowitz, Benson, Torres & Friedman LLP
Two Midtown Plaza, Suite 1500
1349 West Peachtree Street, N.W.
Atlanta, GA 30309

Attention: David E. Spalten
Telephone: (404) 260-6080
Facsimile: (404) 260-6081
Email: dspalten@kasowitz.com

in the case of Allied, to:

160 Clairemont Avenue
Suite 200
Decatur, GA 30030

2302 Parklake Drive
Building 15, Suite 600
Atlanta, GA 30345

Attention: Mark Gendregske
Telephone: 404-373-4285
Facsimile: 404-370-4206
Email: Mark.Gendregske@AlliedHoldings.com

with a copy (which shall not constitute notice) to:

Troutman Sanders LLP
600 Peachtree Street, N.E.
Suite 5200
Atlanta, GA 30308

Attention: Hazen Dempster
Telephone: 404.885.3126
Facsimile: 404.962.6544

**FOR SETTLEMENT PURPOSES ONLY**
**NOT ADMISSIBLE FOR ANY PURPOSE**

**SRZ DRAFT {DATE}**

Email: hazen.dempster@troutmansanders.com

(b) All demands, requests, consents, notices and communications shall be deemed to have been given either (i) at the time of actual delivery thereof, or (ii) confirmation of transmission to the recipient. For purposes of this Agreement, the term "business day" means any calendar day other than Saturday, Sunday or any other day on which banking institutions in New York, New York are not required to be open.

17. Amendments; Waivers. (a) No waiver and no amendment of any provision of this Agreement shall be effective unless such waiver or amendment is in writing and signed by the Party against whom it is sought to be enforced, and then such waiver or amendment shall be effective only in the specific instance and for the specific purpose for which given, (b) no failure on the part of any Party hereto to exercise and no delay in exercising, any right hereunder or under any related document shall operate as a waiver thereof by such Party, and (c) any single or partial exercise of any right hereunder or under any other related document shall not preclude any other or further exercise thereof or the exercise of any other right.

18. Binding Agreement Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the Parties and their legal representatives, successors and assigns.

19. Further Assurances. The Parties undertake to use their commercially reasonable efforts to execute, deliver, and perform in good faith any agreements as may be necessary or desirable to accomplish the actions contemplated by this Agreement.

20. Entire Agreement. This Agreement sets forth the entire agreement and understanding among the Parties relating to the subject matter hereof and supersedes all other prior agreements, discussions and documents with respect thereto. No Party shall be bound by any terms, conditions, definitions, warranties, understandings or representations with respect to the subject matter hereof other than as expressly provided for in this Agreement and except as may hereafter by agreed to in a writing signed by such Party.

21. Merger. Each Party confirms that it has not executed this Agreement in reliance on any promise or representation or warranty (not contained herein) by the other Parties concerning the subject matter hereof.

22. Captions and Headings. The captions and headings in this Agreement are for convenience only and (a) are not intended to be full or accurate descriptions of the contents thereof, (b) are not to be deemed to be part of this Agreement, and (c) in no way define, limit, extend or describe the scope or intent of any provisions hereof.

23. Counterparts. This Agreement may be executed in counterparts, each counterpart when so executed and delivered constituting an original, but all such counterparts together shall constitute one and the same instrument.

**FOR SETTLEMENT PURPOSES ONLY**
**NOT ADMISSIBLE FOR ANY PURPOSE**

**SRZ DRAFT {DATE}**

24. Consideration. Each Party hereto acknowledges the receipt and sufficiency of good and valuable consideration in exchange for its agreement to undertake its duties and obligations under this Agreement.

25. Termination. This Agreement shall terminate as to all Parties and be of no further force and effect (except as otherwise set forth herein) on the earliest to occur of the following: (a) the mutual written agreement of all of the Parties, (b) the date on which any Party sells, transfers or otherwise disposes of its Lender Claims in accordance with Paragraph 2(c) of this Agreement, (c) the sale of all or substantially all of the assets of the Borrowers and/or Guarantors, (d) the sale of all or substantially all of the Lender Claims, (e) if the Borrowers and/or Guarantors become debtors under Chapter 11 of the Bankruptcy Code, the earliest to occur of (i) the substantial consummation of a plan of reorganization confirmed in accordance with the requirements of Chapter 11 of the Bankruptcy Code, and (ii) the entry of a final non-appealable order confirming a plan of reorganization.

26. Survival. This Agreement shall be valid, binding and enforceable notwithstanding the commencement of any case under the Bankruptcy Code by or against the Borrowers or Guarantors.

Please acknowledge your agreement to the foregoing by executing this Agreement in the space set forth below, whereupon this Agreement will become a binding contract among the parties hereto.

[SIGNATURES ON FOLLOWING PAGE]

**FOR SETTLEMENT PURPOSES ONLY**
**NOT ADMISSIBLE FOR ANY PURPOSE**

**SRZ DRAFT {DATE}**

**BLACK DIAMOND CLO 2005-1 LTD.**
BLACK DIAMOND CLO 2005-1 ADVISER, L.L.C., as its Collateral Manager

By: ______________________________
Name:
Title:

First Lien Obligations: $________________
Second Lien Obligations: $________________

**BDCM OPPORTUNITY FUND II, L.P.**
BDCM OPPORTUNITY FUND II ADVISER, L.L.C., as its Investment Manager

By: ______________________________
Name:
Title:

First Lien Obligations: $________________
Second Lien Obligations: $________________

**SPECTRUM INVESTMENT PARTNERS, L.P.**

By: ______________________________
Name:
Title:

First Lien Obligations: $________________
Second Lien Obligations: $________________

**FOR SETTLEMENT PURPOSES ONLY**
**NOT ADMISSIBLE FOR ANY PURPOSE**

**SRZ DRAFT {DATE}**

**YUCAIPA AMERICAN ALLIANCE FUND I, LP,**
a Delaware limited partnership

By: ______________________________
Name:
Title:

**YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, LP,**
a Delaware limited partnership

By: ______________________________
Name:
Title:

First Lien Obligations: $________________
Second Lien Obligations: $________________

FOR THE PURPOSES OF PARAGRAPHS 10 AND 13:

**ALLIED SYSTEMS HOLDINGS, INC. on behalf of itself and each other Borrower and Guarantor.**

By: ______________________________
Name:
Title: