# Exhibit 73

DRAFT

## MINUTES OF SPECIAL MEETING OF THE
## BOARD OF DIRECTORS OF
## ALLIED SYSTEMS HOLDINGS, INC.
### September 23, 2012

A special telephonic meeting of the Board of Directors of Allied Systems Holdings, Inc. ("Allied" or the "Company") was held on September 23, 2012, pursuant to notice given to all members. Present were Brian Cullen, Ira Tochner, Derex Walker, Mark Gendregske, and Jeff Pelletier. Also in attendance by invitation of the Board were Jeff Kelley of Troutman Sanders; Stephanie Bond of Yucaipa; Mark Collins of Richards, Layton and Finger; and Scott Macaulay and John Blount of the Company. Mr. Blount acted as Secretary of the meeting.



DRAFT



Mr. Cullen then advised the Board that he and Mr. Gendregske had spoken with the advisors prior to the Board meeting, resulting in him supporting the proposed course of action.



Mr. Walker made a motion to turn the issue over to the Special Committee, Mr. Pelletier seconded the motion, and it was unanimously approved.

Mr. Blount then provided the Board with an update on the Company's efforts to reach a conclusion on its retention of a financial advisor. He reminded

2

ALLIED000153

DRAFT

the Board that it had approved the retention of Rothschild, but that the bankruptcy judge had ruled that Rothschild's fee should be subject to 330 (rather than 328) in the event of a credit bid or sale to JCT. The judge said, however, that if Rothschild, the Company, the petitioning creditors, and the unsecured creditors committee ("UCC") could agree to some other arrangement, he would accept it. After extensive discussions, Rothschild, the petitioning creditors and the UCC appeared willing to accept an arrangement in which all aspects of the retention agreement remained as written except that in the event of a credit bid contested by the petitioning creditors the Rothschild fee would be an amount to be negotiated in good faith, but not to exceed $2 million.

Mr. Walker stated that he found the concept acceptable but was concerned about some of the specifics. He noted that in a sale to JCT Rothschild would get $1.75 million under section 328, but under a contested credit bid Rothschild would get $0 to $2 million. Mr. Walker opined that Rothschild would look at the contested credit bid as paying nothing so our financial advisor might not provide the Company full support in that event. He also suggested that the structure might color the advice the Company would receive from Rothschild because of the apparent disincentive associated with a contested credit bid. He recommended that the Rothschild fee be renegotiated to provide a minimum of $1 million and a maximum of $2 million on any credit bid (not just a contested credit bid).



Mr. Cullen stated that he was not concerned about the incentive issue. He said that the Company canvassed the financial advisors and it was successful in getting Rothschild to agree to compromise its terms, but the judge's order left the Company in a situation where the financial advisor was going to have some unusual incentives should it choose not to behave in a professional manner. He said that the Company needed to go down the path of retaining Rothschild. Mr. Cullen felt that there were few options in the bankruptcy: (1) a sale to JCT, which he did not support in the current form, and (2) a credit bid. In the event of a credit bid, the company would need a financial advisor on the issues of valuation and possibly equitable subordination. The banker the Company needed at the time, according to Mr. Cullen, was the banker running the deal. He felt that if the case resulted in a contested credit bid and for some reason Rothschild failed to do its job properly, then worst case the Company could fire Rothschild and get an expert witness to finish. Finally, he said the Company needed to get going on the issue.

After an extended discussion, Mr. Gendregske stated that he wanted the financial advisor issue resolved before meeting with Ford on September 26. Mr.

ALLIED000154

DRAFT

Cullen agreed that it should be resolved ASAP, and Mr. Blount said that the Company would try to negotiate the best possible deal with Rothschild, but should then quickly get Rothschild back to work.

The meeting was then briefly adjourned for the Special Committee to meet and discuss the adversary proceeding issue. When the meeting reconvened, Mr. Cullen advised the Board that the Special Committee unanimously recommended that the Company pursue the adversary proceeding. He made a motion accordingly, which was seconded by Mr. Gendregske. The motion passed unanimously, with Mr. Tochner, Mr. Walker and Mr. Pelletier abstaining.

There being no further business to be discussed at the meeting, the meeting was adjourned.

Respectfully submitted,


John F. Blount, Secretary

4

ALLIED000155