# Exhibit 76

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK : CIVIL DIV. : PART 53
----------------------------------------X
BDCM OPPORTUNITY FUND II, LP, BLACK      :
DIAMOND CLO 2005-1 LTD, and SPECTRUM     :
INVESTMENT PARTNERS, L.P.,               :
                                         :
                         Plaintiffs,     :
                                         :
            - against -                  : Index No.
                                         : 650150/12
YUCAIPA AMERICAN ALLIANCE FUND I, LP,    :
and YUCAIPA AMERICAN ALLIANCE (PARALLEL) :
FUND I, LP,                              :
                                         :
                         Defendants.     :
----------------------------------------X MOTION

                        60 Centre Street
                        New York, New York
                        November 19, 2012

B E F O R E :
            HON. CHARLES E. RAMOS,
                              Justice

A P P E A R A N C E S :

            SCHULTE ROTH & ZABEL, LLP
            Attorneys for Plaintiffs
                919 Third Avenue
                New York, New York 10022
            BY:  ROBERT J. WARD, ESQ.
                 JUSTIN A. MENDELSOHN, ESQ.
                 ADAM C. HARRIS, ESQ.


            KASOWITZ, BENSON,
                TORRES & FRIEDMAN, LLP
            Attorneys for Defendants
                1633 Broadway
                New York, N.Y.  10019-6799
            BY:  MARC E. KASOWITZ, ESQ.
                 DAVID E. SPALTEN, ESQ.
                 DAVID E. ROSS, ESQ.
                 ADAM K. GRANT, ESQ.

            _____
              ROBERT PORTAS, R.P.R., C.R.R.
                SENIOR COURT REPORTER

PROCEEDINGS                          2

1          THE COURT:  Good morning.

2          MR. WARD:  Good morning, Your Honor.

3          THE COURT:  If necessary you'll use the lecturn.

4     It's up to the court reporter.  It's easier for him to

5     hear.

6          MR. WARD:  All right, Your Honor, I'll move to the

7     lecturn.

8          THE COURT:  Okay.  You may now commence to confuse

9     me.

10         MR. WARD:  Thank you, Your Honor.  I hope to

11    unconfuse you as we go through the argument.

12         Your Honor, I'm Robert Ward for Schulte, Roth &

13    Zabel, on behalf plaintiffs.  We're the movant on this

14    motion for summary judgment, Your Honor.  This is a

15    straight forward action asserting one cause of action

16    that only seeks one remedy, a declaration as to the

17    meaning of certain contract language.

18         The relief sought in this summary judgment

19    motion is that the purported fourth amendment was not and

20    never was effective and that the defendants in this case

21    are not and may not act as the requisite lenders in

22    connection with the debt of a company called Allied.

23         We were before Your Honor on a prior motion to

24    dismiss, you may remember.

25         As a result, Your Honor, this case presents a

                    Robert Portas, RPR, CRR

PROCEEDINGS                                    3

1    pure question of contract construction relating to the

2    effectiveness of the amendment -- fourth amendment to the

3    credit agreement.  The question can be answered upon the

4    unambiguous terms of the agreements, and no discovery of

5    the extrinsic evidence is necessary.  The case law is not

6    in dispute.  This is a straight, simple, teed-up contract

7    construction case declaratory judgment action, Your

8    Honor.

9              The issue before this Court, Your Honor, is

10   whether under the plain terms of the credit agreement

11   whether the purported fourth amendment had, quote, the

12   effect of, unquote, amending the definition of "Requisite

13   lender" within the meaning of Section 10.5B of the credit

14   agreement, thereby requiring the consent of all affected

15   lenders.

16             Your Honor, my clients are among those affected

17   lenders, and their consent was never obtained.

18             As Your Honor is aware, where the intention of

19   the parties may be gathered from the four corners of an

20   instrument, the interpretation of the contract is a

21   question of law, no trial is necessary, summary judgment

22   is appropriate.  On the application -- on an application

23   to construe language in a contract such as this, Your

24   Honor, the Court is not to look to extrinsic evidence to

25   create an ambiguity, rather the Court is to look to the

PROCEEDINGS                    4

1   contract itself to determine if there is an ambiguity.

2            That's clear case law, Court of Appeals 2001

3   Reese versus Financial performance [phonetic].

4            Rather than limit themselves -- the defendants

5   here, Your Honor, rather than limiting themselves to the

6   language of the contracts submit substantial amounts of

7   extrinsic evidence.  They're putting the cart before the

8   horse.  What Your Honor's task and duty is is to look at

9   the contractual language first and see if there's any

10   ambiguity; if so, then look to extrinsic evidence.

11            We believe the contract is unambiguous and if

12   Your Honor determines the contract, in fact, is ambiguous

13   you'll deny the motion and your decision clearly will

14   give us guidance as to what discovery to take thereby

15   saving a whole lot of money.  Your decision will give us

16   guidance as to what extrinsic evidence to look to, and,

17   as a result, we will be guided by Your Honor's decision

18   and as a result this motion is timely.

19            THE COURT:  All right.  What paragraph of the

20   credit agreement controls?

21            MR. WARD:  Your Honor, 10.5B.  That's what

22   controls the amendment, Your Honor.

23            THE COURT:  What page is that?

24            MR. WARD:  And it's 10.5B of the credit agreement,

25   which is Exhibit 1 to the Urlich [phonetic] affidavit.

                  Robert Portas, RPR, CRR

PROCEEDINGS                                5

1    THE COURT:  10.05 or 10.5?

2         MR. WARD:  10.5, Your Honor.  It's on Page 160.

3         What's interesting about this provision, Your

4    Honor, I'll jump ahead, is it's a little bit unusual in

5    the sense that -- it's on Page 160, Your Honor.  10.5B.

6    "Affected --"

7         THE COURT:  Starts on 159.

8         MR. WARD:  Okay.  Well, 10.5 starts on 159.  It's

9    10.5B that's relevant, Your Honor.

10        In that provision, Your Honor, it says, as you

11   can see, "Without the written consent of each lender,

12   other than a defaulting lender, that would be affected

13   thereby, no amendment, modification, termination or

14   consent shall be effective.  If the effect thereof

15   would..."

16        And then it's Roman-ette IX, Your Honor.  At the

17   bottom of that page, Your Honor.

18        "...amend the definition of 'requisite lender.'"

19        And that's what happened here by the fourth

20   amendment, Your Honor.

21        Your Honor, I know that you've read the papers.

22   Should I give you a little background on the transaction?

23        THE COURT:  No.  That's not particularly important

24   right now.

25        Let me hear from the other side and see where
                    Robert Portas, RPR, CRR

PROCEEDINGS                     6

1    we're going.  Maybe we have it.

2              MR. KASOWITZ:  Thanks, Your Honor.  Marc Kasowitz

3    for the defendants.

4              Before we get to the contract, there's a gating

5    issue I think that counsel hasn't mentioned, and the

6    gating issue really is--and the plaintiffs have not moved

7    for summary judgment with respect to this--the question

8    of whether or not there are triable issues of fact with

9    respect to the defendant's affirmative defenses.  We have

10   affirmative defenses based on res judicata, waiver,

11   estoppel.  Your Honor will recall that you denied our

12   motion, our 3211, on -- based on res judicata, but Your

13   Honor, and it was very clear from the transcript at the

14   hearing, Your Honor said, "Look, we haven't had any

15   discovery here yet, we haven't fleshed out any of these

16   issues, and I will not find as a matter of law that there

17   is a res judicata effect from the Georgia action, but

18   there may be a valid defense here."

19             And, in fact, Your Honor, with respect to that

20   Georgia action, we have admissions from the plaintiffs

21   that the subject matter of the Georgia action is

22   precisely the same as the action that's been brought

23   here.  We have admissions from them that there is -- that

24   there was, you know, no issue about that whatsoever.  The

25   only issue that defendants have with respect to the

PROCEEDINGS                              7

1    Georgia action is that they say that CI--- that CIT,

2    which had been the defendant in that action and which had

3    asserted counterclaims against Yucaipa, that CIT

4    really -- they were really not in privy with CIT.  They

5    admit in certain places, Your Honor, that -- that CIT was

6    their agent, was there administrative agent.  We have

7    admissions, Your Honor, from the client itself, from

8    Mr. Erlich himself in which he said that CIT was

9    defending the plaintiffs in that Georgia action as their

10   agent.

11        Now, they changed their position when the motion

12   to dismiss was made, I think there's a statement, I'll

13   find it here, where the plaintiffs questioned whether CIT

14   ever was their agent.  Quote -- this is at Page 19 of --

15   in their motion to dismiss:  Quote, "Indeed, whether CIT

16   ever acted as an agent for plaintiffs in the Georgia

17   action is in doubt," closed quote.

18        But that's not what they said in the complaint

19   in this case.  And at Paragraph 10 of the -- in the

20   complaint in this case, "At first, consistent with its

21   obligations to the lenders as administrative agent, CIT

22   refused to acknowledge the validity of the purported

23   fourth amendment of Yucaipa's status as alleged requisite

24   lenders."

25        "Consistent with its obligations to the lenders

                        Robert Portas, RPR, CRR

PROCEEDINGS                    8

1    as administrative agent."  And it's not what Mr. Erlich

2    wrote in his affidavit opposing our extension of time to

3    respond to the complaint in the first place.  What he

4    wrote there was, "Notwithstanding what CIT had admitted

5    in its counterclaim was its obligation to act for the

6    benefit of all lenders, including plaintiffs," CIT now

7    has acquiesced in Yucaipa's, what they called a flagrant

8    breach.

9              So they want it really both ways, Your Honor.

10   When it suited their purposes that CIT was defending them

11   in the Georgia action, was asserting counterclaims in its

12   representative capacity on their behalf, that was fine.

13   But then when it came to pass that CIT had made a

14   determination as a lender and as an administrative agent

15   and as an other agent in its fiduciary capacity to these

16   plaintiffs to reach a settlement of the case, that these

17   plaintiffs apparently disagreed with, then it wasn't an

18   agent anymore.

19              Clear issues of fact --

20              THE COURT:  But the authority of an agent is

21   obviously a matter of agreement.  Particularly by the

22   principal.

23              MR. KASOWITZ:  Well -- but, Your Honor --

24              THE COURT:  Not after the fact.  I understand

25   that.  But, you know -- now, are we teeing up that there

                    Robert Portas, RPR, CRR

PROCEEDINGS                              9

1    could be agency questions here as well?

2              MR. KASOWITZ:  Absolutely, Your Honor.  But there

3    hasn't been an ounce of discovery on this yet.  What

4    happened was after the motion to dismiss was denied, then

5    there was a period of time where there was some

6    negotiations and the like; Your Honor said after the

7    conference that there would be a scheduling conference

8    called.  We waited for the scheduling conference, we didn't

9    want to run up needless expense and the like if there was

10   going to be a settlement.  Ultimately there was no

11   settlement, and then three or four days after the

12   settlement talks broke down, the plaintiffs here served a

13   motion for summary judgment not on these affirmative

14   defenses but on this argument about the contract being

15   clear from the four corners of it, which I'll address in a

16   second.

17             So we have so many statements from these -- from

18   these -- from these plaintiffs, from their lawyer, from

19   the principals, in their pleadings, sworn statements as

20   well, that CIT was acting as their agent.  If CIT was

21   acting as their agent, then there would be a question of

22   whether or not the final judgment--and there was a final

23   judgment on consent in the Georgia -- in the Georgia

24   case--whether or not that bars this action from the

25   getgo.  So that's the gating issue, Your Honor.  And

                    Robert Portas, RPR, CRR

PROCEEDINGS                    10

1    that's an issue upon which we need discovery.

2                THE COURT:  Was CIT acting on behalf of the

3    plaintiffs in that action?

