**REDACTED**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (KBO) |
| Debtors. | (Jointly Administered) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET. AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS | Adv. Proc. No. 13-50530 |
| Plaintiff, | |
| BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P., | |
| Intervenors, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., MARK GENDREGSKE, JOS OPDEWEEGH, JAMES FRANK, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., as co- | Adv. Pro. No. 14-50971 (KBO) |

administrative agent, and SPECTRUM
COMMERCIAL FINANCE LLC, as co-
administrative agent,

Plaintiff,

v.

YUCAIPA AMERICAN ALLIANCE FUND I, L.P.,
YUCAIPA AMERICAN ALLIANCE (PARALLEL)
FUND I, L.P., YUCAIPA AMERICAN ALLIANCE
FUND II, L.P., YUCAIPA AMERICAN ALLIANCE
(PARALLEL) FUND II, L.P., RONALD BURKLE,
JOS OPDEWEEGH, DEREX WALKER, JEFF
PELLETIER, IRA TOCHNER, and JOSEPH
TOMCZAK,

Defendants.

## **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, AND IRA TOCHNER**

## TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION..................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................. 4

III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON THE
        CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT ......................... 5

        A.    The Tortious Interference Claim is Time-Barred............................................. 6

              1.    The Allegations Supporting the Tortious Interference Claim. ............. 6

              2.    The Tortious Interference Claim Accrued in August 2009,
                    Rendering It Untimely by More than Two Years. ................................ 7

        B.    There is No Genuine Dispute Concerning Whether the Individual
              Defendants Acted Within the Scope of Their Agency or "Lack[ed]
              Justification" for Their Actions. .......................................................... 10

              1.    There is No Evidence that the Individual Defendants Acted
                    Beyond the Scope of Their Agency from Yucaipa and for Their
                    Own Personal Benefit. ........................................................... 10

              2.    The Trustee has Failed to Create a Genuine Dispute as to
                    Whether the Individual Defendants Lacked "Justification" for
                    Their Actions. ................................................................... 12

        C.    At Least Partial Summary Judgment is Warranted on the Tortious
              Interference Claim Because There is no Genuine Dispute on the Lack
              of Damages Resulting from the Vast Majority of Claimed Injuries. ............ 15

IV.     EACH OF THE INDIVIDUAL DEFENDANTS WHO SERVED ON
        ALLIED'S BOARD HAS BASES FOR COMPLETE OR PARTIAL
        SUMMARY JUDGMENT ...................................................................... 18

        A.    Mr. Opdeweegh is Entitled to Partial or Complete Summary
              Judgment on the Claims Against Him. ...................................................... 18

        B.    Mr. Pelletier is Entitled to Summary Judgment on the Claims Against
              Him. ............................................................................................. 21

        C.    Mr. Tochner is Entitled to Partial or Complete Summary Judgment
              on the Claims Against Him. .............................................................. 25

        D.    Mr. Walker is Entitled to Partial Summary Judgment on the Claim
              for Breach of Fiduciary Duty............................................................. 27

V.      CONCLUSION .................................................................................... 28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AIG Consol. Derivative Litig.*,
   976 A.2d 872 (Del. Ch. 2009).................................................................................12

*Am. Preferred Prescription, Inc. v. Health Mgmt., Inc.*,
   252 A.D.2d 414 (N.Y. App. Div. 1998) ................................................................16

*Andrew Greenberg, Inc. v. Svane, Inc.*,
   36 A.D.3d 1094 (N.Y. App. Div. 2007) ..................................................................6

*BDCM Opportunity Fund II, LP v. Yucaipa Am. Alliance Fund I, LP*,
   No. 65010/2012, 2013 WL 1290394 (N.Y. Sup. Ct. Mar. 8, 2013) .......................13

*Beard Res., Inc. v. Kates*,
   8 A.3d 573 (Del. Ch. 2010).....................................................................................16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................................17

*CMS Inv. Holdings, LLC v. Castle*,
   2015 WL 3894021 (Del. Ch. June 23, 2015).............................................21, 24, 26

*In re Coca-Cola Enters., Inc.*,
   2007 WL 3122370 (Del. Ch. Oct. 17, 2007) ............................................................8

*Coleman v. Pricewaterhousecoopers, LLC*,
   854 A.2d 838 (Del. 2004) .........................................................................................7

*In re CVR Refining LP Unitholder Litig.*,
   2020 WL 506680 (Del. Ch. Jan. 31, 2020)......................................................10, 12

*In re Draw Another Circle*,
   602 B.R. 878 (Bankr. D. Del. 2019) ..............................................................21, 25

*Estate of Eller v. Bartron*,
   31 A.3d 895 (Del. 2011) ...................................................................19, 22, 25

*Gianelli v. RE/MAX of N.Y., Inc.*,
   144 A.D.3d 861 (N.Y. App. Div. 2016) ...................................................................9

*Image Hair Sols. Med. Ctr. v. Fox Television Stations, Inc.*,
   2016 WL 425158 (Del. Super. Ct. Jan. 29, 2016) .................................................15

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001) ....................................................20, 21, 24, 25, 27

## TABLE OF AUTHORITIES
### (*continued*)

Page(s)

*In re Marvel Entm't Grp., Inc.*,
  273 B.R. 58 (D. Del. 2002) ....................................................................7

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) .................................................20, 24, 26, 28

*In re New Stream Secured Cap., Inc.*,
  2014 WL 2608873 (Bankr. D. Del. 2014) ...............................................5

*OptimisCorp v. Waite*,
  2015 WL 5147038 (Del. Ch. Aug. 26, 2015) ........................................10

*In re Opus E., LLC*,
  528 B.R. 30 (Bankr. D. Del. 2015) .........................................5, 8, 12, 16

*Penn Mart Realty Co. v. Becker*,
  298 A.2d 349 (Del. Ch. 1972)................................................................20

*Podobnik v. U.S. Postal Serv.*,
  409 F.3d 584 (3d Cir. 2005).................................................................12

*RLR Realty Corp. v. Duane Reade Inc.*,
  145 A.D.3d 444 (N.Y. App. Div. 2016) ................................................16

*Schiavone v. Bank of Am.*,
  2019 WL 3802473 (D. Del. Aug. 13, 2019) ...........................................7

*Shearin v. E.F. Hutton Group, Inc.*,
  652 A.2d 578 (Del. Ch. 1994)...............................................................10

*SmithKline Beecham Pharm. Co. v. Merck & Co.*,
  766 A.2d 442 (Del. 2000) .......................................................................6

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
  860 A.2d 312 (Del. 2004) .......................................................................7

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
  901 A.2d 106 (Del. 2006) .......................................................................9

*Wavedivision Holdings, LLC v. Highland Cap. Mgmt. L.P.*,
  2011 WL 5314507 (Del. Super. Ct. Nov. 2, 2011)....................13, 14, 15

*WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*,
  49 A.3d 1168 (Del. 2012) .............................12, 13, 14, 15, 18, 19, 22

iii

# TABLE OF AUTHORITIES
### (*continued*)

Page(s)

**Statutes**

10 Del. Code § 8106 ................................................................................................................6

N.Y. C.P.L.R. 214................................................................................................................6

# I.    INTRODUCTION

In addition to the various claims brought against the Yucaipa entities in the two Complaints at issue, the Complaints also tack on a handful of claims against four individuals who served at various points in time on Allied's board of directors—Derex Walker, Ira Tochner, Jeff Pelletier, and Jos Opdeweegh—along with Ron Burkle, the founder and managing partner of Yucaipa, who never served on the Allied board.[1]  These claims against the Individual Defendants are entirely derivative of the claims against Yucaipa.  And they appear to have been an afterthought—which explains why several of them are unsupported by any evidence on key elements, and why the theory behind other claims runs fundamentally counter to the undisputed facts of the case.

Specifically, the Lender Complaint asserts that the Individual Defendants tortiously interfered with the FLCA and the Third Amendment, premised on the theory that they "caused" Yucaipa to acquire first lien debt and the Requisite Lender position in August 2009, which Yucaipa then supposedly leveraged in late 2011 and 2012 to "hijack" negotiations with JCT.  And the Estate Complaint alleges that the former board members breached their fiduciary duties and aided and abetted others' breaches—largely premised on Yucaipa's acquisition of the Requisite Lender position and the ways in which Yucaipa then purportedly misused that position.

