**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET. AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS, | Adv. Proc. No. 13-50530 |
| Plaintiff, | |
| BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P., | |
| Intervenors, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., MARK GENDREGSKE, JOS OPDEWEEGH, JAMES FRANK, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., as co-administrative agent, and SPECTRUM COMMERCIAL FINANCE LLC, as co-administrative agent, | Adv. Pro. No. 14-50971 (CSS) |
| Plaintiff, | |

v.

YUCAIPA AMERICAN ALLIANCE FUND I, L.P.,
YUCAIPA AMERICAN ALLIANCE (PARALLEL)
FUND I, L.P., YUCAIPA AMERICAN ALLIANCE
FUND II, L.P., YUCAIPA AMERICAN ALLIANCE
(PARALLEL) FUND II, L.P., RONALD BURKLE,
JOS OPDEWEEGH, DEREX WALKER, JEFF
PELLETIER, IRA TOCHNER, and JOSEPH
TOMCZAK,

Defendants.

# LITIGATION TRUSTEE'S REPLY MEMORANDUM
## IN FURTHER SUPPORT OF MOTION
## FOR PARTIAL SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT .....................................................................................................2

    I.    SUMMARY JUDGMENT IS WARRANTED FOR YUCAIPA'S CONTRACTUAL BREACH .........2

        A.    The Estate Suffered Damages on August 31, 2009 ...............................2

        B.    The Trustee Does Not Double Count Contract Damages ....................4

        C.    Yucaipa Creates No Genuine Issue as to The Lenders' Damages ........5

        D.    There Is No Genuine Issue of Material Fact as to Mitigation..............6

    II.    FACT ISSUES DO NOT PRECLUDE EQUITABLE SUBORDINATION ....................7

        A.    Yucaipa's Inequitable Conduct..........................................................8

        B.    Yucaipa Took Unfair Advantages of, And Harmed, Allied's Creditors............12

        C.    Yucaipa Cannot Demonstrate Good Faith Or Inherent Fairness ........14

            1.    Yucaipa's First Lien Debt Acquisition Was Not in Good Faith...............14

            2.    Yucaipa's First Lien Debt Acquisition Was Not "Inherently Fair"...........15

        D.    Yucaipa's Debt Should Be Subordinated Independent of Timing....................15

    III.    THE TRUSTEE'S MOTION SHOULD BE GRANTED ON CLAIMS FOR AVOIDANCE OF FRAUDULENT TRANSFERS AND DISALLOWANCE OF CLAIMS ..............16

        A.    The Record Establishes Lack of Reasonably Equivalent Value ........16

        B.    The Fraudulent Transfers Were Not Contractually Required............18

        C.    Allied's Payments Were Indisputably Made for Yucaipa's Benefit.................19

        D.    Yucaipa's Claims Should be Disallowed...........................................19

CONCLUSION..................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BDCM Opportunity Fund II, LP v. Yucaipa Am. All. Fund I, LP*,
2013 WL 1290394 (N.Y. Sup. Ct. Mar. 8, 2013) ...................................................... *passim*

*Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*,
886 N.E.2d 127 (2008)...............................................................................................6 n.10

*Biotronik A.G. v. Conor Medsystems Ir., Ltd.*,
22 N.Y.3d 799 (2014) ...............................................................................................6 n.10

*Boyce v. Soundview Tech. Grp., Inc.*,
464 F.3d 376 (2d Cir. 2006)........................................................................................3 n.3

*Brainard v. Am. Skandia Life Assuramce Corp.*,
432 F.3d 655 (6th Cir. 2005) ...............................................................................4 nn.5, 6

*Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*,
160 F.3d 982 (3d Cir. 1998)......................................................................................13 n.34

*Fed. Ins. Co. v. Mertz*,
2016 WL 164618 (S.D.N.Y. Jan. 12, 2016) .................................................................5 n.9

*Gratz v. Claughton*,
187 F.2d 46 (2d Cir. 1951)........................................................................................6 n.11

*Hayes v. Douglas Dynamics, Inc.*,
8 F.3d 88 (1st Cir. 1993)............................................................................................4 n.6

*Hecht v. Investor #1113*,
2014 WL 12610217 (E.D. Pa. Dec. 1, 2014) ...............................................................4 n.6

*In re ADI Liquidation, Inc.*,
555 B.R. 423 (Bankr. D. Del. 2016) .........................................................................6 n.10

*In re Apyron Techs., Inc.*,
2005 WL 6485938 (Bankr. N.D. Ga. Sept. 13, 2005) ...............................................13 n.36

*In re Autobacs Strauss, Inc.*,
473 B.R. 525 (Bankr. D. Del. 2012) .........................................................................7 n.16

*In re FBI Wind Down, Inc.*,
581 B.R. 387, 416 (Bankr. D. Del. 2018) ..........................................................16-17 n.44

*In re HH Liquidation, LLC*,
    590 B.R. 211 (Bankr. D. Del. 2018) .........................................................7 n.17

*In re Island View Crossing II, L.P.*,
    604 B.R. 181 (Bankr. E.D. Pa. 2019) ......................................................9 n.25

*In re Mid-Am. Waste Sys., Inc.*,
    284 B.R. 53 (Bankr. D. Del. 2002) ............................................ 12 & n.31, 14

*In re Nat'l Century Fin. Enters., Inc.*,
    341 B.R. 198 (Bankr. S.D. Ohio 2006).................................................17 n.46

*In re QuVis, Inc.*,
    446 B.R. 490 (Bankr. D. Kan. 2011) .....................................................9 n.44

*In re S & D Foods*,
    110 B.R. 34 (Bankr. D. Colo. 1990) .....................................................15 n.42

*In re Spitko*,
    2007 WL 1720242 (Bankr. E.D. Pa. June 11, 2007) ....................................16

*In re Steel Wheels Transport, LLC*,
    2011 WL 5900958 (Bankr. D.N.J. Oct. 28, 2011)...................................8 n.19

*In re SubMicron Sys. Corp.*,
    432 F.3d 448 (3d Cir. 2006).................................................................14 n.37

*In re Think Retail Sols., LLC*,
    2019 WL 2912717 (Bankr. N.D. Ga. July 5, 2019).................................9 n.24

*In re Winstar Commc'ns, Inc.*,
    348 B.R. 234 (Bankr. D. Del. 2005),
    *aff'd*, 2007 WL 1232185 (D. Del. Apr. 26, 2007),
    *aff'd in part*, 554 F.3d 382 (3d Cir. 2009) ............................................8 n.18

*In re W. T. Grant Co.*,
    4 B.R. 53  (Bankr. S.D.N.Y. 1980),
    *appeal aff'd*, 699 F.2d 599 (2d Cir. 1983) ..........................................15 n.42

*Keslosky v. Borough of Old Forge*,
    66 F. Supp. 3d 592 (M.D. Pa. 2014) .....................................................8 n.22

*Kilmon v. Cmty. Servs., Inc.*,
    2000 WL 1728300 (D. Del. Mar. 24, 2000) ........................................11 n.30

*King Fook Jewellery Grp. Ltd. v. Jacob & Co. Watches, Inc.*,
2016 WL 11642662 (S.D.N.Y. July 25, 2016) ........................................................7 n.14

