GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Kahn Scolnick
Direct: +1 213.229.7656
Fax: +1 213.229.6656
KScolnick@gibsondunn.com

February 19, 2021

VIA CM/ECF

The Honorable Christopher S. Sontchi
United States Bankruptcy Court
District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE 19801

Re:     Allied Litigation (Adversary Proceedings 13-50530-CSS, 14-50971-CSS)

Dear Judge Sontchi:

     I write as counsel for Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. (together, "Yucaipa") in the above-referenced adversary proceedings. During the February 4, 2021 hearing on the parties' cross-motions for summary judgment, the Court directed the parties to submit letter briefs regarding the potential applicability of *In re Maxus Energy Corp.*, 2019 WL 647027 (Bankr. D. Del. Feb. 15, 2019) to the Trustee's argument that the "continuing breach" doctrine saves the Lenders' time-barred Contract-Based Claims. As explained below, *Maxus* does not help the Trustee because it (a) did not involve an alleged breach of contract or the continuing breach doctrine, but rather the unique "collapsing doctrine" applicable only to fraudulent conveyance claims; and (b) arose in the context of a motion to dismiss, not the more rigorous standards applicable at the summary judgment phase.

**A.     The Lender Complaint's Contract-Based Claims Are Time-Barred**

     The Lender Complaint focuses on two purported breaches that occurred in August 2009, when Yucaipa (1) acquired the majority of Allied's first lien debt from ComVest, in contravention of the contractual limits in the Third Amendment to the First Lien Credit Agreement ("FLCA"); and (2) failed to make a capital contribution to Allied within ten days of acquiring that debt, as required by the Third Amendment.

     Yucaipa demonstrated in its summary judgment papers and at the February 4 hearing that "[f]or breach of contract claims, the wrongful act is the breach, and the cause of action accrues at the time of the breach." *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *7 (Del. Ch. Jan. 24, 2005). Accordingly, the Lenders' Contract-Based Claims accrued in August 2009, because the statute of limitations "begins to run at the time the contract is broken, *not at the time when actual damage results or is ascertained.*" *Worrel v. Farmers Bank*, 430 A.2d 469, 472 (Del. 1981) (emphasis added).

27760483.1

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

GIBSON DUNN

The Honorable Christopher S. Sontchi
February 19, 2021
Page 2

It is undisputed that the Lenders knew Yucaipa's breaches occurred in August 2009 and that they could have sued immediately—indeed, one of the Lenders (CIT) sued Yucaipa in 2009 and asserted these exact same claims. (Singer Decl., Ex. 52; Scolnick Decl., Exs. 83–85, 87; Suh Decl., Ex. 3.)[1]  Under Delaware's three-year statute of limitations, then, the Lenders had to bring the Contract-Based Claims by August 2012.  Yet BD/S stood on the sidelines until filing their complaint on November 19, 2014, more than two years too late.

The Trustee seeks refuge in the "continuing breach" doctrine.  But as explained (*see* Yucaipa Reply at 2–14), the Trustee has come nowhere near meeting her "burden of proving that the continuing breach doctrine tolls the statute of limitations" here. *Davis, Bowen & Friedel, Inc. v. Disabatino*, 2016 WL 7469691, at *4 (Del. Super. Ct. Dec. 27, 2016).

First, the doctrine is a "narrow" exception to the normal accrual rules for breach of contract claims.  *Norman v. Elkin*, 961 F.3d 275, 286 (3d Cir. 2020) (declining to apply the doctrine to a claim for failure to make distributions over time because each instance constituted "a discrete and readily determinable" violation); *AM Gen. Holdings LLC v. The Renco Grp., Inc.*, 2016 WL 4440476, at *12–13 (Del. Ch. Aug. 22, 2016) (declining to apply the doctrine to breaches of "specific, identifiable provisions" of the contract).  The quintessential "continuing" contract is one for indemnity—with a continuing duty to defend that runs through the life of an underlying litigation.  *See, e.g.*, *Oliver B Cannon & Son, Inc. v. Fid. & Cas. Co.*, 484 F. Supp. 1375, 1389–90 (D. Del. 1980).

