

Citizens Bank Center
919 N. Market Street
Suite 300
Wilmington, DE 19899-2323
Tel (302) 654-7444  Fax (302) 656-8920
www.foxrothschild.com

SETH A. NIEDERMAN
Direct No: 302.622.4238
Email: SNiederman@FoxRothschild.com

February 19, 2021

**By ECF and Email**
Hon. Christopher S. Sontchi
Chief Judge, United States Bankruptcy Court
824 Market Street, 5th Floor
Wilmington, DE 19801

Re:     *In re: ASHINC Corp., et al*, Adv. Proc. Nos. 13-50530 and 14-50971[1]

Dear Chief Judge Sontchi:

      We write on behalf the Trustee to address Your question — raised in the course of oral argument on the parties' cross-motions for summary judgment — regarding the relevance of Your Honor's decision in *In re Maxus Energy Corp.*, 2019 WL 647027 (Bankr. D. Del. Feb. 15, 2019) ("*Maxus*") to Yucaipa's argument that the Lender Direct Claims for breach of contract are untimely.

      As a threshold matter, Your Honor need not reach Yucaipa's argument regarding the timeliness of Lender Direct Claim for Yucaipa's breach of the mandatory capital contribution if Your Honor finds the Trustee's Estate Claim for this breach survives. This is because the Estate Claim to recover that capital contribution subsumes the Lender Direct Claim. Critically, Yucaipa does not — and cannot — raise any challenge to the timeliness of the Estate Claim for breach of contract. Yucaipa's defense to the Trustee's contract claim consists of its unpled and belatedly raised affirmative defense that a covenant not to sue in § 2.7(f)(v) of the Third Amendment precludes the Estate Claim for Yucaipa's admitted contractual breaches. Yucaipa's contorted reading of § 2.7(f)(v) was, to the prejudice of the Trustee, raised for the first time on its

---

[1]     Abbreviations relied on in the Trustee's briefing are relied on, again, in this letter.

Hon. Christopher S. Sontchi
February 19, 2020
Page 2

summary judgment motion.[2]  If Your Honor concludes that § 2.7(f)(v) does not bar the Estate's contract claim (as we urge the Court to do), Your Honor need not reach the Lender Direct Claim to recover the capital contribution, rendering the *Maxus* decision irrelevant.

Should Your Honor reach the timeliness of the Lender Direct Claim, however, then the *Maxus* decision is instructive and cuts against Yucaipa's arguments.  Specifically, *Maxus* undermines Yucaipa's position that the Court has "no discretion" with respect to application of the statute of limitations, and that this Court, therefore, should bar the Lenders' claims for conduct prior to November 19, 2011, without undertaking a closer analysis of the events at issue.[3]  In *Maxus*, Your Honor rejected a similarly rigid application of statute of limitations for fraudulent conveyance claims advocated by defendants and, instead, held the claims were timely "despite the fact that 'the bulk, if not all, of the alleged fraudulent conveyances . . . occurred outside the operable statute of limitations.'"  *Maxus*, at *6.

Relying on Judge Gropper's holding in *In re Tronox Inc.*, 503 B.R. 239, 271 (Bankr. S.D.N.Y. 2013) ("***Tronox II***"), Your Honor concluded that the Court needed to step back and examine the "substance, not th[e] form" of an overarching plan underlying the transfers at issue concluding that, "the plan must be viewed as a whole with all its composite implications."  *Maxus*, at *6 (citing *Tronox II* at 268).  The same approach, and the same result, should apply here.

