**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ASHINC Corporation, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 12-11564 (CSS)<br>(Jointly Administered) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET. AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS<br><br>Plaintiff,<br><br>BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P.,<br><br>Intervenors,<br><br>v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., MARK GENDREGSKE, JOS OPDEWEEGH, JAMES FRANK, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK,<br><br>Defendants. | Adv. Proc. No. 13-50530 |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., as co- | Adv. Pro. No. 14-50971 (CSS) |

administrative agent, and SPECTRUM COMMERCIAL FINANCE LLC, as co-administrative agent,

                Plaintiff,

v.

YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK,

                Defendants.

**DEFENDANTS YUCAIPA AMERICAN ALLIANCE FUND I, L.P. AND YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.'S OBJECTIONS TO THE BANKRUPTCY COURT'S MAY 4, 2021 SUMMARY JUDGMENT OPINION AND ORDER [FEDERAL RULE OF BANKRUPTCY PROCEDURE 9033]**

# TABLE OF CONTENTS

Page

**I. PRELIMINARY STATEMENT ........ 1**

**A. The Opinion and Order resolved non-core claims for breach of contract. ........ 1**

**B. The Bankruptcy Court may not enter final orders on non-core claims; instead any proposed findings of fact and conclusions of law must be reviewed by the District Court de novo. ........ 2**

**C. Yucaipa has not consented to the Bankruptcy Court issuing final orders on non-core claims. ........ 3**

**D. The Bankruptcy Court indicated that it will enter a judgment on the non-core claims and core claims resolved in the Opinion and Order, notwithstanding the binding law that precludes a final resolution of the non-core claims. ........ 4**

**E. The Bankruptcy Court should have entered proposed findings and conclusions on the non-core claims, not a judgment ........ 6**

**F. Yucaipa objects to the entry of a partial judgment on the non-core claims (and core claims), and it will appeal that judgment once it is entered. ........ 6**

**G. The procedural uncertainty created by the Opinion and Order requires Yucaipa to pursue two separate tracks to challenge the Bankruptcy Court's rulings ........ 8**

**II. OBJECTIONS ........ 9**

**A. Yucaipa objects to the discussion of "Jurisdiction" at page 6 of Opinion. ........ 9**

**B. Yucaipa objects to the Bankruptcy Court's factual findings in the Opinion, including the "Factual History" set forth in Pages 6-22. ........ 10**

**C. Yucaipa objects to the Bankruptcy Court's conclusions set forth in pages 26-38 of the Opinion, in the section titled "C. Estate Claim 5 and Lender Claim 2: Breach of Cont[r]act." ........ 12**

**D. Yucaipa objects to the Bankruptcy Court's conclusions set forth in pages 38-46 of the Opinion, in the section titled "D. Lender Claims 2 and 3: Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing – Statute of Limitations." ........ 13**

**E. Yucaipa objects to the Bankruptcy Court's Order. ........ 14**

# TABLE OF AUTHORITIES

## Cases

Page(s)

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 5

*In re Axiant, LLC*,
2012 WL 5614588 (Bankr. D. Del. Nov. 15, 2012) .......... 1, 2

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,
974 F.2d 1358 (3d Cir. 1992) .......... 10

*In re DHP Holdings II, Corp.*,
435 B.R. 220 (Bankr. D. Del. 2010) .......... 2

*Exec. Benefits Ins. Agency v. Arkison*,
573 U.S. 25 (2014) .......... 3

*Logan v. Westchester Fire Ins. Co. (In Re PRS Ins. Group, Inc.)*,
445 B.R. 402 (D. Del. 2011) .......... 2

*In re Millennium Lab Holdings II, LLC*,
575 B.R. 252 (Bankr. D. Del. 2017) .......... 3

*Norman v. Elkin*,
961 F.3d 275 (3d Cir. 2020) .......... 14

*In re Paragon Offshore PLC*,
598 B.R. 761 (Bankr. D. Del. 2019) .......... 4

*Peroza-Benitez v. Smith*,
994 F.3d 157 (3d Cir. 2021) .......... 10

*Schubert v. Lucent Techs. (In re Winstar Comm., Inc.)*,
554 F.3d 368 (3d Cir. 2009) .......... 1

