# <u>EXHIBIT B</u>

# REBUTTAL EXPERT REPORT OF
# Jeffrey M. Risius, CPA/ABV, CFA, ASA

**November 12, 2019**

**Presented in:**

## _Catherine E. Youngman, Litigation Trustee for ASHINC Corporation, et al. v. Yucaipa American Alliance Fund I, L.P., et al.,_ Adv. Pro. Nos. 13-50530 and 14-50971

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**



EXHIBIT 833
WIT: RISIUS
DATE: 12-19-19
E. Mulvenna, CSR/RMR/CRR



*Catherine E. Youngman, Litigation Trustee for ASHINC Corporation, et al. v. Yucaipa American Alliance Fund I, L.P., et al., Adv. Pro. Nos. 13-50530 and 14-50971*

Rebuttal Expert Report of Jeffrey M. Risius, CPA/ABV, CFA, ASA

November 12, 2019

### Table of Contents

I. SCOPE OF REBUTTAL AND DISCLOSURES ............................................................... 4

II. RISIUS RESPONSES TO FISCHEL OPINION #1 ...................................................... 6

    II.A. Contemporaneous Actions of Market Participants ..................................................... 6

    II.B. Yucaipa's Auditor Reports and Accompanying Supporting Analysis ...................... 9

III. RISIUS RESPONSES TO FISCHEL OPINION #2 ..................................................... 11

IV. RISIUS RESPONSES TO FISCHEL OPINION #3 .................................................... 18

V. ASSUMPTIONS AND LIMITING CONDITIONS ........................................................ 19



*Catherine E. Youngman, Litigation Trustee for ASHINC Corporation, et al. v. Yucaipa American Alliance Fund I, L.P., et al., Adv. Pro. Nos. 13-50530 and 14-50971*

**Rebuttal Expert Report of Jeffrey M. Risius, CPA/ABV, CFA, ASA**

November 12, 2019

## Appendices

Appendix 1…......……….……...……………………List of Documents Considered

3



*Catherine E. Youngman, Litigation Trustee for ASHINC Corporation, et al. v. Yucaipa American Alliance Fund I, L.P., et al.,* Adv. Pro. Nos. 13-50530 and 14-50971

**Rebuttal Expert Report of Jeffrey M. Risius, CPA/ABV, CFA, ASA**

November 12, 2019

### I.   Scope Of Rebuttal and Disclosures

1.  I have been retained by Catherine E. Youngman, Litigation Trustee of the ASHINC Litigation Trust (the "Trustee"), through her counsel Joseph Hage Aaronson LLC and Zaiger LLC ("Counsel").

2.  Counsel has asked me to review an expert report related to this dispute prepared by Daniel R. Fischel ("Mr. Fischel") of Compass Lexecon, dated September 27, 2019 (the "Fischel Report"). My observations and critiques of the Fischel Report are presented in this rebuttal report. This rebuttal report does not address every point in the Fischel Report, and does not imply that I agree with any opinion that is not specifically addressed in this rebuttal report. This rebuttal report should be utilized in conjunction with the report I issued in this matter on September 27, 2019 (the "Risius Report"), and should not be considered in isolation. Any capitalized terms not specifically defined in this rebuttal report will have the meaning defined in the Risius Report.

3.  Based on my review of the Fischel Report, Mr. Fischel expresses the following opinions:

    (a) "Plaintiffs' allegations that Yucaipa undertook a scheme to protect its equity interest at the expense of the first lien lenders are fundamentally flawed"[1] ("Fischel Opinion #1");

    (b) "Plaintiffs' allegations that they suffered economic harm because of Yucaipa's alleged actions with respect to the JCT sale are speculative and fundamentally flawed"[2] ("Fischel Opinion #2"); and

    (c) "Plaintiffs' assertions regarding damages relating to Yucaipa's alleged failure to make a capital contribution of $57 million to the Allied Estate in 2009 are speculative and flawed"[3] ("Fischel Opinion #3").

4.  For the reasons expressed in this rebuttal report, and as detailed herein, I conclude that the opinions outlined in the Fischel Report are unreasonable and, therefore, unreliable.

5.  A detailed list of the sources of information I considered in my original opinion is presented in Appendix 1 of the Risius Report. The additional information that I considered in the preparation of this rebuttal report is presented in ***Appendix 1*** to this report.

6.  My curriculum vitae and lists of recent testimony, publications, and presentations are presented in the Risius Report.

7.  While the terms "we" and "our" may be used throughout this report, any other Stout Risius Ross, LLC ("Stout") representatives involved in this matter worked under my direction and control with respect to assisting in

---

[1] Fischel Report, page 5.
[2] Fischel Report, page 13.
[3] Fischel Report, page 15.

4



*Catherine E.
Youngman,
Litigation Trustee
for ASHINC
Corporation, et al.
v. Yucaipa
American Alliance
Fund I, L.P., et al.,
Adv. Pro. Nos. 13-
50530 and 14-
50971*

**Rebuttal Expert
Report of
Jeffrey M. Risius,
CPA/ABV, CFA,
ASA**

**November 12, 2019**

the research, analysis development, and report preparation for this engagement.

8.    Stout is compensated at a rate of $700 per hour for time incurred by me. Other individuals from Stout also provided assistance in this matter; their hourly rates range from $150 per hour to $510 per hour.

9.    I reserve the right to supplement and/or revise this rebuttal report if additional information becomes available. I also may be asked to testify at trial, as well as to prepare demonstratives in this matter.

5



Catherine E.
Youngman,
Litigation Trustee
for ASHINC
Corporation, et al.
v. Yucaipa
American Alliance
Fund I, L.P., et al.,
Adv. Pro. Nos. 13-
50530 and 14-
50971

Rebuttal Expert
Report of
Jeffrey M. Risius,
CPA/ABV, CFA,
ASA

November 12, 2019

## II.  Risius Responses to Fischel Opinion #1

10.     The Fischel Report states the following as it relates to Fischel Opinion #1:

> "Plaintiffs' allegation[] that Yucaipa undertook a scheme to protect its equity interest is illogical on its face because, consistent with the industry's and Allied's distressed operating environment **at the time**, contemporaneous evidence shows that Yucaipa's equity stake had little or no value."[4]

11.     The Fischel Report does not specifically define a timeframe over which this opinion applies. However, the timeframe of events listed and discussed as support in the Fischel Report for Fischel Opinion #1 related to Allied's distress spans from early 2008 through mid-2012.[5]

12.     In this section, I will provide a review and critique of Fischel Opinion #1. In general, the Fischel Report is flawed as it omits consideration of the following: (i) contemporaneous actions of market participants; and (ii) Yucaipa's auditor reports and accompanying supporting analysis.

