# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ASHINC Corporation, *et al.*,<br><br>                Debtors. | Chapter 11<br><br>Case No. 12-11564 (CSS)<br>(Jointly Administered) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS,<br><br>                Plaintiff,<br><br>BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P.,<br><br>                Intervenors,<br><br>v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., and YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.,<br><br>                Defendants. | Adv. Proc. No. 13-50530<br><br><br><br><br><br>**Related D.I. 940, 941, 942** |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., as co-administrative agent, and SPECTRUM COMMERCIAL FINANCE LLC, as co-administrative agent,<br><br>                Plaintiff,<br><br>v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., and YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.,<br><br>                Defendants. | Adv. Pro. No. 14-50971 (CSS)<br><br><br><br>**Related D.I. 676, 677, 678** |

**LITIGATION TRUSTEE'S OPPOSITION TO YUCAIPA'S MOTION TO EXCLUDE
<u>THE REPORTS AND TESTIMONY OF JONATHAN R. MACEY</u>**

## PRELIMINARY STATEMENT

Professor Jonathan R. Macey — the Sam Harris Professor of Corporate Law, Corporate Finance, and Securities Law at Yale Law School, and a Professor at the Yale School of Management — was retained as an expert to bring insight from his almost 40 years of academic and firsthand experience in corporate governance issues. In addition to an esteemed academic career, he has served on corporate boards, including as a director for an insolvent company with a controlling shareholder. This wealth of experience underlies the one remaining opinion at issue at trial following Your Honor's earlier Judgment, the resolution of claims against former Defendants, and the Court's grant of the Trustee's motion *in limine* on February 11, 2022.

Professor Macey is being offered to present his opinion on how Yucaipa's conduct with respect to the JCT negotiations in 2011/2012 "reflects inappropriate favoritism and violated basic norms of corporate behavior" (Opinion No. 6).[1] This opinion is relevant and admissible. The vast majority of Yucaipa's Motion (the "**Motion**")[2] on other grounds is irrelevant.

This trial is about whether Yucaipa breached its fiduciary duty by engaging in self-dealing, culminating in the lost JCT deal in late 2011/early 2012. Professor Macey's direct experience and decades of research on customs and practices of corporate behavior tie to this issue. Yucaipa's Motion selectively quotes Professor Macey's reports or deposition without context to characterize them as inadmissible "legal opinions."[3] But Professor Macey meticulously avoided rendering any legal opinions. His opinion consists of permissible expert

---

[1]   13-50530, D.I. 933-1; 14-50971, D.I. 668-1 (Macey Report) ¶9.

[2]   13-50530, D.I. 932; 14-50971, D.I. 667.

[3]   Yucaipa also attacks Professor Macey's character by claiming, without reservation, that he perjured himself during his deposition. (Motion ¶¶6, 27). For the reasons discussed below, this claim is baseless.

opinion regarding industry norms, custom and practice, which is universally recognized as relevant and admissible on the issue of standard of care. As he testified, "I am leaving the determination of whether there was a breach of fiduciary duty by any of the defendants in this case up to the court. I'm trying to inform that analysis, but I'm not trying to usurp the role of the court."[4]

Critically, this is also a bench trial. Your Honor can determine if Professor Macey's testimony is helpful after hearing it without any risk of confusing a jury. *See Cantor v. Perelman*, 2006 WL 3462596, at *6 (D. Del. Nov. 30, 2006) (helpfulness of corporate governance expert's testimony is "an issue of weight, not admissibility" as "trial is to the bench and there is no risk of jury confusion."). Yucaipa elected not to designate its own corporate governance expert to testify at trial. Its justification — that Ret. Chancellor William Chandler's "only purpose would be to rebut Professor Macey's clearly inadmissible legal conclusions"[5] — is pretextual. Yucaipa determined not to call Chancellor Chandler last month. It had not made this Motion and Your Honor has still not ruled on it. Chancellor Chandler will not be a witness regardless. Yucaipa has no evidence rebutting the sound, well-supported opinions of Professor Macey and is desperately seeking to avoid them. It has no basis for doing so.

## ARGUMENT

Rule 702 has "a liberal policy of admissibility," *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008), and "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's note to 2000 amendments; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of

---

[4] 13-50530, D.I. 933-4; 14-50971, D.I. 668-4 (Macey 1/8/20 Dep. Tr.) at 454:10-24.
[5] Motion ¶20 n.7.