4                MR. KASOWITZ:  Yes, Your Honor.

5                MR. WARD:  Your Honor, I don't want to interrupt

6    Mr. Kasowitz --

7                MR. KASOWITZ:  Excuse me.

8                MR. WARD:  -- since he said it's a gated issue,

9    and instead of dealing with our claim and our motion he's

10   dealing with the affirmative defense, and as a result has

11   kind of flipped the case, what he's done on the affirmative

12   defense -- and I apologize for interfering.  Could I

13   address the affirmative defenses first, because they're

14   easy to resolve, and then we can get back to our actual

15   motion?  These affirmative defenses are not the motion and

16   these affirmative defenses don't create any extrinsic

17   issues of fact, because there are governing documents that

18   resolve the res judicata issue and the waiver issue.  I'm

19   happy to have Mr. Kasowitz --

20               THE COURT:  Wait until he finishes and we'll come

21   back to it.

22               MR. WARD:  Thank you.

23               MR. KASOWITZ:  So, Your Honor --

24               THE COURT:  So where are you -- we're arguing both

25   of these issues.  Okay.

Robert Portas, RPR, CRR

1      MR. KASOWITZ:  Only because we never get --

2   counsel says that we've put the cart before the horse, we

3   say that --

4           THE COURT:  You're not supposed to agree with each

5   other.

6           MR. KASOWITZ:  We don't agree with each other.

7   But you really never -- you never get to an argument

8   about --

9           THE COURT:  You'll never get to the argument about

10  the language in this contract until we start talking about

11  it.  So we've got two issues at least to talk about.

12          MR. KASOWITZ:  So let's deal with the language in

13  the contract, Your Honor.

14          THE COURT:  Yes.

15          MR. KASOWITZ:  So it's clear that we need

16  discovery on the issue of the affirmative defenses.

17          As to the four corners of the agreement:  I

18  think it's ironic, Your Honor, that the -- that the

19  plaintiffs are arguing that the four corners of the

20  agreement support their argument.  Their argument is that

21  there was an amendment to -- there was an amendment to

22  the definition of the term "Term Loan Exposure" in the

23  fourth amendment, and that --

24          THE COURT:  I thought they why complaining about

25  that there was an amendment of the definition of "Requisite

Robert Portas, RPR, CRR

PROCEEDINGS                    12

1    Lender."

2            MR. KASOWITZ:  Well, but there was not amendment

3    to definition of "Requisite Lender"?

4            THE COURT:  You guys can't agree on anything.

5            MR. KASOWITZ:  There was no -- there was no

6    amendment to the definition of "Requisite Lender," Your

7    Honor.  I represent that to the Court.  They will admit

8    that that is true.  There was no written amendment to the

9    term "Requisite Lender."

10           THE COURT:  You just won your motion.

11           MR. WARD:  No, no.  We disagree.

12           MR. KASOWITZ:  What they're going to do -- what

13   they're going to do is get up and say that because there

14   was an amendment to the -- to the term "Term Loan

15   Exposure," that necessarily meant that there had to have

16   been some amendment to the term "Requisite Lender," even

17   though there wasn't and that as a result of that there

18   should have been the consent of all the lenders obtained by

19   the requisite -- by the requisite lender before he

20   proceeded with the amendment.

21           THE COURT:  Which exhibit is the offensive

22   amendment?

23           MR. KASOWITZ:  Pardon me, Your Honor?

24           THE COURT:  Which exhibit is the offensive

25   amendment?  Is it 3 or 4?

                    Robert Portas, RPR, CRR

1      MR. KASOWITZ:  It's the fourth one.  But the third

2   one bears on this, too, Your Honor.  Because there also was

3   an amendment -- let's deal --

4           MR. WARD:  It's Exhibit 6, Your Honor.

5           MR. KASOWITZ:  We will deal with one at a time.

6           There was also an amendment to the term "Term

7   Loan Exposure" in the third as well.  There was not

8   the -- there was no consent -- there was no consent

9   obtained of all of the lenders at that time either.  The

10   plaintiffs did not -- whether they agreed with that or

11   didn't agree with that, they never took the position that

12   the failure to have obtained the consent of all the

13   lenders for the third amendment rendered that amendment

14   invalid.  They come to claim with respect to the fourth

15   amendment that because there was an amendment to the term

16   "Term Loan Exposure," there was no amendment to

17   "Requisite Lenders," not at all, because there was a --

18   an amendment to "Term Loan Exposure," that had some kind

19   of effect on the -- on the term "Requisite Lenders."

20           But, Your Honor, just so we're very, very clear,

21   Your Honor just looked at and you correctly identified

22   that amendments and waivers under the credit agreement

23   are 10.5A and B.

24           Under A the requisite lender gets to make

25   determinations about amendments itself without seeking or

                     Robert Portas, RPR, CRR

PROCEEDINGS                    14

1    soliciting the consent of all of the lenders.

2          Under B, B is very, very specific, and it talks

3    about the circumstances in which the consent of all of

4    the lenders, all of the affected lenders needs to be

5    obtained.

6          THE COURT:  Now I'm not -- now I'm not following

7    this.  Hang on.

8          You say A does not require requisite lender's

9    consent?

10         MR. KASOWITZ:  Correct.  No, no, only the

11   requisite lender's consent.

12         THE COURT:  Okay.

13         MR. KASOWITZ:  The requisite lender is the --

14         THE COURT:  And B is the affected lenders.

15         MR. KASOWITZ:  Correct, Your Honor.

16         THE COURT:  Okay.

17         MR. KASOWITZ:  The requisite lender is the lender

18   that on an operational basis runs things.  So -- so you

19   don't need consent under A.  In the specific circumstances

20   enumerated under B, which are eleven, eleven circumstances,

21   it's on Page 160 and 161.

22         THE COURT:  Wait a minute.  Under A, the agent,

23   with the consent of each borrower only can modify or

24   supplement the agreement, cure any ambiguity.

25         MR. KASOWITZ:  That's separate.
                    Robert Portas, RPR, CRR

PROCEEDINGS                    15

1    THE COURT:  A requires consent.

2    MR. KASOWITZ:  No, Your Honor.  That's dealing

3 only with -- that's dealing with something else.  It's the

4 first part, "Subject to the additional requirements of

5 Sections 10.5B and 10.5C, no amendment, modification,

6 termination or waiver of any provision of the credit

7 documents or consent to any departure by any credit party

8 therefrom shall in any event be effective without the

9 written concurrence of the requisite lenders."

10    THE COURT:  Right.  Okay.

11    MR. KASOWITZ:  Those are the people who own over

12 50 percent of -- of the debt.

13    THE COURT:  And plaintiff's a requisite lender;

14 correct?

15    MR. KASOWITZ:  Plaintiffs are not requisite

16 lenders.

17    THE COURT:  Not.

18    MR. KASOWITZ:  They don't own it.

19    THE COURT:  Only affected lender.

20    MR. KASOWITZ:  That's -- they claim to be affected

21 lenders, but they're not.

22    For the fourth amendment, Your Honor, the

23 requisite lender was ConVest.  And ConVest had

24 transferred -- had entered into an arrangement whereby

25 Yucaipa, which is purchased debt to bring it over

       Robert Portas, RPR, CRR

PROCEEDINGS                          16

1   50 percent had become the requisite lender.

2              The plaintiffs claim that that was invalid

3   because the term -- because the term that I mentioned

4   before, "Term Loan Exposure," had changed.  There was

5   never any change in the definition of "requisite lender."

6              THE COURT:  Plaintiff, what's the language either

7   in -- let's look at Exhibit 4, since that's the --

8              MR. WARD:  Your Honor, I have to backtrack just a

9   second to tell you here's the problem:  If you look at

10  10.5B, it doesn't require that there be an actual change in

11  the definition.  Because if you look at 10.5B but not

12  Roman-ette X but the preface to it, it says, "If the effect

13  thereof would amend the definition of 'Requisite Lender.'"

14             And, Your Honor, if you stay on the credit

15  agreement and look at Page 43, the definition of

16  "Requisite Lender," which we we've been talking about

17  here, that's on Page 41 actually, if you can go to that,

18  Your Honor.

19             THE COURT:  Give me a moment.

20             MR. WARD:  Now, remember, on 10.5B it's not a

21  change to the definition itself, it's a change which has

22  the effect of.

23             THE COURT:  Okay.

24             MR. WARD:  And, Your Honor --

25             MR. KASOWITZ:  I disagree.

                    Robert Portas, RPR, CRR

PROCEEDINGS                    17

1      MR. WARD:  I'm sorry, can we -- I'm sorry, please,

2      Your Honor --

3              MR. KASOWITZ:  I disagree, Your Honor.

4              MR. WARD:  Your Honor, may I continue?

5              THE COURT:  Hang on.

6              Requisite Lenders --

7              MR. WARD:  Requisite lender is on Page 41.

8              THE COURT:  "'Requisite Lenders' means one or more

9      lenders having or holding term loan exposures."

10             MR. WARD:  That's the key term, Your Honor.  And

11     then continue, "Representing more than 50 percent of the

12     sum of," Roman-ette I, "the aggregate term loan exposure."

13             What happened is in the fourth amendment they

14     changed the definition of term loan exposure.  And I have

15     to do a little bit of a sidelight and I'll do it in

16     thirty seconds.

17             THE COURT:  What paragraph on the fourth

18     amendment?

19             MR. WARD:  The paragraph on the fourth amendment,

20     Your Honor.  But we have to go to the third amendment

21     first.

22             THE COURT:  Okay.

23             MR. WARD:  Because there's a third amendment, Your

24     Honor.  Here's what happened:  Your Honor, Yucaipa, who is

25     the client -- the defendant here, was the sponsor of Allied

                    Robert Portas, RPR, CRR

PROCEEDINGS                    18

1    could not be a lender, could not be a requisite lender

2    because it's the senior debt -- a senior equity holder of

3    Allied.  So what happened is they were prevented from

4    taking over the debt for obvious reasons.  If they took

5    over the debt and they controlled the equity, the rest of

6    the debtors would never get paid.

7              THE COURT:  Sure.

8              MR. WARD:  But in the third amendment they were

9    allowed to buy some debt.  But it's what I called neutered

10   debt, Your Honor, because in the third amendment this debt

11   is not allowed to vote.  The definition of "Term Loan

12   Exposure" is amended in the third amendment to say that

13   "Any debt owned by Yucaipa cannot be counted in connection

14   with any voting provision."

15             THE COURT:  All right.

16             MR. WARD:  The definition of "Requisite Lender" is

17   a voting provision, and they could only buy as much as

18   25 percent; they need 50 percent to become the requisite

19   lender.

20             THE COURT:  Right.

21             MR. WARD:  So here's what happened:  In the third

22   amendment my clients were not affected because, although

23   now Yucaipa is allowed to buy debt, it's allowed to buy

24   some debt, it can't use the debt for anything.  That's why

25   I called it neutered.  It can't vote it, it doesn't count

                    Robert Portas, RPR, CRR

PROCEEDINGS                    19

1   for term loan exposure.

2          THE COURT:  No harm no fowl.

3          MR. WARD:  It can't -- now, what happens, though,

4   is in the fourth amendment -- and what happened here is

5   Yucaipa did in two steps what they were prohibited in doing

6   from one step -- and the fourth amendment they took away

7   all those restrictions.  In other words, in the third

8   amendment Yucaipa is allowed to buy debt for the first

9   time, but neutered debt with no right to vote, where the

10  definition of "Term Loan Exposure" is changed to say it

11  doesn't count for the "Requisite Lender" provision.

12         And in the fourth amendment, though, they do a

13  little slight of hand, they take away the provisions that

14  say you can't vote it and they take away the limitation

15  on term loan exposure.

16         And, remember, 10.5B says "The effect thereof."

17  And what's important, Your Honor, is it's not only 10.5A

18  and B, it's also 10.5C.  10.5C requires affected lender

19  consent if the definition is changed.  That's different

20  from 10.5 B.  10.5B goes the extra mile, it says, "If the

21  effect of the amendment is to change the definition."

22  10.5C says "If the definition is changed."

23         As Your Honor knows, under the cannons of

24  construction, you have to give full effect to all the

25  language in an agreement.  10.5B makes the very definite
                    Robert Portas, RPR, CRR

1   point, definitive point, of saying that it's not only if

2   the amendment changes but if it's the amendment has the

3   effect of changing the definition.