For the following reasons, the Individual Defendants are entitled to complete, or in some cases at least partial, summary judgment on the claims against them.

*First*, as with the Contract-Based Claims against Yucaipa, the tortious interference claim in the Lender Complaint—which is asserted against all the Individual Defendants—is entirely time-barred under the applicable three-year statute of limitations.  The Lender Complaint was not filed until November 19, 2014, so any tortious interference claim would be untimely unless it

---

[1]    The Estate Complaint also includes claims against Allied's former CEO and board member Mark Gendregske, who is separately represented in these proceedings and is filing his own summary judgment motion.  This brief incorporates by reference the argument section of Mr. Gendregske's motion, except for section II.

accrued on or after November 19, 2011.  But here, the undisputed evidence shows that this claim accrued *more than two years before that*, when the alleged acts of tortious interference took place.  The Trustee specifically identifies the Individual Defendants' alleged acts as "causing" Yucaipa to breach the FLCA and the Third Amendment by acquiring a majority stake in Allied's first lien debt and becoming the Requisite Lender, all of which happened in August 2009.  As a result, the Individual Defendants are entitled to summary judgment on this claim.

*Second*, under Delaware law, the Individual Defendants, as agents of Yucaipa, cannot be held liable under a tortious interference theory based on *Yucaipa's* supposed breach of contract—unless they acted beyond the scope of their agency to benefit themselves individually. But there is no evidence that this was the case.  Relatedly, there is no evidence that the Individual Defendants' actions were "without justification"—which is another essential element of the tortious interference claim.  To the contrary, the undisputed evidence demonstrates that, when they acted, the Individual Defendants were justified in relying on the passage of the Fourth Amendment to the FLCA (which was not invalidated by a New York court until years later), and that they were acting to ensure that Allied maintained key customer contracts and avoided bankruptcy.

*Third*, discovery also has revealed that the Trustee has no evidence to support the essential element of "resulting damages" as to six of the seven discrete allegations of harm flowing from the alleged tortious interference.  Although the Lender Complaint asserts that the Individual Defendants' alleged tortious interference caused damage to the First Lien Lenders in a variety of ways (e.g., allowing Yucaipa to preclude a restructuring of Allied), the Trustee's fact witnesses and expert damages witness were able to put forth evidence as to *only one* of those alleged injuries—the JCT Negotiations.  Accordingly, even if this claim were not completely time-barred, the Individual Defendants are still entitled to at least partial summary judgment as to all but one of the alleged kinds of resulting "damages."

*Fourth*, certain of the Individual Defendants are entitled to partial summary judgment based on their undisputed dates of service on the Allied Board, and their undisputed lack of

involvement with Allied at the other times when they were not on the board.  For example:

- On the tortious interference claim, there is no evidence to support the allegation that certain Individual Defendants "intentionally and maliciously" induced Yucaipa to breach the FLCA/Third Amendment when they had no substantive involvement with Yucaipa or Allied at all during the alleged time periods.

- Similarly, on the claim for breach of fiduciary duty, the only basis for asserting that the Individual Defendants owed a fiduciary duty to Allied stems from their service on the Allied board.  As a matter of law and logic, then, these defendants cannot be liable for the alleged acts constituting the breach that occurred *before* or *after* their dates of board service.

- Nor, as a matter of law, can the Individual Defendants who sat on the board be liable for aiding and abetting others' breaches of fiduciary duty during their tenure on Allied's board because at those times, they indisputably owed fiduciary duties to Allied.  Under Delaware law, a defendant cannot be liable for aiding and abetting others' breaches at the same time that the defendant himself owed a fiduciary duty. And for the periods that some of the Individual Defendants were not on the board, the Trustee has no evidence that they "knowingly participated" in others' breaches, so the aiding-and-abetting claim necessarily fails as well.

*Fifth*, many of the breach of fiduciary duty allegations fail as a matter of law, or due to a complete lack of evidence, as to all of the Individual Defendants who served on Allied's board.

\*   \*   \*

Accordingly, the Individual Defendants respectfully seek complete or partial summary judgment as follows:

<u>Lender Complaint</u>:

1. Summary judgment in favor of all Individual Defendants on the only claim asserted against them for tortious interference with contract.

Estate Complaint:

1. Summary judgment in favor of Mr. Opdeweegh on the aiding-and-abetting claim, and partial summary judgment on the breach of fiduciary duty claim.

2. Summary judgment in favor of Mr. Pelletier on the aiding-and-abetting and breach of fiduciary duty claims.

3. Summary judgment in favor of Mr. Tochner on the aiding-and-abetting claim, and partial summary judgment on the breach of fiduciary duty claim.

4. Partial summary judgment in favor of Mr. Walker on the breach of fiduciary duty claim.

## II.    FACTUAL BACKGROUND[2]

Derex Walker and Ira Tochner are both current partners of the Yucaipa Firm, an affiliate of Yucaipa.  (Tochner Decl. ¶ 2; Walker Decl. ¶ 2.)  Mr. Walker was the chairman of the Allied board of directors and served on the board from May 2007 through December 2013.  (Scolnick Decl., Ex. 142 at 49 (Mr. Walker's Response to Interrogatory 9).)  Mr. Tochner served on the Allied board over two time periods:  from May 2007 to January 2008, and then again from April 2009 through December 2013.  (*Id.* at 48 (Mr. Tochner's Response to Interrogatory 9).)

Jos Opdeweegh was an operating partner of the Yucaipa Firm from March 2008 to April 2009.  (Scolnick Decl., Ex. 3 at 25, 32–37; Ex. 142 at 42 (Mr. Opdeweegh's Response to Interrogatory 8).)  He served on the Allied board of directors from May 2007 to October 9, 2009.  (*Id.* Ex. 142 at 47 (Mr. Opdeweegh's Response to Interrogatory 9); Ex. 143.)  After resigning from the Allied board on October 9, 2009, he had no further involvement with Allied.  (Opdeweegh Decl. ¶ 7; Scolnick Decl., Ex. 3 at 176–77.)

Jeff Pelletier is a current partner of the Yucaipa Firm.  (Pelletier Decl. ¶ 2; Scolnick Decl., Ex. 5 at 24.)  He served on the Allied board of directors from October 29, 2009 (following Mr. Opdeweegh's resignation) through December 2013.  (Pelletier Decl. ¶ 3; Scolnick Decl., Ex.

---

[2] This brief incorporates Yucaipa's Motion for Summary Judgment by reference.  The additional facts set forth here are those unique to the issues raised in this Motion and assume a working knowledge of the facts set forth in Yucaipa's Motion for Summary Judgment.

144 at 1.)  He was not involved with Allied on any relevant issue before joining the Allied

board—his role before that was limited to assisting with Allied's labor relations.  (Pelletier Decl.

¶ 4; Scolnick Decl., Ex. 5 at 68–69, 116–117.)

Ron Burkle is the founder and managing partner of the Yucaipa Firm.  (Burkle Decl. ¶ 2;

Scolnick Decl., Ex. 12 at 14.)  He never served on Allied's board.

### III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON THE CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

The Lender Complaint's fourth cause of action alleges tortious interference with contract

("Tortious Interference Claim") against each of the Individual Defendants.  To survive summary

judgment on this claim, the Trustee must be able to demonstrate a triable issue of material fact on

each of the following elements: "(1) the existence of a contract; (2) the defendant was aware of

the contract; (3) the defendant acted intentionally to cause a breach of the contract; (4) a lack of

justification; and (5) injury."  *In re Opus E., LLC*, 528 B.R. 30, 107 (Bankr. D. Del. 2015)

(quoting *In re New Stream Secured Cap., Inc.*, 2014 WL 2608873, at *5 (Bankr. D. Del. 2014)).

As a preliminary matter, the Court should grant summary judgment to the Individual

Defendants because this claim is completely time-barred under the applicable three-year statute

of limitations, and discovery has revealed no genuine factual dispute on this issue.