*Mellon Bank, N.A. v. Metro Commc'ns, Inc.*,
945 F.2d 635 (3d Cir. 1991)................................................................16 n.43

*Pepper v. Litton*,
308 U.S. 295 (1939)................................................................14

*Queens Ballpark Co. v. Vysk Commc'ns*,
226 F. Supp. 3d 254 (S.D.N.Y. 2016)........................................................5 n.8

*Sharma v. Skaarup Ship Mgmt. Corp.*,
916 F.2d 820 (2d Cir. 1990)................................................................6 n.12

*Simon v. Electrospace Corp.*,
28 N.Y.2d 136 (1971) ................................................................3 n.3

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
487 F.3d 89 (2d Cir. 2007)................................................................5 n.7

*Valley Nat'l Bank v. Gurba*,
149 A.D.3d 412 (N.Y. App. Div. 2017) ........................................................7 n.15

*Vanderklok v. United States*,
868 F.3d 189 (3d Cir. 2017)................................................................11 n.29

## Rules & Statutes

11 U.S.C. § 550(a)................................................................16, 19

# PRELIMINARY STATEMENT[1]

The key events and facts establishing Yucaipa's wrongdoing are irrefutable:

**Yucaipa Breached the First Lien Credit Agreement ("FLCA").** Yucaipa concedes that it breached the FLCA by failing to make a capital contribution by August 31, 2009. Yucaipa had the obligation to pay Allied $57,356,044.33 in cash or to extinguish an Allied liability in that amount. It did neither. Its argument that the Trustee has "no evidence of damages" is baseless. The Estate's damages are the $57,356,044.33 in cash or debt relief that Yucaipa failed to provide on August 31, 2009. The response of Yucaipa's expert looks to the wrong timeframe, is contradicted by controlling New York law, and creates no genuine issue of fact. (Section I).

**Yucaipa Engaged in Inequitable Conduct Warranting Subordination.** Yucaipa's contention that it did not engage in inequitable conduct warranting subordination cannot withstand scrutiny. Yucaipa was an insider and fiduciary of Allied and engaged in a persistent pattern of unfair conduct, which included subverting a pre-petition deal with JCT in a manner that even Yucaipa's Managing Principal Ron Burkle could not justify. (Section II).

**Yucaipa Received and Benefitted from Fraudulent Transfers.** Yucaipa does not dispute that it directed Allied to make payments—while Allied was insolvent—to Yucaipa, its lawyers, ComVest, and Jonathan Ornstein. The evidence establishes that Allied made these transfers without an exchange of reasonably equivalent value and for Yucaipa's benefit. Yucaipa

---

[1]    Abbreviations relied on and citation conventions used in the Trustee Brief (13-50530, D.I. 712; 14-50971, D.I. 463), Entities Opposition (13-50530, D.I. 770; 14-50971, D.I. 514) and the Trustee's brief in opposition to the motion of the Individual Defendants (13-50530, D.I 768; 14-50971, D.I. 512) ("**Indiv. Opp.**") are used again here. For the Court's convenience, an appendix of all abbreviations is attached as **Appendix A**. The Trustee's claims against Defendants Ron Burkle and the Yucaipa Directors have been voluntarily dismissed (13-50530, D.I. 793; 14-50971, D.I. 533 and 534). The Trustee's motion seeking summary judgment on Direct Lender Claim 4 (Tortious Interference) is, therefore, no longer in the case.

strains to argue that Allied received "indirect value," but fails to present evidence raising a genuine issue of material fact.  (Section III).

## ARGUMENT

### I.    SUMMARY JUDGMENT IS WARRANTED FOR YUCAIPA'S CONTRACTUAL BREACH

Yucaipa does not dispute that the FLCA required it to make a capital contribution to Allied by August 31, 2009, and that it failed to do so.  It argues that the Trustee's damages are "speculative and flawed" based on a series of specious arguments.[2]

### A.    The Estate Suffered Damages on August 31, 2009

On August 21, 2009, Yucaipa acquired $114,712,088.66 of Allied's First Lien Term Loans.  Section 10.6(j) of the FLCA required Yucaipa to make a capital contribution to Allied of 50% of the face amount of these Term Loans on or before August 31, 2009:

> The Restricted Sponsor Affiliates [*i.e.* Yucaipa and its affiliates] … agree[] … that no later than ten days after the date of such assignment or transfer of such Term Loans … such Restricted Sponsor Affiliates shall make a capital contribution to [Allied] of no less than 50% of the aggregate principal amount of such Term Loans in accordance with Section 10.6(k).). [Ex. 20 at 2.7(e)(iii)].

Yucaipa had the option under §10.6(k) to honor this obligation by contributing 50% of the Term Loans (which would then be deemed prepaid and extinguished) in exchange for equity:

> A Restricted Sponsor Affiliate may at any time make a capital contribution of its Term Loans to [Allied] in exchange for Equity Interests [and upon such contribution the Term Loans will] … be deemed to be irrevocably prepaid, terminated, extinguished, cancelled and of no further force and effect.  [*Id.* at §2.7(f)(ii)-(iii)].

Yucaipa now contends that a capital contribution could only be made through a contribution of Term Loans.  This is irreconcilable with the permissive language of §10.6(k).

---

[2]    Yucaipa's Opposition also incorporates arguments raised in its affirmative motion for summary judgment that the Estate Claim is barred by a covenant-not-to-sue and that the Lender Claim is untimely.  (Opp. at 1).  These arguments are meritless for the reasons stated in the Entities Opp. at 6-32, which are incorporated by reference here.

While §10.6(j) mandates that Yucaipa "*shall* make a capital contribution," §10.6(k) gives

Yucaipa an option—it "*may* … make a capital contribution of its Term Loans."  This argument is

also irrelevant because Yucaipa does not deny that it failed to make *any* capital contribution—in

cash or debt—and the Estate's damages are the same for the loss of either.  By August 31, 2009,

the Company should have received $57.4 million in cash or $57.4 million of debt it owed to

Yucaipa should have been permanently extinguished.  Instead, it got nothing.

Yucaipa's Opposition rests exclusively on the opinion of its proffered damages expert,

Daniel Fischel (Opp. at 9-10).  Prof. Fischel argues that any harm to Allied's Estate resulting

from Yucaipa's admitted failure to make a required capital contribution is "speculative and

flawed" (Ex. 102 at p. 15) because "it does not follow that additional cash or a conversion of

debt to equity, would have increased Allied's value dollar-for-dollar <u>at later points in time</u> and/or

would have made it solvent."  (*Id.* at ¶41).  Prof. Fischel adds that "additional funds may simply

have been used up to support operations and/or investments that would not have necessarily

increased Allied's value or recoveries by its stakeholders."  (*Id.* at ¶¶40-41).

These opinions are irrelevant under black-letter New York, which holds that damages are

measured on the day of the breach—here, August 31, 2009.[3]  Prof. Fischel conceded that his

opinion <u>did not address damages as of August 31, 2009</u>.  (Ex. 155 (Fischel Dep.) 90:20-91:8).

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████  That is true

and, as a matter of law, his opinions are legally irrelevant.