Critically, however, "[c]ourts have uniformly rejected attempts to characterize alleged breaches of contract accruing at fixed points in time as 'continuing' breaches." *In re Cellnet Data Sys., Inc.*, 313 B.R. 604, 610 (Bankr. D. Del. 2004); *see AM Gen.*, 2016 WL 4440476, at *12.  Here, the Lenders' Contract-Based Claims are based on "violations of specific, identifiable provisions" of the FLCA—the contractual cap on Yucaipa acquiring First Lien Debt and the Capital Contribution requirement—that accrued at fixed points in

---

[1] The Trustee has suggested that the limitations period should be tolled because the Lenders' damages were not fully calculable in 2009.  (Tr. Opp. at 21–22.)  First, this is directly contrary to Delaware law, under which claims accrue at the moment of breach even if damages are not yet ascertainable. *Smith v. Mattia*, 2010 WL 412030, at *3 (Del. Ch. Feb. 1, 2010); *accord Worrel*, 430 A.2d at 472.  Second, the Trustee ignores that the FLCA and Third Amendment gave the Lenders the express right to seek specific performance, precisely because damages would be difficult to calculate (Scolnick Decl., Ex. 41 at 8 (§ 2.7(e))), which is why CIT's counterclaims in the Georgia Action included specific performance. (Singer Decl., Ex. 52 at 31–33.)  Had the Lenders availed themselves of their contractual right to seek specific performance in 2009, they would have mitigated (or mooted) any damages they later claim to have suffered.

GIBSON DUNN

The Honorable Christopher S. Sontchi
February 19, 2021
Page 3

time in August 2009, such that the Lenders "could have alleged a *prima facie* case for breach of contract after a single incident," just as CIT did. *Norman*, 961 F.3d at 286.

Second, the Trustee has pointed to a variety of alleged conduct occurring after August 2009; she asserts that this later conduct somehow resuscitates the August 2009 breaches because it is all part of one "continuing" breach. Nonsense. As explained in Yucaipa's Reply and at the summary judgment hearing, the post-August 2009 allegations (a) refer to contractual obligations of Allied, not Yucaipa; (b) are not actionable breaches of contract at all; (c) are unsupported by any evidence; and/or (d) even if they could constitute breaches of the FLCA, they would be separate breaches of different provisions of the FLCA from the August 2009 breaches, and therefore have no impact on the statute of limitations for the earlier breaches. (*See, e.g.*, Yucaipa Reply at 3–4.)

**B.    *Maxus* Is Inapplicable As A Matter of Fact and Law**

The decision in *Maxus* does not change the analysis because it does not concern a breach of contract claim or the continuing breach doctrine. Instead, *Maxus* addresses tolling under the "collapsing" doctrine applicable only to fraudulent conveyance claims only. Indeed, the Trustee did not mention *Maxus* in her briefing because it is inapposite.

In *Maxus*, the Trust brought fraudulent conveyance claims against entities that had acquired Maxus, alleging that they discovered after acquisition that they "owned a company with valuable assets and huge environmental liabilities." 2019 WL 647027, at *1. The defendants allegedly engaged in a scheme in which they "strip[ped] Maxus of its assets through fraudulent conveyances," kept the company "on life support until the statute of limitations passed," and then instituted a bankruptcy to discharge the liabilities. *Id.* While the majority of the conveyances occurred outside the limitations period, the Trust argued that "strict application of the statutes of limitations" was not warranted because each transfer was "only a step in a general plan" that "must be viewed as a whole with all its composite implications." *Id.* at *6 (citing *In re Tronox Inc.*, 503 B.R. 239, 271 (Bankr. S.D.N.Y. 2013)). This Court agreed, noting that since the defendants "carried out a 'single integrated scheme' to siphon valuable and profitable assets from the Debtors," leaving the liabilities in empty corporate shells, the statute of limitations should not be strictly applied. *Id.*

This Court examined the transfers "for their substance, not their form" in determining whether to bar the untimely claims. *Id.* (quoting *Tronox*, 503 B.R. at 268). This analysis is referred to as the "collapsing doctrine" (although this Court in *Maxus* did not use that specific label). *E.g.*, *Tronox*, 503 B.R. at 271. The "collapsing doctrine" is "an equitable tool by which a court may 'collapse' multiple apparently innocuous transactions for purposes of a fraudulent transfer analysis and consider the economic reality of the integrated whole." *In re Syntax-Brillian Corp.*, 573 F. App'x 154, 160 (3d Cir. 2014).

27760483.1

GIBSON DUNN

The Honorable Christopher S. Sontchi
February 19, 2021
Page 4

Importantly, the collapsing doctrine applies solely to fraudulent conveyance claims. In *Tronox*, as with *Maxus*, debtors were left with billions of dollars in environmental and tort liabilities incurred in connection with prior energy exploration and production. 503 B.R. at 248. Prepetition, the debtors transferred the exploration and production assets to a separate company, and "spun off" Tronox with nine-figure liabilities. *Id.* at 252–55. During Tronox's bankruptcy in 2009, it sued various entities that benefitted from the transfers, even though several transfers occurred outside the limitations period. Applying the collapsing doctrine, the court reasoned that "fraudulent conveyances are examined for their substance, not their form," *id.* at 268, because the "fraudulent conveyance doctrine . . . is a flexible principle," *id.* at 269 (quoting *Boyer v. Crown Stock Distrib., Inc.*, 587 F.3d 787, 793 (7th Cir. 2009) (alteration in original)). Therefore, "multilateral transactions"—in which a series of transfers occur as part of a general plan—"may under appropriate circumstances be 'collapsed' and treated as phases of a single transaction under the [Uniform Fraudulent Conveyance Act]" for statute of limitations purposes. *Id.*