As discussed in the Trustee's briefing and at oral argument, Yucaipa improperly anointed itself as Requisite Lender under the First Lien Credit Agreement ("**FLCA**") by falsely claiming that it "control[ed] every tranche of [Allied's] capital structure," and steadfastly asserting this

---

[2]     Arguing that § 2.7(f)(v) bars the Estate Claim, Yucaipa utterly fails to grapple with the fact that the plain language applies only to "any capital contribution of Term Loans <u>made</u> by [Yucaipa] to [Allied] or any act or omission or event occurring in connection therewith…."  Yucaipa admits it never "<u>made</u>" a "capital contribution of Term Loans."  (2/4/21 Oral Argument Tr. at 60:4-11).  Therefore, the covenant not to sue does not apply.  Yucaipa responds by selectively quoting the language of § 2.7(f)(v) to omit this critical language ("<u>made</u> by [Yucaipa]") and arguing that the term "omission" could only mean a failure to make a capital contribution.  (*See* Yucaipa Reply (13-50530, D.I. 803) at 18-20).  The incongruity of this interpretation was noted during oral argument by, among other things, showing that a virtually identical covenant not to sue language appears in the Third Amendment to the Second Lien Credit Agreement (the "**SLCA**") — which does <u>not</u> have a mandatory capital contribution.  It would make no sense for the term "omission" to refer to Yucaipa's failure to do something it was <u>not</u> required to do under the SLCA.  (2/4/21 Oral Argument Tr. at 9:16-10:25).  This clearly shows that the "in connection therewith" language refers back to a capital contribution "<u>made</u>" by Yucaipa.  Yucaipa had no response to this point.  Nor did Yucaipa explain how its interpretation of § 2.7(f)(v) could possibly comport with entire fairness standard since it would strip Allied of any ability to enforce the principal consideration it received in the Third Amendment — namely, the mandatory capital contribution Yucaipa never made.

[3]     *See* Yucaipa Argument Slide Re: "Lenders' Contract-Based Claims" at 8.

position to the detriment of all other creditors for *four years*, until Your Honor ruled against it in August 2013.[4]  Until that ruling, Yucaipa continuously breached the FLCA to protect its investment in Allied to the detriment of all non-Yucaipa stakeholders.[5]  Yucaipa argues that this strategy does not impact the timeliness of the Lender Claims because, notwithstanding its admitted breaches, the Lenders "could have sued (and did) upon breaches in 2009."[6]  This argument is specious.

Under the FLCA, the First Lien Lenders "agreed that all powers, rights and remedies hereunder may be exercised solely by the Administrative Agent, on behalf of the [Lenders] in accordance with the terms hereof."[7]  In December 2009, CIT — in its capacity as Agent — filed a Verified Answer and Counterclaims in the Georgia Action on behalf of itself and all other First Lien Lenders, seeking a declaration that: (1) the purported Fourth Amendment was null and void, (2) the Third Amendment was in full force and effect, and (3) that Yucaipa could not be Requisite Lender under the FLCA.[8]  CIT also sought, among other things: (1) to enjoin Yucaipa and Allied from "causing substantial, continuing damage to CIT and the Lenders by intentionally and materially breaching its obligations under the Credit Agreement" (Singer Ex. 52 at Third Counterclaim, ¶¶47-50), and (2) to specifically enforce § 10.6(j) of the First Lien Credit Agreement (as amended by § 2.7 of the Third Amendment) requiring Yucaipa to make the mandatory capital contribution of no less than 50% of the Term Loans it purchased from ComVest in contravention of the FLCA (*id.* at Sixth Counterclaim, ¶¶60-63).  Yucaipa aggressively litigated the Georgia Action (using Allied to fund millions in legal fees and expenses), and eventually negotiated a settlement with CIT, whereby CIT settled *on its own behalf* and agreed not to further challenge the validity of the Fourth Amendment.[9]

One month after CIT settled the Georgia Action on its own behalf, BD/S filed the NY Action seeking a declaration that the Fourth Amendment was "null and void" and that Yucaipa was not the Requisite Lender under the FLCA.[10]  Even after summary judgment was granted against Yucaipa in the NY Action, Yucaipa still persisted in this Court arguing that the ruling should be disregarded.  On August 8, 2013, Your Honor rejected Yucaipa's arguments and held that BD/S, not Yucaipa, were Requisite Lenders, that the Third Amendment governed, and that Yucaipa was collaterally estopped from asserting the Fourth Amendment's validity.[11]

---

[4]     Trustee Brief (13-50530, D.I. 706) at 15-20.