*In re Weiand Auto. Indus.*,
612 B.R. 824 (Bankr. D. Del. 2020) .......... 3

*Wellness Int'l Network, Ltd. v. Sharif*,
575 U.S. 665 (2015) .......... 3

*Wharton v. Danberg*,
854 F.3d 234 (3d Cir. 2017) .......... 10

*In re White Beauty View, Inc.*,
841 F.2d 524 (3d Cir. 1988) .......... 7

## Statutes

28 U.S.C. § 157 .......... 2, 3, 6, 10, 14

28 U.S.C. § 158 .......... 7

## Rules

Fed. R. Bank. Proc. 7052 .......... 5

Fed. R. Bank. Proc. 7054 .......... 7

Fed. R. Bank. Proc. 8003 .......... 7

Fed. R. Bank. Proc. 9033 .......... 1, 3, 6, 8, 9

Fed. R. Civ. Proc. 52 .......... 5

Fed. R. Civ. Proc. 54 .......... 7

## I. PRELIMINARY STATEMENT

On May 4, 2021, the Bankruptcy Court issued a 114-page opinion (the "Opinion") and an accompanying order (the "Order") granting in part and denying in part the parties' cross-motions for summary judgment in these two related adversary proceedings. *See* Adv. Proc. No. 13-50530, D.I. 825, 826; Adv. Proc. No. 14-50947, D.I. 563, 564. Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively, "Yucaipa") hereby object to the Bankruptcy Court's Opinion and Order pursuant to Federal Rule of Bankruptcy Procedure 9033.

The objections themselves are summarized in the next section of this document. In this preliminary section, Yucaipa will explain why it is filing these Bankruptcy Rule 9033 objections, in an abundance of caution, given the unusual procedure posture in which it finds itself. In particular, as set forth below, the Bankruptcy Court should have entered only *proposed* findings of fact and conclusions of law (whether in the form of a report and recommendation to the District Court, or otherwise) on the Litigation Trustee's non-core claims, so that the District Court could review those proposed findings and conclusions *de novo*.

### A. The Opinion and Order resolved non-core claims for breach of contract.

In the Opinion and Order, the Bankruptcy Court (among other things) granted summary judgment for the Litigation Trustee on her two claims against Yucaipa for breach of contract: Estate Claim 5 and Lender Claim 2. These are quintessentially *non-core*, state-law claims.[1]

Claims for breach of contract are non-core because they do not invoke any substantive right provided by Title 11 and would exist regardless of whether there was a pending bankruptcy proceeding. *See Schubert v. Lucent Techs. (In re Winstar Comm., Inc.)*, 554 F.3d 368, 405 (3d Cir. 2009). As Judge Walrath explained in *In re Axiant, LLC*, 2012 WL 5614588 (Bankr. D. Del. Nov. 15, 2012), a trustee's breach of contract claims were non-core because they "are not

[1] The Bankruptcy Court also granted the Trustee's motion for summary judgment on her claims for constructive fraudulent transfers (Estate Claims 10 and 11) and disallowance of claims (Estate Claim 13). Those are core claims.

capable of arising only in the context of a bankruptcy case. These claims are clearly state law causes of action." *Id.* at *4; *see also Logan v. Westchester Fire Ins. Co. (In Re PRS Ins. Group, Inc.)*, 445 B.R. 402 (D. Del. 2011) ("The action is for breach of two reinsurance agreements and bad faith refusal to pay claims. This does not involve a dispute that could arise only in the context of a bankruptcy case. On the contrary, such suits arise under state law."); *In re DHP Holdings II, Corp.*, 435 B.R. 220, 229 (Bankr. D. Del. 2010) ("The action is non-core because it is nothing more than a state law breach of contract claim disguised in bankruptcy terms." (quotation marks omitted)).

In fact, the Bankruptcy Court in this case has already expressly determined that Lender Claim 2 is a non-core claim. Adv. Proc. No. 14-50971, D.I. 70 ("The Second . . . Claim[] for relief asserted by the Plaintiffs in the Complaint . . . in adversary proceeding number 14-50971, constitute[s] [a] non-core claim[].").) And Estate Claim 5 is identical to Lender Claim 2 in terms of its non-core status.