### II.A. *Contemporaneous Actions of Market Participants*

13.     Pursuant to the 2007 Reorganization Plan, Yucaipa was Allied's Sponsor and majority shareholder, with a super-majority position of Allied's outstanding common equity and control over the Board, as a result of the following events:

(a) On May 29, 2007, Allied converted approximately $200 million in unsecured claims (including approximately $99 million in unsecured claims held by Yucaipa) into equity.[6] Yucaipa converted its total investment of $94.4 million into 67% of the Company's reorganized equity.[7]

(b) The 2007 Reorganization Plan gave Yucaipa the right to appoint three of the five members of the Allied Board of Directors, the right to appoint Allied's CEO as the fourth member of the Board of Directors, and approval rights over the fifth member of the Board of Directors, who would be nominated by the committee of unsecured creditors.[8]

14.     On May 15, 2007, Allied emerged from the 2005 Bankruptcy with two credit facilities pursuant to the First Lien Credit Agreement[9] and the Second Lien Credit Agreement.[10] Based on the First Lien Credit Agreement, the only parties eligible to act as Requisite Lenders were Lenders. Lenders

---

[4] Fischel Report, page 7 (emphasis added).
[5] Fischel Report, pages 8-13, Exhibit 3, and Exhibit 4.
[6] YUCAIPA774597-598.
[7] Exhibit 587 (YUCAIPA752658-660), page 2.
[8] *In re Allied Automotive Group, Inc.*, No. 05-12515 (CRM) (Bankr. N.D. Ga.), ECF No. 2802 at Art. IV.D.3(d), page 64.
[9] Exhibit 133 (Yucaipa071689-931).
[10] Yucaipa0052174-382.



Catherine E.
Youngman,
Litigation Trustee
for ASHINC
Corporation, et al.
v. Yucaipa
American Alliance
Fund I, L.P., et al.,
Adv. Pro. Nos. 13-
50530 and 14-
50971

Rebuttal Expert
Report of
Jeffrey M. Risius,
CPA/ABV, CFA,
ASA

November 12, 2019

consisted only of the original lender signatories to the First Lien Credit Agreement and "Eligible Assignees" that subsequently become lenders pursuant to an Assignment Agreement. Yucaipa was not an original lender signatory to the First Lien Credit Agreement, and the definition of Eligible Assignee provides that "no … Sponsor shall be an Eligible Assignee." "Sponsor" is a defined term applicable only to Yucaipa.[11]

15.    It is not surprising that the original lender signatories to the First Lien Credit Agreement wanted to prevent Allied's Sponsor and majority shareholder from being able to act as Requisite Lender. In general, equity owners oftentimes have different preferences than debt holders – especially with distressed companies.

16.    As background, the primary stakeholders of a corporation consist of shareholders, senior management, employees, creditors, and suppliers. The corporate governance of a company attempts to minimize the conflicts of interest that may arise between different groups of stakeholders, including, among others, the conflicts of interest between creditors and shareholders. The following summarizes the general dichotomy of preferences that typically exist between shareholders and creditors.

(a)   shareholders may prefer more business risk than creditors because creditors have limited upside when a company outperforms as compared to shareholders;

(b)   shareholders could act against the interests of creditors by issuing new debt that increases the default risk faced by existing debt holders;

(c)   shareholders could pay greater dividends to equity holders, thereby increasing creditors' risk of default; and

(d)   shareholders could decide to not make interest or principal payments to creditors, thereby increasing creditors' risk of default.

17.    The underlying terms of the Credit Agreements, in conjunction with the 2007 Reorganization Plan, address these issues directly and constitute direct evidence of the actual concerns of the original lender signatories as to the potential conflicts of interest presented by Yucaipa also becoming Requisite Lender. This evidence, related to how actual market participants acted contemporaneously outside the context of litigation, runs completely counter to Fischel Opinion #1.

18.    In addition to ignoring the actions and concerns of the original lender signatories to the Credit Agreements, the Fischel Report ignores the actions of Yucaipa itself.

---

[11] First Lien Credit Agreement, Section 1.1, definition of "Eligible Assignee," page 17, definition of "Requisite Lenders," page 41, definition of "Sponsor," page 44.



**Catherine E. Youngman, Litigation Trustee for ASHINC Corporation, et al. v. Yucaipa American Alliance Fund I, L.P., et al., Adv. Pro. Nos. 13-50530 and 14-50971**

**Rebuttal Expert Report of Jeffrey M. Risius, CPA/ABV, CFA, ASA**

**November 12, 2019**

19.  As background, Yucaipa and ComVest entered into a Loan Purchase Agreement[12] and Assignment and Assumption Agreement,[13] whereby Yucaipa acquired $114,712,088.66 of First Lien Term Loans and $30,400,458.40 of LC Deposits, resulting in 55.63% ownership[14] of Allied's total First Lien Debt as of August 21, 2009.

20.  Yucaipa's acquisition of 55.63% of First Lien Debt shifted its priority in claim recovery from its residual claim through the ownership of common equity to first priority claim under the ownership of First Lien Debt. Further, through its acquisition of approximately $145.1 million of First Lien Debt in August 2009, Yucaipa gained control over both secured debt holdings and common equity holdings, which was Yucaipa's apparent end goal, as evidenced by the following communication among Yucaipa's management:

   (a)  In December 2008, Mr. Walker emailed Mr. Burkle related to the purchase of the majority of the First Lien Debt: "It appears that we may be able to buy 50% of our first lien bank debt (or $130MM face) for $40-50MM. Buying this much will allow us to take control over the credit facility and **make unilateral decisions on covenants**, etc. When we last spoke, we talked about doing something smaller (investing $26MM), but buying less would not give us control and would require us to be subordinate to the other lenders. Given the uncertain nature of the automotive industry, having control over the credit facility would be important in **ensuring that Allied has adequate runway** through the maturity of the loan in 2012."[15]

21.  Based on the correspondence between Mr. Walker and Mr. Burkle, it was important to Yucaipa that Allied had "adequate runway" (i.e., time). This expressed desire is typical for any equity holder in a distressed business, as equity owners enjoy unlimited upside and limited downside under such circumstances. Generally speaking, equity holders always want more time for the business to improve. Even in a situation where equity is out of the money on a given day, because of the optionality of equity (limited downside with unlimited upside), it is always possible that the fortunes of a company will turn around and the equity would gain value in the future. As long as there is time, equity is never truly worthless because of the optionality of the security. One of the key assumptions to consider when estimating the potential upside of an equity option is the effective holding period (i.e., the timeframe to an expected exercise of the option). Extending the holding period increases the value of any option, as the time value inherent in an option increases as the duration increases.[16] As such, if Yucaipa could take control of the Company and extend the timeframe that the equity holders had to wait for a recovery, this would increase the

---

[12] Loan Purchase Agreement, Exhibit 408 (YUCAIPA895012-050).
[13] Assignment and Assumption Agreement, Exhibit 25 (Yucaipa052924-931).
[14] Assignment and Assumption Agreement, Exhibit 25 (Yucaipa052924-931), page 2; Risius Report, page 19.
[15] Exhibit 514 (YUCAIPA718282-284 at -284) (emphasis added).
[16] Gunter Meissner, *Credit Derivatives: Applications, Pricing, and Risk Management* (Blackwell Publishing 2005), page 118.



Catherine E.
Youngman,
Litigation Trustee
for ASHINC
Corporation, et al.
v. Yucaipa
American Alliance
Fund I, L.P., et al.,
Adv. Pro. Nos. 13-
50530 and 14-
50971

Rebuttal Expert
Report of
Jeffrey M. Risius,
CPA/ABV, CFA,
ASA

November 12, 2019

likelihood of being able to enjoy potential upside value to Yucaipa's equity investment.