2

contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking" expert opinions). Further, in non-jury cases, arguments to exclude expert testimony "lose force" because the Court "can disregard any [] speculative or irrelevant testimony." *Par Pharm., Inc. v. Hospira, Inc.*, 2019 WL 2396748, at *3 (D. Del. June 6, 2019). Delaware courts routinely deny motions to exclude expert testimony on this basis.[6]

**I.    PROFESSOR MACEY'S TESTIMONY ON INDUSTRY CUSTOM AND PRACTICE IS HELPFUL**

Yucaipa's contention that Professor Macey's reports consist of "unhelpful legal opinions on the ultimate issues of this case" is baseless. (Motion ¶13). Professor Macey was clear at his deposition that he "wasn't tasked with providing a legal opinion," his opinions do not "depend at all" on legal conclusions under Delaware law, and that offering a legal opinion "would not be particularly useful or relevant to a court because I don't see it really as my place."[7]

Contrary to Yucaipa's mischaracterization, Opinion No. 6 consists of "permissible testimony concerning the business customs and practices of a corporation." *Cantor*, 2006 WL 3462596, at *5 (permitting expert testimony regarding "the process by which a company such as Marvel would handle a transaction involving an interested director"); *see also Cary Oil Co. v.*

---

[6]    *See, e.g.*, *Alcoa, Inc. v. Alcan Rolled Prods.-Ravenswood LLC*, 2020 WL 433856, at *3 (D. Del. Jan. 28, 2020) ("*Daubert* concerns are lessened and the Court's gate-keeping function is relaxed" because "most, if not all, of the issues in the case are matters for resolution by the Court."); *In re NewStarcom Holdings, Inc.*, 547 B.R. 106, 137 (Bankr. D. Del. 2016) (denying motion to exclude and holding "when an expert uses legal terminology or makes legal conclusions in a bench trial, the Court should simply ignore the conclusory language"), *aff'd*, 608 B.R. 614 (D. Del. 2019), *aff'd*, 816 F. App'x 675 (3d Cir. 2020); *Par Pharm.*, 2019 WL 2396748, at *3 (denying motion to exclude in non-jury case); *Cantor*, 2006 WL 3462596, at *6 (no grounds for excluding expert "particularly where, as here, trial is to the bench and there is no risk of jury confusion"); *Chase Manhattan Mortg. Corp. v. Advanta Corp.*, 2004 WL 422681, at *10 (D. Del. Mar. 4, 2004) (denying motion to exclude experts and noting that "[i]f this were a jury trial, I might view the balancing differently").

[7]    13-50530 D.I. 933-3; 14-50971 D.I. 668-3 (Macey 1/7/20 Dep. Tr.) at 100:22-101:12, 115:6-22, 116:11-117:7.

3

*MG Refin. & Mktg., Inc.*, 2003 WL 1878246, at *5 (S.D.N.Y. Apr. 11, 2003) (permitting corporate governance expert to testify on how "[d]efendants exceeded the control a parent ordinarily exercises over its subsidiary so as to justify veil-piercing").[8] In support of his conclusion that Yucaipa "violated basic norms of corporate behavior" relating to negotiations with JCT in 2011/2012, Professor Macey draws upon decades of experience and study to identify customs and practices that, in his expert opinion, Yucaipa and the Yucaipa-controlled Board should have followed. Relevant topics include:

**Yucaipa's Dominion Over Allied's Board**. Professor Macey will testify that Yucaipa dominated and controlled the Board under relevant industry standards.[9] Professor Macey will also testify that Yucaipa's dominance over Allied is reflected in the Board's failure to follow ordinary and customary corporate governance practices.

**The Yucaipa-Controlled Board's Failure to Pursue a Deal with JCT**. Professor Macey will opine on the traditional steps taken by an uncontrolled and unconflicted board upon becoming aware of a third party's interest in acquiring the company — especially when the target company is insolvent. These actions include (i) engaging with the potential buyer; (ii) creating a "special committee" (or "restructuring committee") composed of independent members to evaluate the potential transaction and the possibility of alternative transactions; and

---

[8] 13-50530, D.I. 933-3; 14-50971, D.I. 668-3 (Macey 1/7/20 Dep. Tr.) at 220:23-221:5 (explaining that the opinions expressed in his report "are opinions about ordinary and customary corporate governance behavior and ordinary and customary corporate practice.").