4           Now, the definition of "Requisite Lender," which

5   I showed you, Your Honor, on Page 41, contains the term

6   "Term Loan Exposure."  That determines how you become a

7   requisite lender.  Because, if your debt doesn't count,

8   and under the third amendment, Your Honor, Yucaipa's debt

9   didn't count, it was neutered debt.  If your debt doesn't

10  count, you can't become the requisite lender.

11          And, by the way, what is the requisite lender?

12  It's the lender that controls the debt.  There are so

13  many provisions, and we cite them in our brief, where the

14  sole purpose of the requisite lender, Your Honor, is to

15  vote; it's to give consents, such as under 10.5A; it's to

16  act on remedies when there's an event of default.  The

17  requisite lender is the voting entity that controls the

18  debt.

19          So what happened is in the third amendment

20  Yucaipa was given the ability to buy debt, but with no

21  voting restrictions and with a -- with no voting rights

22  and with a restriction on term loan exposure saying,

23  "Your definition of -- term loan exposure does not count

24  for any voting provision."

25          THE COURT:  I got it.  I got to.
                Robert Portas, RPR, CRR

PROCEEDINGS                    21

1          MR. KASOWITZ:  May I, Your Honor?

2          THE COURT:  Defendant, you've got a problem.

3          MR. KASOWITZ:  No we don't, Your Honor.  The

4     reason we don't have a problem here --

5          THE COURT:  You do with me.  Go ahead.

6          MR. KASOWITZ:  Well, the reason we shouldn't have

7     a problem, Your Honor, is because everything that counsel

8     just said about the definition of "Requisite Lender" is

9     untrue.

10         "Requisite Lender" -- the definition of

11    "Requisite" -- First of all, there was no change to the

12    definition of "Term Loan Exposure."  No change in the

13    definition whatsoever.  Nothing that affected it, no

14    change whatsoever.

15         Secondly, Your Honor --

16         THE COURT:  What did the language, then, in 10B

17    "Shall be effective, if the --" that the amendment will not

18    be effective if the effect would amend the definition.  It

19    doesn't say "Amend the definition."  "If the effect would

20    amend the definition of 'Requisite Lender.'"

21         MR. KASOWITZ:  But the effect has to still amend

22    the definition.

23         THE COURT:  Now a requisite lender can be an

24    equity holder.

25         MR. KASOWITZ:  Yes, Your Honor.  But --
                    Robert Portas, RPR, CRR

PROCEEDINGS                    22

1          THE COURT:  That's a big deal.

2          MR. KASOWITZ:  But there was no change in the

3     definition.  There was no change in the definition of

4     "Requisite Lender."

5          THE COURT:  Strike three.  Move on to another

6     subject.  You've just lost that argument.

7          MR. KASOWITZ:  Your Honor, if I could.

8          THE COURT:  Believe me, you've just lost it.

9          MR. KASOWITZ:  If I could, Your Honor?  If I

10    could, please?

11         THE COURT:  Go ahead.

12         MR. KASOWITZ:  The -- the counsel's argument

13    wholly depends on the argument that the power -- that the

14    qualifications for and job of a requisite lender depend on

15    voting.  That's their argument.  It all depends on voting.

16    If you look on Pages 8 through 9 of their brief, they

17    couldn't say it any more clearly, "The rights from which

18    defendants were expressly denied under the third amendment

19    to be disregarded from any provision of this agreement

20    relating to the voting rights of lenders are precisely the

21    types of rights vested in the requisite lenders under the

22    credit agreement; IE, the ability to consent to certain

23    amendments, waivers, et cetera, under Section 10.5B.

24    Without this authority and the voting power to back it up,

25    the requisite lenders would have no ability to perform the

PROCEEDINGS                                    23

1    functions contemplated by the credit agreement.

2         "Defendant's argument that they could be

3    requisite lenders but not vote is thus disingenuous and

4    overly technical.  The entire purpose of being requisite

5    lenders is so you can exercise voting rights associated

6    with more than 50 percent of the debt in respect of

7    waivers, consent rights and the like to be requisite

8    lenders in name only, with no ability to act improperly,

9    elevates form over substance."

10        Your Honor, that is just flat wrong under this

11   credit agreement.  If you look back to -- if you look

12   book to 10B --

13        THE COURT:  Yes.

14        MR. KASOWITZ:  -- back on 10B, when you look at

15   10B you'll see that in 10A there are a whole number of acts

16   that the requisite lenders may take without -- without

17   consulting anyone else.  They make those decisions

18   themselves.

19        With respect to 10B, that's a requirement that

20   others vote but not that the requisite lenders vote.

21   So -- so it's absolutely -- it's very, very clear from --

22        THE COURT:  I'm not following you.  And I think

23   I'm not following you because what you're saying is not

24   logical.

25        MR. KASOWITZ:  It's true, Your Honor.  But it's

Robert Portas, RPR, CRR

PROCEEDINGS                    24

1   true.  The definition of "Voting" has nothing to do with a

2   requisite lender.  We have -- if you look at the powers

3   that --

4            THE COURT:  You've got to be kidding.

5            MR. KASOWITZ:  It has nothing to do with it, Your

6   Honor.  If you look at the powers that the requisite lender

7   has, "The requisite lender instructs the agents to act or

8   refrain from acting."  That's Section 9.3B, Page 152 of the

9   credit agreement.  It has nothing -- it doesn't speak to

10  voting rights at all.  "The requisite lender may control

11  the exercise of remedies during a non-bankruptcy event of

12  default."  That's section 8.1.

13           THE COURT:  Are you saying that they don't have

14  the power to make the amendments, modifications or waivers

15  that the plaintiff's complaining about?  Of course they do.

16           MR. KASOWITZ:  They do have the power to do these

17  things, but it doesn't --

18           THE COURT:  They do that by voting.

19           MR. KASOWITZ:  No, no, this does not involve

20  voting, Your Honor.  I'm going through all of the powers

21  that they have.  The most important power is to instruct

22  the agents to act or refrain from acting.  That has nothing

23  to do with voting, Your Honor.  That's Section 9.3B.  They

24  control the exercise of remedies during a non-bankruptcy

25  event of default.  That's Section --

                    Robert Portas, RPR, CRR

PROCEEDINGS                          25

1         THE COURT:  How do the requisite lenders act as a

2    group?  They vote on something.  Right?

3         MR. KASOWITZ:  Your Honor, here there is no group

4    of requisite lenders.  There isn't a group.

5         THE COURT:  There's just one?

6         MR. KASOWITZ:  There's just one.  It's Yucaipa.

7    It owns more than 50 percent.  It's just one.  There's no

8    voting.

9         THE COURT:  Before Amendment 3, who were the

10   requisite lenders?

11        MR. KASOWITZ:  Before Amendment 3?

12        THE COURT:  Before the third amendment.

13        MR. KASOWITZ:  I think it might have been ConVest.

14   ConVest.

15        There was a group at one point, then it was

16   ConVest and now it's Yucaipa.  There is no --

17        THE COURT:  ConVest sold to Yucaipa?

18        MR. KASOWITZ:  Yes.  And so this issue -- this is

19   a -- this is a -- this is a complete misinterpretation of

20   the credit agreement.  Voting rights -- voting rights is

21   only mentioned one place in the whole agreement, Your

22   Honor.  We have scanned the whole agreement, made it

23   searchable, and there's one place, that's 2--- that's

24   Section 2.22, and that talks about some of the

25   circumstances --

Robert Portas, RPR, CRR

PROCEEDINGS                26

1        THE COURT:  Then what is 10.5A speaking of?

2        MR. KASOWITZ:  10.5 speaks to the circumstances in

3    which -- 10.5A speaks to the circumstances in which the

4    requisite lender may make certain determinations, like

5    amendments, like amending the term, "Term Loan Exposure,"

6    by itself, or amending other terms by itself, not

7    seeking -- not needing to seek the consent of other

8    parties.  It's very specific as to --

9        THE COURT:  Is there any limitation in the power

10   of the requisite lender after you get through with

11   Paragraph 10A?

12       MR. KASOWITZ:  Sure.  If you have -- if you

13   have -- if you have one of the situations that's listed

14   under 10B.

15       THE COURT:  "Amend, modify, terminate or waive any

16   of the provisions of the credit documents."

17       MR. KASOWITZ:  Unless --

18       THE COURT:  You've got a free hand.

19       MR. KASOWITZ:  No, Your Honor.  Not if one of the

20   situations, one of the eleven situations in 10B is invoked,

21   that's --

22       THE COURT:  That's what the plaintiff's trying to

23   invoke.  They're saying, "My God, what you've done is

24   you've given yourself dictatorial powers with regard to

25   this loan."

Robert Portas, RPR, CRR

PROCEEDINGS                    27

1          MR. KASOWITZ:  Your Honor, the same supposed

2     dictatorial powers with respect to the loan were in the

3     possession of ConVest prior to the sale --

4          THE COURT:  But ConVest did not have the advantage

5     of Amendments 3 and 4.

6          MR. KASOWITZ:  Pardon me?

7          THE COURT:  ConVest did not have the advantage of

8     Amendments 3 and 4.  They had not acquired the equity

9     position.

10         MR. WARD:  That's right.

11         MR. KASOWITZ:  But there was nothing --

12         THE COURT:  That makes all the difference in the

13    world.

14         MR. KASOWITZ:  Your Honor, there's nothing in the

15    credit agreement which prohibited the acquisition of

16    equity.  There is nothing.  In fact, Your Honor,

17    Amendment 3 was very specific about saying that Yucaipa

18    could go --

19         THE COURT:  Then why did you have Amendments 3 and

20    4?  If there was nothing to stop your client from acquiring

21    the equity position and voting it, why Amendment -- why the

22    third amendment and why the fourth amendment?  They're

23    meaningless.

24         MR. KASOWITZ:  No, Your Honor, they weren't

25    meaningless.  Because as part of the third, Yucaipa was

                    Robert Portas, RPR, CRR

1    able to acquire some debt.

2              THE COURT:  Let's talk about res judicata and

3    collateral estoppel.  On this issue you've lost already.

4    Go ahead.

5              MR. KASOWITZ:  Well, Your Honor, there's a whole

6    list of -- there's a whole list of powers and authorities

7    that this --

8              THE COURT:  Counselor, if you're not going to go

9    on to res judicata and collateral estoppel I'll take the

10   next motion.

11             MR. KASOWITZ:  Res judicata, Your Honor:  If it

12   is -- if it is the case that the agent, that CIT was acting

13   in a representative capacity, then there is a -- then there

14   is a -- an argument that the outcome of the Georgia

15   action --

16             THE COURT:  What you're basically saying is that

17   the plaintiff or plaintiffs consented to the withdrawal of

18   that.  Was it a defense that CIT was asserting in Georgia?

19             MR. KASOWITZ:  I'm not saying that -- I'm saying

20   that they were bound by what CIT did.

21             THE COURT:  CIT settled the case against your

22   client in Georgia; right?

23             MR. KASOWITZ:  It did, Your Honor.  And it was

24   authorized to do it.  And there are issues of fact.  There

25   are issues of fact as to that.

                     Robert Portas, RPR, CRR

PROCEEDINGS                          29

1       THE COURT:  Were there benefits that enured to the

2   plaintiff?  Was the plaintiff a party to that settlement?

3   Other than -- How many principals did CIT represent as

4   agent?

5       MR. KASOWITZ:  It represented --

6       THE COURT:  All of them, right?

7       MR. KASOWITZ:  Yes.

8       THE COURT:  Okay.

9       MR. KASOWITZ:  All the lenders.  All the term loan

10   lenders, Your Honor.

11       THE COURT:  But did the plaintiff have a claim in

12   that action?

13       MR. KASOWITZ:  The plaintiff had a -- the

14   plaintiff was a defendant and it had counterclaims in that

15   action against Yucaipa.  And the counterclaims --

16       THE COURT:  You're saying no.

17       MR. WARD:  No.  They were not in that action.

18       MR. KASOWITZ:  I'm sorry.  Represented by CIT.

19       THE COURT:  Wait, wait, wait.

20       MR. KASOWITZ:  The plaintiffs --

21       THE COURT:  Hold, Hold, hold.

22       CIT can be sued in a representative capacity, in

23   which case you saw whoever, A, B and C.  By suing CIT you

24   make it known to A, B and C that they're being sued

25   through CIT.