Separately, there is no genuine dispute of material fact about whether the Individual

Defendants either (a) acted beyond the scope of their agency from Yucaipa, to benefit

themselves individually, in supposedly inducing Yucaipa to breach the FLCA; or (b) acted

"without justification" in doing the things that allegedly constituted tortious interference.

Lastly, the Trustee has no evidence to support the essential element of resulting injury as

to six of the seven pleaded allegations that make up the Tortious Interference Claim.  The only

allegation that could survive would be the one asserting injury from the JCT Negotiations; the

rest are subject to partial summary judgment because the Trustee has no evidence to support any

damage associated with them.

**A.      The Tortious Interference Claim is Time-Barred.**

The Lender Complaint was filed on November 14, 2014.  There is a three-year statute of limitations for tortious interference claims set forth in Delaware Code Title 10, section 8106. *See* 10 Del. Code § 8106; *SmithKline Beecham Pharm. Co. v. Merck & Co.*, 766 A.2d 442, 450 (Del. 2000) (applying the three-year statute to a tortious interference claim).[3]  Thus—as with the Contract-Based Claims brought against Yucaipa—the Lender Complaint's Tortious Interference Claim is time-barred unless it accrued on or after November 19, 2011.  It did not, so the Individual Defendants are entitled to judgment in their favor as a matter of law on these claims.

**1.      The Allegations Supporting the Tortious Interference Claim.**

The Tortious Interference Claim arises from the Individual Defendants' supposed involvement in causing a single event—Yucaipa's alleged August 2009 breach of the FLCA/Third Amendment through the purchase of the majority of Allied's first lien debt from ComVest, resulting in Yucaipa becoming the Requisite Lender.  Specifically, the Lender Complaint alleges that the Individual Defendants "induced multiple breaches by Yucaipa of the FLCA through their control of Yucaipa" by:

- Causing Yucaipa to purchase ComVest's first lien debt, which resulted in Yucaipa becoming the Requisite Lender and precluded the First Lien Lenders from exercising remedies available under the FLCA.  (Lender Compl. ¶ 135(a).)

- Causing Yucaipa to "wrongfully act[]" as the Requisite Lender in late 2011 and early 2012 by "hijack[ing]" the JCT Negotiations through insisting on terms that would benefit Yucaipa, rather than Allied, and demanding favorable terms relative to the other First Lien Lenders.  (*Id.* ¶ 135(b).)

The Lender Complaint alleges that these breaches damaged the First Lien Lenders by allowing

---

[3]  Unlike the Contract-Based Claims against Yucaipa, no choice-of-law analysis is necessary here because the Tortious Interference Claim unquestionably is subject to Delaware law, both substantively and procedurally.  But in any event, even under New York law, the statute of limitations for tortious interference claims would also be three years. *See* N.Y. C.P.L.R. 214; *Andrew Greenberg, Inc. v. Svane, Inc.*, 36 A.D.3d 1094, 1099 (N.Y. App. Div. 2007).

Yucaipa to commit various purported acts of misconduct, all of which the Trustee alleges arose from Yucaipa's August 2009 acquisition of first lien debt and resulting Requisite Lender status. (*See id.* ¶ 140(a)–(g).)

    **2.    The Tortious Interference Claim Accrued in August 2009, Rendering It Untimely by More than Two Years.**

All tort claims subject to the three-year limitations period of Delaware's section 8106— including tortious interference with contract—"accrue[] and the statute begins to run, at the moment of the wrongful act and not when the effects of the act are felt." *Schiavone v. Bank of Am.*, 2019 WL 3802473, at *4 (D. Del. Aug. 13, 2019) (dismissing fraud claim with prejudice because the alleged fraudulent conduct occurred more than three years before the complaint was filed). The Delaware Supreme Court "has repeatedly held that a cause of action 'accrues' under Section 8106 *at the time of the wrongful act*, even if the plaintiff is ignorant of the cause of action." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) (emphasis added); *see also In re Marvel Entm't Grp., Inc.*, 273 B.R. 58, 74 (D. Del. 2002) ("[T]he determinative issue is when the specific acts of alleged wrongdoing occurred, and not when their effect is felt."); *Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838, 842 (Del. 2004) ("Ignorance of the cause of action will not toll the statute, absent concealment or fraud, or unless the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of.").

Here, the Lender Complaint alleges that the Individual Defendants induced Yucaipa to breach the FLCA/Third Amendment by acquiring ComVest's first lien debt in August 2009 (Lender Compl. ¶ 135(a)), resulting in Yucaipa declaring itself to be the Requisite Lender (*id.* ¶ 140(a)–(b)). These claims are indisputably time-barred because they accrued in August 2009, and discovery has revealed no genuine basis for a dispute as to this timing.

As with the Contract-Based Claims against Yucaipa, the Lender Complaint lists specific *examples* of what Yucaipa purportedly did once it breached the FLCA/Third Amendment by acquiring the Requisite Lender position. (*Id.* ¶ 140(c)–(g).) However, as with the Contract-

Based Claims, these later allegations do not change the accrual date for the Tortious Interference Claim:  none of the post-August 2009 allegations that the Individual Defendants supposedly induced are themselves breaches (by Yucaipa) of any term of the FLCA or the Third Amendment.[4]  Nothing in those agreements prevents the Requisite Lender from (a) allowing Allied not to make interest or principal payments (*id.* ¶ 140(c)); (b) precluding a restructuring (*id.* ¶ 140(d)); (c) bringing or defending litigation regarding the validity of Requisite Lender status (*id*. ¶ 140(f)); or (d) negotiating with a third party to sell debt and demanding "beneficial and favorable terms" for itself, compared with other Lenders.  (*Id.* ¶ 140(e).)

Indeed, the Lender Complaint explicitly acknowledges that these post-August 2009 allegations were not themselves breaches of the FLCA/Third Amendment.  Rather, according to the Lender Complaint, the post-August 2009 allegations are listed among "the following ways" in which "Yucaipa's breaches of the [FLCA] *damaged* the First Lien Lenders."  (Lender Compl. ¶ 140 (emphasis added).)  In other words, the post-August 2009 examples are alleged to be the purported harmful effects of Yucaipa "us[ing] its status as purported Requisite Lender" (*id.* ¶ 140(c)–(e)), and its "usurpation of Requisite Lender status" (*id.* ¶ 140(f)–(g)), both of which indisputably occurred in August 2009.  And because, as noted above, a cause of action "accrues at the moment of the wrongful act—not when the harmful effects of the act are felt" (*In re Coca-Cola Enters., Inc.*, 2007 WL 3122370, at *5 (Del. Ch. Oct. 17, 2007)—these post-August 2009 examples of harm flowing from Yucaipa's alleged August 2009 breach do not get their own unique accrual dates.

Likewise, Yucaipa's purported "hijack[ing]" of the JCT Negotiations in late 2011 and early 2012—although alleged as a separate "breach" of contract that the Individual Defendants supposedly induced (Lender Compl. ¶ 135(b))—is just another specific example of how Yucaipa

---

[4]  Under Delaware law, two essential elements of a tortious interference claim are the existence of a contract, and that a defendant intentionally caused a breach of that contract.  *In re Opus E., LLC*, 528 B.R. at 107.

allegedly *used* the Requisite Lender status that it acquired in August 2009. Yucaipa's negotiation tactics were not (and are not alleged to be) in and of themselves a breach of any specific provision of the FLCA or the Third Amendment.[5] To the contrary, each First Lien Lender was free to negotiate with any eligible third-party buyer and to set the price it would accept for its debt, as Spectrum did with Yucaipa in December 2008, and as BD/S did with both ComVest and JCT.

For the avoidance of doubt, the Lender Complaint emphasizes that Yucaipa's purported "hijack[ing]" of the JCT Negotiations *depended upon* Yucaipa "wrongfully acting as Requisite Lender" (*id.* ¶ 135(b)), and it lists the JCT Negotiations as an example of the harm resulting from the breach of the FLCA/Third Amendment that occurred in August 2009 when Yucaipa "improper[ly] usurp[ed] . . . Requisite Lender status." (*Id.* ¶ 140 (e), (g).)