---

[3]    *See, e.g.*, *Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 145 (1971) ("The proper measure of damages for breach of contract is determined by the loss sustained or gain prevented at the time and place of breach.").  Yucaipa admits this (Opp. at 6), quoting *Boyce v. Soundview Technology Group, Inc.*, 464 F.3d 376, 384 (2d Cir. 2006) ("[I]n a breach of contract case, damages are calculated at the time of the breach.").

Yucaipa also relies on Prof. Fischel's opinion that an extinguishment of $57.4 million of debt to Yucaipa would not have benefitted the Company because "a forgiveness of debt by Yucaipa would only mean a transfer from debt to equity." (Opp. at 9) (citing Ex. 105 at ¶14). This creates no genuine issue of fact for two reasons. *First*, Prof. Fischel concedes that Allied was insolvent as of August 31, 2009, and that Allied's equity interests had no value at that time. (*Id.* at ¶¶17-20). If Yucaipa had elected to contribute 50% of its Term Loans, Allied would have extinguished $57.4 million of debt in exchange for valueless equity.[4] *Second*, neither Prof. Fischel nor Yucaipa offers any facts supporting the implausible conclusion that "the estate suffered no damages" from Yucaipa's failure to extinguish $57.4 million of secured debt on August 31, 2009 (Opp. at 9). To create a *genuine* fact issue, "an expert opinion must set forth facts and, in doing so, outline a line of reasoning arising from a logical foundation."[5] "The mere presence of an expert opinion supporting the non-moving part[y]'s position does not necessarily defeat a summary judgment motion; rather, there must be sufficient facts in the record to validate that opinion."[6] Among the facts the Trustee's damages expert, Jeffrey Risius, pointed to refuting Prof. Fischel's implausible conclusion are Yucaipa's statements to its auditors that Allied's enterprise value was greater than the First Lien debt. (Ex. 103 at 29 n.130; *see id.* at ¶¶85-90.)

### B.    The Trustee Does Not Double Count Contract Damages

Yucaipa erroneously contends that the Trustee "improperly double-counts" damages in

---

[4]    Even assuming Allied's equity later became valuable with a change of Allied's fortune, this is irrelevant to the breach of contract claim because the damages to the Estate must be measured as of August 31, 2009.

[5]    *Brainard v. Am. Skandia Life Assuramce Corp.*, 432 F.3d 655, 664 (6th Cir. 2005).

[6]    *Hecht v. Investor #1113*, 2014 WL 12610217, at *5 (E.D. Pa. Dec. 1, 2014). *See also, e.g.*, *Brainard*, 432 F.3d at 664; *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993) ("We are not willing to allow the reliance on a bare ultimate expert conclusion to become a free pass to trial every time that a conflict of fact is based on expert testimony.").

asserting both Estate and Lender Claims (Opp. at 10).  But the claims are mutually exclusive.

The Estate Claims seek recovery on behalf of Allied's Estate—encompassing all stakeholders.

The Lender Claims are asserted in the alternative on behalf of First Lien Lenders only.  If the

Trustee prevails on the Estate Claims, that victory will subsume the Lender Claims.  Mr. Risius,

directly addressed this point in his report, explaining that these claims "are mutually exclusive

and cannot be added together."  (Ex.103 (Risius Report) at ¶109).

     **C.**     **Yucaipa Creates No Genuine Issue as to The Lenders' Damages**

The Trustee's damages expert isolates the damages to the First Lien Lenders, alone, by

taking the damages at the time of breach—the loss of either $57.4 million in cash or cancelation

of $57.4 million of debt—and applying that incremental benefit to their actual recovery

following the JCT 363 Sale.  This results in a reasonable estimate which conservatively reduces

the lenders' damages.  Contrary to Yucaipa's arguments (Opp. at 5-8), a reasonable estimate is

all that is required where, as here, there is a proven breach.

Under New York law, once breach is established, mathematical precision is unnecessary

to recover damages.  To prove damages, "a plaintiff need only show a stable foundation for a

reasonable estimate of the damage incurred as a result of the breach."[7]  "The burden of

uncertainty as to the amount of damage is upon the wrongdoer."[8]  Unless the breaching party can

prove a lower quantum of damages, the plaintiff's estimate is accepted.[9]  To the extent Yucaipa's

cited cases apply New York law at all, they address recoverability of damages argued to be

---

[7]     *See, e.g.*, *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110-11 (2d Cir. 2007).

[8]     *Queens Ballpark Co. v. Vysk Commc'ns*, 226 F. Supp. 3d 254, 259 (S.D.N.Y. 2016).

[9]     *Fed. Ins. Co. v. Mertz*, 2016 WL 164618, at *4 (S.D.N.Y. Jan. 12, 2016).

consequential where the contract (unlike here) includes an express waiver of such damages.[10]



In response, Prof. Fischel adduces no evidence establishing a lower damages amount.  Under settled New York law, "when damages are at some unascertainable amount below an upper limit and when the uncertainty arises from the defendant's wrong, the upper limit will be taken as the proper amount."[11]  The damages evaluation proffered by Mr. Risius as of the relevant date—"the date of the breach"[12]—stands unrefuted by any competent evidence.

### D.    There Is No Genuine Issue of Material Fact as to Mitigation

In a final attempt to avoid the consequences of its breach, Yucaipa argues that "a genuine dispute as to BD/S's failure to mitigate" precludes summary judgment.  (Opp. at 10-11). Yucaipa claims that BD/S failed to mitigate because they did not agree to sell their debt positions ███████████████████ in the course of discussions with JCT from late 2011 through May 2012.  (*Id.* at 11).  This does not create a genuine issue of fact for two reasons.  *First*, the relevant JCT term sheet explicitly required BD/S to accede to less than *pari passu* treatment and give up

---

[10]      *See* Opp. at 6, citing *Biotronik A.G. v. Conor Medsystems Ir., Ltd.*, 22 N.Y.3d 799, 808-09 (2014) (permitting recovery of damages that "natural[ly] and probabl[y]" flowed from defendants' breach notwithstanding a contractual limitation restricting recovery of consequential damages); *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 886 N.E.2d 127, 130 (2008) (same); *In re ADI Liquidation, Inc.*, 555 B.R. 423, 433-34 (Bankr. D. Del. 2016) (damages sought violated damages waivers).

[11]      *Gratz v. Claughton*, 187 F.2d 46, 51-52 (2d Cir. 1951) (Learned Hand, C.J.).

[12]      *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 826 (2d Cir. 1990).

their ultimately successful argument that the Fourth Amendment was invalid,[13] both of which are

bases for Yucaipa's liability in this case.  Yucaipa cites no case holding that a party must

mitigate its damages by giving up a meritorious liability claim.[14]  *Second*, the debt BD/S held

was a valuable asset reflecting rights and liens held against Allied's collateral.  New York law is

clear that a party is under no duty to relinquish collateral rights in order to mitigate damages.[15]

## II.    FACT ISSUES DO NOT PRECLUDE EQUITABLE SUBORDINATION

As Your Honor has recognized, "the most important factor in determining if a claimant

has engaged in inequitable conduct for the purposes of equitable subordination is whether the

claimant was an insider or outsider in relation to the debtor at the time of the act."[16]  Yucaipa

concedes that it was an insider of Allied.  It tries to deflect the significance of this fact by citing

inapposite caselaw.[17]  Given Yucaipa's admitted insider status, the Trustee "need only show

---

[13]    *See* Scolnick Ex. 103 at -2635 █████████████████████████████████████████

████████████████████████████████████████████.