The collapsing doctrine cannot be applied to toll the Lenders' Contract-Based Claims. First, as explained, the doctrine applies only to fraudulent transfer claims. Yucaipa is aware of no case in which a court has applied it to analyze the timeliness of a contract claim. Second, applying the collapsing doctrine here by analogy would contradict established Delaware law, under which courts must separately analyze the timeliness of *each* alleged breach of contract, even when confronted with "numerous repeated wrongs of similar, if not same, character over an extended period." *Norman*, 961 F.3d at 286.

For instance, the plaintiff in *AM Gen.* attempted to plead around the statute of limitations by arguing that each breach "was merely a component of [defendant's] broader scheme," such that "the 'critical inquiry'" was "whether the obligations under the contract are all done for the *same general purpose*." 2016 WL 4440476, at *12 (emphasis added). The court initially questioned whether the "general purpose" inquiry would even apply "beyond the context of mechanics' liens or construction contracts." *Id.* Regardless, the court found that the alleged breaches were "clearly separable" and that a party cannot trigger

> the continuing breach doctrine simply by characterizing contractual obligations as collectively contributing to some broader end. Were that convention countenanced, the continuing breach doctrine might expand far beyond its logical scope since virtually every contract has a 'general purpose' broader than the various intermediate objectives its individual terms accomplish.

*Id.* at *12–13 & n.97. Similarly, here, the Trustee has admitted that the purported breaches were premised on separate violations of specific, identifiable provisions of the FLCA. (*See, e.g.*, Tr. MSJ Presentation at 12; *see also* Yucaipa Reply at 8–11.) Because the "alleged

**GIBSON DUNN**

The Honorable Christopher S. Sontchi
February 19, 2021
Page 5

breaches of contract accru[ed] at fixed points in time" in August 2009, *In re Cellnet*, 313 B.R. at 610, and the Lenders were fully aware that they could have sued upon breach (just as CIT did), there is no basis for applying the collapsing doctrine even by analogy.

### C.   *Maxus* Is Procedurally Distinguishable

*Maxus* is distinguishable not only as a matter of substance, but also procedure. *Maxus* arose at the pleading stage, on a motion to dismiss; the Court was required to accept all well-pleaded allegations as true and found only that "[t]he argument that more pleading is required to put the defendants on fair notice of the fraudulent claims against them is without merit." 2019 WL 647027, at *1.  The Court expressly acknowledged the limited nature of its inquiry at the pleading stage:  "While it remains to be seen whether the Trust can prove its allegations, the facts alleged in the Complaint support a plausible theory that would expand the statute of limitations under *Tronox*."  *Id.* at *6.

In contrast, this litigation has proceeded through years of discovery and is now at the summary judgment stage.  As Yucaipa explained at the February 4 hearing, the Trustee has presented a narrative of *allegations* that have not been borne out in discovery.  Yucaipa moved for summary judgment and met its initial burden with evidence (e.g., documents and deposition transcripts).  *See* Fed. R. Civ. P. 56(c) (specifying that a party can meet its initial burden on summary judgment by citing "particular parts of materials in the record, including depositions, documents, [etc.]"); *Watson v. Christo*, 2020 WL 7054443 at *3–4 & n.10 (3d Cir. 2020) (holding that a party can establish facts through deposition testimony and affirming district court's grant of summary judgment).  At that point, it was incumbent on the Trustee to come forward with *evidence*—not mere allegations, theories, or arguments—to attempt to show a genuine dispute for trial.  *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The Trustee utterly failed to do so.

In sum, this Court in *Maxus* relied on the collapsing doctrine to extend the statute of limitations at the pleading stage for fraudulent conveyance claims.  That doctrine is applicable solely in the context of fraudulent conveyance claims; it has no application to the Contract-Based Claims at issue here.  Rather, a claim for breach of contract accrues at the moment of the breach—here, in August 2009.  Although Delaware recognizes the continuing breach doctrine, it is a "narrow" exception "applied only in unusual situations." *Norman*, 961 F.3d at 286.  This is not such a situation, as the August 2009 breaches are discrete, premised on specific provisions of the FLCA, and were immediately actionable.  The claims are time-barred.

We appreciate the opportunity to address the Court's question regarding *Maxus* and we would of course be happy to answer any further questions the Court may have.

27760483.1

GIBSON DUNN

The Honorable Christopher S. Sontchi
February 19, 2021
Page 6

Respectfully,

/s/ *Kahn Scolnick*

Kahn Scolnick

27760483.1