[5]     Entities Opp. (13-50530, D.I. 770) at 19-25; *see also* 2/4/21 Oral Argument Tr. at 15-18.

[6]     Yucaipa Argument Slide Re: "Lenders' Contract-Based Claims" at 11 (citing CIT's December 2009 Counterclaim for Specific Performance).

[7]     *See* Singer Ex. 9 at § 9.8(b).

[8]     *Id.* Ex. 52 at First Counterclaim, ¶¶36-42.

[9]     *See* Singer Ex. 60 at §§ 1(b), 10.

[10]    *Id.* Ex. 61 at ¶¶14, 59-60.

[11]    *See* 13-50530, D.I. 280; *see also* Scolnick Ex. 137 at 123-24, 127, 130.

Hon. Christopher S. Sontchi
February 19, 2020
Page 4

      Given the FLCA's prohibition of unilateral Lender action, it was only following successful adjudication of these claims that BD/S was judicially determined to be Requisite Lender and could properly appoint an Agent and direct it to, among other things, pursue claims against Yucaipa. Yucaipa's obstructionist strategy prevented this result for 4 years. As in *Maxus*, the reality of Yucaipa's scheme should "be viewed as a whole with all its composite implications" and the Court should not reflexively conclude the claim is time barred. *Maxus*, at *6.

      Additionally, as addressed in the Trustee's Opposition to Yucaipa's Motion for Summary Judgment and at oral argument, Delaware's "continuous contract" and "continuous breach" doctrines, as well as this Court's discretion as a court of equity, further compel the conclusion that the Lender Direct Claim for breach of the contract is timely.[12]

      Finally, none of Yucaipa's arguments, or *Maxus*, implicates the Lender Claims for breach of contract or, alternatively, breach of the implied duty of good faith and fair dealing, against Yucaipa for breaches occurring after November 19, 2011. This is important because it was after this time that Yucaipa torpedoed the JCT transaction. These claims remain and should be tried in tandem with the Estate Claim for breach of fiduciary duty for the same underlying conduct.[13]

*(Signature on following page)*

---

[12]     Entities Opp. at 19-29; 2/4/21 Tr. 14-18, 92.

[13]     In a passing reference during oral argument with respect the JCT deal, Yucaipa's counsel "challenge[d]" Trustee's counsel "to point to the provision in the contract that says Yucaipa can't demand a premium for its debt, in negotiating in a debt sale with a third party," arguing that "[y]out can't have a breach of contract claim without a breach of contract." (2/4/21 Oral Argument Tr. at 68:21-69:1). This misses the mark. Yucaipa breached the contract by wrongly holding itself out as Requisite Lender in order to justify a control premium from JCT in late 2011 to 2012. Every court to look at the issue has ruled that the FLCA flatly prohibited Yucaipa from *being* Requisite Lender; thus, the obvious implication is that Yucaipa was forbidden from *acting* as Requisite Lender. (*See* Entities Opp. at 24-25). Additionally, this argument has no bearing on the Lender Claim for Yucaipa's breach of the implied covenant of good faith and fair dealing.

Hon. Christopher S. Sontchi
February 19, 2020
Page 5

                    Respectfully submitted,

                    **FOX ROTHSCHILD LLP**

By:      */s/ Seth A. Niederman*
          Seth A. Niederman (DE Bar No. 4588)
          Citizens Bank Center
          919 N. Market Street, Suite 300
          Wilmington, DE 19801
          Tel.: (302) 654-7444
          Fax: (302) 656-8920
          sniederman@foxrothschild.com

-and-

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph
Douglas J. Pepe
Gila S. Singer
485 Lexington Avenue, 30th Floor
New York, NY 10017
Telephone: (212) 407-1200
gjoseph@jha.com

-and-

**ZAIGER LLC**
Jeffrey H. Zaiger
432 Park Avenue, Suite 19A
New York, NY 10022
Telephone: (917) 572-7701
jzaiger@zaigerllc.com

*Counsel for the Litigation Trustee and Plan Administrator*

cc: All counsel of record (via ECF)