Nonetheless, the Bankruptcy Court apparently overlooked the indisputably non-core status of the Estate Claim 5 and Lender Claim 2, as well as its own prior ruling on this issue. The Court stated in the Opinion and Order that the entire matter before it on summary judgment "is a core proceeding, pursuant to 28 U.S.C. § 157(b)." Opinion at 6; Order at 2. This was an oversimplification and error, and the District Court should reject it. The breach of contract causes of action asserted in Estate Claim 5 and Lender Claim 2 are non-core claims.

**B. The Bankruptcy Court may not enter final orders on non-core claims; instead any proposed findings of fact and conclusions of law must be reviewed by the District Court de novo.**

The Bankruptcy Court's Order states that "this Court has the judicial power to enter a final order." Order at page 2. This statement is also incorrrect as a matter of constitutional, statutory, Supreme Court, and Third Circuit law. Under Article III of the U.S. Constitution and the U.S. Bankruptcy Code, Bankruptcy Courts may not issue judgments or final orders on non-core claims—only District Courts have that authority. *See* 28 U.S.C. § 157(c)(1).

It is well established that in non-core proceedings—those "that are 'not ... core' but are 'otherwise related to a case under title 11'"—the bankruptcy court "submit[s] proposed findings of fact and conclusions of law to the district court," who "review[s] those proposed findings and conclusions *de* novo and enter[s] any final orders or judgments." *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014) (quoting 28 U.S.C. § 157); *see also, e.g., In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 261 (Bankr. D. Del. 2017), *aff'd*, 591 B.R. 559 (D. Del. 2018), *aff'd sub nom. In re Millennium Lab Holdings II, LLC.*, 945 F.3d 126 (3d Cir. 2019) ("bankruptcy judges can only hear, but not determine, non-core proceedings, meaning that the bankruptcy judge must enter proposed findings of fact and conclusions of law for review by the district court under Federal Rule of Bankruptcy Procedure 9033"). Put differently, "[f]or non-core proceedings related to a matter under title 11 a bankruptcy court has advisory power and shall submit proposed findings of fact and conclusions of law to the district court subject to de novo review by that court. In this circumstance, the district court enters final orders. In contrast, … [a] bankruptcy court has final adjudicative power over core proceedings that is subject to appellate review by district courts." *In re Weiand Auto. Indus.*, 612 B.R. 824, 854 (Bankr. D. Del. 2020) (citations and quotation marks omitted).

**C. Yucaipa has not consented to the Bankruptcy Court issuing final orders on non-core claims.**

The Supreme Court has emphasized that a litigant's consent to the Bankruptcy Court entering final orders on non-core claims "whether express or implied," must "be knowing and voluntary"—the "key inquiry" is whether "'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case' before the non-Article III adjudicator." *Wellness Int'l. Network, Ltd. v. Sharif*, 575 U.S. 665, 686 (2015); *see also In re Paragon Offshore PLC,* 598 B.R. 761, 769-70 (Bankr. D. Del. 2019) (finding no implied consent even where litigant entered into a settlement agreement and failed to object to jurisdictional provisions of confirmed plan).

Here, Yucaipa has not consented to the Bankruptcy Court finally adjudicating the Litigation Trustee's non-core claims. To the contrary, Yucaipa has repeatedly and consistently objected to the Bankruptcy Court issuing any final orders or judgments on the Litigation Trustee's non-core claims. *See, e.g.*, Adv. Proc. No. 13-50530, D.I. 416 (Aug. 31, 2017) ("Yucaipa do[es] not consent to the entry of final orders or judgments by the Court to the extent that the Court has determined that it, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Further, Yucaipa do[es] not consent to the entry of final orders or judgments by the Court to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution."); Adv. Proc. No. 14-50947, D.I. 216 (Aug. 31, 2017) (same); Adv. Proc. No. 13-50530, D.I. 429 (May 24, 2018) (same); Adv. Proc. No. 13-50530, D.I. 696 (May 1, 2020) (same); Adv. Proc. No. 14-50947, D.I. 453 (May 1, 2020) (same); *see also* Case No. 12-11564, D.I. 3196-1, at 18 (Sept. 9, 2015) (Amended Plan § 3.7(e): "The Plan and Confirmation Order shall have no effect on or prejudice in anyway Yucaipa['s] . . . respective rights, claims or defenses."); Case No. 12-11564, D.I. 3383, at 49 (Dec. 9, 2015) (Confirmation Order § 54: "[N]othing in the Plan, Plan Supplement, or this Confirmation Order shall be deemed to (i) provide the Bankruptcy Court with jurisdiction over any Litigation Claims and any claims involving any of the persons or entities described in Section 3.7(e) of the Plan [or] (ii) limit or impair any named or unnamed defendant's right to contest the Bankruptcy Court's jurisdiction over any Litigation Claim and any claims involving any of the persons or entities described in Section 3.7(e) of the Plan that may be asserted against them.")).