22.  The Fischel Report completely disregards the dichotomy of interests that exist between equity owners and debt holders and the optionality value associated with an equity interest in a distressed company; Mr. Fischel instead erroneously claims that Yucaipa's equity investment in Allied had no value and therefore "any claim that a party undertook actions to 'preserve' an equity claim is economically meaningless."[17]

23.  The aforementioned conclusion in the Fischel Report contradicts the actions of contemporaneous market participants, including Yucaipa itself. In addition, Fischel Opinion #1 is inconsistent with contemporaneous valuations of Yucaipa's equity investment in Allied, as detailed further in the next section of this report.

## II.B. *Yucaipa's Auditor Reports and Accompanying Supporting Analysis*

24.  The Fischel Report disregards the fact that Yucaipa represented to its auditors and investors that the enterprise value of Allied was greater than the First Lien Debt in quarterly auditor memorandums from 2008 through 2011.[18] While I do not endorse or accept these valuations on their face, Yucaipa's auditor memorandums contradict Mr. Fischel's reliance on evidence of contemporaneous valuations internally prepared by the Damaged Lenders.

25.  The Fischel Report only considers various valuations put forth by BD/S,[19] but fails to address BD/S' more limited access to financial information and updates as compared to the full access enjoyed by Yucaipa.

(a)  Richard Ehrlich ("Mr. Ehrlich") of Black Diamond testified that Yucaipa had "withheld information from us [non-Yucaipa lenders]. They [Yucaipa] had kept us [non-Yucaipa lenders] in the dark for years."[20] Withheld information included "[a]ll financial information and requests for financial information, requests for updates, not paying interest, … not explaining why you're not paying interest."[21] Mr. Ehrlich testified that "for a very significant chunk of the period from 2009 to January 2012, they [Yucaipa] had gone dark and they [Yucaipa] had made Allied go dark on us [non-Yucaipa lenders]."[22]

(b)  On February 15, 2012, the Board of Directors of Allied received a letter from Mr. Harris of Schulte, as counsel for BD/S, stating "despite your

---

[17] Fischel Report, page 8.
[18] YUCAIPA0593196-100, YUCAIPA593221-224, YUCAIPA0593239-242, YUCAIPA0593255-258, YUCAIPA0593204-207, YUCAIPA0593225-227, YUCAIPA0593243-245, YUCAIPA0955102-104, YUCAIPA0593208-210, YUCAIPA0593228-230, YUCAIPA0593246-248, YUCAIPA0593262-264, YUCAIPA0593125-127, YUCAIPA0593128-130, and YUCAIPA0593131-133.
[19] Fischel Report, page 10, Exhibit 4.
[20] Ehrlich Dep. 466:11-12.
[21] Ehrlich Dep. 467:7-10.
[22] Ehrlich Dep. 468:13-16.



*Catherine E. Youngman, Litigation Trustee for ASHINC Corporation, et al. v. Yucaipa American Alliance Fund I, L.P., et al., Adv. Pro. Nos. 13-50530 and 14-50971*

**Rebuttal Expert Report of Jeffrey M. Risius, CPA/ABV, CFA, ASA**

**November 12, 2019**

failure to produce 2011 fiscal results, it is clear that the balance sheet as of December 31, 2011 would show a similar conclusion."[23] The same letter noted that, in light of the lack of financial information being shared with non-Yucaipa lenders, BD/S were, by separate letter, "demanding, pursuant to Section 5.6 of each of the Credit Agreements, that each Credit Party permit authorized representatives of Black Diamond and Spectrum to (a) inspect, copy and take extracts from its financial and accounting records, and (b) discuss its affairs, finances and accounts with its officers and independent public accountants."[24]

(c) On March 22, 2012, the Board of Directors of Allied received a second letter from Mr. Harris of Schulte stating that "we also do not know what discussions, if any, the Borrowers have had with JCT regarding a possible transaction."[25]

26. Thus, based on the relative levels of access to financial and other information regarding Allied, Yucaipa's memorandums to its auditors and the accompanying supporting analysis should be viewed as more reliable than internal memorandums and valuations prepared by non-Yucaipa parties.

27. As presented in the following table, for the time period between March 31, 2008 and September 30, 2011, Yucaipa's total investment in Allied, consisting of equity and debt investments, was carried at or above cost.



Summary of Yucaipa's Carrying Value of its Investment in Allied

*In Millions of U.S. Dollars*

Source: YUCAIPA0593196, YUCAIPA593221, YUCAIPA0593239, YUCAIPA0593255, YUCAIPA0593204, YUCAIPA0593225, YUCAIPA0593243, YUCAIPA0955102, YUCAIPA0593208, YUCAIPA0593228, YUCAIPA0593246, YUCAIPA0593262, YUCAIPA0593125, YUCAIPA0593128, and YUCAIPA0593131.

---

[23] Exhibit 349 (YUCAIPA976484-487), page 2 at -485.
[24] Id. at page 2, footnote 2.
[25] Exhibit 350 (YUCAIPA976488-490), page 2 at -489.

10



*Catherine E. Youngman, Litigation Trustee for ASHINC Corporation, et al. v. Yucaipa American Alliance Fund I, L.P., et al.,* Adv. Pro. Nos. 13-50530 and 14-50971

**Rebuttal Expert Report of Jeffrey M. Risius, CPA/ABV, CFA, ASA**

November 12, 2019

### III.   Risius Responses to Fischel Opinion #2

28.   The Fischel Report states the following as it relates to Fischel Opinion #2:

"I am not aware of any evidence that Plaintiffs have put forth that demonstrate[s] that, but-for Yucaipa's actions, any transaction with JCT would have been consummated prior to Allied's involuntary bankruptcy."[26]

29.   In this section, I will summarize evidence that the Fischel Report does not address with respect to Fischel Opinion #2.

30.   As detailed in the Risius Report, while JCT was making offers to effectively purchase all of the assets of the Company, Yucaipa continued to demand that JCT pay a premium for its debt as compared to the other lenders, based on Yucaipa's purported status as Requisite Lender, while refusing to compromise on purchase price and facilitate a transaction in which all lenders would receive equal and ratable treatment. Given Yucaipa's demands, a sale of the Company to JCT in the 2011/2012 timeframe was never consummated.[27]

31.   The Fischel Report omits the fact that JCT was highly motivated to acquire Allied, and, to that end, made numerous viable offers to purchase Allied First Lien Debt in the 2011/2012 timeframe with the objective of acquiring Allied in a 363 sale, as evidenced by the following facts and testimony:

(a)   Yucaipa admitted that it believed the JCT offers were real, viable offers, and Yucaipa used the $155 million offer as the basis for the valuation of its investment in Allied which it reported to its investors.[28]

(b)   Mr. Riggs testified that he would not waste time making proposals he did not think he could consummate,[29] and that he was confident in his ability to obtain proper financing to do so.[30]

(c)   JCT's corporate representative, Theo Ciupitu, testified that JCT's offers, including the March 8, 2012 offer, "weren't intended to waste anyone's time," that JCT "never submitted an offer that we didn't try to pursue," and that "Jack Cooper was very interested in acquiring Allied."[31]

(d)   Yucaipa claimed that, but for the filing of the 2012 bankruptcy, a JCT sale would have been consummated at $170 million more than the

---

[26] Fischel Report, page 13.
[27] Risius Report, paragraphs 73 and 74.
[28] Tochner Dep. 306:10-309:16.
[29] Riggs Dep. 121:12-19, 166:14-18.
[30] Riggs Dep. 267:9-268:16.
[31] Ciupitu (JCT 30(b)(6)) Dep. 164:17-167:11; *see also id.* 37:10-21 ("The goal was to acquire Allied."); Riggs Dep. 79:10-11. Even in the spring of 2011, JCT had made a series of offers to purchase Allied debt from BD/S and Yucaipa, ranging up to about 84 cents on the dollar. *See* Exhibit 663 (BDCM0006125-126). That proposal was not consummated because Yucaipa, in Riggs' words, "demanded a much higher price. A crazy high price." *See* Exhibit 113 (BDCM0000104).