[9] This topic overlaps, in part, with Professor Macey's Opinion No. 1 that "[a]s a matter of ordinary and customary basic corporate governance theory and practice, the CEO of a company who simultaneously serves on that company's board is not considered an 'independent director.'" 13-50530, D.I. 933-1; 14-50971, D.I. 668-1 (Macey Report) ¶9. Opinion 1, however, relates, specifically, to the appropriateness of appointing Mr. Gendregske to the Special Committee created to evaluate the Fourth Amendment.

(iii) retaining an investment bank to pursue the potential transaction.[10] Professor Macey will explain that the ultimate form of the transaction — whether an M&A transaction or a 363 sale effectuated through a pre-planned bankruptcy — would not affect how a properly functioning board should approach this scenario.[11] Professor Macey will testify that, based on his review of the evidence, the Yucaipa-controlled Board did not take any of these customary and basic actions despite Yucaipa's knowledge that JCT was a highly motivated prospective buyer of Allied.

**Yucaipa Violated Basic Norms of Corporate Behavior by Demanding a Premium for Itself, Alone**. Professor Macey will identify the customary corporate governance mechanisms available to Yucaipa in 2011 and 2012 to minimize the rife conflicts it faced during negotiations with JCT in 2011 and 2012. These include (i) having the Yucaipa-affiliated directors resign from the Board so that a disinterested Board could negotiate with JCT; or (ii) negotiating a consensual *pari passu* deal treating all debtholders equally, proportionate to their holdings. Professor Macey's opinion on this issue is informed by, among other things, his experience as a director of a company whose controlling shareholder also held a significant percentage of the company's debt.[12] Professor Macey will opine that Yucaipa's failure to utilize any mechanisms to minimize conflicts in 2011 and 2012 was a stark departure from traditional

---

[10]   13-50530, D.I. 933-3; 14-50971, D.I. 668-3 (Macey 1/7/20 Dep. Tr.) at 206:5-207:10 (explaining the steps that the Yucaipa-controlled Board should have "at a minimum" taken steps to explore a potential transaction with JCT); *see also id*. at 212:13-214:10 (providing specific examples of steps the Board could have taken to engage with JCT and explaining that it followed none of the customary and basic steps of an insolvent company should take).

[11]   13-50530, D.I. 933-4; 14-50971, D.I. 668-4 (Macey 1/8/20 Dep. Tr.) at 447:10-448:5 (explaining that JCT's pursuit of Allied's First Lien Debt is simply a matter of "play[ing] the hand that [it's] dealt"); 570:11-571:16 (explaining that it is his "experience, as a member of a board of directors of a company in financial distress," directors will engage with an interested buyer, even if the buyer "think[s] that somebody else is the relevant decision-maker")

[12]   *See* 13-50530, D.I. 933-3; 14-50971, D.I. 668-3 (Macey 1/7/20 Dep. Tr.) at 67:20-70:8.

custom and practice.

Rather than addressing the substance of Opinion No. 6, Yucaipa argues that this opinion is inadmissible because Professor Macey opined that Yucaipa violated basic norms of corporate behavior "particularly with respect to the duty of loyalty owed by board members and controlling shareholders." (Motion ¶18). This argument fails for at least three reasons:

*First*, Opinion No. 6 is not a legal opinion. Industry norms commonly develop around legal duties, but the two are not the same. Board custom and practice designed to ensure adherence to a legal duty is distinct from the legal duty itself. At his deposition, Professor Macey explained that whether Yucaipa breached its duty of loyalty with respect to the JCT negotiations is distinct from his conclusion that Yucaipa "violated basic norms of corporate behavior." In quoting Professor Macey's deposition testimony, Yucaipa selectively omits this clarification:

> Q: Are you assuming that there was a violation of the duty of loyalty [in Opinion No. 6], or are you concluding based on the facts here there was a violation of the duty of loyalty?
>
> A. Neither. I'm saying that to the extent that there was a violation of duty of loyalty, that informs my conclusion. **If there were no violation of the duty of loyalty, my conclusion wouldn't change. I would still think that this violated -- showed favoritism that was inappropriate and violated basic norms of corporate behavior.**[13]

*Second*, "[a]ll good corporate governance practices include compliance with statutory law and case law establishing fiduciary duties." *Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000).