Robert Portas, RPR, CRR

PROCEEDINGS                         30

1       Were these plaintiffs aware that they were

2   parties to that action through CIT?

3       MR. KASOWITZ:  They were aware that CIT was a

4   defendant and a counterclaim plaintiff in both --

5       THE COURT:  My agent can be sued in Brooklyn in

6   some sort of a case, it doesn't involve me, doesn't -- I'm

7   not a claimant in that case or I'm not a defendant.  I

8   don't care.  It doesn't bind me.  Is that what happened

9   here?  Or was there a claim where a defense is being

10  asserted by these --

11      MR. KASOWITZ:  Yes, but they admitted to being

12  bound, Your Honor.  We have a raft of statements from the

13  clients, from their lawyers, sworn statements that they

14  admitted to being bound.  We have statements from --

15      THE COURT:  I don't understand how you can be

16  bound to something in which you're not interested.  First

17  there has to be an interest in this litigation that was

18  going on in Georgia, and I know nothing about it.

19      MR. KASOWITZ:  The litigation going on in Georgia,

20  Your Honor, is precisely the same as the litigation that is

21  going on here.  It's precisely the same.  It was a claim as

22  to whether or not the fourth amendment was valid.  The --

23  the -- the plaintiffs here were -- the case went on for two

24  years, Your Honor.  The plaintiffs here --

25      THE COURT:  Who was the plaintiff in the Georgia

                Robert Portas, RPR, CRR

PROCEEDINGS                    31

1    action?

2              MR. KASOWITZ:  The plaintiffs in the Georgia

3    action were Yucaipa.

4              THE COURT:  Okay.

5              MR. KASOWITZ:  They sued CIT --

6              THE COURT:  For declaratory judgment?

7              MR. KASOWITZ:  They sued CIT for declaratory

8    judgment, correct.  They sued CIT both in its own

9    individual -- I'm sorry, it's Yucaipa and Allied, Your

10   Honor.  And they sued CIT, quote, as administrative agent.

11   Administrative agent for these lenders, Your Honor, who

12   include the plaintiffs here.  The lenders -- the case went

13   on for two years.

14             THE COURT:  Hold the phone.  Just -- I want to go

15   slower.

16             Procedurally, how does that satisfy the

17   plaintiff's rights to be made aware of this proceeding

18   that you say affects their rights and obligations under

19   this agreement?

20             MR. KASOWITZ:  They were aware of the proceeding,

21   Your Honor.

22             THE COURT:  How?  Were they served with papers?

23             MR. KASOWITZ:  They weren't served with papers.

24   They were knowledgeable about it.  They were deposed in the

25   proceeding.

                    Robert Portas, RPR, CRR

PROCEEDINGS                        32

1      THE COURT:  Okay.

2          MR. KASOWITZ:  The plaintiffs were deposed in the

3      proceeding, they were knowledgeable about the proceeding,

4      they consulted with Yucaipa about the proceeding.  There

5      was no doubt about that.  There are no -- there is clear

6      that they had open knowledge about it.

7          THE COURT:  What was the -- what was the claim

8      that you were asserted against these plaintiffs in that

9      action?

10         MR. KASOWITZ:  The claim was that the fourth --

11     the claim was that the fourth amendment was valid, Your

12     Honor.  And so -- and there was a declaratory judgment

13     action.  These plaintiffs knew about it, were familiar with

14     it, were deposed in it.  And, of course --

15         THE COURT:  I don't understand.  Why weren't they

16     named?  This is what really puzzles me.

17         MR. KASOWITZ:  Because CIT --

18         THE COURT:  You didn't even name CIT as agent for

19     the plaintiffs?  You just sued CIT?

20         MR. KASOWITZ:  We sued CIT in their representative

21     capacity as administrative agent for all of -- for all of

22     the lenders.  Of course, Your Honor.  And a declaration --

23     Your Honor, a declaration as to the validity of that fourth

24     amendment would have impacted, obviously, on these

25     plaintiffs, one way or the other.  If it was upheld as

Robert Portas, RPR, CRR

1    being valid, then it was valid.

2           THE COURT:  Plaintiffs hopping off the seat.  He

3    wants to speak.

4           MR. WARD:  I can resolve the res judicata issue in

5    two minutes, Your Honor.

6           THE COURT:  You got it.

7           MR. WARD:  Would you please look at Grant

8    Affidavit, Exhibit I.  That is the settlement agreement

9    that Mr. Kasowitz' clients.  The Grant Affidavit is Yucaipa

10   papers, Your Honor, Exhibit I.  That is the settlement

11   agreement in the Giorgia action.

12          In addition, as Your Honor's doing that, the

13   caption of the Georgia action only sues CIT itself, it

14   doesn't say "As agents," and the paragraphs therein don't

15   say anything about agent.  But, most importantly, Your

16   Honor, if you are on Exhibit I --

17          THE COURT:  Yes.

18          MR. WARD:  -- please go to Page 5.

19          And, Your Honor, you may have to backtrack a

20   little and see that that Paragraph 1 than you're looking

21   at which starts at Page 2 says, "Mutual general releases:

22   This is the settlement agreement of the Georgia action

23   between Yucaipa and Allied as plaintiffs and CIT as

24   defendant."

25          Look at Paragraph 1B, which is on Page 5, about
                    Robert Portas, RPR, CRR

1   ten lines down on that Page 5 --

2            THE COURT:  Right.

3            MR. WARD:  -- where it starts saying, "Amended

4   through the fourth amendment."  Do you see that line, Your

5   Honor?  "Amended"?  The sentence right after in that line.

6   "This limited release."  You see that, Your Honor?

7            THE COURT:  Yes.

8            MR. WARD:  "This limited release is made solely by

9   CIT and its personal representatives, successors and

10  assigns on its own behalf and not in a representative

11  capacity on behalf of any other persons and does not

12  constitute a release by any other person."  It could not

13  have bound my client.

14            But it gets even better.  Look at Paragraph 1D,

15  Your Honor, on the next page.  Paragraph 1D:  "For the

16  avoidance of doubt, and notwithstanding anything herein

17  to the contrary, nothing in this agreement shall release

18  any claims, actions, causes of actions, demands for

19  damages, costs," et cetera, et cetera, down five lines,

20  "whatsoever belonging to any person or entity other than

21  the parties to this agreement and each of their personal

22  representatives, successors and assigns and ConVest."

23            The parties to this agreement, Your Honor, just

24  look at the page:  Yucaipa, Allied, CIT.  Not my clients.

25  Even if CIT did represent my clients, which they did not,
                    Robert Portas, RPR, CRR

PROCEEDINGS                          35

1    they settled on their own behalf.

2              MR. KASOWITZ:  Your Honor, there was -- there

3    was -- merely because releases were not obtained does not

4    resolve that issue.  The settlement was -- the settlement

5    was for the purpose of resolving the case in both the

6    individual capacity --

7              THE COURT:  Wasn't the settlement papered up?

8              MR. KASOWITZ:  The settlement --

9              MR. WARD:  That's it.

10             MR. KASOWITZ:  The settlement was papered up.

11   Releases were given, but there were other claims,

12   potentially, that may have existed between Yucaipa and

13   between these plaintiffs.

14             THE COURT:  And apparently they weren't resolved.

15             MR. KASOWITZ:  Pardon me?

16             THE COURT:  Apparently they weren't resolved.

17             MR. KASOWITZ:  There are other claims that weren't

18   resolved, which is part of the reason --

19             THE COURT:  Look, res judicata or collateral

20   estoppel requires either a judgment or a settlement that

21   covers the claim.  Do you have a judgment?  No.  Do you

22   have a settlement?

23             MR. KASOWITZ:  Yes.

24             THE COURT:  Apparently not.

25             MR. KASOWITZ:  We do have a consent judgment that

                    Robert Portas, RPR, CRR

PROCEEDINGS                    36

1    covers this claim.

2         THE COURT:  No, but it says it doesn't.  It says,

3    "This limited release is made solely by CIT and on its own

4    behalf, not in a representative capacity."  Your whole

5    argument was that you were suing CIT in a representative

6    capacity.

7         MR. KASOWITZ:  We were, Your Honor.  And just

8    because the release was not --

9         THE COURT:  Plaintiff, plaintiff, plaintiff...?

10        MR. WARD:  Yes, Your Honor?

11        THE COURT:  Congratulations.

12        MR. WARD:  Thank you.

13        THE COURT:  You won.

14        MR. WARD:  Thank you.

15        MR. HARRIS:  Thank you, Your Honor.

16        THE COURT:  You'll get a written decision out of

17    this one.

18        MR. WARD:  Thank you, Your Honor.

19        THE COURT:  Thank you.

20        (Whereupon, the above-captioned proceedings

21      were concluded.)

22                    oOo
                 (It is hereby certified that the
23               (foregoing is a true and accurate
                 (transcript of the proceedings.
24               (
                 (
25               (    ROBERT PORTAS, RPR, CRR
                 (    Senior Court Reporter
          Robert Portas, RPR, CRR

# WORD INDEX

'requisite [4]   5/18 16/13
17/8 21/20

---------------------------------

1/2 1/9

.

...amend [1]   5/18

# 1

10 [1]   7/19
10.05 [1]   5/1
10.5 [5]   5/1 5/2 5/8 19/20
26/2
10.5A [5]   13/23 19/17 20/15
26/1 26/3
10.5B [13]   3/13 4/21 4/24 5/5
5/9 15/5 16/10 16/11 16/20
19/16 19/20 19/25 22/23
10.5C [4]   15/5 19/18 19/18
19/22
10019-6799 [1]   1/21
10022 [1]   1/16
10A [2]   23/15 26/11
10B [7]   21/16 23/12 23/14
23/15 23/19 26/14 26/20
12 [1]   1/6
152 [1]   24/8
159 [2]   5/7 5/8
160 [3]   5/2 5/5 14/21
161 [1]   14/21
1633 [1]   1/21
19 [2]   1/11 7/14
1B [1]   33/25
1D [2]   34/14 34/15

# 2

2.22 [1]   25/24
2001 [1]   4/2
2005-1 [1]   1/3
2012 [1]   1/11
25 percent [1]   18/18

# 3

3211 [1]   6/12

# 4

41 [3]   16/17 17/7 20/5
43 [1]   16/15

# 5

50 percent [6]   15/12 16/1
17/11 18/18 23/6 25/7
53 [1]   1/2

# 6

60 [1]   1/10
650150/12 [1]   1/6
6799 [1]   1/21

# 8

8.1 [1]   24/12

# 9

9.3B [2]   24/8 24/23
919 [1]   1/16

# A

ability [4]   20/20 22/22 22/25
23/8
able [1]   28/1

about [25]   5/17 6/20 6/22 7/8
12/9 14/10 14/14 14/24 16/25
14/3 16/16 21/8 24/15 25/24
27/17 28/2 30/18 31/24 32/3
32/4 32/5 32/6 32/13 33/15
33/25
above [1] X [2]/20
above-captioned [1]   36/20
absolutely [2]   9/2 23/21
accurate [1]   36/23
acknowledge [1]   7/22
acquiesced [1]   8/7
acquire [1]   28/1
acquired [1]   27/8
acquiring [1]   27/20
acquisition [1]   27/15
act [7]   2/21 8/5 20/16 23/8
24/7 24/22 25/1
acted [1]   7/16
acting [6]   9/20 9/21 10/2
24/8 24/22 28/12
action [26]   2/15 2/15 3/7
6/17 6/20 6/21 6/22 7/1 7/2
7/9 7/17 8/11 9/24 10/3
28/15 29/12 29/15 29/17 30/2
31/1 31/3 32/9 32/13 33/11
33/13 33/22
actions [2]   34/18 34/18
acts [1]   23/15
actual [2]   10/14 16/10
actually [1]   16/17
ADAM [2]   1/18 1/23
addition [1]   33/12
additional [1]   15/4
address [2]   9/15 10/13
administrative [7]   7/6 7/21
8/1 8/14 31/10 31/11 32/21
admissions [3]   6/20 6/23 7/7
admit [2]   7/5 12/7
admitted [3]   8/4 30/11 30/14
advantage [2]   27/4 27/7
affected [11]   3/14 3/16 5/6
5/12 14/4 14/14 15/19 15/20
18/22 19/18 21/13
affects [1]   31/18
affidavit [4]   4/25 8/2 33/8
33/9
affirmative [9]   6/9 6/10 9/13
10/10 10/11 10/13 10/15
10/16 11/16
after [6]   8/24 9/4 9/6 9/11
26/10 34/5
against [5]   1/6 7/3 28/21
29/15 32/8
agency [1]   9/1
agent [22]   7/6 7/6 7/10 7/14
7/16 7/21 8/1 8/14 8/15 8/18
8/20 9/20 9/21 14/22 28/12
29/4 30/5 31/10 31/11 32/18
32/21 33/15
agents [3]   24/7 24/22 33/14
aggregate [1]   17/12
agree [4]   11/4 11/6 12/4
13/11
agreed [1]   13/10
agreement [28]   3/3 3/10 3/14
4/20 4/24 4/21 11/17 11/20
13/22 14/24 16/15 19/25
22/19 22/20 22/21 23/11 24/9
25/20 25/21 25/22 27/15
31/19 33/8 33/11 33/22 34/17
34/21 34/23
agreements [1]   3/4