In sum, the Tortious Interference Claim is barred in its entirety by the three-year statute of limitations. When Yucaipa acquired the majority of first lien debt from ComVest in August 2009—and with it, Requisite Lender status—it is undisputed that the Lenders knew and understood that Yucaipa could, and did, try to exercise, or refrain from exercising, powers flowing from that status. (*See* Scolnick Decl. Ex. 85 at 1–2 (█████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████); Ex. 90 at 1–2; Ex. 91 at 1–2; *see also id.* Ex. 88 (██████████ ████████████████████████████████████████████████████████).) As such, the Tortious Interference Claim necessarily accrued in August 2009, regardless of whether some of the "effects" of the alleged breach were felt later in various ways as a result of Yucaipa purportedly exercising the Requisite Lender status that it acquired in August 2009.

---

[5] A successful breach of contract cause of action requires a showing "that a specific provision of the contract was breached." *Gianelli v. RE/MAX of N.Y., Inc.*, 144 A.D.3d 861, 862 (N.Y. App. Div. 2016) (affirming summary judgment where plaintiff failed to identify specific contract provision); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006) (dismissing breach of contract claim because plaintiff "ha[d] not identified any express contract provision that was breached").

**B.    There is No Genuine Dispute Concerning Whether the Individual Defendants Acted Within the Scope of Their Agency or "Lack[ed] Justification" for Their Actions.**

The Tortious Interference Claim also fails as a matter of law given the complete absence of evidence that the Individual Defendants acted beyond the scope of their agency from Yucaipa for their own personal benefit.  Nor is there a genuine dispute about whether they acted "without justification," another essential element of this claim.  To the contrary, the undisputed evidence demonstrates that the Individual Defendants reasonably believed and understood that all of Yucaipa's alleged "breaches" of the FLCA were in fact lawful and expressly allowed under the Fourth Amendment, and that Yucaipa's debt purchase and subsequent actions were necessary and appropriate to avoid another Allied bankruptcy and to assuage customer concerns.

**1.    There is No Evidence that the Individual Defendants Acted Beyond the Scope of Their Agency from Yucaipa and for Their Own Personal Benefit.**

Under Delaware law, agents "of a contracting corporation cannot be held personally liable for inducing a breach of contract by their corporations when they act within their given role."  *In re CVR Refining LP Unitholder Litig.*, 2020 WL 506680, at \*17 (Del. Ch. Jan. 31, 2020) (quoting *OptimisCorp v. Waite*, 2015 WL 5147038, at \*76 n.602 (Del. Ch. Aug. 26, 2015)).  "Stated differently, an officer or director may be held personally liable for tortious interference with a contract of the corporation if, and only if, said director exceeds the scope of his agency in doing so."  *Id.* at \*18 (quoting *OptimisCorp*, 2015 WL 5147038, at \*76 n.602) (dismissing tortious interference claim where there were no allegations that the defendants exceeded the scope of their agency with the corporation).

This rule makes perfect sense, because a corporation can act only through its agents—so if the corporation breaches a contract, that does not create a separate tort against the agents who acted on behalf of the company, unless those agents exceeded the scope of their agency.  *See Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 590 (Del. Ch. 1994) ("[E]mployees or directors of a contracting corporation cannot be held personally liable for inducing a breach of contract by their corporations when they act within their role." (citations omitted)).

Here, the Lender Complaint alleges that the Individual Defendants "induced multiple

10

breaches *by Yucaipa*" of the FLCA by "caus[ing] Yucaipa to purchase ComVest's First Lien Debt" and causing Yucaipa to "hijack" the JCT Negotiations.  (Lender Compl. ¶ 135.) Critically, the Lender Complaint includes the boilerplate allegation that in inducing these purported breaches, the Individual Defendants "exceeded the scope of their agency as Yucaipa managers, employees, and/or agents."  (*Id.* ¶ 138.)  Yet elsewhere, the Lender Complaint alleges that the Individual Defendants who sat on Allied's board acted at all relevant times in their capacities as Allied directors, at the direction of and for the benefit of Yucaipa.  (*Id.* ¶¶ 33–37.) And after extensive discovery, the Trustee can proffer no evidence whatsoever to support the allegation that the Individual Defendants exceeded the scope of their agency.  Nothing in the record demonstrates that the Individual Defendants were acting "in their *individual* capacities." (*Id.* ¶ 135 (emphasis added).) ██████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████ (Scolnick Decl., Ex. 145 at 6 (██████████████████████); *id.* Ex. 146 at 6 (████████████████████).)

Further, the Lender Complaint alleges generically that in inducing Yucaipa's purported breaches, the Individual Defendants "were not pursuing in good faith the legitimate profit-seeking activities of Yucaipa or [Allied].  Rather, they were pursing (*sic*) to benefit *themselves individually*[.]"  (Lender Compl. ¶ 139 (emphasis added).)  Here, too, discovery has revealed zero record evidence to support this contention.  And the Lender Complaint again contradicts itself by alleging that the Individual Defendants caused Yucaipa to hijack the JCT Negotiations "by insisting on terms that would *benefit Yucaipa*"—not themselves personally—and "by demanding that any deal disproportionately *favored Yucaipa*," not the Individual Defendants personally.  (*Id.* ¶ 135(b).) ████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ (*See, e.g.*, Scolnick Decl., Ex. 120 at 13

(█████████████████) (emphasis added); Ex. 121 at 13 (█████████████████);
Ex. 147 at 13 (█████████████████); Ex. 148 at 13 █████████████████).)

For purposes of this analysis, it does not matter whether some of the Individual

Defendants stood to benefit from Yucaipa's actions to the extent Yucaipa benefitted.  Rather,

under Delaware law, the relevant question is whether the "corporate agent responsible for the

wrongdoing was acting *solely* to advance his *own personal financial interest*, rather than that of

the corporation itself."  *In re AIG Consol. Derivative Litig.*, 976 A.2d 872, 891 (Del. Ch. 2009)

(emphasis added); *accord In re CVR Refining LP Unitholder Litig.*, 2020 WL 506680, at *17.

There is no evidence that such was the case here.

> **2.      The Trustee has Failed to Create a Genuine Dispute as to Whether the
> Individual Defendants Lacked "Justification" for Their Actions.**

Relatedly, the Trustee has no evidence that the Individual Defendants acted "without

justification" in taking the actions that allegedly constituted tortious interference—which is an

essential element of this claim.  *In re Opus E., LLC*, 528 B.R. at 107.  When the Individual

Defendants asked BD/S in discovery to identify all facts supporting this element of their claim,

BD/S simply restated the allegations of their Complaint, without identifying any supporting

facts.  (*See* Scolnick Decl., Ex. 149 at 48–50.)  This is insufficient to survive summary judgment.

*See Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (to defeat a motion for

summary judgment, the non-moving party must present more than just "bare assertions,

conclusory allegations, or suspicions to show a genuine issue").

Delaware courts consider the following factors when considering whether an act was

improper or without justification: "(a) the nature of the actor's conduct; (b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to

be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor

and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct

to the interference and (g) the relations between the parties."  *WaveDivision Holdings, LLC v.

Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012).  A defendant need not meet all

seven factors in order to prevail on summary judgment.  Indeed, in *WaveDivision*, the Delaware

Supreme Court, on *de novo* review, affirmed the lower court's grant of summary judgment in

favor of defendants on a tortious interference claim where four of the factors "weighed against a

finding of improper interference," even though several factors weighed in favor of such a

finding.  49 A.3d at 1173–75; *see Wavedivision Holdings, LLC v. Highland Cap. Mgmt. L.P.*,

2011 WL 5314507, at *12–13 (Del. Super. Ct. Nov. 2, 2011).

Applying the relevant factors here, no reasonable trier of fact could find that the

Individual Defendants acted without justification when they purportedly "caused Yucaipa to

acquire ComVest's First Lien Debt" or "caused Yucaipa to hijack the JCT [N]egotiations."

(Lender Compl. ¶ 135.)

As to Yucaipa's debt acquisition, three of the factors—the nature of the conduct, the

Individual Defendants' motives, and the interests they sought to advance—all weigh heavily in

favor of summary judgment.  As of August 2009, when Yucaipa acquired ComVest's debt and

became Requisite Lender, it is undisputed that the Fourth Amendment to the FLCA expressly

allowed Yucaipa to do all the things that constitute the alleged "breach."  Nor is there any

genuine dispute that the Individual Defendants were relying on the validity of the Fourth

Amendment in taking the actions that are now alleged to constitute "tortious interference."  (*See*

Scolnick Decl., Ex. 51 at 2–3; *see also* Burkle Decl. ¶¶ 4–6; Tochner Decl. ¶¶ 4–5; Walker Decl.