[14]    *Compare King Fook Jewellery Grp. Ltd. v. Jacob & Co. Watches, Inc.*, 2016 WL
11642662, at *9 (S.D.N.Y. July 25, 2016) ("The party alleging a failure to mitigate bears the
burden of showing that the plaintiff *unreasonably* failed to minimize damages.") (emphasis in
original).

[15]    *See, e.g., Valley Nat'l Bank v. Gurba*, 149 A.D.3d 412, 413 (N.Y. App. Div. 2017) ("The
motion court correctly dismissed the defense of failure to mitigate, since plaintiff had no duty to
sell the nonperishable collateral at any particular time[.]"); *see also* Ex. 9 §10.6(f) ("assigning
Lender … shall … <u>relinquish its right</u>" and "cease to be a party").  Yucaipa also claims that BD/S
failed to mitigate by acquiring additional debt (Opp. at 11).  BD/S's post-Fourth Amendment debt
purchases are not a failure to mitigate.  They were acquisitions of additional claims against
Yucaipa.  As assignees of the debt, BD/S succeeded to the rights of the selling Lenders, including
their breach of contract claims under the FLCA.  (*See* 13-50530, D.I. 256-1 at, *e.g.*, 2 ██████
████████████████████████████████████, D.I. 257-1 at, *e.g.*, 4 ██████).

[16]    *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 582 (Bankr. D. Del. 2012); *see also* Trustee Br.
at 23-24.

[17]    *See* Opp. at 12 n.4.  In *In re HH Liquidation, LLC*, 590 B.R. 211, 274, 277 (Bankr. D. Del.
2018), unlike here, there was "no evidence" that the insider defendant "stood on both sides" of a
transaction and that there was "no evidence" that the defendant "received anything more or

material evidence of unfair conduct."[18]  Yucaipa, in turn, bears the burden to prove the

transactions it undertook were "in good faith" and "inherent[ly] fair[] from the viewpoint of the

[Company] and those with interests therein."[19]  It has not done this.

### A.    Yucaipa's Inequitable Conduct

Yucaipa's protestations that its conduct was equitable strain credulity.  Its "unfair

conduct" has been settled in judicial decisions and is replete in the record.  (*See* Trustee Br. at

23-28).  Among other things, this inequitable conduct is manifest in:

**Causing Allied to Enter an Illegal and Invalid Transaction.**  In March 2013, the New

York Court squarely held that Yucaipa used its power over Allied to cause the Company to enter

into the illegal and invalid Fourth Amendment: "Yucaipa, <u>as controlling shareholder of Allied,</u>

<u>caused Allied</u> to enter into [the Fourth Amendment]."[20]  The Court also held that Yucaipa

"<u>cause[d] Allied</u>" to acquiesce in its purchase of ComVest's debt.[21]  These determinations are

entitled to deference.[22]  Yucaipa maintains that entry into the Fourth Amendment was simply a

function of the supposed "Special Committee" reviewing and approving it.  (Opp. at 19).  The

argument fails for three reasons.

*First*, there is no evidence of the Special Committee substantively discussing the final

---

different" than other shareholders.  Here, Yucaipa knew it stood on both sides of the transactions
and that they were subject to the entire fairness test.  (*See, e.g.*, Ex. 19 at 1).

[18]    *In re Winstar Commc'ns, Inc.*, 348 B.R. 234, 284 (Bankr. D. Del. 2005), *aff'd*, 2007 WL
1232185 (D. Del. Apr. 26, 2007), *aff'd in part*, 554 F.3d 382 (3d Cir. 2009).

[19]    *In re Steel Wheels Transport, LLC*, 2011 WL 5900958, at *7 (Bankr. D.N.J. Oct. 28, 2011).

[20]    *BDCM Opportunity Fund II, LP v. Yucaipa Am. All. Fund I, LP*, 2013 WL 1290394, at *5
(N.Y. Sup. Ct. Mar. 8, 2013).

[21]    *Id*. at *4.

[22]    *See, e.g.*, *Keslosky v. Borough of Old Forge*, 66 F. Supp. 3d 592, 607 (M.D. Pa. 2014)
(factual findings in related state action entitled to deference when raised on summary judgment).

version of the Fourth Amendment.  Yucaipa points to Board consideration of earlier iterations of the amendment, but the record reflects that in August 2009 the final amendment was rewritten by Yucaipa's counsel—stripping it of protections for the Company contained in earlier drafts—and rushed through consideration so that Yucaipa could finalize its purchase of ComVest's debt.[23]

*Second*, Yucaipa baselessly argues that its allegedly "good faith belief *in August 2009* that it was acting in compliance with the FLCA" negates "any remote inference that it was behaving inequitably."  (Opp. at 20).  Neither case cited by Yucaipa supports this contention,[24] and Yucaipa did not in fact proceed in good faith.  At a minimum, it disregarded numerous red flags.  (*See* Trustee Br. at 29; Indiv. Opp. at 15-16).  As Troutman's corporate representative testified: "everybody went in with their eyes open that ... other lenders were potentially going to contest this.  It was not [Troutman's] job as counsel [to provide] a legal opinion to guarantee [] that risk."  (Scolnick Opp. Ex. 3 (Troutman 30(b)(6) Dep.) 354:6-14).  Yet, Yucaipa doubled down by negotiating directly with ComVest and having its counsel draft a Fourth Amendment excising all protections for the Company.  Courts routinely hold such overreaching is inequitable conduct even for *non*-insider defendants.[25]

*Third*, as addressed by the Trustee's corporate governance expert (Prof. Macey of Yale), any consideration of the Fourth Amendment by Allied's Special Committee cannot shield

---

[23]     Emails suggest the Fourth Amendment *may* have been considered by the "Special Committee" on a 10-minute call after it was executed, but nobody involved could recall such a discussion.  (*See* Exs. 150, 151; Scolnick Opp. Ex. 3 (Troutman 30(b)(6) Dep.) 346:5-350:19; Scolnick Ex. 10 (Cullen Dep.) at 229:3-8).

[24]     *In re Think Retail Solutions, LLC*, 2019 WL 2912717 (Bankr. N.D. Ga. July 5, 2019) does not even involve a claim of equitable subordination.  The defendant in *In re QuVis, Inc.*, 446 B.R. 490, 503 (Bankr. D. Kan. 2011) was a secured creditor, and the Court emphasized that if defendant had been an insider (like Yucaipa), "plaintiff[] would only need to show … unfair conduct."

[25]     *See, e.g.*, *In re Island View Crossing II, L.P.*, 604 B.R. 181, 203 (Bankr. E.D. Pa. 2019).

Yucaipa from the consequences of its actions in light of the Committee members' debilitating conflicts.[26]

**Spending Years Masquerading As Requisite Lender.** As outlined in the Trustee Brief (at 25-26), Yucaipa's seizure of control deprived Allied and its First Lien Lenders of the agreed-upon protections in the FLCA for nearly 4 years and precipitated Allied's bankruptcy. Yucaipa responds that this was not inequitable because the First Lien Lenders had elected not to exercise remedies *before* Yucaipa improperly seized control. (Opp. at 20-21). That is a non sequitur. It also ignores that, from the outset, the First Lien Lenders (through CIT in the Georgia Action and later BD/S in the New York Action) strenuously opposed Yucaipa's efforts to anoint itself Requisite Lender. Yucaipa meanwhile caused Allied to pay millions in Yucaipa legal fees to protect the rights Yucaipa had wrongfully arrogated to itself. (*See* Trustee Br. at 35).