### D. The Bankruptcy Court indicated that it will enter a judgment on the non-core claims and core claims resolved in the Opinion and Order, notwithstanding the binding law that precludes a final resolution of the non-core claims.

Despite the overwhelming authorities to the contrary, the Bankruptcy Court did not style its Opinion and Order as *proposed* findings of fact and conclusions of law on the non-core

claims, subject to the District Court's de novo review. Instead, the Bankruptcy Court purported to grant the Litigation Trustee's motion for summary judgment on several of her claims—including the two non-core claims for breach of contract—and then indicated it would enter a "Judgment" on those claims. The Order concluded: "the parties shall submit a proposed form of Judgment consistent with the Opinion and Order within 14 days of the date hereof." Order at 4.

The Bankruptcy Court's error is compounded by its statement in the Opinion that "This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052." Opinion at 2 n.1. However, Rule 7052 incorporates Federal Rule of Civil Procedure 52 in adversary proceedings, and Rule 52 addresses a court's findings and conclusions following a *bench trial*, not summary judgment. *See* Fed. R. Civ. Proc. 52(a)(1) ("*In an action tried on the facts without a jury* or with an advisory jury, the court must find the facts specifically and state its conclusions of law separately . . . ." (emphasis added)). Instead, as explained, the Bankruptcy Court should have entered *proposed* findings on the non-core claims pursuant to Rule 7033; and even on the core claims, the Bankruptcy Court's findings on summary judgment could not have been issued "pursuant to Rule 7052" because there was no bench trial. Notably, the Opinion's invocation of the bench-trial rules highlights one of the overarching concerns that Yucaipa has with the Opinion itself—namely, it disregards the fundamental difference between a bench trial (where the trier of fact is supposed to resolve factual disputes and competing inference from the evidence) and summary judgment (where a court may not do either of those things). *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").

In any event, during a status conference held on May 12, 2021, the Bankruptcy Court was crystal clear in stating that it would promptly enter a "judgment" on all the claims resolved in the Opinion and Order (including the non-core breach of contract claims), once the Litigation Trustee submits a proposed form of judgment, which is due today, May 18, 2021. "Just to I

guess to correct [Yucaipa's counsel]. He sort of said *if* judgment is entered. Let's just be clear, *judgment will be entered*. The Court's ruled. Of course you have your appeal rights and that's what District Court and the Third Circuit are for. It could actually go to the Supreme Court . . . . But those are all of course fully preserved. *But judgment will be entered*." (5/12/21 Tr. at pp. 9:25-10:6 (emphases added).)

### E. The Bankruptcy Court should have entered proposed findings and conclusions on the non-core claims, not a judgment.

As explained above, the Bankruptcy Court's constitutional and statutory authority to adjudicate the Litigation Trustee's non-core claims is limited to making *proposed* findings and conclusions; it may not enter final judgments. Had the Bankruptcy Court properly styled its summary judgment Opinion and Order as proposed findings and conclusions, then the next steps would have been clear: Under Federal Rule of Bankruptcy Procedure 9033(b), Yucaipa would have had 14 days to file written objections, and then, under Rule 9033(d), the District Court would have reviewed de novo the findings and conclusions to which Yucaipa objected. *See* Fed. R. Bank. Proc. 9033, Advisory Committee Notes ("Section 157(c)(1) of title 28 requires a bankruptcy judge to submit proposed findings of fact and conclusions of law to the district court when the bankruptcy judge has heard a non-core proceeding. This rule, which is modeled on Rule 72 F.R.Civ.P., provides the procedure for objecting to, and for review by, the district court of specific findings and conclusions.").