11



Catherine E.
Youngman,
Litigation Trustee
for ASHINC
Corporation, et al.
v. Yucaipa
American Alliance
Fund I, L.P., et al.,
Adv. Pro. Nos. 13-
50530 and 14-
50971

Rebuttal Expert
Report of
Jeffrey M. Risius,
CPA/ABV, CFA,
ASA

November 12, 2019

ultimate figure of approximately $135 million.[32] This allegation also formed the basis of two separate litigations Yucaipa brought against BD/S and various individual employees.[33]

(e) Mr. Gendregske, Allied's CEO, testified that a combination of Allied with JCT would offer the best synergies as compared to a combination with any other unionized carrier.[34]

32. The Fischel Report also omits the fact that JCT's interest in acquiring Allied debt was a means to the end goal of acquiring all of Allied. Given Yucaipa's controlling positions of debt and equity, it was crucial for JCT to make a deal with Yucaipa, as evidenced by Mr. Riggs' testimony.

(a) "[F]or me it was always about acquiring Allied, however we did that. … So if acquiring the debt was the way to do that. … I was trying to see if there was … some way[] to combine the entities … and acquiring debt would have been one way to do that."[35]

(b) "I could not get a deal done unless I did a deal with Yucaipa."[36]

(c) "I'm just trying to explain why I would have been focused on working with Yucaipa. If you think they own control of the common stock, you think they own control of the senior debt, who else would you work it with? I was involving Spectrum and Black Diamond to try to make sure and give a global solution and help them, so that it was all one package and everybody got satisfied."[37]

(d) "I'll stick with what I said, it was my perception, I believe at the time, that they [Yucaipa] control both the senior debt and the common stock. So

---

[32] Adv. Proc. No. 14-50971, D.I. 19, Paragraph 10(e), page 36; Yucaipa Responses to BD/S Interrogatories, dated March 30, 2016, Response to Interrogatory No. 2 ("A purchase price of 'par plus accrued and unpaid interest' for all Lenders would have amounted to approximately $305 million" as set forth in the March 8, 2012 term sheet.).

[33] See Yucaipa Am. All. Fund I LLP, et al. v. Ehrlich, et al., 15-cv-916 (S.D.N.Y. Feb. 6, 2015), Doc. No. 1 at ¶¶25 ("As a result of the involuntary bankruptcy, substantially all of Allied's assets were sold to JCT for $135 million in December 2013 . … This was approximately $170 million less in consideration than offered by JCT to all lenders nearly 18 months earlier, on the eve of the involuntary bankruptcy pursuant to the March 2012 Term Sheet."), 172 ("As described herein, Black Diamond and Spectrum … harmed both Allied and Yucaipa by placing Allied into involuntary bankruptcy when it could have proceeded with an orderly sale to JCT in connection with a voluntary bankruptcy at a purchase price that was $170 million higher than what was ultimately obtained."), 204 ("As a result of the involuntary bankruptcy, substantially all of Allied's assets were subsequently sold to JCT for $170 million less in consideration than offered by JCT before the involuntary bankruptcy petition was filed. … Defendants' intentional and wrongful interference with that sale damaged Yucaipa … at least in the amount of the purchase price that JCT would have paid for Yucaipa's Allied debt."); Yucaipa Am. All. Fund I LLP, et al. v. Ehrlich, et al., 15-cv-373 (D. Del. May 8, 2015), Doc. No. 1 at ¶¶185, 217 (same).

[34] Gendregske Dep. 210:24-211:8, 213:13-20; see also Riggs Dep. 178:21-179:11.

[35] Riggs Dep. 79:8-80:8.

[36] Riggs Dep. 239:20-21.

[37] Riggs Dep. 238:2-11.



*Catherine E. Youngman, Litigation Trustee for ASHINC Corporation, et al. v. Yucaipa American Alliance Fund I, L.P., et al.,* Adv. Pro. Nos. 13-50530 and 14-50971

**Rebuttal Expert Report of Jeffrey M. Risius, CPA/ABV, CFA, ASA**

November 12, 2019

any package that I would try to work out, if they weren't a part of, would be unsuccessful."[38]

(e) "That's what I'm saying, I believe it was a package deal. We were doing whatever we were doing to buy it all. … I was not in the debt investing business, I was in the business of running companies, so this whole thing was to try to get a package together. … I think that the intent and the spirit here was to pull off a deal that everybody would be happy with."[39]

33.  Mr. Fischel further states as part of Fischel Opinion #2 that "I am not aware of any evidence that Plaintiffs have put forth as to what the value of those Notes would have been either at the date of issuance or over time. Plaintiffs' JCT Notes, had they been held until the time JCT experienced financial distress or declared bankruptcy, would have lost value."[40]

34.  Mr. Fischel's view that it is appropriate to consider the impact of JCT's Chapter 11 bankruptcy filing in August 2019 (over seven years after the date of the alleged wrongdoing) when analyzing the value of the JCT notes for purposes of calculating damages is unreasonable on its face. It requires a speculative assumption that the Plaintiffs would have held the JCT notes through August 2019. It is my opinion that the most reliable framework to apply to measure damages is based on the value of the JCT notes as of the date of the alleged wrongdoing. Based on the pricing of the JCT notes, as summarized in this report, my assumption of utilizing par value for the JCT notes is actually conservative. The next few paragraphs of this report describe the JCT notes.

35.  On November 29, 2010, Jack Cooper Holdings Corporation issued $122.5 million in aggregate principal amount of first lien notes, with a 12.750% coupon rate, due December 15, 2015, at the issue price of 99.079% of face value, with a Committee on Uniform Securities Identification Procedures ("CUSIP") number 466355AA2 (the "Existing JCT Notes").[41] The terms of the Existing JCT Notes were as follows.

(a) Prior to June 15, 2013, JCT may redeem (i) up to 35% of the aggregate principal amount of the Existing JCT Notes at a redemption price equal to 112.750% of the aggregate principal amount, plus accrued and unpaid interest, with the net proceeds of certain equity offerings; or (ii) in whole or in part at 100% of the principal amount to be redeemed plus a premium amount calculated in accordance with the indenture based on the then present value of the Existing JCT Notes.[42]

---

[38] Riggs Dep. 238:18-22.
[39] Riggs Dep. 235:25-236:9.
[40] Fischel Report, page 15.
[41] Bloomberg, L.P. (CUSIP 466355AA2); YUCAIPA830705-748, page 12.
[42] YUCAIPA830705-748, page 12.