---

[13]    13-50530, D.I. 933-3; 14-50971, D.I. 668-3 (Macey 1/7/20 Dep. Tr.) at 119:3-13 (emphasis added). Professor Macey further explained that if the Court concluded that Yucaipa did not violate the duty of loyalty with respect to its negotiations with JCT in 2011 and 2012, "[t]hat would certainly change my view of whether the duty of loyalty was violated. It would not change my view as to whether basic corporate -- norms of corporate behavior were violated." *Id.* at 119:14-20 (emphasis added).

Every director, as a matter of custom and practice, is expected to know that s/he owes a fiduciary duty to the corporation and to act consistently with it. Professor Macey was echoing this self-evident point. *See also* Motion ¶18 (quoting Professor Macey's testimony that "I believe the fiduciary duty of loyalty is one of the norms of corporate behavior."). Professor Macey's testimony that boards have absorbed this fundamental principle of corporate governance as a driver of custom and practice is non-controversial. *See Micron Tech., Inc. v. Rambus Inc.*, 2007 WL 9771152, at *2 (D. Del. Aug. 29, 2007) ("The fact that a particular custom or practice is shaped by, or overlaps with, what the law requires does not impact an expert's ability to testify.").

*Third*, Yucaipa's strained mischaracterization itself amounts to no more than a charge that Professor Macey's report contains tinges of "intermittent legal gloss" (it does not), and that "is insufficient to strike the entirety of an expert's report." *In re NewStarcom Holdings, Inc.*, 547 B.R. at 137; *see also Cantor*, 2006 WL 3462596, at *5 (refusing to exclude expert's report "on the basis that a few statements in [the] report may address issues of law.") As this "trial is to the bench and there is no risk of jury confusion," the Court can simply ignore this language if the Court deems it irrelevant. *Id.* at *6.[14]

## II. RELEVANCE OF CUSTOMS & PRACTICES TO LEGAL DUTIES

Operating on the misconception that Professor Macey offered legal conclusions — in fact, he disclaimed any — Yucaipa argues that the Trustee will "try to couch [Professor Macey's] testimony" as relating to violations of customs and practices of corporate governance.

---

[14] The same is true of Professor Macey's brief reference to the Board's duty of good faith. *See* Motion ¶21. As discussed, Professor Macey will testify regarding the customs and practices that the Yucaipa-controlled Board failed to follow in 2011/2012 with respect to a potential deal with JCT. He will not (because he has no need to) discuss the Board's specific fiduciary duties or whether it violated them.

7

(Motion ¶24). This argument is meritless. The mere fact that customs and norms of corporate behavior develop around legal duties does not convert testimony about the former into an opinion about the latter. Yucaipa cannot identify any part of Professor Macey's report "in which he states that those customs and practices *are required by law*." *Cantor*, 2006 WL 3462596, at *6 (emphasis added) (rejecting defendants' argument that "some of the customs and practices discussed in [expert's] report are extremely similar to the requirements of Delaware corporate law"). Yucaipa's remaining arguments are equally meritless.

      A.      ***SLJS v. Kleban* Does Not Support Exclusion**

Yucaipa argues that *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258 (D. Conn. 2017), which dealt with potential confusion of jurors and limited Professor Macey's testimony in that setting, supports exclusion of Professor Macey's opinions here. It does not.

*First*, Yucaipa's contention that the Court excluded Professor Macey's report in *Kleban* is highly deceptive. *See* Motion ¶25. Yucaipa omits that the Court's holding permitted plaintiff to submit a revised report and proposed testimony from Professor Macey. *Kleban*, 277 F. Supp. 3d 291. The Court also held that portions of Professor Macey's report were "permissible in the form of trial testimony" without change. *Id*. As such, *Kleban* supports admission of Professor Macey's report and — if necessary in this non-jury setting — any language the Court deems impermissible could be excluded. Professor Macey honestly and accurately testified that "to my knowledge, I've had my expert testimony curtailed; I've never had it excluded."[15] Yucaipa's histrionic assertion that he thereby "falsely testified" (Motion ¶6) is belied by his testimony and offensive.[16]

---

[15]     13-50530 D.I. 933-3, 14-50971 D.I. 668-3 (Macey 1/7/20 Dep. Tr.) at 44:24-45:3.