ahead [4]   1/4
1/3 3/14 4/19 8/6
12/18 13/9 13/12 13/17 14/1
14/3 14/4 18/15 19/7 19/24
21/11 22/15 24/10 24/20
27/12 29/6 29/9 29/9 32/21
32/21
alleged [1]   7/23
ALLIANCE [2]   1/7 1/7
Allied [6]   2/22 17/25 18/3
31/9 33/23 34/24
allowed [5]   18/9 18/11 18/23
18/23 19/8
already [1]   28/3
also [3]   13/2 13/6 19/18
although [1]   18/22
ambiguity [4]   3/25 4/1 4/10
14/24
ambiguous [1]   4/12
amend [6]   16/13 21/18 21/19
21/20 21/21 26/15
amended [3]   18/12 34/3 34/5
amending [3]   3/12 26/5 26/6
amendment [61]
Amendment 3 [1]   27/17
amendments [8]   13/22 13/25
22/23 24/14 26/5 27/5 27/8
27/19
AMERICAN [2]   1/7 1/7
among [1]   3/16
amounts [1]   4/6
another [1]   22/5
answered [1]   3/3
any [21]   4/9 6/14 6/15 10/16
14/24 15/6 15/7 15/7 15/8
16/5 18/13 18/14 20/24 22/17
22/19 26/9 26/15 34/11 34/12
34/18 34/20
anymore [1]   8/18
anyone [1]   23/17
anything [4]   12/4 18/24 33/15
34/16
apologize [1]   10/12
apparently [4]   8/17 35/14
35/16 35/24
Appeals [1]   4/2
application [2]   3/22 3/22
appropriate [1]   3/22
are [21]   2/21 3/16 6/8 8/25
10/15 10/17 10/24 11/19
13/23 14/20 15/11 15/15
20/12 22/20 23/15 24/13
28/24 28/25 32/5 33/16 35/17
arguing [2]   10/24 11/19
argument [13]   2/11 9/14 11/7
11/9 11/20 11/20 22/6 22/12
22/13 22/15 23/2 28/14 36/5
arrangement [1]   15/24
as [49]
asserted [3]   7/3 30/10 32/8
asserting [3]   2/15 8/11 28/18
assigns [2]   34/10 34/22
associated [1]   23/5
at [26]   4/8 5/16 6/13 7/14
7/19 7/20 11/11 13/5 13/9
13/17 13/21 16/7 16/9 16/11
16/15 23/14 24/2 24/6 24/10
25/15 33/7 33/21 33/21 33/25
34/14 34/24
Attorneys [2]   1/15 1/20
authorities [1]   28/6
authority [2]   8/20 22/24
authorized [1]   28/24

**A**

Avenue [1]  1/16
avoidance [1]  34/16
aware [5]  3/18 30/1 30/3
31/17 31/20
away [3]  19/6 19/13 19/14

**B**

back [5]  10/14 10/21 22/24
23/11 23/14
background [1]  5/22
backtrack [2]  16/8 33/19
bankruptcy [2]  24/11 24/24
bars [1]  9/24
based [2]  6/10 6/12
basically [1]  28/16
basis [1]  14/18
BDCM [1]  1/3
be [29]  3/3 3/19 4/17 5/12
5/14 6/18 9/1 9/7 9/10 9/21
14/4 15/8 15/20 16/10 18/1
18/1 18/13 21/17 21/18 21/23
22/19 23/2 23/7 24/4 29/22
30/5 30/15 30/17 31/17
bears [1]  13/2
because [21]  10/13 10/17 11/1
12/13 13/2 13/15 13/17 16/3
16/3 16/11 17/23 18/2 18/10
18/22 20/7 21/7 23/23 27/25
32/17 35/3 36/8
become [4]  16/1 18/18 20/6
20/10
been [7]  6/22 7/2 9/3 12/16
12/18 16/16 25/13
before [10]  2/23 3/9 4/7 6/4
11/2 12/19 16/4 25/9 25/11
25/12
behalf [7]  2/13 8/12 10/2
34/10 34/11 35/1 36/4
being [7]  9/4 23/4 29/24
30/9 30/11 30/14 33/1
believe [2]  4/11 22/8
belonging [1]  34/20
benefit [1]  8/6
benefits [1]  29/1
BENSON [1]  1/19
better [1]  34/14
between [3]  33/23 35/12 35/13
big [1]  22/1
bind [1]  30/8
bit [2]  5/4 17/15
BLACK [1]  1/3
book [1]  23/12
borrower [1]  14/23
both [5]  8/9 10/24 30/4 31/8
35/5
bottom [1]  5/17
bound [5]  28/20 30/12 30/14
30/16 34/13
breach [1]  8/8
brief [2]  20/13 22/16
bring [1]  15/25
Broadway [1]  1/21
broke [1]  9/12
Brooklyn [1]  30/5
brought [1]  6/22
but [37]  6/12 6/17 7/18 8/13
8/20 8/23 8/25 9/2 9/14 11/7
12/2 13/1 13/20 15/21 16/11
16/12 17/20 18/8 18/9 19/9
20/2 20/20 21/21 21/25 22/2
23/3 23/20 23/25 24/17 27/4
buy [6]  18/9 18/17 18/23
18/23 19/8 20/20

**C**

C.R.R [1]  1/24
called [5]  2/22 8/7 9/8 18/9
18/25
came [1]  8/13
can [12]  3/3 5/11 10/14 14/23
16/17 17/1 21/23 23/5 29/22
30/5 30/15 33/4
can't [6]  12/4 18/24 18/25
19/3 19/14 20/10
cannons [1]  19/23
cannot [1]  18/13
capacity [9]  8/12 8/15 28/13
29/22 32/1 34/11 35/6 36/4
36/6
caption [1]  33/13
captioned [1]  36/20
care [1]  30/8
cart [2]  4/7 11/2
case [18]  2/20 2/25 3/5 3/7
4/2 7/19 7/20 8/16 9/24
10/11 28/12 28/21 29/23 30/6
30/7 30/23 31/12 35/3
case--whether [1]  9/24
cause [1]  2/15
causes [1]  34/18
Centre [1]  1/10
certain [4]  2/17 7/5 22/22
26/4
certified [1]  36/22
cetera [3]  22/23 34/19 34/19
change [10]  16/5 16/10 16/21
16/21 19/21 21/11 21/12
21/14 22/2 22/3
changed [6]  7/11 16/4 17/14
19/10 19/19 19/22
changes [1]  20/2
changing [1]  20/3
CHARLES [1]  1/12
CI [1]  7/1
circumstances [6]  14/3 14/19
14/20 25/25 26/2 26/3
CIT [41]
cite [1]  20/13
CIVIL [1]  1/2
claim [12]  10/9 13/14 15/20
16/2 29/11 30/9 30/21 32/7
32/10 32/11 35/21 36/1
claimant [1]  30/7
claims [3]  34/18 35/11 35/17
clear [8]  4/2 6/13 8/19 9/15
11/15 13/20 23/21 32/5
clearly [2]  4/13 22/17
client [5]  7/7 17/25 27/20
28/22 34/13
clients [6]  3/16 18/22 30/13
33/9 34/24 34/25
CLO [1]  1/3
closed [1]  7/17
collateral [3]  28/3 28/9
35/19
come [2]  10/20 13/14
commence [1]  2/8
company [1]  2/22
complaining [2]  11/24 24/15
complaint [3]  7/18 7/20 8/3
complete [1]  25/19
concluded [1]  36/21

**concurrence [1]**  15/9
condition [1]  9/7 9/7 9/8
confuse [1]  2/8
Congratulations [1]  36/11
connection [2]  2/22 18/13
consent [22]  3/14 3/17 5/11
5/14 9/23 12/18 13/8 13/8
13/12 14/1 14/3 14/9 14/11
14/19 14/23 15/1 15/7 19/19
22/22 23/7 26/7 35/25
consented [1]  28/17
consents [1]  20/15
consistent [2]  7/20 7/25
constitute [1]  34/12
construction [3]  3/1 3/7
19/24
construe [1]  3/23
consulted [1]  32/4
consulting [1]  23/17
contains [1]  20/5
contemplated [1]  23/1
continue [2]  17/4 17/11
contract [12]  2/17 3/1 3/6
3/20 3/23 4/1 4/11 4/12 6/4
9/14 11/10 11/13
contracts [1]  4/6
contractual [1]  4/9
contrary [1]  34/17
control [2]  24/10 24/24
controlled [1]  18/5
controls [4]  4/20 4/22 20/12
20/17
ConVest [10]  15/23 15/23
25/13 25/14 25/16 25/17 27/3
27/4 27/7 34/22
corners [4]  3/19 9/15 11/17
11/19
correct [4]  14/10 14/15 15/14
31/8
correctly [1]  13/21
costs [1]  34/19
could [11]  9/1 10/12 18/1
18/1 18/17 22/7 22/9 22/10
23/2 27/18 34/12
couldn't [1]  22/17
counsel [3]  6/5 11/2 21/7
counsel's [1]  22/12
Counselor [1]  28/8
count [6]  18/25 19/11 20/7
20/9 20/10 20/23
counted [1]  18/13
counterclaim [2]  8/5 30/4
counterclaims [4]  7/3 8/11
29/14 29/15
COUNTY [1]  1/2
course [3]  24/15 32/14 32/22
court [9]  1/1 1/25 2/4 3/9
3/24 3/25 4/2 12/7 36/25
covers [2]  35/21 36/1
create [2]  3/25 10/16
credit [16]  3/3 3/10 3/13
4/20 4/24 13/22 15/6 15/7
16/14 22/22 23/1 23/11 24/9
25/20 26/16 27/15
CRR [1]  36/25
cure [1]  14/24

**D**

damages [1]  34/19
DAVID [2]  1/22 1/23
days [1]  9/11
deal [4]  11/12 13/3 13/5 22/1
dealing [4]  10/9 10/10 15/2