¶ 5–6; Opdeweegh Decl. ¶¶ 4–5.)  ██████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████ (*Id.*; *see id.* Ex. 76 at 9 (████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████).)  The Fourth Amendment was not deemed invalid by a New York Court

until years later.  *BDCM Opportunity Fund II, LP v. Yucaipa Am. Alliance Fund I, LP*, No.

65010/2012, 2013 WL 1290394, at *4, *6 (N.Y. Sup. Ct. Mar. 8, 2013).

Similarly, there is no genuine dispute that the Individual Defendants believed that

Yucaipa's acquisition of first lien debt in August 2009 was necessary to ensure that Allied avoid another bankruptcy and to calm customer concerns.  (Burkle Decl. ¶¶ 4–5; Tochner Decl. ¶ 4; Walker Decl. ¶ 5; Scolnick Decl., Ex. 51 at 3 ██████████████████████████████████████████ ██████████████████████████████████████████████████████); Ex. 68; Ex. 69; Ex. 64 at 97–98; Ex. 15 at 300 ████████████████████████████ ███████████████████████████████████████; Ex. 65 at 1–2; Ex. 66 at 2.)  And even if—as the Lender Complaint alleges—the Individual Defendants were acting to help Yucaipa protect its investment in Allied, this is "not improper under the circumstances." *Wavedivision*, 2011 WL 5314507, at *12 (where a defendant was acting to protect an investment and three factors weighed in favor of the defendant, the alleged interference was not improper).

The same is true for the Individual Defendants' actions in connection with the JCT Negotiations in late 2011 and 2012.  To defeat summary judgment, the Trustee must demonstrate a genuine factual dispute about whether the Individual Defendants' "*sole* motive was to interfere with the contract [the FLCA]." *WaveDivision*, 49 A.3d at 1174.  The Trustee has not and cannot do so here.

The "relations between the parties" factor further supports the conclusion that there was no improper interference as a matter of law.  *Wavedivision*, 2011 WL 5314507, at *13.  It is undisputed that the Individual Defendants were partners of the Yucaipa Firm, an affiliate of Yucaipa, and that Yucaipa had an "investment in [Allied]" (*id.*), both as a shareholder and creditor.  Most of the Individual Defendants were also Allied directors.  There is no genuine dispute that they were aware that Allied's customers were concerned about the company's stability, they believed Allied would be unable to avoid bankruptcy unless Yucaipa acquired the majority of Allied's first lien debt, and they understood that the debt purchase and the later JCT Negotiations could be mutually beneficial for Yucaipa and Allied.  (Burkle Decl. ¶¶ 3–5; Opdeweegh Decl. ¶ 4; Tochner Decl. ¶¶ 4, 7; Walker Decl. ¶¶ 5, 9; *see* Scolnick Decl., Ex. 51 at 3 ████████████████████████████████████████████████████████ ████████████████████████████████████████).)  Accordingly, the

nature of relationship between Yucaipa, Allied, and the Individual Defendants weighs in favor of a finding of no "lack of justification." *See Wavedivision*, 2011 WL 5314507, at *13 (where company that was a party to the contract at issue was also in a debtor-creditor relationship with defendants, and defendants acted for the purpose of protecting their investment in the company, this factor weighed in favor of finding no lack of justification).

The remaining three factors—the proximity of the conduct to the interference, the societal interests in protecting the actor and the contractual interests, and the interests of others[6]—are all inapplicable or neutral, and thus do not weigh in favor or against a finding of improper interference. And in any event, as noted above, the Court may grant summary judgment to the Individual Defendants where, as here, four of the seven factors weigh in favor of no lack of justification. *See WaveDivision*, 49 A.3d at 1174–75.

## C.    At Least Partial Summary Judgment is Warranted on the Tortious Interference Claim Because There is no Genuine Dispute on the Lack of Damages Resulting from the Vast Majority of Claimed Injuries.

There is another independent ground for granting partial summary judgment to the Individual Defendants on the Tortious Interference Claim. Discovery has demonstrated a complete absence of evidence on the essential element of damages resulting from all but one of the Lender Complaint's allegations supporting this claim.

Under both New York and Delaware law,[7] tortious interference with contract requires a plaintiff to prove, among other elements, an "injury" resulting from the defendant's intentional

---

[6]   As to the "interests of others" factor, even assuming the Individual Defendants interfered with BD/S's interest in "exercis[ing] remedies under the [FLCA]" by causing Yucaipa to purchase first lien debt from ComVest (Lender Compl. ¶ 135(a)), BD/S's ability to exercise remedies was speculative at best because ComVest—not BD/S—held Requisite Lender status when Yucaipa acquired the majority of first lien debt. Because the "definiteness of the expectancy" is speculative, the interests of BD/S cannot preclude summary judgment. *See Image Hair Sols. Med. Ctr. v. Fox Television Stations, Inc.*, 2016 WL 425158, at *7–8 (Del. Super. Ct. Jan. 29, 2016) (granting summary judgment on tortious interference claim despite the existence of a "prospective business" interest by plaintiff).

[7]   Delaware law unquestionably applies to the Tortious Interference Claim. Regardless, the requisite elements of the claim are the same under both New York and Delaware law.

15

actions that cause another party to breach a contract. *In re Opus E., LLC*, 528 B.R. at 107; *see also RLR Realty Corp. v. Duane Reade Inc.*, 145 A.D.3d 444, 445 (N.Y. App. Div. 2016). A plaintiff must "adequately prove damages," and a finder of fact may not simply "set damages based on mere speculation or conjecture." *Beard Res., Inc. v. Kates*, 8 A.3d 573, 613 (Del. Ch. 2010); *Am. Preferred Prescription, Inc. v. Health Mgmt., Inc.*, 252 A.D.2d 414, 419 (N.Y. App. Div. 1998) (disposing of claim for tortious interference with contract on summary judgment, in part because the plaintiff's "claim for damages [was] entirely speculative").

The Lender Complaint alleges that the Individual Defendants—through their purported influence over Yucaipa—caused damage to the First Lien Lenders by inducing Yucaipa to breach the FLCA/Third Amendment in the following ways:

- Acquiring first lien debt in violation of the FLCA (Lender Compl. ¶ 140(a));
- Declaring itself to be Requisite Lender (*id.* ¶ 140(b));
- Allowing Allied to ignore provisions of the FLCA requiring it to pay principal and interest to First Lien Lenders (*id.* ¶ 140(c));
- Protecting Yucaipa's equity investment by precluding a restructuring of Allied (*id.* ¶ 140(d));
- Causing the First Lien Lenders to incur unnecessary legal costs to challenge Yucaipa's Requisite Lender status and the validity of the Fourth Amendment (*id.* ¶ 140(f)); and
- Insisting on a disproportionate share of the consideration JCT was willing to pay for the sale of Allied's assets, which prevented Allied from consummating a sale, causing Allied and the lenders to incur unnecessary legal costs. (*Id.* ¶ 140(e), (g).)

However, the Trustee has put forth evidence of damages resulting *only from the last* of these purported harms that flowed from Yucaipa's wrongful acquisition of Requisite Lender status— namely, damages that resulted from "hijacking" the JCT deal.

As set forth in greater detail in Yucaipa's Motion for Summary Judgment, the Trustee's Rule 30(b)(6) witness on the subject of damages on behalf of the ASHINC Litigation Trust,

Stephen Deckoff, consistently was unable to, or refused to, point to any evidence of damages resulting from Yucaipa's alleged breaches of the FLCA/Third Amendment, instead specifically referencing that all damages opinions and testimony would be provided by the Trustee's damages expert, Jeffrey Risius.  (*See, e.g.*, Scolnick Decl., Ex. 9 at 52, 67–68.) ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████ (*See id.*, Ex. 107 at 6 (¶ 8(b)).)[8] ████████████████████

████████████████████████████████████████████████

████████████████████████ (*Id.*, Ex. 13 at 77–78.) ████████████

████████████████████████████████████████

████████████████████████████████ (*Id.* at 155.)