**Hijacking JCT Negotiations.** Yucaipa's years-long campaign of inequity culminated in its commandeering and sabotaging the JCT negotiations. ████████████████████ ████████████████████████████████████████████████████████████████ Faced with this concession, Yucaipa now claims—with no evidentiary basis—that it did, in fact, agree to ratable treatment and that BD/S jumped the gun on an agreed-upon standstill to file for bankruptcy protection. (Opp. at 24-25). Yucaipa claims that a draft agreement circulated by BD/S's counsel on May 16, 2012, memorialized an earlier agreement to accept equal and ratable treatment. (*Id.* at 24 (citing Ex. 70)). As attested to in the accompanying declarations, however, there was no such "agreement [] reached on these issues, in principle or otherwise." (Harris Decl. ¶5).[27] On the contrary, BD/S's counsel (Adam Harris of Schulte) ████████████

---

[26]    *See* Ex. 104 (Macey Report) ¶¶77-97.

[27]    *See also* the accompanying Declarations of Richard Ehrlich and Jeffrey Schaffer.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████ This

email prompted an extension of the standstill to 5:00 p.m. that day and Walker again said that

Ron Burkle would be calling Steve Deckoff.  (Ex. 71).  The 5:00 p.m. deadline passed without

Mr. Burkle having called Mr. Deckoff or Yucaipa providing comments on the draft agreement.[28]

BD/S filed a petition seeking bankruptcy protection at 5:45 p.m. that day.  (Ex. 154).[29]

Yucaipa presents no evidence contradicting these facts.  Yucaipa had every opportunity

to agree to the ratable treatment that its principal ███████████████████  At no time did it do

so.  Yucaipa's opposition to summary judgment on this issue is grounded in unsupported

arguments, not evidence, and fails to create a genuine issue of material fact.[30]

---

[28]    *See* Ehrlich Decl. ¶¶8-9; Scolnick Ex. 8 (Deckoff Dep.) 177:2-178:6, 245:4-246:1.

[29]    The Trustee respectfully requests that the Court take judicial notice of the information contained in Ex. 154.  *See, e.g.*, *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (taking judicial notice of "information [] publicly available on government websites").

[30]    *See, e.g.*, *Kilmon v. Cmty. Servs., Inc.*, 2000 WL 1728300, at *10 (D. Del. Mar. 24, 2000) ("As the Third Circuit has explained, unsubstantiated allegations and arguments advanced by attorneys fail to constitute evidence which would preclude the entry of summary judgment.").

**B.    Yucaipa Took Unfair Advantages of, And Harmed, Allied's Creditors**

To support equitable subordination, the Trustee need only demonstrate unfair advantage-taking by Yucaipa *or* harm to creditors.[31]  Here, the facts demonstrate both.

**The Fourth Amendment Protected Yucaipa's Equity Investment.**  Yucaipa argues that it could not have received an unfair advantage from acquiring First Lien Debt because it "received no interest or principal payments on that debt." (Opp. at 29).  This is false.  Yucaipa received a distribution of over $10 million on LC Commitments it impermissibly held in late 2011. (Ex. 153).  Yucaipa is also confusing a *benefit* with an *advantage*.  *See Mid-Am.*, 284 B.R. at 73 (rejecting argument that "inequitable conduct must personally benefit the claimant").  Even if Yucaipa had not received a monetary benefit—which it did—improperly acting as Requisite Lender gave it an advantage.  It allowed Yucaipa to seize the power "to make decisions that would be binding on all Lenders" including with respect to exercising remedies under the FLCA.[32]  This positioned Yucaipa to gain favorable treatment for its equity without the threat of majority lenders (like ComVest) zeroing out its investments.[33]

**Yucaipa Secured A Position of Control.**  Yucaipa also garnered an advantage over Allied's other creditors in the JCT negotiations.  Mike Riggs (JCT's CEO) testified that he

---

[31]    *See In re Mid-Am. Waste Sys., Inc.*, 284 B.R. 53, 71 (Bankr. D. Del. 2002) ("Th[e] standard is stated in the disjunctive so only either unfair advantage *or* harm must be established.") (emphasis in original).

[32]    *See BDCM*, 2013 WL 1290394, at *4.

[33]    Scolnick Ex. 17 (ComVest 30(b)(6) Dep.) 182:22-24 ████████████████████████
████████████████████████████████████████.

Putting itself in position to steer the discussions with JCT—and demand a premium for its debt—was inequitable.[34]

**Yucaipa Harmed Allied's Creditors.**  The advantages Yucaipa reaped by claiming Requisite Lender status came at the expense of legitimate creditors.  For over four years, the non-Yucaipa Lenders were stripped of protections they bargained for in the Third Amendment. These included Yucaipa's required capital contribution, which would have deleveraged the Company, and the ability to exercise their rights and remedies.[35]  Multiple courts have held that Yucaipa's lawsuits violated the Third Amendment's binding contractual waiver and covenant not to sue.  (Trustee Br. at 27-28).[36]

Critically, any dispute as to whether the Fourth Amendment injured Allied's non-Yucaipa creditors is resolved by the Third Amendment, which "recognize[d] and acknowledge[d]" that Yucaipa's breach of any of the restrictions imposed on its acquisition of First Lien Debt "will cause the other [creditors] to sustain damages" and entitle the creditors to "injunctive _and other_

---

[34]    _See Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims_, 160 F.3d 982, 989 (3d Cir. 1998) (insider with significant equity in the debtor realized an unfair advantage by surreptitiously purchasing debt post-petition and thus "secur[ing] a position of influence over the [debtor's] reorganization negotiations").  Yucaipa also argues that its refusal to support JCT stalking horse bids post-petition cannot support equitable subordination because they are not specifically referenced in the Estate or Lender Complaints.  (Opp. at 25).  Every fact does not have to be in a complaint.  As discussed in the Entities Opp. (at 40-41), new legal theories cannot be raised at summary judgment, but raising facts underlying existing claims is permitted.

[35]    _See BDCM_, 2013 WL 1290394, at *5 (Fourth Amendment's effect was to "seiz[e] control of the Lenders' rights and remedies").

[36]    Yucaipa points to the _Noerr-Pennington_ doctrine as a purported justification for its inequitable conduct.  This is futile.  First, Yucaipa's actions were objectively baseless, as every court to consider them has found.  The New York Court, for example, found one of Yucaipa's arguments so groundless as to be "unworthy of comment."  _BDCM_, 2013 WL 1290394, at *5. Second, Allied and other Lenders were harmed by incurring legal fees regardless of whether the actions were baseless (as they clearly were).  _See, e.g._, _In re Apyron Techs., Inc._, 2005 WL 6485938, at *4 (Bankr. N.D. Ga. Sept. 13, 2005) (equitably subordinating claim on summary judgment involving costs defending "unsupported and meritless claim").

equitable relief." (Ex. 20 at §2.7(e)). Yucaipa is bound by these contractual commitments.