### F. Yucaipa objects to the entry of a partial judgment on the non-core claims (and core claims), and it will appeal that judgment once it is entered.

For all these reasons, Yucaipa objects to the Bankruptcy Court's entry of any judgment on the non-core claims—and Yucaipa will be filing its objection separately in the Bankruptcy Court today. That separate objection will also explain why the Bankruptcy Court should not enter any judgment on the core claims at this time.[2]

[2] In short, no judgment should be issued at this time on the *core* claims for fraudulent transfer, disallowance, and equitable subordination, given the overlapping factual and legal issues in

Nonetheless, given the disposition in the Bankruptcy Court's Opinion and Order, amplified by the court's comments at the May 12 status conference, Yucaipa fully expects the Bankruptcy Court to issue a judgment on the non-core claims and core claims imminently. And because there still remain other unresolved claims in both adversary proceedings, the only available mechanism for entry of a judgment by the Bankruptcy Court at this time would be a partial judgment pursuant to Federal Rule of Civil Procedure 54(b), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7054. *See In re White Beauty View, Inc.*, 841 F.2d 524, 526-27 (3d Cir. 1988) ("In the case before us, the bankruptcy court has yet to resolve the claims of the estate against the Guccinis, their counterclaim, or the bank's cross-claim against the Guccinis for indemnity. Consequently, absent a Rule 7054 certification by the bankruptcy judge, the entry of summary judgment against the bank was neither final nor appealable to the district court.").

Accordingly, notwithstanding Yucaipa's objections, Yucaipa anticipates that the Bankruptcy Court will enter a partial judgment under Rule 54(b) on all the claims resolved in the Opinion and Order, including Estate Claim 5 and Lender Claims 2.

In response, Yucaipa will appeal that judgment to the District Court, pursuant to Federal Rule of Bankruptcy Procedure 8003 and 28 U.S.C. § 158(a). Yucaipa will argue in its appellate briefing that (among other things) the Bankruptcy Court lacked the constitutional and statutory authority to issue a judgment on the non-core claims—and that it should have instead styled its Opinion and Order merely as proposed findings, to which Yucaipa could and would have objected pursuant to Federal Rule of Bankruptcy Procedure 9033. And Yucaipa will promptly seek a stay of enforcement of the judgment.

The Bankruptcy Rules contemplate just such a scenario. Rule 8018.1 provides that "[i]f on appeal, a district court determines that the bankruptcy court did not have the power under

---

the adjudicated claims and the other claims that remain to be tried, among other reasons. Moreover, no "judgment" may issue on the *portions* of the equitable subordination claims decided in the Opinion and Order, because those claims were not resolved in their entirety.

Article III of the Constitution to enter the judgment, order, or decree appealed from, the district court may treat [that judgment or order] as . . . proposed findings of fact and conclusions of law." Fed. R. Bank. Proc. 8018.1. The Advisory Committee's notes go on to explain that "the district court in that situation may treat the bankruptcy court's judgment as proposed findings of fact and conclusions of law. Upon making the determination to proceed in that manner, the district court may choose to allow the parties to file written objections to specific proposed findings and conclusions and to respond to another party's objections, *see* Fed. R. Bank. Proc. 9033; treat the parties' briefs as objections and responses; or prescribe other procedures for the review of the proposed findings of fact and conclusions of law." *Id*., Advisory Committee Notes.

Yucaipa will therefore request at the appropriate time that the District Court follow Rule 8018.1 and provide Yucaipa with a fulsome opportunity to brief the various grounds for reversing the Bankruptcy Court's Opinion and Order.

**G. The procedural uncertainty created by the Opinion and Order requires Yucaipa to pursue two separate tracks to challenge the Bankruptcy Court's rulings.**

However, because the Bankruptcy Court did *not* enter proposed findings and conclusions on the non-core claims—and has instead indicated that it will promptly issue a "judgment" on the non-core claims as well as the core claims—Yucaipa has no choice but to proceed on multiple tracks to protect its rights and preserve its ability to challenge the various errors in the Opinion and Order.