*Catherine E. Youngman, Litigation Trustee for ASHINC Corporation, et al. v. Yucaipa American Alliance Fund I, L.P., et al.,* Adv. Pro. Nos. 13-50530 and 14-50971

Rebuttal Expert Report of Jeffrey M. Risius, CPA/ABV, CFA, ASA

November 12, 2019

(b) On or after June 15, 2013, JCT may redeem the Existing JCT Notes, in whole or in part, at certain redemption prices specified in the indenture governing the Existing JCT Notes.[43]

36.   On May 6, 2011, Jack Cooper Holdings Corporation issued $35 million in aggregate principal amount of second lien notes, with a 12.750% coupon rate, due December 15, 2015, at the issue price of 103.000% of face value, with an identification ("ID") number EI6651208 (the "New JCT Notes").[44]

(a) The offering memorandum for the issuance of the New JCT Notes states that "the new notes will form a part of the same series as the existing notes. The existing notes and the new notes will be treated as a single class for all purposes of the Indenture, including without limitation, waivers, amendments, redemptions and offers to purchase. The new notes offered will have the same CUSIP numbers as the existing notes, except for the new notes sold pursuant to Regulation S which will, on the fortieth day following the issue date of the new notes, have the same CUSIP numbers. … The new notes and the existing notes are referred together as the 'notes.'"[45]

37.   The Existing JCT Notes and New JCT Notes (collectively, the "JCT Notes") were issued under the following series: (i) Regulation S ("REGS") (International Securities Identification Number ("ISIN") USU4687AAA44), (ii) 144A (CUSIP 466355AC8), and (iii) Accredited Investor ("AI") (CUSIP 466355AD6).[46]

(a) According to the term sheet for the JCT 2011 Offer, the purchase price for the claims held by BD/S would have been paid in "the form of Jack Cooper's 12 ¾% Senior Secured Notes Due 2015 … issued as part of a 'tack-on' financing under the Indenture governing such notes."[47]

38.   On July 18, 2013, the JCT Notes were called at 106.38% of face value,[48] as indicated by data gathered from Bloomberg, L.P., as presented on page 15. The call price of 106.38% of face value is also corroborated by the bid pricing data gathered from Capital IQ, as presented on page 16.

---

[43] YUCAIPA830705-748, page 12.
[44] Bloomberg, L.P.; YUCAIPA830705-748, page 12; YUCAIPA830749-1007, page 3.
[45] YUCAIPA830749-1007, page 3.
[46] Bloomberg, L.P. (CUSIP EI6651208).
[47] Exhibit 90 (BDCM0000031-039), page 3.
[48] Bloomberg, L.P. (ISIN USU4687AAA44, CUSIP 466355AC8, and CUSIP 466355AD6).



Catherine E.
Youngman,
Litigation Trustee
for ASHINC
Corporation, et al.
v. Yucaipa
American Alliance
Fund I, L.P., et al.,
Adv. Pro. Nos. 13-
50530 and 14-
50971

Rebuttal Expert
Report of
Jeffrey M. Risius,
CPA/ABV, CFA,
ASA

November 12, 2019

## Summary of JCT Notes (12.75%, due 12/15/15)

| Issuer Information | | | Identifiers | |
|---|---|---|---|---|
| Name | JACK COOPER HOLDINGS COR | | ID Number | EI4792111 |
| Industry Transportation Services (BCLASS) | | | ISIN | USU4687AAA44 |
| **Security Information** | | | FIGI | BBG0019HN7D5 |
| Mkt Iss | Euro-Dollar | | **Bond Ratings** | |
| Country | US | Currency USD | S&P | NA |
| Rank | 1st lien | Series REGS | | |
| Coupon | 12.750000 | Type Fixed | | |
| Cpn Freq S/A | | | **Issuance & Trading** | |
| Day Cnt | ISMA-30/360 | Iss Price 99.07900 | Aggregated Amount Issued/Out | |
| Maturity 12/15/2015 | | | USD | 157,500.00 (M) / |
| CALLED ON 07/18/13@106.38 | | | USD | (M) |
| Iss Sprd | | | Min Piece/Increment | |
| Calc Type (1311)MULTI-STEP CPN BND | | | | 2,000.00 / 1,000.00 |
| 1st Coupon Date | | 06/15/2011 | Par Amount | 1,000.00 |
| Tender Notice Date | | 06/03/2013 | Book Runner | GLOHUN,IMPCAP |
| Call Announcement Date | | 06/18/2013 | Exchange | NOT LISTED |
| Call Effective Date | | 07/18/2013 | | |

| Issuer Information | | | Identifiers | |
|---|---|---|---|---|
| Name | JACK COOPER HOLDINGS COR | | ID Number | EI4791915 |
| Industry Transportation Services (BCLASS) | | | CUSIP | 466355AC8 |
| **Security Information** | | | ISIN | US466355AC83 |
| Mkt Iss | Priv Placement | | **Bond Ratings** | |
| Country | US | Currency USD | S&P | NA |
| Rank | 1st lien | Series 144A | | |
| Coupon | 12.750000 | Type Fixed | | |
| Cpn Freq S/A | | | | |
| Day Cnt | 30/360 | Iss Price 99.07900 | **Issuance & Trading** | |
| Maturity 12/15/2015 | | | Aggregated Amount Issued/Out | |
| CALLED ON 07/18/13@106.38 | | | USD | 157,500.00 (M) / |
| Iss Sprd | | | USD | (M) |
| Calc Type (1311)MULTI-STEP CPN BND | | | Min Piece/Increment | |
| 1st Coupon Date | | 06/15/2011 | | 2,000.00 / 1,000.00 |
| Tender Notice Date | | 06/03/2013 | Par Amount | 1,000.00 |
| Call Announcement Date | | 06/18/2013 | Book Runner | GLOHUN,IMPCAP |
| Call Effective Date | | 07/18/2013 | Exchange | NOT LISTED |

| Issuer Information | | | Identifiers | |
|---|---|---|---|---|
| Name | JACK COOPER HOLDINGS COR | | ID Number | EI4792152 |
| Industry Transportation Services (BCLASS) | | | CUSIP | 466355AD6 |
| **Security Information** | | | ISIN | US466355AD66 |
| Mkt Iss | Priv Placement | | **Bond Ratings** | |
| Country | US | Currency USD | S&P | NA |
| Rank | 1st lien | Series AI | | |
| Coupon | 12.750000 | Type Fixed | | |
| Cpn Freq S/A | | | | |
| Day Cnt | 30/360 | Iss Price 99.07900 | **Issuance & Trading** | |
| Maturity 12/15/2015 | | | Aggregated Amount Issued/Out | |
| CALLED ON 07/18/13@106.38 | | | USD | 157,500.00 (M) / |
| Iss Sprd | | | USD | (M) |
| Calc Type (1311)MULTI-STEP CPN BND | | | Min Piece/Increment | |
| 1st Coupon Date | | 06/15/2011 | | 2,000.00 / 1,000.00 |
| Tender Notice Date | | 06/03/2013 | Par Amount | 1,000.00 |
| Call Announcement Date | | 06/18/2013 | Book Runner | GLOHUN,IMPCAP |
| Call Effective Date | | 07/18/2013 | Exchange | NOT LISTED |

Source: Bloomberg, L.P.