[16]     *See* Motion ¶6 (quoting 13-50530, D.I. 933-3; 14-50971, D.I. 668-3 (Macey 1/7/20 Dep. Tr.) at 44:24-45:3. At most, Professor Macey's testimony in *Kleban* was curtailed, not excluded.

*Second*, *Kleban* concerned "the permissible boundaries of an expert witness's testimony *at a jury trial*" and applied the Second Circuit's standard, in that setting, to Professor Macey's testimony.  277 F. Supp. 3d at 275 (emphasis added) (citing *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991)).  The *Kleban* Court's analysis was motivated by its concern that certain of Professor Macey's opinions could potentially confuse the jury.  *See, e.g.*, *Kleban*, 277 F. Supp. 3d at 280 ("If the jury becomes confused, believing that these communications are facts, Macey's testimony may be unduly prejudicial."), 283 (statement by Professor Macey in report risks "misleading the jury.").  That concern does not exist here.  As Yucaipa recently argued to this Court, concerns of unfair prejudice should not be at issue in a bench trial.[17]

### B.   Professor Macey Is Highly Qualified

Yucaipa admits that Professor Macey is a "highly credentialed professor," but asserts that he is unqualified to offer expert testimony on corporate governance customs and practices because his knowledge of these issues is "almost entirely academic."  (Motion ¶¶31-32).  Even if Professor Macey's knowledge were *entirely* academic, his credentials — consisting of almost 40 years of researching, writing, and teaching on corporate governance issues in the nation's most prestigious law schools — more than suffice to qualify him to testify under the Third Circuit's liberal standard.  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) ("We have interpreted [qualification] requirement liberally" and "a broad range of knowledge, skills, and training qualify an expert as such.").  *See also Sharp v. Navistar Int'l Corp.*, 2020 WL 7062557,

---

Moreover, even if his belief was somehow mistaken, he was clear that he was testifying to the best of his knowledge.

[17]   *See* Opposition to the Trustee's Motion *in Limine*, dated January 25, 2022 (13-50530, D.I. 918; 14-50971, D.I. 653) ¶10 ("[I]n the context of a bench trial, evidence should not be excluded under Rule 403 on the grounds that it is unfairly prejudicial, because the Court is capable of assessing the probative value of the [evidence] and excluding any arguably improper inferences.") (Collecting cases).

at *8 (N.D. Ill. Nov. 30, 2020) (expert who, for over 30 years, "taught various classes on corporate law and [] is widely published in that field" is qualified to opine on corporate governance issues).

Yucaipa attempts to minimize Professor Macey's practical experience by noting that he "has never served on the board of a company in the auto-industry" (Motion ¶31), but his Opinion No. 6 does not concern the auto industry. It concerns basic norms of corporate behavior and Yucaipa's violation of those norms by usurping negotiations with JCT in 2011 and 2012 for its own selfish purposes, at the expense of Allied and its creditors. This could have happened in the food industry, the metals industry, or any other. Professor Macey is superbly qualified by academic and real-world experience, and his testimony is relevant and will, we submit, be helpful to the Court's adjudication of the remaining claims.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: February 18, 2022

        **FOX ROTHSCHILD LLP**

        By:     */s/ Seth A. Niederman*
               Seth A. Niederman (DE Bar No. 4588)
               Citizens Bank Center
               919 N. Market Street, Suite 300
               Wilmington, DE 19801
               Tel.: (302) 654-7444
               Fax: (302) 656-8920
               sniederman@foxrothschild.com

               -and-

        **JOSEPH HAGE AARONSON LLC**

               Gregory P. Joseph
               Gila S. Singer
               485 Lexington Avenue, 30th Floor
               New York, NY 10017
               Telephone: (212) 407-1200
               gjoseph@jhany.com

               -and-

        **ZAIGER LLC**

               Jeffrey H. Zaiger
               Judd A. Lindenfeld
               2187 Atlantic Street, 9th Floor
               Stamford, CT 06902
               Telephone: (917) 572-7701
               jzaiger@zaigerllc.com

               -and-

        **COHEN AND GRESSER LLP**

               Douglas J. Pepe
               800 Third Avenue
               New York, NY 10022
               Telephone: (212) 957-7605
               dpepe@cohengresser.com

*Counsel for the Litigation Trustee and Plan Administrator*