**D**

dealing... [1]  15/3
debt [24]  2/22 15/12 15/25
 18/2 18/4 18/5 18/9 18/10
 18/10 18/13 18/23 18/24
 18/24 19/8 19/9 20/7 20/8
 20/9 20/9 20/12 20/18 20/20
 23/6 28/1
debtors [1]  18/6
decision [4]  4/13 4/15 4/17
 36/16
decisions [1]  23/17
declaration [3]  2/16 32/22
 32/23
declaratory [4]  3/7 31/6 31/7
 32/12
default [3]  20/16 24/12 24/25
defaulting [1]  5/12
defendant [7]  7/2 17/25 21/2
 29/14 30/4 30/7 33/24
defendant's [2]  6/9 23/2
defendants [7]  1/9 1/20 2/20
 4/4 6/3 6/25 22/18
defending [2]  7/9 8/10
defense [5]  6/18 10/10 10/12
 28/18 30/9
defenses [7]  6/9 6/10 9/14
 10/13 10/15 10/16 11/16
definite [1]  19/25
definition [32]  3/12 5/18
 11/22 11/25 12/3 12/6 16/5
 16/11 16/13 16/15 16/21
 17/14 18/11 18/16 19/10
 19/19 19/21 19/22 20/3 20/4
 20/23 21/8 21/10 21/12 21/13
 21/18 21/19 21/20 21/22 22/3
 22/3 24/1
definitive [1]  20/1
demands [1]  34/18
denied [3]  6/11 9/4 22/18
deny [1]  4/13
departure [1]  15/7
depend [1]  22/14
depends [2]  22/13 22/15
deposed [3]  31/24 32/2 32/14
determination [1]  8/14
determinations [2]  13/25 26/4
determine [2]  4/1
determines [2]  4/12 20/6
DIAMOND [1]  1/3
dictatorial [2]  26/24 27/2
did [12]  13/10 19/5 21/16
 27/4 27/7 27/19 28/20 28/23
 29/3 29/11 34/25 34/25
didn't [4]  9/8 13/11 20/9
 32/18
difference [1]  27/12
different [1]  19/19
disagree [3]  12/11 16/25 17/3
disagreed [1]  8/17
discovery [6]  3/4 4/14 6/15
 9/3 10/1 11/16
disingenuous [1]  23/3
dismiss [4]  2/24 7/12 7/15
 9/4
dispute [1]  3/6
disregarded [1]  22/19
DIV [1]  1/2
do [19]  12/12 12/13 17/15
 17/15 19/12 21/5 24/1 24/5
 24/15 24/16 24/18 24/18
 24/23 25/1 28/24 34/4 35/21

documents [3]  1/1 1/2 15/
 26/16
does [6]  14/8 20/23 24/19
 31/14 34/11 35/3
doesn't [13]  16/10 18/25
 19/11 20/7 20/9 21/19 24/9
 24/17 30/6 30/6 30/8 33/14
 36/2
doing [2]  19/5 33/12
don't [12]  10/5 10/16 11/6
 14/19 15/18 21/3 21/4 24/13
 30/8 30/15 32/15 33/14
done [2]  10/11 26/23
doubt [1]  7/17 32/5 34/16
down [3]  9/12 34/1 34/19
during [2]  24/11 24/24
duty [1]  4/8

**E**

each [5]  5/11 11/4 11/6 14/23
 34/21
easier [1]  2/4
easy [1]  10/14
effect [13]  3/12 5/14 6/17
 13/19 16/12 16/22 19/16
 19/21 19/24 20/3 21/18 21/19
 21/21
effective [5]  2/20 5/14 15/8
 21/17 21/18
effectiveness [1]  3/2
either [3]  13/9 16/6 35/20
elevates [1]  23/9
eleven [3]  14/20 14/20 26/20
else [2]  15/3 23/17
entered [1]  15/24
entire [1]  23/4
entity [2]  20/17 34/20
enumerated [1]  14/20
enured [1]  29/1
equity [6]  18/2 18/5 21/24
 27/8 27/16 27/21
Erlich [2]  7/8 8/1
ESQ [7]  1/17 1/17 1/18 1/22
 1/22 1/23 1/23
estoppel [4]  6/11 28/3 28/9
 35/20
et [3]  22/23 34/19 34/19
et cetera [3]  22/23 34/19
 34/19
ette [3]  5/16 16/12 17/12
even [4]  12/16 32/18 34/14
 34/25
event [4]  15/8 20/16 24/11
 24/25
ever [2]  7/14 7/16
everything [1]  21/7
evidence [5]  3/5 3/24 4/7
 4/10 4/16
Excuse [1]  10/7
exercise [3]  23/5 24/11 24/24
exhibit [8]  4/25 12/21 12/24
 13/4 16/7 33/8 33/10 33/16
Exhibit 1 [1]  4/25
Exhibit 4 [1]  16/7
Exhibit 6 [1]  13/4
existed [1]  35/12
expense [1]  9/9
exposure [17]  11/22 12/15
 13/7 13/16 13/18 16/4 17/12
 17/14 19/12 19/19 19/15
 20/6 20/22 20/23 21/12 26/5
exposures [1]  17/9

expressly [1]  22/18
extension [1]  8/2
extra [1]  19/20
extrinsic [6]  3/5 3/24 4/7
 4/10 4/16 10/16

**F**

fact [9]  4/12 6/8 6/19 8/19
 8/24 10/17 27/16 28/24 28/25
failure [1]  13/12
familiar [1]  32/13
fiduciary [1]  8/15
final [2]  9/22 9/22
Financial [1]  4/3
find [2]  6/16 7/13
fine [1]  8/12
finishes [1]  10/20
first [9]  4/9 7/20 8/3 10/13
 15/4 17/21 19/8 21/11 30/16
five [1]  34/19
flagrant [1]  8/7
flat [1]  23/10
fleshed [1]  6/15
flipped [1]  10/11
following [3]  14/6 23/22
 23/23
foregoing [1]  36/23
form [1]  23/9
forward [2]  2/15
four [5]  3/19 9/11 9/15 11/17
 11/19
fourth [21]  2/19 3/2 3/11
 5/19 7/23 11/23 13/1 13/14
 15/22 17/13 17/17 17/19 19/4
 19/6 19/12 27/22 30/22 32/10
 32/11 32/23 34/4
fowl [1]  19/2
free [1]  26/18
FRIEDMAN [1]  1/20
full [1]  19/24
functions [1]  23/1
FUND [3]  1/3 1/7 1/8

**G**

gated [1]  10/8
gathered [1]  3/19
gating [3]  6/4 6/9 9/25
general [1]  33/21
Georgia [18]  6/17 6/20 6/21
 7/1 7/9 7/16 8/11 9/23 9/23
 28/14 28/18 28/22 30/18
 30/19 30/25 31/2 33/13 33/22
get [8]  6/4 10/14 11/1 11/7
 11/9 12/13 18/6 26/10 36/16
getgo [1]  9/25
gets [2]  13/24 34/14
Giorgia [1]  33/11
give [6]  4/14 4/15 5/22 16/19
 19/24 20/15
given [3]  20/20 26/24 35/11
go [10]  2/11 16/17 17/20 21/5
 22/11 27/18 28/4 28/8 31/14
 33/18
God [1]  26/23
goes [1]  19/20
going [9]  6/1 9/10 12/12
 12/13 24/20 28/8 30/18 30/19
 30/21
Good [2]  2/1 2/2
got [7]  11/11 20/25 20/25
 21/2 24/4 26/18 33/6
governing [1]  10/17
GRANT [3]  1/23 33/7 33/9

**G**

group [4]  25/2 25/3 25/4
  25/15
guidance [2]  4/14 4/16
guided [1]  4/17
guys [1]  12/4

**H**

had [16]  3/11 6/14 7/2 7/2
  8/4 8/13 12/15 13/18 15/23
  15/24 16/1 16/4 27/8 29/13
  29/14 32/6
hand [2]  19/13 26/18
Hang [1]  14/7 17/5
happened [9]  5/19 9/4 17/13
  17/24 18/3 18/21 19/4 20/19
  30/8
happens [1]  19/3
happy [1]  10/19
harm [1]  19/2
HARRIS [1]  1/18
has [11]  8/7 10/10 16/21 20/2
  21/21 24/1 24/5 24/7 24/9
  24/22 30/17
hasn't [2]  6/5 9/3
have [41]
haven't [2]  6/14 6/15
having [1]  17/9
he [6]  7/8 8/3 10/8 10/20
  12/19 33/2
he's [2]  10/9 10/11
hear [2]  2/5 5/25
hearing [1]  6/14
here [18]  4/5 5/19 6/15 6/18
  6/23 7/13 9/1 9/12 16/17
  17/25 19/4 21/4 25/3 30/9
  30/21 30/23 30/24 31/12
here's [3]  16/9 17/24 18/21
hereby [1]  36/22
herein [1]  34/16
him [1]  2/4
himself [1]  7/8
his [1]  8/2
hold [4]  29/21 29/21 29/21
  31/14
holder [2]  18/2 21/24
holding [1]  17/9
HON [1]  1/12
Honor [113]
Honor's [3]  4/8 4/17 33/12
hope [1]  2/10
hopping [1]  33/2
horse [2]  4/8 11/2
how [6]  20/6 25/1 29/3 30/15
  31/16 31/22

**I**

I'll [6]  2/6 5/4 7/12 9/15
  17/15 28/9
I'm [15]  2/12 10/18 14/6 14/6
  17/1 17/1 23/22 23/23 24/20
  28/19 28/19 29/18 30/6 30/7
  31/9
identified [1]  13/21
IE [1]  22/22
if [43]
II [1]  1/3
impacted [1]  32/24
important [3]  5/23 19/17
  24/21
importantly [1]  33/15
improperly [1]  23/8

include [1]  31/22
including [1]  8/6
Indeed [1]  7/15
Index [1]  1/6
individual [2]  31/9 35/6
instead [1]  10/9
instruct [1]  24/21
instructs [1]  24/7
instrument [1]  3/20
intention [1]  3/18
interest [1]  30/17
interested [1]  30/16
interesting [1]  5/3
interfering [1]  10/12
interpretation [1]  3/20
interrupt [1]  10/5
into [1]  15/24
invalid [2]  13/14 16/2
INVESTMENT [1]  1/4
invoke [1]  26/23
invoked [1]  26/20
involve [2]  24/19 30/6
ironic [1]  11/18
is [99]
is--and [1]  6/6
isn't [1]  25/4
issue [15]  3/9 6/5 6/6 6/24
  6/25 9/25 10/1 10/8 10/18
  10/18 11/16 25/18 28/3 33/4
  35/4
issues [8]  6/8 6/16 8/19
  10/17 10/25 11/11 28/24
  28/25
it [76]
it's [38]
its [10]  7/20 7/25 8/5 8/5
  8/11 8/15 31/8 34/9 34/10
  36/3
itself [7]  4/1 7/7 13/25
  16/21 26/6 26/6 33/13
IX [1]  5/16

**J**

job [1]  22/14
judgment [14]  2/14 2/18 3/7
  3/21 6/7 9/13 9/22 9/23 31/6
  31/8 32/12 35/20 35/21 35/25
judgment--and [1]  9/22
judicata [9]  6/10 6/12 6/17
  10/18 28/2 28/9 28/11 33/4
  35/19
jump [1]  5/4
just [15]  12/10 13/20 13/21
  16/8 21/8 22/6 22/8 23/10
  25/5 25/6 25/7 31/14 32/19
  34/23 36/7
Justice [1]  1/13
JUSTIN [1]  1/17

**K**

KASOWITZ [5]  1/19 1/22 6/2
  10/6 10/19
Kasowitz' [1]  33/9
key [1]  17/10
kidding [1]  24/4
kind [2]  10/11 13/18
knew [1]  32/13
know [4]  5/6 6/24 8/25 30/18
knowledge [1]  32/6
knowledgeable [2]  31/24 32/3
known [1]  29/24
knows [1]  19/23

**L**

L.P [1]  1/4
language [9]  2/17 3/23 4/6
  4/9 11/10 11/12 16/6 19/25
  21/16
law [4]  3/5 3/21 4/2 6/16
lawyer [1]  9/18
lawyers [1]  30/13
least [1]  11/11
lecturn [2]  2/3 2/7
lender [45]
lender's [2]  14/8 14/11
lender.' [3]  5/18 16/13 21/20
lenders [37]  2/21 3/15 3/17
  7/21 7/24 7/25 8/6 12/18
  13/9 13/13 13/17 13/19 14/1
  14/4 14/4 14/14 15/9 15/16
  15/21 17/6 17/9 22/20 22/21
  22/25 23/3 23/5 23/8 23/16
  23/20 25/1 25/4 25/10 29/9
  29/10 31/11 31/12 32/22
Lenders' [1]  17/8
Let [1]  5/25
let's [4]  11/12 13/3 16/7
  28/2
like [5]  9/6 9/9 23/7 26/4
  26/5
limit [1]  4/4
limitation [2]  19/14 26/9
limited [3]  34/6 34/8 36/3
limiting [1]  4/5
line [2]  34/4 34/5
lines [2]  34/1 34/19
list [2]  28/6 28/6
listed [1]  26/13
litigation [3]  30/17 30/19
  30/20
little [5]  5/4 5/22 17/15
  19/13 33/20
LLP [2]  1/15 1/20
loan [21]  11/22 12/14 13/7
  13/16 13/18 16/4 17/9 17/12
  17/14 18/11 19/1 19/10 19/15
  20/6 20/22 20/23 21/12 26/5
  26/25 27/2 29/9
logical [1]  23/24
look [21]  3/24 3/25 4/8 4/10
  4/16 6/14 16/7 16/9 16/11
  16/15 22/16 23/11 23/11
  23/14 24/2 24/6 33/7 33/25
  34/14 34/24 35/19
looked [1]  13/21
looking [1]  33/20
lost [3]  22/6 22/8 28/3
lot [1]  4/15
LP [3]  1/3 1/7 1/8
LTD [1]  1/3