Accordingly, to survive summary judgment, the Trustee must come forward with evidence that damages resulted from all of the Individual Defendants' actions that are alleged to be tortious interference with the FLCA/Third Amendment.  But besides the JCT allegations, there is no evidence—and thus no triable issue of fact—with respect to this essential element of the claim.  (*See* Lender Compl. ¶ 140 (a)–(d), (f).)  The Individual Defendants are therefore entitled to partial summary judgment on all aspects of the Tortious Interference Claim *other than* the JCT-related allegations.  *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment is required "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

---

[8]  Mr. Risius's other damages opinion involved Yucaipa's purported failure to comply with the Capital Contribution Provision in Section 2.7(e) of the Third Amendment.  However, the Lender Complaint does not assert that the Individual Defendants are liable under a tortious interference theory for Yucaipa's purported failure to comply with the Capital Contribution Provision, and thus Mr. Risius's opinion on that subject does not matter here.

IV.    **EACH OF THE INDIVIDUAL DEFENDANTS WHO SERVED ON ALLIED'S BOARD HAS BASES FOR COMPLETE OR PARTIAL SUMMARY JUDGMENT**

Each of the Individual Defendants except for Mr. Burkle served on Allied's board of directors for some period of time.  There is no dispute regarding their respective dates of service, and none—except Mr. Walker—served on the board during the entire period at issue.  These Individual Defendants who served on the board are entitled to partial summary judgment on the claims against them based on their particular circumstances and dates of board service.

A.    **Mr. Opdeweegh is Entitled to Partial or Complete Summary Judgment on the Claims Against Him.**

The Trustee is pursuing claims against Mr. Opdeweegh for tortious interference with the FLCA/Third Amendment (Lender Complaint Claim 4) and breach of fiduciary duty and aiding and abetting others' breaches (Estate Complaint Claims 8 and 9).  Mr. Opdeweegh sat on Allied's board from May 2007 to October 9, 2009.  (Opdeweegh Decl. ¶ 2; Scolnick Decl., Ex. 143.)  And since his resignation from the board, Mr. Opdeweegh has had only social interactions with anyone from Allied.  (Scolnick Decl., Ex. 3 at 176–77.)  His only non-social communications with anyone at Yucaipa after his resignation from the board were in his capacity as CEO of a different portfolio company.  (Opdeweegh Decl. ¶ 7; Scolnick Decl., Ex. 3 at 172.)  Thus, there is no dispute that Mr. Opdeweegh had no further substantive involvement with Allied after he left the board, or with Yucaipa in the manner alleged.  The claims against him fail as a matter of law, at least in part, for these reasons.

*Tortious Interference*.  To prevail on a tortious interference with contract claim, the Trustee must be able to prove that a defendant engaged in "an intentional act that was a significant factor in causing [a third party to] breach [the] contract."  *WaveDivision*, 49 A.3d at 1174.  Here, the Lender Complaint's Tortious Interference Claim alleges that Mr. Opdeweegh engaged in wrongdoing in "August 2009" as well as in "late 2011 and early 2012."  (Lender Compl. ¶ 135.)  Even if the allegations arising out of conduct that occurred in late 2011 and early 2012 were not time-barred—which they are—those allegations would still fail against Mr. Opdeweegh because he had no association with Allied whatsoever in "late 2011 and early 2012."

As such, BD/S cannot raise a triable issue of fact as to whether Mr. Opdeweegh "intentional[ly] act[ed]" in a way that caused Yucaipa's purported breaches of the FLCA in that time period. *WaveDivision*, 49 A.3d at 1174.

    *Breach of Fiduciary Duty*.  To prevail on a breach of fiduciary duty claim, "a plaintiff must demonstrate that the defendant *owed* her a fiduciary duty and that the defendant breached it." *Estate of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011) (emphasis added).  Here, the only basis for alleging that Mr. Opdeweegh owed a fiduciary duty to Allied or stakeholders is that he served on Allied's board.  (Estate Compl. ¶ 180.)  This means that the Trustee cannot pursue a fiduciary duty claim against Mr. Opdeweegh based on any purported wrongdoing that occurred *after* he left the board on October 9, 2009, and no longer owed any fiduciary duties.  Indeed, the Trustee's corporate governance expert confirmed that the former board members "have no culpability as board members if they were not on the board when the decision was made." (Scolnick Decl., Ex. 23 at 434 (with respect to the Fourth Amendment); *see also id*. at 451 (with respect to the JCT Negotiations); *id.* Ex. 14 at 127 (with respect to the ComVest transaction).)

    Mr. Opdeweegh is therefore entitled to at least partial summary judgment as to the following allegations supporting the breach of fiduciary duty claim:  (1) any alleged failure to consider potentially beneficial transactions for Allied occurring after October 9, 2009[9]; (2) any alleged failure to negotiate with lenders concerning potentially beneficial restructuring alternatives after October 9, 2009; and (3) any payment of fees to or on behalf of Yucaipa after October 9, 2009.  (Estate Compl. ¶¶ 183–84.)

    Mr. Opdeweegh is further entitled to summary judgment on the breach of fiduciary duty claim with respect to Allied's payment of fees to or on behalf of Yucaipa *before* October 9, 2009 (Estate Compl. ¶¶ 116, 185), because Allied was contractually obligated to pay these fees. Under the FLCA, Allied was required to reimburse Lenders' costs and expenses, including legal

---

[9]  This allegation also fails against Mr. Opdeweegh for pre-2009 conduct for the same reasons set forth in Yucaipa's Motion for Summary Judgment at Section V.A.3.b.

fees, incurred "in connection with any refinancing or restructuring of the credit agreements" if Allied was in default. (Scolnick Decl., Ex. 33 at 158 (§ 10.2).) There is no genuine dispute that ComVest and Yucaipa were, at the relevant times, "Lenders" under the FLCA, or that Allied was in default when Allied paid legal fees relating to the Fourth Amendment. (*See id.* Ex. 13 at 303–05; Ex. 18 at 549–51, 555–56, 567–68, 611.)[10]

Lastly, Mr. Opdeweegh is entitled to summary judgment on the breach of fiduciary duty claim with respect to the allegation that he ██████████████████████████ ████████████ (Estate Compl. ¶ 182) for the reasons set forth in section V.C.3.a of Yucaipa's Motion for Summary Judgment. Specifically, this allegation arises out of the same underlying facts as the Estate Complaint's breach of contract claim against Yucaipa, and thus, is "foreclosed as superfluous." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).[11]

*Aiding and Abetting Breach of Fiduciary Duty.* To prevail on a claim for aiding and abetting breach of a fiduciary duty, a plaintiff must prove "'(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants,' and (4) damages proximately caused by the breach." *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) (quoting *Penn Mart Realty Co. v. Becker*, 298 A.2d 349, 351 (Del. Ch. 1972)). Further, under Delaware law, "aiding and abetting liability generally cannot attach

---

[10] All the Individual Defendants who served on the board are also entitled to summary judgment on the breach of fiduciary duty claim based on the approval of legal fees for the additional reasons set forth in section III of Mr. Gendregske's Motion for Summary Judgment. Namely, this claim is duplicative of the fraudulent transfer and preferences claims asserted against Yucaipa in Claims 10, 11, and 12 of the Estate Complaint, ████████████ ██████████████████████████████████████████████████████████, and undisputed expert testimony establishes that it is a common market practice for borrowers (such as Allied) to reimburse their Lenders' legal fees (Yucaipa and Comvest) in connection with amendments to credit agreements.

[11] All the Individual Defendants who served on the board are also entitled to summary judgment on this allegation for the same reasons set forth in section I of Mr. Gendregske's Motion for Summary Judgment—i.e., no cause of action exists for aiding and abetting a breach of fiduciary duty claim, and there was nothing for Allied's directors to enforce at the time that Yucaipa bought first lien debt.

to defendants who themselves owe fiduciary duties to the relevant entity and plaintiff" because "wrongful conduct on the part of the defendant fiduciary simply would give rise to direct liability[.]" *CMS Inv. Holdings, LLC v. Castle*, 2015 WL 3894021, at \*20 (Del. Ch. June 23, 2015); *see also In re Draw Another Circle.*, 602 B.R. 878, 905 (Bankr. D. Del. 2019) (dismissing aiding and abetting claim against defendants with direct fiduciary relationships).