### C.      Yucaipa Cannot Demonstrate Good Faith Or Inherent Fairness

Confronted with evidence of its inequitable conduct, Yucaipa bears the burden of demonstrating good faith as well as "the inherent fairness" of its actions from the point of view of Allied and its non-Yucaipa creditors. *Mid-Am.*, 284 B.R. at 69. It fails to make this showing.

#### 1.      *Yucaipa's First Lien Debt Acquisition Was Not in Good Faith*

"The essence of the [good faith] test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside." *Pepper v. Litton*, 308 U.S. 295, 306-07 (1939). The Fourth Amendment fails this test.

Yucaipa argues that there was support for its acquisition of First Lien Debt (Opp. at 17-18), but the Opposition is devoid of evidence that Allied, or the conflicted Special Committee, pressed for better terms in August 2009. The evidence shows that Yucaipa used Allied as an instrument to push through its deal with ComVest. (Trustee Br. at 14).

Yucaipa's lone argument that becoming Requisite Lender was fair from Allied's perspective is that it was supposedly necessary to stave off liquidation. (Trustee Br. at 18-19). To support this, it puts forward only conclusory statements—primarily from Yucaipa—that liquidation was *a possibility* at the time. These conclusory assertions are belied by evidence that ComVest told Yucaipa that ██████████████████████████████████

██████ Yucaipa does not discuss this possibility for an obvious reason: while a restructuring was an option for Allied and its creditors, it was not an option for Yucaipa because its equity

---

[37]      Scolnick Ex. 17 (ComVest 30(b)(6) Dep.) 70:24-71:24; 72:23-73:5 ██████

██████████ For this reason, Yucaipa's reliance on *In re SubMicron* is misplaced. There, the evidence was "uncontradicted" that had defendants not made loans to the debtor, it would have been forced to liquidate. 432 F.3d 448, 462 (3d Cir. 2006). Allied was not in the same position.

██████████████████████ There was no good faith in this bargain.

### 2. *Yucaipa's First Lien Debt Acquisition Was Not "Inherently Fair"*

The Third Amendment reflects the conclusion of non-Yucaipa Lenders that their interests were served by subjecting any purchase by Yucaipa of First Lien Debt to a host of restrictions.[39] Yucaipa does not even attempt to show that "seizing control of the Lenders' rights and remedies"[40]—and causing millions in damages in the aftermath—was inherently fair to the other Lenders.[41]  Thus, it does not carry its burden.

### D. Yucaipa's Debt Should Be Subordinated Independent of Timing

Yucaipa's final argument—that its debt should not be subordinated to claims acquired by BD/S in 2011-2012 (Opp. at 31)—makes no attempt to explain how the timing of these acquisitions affects the Estate's claim for equitable subordination on behalf of all stakeholders.

With respect to the Lenders' claim for equitable subordination, the fact that BD/S acquired debt in 2011 and 2012 does not impact the analysis.  Yucaipa's cited authority applies only where, unlike here, the debt is acquired after the commencement of bankruptcy.[42] Yucaipa's argument is little more than a resurrection of its previously-rejected "implausible"

---

[38]    Scolnick Ex. 17 (ComVest 30(b)(6) Dep.) 182:16-24.

[39]    *See BDCM*, 2013 WL 1290394, at *4 (discussing the "*quid pro quo* for permitting Yucaipa to acquire [First Lien debt]").

[40]    *Id.* at *5.

[41]    Yucaipa points to vague, one-off statements by BD/S purporting to show that its actions were taken in good faith.  (Opp. at 21).  Not only is this theory undermined by the evidence, which shows that BD/S objected to Yucaipa's actions at every turn (*see* Scolnick Ex. 85), but multiple iterations of this defense have been rejected by this Court (*see* 14-50971, D.I. 194, 416).

[42]    *See In re S & D Foods*, 110 B.R. 34, 37 (Bankr. D. Colo. 1990) (Opp. at 31) (no subordination for claims purchased "after the alleged misconduct of other creditors *and after the intervention of bankruptcy* and at distressed prices"); *In re W. T. Grant Co.*, 4 B.R. 53, 78 (Bankr. S.D.N.Y. 1980) (debt acquired "after the alleged misconduct of the [defendants], *the intervention of bankruptcy* and at distressed prices"), *appeal aff'd*, 699 F.2d 599 (2d Cir. 1983).

arguments that BD/S spent years "lying in wait for the optimal time to file their equitable

subordination claim." (*See, e.g.*, 14-50971, D.I. 82-1 at 64-65).

### III.    THE TRUSTEE'S MOTION SHOULD BE GRANTED ON CLAIMS FOR AVOIDANCE OF FRAUDULENT TRANSFERS AND DISALLOWANCE OF CLAIMS

Yucaipa acknowledges that summary judgment on the Trustee's fraudulent transfer

claims is appropriate if the transfers (1) were made while Allied was insolvent and (2) were not

in exchange for reasonably equivalent value. (Opp. at 32 & n.12).  Under Section 550(a), the

Trustee may recover the fraudulent transfers from the entity for whose benefit such transfer was

made (here, Yucaipa). (*Id.* at 36).  Yucaipa does not dispute that the relevant transfers were

made while Allied was insolvent (*see generally id.* at 32-37).  Yucaipa fails to raise triable issues

of fact as to whether the transfers were (1) in exchange for reasonably equivalent value (they

were not); and (2) made for Yucaipa's benefit and recoverable from it (they were, and are).

### A.    The Record Establishes Lack of Reasonably Equivalent Value

**Kasowitz and Latham Payments.**  Yucaipa does not raise any genuine issue of material

fact as to whether Allied received "roughly the value it gave" in exchange for its payments to

Kasowitz and Latham ███████████████. (Opp. at 32).  These law firms worked only for

Yucaipa (Trustee Br. at 32-33).  Yucaipa does not dispute this, but contends that Allied received

an "indirect" benefit from its payments to Yucaipa's attorneys. (Opp. at 33).  But any indirect

benefit still must be reasonably equivalent to the transfers made,[43] and it is Yucaipa's "burden …

to prove that the debtor received reasonably equivalent value indirectly as a result of the

transfer." *In re Spitko*, 2007 WL 1720242, at *17 (Bankr. E.D. Pa. June 11, 2007).[44]  Yucaipa

---

[43]    *See, e.g., Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 646 (3d Cir. 1991) (consideration received indirectly by debtor must approximate the value given).

[44]    With one exception, Yucaipa's cited cases do not involve payments by a debtor of bills issued to a third party for services rendered to that third party. (Opp. at 32-33).  The exception, *In*

cannot satisfy this burden as Allied did not receive indirect value remotely approaching the millions paid.