One of those tracks is to appeal from the judgment itself, once entered, as explained above in Section F. The other track, which Yucaipa is pursuing in this document, is to treat the Opinion and Order as if they had been properly styled as proposed findings and conclusions, and to timely file objections under Rule 9033(b).

Yucaipa is filing these Rule 9033 objections out of an abundance of caution, given the procedural uncertainties identified above, and the risks of potential waiver if Yucaipa does not timely object under Rule 9033(b). But due to the tight time limit for objections under Rule 9033 (14 days), the voluminous record (hundreds of pages of briefing, thousands of pages of evidence,

a hearing transcript reflecting multiple hours of argument, and a 114-page Opinion), and the importance of the issues at stake, it is not possible for Yucaipa to fully address in this document all of the various factual and legal errors to which it objects in the Bankruptcy Court's Opinion and Order. Instead, Yucaipa presents the objections below in a summary fashion, simply to preserve all objections for the District Court's later de novo review. And once the procedural uncertainty is sorted out in the District Court—through Bankruptcy Rule 8018.1 or otherwise—Yucaipa will request that the District Court provide it with the opportunity to fully set forth its objections and grounds for reversal of the Opinion and Order, including the factual and legal bases for each of them, in whatever format and under whatever timetable the District Court would find most helpful.

## II. OBJECTIONS

Yucaipa objects to the Bankruptcy Court's Opinion and Order on the grounds summarized below.[3] In presenting these objections, Yucaipa incorporates by reference all of the evidence, arguments, and authorities set forth in its summary judgment briefing and referred to at the February 4, 2021 summary judgment hearing before the Bankruptcy Court. *See* Adv. Proc. No. 13-50530, D.I. 696, 700, 701, 702, 703, 704, 729, 762, 766, 767, 803, 804; Adv. Proc. No. 14-50971, D.I. 453, 457, 458, 459, 460, 461, 479, 506, 510, 511, 544, 545. The focus of these objections is on the Bankruptcy Court's resolution of the non-core claims for breach of contract; Yucaipa will present its grounds for reversal as to the other claims in its appeal from the judgment, once entered.

### A. Yucaipa objects to the discussion of "Jurisdiction" at page 6 of Opinion.

The Bankruptcy Court erred in concluding that "This is a core proceeding, pursuant to 28 U.S.C. § 157(b)." Opinion at 6. As explained above, the Trustee's two breach of contract claims (Estate Claim 5 and Lender Claim 2) are quintessentially non-core claims.

[3] Capitalized terms used in these objections shall have the same meaning as in the Opinion.

**B. Yucaipa objects to the Bankruptcy Court's factual findings in the Opinion, including the "Factual History" set forth in Pages 6-22.**

Throughout the Opinion, the Bankruptcy Court violated the fundamental standards that are supposed to guide courts' resolution of summary judgment motions. Namely, the Bankruptcy Court resolved genuine disputes of material fact, ignored or mischaracterized evidence, failed to construe the evidence in a light most favorable to the non-moving party (Yucaipa), drew inferences against the non-moving party (Yucaipa), and in some instances allowed the Trustee to rely on nothing more than speculation. *See, e.g., Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) ("At summary judgment, we must construe all facts and inferences in favor of the nonmoving party. Our role is to determine whether there is a genuine issue for trial, it is not . . . to weigh the evidence and determine the truth of the matter." (citation and quotation marks omitted)); *Wharton v. Danberg*, 854 F.3d 234, 244 (3d Cir. 2017) ("[S]peculation and conjecture may not defeat a motion for summary judgment[.]" (citation omitted)); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("When deciding a motion for summary judgment . . . a court's role remains circumscribed in that it is inappropriate for a court to resolve factual disputes and to make credibility determinations").