*Catherine E. Youngman, Litigation Trustee for ASHINC Corporation, et al. v. Yucaipa American Alliance Fund I, L.P., et al.,* Adv. Pro. Nos. 13-50530 and 14-50971

**Rebuttal Expert Report of Jeffrey M. Risius, CPA/ABV, CFA, ASA**

November 12, 2019

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **JCT Notes - Bid Pricing History (12.75%, due 12/15/15)** | | | | | | | | | | | |
| Date | Bid Price | Date | Bid Price | Date | Bid Price | Date | Bid Price | Date | Bid Price | Date | Bid Price |
| 1/11/2012 | 100.00 | 4/13/2012 | 96.50 | 7/16/2012 | 98.50 | 10/15/2012 | 104.00 | 1/18/2013 | 107.00 | 4/23/2013 | 106.50 |
| 1/12/2012 | 100.00 | 4/16/2012 | 96.50 | 7/17/2012 | 98.50 | 10/16/2012 | 104.00 | 1/22/2013 | 107.00 | 4/24/2013 | 106.50 |
| 1/13/2012 | 100.00 | 4/17/2012 | 96.75 | 7/18/2012 | 98.50 | 10/17/2012 | 104.00 | 1/23/2013 | 107.13 | 4/25/2013 | 106.75 |
| 1/17/2012 | 100.00 | 4/18/2012 | 96.75 | 7/19/2012 | 98.50 | 10/18/2012 | 104.00 | 1/24/2013 | 107.00 | 4/26/2013 | 106.50 |
| 1/18/2012 | 100.25 | 4/19/2012 | 95.00 | 7/20/2012 | 98.50 | 10/19/2012 | 104.00 | 1/25/2013 | 107.13 | 4/29/2013 | 107.25 |
| 1/19/2012 | 100.25 | 4/20/2012 | 95.00 | 7/23/2012 | 98.50 | 10/22/2012 | 104.25 | 1/28/2013 | 107.25 | 4/30/2013 | 106.75 |
| 1/20/2012 | 100.50 | 4/23/2012 | 94.00 | 7/24/2012 | 98.50 | 10/23/2012 | 104.25 | 1/29/2013 | 107.25 | 5/1/2013 | 107.00 |
| 1/23/2012 | 100.00 | 4/24/2012 | 94.25 | 7/25/2012 | 98.50 | 10/24/2012 | 104.25 | 1/30/2013 | 107.00 | 5/2/2013 | 107.00 |
| 1/24/2012 | 100.00 | 4/25/2012 | 95.50 | 7/26/2012 | 98.50 | 10/25/2012 | 104.25 | 1/31/2013 | 107.25 | 5/3/2013 | 107.00 |
| 1/25/2012 | 100.00 | 4/26/2012 | 96.00 | 7/27/2012 | 98.50 | 10/26/2012 | 104.25 | 2/1/2013 | 107.25 | 5/6/2013 | 107.25 |
| 1/26/2012 | 100.00 | 4/27/2012 | 96.00 | 7/30/2012 | 98.50 | 10/31/2012 | 104.25 | 2/4/2013 | 107.00 | 5/7/2013 | 107.25 |
| 1/27/2012 | 100.00 | 4/30/2012 | 96.50 | 7/31/2012 | 98.50 | 11/1/2012 | 104.00 | 2/5/2013 | 107.25 | 5/8/2013 | 107.00 |
| 1/30/2012 | 100.00 | 5/1/2012 | 98.00 | 8/1/2012 | 98.50 | 11/2/2012 | 104.00 | 2/6/2013 | 107.25 | 5/9/2013 | 107.00 |
| 1/31/2012 | 100.00 | 5/2/2012 | 98.25 | 8/2/2012 | 98.50 | 11/5/2012 | 104.00 | 2/7/2013 | 107.25 | 5/10/2013 | 107.00 |
| 2/1/2012 | 100.50 | 5/3/2012 | 99.00 | 8/3/2012 | 98.50 | 11/6/2012 | 104.00 | 2/8/2013 | 107.25 | 5/13/2013 | 106.75 |
| 2/2/2012 | 100.50 | 5/4/2012 | 99.00 | 8/6/2012 | 98.50 | 11/7/2012 | 104.00 | 2/11/2013 | 107.25 | 5/14/2013 | 106.75 |
| 2/3/2012 | 100.50 | 5/7/2012 | 99.00 | 8/7/2012 | 98.50 | 11/8/2012 | 104.00 | 2/12/2013 | 107.25 | 5/15/2013 | 106.75 |
| 2/6/2012 | 101.00 | 5/8/2012 | 99.00 | 8/8/2012 | 98.50 | 11/9/2012 | 104.00 | 2/13/2013 | 107.25 | 5/16/2013 | 106.63 |
| 2/7/2012 | 101.00 | 5/9/2012 | 99.00 | 8/9/2012 | 99.00 | 11/12/2012 | 104.00 | 2/14/2013 | 107.25 | 5/17/2013 | 106.63 |
| 2/8/2012 | 101.00 | 5/10/2012 | 99.00 | 8/10/2012 | 99.00 | 11/13/2012 | 104.00 | 2/15/2013 | 107.50 | 5/20/2013 | 106.63 |
| 2/9/2012 | 101.00 | 5/11/2012 | 99.00 | 8/13/2012 | 99.00 | 11/14/2012 | 104.00 | 2/19/2013 | 107.50 | 5/21/2013 | 106.63 |
| 2/10/2012 | 101.00 | 5/14/2012 | 98.75 | 8/14/2012 | 99.00 | 11/15/2012 | 104.00 | 2/20/2013 | 107.25 | 5/22/2013 | 106.63 |
| 2/13/2012 | 101.13 | 5/15/2012 | 98.75 | 8/15/2012 | 99.00 | 11/16/2012 | 104.00 | 2/21/2013 | 107.25 | 5/23/2013 | 106.63 |
| 2/14/2012 | 101.13 | 5/16/2012 | 98.75 | 8/16/2012 | 99.00 | 11/19/2012 | 104.00 | 2/22/2013 | 107.25 | 5/24/2013 | 106.63 |
| 2/15/2012 | 100.50 | 5/17/2012 | 98.75 | 8/17/2012 | 99.00 | 11/20/2012 | 104.00 | 2/25/2013 | 107.25 | 5/28/2013 | 106.75 |
| 2/16/2012 | 100.50 | 5/18/2012 | 98.75 | 8/20/2012 | 99.00 | 11/21/2012 | 104.00 | 2/26/2013 | 107.25 | 5/29/2013 | 106.25 |
| 2/17/2012 | 100.50 | 5/21/2012 | 98.75 | 8/21/2012 | 99.00 | 11/23/2012 | 104.00 | 2/27/2013 | 107.25 | 5/30/2013 | 106.25 |
| 2/21/2012 | 100.50 | 5/22/2012 | 98.75 | 8/22/2012 | 100.00 | 11/26/2012 | 104.00 | 2/28/2013 | 107.25 | 5/31/2013 | 106.25 |
| 2/22/2012 | 100.00 | 5/23/2012 | 98.75 | 8/23/2012 | 100.00 | 11/27/2012 | 104.00 | 3/1/2013 | 107.25 | 6/3/2013 | 107.25 |
| 2/23/2012 | 100.00 | 5/24/2012 | 98.75 | 8/24/2012 | 100.00 | 11/28/2012 | 104.00 | 3/4/2013 | 107.00 | 6/4/2013 | 107.00 |