**M**

made [6]  7/12 8/13 25/22
  31/17 34/8 36/3
make [5]  13/24 23/17 24/14
  26/4 29/24
makes [2]  19/25 27/12
many [3]  9/17 20/13 29/3
MARC [2]  1/22 6/2
matter [3]  6/16 6/21 8/21
may [4]  2/8 2/21 2/24 3/19
  6/18 17/4 21/1 23/24 24/10
  26/4 33/19 35/12
Maybe [1]  6/1
me [12]  2/9 5/25 10/7 12/23

## M

me... [8]  16/19 21/5 22/8
  27/6 30/6 30/8 32/16 35/15
meaning [2]  2/17 3/13
meaningless [2]  27/23 27/25
means [1]  17/8
meant [1]  12/15
MENDELSOHN [1]  1/17
mentioned [3]  6/5 16/3 25/21
merely [1]  35/3
might [1]  25/13
mile [1]  19/20
minute [1]  14/22
minutes [1]  33/5
misinterpretation [1]  25/19
modification [1]  24/14
modifications [1]  5/13 15/5
modify [2]  14/23 26/15
moment [1]  16/19
money [1]  4/15
more [5]  17/8 17/11 22/17
  23/6 25/7
morning [2]  2/1 2/2
most [2]  24/21 33/15
motion [16]  1/9 2/14 2/19
  2/23 4/13 4/18 6/12 7/11
  7/15 9/4 9/13 10/9 10/15
  10/15 12/10 28/10
movant [1]  2/13
move [2]  2/6 22/5
moved [1]  6/6
Mr. [5]  7/8 8/1 10/6 10/19
  33/9
Mr. Erlich [1]  7/8 8/1
Mr. Kasowitz [2]  10/6 10/19
Mr. Kasowitz' [1]  33/9
much [1]  18/17
Mutual [1]  33/21
my [7]  3/16 18/22 26/23 30/5
  34/13 34/24 34/25

## N

N.Y [1]  1/21
name [2]  23/8 32/18
named [1]  32/16
necessarily [1]  12/15
necessary [3]  2/3 3/5 3/21
need [4]  10/1 11/15 14/19
  18/18
needing [1]  26/7
needless [1]  9/9
needs [1]  14/4
negotiations [1]  9/6
neutered [4]  18/9 18/25 19/9
  20/9
never [9]  2/20 3/17 11/1 11/7
  11/7 11/9 13/11 16/5 18/6
NEW [7]  1/1 1/2 1/11 1/11
  1/16 1/16 1/21
next [2]  28/10 34/15
no [45]
non [2]  24/11 24/24
non-bankruptcy [2]  24/11
  24/24
not [67]
nothing [11]  21/13 24/1 24/5
  24/9 24/22 27/11 27/14 27/16
  27/20 30/18 34/17
notwithstanding [2]  8/4 34/16
November [1]  1/11
now [13]  2/8 5/24 7/11 8/6
  8/25 14/6 14/6 16/20 18/23

## O

obligation [1]  8/5
obligations [3]  7/21 7/25
  31/18
obtained [6]  3/17 12/18 13/9
  13/12 14/5 35/3
obvious [1]  18/4
obviously [2]  8/21 32/24
off [1]  33/2
offensive [2]  12/21 12/24
Okay [11]  2/8 5/8 10/25 14/12
  14/16 15/10 16/23 17/22 29/8
  31/4 32/1
on [62]
one [18]  2/15 2/16 13/1 13/2
  13/5 17/8 19/6 25/5 25/6
  25/7 25/15 25/21 25/23 26/13
  26/19 26/20 32/25 36/17
only [13]  2/16 6/25 11/1
  14/10 14/23 15/3 15/19 18/17
  19/17 20/1 23/8 25/21 33/13
oOo [2]  36/22 37/1
open [1]  32/6
operational [1]  14/18
OPPORTUNITY [1]  1/3
opposing [1]  8/2
or [27]  5/1 5/13 6/8 9/11
  9/22 9/24 12/25 13/10 13/25
  14/23 15/6 15/7 17/8 17/9
  24/7 24/14 24/22 26/6 26/15
  28/17 30/7 30/9 30/22 32/25
  34/20 35/19 35/20
other [15]  5/12 5/25 8/15
  11/5 11/6 19/7 26/6 26/7
  29/3 32/25 34/11 34/12 34/20
  35/11 35/17
others [1]  23/20
ounce [1]  9/3
our [7]  6/11 6/12 8/2 10/9
  10/9 10/14 20/13
out [2]  6/15 36/16
outcome [1]  28/14
over [5]  15/11 15/25 18/4
  18/5 23/9
overly [1]  23/4
own [6]  15/11 15/18 31/8
  34/10 35/1 36/3
owned [1]  18/13
owns [1]  25/7

## P

page [17]  4/23 5/2 5/5 5/7
  7/14 14/21 16/15 16/17 17/7
  20/5 24/8 33/18 33/21 33/25
  34/1 34/15 34/24
Page 152 [1]  24/8
Page 160 [3]  5/2 5/5 14/21
Page 19 [1]  7/14
Page 2 [1]  33/21
Page 41 [2]  16/17 20/5
Page 5 [3]  33/18 33/25 34/1
Pages [1]  22/16
paid [1]  18/6
papered [2]  35/7 35/10
papers [4]  5/21 31/22 31/23
  33/10
paragraph [9]  4/19 7/19 17/17
  17/19 26/11 33/20 33/25
  34/14 34/15
Paragraph 10 [1]  7/19

Paragraph 1C [1]  26/11
Paragraph 1B [1]  33/25
Paragraph 1D [2]  34/14 34/15
paragraphs [1]  33/14
PARALLEL [1]  1/7
Pardon [3]  12/23 27/6 35/15
part [4]  1/2 15/4 27/3 35/18
particularly [2]  5/23 8/21
parties [5]  3/19 26/8 30/2
  34/21 34/23
PARTNERS [1]  1/4
party [2]  15/7 29/2
pass [1]  8/13
people [1]  15/11
percent [7]  15/12 16/1 17/11
  18/18 18/18 23/6 25/7
perform [1]  22/25
performance [1]  4/3
period [1]  9/5
person [2]  34/12 34/20
personal [2]  34/9 34/21
persons [1]  34/11
phone [1]  31/14
phonetic [2]  4/3 4/25
place [3]  8/3 25/21 25/23
places [1]  7/5
plain [1]  3/10
plaintiff [12]  16/6 28/17
  29/2 29/2 29/11 29/13 29/14
  30/4 30/25 36/9 36/9 36/9
plaintiff's [4]  15/13 24/15
  26/22 31/7
plaintiffs [33]  1/5 1/15 2/13
  6/6 6/20 7/9 7/13 7/16 8/6
  8/16 8/17 9/12 9/18 10/3
  11/19 13/10 15/15 16/2 28/17
  29/20 30/1 30/23 30/24 31/2
  31/12 32/2 32/8 32/13 32/19
  32/25 33/2 33/23 35/13
pleadings [1]  9/19
please [4]  17/1 22/10 33/7
  33/18
point [3]  20/1 20/1 25/15
PORTAS [2]  1/24 36/25
position [4]  7/11 13/11 27/9
  27/21
possession [1]  27/3
potentially [1]  35/12
power [6]  22/13 22/24 24/14
  24/16 24/21 26/9
powers [6]  24/2 24/6 24/20
  26/24 27/2 28/6
precisely [4]  6/22 22/20
  30/20 30/21
preface [1]  16/12
presents [1]  2/25
prevented [1]  18/3
principal [1]  8/22
principals [2]  9/19 29/3
prior [2]  2/23 27/3
privy [1]  7/4
problem [4]  16/9 21/2 21/4
  21/7
Procedurally [1]  31/16
proceeded [1]  12/20
proceeding [6]  31/17 31/20
  31/25 32/3 32/3 32/4
proceedings [2]  36/20 36/23
prohibited [2]  19/5 27/15
provision [8]  5/3 5/10 15/6
  18/14 18/17 19/11 20/24
  22/19
provisions [3]  19/13 20/13

## P

provisions... [1]  26/16
purchased [1]  15/25
pure [1]  3/1
purported [3]  2/19 3/11 7/22
purpose [3]  20/14 23/4 35/5
purposes [1]  8/10
put [1]  11/2
putting [1]  4/7
puzzles [1]  32/16

## Q

qualifications [1]  22/14
question [5]  3/1 3/3 3/21 6/7
 9/21
questioned [1]  7/13
questions [1]  9/1
quote [5]  3/11 7/14 7/15 7/17
 31/10

## R

R.P.R [1]  1/24
raft [1]  30/12
RAMOS [1]  1/12
rather [3]  3/25 4/4 4/5
reach [1]  8/16
read [1]  5/21
really [6]  6/6 7/4 7/4 8/9
 11/7 32/16
reason [3]  21/4 21/6 35/18
reasons [1]  18/4
recall [1]  6/11
Reese [1]  4/3
refrain [2]  24/8 24/22
refused [1]  7/22
regard [1]  26/24
relating [2]  3/1 22/20
release [6]  34/6 34/8 34/12
 34/17 36/3 36/8
releases [3]  33/21 35/3 35/11
relevant [1]  5/9
relief [1]  2/18
remedies [3]  20/16 24/11
 24/24
remedy [1]  2/16
remember [3]  2/24 16/20 19/16
rendered [1]  13/13
reporter [3]  1/25 2/4 36/25
represent [3]  12/7 29/3 34/25
representative [7]  8/12 28/13
 29/22 32/20 34/10 36/4 36/5
representatives [2]  34/9 34/22
represented [2]  29/5 29/18
Representing [1]  17/11
require [2]  14/8 16/10
requirement [1]  23/19
requirements [1]  15/4
requires [3]  15/1 19/18 35/20
requiring [1]  3/14
requisite [58]
res [9]  6/10 6/12 6/17 10/18
 28/2 28/9 28/11 33/4 35/19
res judicata [9]  6/10 6/12
 6/17 10/18 28/2 28/9 28/11
 33/4 35/19
resolve [4]  10/14 10/18 33/4
 35/4
resolved [3]  35/14 35/16
 35/18
resolving [1]  35/5
respect [8]  6/7 6/9 6/19 6/25
 13/14 23/6 23/19 27/2

rest [1]  18/5
restriction [1]  20/22
restrictions [2]  19/7 20/21
result [5]  2/25 4/17 4/18
 10/10 12/17
right [13]  2/6 4/19 5/24
 15/10 18/15 18/20 19/9 25/2
 27/10 28/22 29/6 34/2 34/5
rights [11]  20/21 22/17 22/20
 22/21 23/5 23/7 24/10 25/20
 25/20 31/17 31/18
ROBERT [4]  1/17 1/24 2/12
 36/25
Roman [3]  5/16 16/12 17/12
Roman-ette [3]  5/16 16/12
 17/12
ROSS [1]  1/23
ROTH [2]  1/15 2/12
RPR [1]  36/25
run [1]  9/9
runs [1]  14/18