Here, there is no dispute that Mr. Opdeweegh owed fiduciary duties to Allied during his term of board service between May 2007 and October 9, 2009—so he cannot be liable for aiding and abetting another's breach during that period. *See In re Draw Another Circle.*, 602 B.R. at 905. And it is also undisputed that after October 9, 2009, Mr. Opdeweegh had no further involvement with Allied—so there is no triable dispute about whether Mr. Opdeweegh "knowing[ly] participat[ed]" in others' alleged breaches of fiduciary duty after he left Allied's board (or before he joined it). *Malpiede*, 780 A.2d at 1097.

Mr. Opdeweegh is therefore entitled to at least partial summary judgment on the claims against him for tortious interference and breach of fiduciary duty, and complete summary judgment on the aiding and abetting claim.

## B.    Mr. Pelletier is Entitled to Summary Judgment on the Claims Against Him.

The Trustee is pursuing claims against Mr. Pelletier for tortious interference with the FLCA/Third Amendment (Lender Complaint Claim 4) and breach of fiduciary duty and aiding and abetting others' breaches (Estate Complaint Claims 8 and 9). Mr. Pelletier joined Allied's board on October 29, 2009. (Scolnick Decl., Ex. 144.) Before that time, he was not involved with Allied in any way related to any of the claims against him in this case—it is undisputed that he did not work directly on matters related to the credit agreements at issue, and in fact, did not even review the credit agreements or amendments. (*Id.* Ex. 5 at 68–69.) Rather, his role before joining the Allied board was limited to assisting Allied with labor-relations issues. (*Id.* at 73, 93, 105.) Thus, the claims against Mr. Pelletier fail as a matter of law, at least in part.

*Tortious Interference*. Again, to prevail on a tortious interference claim, the Trustee must be able to prove that a defendant engaged in "an intentional act that was a significant factor in

causing [a third party to] breach [the] contract." *WaveDivision*, 49 A.3d at 1174.  Here, the

Lender Complaint's Tortious Interference Claim alleges that Mr. Pelletier engaged in

wrongdoing in "August 2009" as well as in "late 2011 and early 2012."  (Lender Compl. ¶ 135.)

But the Trustee cannot raise a triable issue of fact as to whether Mr. Pelletier tortiously interfered

with the FLCA by "intentionally and maliciously" inducing Yucaipa to purchase first lien debt in

*August 2009*, or that he acted in any other way to cause Yucaipa to breach the FLCA before he

joined the board on October 29, 2009.  *See WaveDivision*, 49 A.3d at 1174.  As such, the Lender

Complaint's tortious interference claim based on conduct that occurred in August 2009 fails

against Mr. Pelletier for this independent reason.

      *Breach of Fiduciary Duty*.  Again, as noted, to prevail on a breach of fiduciary duty

claim, "a plaintiff must demonstrate that the defendant *owed* her a fiduciary duty and that the

defendant breached it."  *Estate of Eller*, 31 A.3d at 897 (emphasis added).  Here, as with other

Individual Defendants, the only basis for alleging that Mr. Pelletier owed a fiduciary duty to

Allied or its stakeholders is that he served on Allied's board.  (Estate Compl. ¶ 180.)  This means

that the Trustee cannot pursue a fiduciary duty claim against Mr. Pelletier based on any

purported wrongdoing that occurred *before* October 29, 2009 because Mr. Pelletier indisputably

did not owe a fiduciary duty to Allied or its creditors before joining Allied's board.  And as

explained above, the Trustee's own corporate governance expert confirmed that the board

member defendants "have no culpability as board members if they were not on the board when

the decision was made."  (Scolnick Decl., Ex. 14 at 127; Ex. 23 at 434–35, 451.)

      Mr. Pelletier is therefore entitled to summary judgment on all allegations that he breached

his fiduciary duties before October 2009, including allegations that he: (1) allowed Yucaipa to

negotiate the terms of the Third and Fourth Amendments and control the drafting (Estate Compl.

¶ 182), as both amendments were executed before Mr. Pelletier joined the board; (2) "failed to

consider potential transactions" or negotiate with Lenders concerning restructuring alternatives

before October 29, 2009 (*id.* ¶ 183); and (3) failed to ensure that any Allied-Yucaipa transactions

before October 29, 2009 (including the debt acquisition) were in Allied's interests (*id.* ¶ 183.)

Further, Mr. Pelletier is entitled to summary judgment on the allegation that he "failed to consider potential transactions" *after* October 29, 2009, for the same reasons stated in Yucaipa's Motion for Summary Judgment—namely, there is no evidence of any "potential transactions" that the board failed to consider.[12]  The Trustee cannot rely on the JCT Negotiations to maintain the breach of fiduciary duty claim against Mr. Pelletier because the Estate Complaint makes no mention whatsoever of JCT or the JCT Negotiations; ███████████████████████ ███████████████████████████████████. (Scolnick Decl., Ex. 111 at 15–17 (██████████████████████████).)  In any event, there was nothing for the board to consider in connection with the JCT Negotiations, as JCT was negotiating directly with the Lenders.  (Scolnick Decl., Ex. 20 at 37–40.) ████████████████████████ ██████████████████████████████████████████████████████ █████████████ (*Id.* Ex. 107 at 30 (¶ 91).) ████████████████████████████ █████████████████████████████████████████████ (*Id.* Ex. 122 at 18 (¶ 50).)  And even if they were, ███████████████████████████████████████ ██████████████████████ (*Id.* Ex. 32 at 7–8 (§ 7(b).)

The fiduciary duty claim also cannot survive against Mr. Pelletier based on any purported payments that Allied made on behalf of Yucaipa before October 29, 2009 (Estate Compl. ¶ 185), or any conduct of the Special Committee (*id.* ¶ 184), which did not convene after October 29, 2009. ██████████████████████████████████████████████ █████████████████████████████████████████████ (*See id.* ¶¶ 14, 137, 185.) ███████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████

---

[12]  The same is true of the allegations that Mr. Pelletier failed to negotiate with Lenders about restructuring alternatives, and failed to ensure that any Allied-Yucaipa transactions were in Allied's interests (Estate Compl. ¶ 183)—there is no evidence to support either allegation post-October 29, 2009.  Thus, these allegations fail in their entirety against Mr. Pelletier.

████████████████████████████████ (Scolnick Decl., Ex. 32 at 5 (§ 6(a)).)

████████████████████████████████████████████████
████████████████████████████████ (*Id.* at 5 (§ 6(b)).)
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████.[13]

Lastly, Mr. Pelletier is entitled to summary judgment on the breach of fiduciary duty

claim with respect to the allegation that he ██████████████████████████

█████████ (Estate Compl. ¶ 182) because, as noted above, this allegation arises out of the same

underlying facts as the Estate Complaint's breach of contract claim against Yucaipa, and thus, is

"foreclosed as superfluous." *Nemec*, 991 A.2d at 1129 (Del. 2010).  And if ██████████████

██████████████████████ refers to the ComVest transaction in August 2009, this

was two months before Mr. Pelletier joined the board—he owed no fiduciary duties at that time,

as explained above.

Because no further allegations relating to the breach of fiduciary duty claim remain,

Mr. Pelletier is entitled to complete summary judgment on this claim.

<u>Aiding and Abetting Breach of Fiduciary Duty</u>.  As noted, to prevail on a claim for aiding

and abetting breach of a fiduciary duty, a plaintiff must prove "'(1) the existence of a fiduciary

relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by

the defendants,' and (4) damages proximately caused by the breach." *Malpiede*, 780 A.2d at

1097.  Further, "aiding and abetting liability generally cannot attach to defendants who

themselves owe fiduciary duties to the relevant entity and plaintiff" because "wrongful conduct

on the part of the defendant fiduciary simply would give rise to direct liability[.]" *CMS Inv.*

---

[13] ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
(Scolnick Decl., Ex. 122 at 3.)

*Holdings*, 2015 WL 3894021, at *20.