Thus, while Yucaipa claims certain work may have indirectly benefitted Allied, it makes no attempt to explain how this indirect benefit approximates what the Company paid (Opp. at 34). For example, Yucaipa asserts that legal fees incurred "in connection with the Third Amendment and the subsequent debt-to-equity swap by Yucaipa in 2008" benefited Allied because its purchase and contribution of Allied's <u>Second Lien</u> Debt deleveraged Allied's balance sheet (*id.*). Most of the fees, however, relate to negotiating and finalizing the Third Amendment to the <u>First Lien</u> Credit Agreement, which offered no value to Allied, as Yucaipa has admitted it never intended to purchase debt pursuant to that amendment.[45] Yucaipa thus fails to show "concrete, quantifiable, and tangible indirect benefit" to Allied as a result of these payments.[46] Yucaipa argues that Allied may have benefitted from "the certainty that [the Georgia Action] sought," without addressing how that value was reasonably equivalent to payment of Yucaipa's legal fees to Kasowitz (Opp. at 34-35), particularly given that Allied was separately funding its own counsel as well as paying Kasowitz. (*See* Scolnick Ex. 93 at 28).

**Yucaipa-ComVest Payments.** Allied clearly did not receive reasonably equivalent value for the ▮▮▮▮▮ it paid for Yucaipa and ComVest's legal fees and expenses (or Ornstein's ▮▮▮▮ fee) (*see* Trustee Br. at 35-36). Yucaipa asserts that Ornstein added "value"

---

*re FBI Wind Down, Inc.*, 581 B.R. 387, 416 (Bankr. D. Del. 2018) (cited in Opp. at 33) is entirely off point. There, the Court found it likely that the transfers provided the debtor reasonably equivalent value because the debtor transferor was paying debts incurred by its subsidiary, and accordingly received the value of "the preservation of economic benefit in its subsidiary." *Id.*

[45]     *See* Scolnick Ex. 6 (Yucaipa 30(b)(6) Dep.) 381:21-383:23 ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[46]     *In re Nat'l Century Fin. Enters., Inc.*, 341 B.R. 198, 218 (Bankr. S.D. Ohio 2006).

to the negotiations (Opp. at 35).  But Ornstein's introduction of Yucaipa's and ComVest's principals, his acting as a go-between in their direct negotiations (to which Allied was not a party), and his provision of advice to them on various deal structures (*id.* at 35-36) do not demonstrate any benefit to Allied, let alone value reasonably equivalent to the ████ Allied paid him.  Ornstein helped broker a private deal directly between Yucaipa and ComVest (*see* Trustee Br. at 36).  Tellingly, he was paid pursuant to a sham "consulting agreement"—neither Ornstein nor others involved recalled any consulting work he had done for the Company in exchange for the payment.[47]

Yucaipa maintains that Allied's payments to Yucaipa and ComVest benefitted Allied because they covered costs incurred in drafting and entering the Fourth Amendment, and that it was "common practice" for borrowers to pay fees in connection with amendments (Opp. at 36). But even if borrowers commonly make such payments—which is strongly disputed (*see* Indiv. Opp. at 24-25)—that does not raise a triable issue of fact as to whether Allied received any value in exchange for the ██████████ it paid Yucaipa's lawyers to draft an invalid amendment. The Fourth Amendment's purpose was to permit Yucaipa to hold a majority of the debt and act as Requisite Lender (*see* Trustee Br. at 14, 25, 29).  This invalid amendment, drafted by Latham, eliminated all benefits to the Company in previous drafts.  Yucaipa's claimed justifications for its entry wither under scrutiny.  (Indiv. Opp. at 15-17).

### B.    The Fraudulent Transfers Were Not Contractually Required

Yucaipa's argument that Allied's fraudulent transfers were contractually required (Opp. at 36) mischaracterizes the two contracts cited—the MMSA and FLCA.  These payments were

---

[47]    *See* Ex. 91 (Ornstein Dep.) 129:1-10, 130:15-22; Ex. 98 (Walker Dep.) 712:16-24; Ex. 100 (Tochner Dep.) 315:9-12; Ex. 97 (Gendregske Dep.) 324:6-9, 325:11-15.

not required.  (Indiv. Opp. at 22-23; Entities Opp. at 46-48).

### C.    Allied's Payments Were Indisputably Made for Yucaipa's Benefit

**Payments to Kasowitz and Latham.**  Contrary to Yucaipa's assertion (Opp. at 36-37), the Trustee has presented irrefutable evidence that Yucaipa is the entity for whose benefit the Kasowitz and Latham payments were made.  Yucaipa does not dispute that Kasowitz and Latham represented only Yucaipa or that the invoices paid by Allied were addressed to Yucaipa. On their face, these payments were made for Yucaipa's benefit.

**Payments for Yucaipa-ComVest Transaction.**  Yucaipa does not dispute that it is the initial transferee, within Section 550(a), of Allied's ▇▇▇ payment of Yucaipa's fees and expenses for the Yucaipa-ComVest Transaction (*id.*).  As ample evidence identified in this Motion demonstrates, Allied's payments to ComVest and Ornstein benefitted Yucaipa and are recoverable from it.  ComVest's corporate representative testified that having its expenses reimbursed was a necessary component of any deal with Yucaipa.[48]  Allied's payment therefore enabled Yucaipa to finalize its deal, purport to purchase a majority share of Allied's debt, and claim to be Requisite Lender.  Similarly, Allied's payment to Ornstein was for Yucaipa's benefit. The evidence reflects that payment was at Burkle's request, and not of Allied's volition.[49]

### D.    Yucaipa's Claims Should be Disallowed

Yucaipa raises no objection to the Trustee's disallowance claim beyond its assertion that summary judgment is warranted "only if the Court concludes the Trustee is entitled to summary judgment on the claims for avoidance and recovery of purported fraudulent transfers." (Opp. at

---

[48]    Scolnick Ex. 17 (ComVest 30(b)(6) Dep.) 135:20-136:3 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

[49]    *See* Ex. 152; Ex. 55.

37).  Because summary judgment should be granted in the Trustee's favor on those claims, it

should likewise be granted on her disallowance claim.  (*See also* Trustee Br. at 37).

## <u>CONCLUSION</u>

For the foregoing reasons, summary judgment should be granted.

Dated: December 18, 2020

**FOX ROTHSCHILD LLP**

By:      */s/ Seth A. Niederman*
Seth A. Niederman (DE Bar No. 4588)
Citizens Bank Center
919 N. Market Street, Suite 300
Wilmington, DE 19801
Tel.: (302) 654-7444
Fax: (302) 656-8920
sniederman@foxrothschild.com

-and-

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph
Douglas J. Pepe
Gila S. Singer
485 Lexington Avenue, 30th Floor
New York, NY 10017
Telephone: (212) 407-1200
gjoseph@jha.com

-and-

**ZAIGER LLC**
Jeffrey H. Zaiger
432 Park Avenue, Suite 19A
New York, NY 10022
Telephone: (917) 572-7701
jzaiger@zaigerllc.com