The following examples are merely illustrative, not exhaustive. As noted above, Yucaipa reserves all rights to challenge every erroneous factual and/or evidentiary ruling in the Opinion:

- The Opinion finds that "[f]rom late 2011 through Spring 2012, Yucaipa demanded a *premium* price of $1.15 for each dollar of its First Lien Debt, based on the premise that it was Requisite Lender." Opinion at 19 n.26 (emphasis added). But the question of whether Yucaipa demanded a "premium" in those negotiations was heavily disputed. For example, in Yucaipa's summary judgment opposition brief (at pages 24-25), it demonstrated, with supporting evidence, that "Yucaipa *agreed* to ratable treatment, but then BD/S walked away from the deal and filed the involuntary

bankruptcy instead." *See* Adv. Proc. No. 13-50530, D.I. 766; Adv. Proc. No. 14-50971, D.I. 511 (the "Yucaipa Opp. Br.").

- At page 30 of the Opinion, the Bankruptcy Court concluded that in August 2009, Yucaipa had the *option*, entirely in its own discretion, to make a Capital Contribution either in the form of $57 million in cash or "as an exchange [of Yucaipa's newly acquired Term Loans] for equity interests" in Allied, but that Yucaipa did neither, which constituted a breach of contract. *See* Opinion at 30. On the next page of the Opinion (page 31), in discussing damages, the Bankruptcy Court made the "logical" leap—without citing any evidence—that in August 2009, Yucaipa indisputably would have elected to contribute *cash*. The court found "It is illogical to think that Yucaipa would exchange its Term Loans in favor of worthless equity in Allied." This factual conclusion is not only unsupported, it is itself illogical. The Bankruptcy Court ignored Yucaipa's argument that it would have been absurd for it to have agreed in August 2009 to pay $43 million to ComVest to acquire $145.1 million (principal face value) of debt, and then ten days later pay a massive premium of an *additional* $57.4 million to Allied in cash, instead of simply converting half of the discounted debt to Allied equity. *See* Yucaipa Opp. Br. at 5. In other words, the Bankruptcy Court erroneously concluded that the only "logical" course for Yucaipa in August 2009 would have been to pay *more than double* what ComVest had paid for the same debt six months earlier, even when Allied's outlook continued to decline in the interim.

- On page 31 of the Opinion, the Bankruptcy Court found that "Allied was insolvent at the time of the breach" in August 2009. Opinion at 31. On the next page of the Opinion, the court concluded that Yucaipa's failure to contribute $57.4 million to Allied in August 2009 somehow "ensured" Allied's second bankruptcy nearly three years later. There is zero evidence to support the Bankruptcy Court's speculation

about what would have happened in that counterfactual scenario. Indeed, the only evidence that the Bankruptcy Court cites in support of this finding—the deposition testimony of the Litigation Trustee's damages expert—directly contradicts the Bankruptcy Court's finding. The expert testified: "I'm not going to speculate on what would have happened with that cash because there's too many . . . variables." Opinion at 32 n.78.

**C. Yucaipa objects to the Bankruptcy Court's conclusions set forth in pages 26-38 of the Opinion, in the section titled "C. Estate Claim 5 and Lender Claim 2: Breach of Cont[r]act."**

For both Estate Claim 5 and Lender Claim 2, the Bankruptcy Court erred in concluding that the Litigation Trustee had established as a matter of law and undisputed fact that the Estate and the Lenders suffered damages resulting from Yucaipa's breach of the Capital Contribution Provision, and that the appropriate measure of damages was the full amount of the Capital Contribution. As Yucaipa demonstrated in its summary judgment papers, the Trustee had no evidence of damages resulting from the alleged breach, and at the very least there was a genuine dispute concerning the fact and amount of any damages, which precludes summary judgment. *See* Adv. Proc. No. 13-50530, D.I. 696; Adv. Proc. No. 14-50971, D.I. 453 at 27-30 (the "Yucaipa Opening Br."); Yucaipa Opp. Br. at 3-11; Adv. Proc. No. 13-50530, D.I. 803; Adv. Proc. No. 14-50971, D.I. 554 at 17-18 (the "Yucaipa Reply Br.").