| 2/24/2012 | 100.00 | 5/25/2012 | 97.00 | 8/27/2012 | 99.38 | 11/29/2012 | 104.13 | 3/5/2013 | 107.13 | 6/5/2013 | 106.50 |
| 2/27/2012 | 99.50 | 5/29/2012 | 97.00 | 8/28/2012 | 99.50 | 11/30/2012 | 104.25 | 3/6/2013 | 107.00 | 6/6/2013 | 106.50 |
| 2/28/2012 | 99.75 | 5/30/2012 | 97.00 | 8/29/2012 | 99.50 | 12/3/2012 | 104.25 | 3/7/2013 | 107.00 | 6/7/2013 | 106.50 |
| 2/29/2012 | 100.00 | 5/31/2012 | 98.50 | 8/30/2012 | 99.50 | 12/4/2012 | 104.25 | 3/8/2013 | 107.00 | 6/10/2013 | 106.50 |
| 3/1/2012 | 100.00 | 6/1/2012 | 98.50 | 9/4/2012 | 100.00 | 12/5/2012 | 104.25 | 3/11/2013 | 107.00 | 6/11/2013 | 106.50 |
| 3/2/2012 | 100.00 | 6/4/2012 | 98.50 | 9/5/2012 | 100.00 | 12/6/2012 | 104.25 | 3/12/2013 | 107.00 | 6/12/2013 | 107.00 |
| 3/5/2012 | 100.25 | 6/5/2012 | 98.50 | 9/6/2012 | 100.00 | 12/7/2012 | 104.25 | 3/13/2013 | 107.00 | 6/13/2013 | 107.00 |
| 3/6/2012 | 99.75 | 6/6/2012 | 97.25 | 9/7/2012 | 100.00 | 12/10/2012 | 104.25 | 3/14/2013 | 107.13 | 6/14/2013 | 107.00 |
| 3/7/2012 | 99.75 | 6/7/2012 | 99.00 | 9/10/2012 | 100.00 | 12/11/2012 | 104.50 | 3/15/2013 | 107.13 | 6/17/2013 | 107.00 |
| 3/8/2012 | 99.75 | 6/8/2012 | 99.00 | 9/11/2012 | 100.00 | 12/12/2012 | 104.50 | 3/18/2013 | 107.13 | 6/18/2013 | 107.00 |
| 3/9/2012 | 101.25 | 6/11/2012 | 99.00 | 9/12/2012 | 100.00 | 12/13/2012 | 104.50 | 3/19/2013 | 107.13 | 6/19/2013 | 107.00 |
| 3/12/2012 | 101.25 | 6/12/2012 | 99.00 | 9/13/2012 | 100.50 | 12/14/2012 | 105.00 | 3/20/2013 | 107.13 | 6/20/2013 | 107.00 |
| 3/13/2012 | 101.50 | 6/13/2012 | 99.00 | 9/14/2012 | 100.50 | 12/17/2012 | 105.25 | 3/21/2013 | 107.13 | 6/21/2013 | 107.00 |
| 3/14/2012 | 101.50 | 6/14/2012 | 99.00 | 9/17/2012 | 100.50 | 12/18/2012 | 105.38 | 3/22/2013 | 107.13 | 6/24/2013 | 107.00 |
| 3/15/2012 | 101.50 | 6/15/2012 | 99.00 | 9/18/2012 | 100.50 | 12/19/2012 | 105.50 | 3/25/2013 | 107.25 | 6/25/2013 | 107.00 |
| 3/16/2012 | 101.50 | 6/18/2012 | 99.00 | 9/19/2012 | 100.50 | 12/20/2012 | 105.50 | 3/26/2013 | 107.25 | 6/26/2013 | 107.00 |
| 3/19/2012 | 101.75 | 6/19/2012 | 99.25 | 9/20/2012 | 101.25 | 12/21/2012 | 105.50 | 3/27/2013 | 107.00 | 6/27/2013 | 107.00 |
| 3/20/2012 | 101.50 | 6/20/2012 | 99.25 | 9/21/2012 | 101.25 | 12/24/2012 | 105.50 | 3/28/2013 | 107.00 | 6/28/2013 | 107.00 |
| 3/21/2012 | 101.50 | 6/21/2012 | 99.25 | 9/24/2012 | 101.25 | 12/26/2012 | 105.50 | 4/1/2013 | 107.00 | 7/1/2013 | 106.50 |
| 3/22/2012 | 101.50 | 6/22/2012 | 99.00 | 9/25/2012 | 100.50 | 12/27/2012 | 105.00 | 4/2/2013 | 107.00 | 7/2/2013 | 106.50 |
| 3/23/2012 | 101.50 | 6/25/2012 | 99.00 | 9/26/2012 | 100.00 | 12/28/2012 | 105.00 | 4/3/2013 | 107.00 | 7/3/2013 | 106.50 |
| 3/26/2012 | 101.50 | 6/26/2012 | 99.25 | 9/27/2012 | 100.00 | 12/31/2012 | 106.50 | 4/4/2013 | 107.00 | 7/8/2013 | 106.50 |
| 3/27/2012 | 102.00 | 6/27/2012 | 99.25 | 9/28/2012 | 103.50 | 1/2/2013 | 107.00 | 4/5/2013 | 107.00 | 7/9/2013 | 106.50 |
| 3/28/2012 | 102.00 | 6/28/2012 | 99.25 | 10/1/2012 | 103.50 | 1/3/2013 | 107.00 | 4/8/2013 | 107.00 | 7/10/2013 | 106.50 |
| 3/29/2012 | 102.00 | 6/29/2012 | 99.25 | 10/2/2012 | 105.00 | 1/4/2013 | 107.00 | 4/9/2013 | 107.00 | 7/11/2013 | 106.38 |
| 3/30/2012 | 103.00 | 7/2/2012 | 99.38 | 10/2/2012 | 105.00 | 1/7/2013 | 107.00 | 4/10/2013 | 107.00 | 7/12/2013 | 106.38 |
| 4/2/2012 | 102.25 | 7/3/2012 | 99.38 | 10/4/2012 | 103.50 | 1/8/2013 | 107.00 | 4/11/2013 | 107.25 | 7/15/2013 | 106.38 |
| 4/3/2012 | 102.00 | 7/5/2012 | 99.38 | 10/5/2012 | 103.50 | 1/9/2013 | 107.00 | 4/12/2013 | 107.25 | 7/16/2013 | 106.38 |
| 4/4/2012 | 102.00 | 7/6/2012 | 99.38 | 10/8/2012 | 103.50 | 1/10/2013 | 107.00 | 4/15/2013 | 107.25 | 7/17/2013 | 106.38 |
| 4/5/2012 | 102.00 | 7/9/2012 | 99.38 | 10/9/2012 | 103.50 | 1/11/2013 | 107.00 | 4/16/2013 | 107.25 | 7/18/2013 | 106.38 |
| 4/9/2012 | 102.00 | 7/10/2012 | 99.25 | 10/10/2012 | 103.50 | 1/14/2013 | 107.13 | 4/17/2013 | 106.75 | 7/19/2013 | 106.38 |
| 4/10/2012 | 97.00 | 7/11/2012 | 99.25 | 10/10/2012 | 103.50 | 1/15/2013 | 107.13 | 4/18/2013 | 106.50 | | |
| 4/11/2012 | 97.00 | 7/12/2012 | 98.50 | 10/11/2012 | 103.50 | 1/16/2013 | 107.13 | 4/19/2013 | 106.50 | | |
| 4/12/2012 | 96.50 | 7/13/2012 | 98.50 | 10/12/2012 | 103.50 | 1/17/2013 | 107.25 | 4/22/2013 | 106.50 | | |