## S

said [6]  6/14 7/8 7/18 9/6
 10/8 21/8
sale [1]  27/3
same [4]  6/22 27/1 30/20
 30/21
satisfy [1]  31/16
saving [1]  4/15
saw [1]  29/23
say [12]  7/1 11/3 12/13 14/8
 18/12 19/10 19/14 21/19
 22/17 31/18 33/14 33/15
saying [11]  20/1 20/22 23/23
 24/13 26/23 27/17 28/16
 28/19 28/19 29/16 34/3
says [9]  5/10 11/2 16/12
 19/16 19/20 19/22 33/21 36/2
 36/2
scanned [1]  30/16
scheduling [2]  9/7 9/8
SCHULTE [2]  1/15 2/12
searchable [1]  25/23
seat [1]  33/2
second [2]  9/16 16/9
Secondly [1]  21/15
seconds [1]  17/16
section [7]  3/13 22/23 24/8
 24/12 24/23 24/25 25/24
Section 10.5B [2]  3/13 22/23
Section 2.22 [1]  25/24
Section 9.3B [2]  24/8 24/23
Sections [1]  15/5
see [7]  4/9 5/11 5/25 23/15
 33/20 34/4 34/6
seek [1]  26/7
seeking [2]  13/25 26/7
seeks [1]  2/16
senior [4]  1/25 18/2 18/2
 36/25
sense [1]  5/5
sentence [1]  34/5
separate [1]  14/25
served [3]  9/12 31/22 31/23
settled [2]  21/8 35/1
settlement [15]  8/16 9/10
 9/11 9/12 29/2 33/8 33/10
 33/22 35/4 35/4 35/7 35/8
 35/10 35/20 35/22
shall [4]  5/14 15/8 21/17
 34/17

should [2]  6/22 12/18
sgwould [1]  21/6
showed [1]  20/5
side [1]  5/25
sidelight [1]  17/15
simple [1]  3/6
since [2]  10/8 16/7
situations [3]  26/13 26/20
 26/20
slight [1]  19/13
slower [1]  31/15
so [22]  4/10 8/9 9/17 9/17
 9/25 10/23 10/24 11/11 11/12
 11/15 13/20 14/18 14/18 18/3
 18/21 20/12 20/19 23/5 23/21
 23/21 25/18 32/12
sold [1]  25/17
sole [1]  20/14
solely [2]  34/8 36/3
soliciting [1]  14/1
some [8]  9/5 12/16 13/18 18/9
 18/24 25/24 28/1 30/6
something [3]  15/3 25/2 30/16
sorry [4]  17/1 17/1 29/18
 31/9
sort [1]  30/6
sought [1]  2/18
SPALTEN [1]  1/22
speak [2]  24/9 33/3
speaking [1]  26/1
speaks [2]  26/2 26/13
specific [4]  14/2 14/19 26/8
 27/17
SPECTRUM [1]  1/3
sponsor [1]  17/25
start [1]  11/10
starts [4]  5/7 5/8 33/21 34/3
STATE [1]  1/1
statement [1]  7/12
statements [5]  9/17 9/19
 30/12 30/13 30/14
status [1]  7/23
stay [1]  16/14
step [1]  19/6
steps [1]  19/5
still [1]  21/21
stop [1]  27/20
straight [2]  2/15 3/6
Street [1]  1/10
Strike [1]  22/5
subject [3]  6/21 15/4 22/6
submit [1]  4/6
substance [1]  23/9
substantial [1]  4/6
successors [2]  34/9 34/22
such [2]  3/23 20/15
sued [9]  29/22 29/24 30/5
 31/5 31/7 31/8 31/10 32/19
 32/20
sues [1]  33/13
suing [2]  29/23 36/5
suited [1]  8/10
sum [1]  17/12
summary [5]  2/14 2/18 3/21
 6/7 9/13
supplement [1]  14/24
support [1]  12/20
supposed [2]  11/4 27/1
SUPREME [1]  1/1
Sure [2]  18/7 26/12
sworn [2]  9/19 30/13

## T

take [5]  4/14 19/13 19/14

**T**

take... [2]   23/16 28/9
taking [1]   18/4
talk [2]   11/11 28/2
talking [2]   11/10 16/16
talks [3]   9/12 14/2 25/24
task [1]   4/8
technical [1]   23/4
teed [1]   3/6
teed-up [1]   3/6
teeing [1]   8/25
tell [1]   16/9
ten [1]   34/1
term [31]   11/22 11/22 12/9
 12/14 12/14 12/16 13/6 13/6
 13/15 13/16 13/18 13/19 16/3
 16/3 16/4 17/9 17/10 17/12
 17/14 18/11 19/1 19/10 19/15
 20/5 20/6 20/22 20/23 21/12
 26/5 26/5 29/9
terminate [1]   26/15
termination [2]   5/13 15/6
terms [3]   3/4 3/10 26/6
than [9]   4/4 4/5 5/12 17/11
 23/6 25/7 29/3 33/20 34/20
Thank [7]   2/10 10/22 36/12
 36/14 36/15 36/18 36/19
Thanks [1]   6/2
that [147]
that's [32]   4/2 4/21 5/9 5/19
 5/23 6/22 7/18 9/25 10/1
 14/25 15/2 15/3 15/20 16/7
 16/17 17/10 18/24 19/19 22/1
 22/15 23/19 24/8 24/12 24/23
 24/25 25/23 25/23 26/13
 26/21 26/22 27/10 35/9
their [21]   3/17 7/6 7/9 7/11
 7/14 7/15 8/10 8/12 9/18
 9/19 9/20 9/21 11/20 11/20
 22/15 22/16 30/13 31/18
 32/20 34/21 35/1
them [4]   6/23 8/10 20/13 29/6
themselves [3]   4/4 4/5 23/18
then [16]   4/10 5/16 8/13 8/17
 9/4 9/11 9/21 10/14 17/11
 21/16 25/15 26/1 27/19 28/13
 28/13 33/1
there [67]
there's [12]   4/9 6/4 7/12
 17/23 20/16 25/5 25/6 25/7
 25/23 27/14 28/5 28/6
thereby [3]   3/14 4/14 5/13
therefrom [1]   15/8
therein [1]   33/14
thereof [3]   5/14 16/13 19/16
these [18]   6/15 8/15 8/16
 9/13 9/17 9/18 9/18 10/15
 10/16 10/25 24/16 30/1 30/10
 31/11 32/8 32/13 32/24 35/13
they [61]
they're [8]   4/7 10/13 12/12
 12/13 15/21 26/23 27/22
 29/24
things [2]   14/18 24/17
think [5]   6/5 7/12 11/18
 23/22 25/13
third [17]   1/16 13/1 13/7
 13/13 17/20 17/23 18/8 18/10
 18/12 18/21 19/7 20/8 20/19
 22/18 25/12 27/22 27/25
thirty [1]   17/16
this [45]

those [4]   3/16 19/11 19/
 23/17
though [3]   12/17 19/3 19/12
thought [1]   11/24
three [2]   9/11 22/5
through [7]   2/11 22/16 24/20
 26/10 29/25 30/2 34/4
thus [1]   23/3
time [5]   8/2 9/5 13/5 13/9
 19/9
timely [1]   4/18
too [1]   13/2
took [3]   13/11 18/4 19/6
TORRES [1]   1/20
transaction [1]   5/22
transcript [2]   6/13 36/23
transferred [1]   15/24
triable [1]   6/8
trial [1]   3/21
true [4]   12/8 23/25 24/1
 36/23
trying [1]   26/22
two [5]   11/11 19/5 30/23
 31/13 33/5
types [1]   22/21

**U**

Ultimately [1]   9/10
unambiguous [2]   3/4 4/11
unconfuse [1]   2/11
under [16]   3/10 13/22 13/24
 14/2 14/19 14/20 14/22 19/23
 20/8 20/15 22/18 22/21 22/23
 23/10 26/14 31/18
understand [3]   8/24 30/15
 32/15
Unless [1]   26/17
unquote [1]   3/12
until [2]   10/20 11/10
untrue [1]   21/9
unusual [1]   5/4
up [8]   2/4 3/6 8/25 9/9 12/13
 22/24 35/7 35/10
upheld [1]   32/25
upon [2]   3/3 10/1
Urlich [1]   4/25
us [2]   4/14 4/15
use [2]   2/3 18/24

**V**

valid [5]   6/18 30/22 32/11
 33/1 33/1
validity [2]   7/22 32/23
versus [1]   4/3
very [10]   6/13 13/20 13/20
 14/2 14/2 19/25 23/21 23/21
 26/8 27/17
vested [1]   22/21
vote [9]   18/11 18/25 19/9
 19/14 20/15 23/3 23/20 23/20
 25/2
voting [20]   18/14 18/17 20/17
 20/21 20/21 20/24 22/15
 22/15 22/20 22/24 23/5 24/1
 24/10 24/18 24/20 24/23 25/8
 25/20 25/20 27/21

**W**

wait [5]   10/20 14/22 29/19
 29/19 29/19
waited [1]   9/8
waive [1]   26/15

waivers [1]   13/22 22/23 23/7
 24/14
want [4]   8/9 9/9 10/5 31/14
wants [1]   33/3
WARD [2]   1/17 2/12
was [84]
wasn't [3]   8/17 12/17 35/7
way [2]   20/11 32/25
ways [1]   8/9
we [39]
we'll [1]   10/20
we're [4]   2/13 6/1 10/24
 13/20
we've [3]   11/2 11/11 16/16
well [8]   5/8 8/23 9/1 9/20
 12/2 13/7 21/6 28/5
went [2]   30/23 31/12
were [32]   2/23 7/4 18/3 18/8
 18/22 19/5 22/18 25/9 27/2
 28/20 29/1 29/17 30/1 30/1
 30/3 30/23 31/3 31/20 31/22
 31/24 31/24 32/2 32/3 32/8
 32/13 32/14 35/3 35/11 35/11
 36/5 36/7 36/21
weren't [6]   27/24 31/23 32/15
 35/14 35/16 35/17
what [38]
what's [3]   5/3 16/6 19/17
whatsoever [4]   6/24 21/13
 21/14 34/20
when [5]   7/11 8/10 8/13 20/16
 23/14
where [9]   3/18 5/25 7/13 9/5
 10/24 19/9 20/13 30/9 34/3
whereby [1]   15/24
Whereupon [1]   36/20
whether [9]   3/10 3/11 6/8
 7/13 7/15 9/22 9/24 13/10
 30/22
which [24]   4/25 7/2 7/2 7/8
 9/15 10/1 12/21 12/24 14/3
 14/20 15/25 16/16 16/21 20/4
 22/17 26/3 26/3 27/15 29/23
 30/16 33/21 33/25 34/25
 35/18
who [5]   15/11 17/24 25/9
 30/25 31/11
whoever [1]   29/23
whole [7]   4/15 23/15 25/21
 25/22 28/5 28/6 36/4
wholly [1]   22/13
why [7]   11/24 18/24 27/19
 27/21 27/21 27/22 32/15
will [8]   4/13 4/15 4/17 6/11
 6/16 12/7 13/5 21/17
withdrawal [1]   28/17
within [1]   3/13
without [6]   5/11 13/25 15/8
 22/24 23/16 23/16
won [2]   12/10 36/13
words [1]   19/7
world [1]   27/13
would [11]   5/12 5/15 9/7 9/21
 16/13 18/6 21/18 21/19 22/23
 32/24 33/7
written [4]   5/11 12/8 15/9
 36/16
wrong [1]   23/10
wrote [2]   8/2 8/4

**Y**

years [2]   30/24 31/13

**Y**

Yes [11]   10/4 11/14 21/25
  23/13 25/18 29/7 30/11 33/17
  34/7 35/23 36/10
yet [2]   6/15 9/3
YORK [7]   1/1 1/2 1/11 1/11
  1/16 1/16 1/21
you [66]
you'll [5]   2/3 4/13 11/9
  23/15 36/16
you're [7]   11/4 23/23 28/8
  28/16 29/16 30/16 33/20
you've [9]   5/21 21/2 22/6
  22/8 24/4 26/18 26/23 26/24
  28/3
your [125]
yourself [1]   26/24
YUCAIPA [23]   1/7 1/7 7/3
  15/25 17/24 18/13 18/23 19/5
  19/8 20/20 25/6 25/16 25/17
  27/17 27/25 29/15 31/3 31/9
  32/4 33/9 33/23 34/24 35/12
Yucaipa's [3]   7/23 8/7 20/8

**Z**

ZABEL [2]   1/15 2/13