Here, there is no dispute that Mr. Pelletier owed fiduciary duties once he joined the Allied board on October 29, 2009, so he cannot be liable for aiding and abetting another's breach on or after that date.  *See In re Draw Another Circle.*, 602 B.R. at 905.  Likewise, he cannot be liable for aiding and abetting *before* he joined the board because there is no evidence that he "knowing[ly] participat[ed]" in "encouraging and approving" the "transactions" alleged to have breached fiduciary duties.  (*See* Estate Compl. ¶ 191); *Malpiede*, 780 A.2d at 1096.

Mr. Pelletier is therefore entitled to at least partial summary judgment on the claims against him for tortious interference, and complete summary judgment on the breach of fiduciary duty and aiding and abetting claims.

**C.    Mr. Tochner is Entitled to Partial or Complete Summary Judgment on the Claims Against Him.**

Mr. Tochner is entitled to partial summary judgment on the Trustee's claim against him for breach of fiduciary duty and summary judgment on the claim against him for aiding and abetting others' breaches (Estate Complaint Claims 8 and 9).  It is undisputed that Mr. Tochner was not a director of Allied between January 2008 and April 2009.  (Tochner Decl. ¶ 3; Scolnick Decl., Ex. 11 at 27–32.)  Conversely, it is also undisputed that he did serve as a director from May 2007 to January 2008, and again from April 2009 to December 2013.  (Tochner Decl. ¶ 3.)

*Breach of Fiduciary Duty*.  There can be no claim for breach of a fiduciary duty unless the defendant "owed" a fiduciary duty.  *Estate of Eller*, 31 A.3d at 897.  Here, as with other Individual Defendants, the only basis for alleging that Mr. Tochner owed a fiduciary duty to Allied or its stakeholders is that he served on Allied's board.  (Estate Compl. ¶ 180.)  This means that the Trustee cannot pursue a fiduciary duty claim against Mr. Tochner based on any purported wrongdoing that occurred between January 2008 and April 2009, while he was not a member of Allied's board.  This includes the allegations that he: (1) allowed Yucaipa to negotiate the terms and control the drafting of the Third Amendment (*id.* ¶ 182); (2) "failed to consider potential transactions" or negotiate with lenders concerning restructuring alternatives

before between January 2008 and April 2009 (*id.* ¶ 183); and (3) failed to ensure that any Allied-Yucaipa transactions between these dates were in Allied's interests (*id.* ¶ 183).  The claim also cannot proceed against Mr. Tochner based on any purported payments Allied made on behalf of Yucaipa between January 2008 and April 2009 (*id.* ¶ 185), or any conduct of the Special Committee (*id.* ¶ 184) before April 2009.

Further, the allegation that Mr. Tochner "failed to consider potential transactions" while he was on the board fails in its entirety against him for the same reasons it fails against Mr. Pelletier—there is no evidence of any transactions that the board failed to consider, and this allegation cannot rest on the JCT Negotiations.  But even if it could, it would still fail, for the reasons explained above.  ███████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████  (Scolnick Decl., Ex. 107 at 30 (¶ 91); Ex. 122 at 18 (¶ 50); Ex. 32 at 7–8 (§ 7(b)).)

As also explained above, Allied was contractually obligated to pay any purported fees on behalf of Yucaipa before January 2008 or after April 2009.  (*See* Scolnick Decl., Ex. 32 at 5 (§ 6(a)–(b)); Ex. 33 at 158 (§ 10.2).)  Therefore, the fiduciary duty claim cannot proceed on the basis of any payments made while Mr. Tochner sat on the board either.

Further, Mr. Tochner is entitled to summary judgment on the breach of fiduciary duty claim with respect to the allegation that he ██████████████████████████████

█████████████  (Estate Compl. ¶ 182) because, as noted above, this allegation arises out of the same underlying facts as the Estate Complaint's breach of contract claim against Yucaipa, and thus, is "foreclosed as superfluous."  *Nemec*, 991 A.2d at 1129 (Del. 2010).

*Aiding and Abetting Breach of Fiduciary Duty*.  "[A]iding and abetting liability generally cannot attach to defendants who themselves owe fiduciary duties to the relevant entity and plaintiff" because "wrongful conduct on the part of the defendant fiduciary simply would give rise to direct liability[.]"  *CMS Inv. Holdings*, 2015 WL 3894021, at *20.  While Mr. Tochner *was* a director of Allied, he indisputably owed a fiduciary duty to Allied.  As such, he could not

have aided and abetted any breaches of fiduciary duty during these time periods.

And for the period when Mr. Tochner was *not* on the Allied board—between January 2008 and April 2009—there is no evidence of damages resulting from any other defendants' purported breaches of fiduciary duty committed during this period.  The Trustee testified on behalf of the ASHINC Litigation Trust that her expert witness would determine the damages the Estate suffered due to the alleged breaches of fiduciary duty.  (Scolnick Decl., Ex. 141 at 113–114; 116–118.)  But the Trustee's damages expert, Jeffrey Risius, limited his opinion to events that occurred *after* April 2009,[14] none of which the Trustee can claim as damages for breaches of fiduciary duty.  (*See* Scolnick Decl., Ex. 107 at 5–6 (¶ 7), 32 (¶ 105); Ex. 13 at 77 ███████████ ███████████████████████████████████████████████████████████ ███████████████████████████████.  Because an aiding and abetting claim requires proof of damages, this claim fails.  *See Malpiede*, 780 A.2d at 1096.[15]

Mr. Tochner is therefore to summary judgment on the claims against him for breach of fiduciary duty and aiding and abetting breach of fiduciary duty.

### D.    Mr. Walker is Entitled to Partial Summary Judgment on the Claim for Breach of Fiduciary Duty.

The breach of fiduciary duty claim arising out of the alleged payment of fees on behalf of Yucaipa (Estate Compl. ¶ 185) also fails against Mr. Walker for the same reasons explained above—████████████████████████████████████████████ ████████████████████████████████████████.  (*See* Scolnick Decl., Ex. 32 at 5 (§ 6(a)–(b)); Ex. 33 at 158 (§ 10.2).)

Further, the allegation that Mr. Walker "failed to consider potential transactions" while

---



[14] ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████.  (Scolnick Decl., Ex. 107 at 5–6 (¶ 7).)

[15]  This same deficiency plagues the aiding-and-abetting claims against Mr. Pelletier and Mr. Opdeweegh—there is no evidence of damages for breaches of fiduciary duty arising out of the conduct they are alleged to have aided and abetted while not on the board.

he was on the board fails in its entirety against him for the same reasons explained above—there is no evidence of any transactions that the board failed to consider, and this allegation cannot rest on the JCT Negotiations because the JCT Negotiations are not part of the Estate Complaint which is the only complaint containing a fiduciary duty claim. █████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ (Scolnick Decl., Ex. 107 at 30 (¶ 91); Ex. 122 at 18 (¶ 50); Ex. 32 at 7–8 (§ 7(b)).)

Lastly, Mr. Walker is entitled to summary judgment on the breach of fiduciary duty claim with respect to the allegation that ███████████████████████████████ (Estate Compl. ¶ 182) because, again, this allegation arises out of the same underlying facts as the Estate Complaint's contract claims against Yucaipa. *See Nemec*, 991 A.2d at 1129 (Del. 2010).

Mr. Walker is therefore entitled to partial summary judgment on the breach of the fiduciary duty claim.

## V.    CONCLUSION

For these reasons, the Individual Defendants request that the Court grant their Motion for Summary Judgment.

Dated: May 1, 2020

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

 */s/ Michael S. Neiburg*
Michael R. Nestor (No. 3526)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

28

GIBSON, DUNN & CRUTCHER LLP
Maurice M. Suh (*Pro Hac Vice*)
Robert A. Klyman (*Pro Hac Vice*)
Kahn Scolnick (*Pro Hac Vice*)
333 South Grand Avenue
Los Angeles, CA  90071
Telephone: (213) 229-7000
msuh@gibsondunn.com

*Attorneys for Defendants Yucaipa American Alliance Fund I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P., Ronald Burkle, Jos Opdeweegh, Derex Walker, Jeff Pelletier, and Ira Tochner*