*Counsel for the Litigation Trustee and Plan Administrator*

832576

Appendix A

**Abbreviations and Defined Terms**

| | |
|---|---|
| **13-50530** | *Catherine E. Youngman, Litig. Tr. for ASHINC Corp. v. Yucaipa Am. All. Fund I, L.P.*, Adv. Proc. No. 13-50530 (Bankr. D. Del.) |
| **14-50971** | *Catherine E. Youngman, Litig. Tr. for ASHINC Corp. v. Yucaipa Am. All. Fund I, L.P.*, Adv. Proc. No. 14-50971 (Bankr. D. Del.) |
| **2005 Bankruptcy** | *In re Allied Holdings, Inc., et al.*, Case Nos. 05-12515 through 05-12526 and 05-12528 through 05-12537 (Bankr. N.D. Ga.) |
| **Active** | Active Carhaul |
| **Allied Adversary Proceeding** | *ASHINC Corp. v. AMMC VIII, Ltd. et al.*, Adv. Proc. No. 12-50947-CSS (Bankr. D. Del) |
| **Allied** or the **Company** | ASHINC Corp.(formerly known as Allied Systems Holdings, Inc.) and related Debtors |
| **Amended Plan** | Debtors' Modified First Amended Joint Chapter 11 Plan of Reorganization dated December 3, 2015 (Case No. 12-11564, D.I. 3360-1) |
| **BD/S** | Black Diamond and Spectrum |
| **Black Diamond** | BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 Ltd. |
| **Board** | Allied's Board of Directors |
| **Burkle** | Defendant Ronald Burkle |
| **CIT** | CIT Group/Business Credit, Inc. |
| **ComVest** | ComVest Investment III, L.P. |
| **Credit Agreements** | Allied's First Lien Credit Agreement and Second Lien Credit Agreement |
| **D. Del. Compl.** | *Yucaipa Am. All. Fund I, L.P. et al. v. Richard A. Ehrlich et al.*, No. 15-cv-373 (D. Del. May 8, 2015), ECF No. 1 |
| **Direct Lender Claims** | Claims brought on behalf of the lenders under Allied's first lien credit facility asserted in Adv. Proc. No. 14-50971 |
| **Ehrlich Decl.** | The accompanying Declaration of Richard Ehrlich, dated December 18, 2020 |
| **Entities Opposition** or **Entities Opp.** | Litigation Trustee's Opposition to the Motion for Summary Judgment by Yucaipa American Alliance Fund I, LP and Yucaipa American Alliance (Parallel) Fund I, LP, dated July 17, 2020 |
| **Estate Claims** | Claims brought on behalf of the Allied Estates asserted in Adv. Proc. No. 13-50530 |
| **Ex.** | Exhibits to the first Declaration of Gila S. Singer, dated May 1, 2020 (13-50530, D.I. 713; 14-50971, D.I. 466); Second Declaration of Gila S. Singer, dated August 21, 2020 (13-50530, D.I. 772; 14-50971, D.I. 516); and the accompanying Third Declaration of Gila S. Singer |

1

| | |
|---|---|
| **First Lien Credit Agreement or "FLCA"** | Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 (Ex. 9) |
| **Gendregske Br.** | Defendant Mark Gendregske's Opening Brief in Support of his Motion for Summary Judgment, dated May 1, 2020 (13-50530, D.I. 708) |
| **Georgia Action** | *Allied Systems Holdings, Inc., et al. v. The CIT Group/Business Credit, Inc.*, Civil Action No. 2009-CV-177574 (Super. Ct. Fulton Cnty.) |
| **Harris Decl.** | The accompanying Declaration of Adam C. Harris, dated December 18, 2020 |
| **Indiv. Br.** | Memorandum of Points and Authorities in Support of Motion for Summary Judgment by Defendants Ronald Burkle, Jos Opdeweegh, Derex Walker, Jeff Pelletier, and Ira Tochner (13-50530, D.I. 699; 14-50971, D.I. 456) |
| **Individual Defendants** | Defendants Ronald Burkle, Jos Opdeweegh, Derex Walker, Jeff Pelletier, and Ira Tochner |
| **Individuals Opposition or Indiv. Opp.** | Litigation Trustee's Opposition to the Motion for Summary Judgment by the Individual Defendants, dated July 17, 2020 |
| **Jack Cooper or JCT** | Jack Cooper Transport |
| **JCT 363 Sale** | Purchase by JCT of substantially all of Allied's assets for $135 million following an auction for Debtors' assets under 11 U.S.C. §363, which closed on December 27, 2013 |
| **Joint Procedural History** | Joint Procedural History, dated July 25, 2019 (13-50530, D.I. 599; 14-50971, D.I. 365) |
| **Kasowitz** | Kasowitz Benson Torres LLP |
| **Latham** | Latham & Watkins LLP |
| **LPA** | Loan Purchase Agreement between Yucaipa and ComVest, dated August 21, 2009 (Ex. 43) |
| **MMSA** | Monitoring and Management Services Agreement, dated May 29, 2007 (Scolnick Ex. 32) |
| **NY Action** | *BDCM Opportunity Fund II, LP, et al. v. Yucaipa American Alliance Fund I, L.P., et al.*, Index No. 650150/2012 (N.Y. Sup. Ct. N.Y. Cnty.) |
| **Opposition or Opp.** | Opposition to the Litigation Trustee's Motion for Summary Judgment by Defendants Yucaipa American Alliance Fund I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P., Ronald Bukle, Ira Tochner, Derex Walker, Jos Opdeweegh, and Jeff Pelletier |
| **Plan** | Second Amended Joint Plan of Reorganization, *In re Allied Holdings, Inc.*, No. 05-12515 (CRM) (Bankr. N.D. Ga.), D.I. 2802 (Ex. 11) |
| **Requisite Lenders** | As defined in Allied's First Lien Credit Agreement (Ex. 9 at 41) |

| | |
|---|---|
| **Scolnick Ex.** | Exhibits to the Declaration of Kahn A. Scolnick, dated May 1, 2020 (13-50530, D.I. 721; 14-50971, D.I. 457) |
| **Scolnick Opp. Ex.** | Exhibits to the Declaration of Kahn A. Scolnick, dated August 21, 2020 (13-50530, D.I. 767; 14-50971, D.I. 511) |
| **SDNY Compl.** | *Yucaipa Am. All. Fund I, L.P. et al. v. Richard A. Ehrlich et al.*, No. 15-cv-916 (S.D.N.Y. Feb. 6, 2015), ECF No. 1 |
| **Second Lien Credit Agreement** | Second Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 |
| **Spectrum** | Spectrum Investment Partners, L.P. |
| **Tender Offer** | February 4, 2009 tender offer by Yucaipa for Allied first lien debt (Ex. 30) |
| **Third Amendment** | Amendment No. 3 to First Lien Credit Agreement and Consent, dated as of April 17, 2008 |
| **Troutman** | Troutman Sanders LLP |
| **Trustee** | Plaintiff Catherine E. Youngman, as Litigation Trustee for ASHINC Corp. (formerly known as Allied Systems Holdings, Inc.) and related Debtors |
| **Trustee Brief** | Litigation Trustee's Memorandum in Support of Motion for Partial Summary Judgment, dated May 1, 2020 (13-50530, D.I. 706; 14-50971 D.I. 463) |
| **UVTA** | Uniform Voidable Transactions Act |
| **Yucaipa** | Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. |
| **Yucaipa Br.** | Memorandum of Points and Authorities in Support of Motion for Summary Judgment by Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P., dated May 1, 2020 (13-50530, D.I. 697; 14-50971, D.I. 454) |
| **Yucaipa Directors** | Defendants Jos Opdeweegh, Derex Walker, Jeff Pelletier, and Ira Tochner |
| **Yucaipa-ComVest Transaction** | Yucaipa's August 21, 2009 purchase of ComVest's $145.1 million (principal face amount) of Allied First Lien Debt for approximately $43 million pursuant to the LPA |