The Bankruptcy Court also erred in awarding prejudgment interest on the contract claims. Among other things, the Bankruptcy Court determined that prejudgment interest shall accrue "from the date of the breach" of the Capital Contribution provision in August 2009. Opinion at 33. Yet in analyzing the timeliness of Lender Claim 2, the Bankruptcy Court (erroneously) agreed with the Litigation Trustee that "Yucaipa continuously breached" the FLCA through 2013, such that it would be improper to "isolate" the August 2009 breach, and it was therefore "impossible to determine the extent of the breach" or the damages resulting from it until the JCT 363 sale in December 2013. *Id*. at 42-45. It cannot simultaneously be true that (a) there was an

actionable breach causing the Lenders harm in August 2009 such that prejudgment interest started accruing immediately at that time and (b) the August 2009 breach was not independently actionable because it was part of one "continuous" breach that did not become actionable until December 2013.

The Bankruptcy Court also erred in concluding as a matter of law and undisputed fact that the Third Amendment's covenant-not-to-sue did not bar Estate Claim 5. Opinion at 37-38. As Yucaipa demonstrated in its summary judgment papers, the covenant-not-to-sue expressly bars Allied (and thus the Litigation Trustee, who now stands in Allied's shoes as to Estate Claim 5) from asserting claims against Yucaipa premised on any "omission" with respect to the Capital Contribution, and the only potentially relevant omission in connection with the Capital Contribution was Yucaipa's failure to make it. *See* Yucaipa Opening Br. at 31-35; Yucaipa Reply Br. at 18-25. The Bankruptcy Court identified potential other omissions either not found in the record or only actionable by the agent, not actionable by Allied as borrower under the FLCA. *See* Opinion at 37-38 & n.96 (cross-referencing footnote 67 for mechanics of contributing term loans, which in turn highlights missing paperwork as an omission – which was actionable only by the Administrative Agent, not Allied: Section 2.7(f) of the Third Amendment provides that following the contribution of Term Loans, Yucaipa was to provide all information and date "reasonably requested by the Administrative Agent" under the loan agreement, not to Allied as borrower).

**D. Yucaipa objects to the Bankruptcy Court's conclusions set forth in pages 38-46 of the Opinion, in the section titled "D. Lender Claims 2 and 3: Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing – Statute of Limitations."**

The Bankruptcy Court erred in concluding as a matter of law and undisputed fact that Lender Claim 2 was not time-barred. Indeed, it is undisputed that Delaware's three-year statute of limitations applies, that Yucaipa's alleged breach of the Capital Contribution happened in August 2009, and that the Lender Complaint was not filed until November 2014. *See* Adv. Proc. No. 14-50971, D.I. 1 ¶ 135, page 41.

The Bankruptcy Court erred in applying the "continuous breach" doctrine to revive this otherwise time-barred claim. As Yucaipa demonstrated in its summary judgment papers, the "continuing breach" doctrine is a narrow exception to the statute of limitations; it does not apply where, as here, a plaintiff alleges a discrete breach of a specific provision of a contract that was actionable at the moment of the breach. In holding to the contrary, the Bankruptcy Court departed from binding case law in Delaware and the Third Circuit, it misconstrued the contract, and it ignored the Litigation Trustee's specific theory of breach. *See* Yucaipa Opening Br. at 19-26; Yucaipa Reply Br. at 2-17; Adv. Proc. No. 13-50530, D.I. 819; Adv. Proc. No. 14-50971, D.I. 558 (Yucaipa's supplemental post-hearing letter brief); *see also, e.g.*, *Norman v. Elkin*, 961 F.3d 275, 286 (3d Cir. 2020) (explaining that the "continuous breach" doctrine is a "narrow" exception to the statute of limitations that applies "only in unusual circumstances").

**E.     Yucaipa objects to the Bankruptcy Court's Order.**

The Bankruptcy Court erred in finding that "this is core proceeding, pursuant to 28 U.S.C. § 157(b)" and "this Court has the judicial power to enter a final order," for all the reasons explained above. Order at 2.

The Bankruptcy Court erred in granting the Trustee's motion for summary judgment as to Estate Claim 5 and Lender Claim 2.

Dated: May 18, 2021

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

*/s/ Michael S. Neiburg*

Michael R. Nestor (No. 3526)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER LLP
Maurice M. Suh (Pro Hac Vice)
Robert A. Klyman (Pro Hac Vice)
Kahn Scolnick (Pro Hac Vice)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
msuh@gibsondunn.com

*Attorneys for Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P.*