Source: Capital IQ

39. In conclusion, the Fischel Report makes the unreasonable and speculative claim that the JCT Chapter 11 filing that occurred in August 2019 is



*Catherine E. Youngman, Litigation Trustee for ASHINC Corporation, et al. v. Yucaipa American Alliance Fund I, L.P., et al.,* Adv. Pro. Nos. 13-50530 and 14-50971

**Rebuttal Expert Report of Jeffrey M. Risius, CPA/ABV, CFA, ASA**

November 12, 2019

somehow relevant to damages based on alleged wrongdoings as of December 2011. Further, ignoring this damages framework issue, the Fischel Report ignores the fact that the JCT Notes were called at a premium to par. Thus, if one did desire to consider market prices for the JCT Notes beyond the date of the alleged wrongdoing, damages would actually be higher than those calculated in the Risius Report because the JCT Notes were called at a price above par in 2013.



*Catherine E. Youngman, Litigation Trustee for ASHINC Corporation, et al. v. Yucaipa American Alliance Fund I, L.P., et al.,* Adv. Pro. Nos. 13-50530 and 14-50971

**Rebuttal Expert Report of Jeffrey M. Risius, CPA/ABV, CFA, ASA**

November 12, 2019

### IV.   Risius Responses to Fischel Opinion #3

40.    The Fischel Report states the following as it relates to Fischel Opinion #3:

"Given deteriorating industry performance and Allied's continued deteriorating financial performance, additional funds may simply have been used up to support operations and/or investments that would not have necessarily increased Allied's value or recoveries by its stakeholders, or may only have allowed Allied to continue to operate for some limited period of time."[49] Further, Mr. Fischel examines "the time period 2008 to June 30, 2012"[50] as support for establishing Fischel Opinion #3.

41.    On August 21, 2009, Yucaipa purchased $114.7 million of First Lien Term Loans from ComVest through the execution of the Loan Purchase Agreement[51] and the Assignment and Assumption Agreement.[52] Pursuant to Section 2.7(e) of the Third Amendment, a capital contribution in the amount of half of the First Lien Term Loans that were acquired was to be made by August 31, 2009, accounting for the 10-day period within which Yucaipa was required to make a capital contribution. Thus, the appropriate date of breach under Fischel Opinion #3 should be August 31, 2009.

42.    Mr. Fischel's claim that "it does not follow that additional cash or a conversion of debt to equity[] would have increased Allied's value dollar-for-dollar at later points in time"[53] is flawed on its face. It is unclear how Mr. Fischel could claim that $57.4 million in cash is not worth $57.4 million on the day that it is contributed. This opinion contravenes basic economic reality. Mr. Fischel appears to be claiming that had Yucaipa contributed $57.4 million of cash in August 2009, Allied would have simply burned through more cash than it actually did burn through, and thus, there would have been no benefit to the Estate or the Damaged Lenders.

---

[49] Fischel Report, page 16.
[50] Fischel Report, page 16.
[51] Loan Purchase Agreement, Exhibit 408 (YUCAIPA895012-050).
[52] Assignment and Assumption Agreement, Exhibit 25 (Yucaipa052924-931).
[53] Fischel Report, page 16.



*Catherine E.
Youngman,
Litigation Trustee
for ASHINC
Corporation, et al.
v. Yucaipa
American Alliance
Fund I, L.P., et al.,
Adv. Pro. Nos. 13-
50530 and 14-
50971*

**Rebuttal Expert
Report of
Jeffrey M. Risius,
CPA/ABV, CFA,
ASA**

November 12, 2019

## V.   Assumptions and Limiting Conditions

43.   My conclusions are based on the information received to date. I reserve the right to change those conclusions should additional information be provided.

44.   No one that worked on this engagement has any known financial interest in the Company, its shareholders, any of its related entities, or the outcome of the analysis. Further, Stout Risius Ross, LLC's compensation is neither based nor contingent on the results of the analysis.

45.   This expert witness report is solely for use in the cited dispute, for the purpose stated herein, and is not to be referred to or distributed, in whole or in part, without prior written consent.

Jeffrey M. Risius, CPA/ABV, CFA, ASA
Managing Director
Stout Risius Ross, LLC

19

**APPENDIX 1**

**List of Documents Considered**

1) Gunter Meissner, *Credit Derivatives: Applications, Pricing, and Risk Management* (Malden, MA: Blackwell Publishing, 2005), page 118
2) *Yucaipa Am. All. Fund I LLP, et al. v. Ehrlich, et al.*, 15-cv-916 (S.D.N.Y. Feb. 6, 2015), Doc. No. 1
3) *Yucaipa Am. All. Fund I LLP, et al. v. Ehrlich, et al.*, 15-cv-373 (D. Del. May 8, 2015), Doc. No. 1
4) Exhibit 113 (BDCM0000104)
5) YUCAIPA1023022
6) YUCAIPA0830705
7) YUCAIPA0830749
8) YUCAIPA0830701
9) YUCAIPA0830700
10) BDCM0020225
11) BDCM0020224
12) YUCAIPA0763911
13) YUCAIPA0763922
14) YUCAIPA0740123
15) YUCAIPA0741122
16) YUCAIPA0741133
17) YUCAIPA0688503
18) YUCAIPA0688520
19) YUCAIPA0688529
20) YUCAIPA0733416
21) YUCAIPA0703642
22) YUCAIPA0703646
23) YUCAIPA0703852
24) YUCAIPA0709555
25) YUCAIPA0703652
26) YUCAIPA0703867
27) YUCAIPA0745560
28) YUCAIPA0728647
29) YUCAIPA0713029
30) YUCAIPA0688530 native
31) YUCAIPA0703647 native
32) YUCAIPA0733420 native
33) YUCAIPA1022968
34) YUCAIPA1022968
35) YUCAIPA1022969
36) YUCAIPA1022989
37) YUCAIPA1023022
38) YUCAIPA1023039
39) YUCAIPA1023057
40) YUCAIPA1023088
41) YUCAIPA0962948
42) Exhibit 632
43) Exhibit 634
44) YUCAIPA0593128
45) YUCAIPA0593259
46) Exhibit 30